# EXHIBIT A

**IN THE COURT OF COMMON PLEAS OF ALLEGHENY COUNTY, PENNSYLVANIA**

| | | |
|---|---|---|
| **Alexander Rhodes,** et al., | ) | CIVIL DIVISION |
| | ) | |
| Plaintiff, | ) | |
| | ) | Docket #:  GD-24-013043 |
| v. | ) | |
| | ) | |
| **Aylo Holdings, S.A.R.L.** (d/b/a **Pornhub**), et al., | ) | **PRAECIPE TO REISSUE WRIT OF SUMMONS AS TO DEFENDANT NICOLE PRAUSE, Ph.D** |
| | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |
| | ) | **JURY TRIAL DEMANDED** |
| | ) | |
| | ) | Filed on behalf of:  Plaintiffs. |
| | ) | |
| | ) | COUNSEL OF RECORD FOR THIS PARTY: |
| | ) | |
| | ) | David M. Kobylinski, Esquire |
| | ) | Pa. ID No.:  92233 |
| | ) | |
| | ) | Peter T. Kobylinski, Esquire |
| | ) | Pa. ID No.:  309832 |

KOBYLINSKI + KOBYLINSKI
304 Ross Street, Suite 510
Pittsburgh, PA  15219
(412) 281-6600

## IN THE COURT OF COMMON PLEAS FOR ALLEGHENY COUNTY

**Alexander Rhodes,** et al.,                  )
                                               )        CIVIL DIVISION
            Plaintiff,                         )
                                               )        Docket #:  GD-24-013043
                v.                             )
                                               )
                                               )
**Aylo Holdings, S.A.R.L.** (d/b/a **Pornhub**), )
et al.,                                        )
                                               )
            Defendants.                        )


### PRAECIPE TO REISSUE WRIT OF SUMMONS AGAINST DEFENDANT NICOLE PRAUSE, Ph.D.

TO THE PROTHONOTARY:

Kindly reissue Plaintiff's Writ of Summons in the above-captioned matter against

Defendant Nicole Prause, Ph.D.

Papers may be served at the address set forth.


Respectfully submitted,

**PRAETORIAN LAW GROUP, LLC**


_____/s/ Peter T. Kobylinski_____
Peter T. Kobylinski, Esquire
PA ID No.:  309832
304 Ross Street, Suite 510
Pittsburgh, PA 15219
(412) 281-6600

Dated:  April 15, 2025

## CERTIFICATE OF COMPLIANCE

I certify that this filing complies with the provisions of the *Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts* that require filing confidential information and documents differently than non-confidential information and documents.

Submitted by:

_____/s/ Peter T. Kobylinski, Esquire_____
Peter T. Kobylinski, Esquire (PA ID # 309832)

## CERTIFICATE OF SERVICE

I certify that on this date I caused copies of the foregoing papers to be served on the person(s) listed below by via regular mail:

| | |
|---|---|
| David Ley, Ph.D.<br>707 Broadway Blvd. NE #500<br>Albuquerque, NM 87102<br><br>*Defendant* | Jessica Sierras, Senior Operations<br>Parasec Incorporated<br>14001 W. State Hwy 29, #102<br>Liberty Hill, TX 78642<br><br>*Registered Agent for Aylo Holdings, SARL,*<br>*Aylo USA, Inc., Aylo Global Entertainment,*<br>*Inc. and Aylo Billing Limited (d/b/a Pornhub)* |
| Charles F. Robinson, General Counsel<br>University of California, Los Angeles<br>1111 Franklin Street, 8th Floor<br>Oakland, CA 94607<br><br>*Defendant UCLA* | Timothy Emmett Dages, President<br>Taylor + Francis Group, LLC<br>2385 NW Executive Center Drive, Ste 320<br>Boca Raton, FL 33431<br><br>*Defendant Taylor and Francis Group, LLC* |

April 15, 2025

_____/s/ Peter T. Kobylinski_____
PETER T. KOBYLINSKI

IN THE COURT OF COMMON PLEAS OF ALLEGHENY COUNTY, PENNSYLVANIA

| | | |
|---|---|---|
| **Alexander Rhodes,** et al., | ) | |
| | ) | CIVIL DIVISION |
| Plaintiff, | ) | |
| | ) | CASE NO.:  GD-24-013043 |
| v. | ) | |
| | ) | |
| **Aylo Holdings, S.A.R.L.** (d/b/a **Pornhub**) et al., | ) | **PROOF OF SERVICE ON** |
| | ) | **DEFENDANTS: DAVID LEY, Ph.D.,** |
| Defendants. | ) | **UNIVERSITY OF CALIFORNIA, LOS** |
| | ) | **ANGELES, AYLO HOLDINGS, S.A.R.L.,** |
| | ) | **AYLO USA, INC., AYLO GLOBAL** |
| | ) | **ENTERTAINMENT, INC., AND AYLO** |
| | ) | **BILLING LIMITED** |
| | ) | |
| | ) | |
| | ) | |
| | ) | Filed on behalf of: |
| | ) | plaintiffs. |
| | ) | |

COUNSEL OF RECORD FOR THIS PARTY:

David M. Kobylinski, Esquire
Pa. ID No.:  92233

Peter T. Kobylinski, Esquire
Pa. ID No.:  309832

PRAETORIAN LAW GROUP, LLC
304 Ross Street, Suite 510
Pittsburgh, PA  15219
(412) 281-6600

IN THE COURT OF COMMON PLEAS OF ALLEGHENY COUNTY, PENNSYLVANIA

| | | |
|---|---|---|
| **Alexander Rhodes,** et al., | ) | |
| | ) | CIVIL DIVISION |
| Plaintiff, | ) | |
| | ) | CASE NO.:  GD-24-013043 |
| v. | ) | |
| | ) | |
| **Aylo Holdings, S.A.R.L. (**d/b/a **Pornhub)** et al., | ) | |
| | ) | |
| | ) | |
| Defendants. | ) | |

**PROOF OF SERVICE ON DEFENDANTS: DAVID LEY, Ph.D., UNIVERSITY OF CALIFORNIA, LOS ANGELES, AYLO HOLDINGS, S.A.R.L., AYLO USA, INC., AYLO GLOBAL ENTERTAINMENT, INC., AND AYLO BILLING LIMITED**

I, Peter T. Kobylinski, Esquire, hereby certify that a copy of said Writ of Summons and Praecipe for Writ of Summons was sent and served upon defendants as follows:

a.  Aylo Holdings, S.A.R.L. (d/b/a Pornhub), Aylo USA, Inc. (d/b/a Pornhub), Aylo Global Entertainment, Inc. (d/b/a Pornhub) and Aylo Billings Limited (d/b/a Pornhub) by the United States Post Office, Certified and Restricted Mail, postage prepaid with return receipt requested, on January 3, 2025.  The return receipt was returned as delivered by the U.S. Postal Service indicating delivery to Defendant's Registered Agent, Parasec Incorporated at 14001 W. State Hwy 29 #102, Liberty Hill, TX 78642, on January 10, 2025.  The signed Return Receipts are attached to hereto and made a part hereof as Exhibit "A.";

b.  University of California, Los Angeles (d/b/a UCLA) by the United States Post Office, Certified and Restricted Mail, postage prepaid with return receipt requested, on January 3, 2025.  The return receipt was returned as delivered by the U.S. Postal Service indicating delivery to Defendant at 1111 Franklin Street, 8th Floor, Oakland,

CA 94607, on January 13, 2025.  The signed Return Receipts are attached to hereto and made a part hereof as Exhibit "A.";

c.  Taylor & Francis Group, LLC by the United States Post Office, Certified and Restricted Mail, postage prepaid with return receipt requested, on December 16, 2024.  The return receipt was returned as delivered by the U.S. Postal Service indicating delivery to Defendant at 2385 NW Executive Center Drive, Suite 320, Boca Raton, FL 33431, on January 7, 2025.  The signed Return Receipts are attached to hereto and made a part hereof as Exhibit "A."; and

d.  David Ley, Ph.D. by the United States Post Office, Certified and Restricted Mail, postage prepaid with return receipt requested, on January 3, 2025.  The return receipt was returned as delivered by the U.S. Postal Service indicating delivery to Defendant at 707 Broadway Blvd., NE #500, Albuquerque, NM 87102, on January 7, 2025.  The signed Return Receipts are attached to hereto and made a part hereof as Exhibit "A."

Respectfully submitted,

**PRAETORIAN LAW GROUP, LLC**

_____/s/ Peter T. Kobylinski_____
Peter T. Kobylinski, Esquire
PA ID No.:  309832
304 Ross Street, Suite 510
Pittsburgh, PA 15219
(412) 281-6600

Dated:  April 15, 2025



**SENDER: COMPLETE THIS SECTION**

- Complete items 1, 2, and 3.
- Print your name and address on the reverse so that we can return the card to you.
- Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:

Jessica Sierras, Senior Operation
Parasec Incorporated
14001 W. State Hwy 29 #102
Liberty Hill, TX 78642

9590 9402 8500 3186 4613 81

2. Article Number (Transfer from service label)
9589 0710 5270 1393 7489 72

**COMPLETE THIS SECTION ON DELIVERY**

A. Signature
X ☐ Agent ☐ Addressee

B. Received by (Printed Name) C. Date of Delivery
Rob Johnson

D. Is delivery address different from item 1? ☐ Yes
If YES, enter delivery address below: ☐ No

3. Service Type
☐ Adult Signature
☒ Adult Signature Restricted Delivery
☐ Certified Mail®
☐ Certified Mail Restricted Delivery
☐ Collect on Delivery
☐ Collect on Delivery Restricted Delivery
☐ all Restricted Delivery

☐ Priority Mail Express®
☐ Registered Mail™
☐ Registered Mail Restricted Delivery
☐ Signature Confirmation™
☐ Signature Confirmation Restricted Delivery

PS Form 3811, July 2020 PSN 7530-02-000-9053 Domestic Return Receipt

---

USPS TRACKING #

9590 9402 8500 3186 4613 81

First-Class Mail
Postage & Fees Paid
USPS
Permit No. G-10

**United States Postal Service**

• Sender: Please print your name, address, and ZIP+4® in this box•

Kobylinski + Kobylinski
304 Ross Street, Ste 510
Pittsburgh, PA 15219

---

Exhibit "A"

**SENDER:** COMPLETE THIS SECTION

- Complete items 1, 2, and 3.
- Print your name and address on the reverse so that we can return the card to you.
- Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:

Charles F. Robinson G.C.
University of California
1111 Franklin St, 8th Floor
Oakland, CA 94607

9590 9402 8500 3186 4613 74

2. Article Number (Transfer from service label)

9589 0710 5270 1393 7489 41

COMPLETE THIS SECTION ON DELIVERY

A. Signature
X ☐ Agent
☐ Addressee

B. Received by (Printed Name)
GRANT FULGATE

C. Date of Delivery
1/13/2025

D. Is delivery address different from item 1? ☐ Yes
If YES, enter delivery address below: ☐ No

3. Service Type
☐ Adult Signature
☒ Adult Signature Restricted Delivery
☐ Certified Mail®
☐ Certified Mail Restricted Delivery
☐ Collect on Delivery
☐ Collect on Delivery Restricted Delivery
☐ Insured Mail
☐ Insured Mail Restricted Delivery ($500)

☐ Priority Mail Express®
☐ Registered Mail™
☐ Registered Mail Restricted Delivery
☐ Signature Confirmation™
☐ Signature Confirmation Restricted Delivery

PS Form 3811, July 2020 PSN 7530-02-000-9053

Domestic Return Receipt

---

**USPS TRACKING#**

9590 9402 8500 3186 4613 74

First-Class Mail
Postage & Fees Paid
USPS
Permit No. G-10

United States
Postal Service

• Sender: Please print your name, address, and ZIP+4® in this box•

Kobylinski + Kobylinski
304 Ross Street, Ste 510
Pittsburgh, PA 15219

Exhibit "A"

**SENDER: COMPLETE THIS SECTION**

- Complete items 1, 2, and 3.
- Print your name and address on the reverse so that we can return the card to you.
- Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:

Timothy Emmett Dages, President
Taylor & Francis Group, LLC
2355 Nw Executive Center D, Ste 3??
Boca Raton, FL 33431

9590 9402 8500 3186 4614 04

2. Article Number (Transfer from service label)

9589 0710 5270 1393 7489 34

**COMPLETE THIS SECTION ON DELIVERY**

A. Signature
X _____  ☐ Agent
                    ☐ Addressee

B. Received by (Printed Name)     C. Date of Delivery
Eric Courtman                     1/7/25

D. Is delivery address different from item 1?  ☐ Yes
   If YES, enter delivery address below:       ☐ No

3. Service Type
☐ Adult Signature
☒ Adult Signature Restricted Delivery
☐ Certified Mail®
☐ Certified Mail Restricted Delivery
☐ Collect on Delivery
☐ Collect on Delivery Restricted Delivery
☐ Insured Mail
☐ Insured Mail Restricted Delivery
☐ Priority Mail Express®
☐ Registered Mail™
☐ Registered Mail Restricted Delivery
☐ Signature Confirmation™
☐ Signature Confirmation Restricted Delivery

PS Form 3811, July 2020 PSN 7530-02-000-9053     Domestic Return Receipt

---

USPS TRACKING #

9590 9402 8500 3186 4614 04

JAN -7 2025

First-Class Mail
Postage & Fees Paid
USPS
Permit No. G-10

**United States Postal Service**

• Sender: Please print your name, address, and ZIP+4® in this box•

Kobylinski + Kobylinski
304 Ross Street, Ste 510
Pittsburgh, PA 15219

---

Exhibit "A"





Exhibit "A"

## <u>CERTIFICATE OF SERVICE</u>

I certify that on this date I caused copies of the foregoing papers to be served on the person(s) listed below by via regular mail:

| | |
|---|---|
| David Ley, Ph.D.<br>707 Broadway Blvd. NE #500<br>Albuquerque, NM 87102<br><br>*Defendant* | Jessica Sierras, Senior Operations<br>Parasec Incorporated<br>14001 W. State Hwy 29, #102<br>Liberty Hill, TX 78642<br><br>*Registered Agent for Aylo Holdings, SARL,<br>Aylo USA, Inc., Aylo Global Entertainment,<br>Inc. and Aylo Billing Limited (d/b/a Pornhub)* |
| Charles F. Robinson, General Counsel<br>University of California, Los Angeles<br>1111 Franklin Street, 8th Floor<br>Oakland, CA 94607<br><br>*Defendant UCLA* | Timothy Emmett Dages, President<br>Taylor + Francis Group, LLC<br>2385 NW Executive Center Drive, Ste 320<br>Boca Raton, FL 33431<br><br>*Defendant Taylor and Francis Group, LLC* |

_____/s/ Peter T. Kobylinski_____
PETER T. KOBYLINSKI

April 15, 2025

## CERTIFICATE OF COMPLIANCE

I certify that this filing complies with the provisions of the *Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts* that require filing confidential information and documents differently than non-confidential information and documents.

Submitted by:

_____/s/ Peter T. Kobylinski_____
Peter T. Kobylinski, Esquire (PA ID # 309832)

**CIVIL/FAMILY DIVISION**
**DEPARTMENT OF COURT RECORDS**
**ALLEGHENY COUNTY**
**FIRST FLOOR CITY-COUNTY BUILDING**
**414 GRANT STREET**
**PITTSBURGH PA 15219-2469**

**RETURN SERVICE REQUESTED**

PRESORTED
FIRST CLASS

US POSTAGE ᴾᴮ PITNEY BOWES

ZIP 15219  $ 000.58⁸
02 4W
0000348473 OCT. 08. 2025

10/08/2025



NOT DELIVERABLE
RETURNED
TO
SENDER
UCLA

RETURN TO SENDER

UCLA Mail Ser    NIXIE    911    DC 1        0010/22/25

RETURN TO SENDER
ATTEMPTED — NOT KNOWN
UNABLE TO FORWARD



ANK    BC: 15219246999    *2052-04722-22-22

**IN THE COURT OF COMMON PLEAS OF ALLEGHENY COUNTY, PENNSYLVANIA**

| | | |
|---|---|---|
| **Alexander Rhodes,** et al., | ) | CIVIL DIVISION |
| | ) | |
| Plaintiff, | ) | |
| | ) | Docket #:  GD-24-013043 |
| v. | ) | |
| | ) | |
| **Aylo Holdings, S.A.R.L.** (d/b/a **Pornhub**), et al., | ) | **PRAECIPE TO REISSUE WRIT OF SUMMONS AS TO DEFENDANT NICOLE PRAUSE, Ph.D** |
| | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |
| | ) | **JURY TRIAL DEMANDED** |
| | ) | |
| | ) | Filed on behalf of:  Plaintiffs. |
| | ) | |
| | ) | COUNSEL OF RECORD FOR THIS PARTY: |
| | ) | |
| | ) | David M. Kobylinski, Esquire |
| | ) | Pa. ID No.:  92233 |
| | ) | |
| | ) | Peter T. Kobylinski, Esquire |
| | ) | Pa. ID No.:  309832 |

KOBYLINSKI + KOBYLINSKI
304 Ross Street, Suite 510
Pittsburgh, PA  15219
(412) 281-6600

## IN THE COURT OF COMMON PLEAS FOR ALLEGHENY COUNTY

**Alexander Rhodes,** et al.,     )
                              )    CIVIL DIVISION
       Plaintiff,      )
                              )    Docket #:  GD-24-013043
           v.        )
                              )
                              )
**Aylo Holdings, S.A.R.L.** (d/b/a **Pornhub**),  )
et al.,                           )
                              )
     Defendants.    )


## PRAECIPE TO REISSUE WRIT OF SUMMONS AGAINST DEFENDANT NICOLE PRAUSE, Ph.D.

TO THE PROTHONOTARY:

Kindly reissue Plaintiff's Writ of Summons in the above-captioned matter against

Defendant Nicole Prause, Ph.D.

Papers may be served at the address set forth.


Respectfully submitted,

**PRAETORIAN LAW GROUP, LLC**


      /s/ Peter T. Kobylinski
Peter T. Kobylinski, Esquire
PA ID No.:  309832
304 Ross Street, Suite 510
Pittsburgh, PA 15219
(412) 281-6600

Dated:  May 28, 2025

## CERTIFICATE OF COMPLIANCE

I certify that this filing complies with the provisions of the *Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts* that require filing confidential information and documents differently than non-confidential information and documents.

Submitted by:

_____/s/ Peter T. Kobylinski, Esquire_____
Peter T. Kobylinski, Esquire (PA ID # 309832)

## CERTIFICATE OF SERVICE

I certify that on this date I caused copies of the foregoing papers to be served on the person(s) listed below by via regular mail:

| | |
|---|---|
| David Ley, Ph.D.<br>707 Broadway Blvd. NE #500<br>Albuquerque, NM 87102<br><br>*Defendant* | Jessica Sierras, Senior Operations<br>Parasec Incorporated<br>14001 W. State Hwy 29, #102<br>Liberty Hill, TX 78642<br><br>*Registered Agent for Aylo Holdings, SARL,*<br>*Aylo USA, Inc., Aylo Global Entertainment,*<br>*Inc. and Aylo Billing Limited (d/b/a Pornhub)* |
| Charles F. Robinson, General Counsel<br>University of California, Los Angeles<br>1111 Franklin Street, 8th Floor<br>Oakland, CA 94607<br><br>*Defendant UCLA* | Timothy Emmett Dages, President<br>Taylor + Francis Group, LLC<br>2385 NW Executive Center Drive, Ste 320<br>Boca Raton, FL 33431<br><br>*Defendant Taylor and Francis Group, LLC* |

May 28, 2025                    _____/s/ Peter T. Kobylinski_____
                                        PETER T. KOBYLINSKI

## IN THE COURT OF COMMON PLEAS OF ALLEGHENY COUNTY, PENNSYLVANIA

| | |
|---|---|
| ALEXANDER RHODES and NO FAP LLC, | : COURT OF COMMON PLEAS |
| Plaintiffs, | : |
| | : ALLEGHENY COUNTY, PA |
| | : |
| v. | : No.: GD-24-013043 |
| | : |
| AYLO HOLDINGS, S.A.R.L (d/b/a PornHub, AYLO USA, INC. (d/b/a PornHub), AYLO GLOBAL ENTERTAINMENT, INC. (d/b/a Porn Hub), AYLO BILLING LIMITED (d/b/a PornHub), NICOLE PRAUSE, Ph.D., UNIVERSITY OF CALIFORNIA, LOS ANGELES, (d/b/a UCLA), DAVID LEY, Ph.D., and TAYLOR & FRANCIS GROUP, LLC., | : PRAECIPE FOR RULE TO FILE COMPLAINT |
| | : |
| | : Filed on behalf of: |
| | : DEFENDANT, University of California, Los Angeles d/b/a UCLA |
| | : |
| | : COUNSEL OF RECORD FOR THIS PARTY: |
| Defendants. | : |
| | : Alexander Nemiroff |
| | : anemiroff@grsm.com |
| | : PA ID #92250 |
| | : |
| | : Rebecca Simms |
| | : rsimms@grsm.com |
| | : PA ID #334183 |
| | : |
| | : GORDON & REES |
| | : Three Logan Square |
| | : 1717 Arch Street, Suite 610 |
| | : Philadelphia, PA 19103 |
| | : Telephone (267) 602-2040 |
| | : Fax: (215) 693-6650 |
| | : |
| | : |
| | : |

## PRAECIPE FOR RULE TO FILE COMPLAINT

TO THE PROTHONOTARY:

Please enter a Rule upon the Plaintiffs, Alexander Rhodes and NoFap, LLC, to file a Complaint within twenty (20) days or suffer judgment of non pros.

Respectfully submitted,


By: ___*/s/ Alexander Nemiroff*___
       Alexander Nemiroff [92250]

By: ___*/s/ Rebecca Simms*___
       Rebecca Simms [334183]

GORDON & REES LLP
Three Logan Square
1717 Arch Street, Suite 610
Philadelphia, PA 19103
Telephone (267) 602-2040
Fax: (215) 693-6650
anemiroff@grsm.com
rsimms@grsm.com
*Attorneys for Defendant, University of California, Los Angeles d/b/a UCLA*

Date: September 22, 2025

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on September 22, 2025 a true and correct copy of the within **Praecipe For Rule to File a Complaint** was served upon counsel of record via the Electronic Filing System and/or via Certified Mail at the following address:

David M. Kobylinski, Esq.
Peter T. Kobylinski, Esq.
Praeterorian Law Group, LLC
304 Ross Street, Suite 510
Pittsburgh, PA 15219
*Counsel for Plaintiffs*

Aylo Holdings, S.A.R.L. (d/b/a PornHub)
6975 Decarie Blvd.
Montreal, Quebec
H3W 0B6

Aylo USA, Inc. (d/b/a PornHub)
610 Brazos Street, Suite 500
Austin, TX 78701

Aylo Global Entertainment, Inc. (d/b/a PornHub)
610 Brazos Street, Suite 500
Austin, TX 78701

Aylo Billing Limited (d/b/a PornHub)
6975 Decarie Blvd.
Montreal, Quebec
H3W 0B6

Nicole Prause, Ph.D.
100 Medical Plaza
Los Angeles, CA 90095

David Ley, Ph.D.
707 Broadway Blvd NE # 500
Albuquerque, NY 87102

Taylor & Francis Group, LLC
530 Walnut Street, Suite 850
Philadelphia, PA 19106

By:    <u>s/ Alexander Nemiroff</u>
        ALEXANDER NEMIROFF

IN THE COURT OF COMMON PLEAS OF ALLEGHENY COUNTY, PENNSYLVANIA

| | |
|---|---|
| **Alexander Rhodes,** et al., | ) |
| | )    CIVIL DIVISION |
| Plaintiff, | ) |
| | )    CASE NO.:  GD-24-013043 |
| v. | ) |
| | ) |
| **Aylo Holdings, S.A.R.L. (**d/b/a **Pornhub)** et al., | ) |
| | ) |
| | ) |
| Defendants. | ) |

## ORDER OF COURT

AND NOW, on this ___6th___ day of ___October___, 2025, upon consideration of Plaintiff's Motion for Alternative Service, any response thereto, and for good cause shown, it is hereby ORDERED that plaintiffs' motion shall be and hereby is GRANTED and plaintiff is permitted to serve defendant Nicole Prause by the following means:

       a.     electronic mail with delivery confirmation to: nprause@pitt.edu; arpanpatel@mednet.ucla.edu; nprause@mednet.ucla.edu and nicole.prause@gmail.com.

       b.     direct message on the social media website X (formerly Twitter) to the username @NicoleRPrause;

       c.     direct message on the social media website LinkedIn to the account representing Defendant Prause;

       d.     registered and regular mail addressed to Arpan A. Patel, M.D., Ph.D. and Nicole Prause, Ph.D. forwarded to Dr. Patel's office located at 1100 Glendon Ave., Suite 850, Los Angeles, CA 90024; and

e.    registered and regular mail addressed to Arpan A. Patel, M.D., Ph.D. and

Nicole Prause, Ph.D. forwarded to the Ronald Reagan UCLA Medical

Center, 757 Westwood Plaza, Los Angeles, CA 90095.


BY THE COURT:

_____ J.

**IN THE COURT OF COMMON PLEAS OF ALLEGHENY COUNTY, PENNSYLVANIA**

ALEXANDER RHODES and NO FAP LLC,
     Plaintiffs,

v.

AYLO HOLDINGS, S.A.R.L (d/b/a PornHub,
AYLO USA, INC. (d/b/a PornHub), AYLO
GLOBAL ENTERTAINMENT, INC. (d/b/a
Porn Hub), AYLO BILLING LIMITED (d/b/a
PornHub), NICOLE PRAUSE, Ph.D.,
UNIVERSITY OF CALIFORNIA, LOS
ANGELES, (d/b/a UCLA), DAVID LEY, Ph.D.,
and TAYLOR & FRANCIS GROUP, LLC.,

     Defendant(s)

CIVIL DIVISION

CASE Nos:

**GD-24-13043**

## ORDER OF COURT

     AND NOW, this 6th day of October, 2025, it is ORDERED, ADJUDGED and DECREED as
follows:

1. The Department of Court Records is directed to seal the Plaintiff's Motion for Alternative
   Service and this Court's Order dated October 6, 2025.

BY THE COURT:

2) The address of Defendant
Nicole Prause shall also
be blocked from public
view.

# IN THE COURT OF COMMON PLEAS OF ALLEGHENY COUNTY, PENNSYLVANIA
## CIVIL DIVISION

### COVER SHEET

| Plaintiff(s) | Vs |
| --- | --- |

Alexander Rhodes and NoFapLLC

Vs.

**Defendant(s)**

Aylo Holdings, S.A.R.L. (d/b/a PornHub);
Aylo USA, Inc. (d/b/a PornHub);
Aylo Global Entertainment, Inc. (d/b/a
PornHub); Aylo Billing Limited (d/b/a
PornHub); Nicole Prause, Ph.D.;
University of California, Los Angeles
(d/b/a) UCLA); David Ley, Ph.D.;
Taylor & Francis Group, LLC,

GD-24-013043

**Case Number :**

**Type of pleading :**

ENTRY OF APPEARANCE

**Filed on behalf of**

Nicole Prause, Ph.D.

(Name of the filing party)

- [x] Counsel of Record
- [ ] Individual, If Pro Se

**Address, Telephone Number, and Email Address:**

Michael R. Abbott, Esquire
Attorney I.D. # 203398
450 Sentry Parkway, Suite 200
Blue Bell, PA  19422
(610) 567-0700

**Attorney's State ID** | 203398

**Attorney's Firm ID**

**CIPRIANI & WERNER, P.C.**                    **Attorney for Defendant,**
**Ernest F. Koschineg, Esquire**              **NICOLE PRAUSE, PH.D.**
**Attorney I.D. # 83350**
**Michael R. Abbott, Esquire**
**Attorney I.D. # 203398**
**Jessica M. Heinz, Esquire**
**Attorney I.D. 206166**
**450 Sentry Parkway, Suite 200**
**Blue Bell, PA  19422**
**(610) 567-0700**

| | |
|---|---|
| **Alexander Rhodes and NoFapLLC,** | |
| **Plaintiffs,** | **IN THE COURT OF COMMON PLEAS OF ALLEGHENY COUNTY, PENNSYLVANIA** |
| **v.** | |
| **Aylo Holdings, S.A.R.L. (d/b/a PornHub); Aylo USA, Inc. (d/b/a PornHub); Aylo Global Entertainment, Inc. (d/b/a PornHub); Aylo Billing Limited (d/b/a PornHub); Nicole Prause, Ph.D.; University of California, Los Angeles (d/b/a) UCLA); David Ley, Ph.D.; Taylor & Francis Group, LLC,** | **NO:  GD-24-013043** |
| **Defendants.** | |

## ENTRY OF APPEARANCE

**TO:    PROTHONOTARY**:

      Kindly enter the appearances of the undersigned on behalf of Defendant, Nicole Prause,

Ph.D, in the above-captioned matter.

                         Respectfully submitted,

                         **CIPRIANI & WERNER, P.C.**

         By:  */s/Michael R. Abbott*
             Michael R. Abbott, Esquire
             *Attorney for Defendant,*
             *Nicole Prause, Ph.D.*

Date:  October 9, 2025

**CIPRIANI & WERNER, P.C.**
**Ernest F. Koschineg, Esquire**
**Attorney I.D. # 83350**
**Michael R. Abbott, Esquire**
**Attorney I.D. # 203398**
**Jessica M. Heinz, Esquire**
**Attorney I.D. 206166**
**450 Sentry Parkway, Suite 200**
**Blue Bell, PA  19422**
**(610) 567-0700**

**Attorney for Defendant,**
**NICOLE PRAUSE, PH.D.**

| | |
|---|---|
| **Alexander Rhodes and NoFapLLC,**<br><br>**Plaintiffs,**<br><br>**v.**<br><br>**Aylo Holdings, S.A.R.L. (d/b/a PornHub);**<br>**Aylo USA, Inc. (d/b/a PornHub);**<br>**Aylo Global Entertainment, Inc. (d/b/a**<br>**PornHub); Aylo Billing Limited (d/b/a**<br>**PornHub); Nicole Prause, Ph.D.;**<br>**University of California, Los Angeles**<br>**(d/b/a) UCLA); David Ley, Ph.D.;**<br>**Taylor & Francis Group, LLC,**<br><br>**Defendants.** | **IN THE COURT OF COMMON PLEAS**<br>**OF ALLEGHENY COUNTY,**<br>**PENNSYLVANIA**<br><br>**NO:  GD-24-013043** |

## <u>CERTIFICATE OF SERVICE</u>

That Counsel for Defendant, Nicole Prause, Ph.D., hereby certifies that a true and correct

copy of the foregoing Entry of Appearance has been served on all counsel of record, by electronic

and/or first-class mail, postage pre-paid, according to the Pennsylvania Rules of Civil Procedure.

David M. Kobylinski, Esquire
304 Ross Street, Suite 510
Pittsburgh, PA  15219
*Attorney for Plaintiffs*

Aylo Holdings, S.A.R.L. ( d/b/a PomHub)
6975 Decarie Blvd.
Montreal, Quebec H3W0B6

Aylo USA, Inc. ( d/b/a PornHub)
610 Brazos Street, Suite 500
Austin, TX 78701

Aylo Global Entertainment, Inc. ( d/b/a PornHub)
610 Brazos Street, Suite 500
Austin, TX 78701

Aylo Billing Limited ( d/b/a PomHub)
6975 Decarie Blvd.
Montreal, Quebec H3WOB6

_University of California, Los Angeles ( d/b/a UCLA)
100 Medical Plaza
Los Angeles, CA 90095

David Ley, Ph.D.
707 Broadway Blvd NE# 500
Albuquerque, NY 87102

Taylor & Francis Group, LLC
530 Walnut Street, Suite 850
Philadelphia, PA 19106

Respectfully submitted,

**CIPRIANI & WERNER, P.C.**

By:   */s/Michael R. Abbott*
Michael R. Abbott
*Attorney for Defendant,*
*Nicole Prause, Ph.D.*

Date:  October 9, 2025

IN THE COURT OF COMMON PLEAS OF ALLEGHENY COUNTY, PENNSYLVANIA

| | | |
|---|---|---|
| **Alexander Rhodes,** et al., | ) | |
| | ) | CIVIL DIVISION |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Docket #:  GD-24-13043 |
| | ) | |
| **Aylo Holdings, S.A.R.L.** (d/b/a **Pornhub**) et al., | ) | |
| | ) | **MOTION FOR ADDITIONAL TIME TO** |
| | ) | **FILE A COMPLAINT** |
| Defendants. | ) | |
| | ) | |
| | ) | **JURY TRIAL DEMANDED** |
| | ) | |
| | ) | Filed on behalf of:  Plaintiffs. |
| | ) | |
| | ) | COUNSEL OF RECORD FOR THIS |
| | ) | PARTY: |
| | ) | |
| | ) | David M. Kobylinski, Esquire |
| | ) | Pa. ID No.:  92233 |

Peter T. Kobylinski, Esquire
Pa. ID No.:  309832

KOBYLINSKI + KOBYLINSKI
304 Ross Street, Suite 510
Pittsburgh, PA  15219
(412) 281-6600

**Served: 10/14/2025**

See Certificate of Service

     I, Peter T. Kobylinski, Esq. hereby certify that this motion requests relief for a case that has never appeared on any published trial list, has not been designed complex, and/or complex designation is not pending.

IN THE COURT OF COMMON PLEAS OF ALLEGHENY COUNTY, PENNSYLVANIA

| | | |
|---|---|---|
| **Alexander Rhodes,** et al., | ) | |
| | ) | CIVIL DIVISION |
| Plaintiffs, | ) | |
| | ) | CASE NO.:  GD-24-013043 |
| v. | ) | |
| | ) | |
| **Aylo Holdings, S.A.R.L.** (d/b/a **Pornhub**) et al., | ) | |
| | ) | |
| | ) | |
| Defendants. | ) | |

### NOTICE OF PRESENTATION

TO:    ALL DEFENDANTS

**PLEASE TAKE NOTICE** that the attached Motion for Additional Time to File a Complaint will be duly presented to the General Motions Judge in Courtroom 703 of the City-County Building on October 27, 2025, at 9:30am.

The Court will be asked to sign an order granting the prayer for relief.  You may appear and be heard at that time if you wish.

Respectfully submitted,

**PRAETORIAN LAW GROUP, LLC**


_____/s/  Peter T. Kobylinski_____
Peter T. Kobylinski, Esquire

*Attorney for Plaintiffs*

IN THE COURT OF COMMON PLEAS OF ALLEGHENY COUNTY, PENNSYLVANIA

| | | |
|---|---|---|
| **Alexander Rhodes,** et al., | ) | |
| | ) | CIVIL DIVISION |
| Plaintiffs, | ) | |
| | ) | CASE NO.:  GD-24-013043 |
| v. | ) | |
| | ) | |
| **Aylo Holdings, S.A.R.L. (**d/b/a **Pornhub)** et al., | ) | |
| | ) | |
| | ) | |
| Defendants. | ) | |

**PLAINTIFF'S MOTION FOR ADDITIONAL TIME TO FILE A COMPLAINT**

Plaintiffs file the following Motion for Additional Time to File a Complaint and set forth the following:

1.    This matter stems, in part, from breaches of a settlement agreement by Defendant Prause. Defendant Prause has violated the contract thousands of times, often multiple times per day, necessitating extensive time for Plaintiffs to document, investigate, and summarize these breaches.

2.    Defendant Prause's breaches of the settlement agreement have persisted through the present. For example, on October 11, 2025, Defendant Prause posted on her X.com (formerly Twitter) account a photograph of Plaintiff Rhodes and his name, captured in a screenshot from Plaintiff NoFap's website, accompanied by disparaging content in violation of the settlement agreement.

3.    This matter involves complex legal and factual claims involving numerous defendants and causes of action.

4.    Plaintiffs are in the process of drafting a complaint and have been working diligently upon the same. Due to the scope of the complaint, Plaintiffs require additional time to finish their review and preparation of the same.

5.    The scope of this complaint is not intended to cause undue delay but is directly proportional to the breadth and severity of the tortious conduct to which Plaintiffs have been subjected by Defendants.

6.    Plaintiffs anticipate finalizing the complaint within the next forty-five (45) days.

7.    On September 22, 2025, Defendant UCLA filed a praecipe for rule to file a complaint directed to plaintiffs.

8.    Per Pa R.C.P. 1037, Plaintiffs are required to file a complaint on or before October 14, 2025 or request relief from the same.

9.    Unfortunately, due to the complexity of Plaintiffs' claims, Plaintiffs will not be able to finalize their complaint by this deadline.

10.    Plaintiffs respectfully request that this Court grant Plaintiffs' motion for additional time to file their complaint.

11.    Plaintiffs request an additional forty-five (45) days to file their complaint.

12.    Defendants will not be prejudiced by this brief extension of time.

WHEREFORE, Plaintiffs respectfully request that this Motion for Additional Time to File Complaint be granted.

Respectfully submitted,

**PRAETORIAN LAW GROUP, LLC**


_____/s/  Peter T. Kobylinski_____
Peter T. Kobylinski, Esquire
304 Ross Street, Suite 510
Pittsburgh, PA 15219
(412) 281-6600

*Counsel for Plaintiffs*

October 14, 2025

## <u>CERTIFICATE OF SERVICE</u>

I certify that on this date I caused copies of the foregoing papers to be served on the person(s) listed below via regular mail:

| | |
|---|---|
| David Ley, Ph.D.<br>707 Broadway Blvd. NE #500<br>Albuquerque, NM 87102<br><br>*Defendant* | Jessica Sierras, Senior Operations<br>Parasec Incorporated<br>14001 W. State Hwy 29, #102<br>Liberty Hill, TX 78642<br><br>*Registered Agent for Aylo Holdings, SARL,<br>Aylo USA, Inc., Aylo Global Entertainment,<br>Inc. and Aylo Billing Limited (d/b/a Pornhub)* |
| Alexander Nemiroff, Esq.<br>Gordon & Fees<br>171 Arch Street, Suite 610<br>Philadelphia, PA 19103<br><br>*Counsel to Defendant UCLA* | Timothy Emmett Dages, President<br>Taylor + Francis Group, LLC<br>2385 NW Executive Center Drive, Ste 320<br>Boca Raton, FL 33431<br><br>*Defendant Taylor and Francis Group, LLC* |
| Michael R. Abbott, Esq.<br>Cipriani & Warner, P.C.<br>450 Sentry Parkway, Suite 200<br>Blue Bell, PA 19422<br><br>*Counsel to Nichole Prause, Ph.D.* | |

10/14/2025

_____/s/  Peter T. Kobylinski_____
PETER T. KOBYLINSKI

*Attorney for Plaintiffs*

**CERTIFICATE OF COMPLIANCE**

I certify that this filing complies with the provisions of the *Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts* that require filing confidential information and documents differently than non-confidential information and documents.

Submitted by:

_____/s/  Peter T. Kobylinski_____
Peter T. Kobylinski, Esquire (PA ID # 309832)

IN THE COURT OF COMMON PLEAS OF ALLEGHENY COUNTY, PENNSYLVANIA

| | | |
|---|---|---|
| **Alexander Rhodes,** et al., | ) | |
| | ) | CIVIL DIVISION |
| Plaintiff, | ) | |
| | ) | CASE NO.:  GD-24-013043 |
| v. | ) | |
| | ) | |
| **Aylo Holdings, S.A.R.L. (**d/b/a **Pornhub)** et al., | ) | |
| | ) | |
| | ) | |
| Defendants. | ) | |

## ORDER OF COURT

AND NOW, on this _____ day of _____, 2025, upon consideration of Plaintiff's Motion for Additional Time to File a Complaint, any response thereto, and for good cause shown, it is hereby ORDERED that plaintiffs' motion shall be and hereby is GRANTED and plaintiffs shall have an additional forty-five (45) days to file their complaint in this matter. .

BY THE COURT:


_____J.

**IN THE COURT OF COMMON PLEAS OF ALLEGHENY COUNTY, PENNSYLVANIA**
**CIVIL DIVISION**

COVER SHEET

| Plaintiff(s) | CIVIL DIVISION |
|---|---|
| Alexander Rhodes and NO FAP, LLC | |

**CIVIL DIVISION**

Case Number :

GD ▾ - 24 - 013043

Type of pleading :

Response in Opposition to Plaintiffs' Motion for Additional Time to File a

Code and Classification :

Filed on behalf of

Defendant, University of California, Los Angeles d/b/a UCLA

(Name of the filing party)

Vs

Defendant(s)

AYLO HOLDINGS, S.A.R.L. (d/b/a PronHub, et al.

☑ Counsel of Record

☐ Individual, If Pro Se

Required Information:

Name: Alexander Nemiroff, Esq.

Address: Three Logan Sq., 1717 Arch St. Ste 610

Phila, PA 19103

Phone Number: 267-602-2040

Email Address: anemiroff@grsm.com

Attorney's State ID : 92250

Attorney's Firm ID :

GD-24-013043

[cover]

**IN THE COURT OF COMMON PLEAS OF ALLEGHENY COUNTY, PENNSYLVANIA**

| | |
|---|---|
| ALEXANDER RHODES, *et al.*, | : |
| | : |
| | : |
| | : |
| Plaintiffs, | :    No.: GD-24-013043 |
| | : |
| v. | : |
| | : |
| AYLO HOLDINGS, S.A.R.L (d/b/a | : |
| PornHub, *et al.*, | : |
| | : |
| Defendants. | : |
| | : |
| | : |
| | : |

## <u>ORDER OF COURT</u>

AND NOW this _____ day of _____, 2025, upon consideration of Plaintiffs' Motion for Additional Time to File a Complaint, and any Responses in Opposition thereto, it is hereby **ORDERED** that the Motion is **DENIED.**

BY THE COURT:

_____
J.

## IN THE COURT OF COMMON PLEAS OF ALLEGHENY COUNTY, PENNSYLVANIA

| | |
|---|---|
| ALEXANDER RHODES and NO FAP LLC, | : COURT OF COMMON PLEAS |
|  | : |
| Plaintiffs, | : ALLEGHENY COUNTY, PA |
|  | : |
| v. | : No.: GD-24-013043 |
|  | : |
| AYLO HOLDINGS, S.A.R.L (d/b/a PornHub, AYLO USA, INC. (d/b/a PornHub), AYLO GLOBAL ENTERTAINMENT, INC. (d/b/a Porn Hub), AYLO BILLING LIMITED (d/b/a PornHub), NICOLE PRAUSE, Ph.D., UNIVERSITY OF CALIFORNIA, LOS ANGELES, (d/b/a UCLA), DAVID LEY, Ph.D., and TAYLOR & FRANCIS GROUP, LLC., | : **RESPONSE IN OPPOSITION TO PLAINTIFFS' MOTION FOR ADDITIONAL TIME TO FILE A COMPLAINT** |
|  | : |
|  | : Filed on Behalf of: |
|  | : DEFENDANT, University of California, |
|  | : Los Angeles d/b/a UCLA |
|  | : |
| Defendants. | : COUNSEL OF RECORD FOR THIS |
|  | : PARTY: |
|  | : |
|  | : Alexander Nemiroff |
|  | : anemiroff@grsm.com |
|  | : PA ID #92250 |
|  | : |
|  | : Rebecca Simms |
|  | : rsimms@grsm.com |
|  | : PA ID #334183 |
|  | : |
|  | : GORDON & REES |
|  | : Three Logan Square |
|  | : 1717 Arch Street, Suite 610 |
|  | : Philadelphia, PA 19103 |
|  | : Telephone (267) 602-2040 |
|  | : Fax: (215) 693-6650 |
|  | : |
|  | : |

**IN THE COURT OF COMMON PLEAS OF ALLEGHENY COUNTY, PENNSYLVANIA**

| | |
|---|---|
| ALEXANDER RHODES, *et al.*, : | |
| : | |
| : | |
| : | |
| Plaintiffs, : | No.: GD-24-013043 |
| : | |
| v. : | |
| : | |
| AYLO HOLDINGS, S.A.R.L (d/b/a : | |
| PornHub, *et al.*, : | |
| : | |
| Defendants. : | |
| : | |
| : | |

**DEFENDANT, UNIVERSITY OF CALIFORNIA, LOS ANGELES d/b/a UCLA'S, RESPONSE IN OPPOSITION TO PLAINTIFFS' MOTION FOR ADDITIONAL TIME TO FILE A COMPLAINT**

Defendant, University of California, Los Angeles d/b/a UCLA ("UCLA"), by and through its undersigned attorneys, hereby files the within Response in Opposition to Plaintiffs' Motion for Additional Time to File a Complaint. Plaintiffs initiated this matter nearly one year ago, on November 13, 2024. UCLA filed a Praecipe for Rule to File Complaint nearly ten months later, on September 22, 2025 requiring Plaintiffs to file a Complaint within twenty days. Instead of filing their Complaint, Plaintiffs filed a Motion for Additional Time. For the following reasons Plaintiffs' Motion should be denied:

1.      Denied. UCLA is unaware of the basis of this matter as Plaintiffs have yet to file a Complaint.

2.      Paragraph 2 of Plaintiffs' Motion contains legal conclusions to which no response is required. To the extent a response may be required, the allegations set forth in Paragraph 2 of Plaintiffs' Motion are denied.

3.     Admitted in part, denied in part. It is admitted only that Plaintiffs' have named numerous defendants. UCLA is unaware of the basis of this matter, and whether it involves "complex legal and factual claims" as Plaintiffs have yet to file a Complaint. Therefore, the remaining allegations of Paragraph 3 of Plaintiffs' Motion are denied.

4.-12.   Admitted in part, denied in part. It is admitted only that on September 22, 2025, UCLA filed a Praecipe for Rule to File a Complaint directed to Plaintiffs. The remaining allegations of Paragraphs 4-12 of Plaintiffs' Motion are specifically denied.

By way of further response, Pa.R.C.P. No. 1037 provides that "[i]f an action is not commenced by a complaint, the prothonotary, upon praecipe of the defendant, shall enter a rule upon the plaintiff to file a complaint. If a complaint is not filed within twenty days after service of the rule, the prothonotary, upon praecipe of the defendant, shall enter a judgment of non pros." Pa.R.C.P. No. 1037(a).

Plaintiffs initiated this matter nearly one year ago, on November 13, 2024, and certainly have had sufficient time to draft their Complaint. Pennsylvania Rule of Civil Procedure 1037(a) creates a mandatory framework for complaint filing after service of a writ of summons. Pa.R.C.P. No. 1037(a). Furthermore, this Court "may extend or refuse to extend the time within which to meet a filing requirement so long as the action taken does not amount to an abuse of discretion which causes manifest and palpable injury to one of the parties." *Dillon by Dillon v. Nat'l R.R. Corp. (AMTRAK)*, 345 Pa. Super. 126, 134, 497 A.2d 1336, 1340 (1985) (quoting *Byard F. Brogan, Inc. v. Holmes Elec. Protective Co. of Philadelphia*, 501 Pa. 234, 241, 460 A.2d 1093, 1096 (1983)) (finding that the trial court did not abuse its discretion in denying a motion for extension where the appellant failed to adequately explain their delay and waited eight additional days after discovering the unopposed motion before filing the motion for extension).

**WHEREFORE**, Defendant, University of California, Los Angeles d/b/a UCLA, respectfully requests that this Honorable Court Deny Plaintiffs' Motion and enter the attached Order.

Respectfully submitted,

**GORDON REES SCULLY MANSUKHANI**

By: ___/s/ Alexander Nemiroff___
Alexander Nemiroff [92250]
Rebecca H. Simms [334183]
Three Logan Square
1717 Arch Street, Suite 610
Philadelphia, PA 19103
Telephone (267) 602-2040
Fax: (215) 693-6650
anemiroff@grsm.com
rsimms@grsm.com
*Attorneys for Defendant, University of*
*California, Los Angeles d/b/a UCLA*

Date: October 23, 2025

**IN THE COURT OF COMMON PLEAS OF ALLEGHENY COUNTY, PENNSYLVANIA**

| | | |
|---|---|---|
| ALEXANDER RHODES, *et al.*, | : | |
| | : | |
| | : | |
| | : | |
| Plaintiffs, | : | No.: GD-24-013043 |
| | : | |
| v. | : | |
| | : | |
| AYLO HOLDINGS, S.A.R.L (d/b/a | : | |
| PornHub, *et al.*, | : | |
| | : | |
| Defendants. | : | |
| | : | |
| | : | |

**DEFENDANT, UNIVERSITY OF CALIFORNIA, LOS ANGELES d/b/a UCLA'S, BRIEF IN OPPOSITION TO PLAINTIFFS' MOTION FOR ADDITIONAL TIME TO FILE A COMPLAINT**

Defendant, University of California, Los Angeles d/b/a UCLA ("UCLA"), by and through its undersigned attorneys, hereby files the within Brief in Opposition to Plaintiffs' Motion for Additional Time to File Complaint.  Plaintiffs have had nearly a full year to draft and file their Complaint, yet have failed to take even the most basic steps necessary to move the case forward. Plaintiffs failed to file a Complaint in response to Defendant's Rule to File Complaint.  Instead, they filed a Motion for Additional Time. Rule 1037(a) is mandatory in nature, not discretionary. Once a praecipe for a rule to file complaint has been entered, the rule imposes an obligation on Plaintiffs to file a Complaint within the prescribed twenty-day period or risk the entry of a non pros judgment. The rule's purpose is to prevent precisely this kind of protracted inactivity that burdens the courts and prejudices defendants forced to remain in procedural limbo.

## I.    FACTUAL AND PROCEDURAL HISTORY

Plaintiffs initiated this matter via Writ of Summons on November 13, 2024. *See* Plaintiffs'

Writ of Summons attached hereto as Exhibit "A." Despite filing the Writ of Summons, Plaintiffs failed to file, and still have not filed, a Complaint as of October 2025, nearly one full year after they initiated this action. On September 22, 2025, UCLA filed a Praecipe for Rule to File Complaint pursuant to Pa.R.C.P. No. 1037. *See* UCLA's Praecipe for Rule to File Complaint attached hereto as Exhibit "B." On October 14, 2025, Plaintiffs filed a Motion for Additional Time to File a Complaint. *See* Plaintiffs' Motion for Additional Time to File a Complaint attached hereto as Exhibit "C"; *see also* a Copy of this Court's Docket, attached hereto as Exhibit "D."

## II.    <u>LEGAL ARGUMENT</u>

This Court should deny Plaintiffs' Motion for Additional Time to File a Complaint. Pa.R.C.P. No. 1037 specifically provides that "[i]f an action is not commenced by a complaint, the prothonotary, upon praecipe of the defendant, shall enter a rule upon the plaintiff to file a complaint. If a complaint is not filed within twenty days after service of the rule, the prothonotary, upon praecipe of the defendant, shall enter a judgment of non pros." Pa.R.C.P. No. 1037(a).

Pennsylvania Rule of Civil Procedure 1037(a) creates a mandatory framework for complaint filing after service of a writ of summons. Pa.R.C.P. No. 1037(a). Furthermore, this Court "may extend or refuse to extend the time within which to meet a filing requirement so long as the action taken does not amount to an abuse of discretion which causes manifest and palpable injury to one of the parties." *Dillon by Dillon v. Nat'l R.R. Corp. (AMTRAK)*, 345 Pa. Super. 126, 134, 497 A.2d 1336, 1340 (1985) (quoting *Byard F. Brogan, Inc. v. Holmes Elec. Protective Co. of Philadelphia*, 501 Pa. 234, 241, 460 A.2d 1093, 1096 (1983)) (finding that the trial court did not abuse its discretion in denying a motion for extension where the appellant failed to adequately explain their delay and waited eight additional days after discovering the unopposed motion before filing the motion for extension).

Here, Plaintiffs' Motion for Additional Time to File a Complaint alleges that "Plaintiffs

are in the process of drafting a complaint and have been working diligently upon the same. Due to the scope of the complaint, Plaintiffs require additional time to finish their review and preparation of the same." *See* Exhibit "C" at ¶ 4. Plaintiffs initiated this matter nearly one year ago, on November 13, 2024, and certainly have had sufficient time to draft their Complaint and "finish their review and preparation of the same." Granting Plaintiffs' Motion would serve only to unnecessarily drag out the pleadings and discovery at the cost of all parties, and certainly require trial to be unnecessarily delayed – resulting in prejudice to the parties. Accordingly, UCLA respectfully requests that this Court Deny Plaintiffs' Motion for Additional Time to File a Complaint due to their ongoing dilatory conduct and failure to prosecute the claim.

## III.    **CONCLUSION**

For the foregoing reasons, Defendant, University of California, Los Angeles d/b/a UCLA, respectfully requests that this court deny Plaintiffs' Motion for Additional Time to File a Complaint

Respectfully submitted,

**GORDON REES SCULLY MANSUKHANI**

By:____/s/ Alexander Nemiroff____
Alexander Nemiroff [92250]
Rebecca H. Simms [334183]
Three Logan Square
1717 Arch Street, Suite 610
Philadelphia, PA 19103
Telephone (267) 602-2040
Fax: (215) 693-6650
anemiroff@grsm.com
rsimms@grsm.com
*Attorneys for Defendant, University of*
*California, Los Angeles d/b/a UCLA*

Date: October 23, 2025

## CERTIFICATE OF COMPLIANCE

I certify that this filing complies with the provisions of the *Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts* that require filing confidential information and documents differently than non-confidential information and documents.

**GORDON REES SCULLY MANSUKHANI**

By:    */s/ Alexander Nemiroff*
        Alexander Nemiroff [92250]
        Rebecca H. Simms [334183]
        Three Logan Square
        1717 Arch Street, Suite 610
        Philadelphia, PA 19103
        Telephone (267) 602-2040
        Fax: (215) 693-6650
        anemiroff@grsm.com
        rsimms@grsm.com
        *Attorneys for Defendant, University of California, Los Angeles d/b/a UCLA*

Date: October 23, 2025

## <u>CERTIFICATE OF SERVICE</u>

The undersigned counsel does hereby certify that on October 23, 2025, the foregoing **Response and Brief in Opposition to Plaintiffs' Motion For Additional Time to File a Complaint** was filed electronically and served on all counsel via email and/or First-Class Mail.

David M. Kobylinski, Esq.
Peter T. Kobylinski, Esq.
Praeterorian Law Group, LLC
304 Ross Street, Suite 510
Pittsburgh, PA 15219
*Counsel for Plaintiffs*

Aylo Holdings, S.A.R.L. (d/b/a PornHub)
6975 Decarie Blvd.
Montreal, Quebec
H3W 0B6

Aylo USA, Inc. (d/b/a PornHub)
610 Brazos Street, Suite 500
Austin, TX 78701

Aylo Global Entertainment, Inc. (d/b/a
PornHub)
610 Brazos Street, Suite 500
Austin, TX 78701

Aylo Billing Limited (d/b/a PornHub)
6975 Decarie Blvd.
Montreal, Quebec
H3W 0B6

Michael R. Abbott Esq
Cipriani & Werner, P.C.
450 Sentry Parkway, Suite 200
Blue Bell, PA 19422
(610) 567-070
mabbott@c-wlaw.com
*Counsel for Defendant, Nicole Prause, Ph.D.*

David Ley, Ph.D.
707 Broadway Blvd NE # 500
Albuquerque, NY 87102

Taylor & Francis Group, LLC
530 Walnut Street, Suite 850
Philadelphia, PA 19106


By:   /s/ Alexander Nemiroff
Alexander Nemiroff [92250]
Rebecca H. Simms [334183]
Three Logan Square
1717 Arch Street, Suite 610
Philadelphia, PA 19103
Telephone (267) 602-2040
Fax: (215) 693-6650
anemiroff@grsm.com
rsimms@grsm.com
*Attorneys for Defendant, University of
California, Los Angeles d/b/a UCLA*

Date: October 23, 2025

# EXHIBIT A

**IN THE COURT OF COMMON PLEAS OF ALLEGHENY COUNTY, PENNSYLVANIA**

| | |
|---|---|
| **Alexander Rhodes**<br>ACP # 1328<br>PO Box # 2465<br>Harrisburg, PA 17105-2465, | )<br>)<br>)<br>)<br>) |

CIVIL DIVISION

Docket #:  GD-24-

and

**NoFap LLC**
ACP # 1328
PO Box # 2465
Harrisburg, PA 17105-2465,

Plaintiffs,

**Aylo Holdings, S.A.R.L.** (d/b/a **PornHub**)
6975 Decarie Blvd.
Montreal, Quebec
H3W 0B6

and

**Aylo USA, Inc.** (d/b/a **PornHub**)
610 Brazos Street, Suite 500
Austin, TX 78701

And

**Aylo Global Entertainment, Inc.** (d/b/a
**PornHub**)
610 Brazos Street, Suite 500
Austin, TX 78701

And

**Aylo Billing Limited** (d/b/a **PornHub**)
6975 Decarie Blvd.
Montreal, Quebec
H3W 0B6

and

**Nicole Prause, Ph.D.**
100 Medical Plaza
Los Angeles, CA 90095

**PRAECIPE FOR WRIT OF SUMMONS**

**JURY TRIAL DEMANDED**

Filed on behalf of:  Plaintiff.

COUNSEL OF RECORD FOR THIS
PARTY:

David M. Kobylinski, Esquire
Pa. ID No.:  92233

Peter T. Kobylinski, Esquire
Pa. ID No.:  309832

PRAETORIAN LAW GROUP, LLC
304 Ross Street, Suite 510
Pittsburgh, PA  15219
(412) 281-6600

1

|   |   |
|---|---|
| and | ) |
|   | ) |
|   | ) |
| **University of California, Los Angeles** | ) |
| (d/b/a **UCLA**) | ) |
| 100 Medical Plaza | ) |
| Los Angeles, CA 90095 | ) |
|   | ) |
| and | ) |
|   | ) |
| **David Ley, Ph.D.** | ) |
| 707 Broadway Blvd NE # 500 | ) |
| Albuquerque, NY 87102 | ) |
|   | ) |
| and | ) |
|   | ) |
| **Taylor & Francis Group, LLC** | ) |
| 530 Walnut Street, Suite 850 | ) |
| Philadelphia, PA 19106 | ) |
|   | ) |
| Defendants. | ) |

IN THE COURT OF COMMON PLEAS OF ALLEGHENY COUNTY, PENNSYLVANIA

| | | |
|---|---|---|
| **Alexander Rhodes**, et al., | ) | |
| | ) | CIVIL DIVISION |
| Plaintiff, | ) | |
| | ) | Docket #:  GD-24- |
| v. | ) | |
| | ) | |
| **Aylo Holdings, S.A.R.L.** (d/b/a **PornHub**), | ) | **JURY TRIAL DEMANDED** |
| et al., | ) | |
| | ) | |
| Defendants. | ) | |

## PRAECIPE FOR WRIT OF SUMMONS

TO THE PROTHONOTARY:

Kindly issue a writ of summons in the above-captioned against matter for defendants

Aylo Holdings, S.A.R.L. (d/b/a PornHub), Aylo USA, Inc. (d/b/a PornHub), Aylo Global

Entertainment, Inc. (d/b/a PornHub), Aylo Billing Limited (d/b/a PornHub), Nicole Prause,

Ph.D., University of California, Los Angeles (d/b/a UCLA), David Ley, Ph.D. and Taylor &

Francis Group, LLC.

Papers may be served at the address set forth.

Respectfully submitted,

**PRAETORIAN LAW GROUP, LLC**


_____/s/ David M. Kobylinski_____
David M. Kobylinski, Esquire

*Counsel for Plaintiff*

Dated:  November 13, 2024

3

## CERTIFICATE OF COMPLIANCE

I certify that this filing complies with the provisions of the *Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts* that require filing confidential information and documents differently than non-confidential information and documents.

Submitted by:

_____/s/ David M. Kobylinski_____
David M. Kobylinski, Esquire (PA ID # 92233)

November 13, 2024

# Supreme Court of Pennsylvania

## Court of Common Pleas
## Civil Cover Sheet

_____ County
ALLEGHENY

| For Prothonotary Use Only: |
|---|
| Docket No: |

TIME STAMP

*The information collected on this form is used solely for court administration purposes. This form does not supplement or replace the filing and service of pleadings or other papers as required by law or rules of court.*

## SECTION A

**Commencement of Action:**
- [ ] Complaint
- [x] Writ of Summons
- [ ] Transfer from Another Jurisdiction
- [ ] Petition
- [ ] Declaration of Taking

Lead Plaintiff's Name:
Alexander Rhodes

Lead Defendant's Name:
Aylo Holdings, S.A.R.L. (d/b/a PornHub)

**Are money damages requested?** [x] Yes  [ ] No

Dollar Amount Requested:
(check one)
- [ ] within arbitration limits
- [x] outside arbitration limits

**Is this a *Class Action Suit*?** [ ] Yes  [x] No

**Is this an *MDJ Appeal*?** [ ] Yes  [x] No

Name of Plaintiff/Appellant's Attorney: DAVID M. KOBYLINSKI, ESQUIRE

[ ] **Check here if you have no attorney (are a Self-Represented [Pro Se] Litigant)**

## SECTION B

**Nature of the Case**: Place an "X" to the left of the **ONE** case category that most accurately describes your **PRIMARY CASE.** If you are making more than one type of claim, check the one that you consider most important.

**TORT** (*do not include Mass Tort*)
- [ ] Intentional
- [ ] Malicious Prosecution
- [ ] Motor Vehicle
- [ ] Nuisance
- [ ] Premises Liability
- [ ] Product Liability (*does not include mass tort*)
- [x] Slander/Libel/ Defamation
- [ ] Other: _____

**MASS TORT**
- [ ] Asbestos
- [ ] Tobacco
- [ ] Toxic Tort - DES
- [ ] Toxic Tort - Implant
- [ ] Toxic Waste
- [ ] Other: _____

**PROFESSIONAL LIABLITY**
- [ ] Dental
- [ ] Legal
- [ ] Medical
- [ ] Other Professional: _____

**CONTRACT** (*do not include Judgments*)
- [ ] Buyer Plaintiff
- [ ] Debt Collection: Credit Card
- [ ] Debt Collection: Other _____
- [ ] Employment Dispute: Discrimination
- [ ] Employment Dispute: Other _____
- [ ] Other: _____

**REAL PROPERTY**
- [ ] Ejectment
- [ ] Eminent Domain/Condemnation
- [ ] Ground Rent
- [ ] Landlord/Tenant Dispute
- [ ] Mortgage Foreclosure: Residential
- [ ] Mortgage Foreclosure: Commercial
- [ ] Partition
- [ ] Quiet Title
- [ ] Other: _____

**CIVIL APPEALS**
Administrative Agencies
- [ ] Board of Assessment
- [ ] Board of Elections
- [ ] Dept. of Transportation
- [ ] Statutory Appeal: Other _____
- [ ] Zoning Board
- [ ] Other: _____

**MISCELLANEOUS**
- [ ] Common Law/Statutory Arbitration
- [ ] Declaratory Judgment
- [ ] Mandamus
- [ ] Non-Domestic Relations Restraining Order
- [ ] Quo Warranto
- [ ] Replevin
- [ ] Other: _____

*Updated 1/1/2011*

# NOTICE

**Pennsylvania Rule of Civil Procedure 205.5. (Cover Sheet) provides, in part:**

**Rule 205.5.    Cover Sheet**

(a)(1)   This rule shall apply to all actions governed by the rules of civil procedure except the following:

(i)      actions pursuant to the Protection from Abuse Act, Rules 1901 et seq.

(ii)     actions for support, Rules 1910.1 et seq.

(iii)    actions for custody, partial custody and visitation of minor children, Rules 1915.1 et seq.

(iv)     actions for divorce or annulment of marriage, Rules 1920.1 et seq.

(v)      actions in domestic relations generally, including paternity actions, Rules 1930.1 et seq.

(vi)     voluntary mediation in custody actions, Rules 1940.1 et seq.

(2)      At the commencement of any action, the party initiating the action shall complete the cover sheet set forth in subdivision (e) and file it with the prothonotary.

(b)      The prothonotary shall not accept a filing commencing an action without a completed cover sheet.

(c)      The prothonotary shall assist a party appearing pro se in the completion of the form.

(d)      A judicial district which has implemented an electronic filing system pursuant to Rule 205.4 and has promulgated those procedures pursuant to Rule 239.9 shall be exempt from the provisions of this rule.

(e)      The Court Administrator of Pennsylvania, in conjunction with the Civil Procedural Rules Committee, shall design and publish the cover sheet.  The latest version of the form shall be published on the website of the Administrative Office of Pennsylvania Courts at www.pacourts.us.

# EXHIBIT B

**IN THE COURT OF COMMON PLEAS OF ALLEGHENY COUNTY, PENNSYLVANIA**

| | |
|---|---|
| ALEXANDER RHODES and NO FAP LLC, | COURT OF COMMON PLEAS |
| Plaintiffs, | ALLEGHENY COUNTY, PA |
| v. | No.: GD-24-013043 |
| AYLO HOLDINGS, S.A.R.L (d/b/a PornHub, AYLO USA, INC. (d/b/a PornHub), AYLO GLOBAL ENTERTAINMENT, INC. (d/b/a Porn Hub), AYLO BILLING LIMITED (d/b/a PornHub), NICOLE PRAUSE, Ph.D., UNIVERSITY OF CALIFORNIA, LOS ANGELES, (d/b/a UCLA), DAVID LEY, Ph.D., and TAYLOR & FRANCIS GROUP, LLC., | PRAECIPE FOR RULE TO FILE COMPLAINT |
| | Filed on behalf of: DEFENDANT, University of California, Los Angeles d/b/a UCLA |
| Defendants. | COUNSEL OF RECORD FOR THIS PARTY: |
| | Alexander Nemiroff anemiroff@grsm.com PA ID #92250 |
| | Rebecca Simms rsimms@grsm.com PA ID #334183 |
| | GORDON & REES Three Logan Square 1717 Arch Street, Suite 610 Philadelphia, PA 19103 Telephone (267) 602-2040 Fax: (215) 693-6650 |

**PRAECIPE FOR RULE TO FILE COMPLAINT**

TO THE PROTHONOTARY:

Please enter a Rule upon the Plaintiffs, Alexander Rhodes and NoFap, LLC, to file a

Complaint within twenty (20) days or suffer judgment of non pros.

Respectfully submitted,


By:    */s/ Alexander Nemiroff*
       Alexander Nemiroff [92250]

By:    */s/ Rebecca Simms*
       Rebecca Simms [334183]

GORDON & REES LLP
Three Logan Square
1717 Arch Street, Suite 610
Philadelphia, PA 19103
Telephone (267) 602-2040
Fax: (215) 693-6650
anemiroff@grsm.com
rsimms@grsm.com
*Attorneys for Defendant, University of*
*California, Los Angeles d/b/a UCLA*


Date: September 22, 2025

<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that on September 22, 2025 a true and correct copy of the within **Praecipe**

**For Rule to File a Complaint** was served upon counsel of record via the Electronic Filing System

and/or via Certified Mail at the following address:

David M. Kobylinski, Esq.
Peter T. Kobylinski, Esq.
Praeterorian Law Group, LLC
304 Ross Street, Suite 510
Pittsburgh, PA 15219
*Counsel for Plaintiffs*

Aylo Holdings, S.A.R.L. (d/b/a PornHub)
6975 Decarie Blvd.
Montreal, Quebec
H3W 0B6

Aylo USA, Inc. (d/b/a PornHub)
610 Brazos Street, Suite 500
Austin, TX 78701

Aylo Global Entertainment, Inc. (d/b/a
PornHub)
610 Brazos Street, Suite 500
Austin, TX 78701

Aylo Billing Limited (d/b/a PornHub)
6975 Decarie Blvd.
Montreal, Quebec
H3W 0B6

Nicole Prause, Ph.D.
100 Medical Plaza
Los Angeles, CA 90095

David Ley, Ph.D.
707 Broadway Blvd NE # 500
Albuquerque, NY 87102

Taylor & Francis Group, LLC
530 Walnut Street, Suite 850
Philadelphia, PA 19106

By:     s/ Alexander Nemiroff
        ALEXANDER NEMIROFF

# EXHIBIT C

IN THE COURT OF COMMON PLEAS OF ALLEGHENY COUNTY, PENNSYLVANIA

| | |
|---|---|
| **Alexander Rhodes,** et al., | ) |
| | ) CIVIL DIVISION |
| Plaintiffs, | ) |
| | ) |
| v. | ) Docket #: GD-24-13043 |
| | ) |
| **Aylo Holdings, S.A.R.L.** (d/b/a **Pornhub**) et al., | ) |
| | ) **MOTION FOR ADDITIONAL TIME TO** |
| | ) **FILE A COMPLAINT** |
| Defendants. | ) |
| | ) |
| | ) **JURY TRIAL DEMANDED** |
| | ) |
| | ) Filed on behalf of:  Plaintiffs. |
| | ) |
| | ) COUNSEL OF RECORD FOR THIS |
| | ) PARTY: |
| | ) |
| | ) David M. Kobylinski, Esquire |
| | ) Pa. ID No.:  92233 |

Peter T. Kobylinski, Esquire
Pa. ID No.:  309832

KOBYLINSKI + KOBYLINSKI
304 Ross Street, Suite 510
Pittsburgh, PA  15219
(412) 281-6600

**Served: 10/14/2025**

See Certificate of Service

I, Peter T. Kobylinski, Esq. hereby certify that this motion requests relief for a case that has never appeared on any published trial list, has not been designed complex, and/or complex designation is not pending.

IN THE COURT OF COMMON PLEAS OF ALLEGHENY COUNTY, PENNSYLVANIA

| | |
|---|---|
| **Alexander Rhodes,** et al., | ) |
| | ) CIVIL DIVISION |
| Plaintiffs, | ) |
| | ) CASE NO.:  GD-24-013043 |
| v. | ) |
| | ) |
| **Aylo Holdings, S.A.R.L.** (d/b/a **Pornhub**) et al., | ) |
| | ) |
| | ) |
| Defendants. | ) |

### NOTICE OF PRESENTATION

TO:    ALL DEFENDANTS

**PLEASE TAKE NOTICE** that the attached Motion for Additional Time to File a Complaint will be duly presented to the General Motions Judge in Courtroom 703 of the City-County Building on October 27, 2025, at 9:30am.

The Court will be asked to sign an order granting the prayer for relief.  You may appear and be heard at that time if you wish.

Respectfully submitted,

**PRAETORIAN LAW GROUP, LLC**


_____/s/  Peter T. Kobylinski_____
Peter T. Kobylinski, Esquire

*Attorney for Plaintiffs*

IN THE COURT OF COMMON PLEAS OF ALLEGHENY COUNTY, PENNSYLVANIA

| | | |
|---|---|---|
| **Alexander Rhodes,** et al., | ) | |
| | ) | CIVIL DIVISION |
| Plaintiffs, | ) | |
| | ) | CASE NO.:  GD-24-013043 |
| v. | ) | |
| | ) | |
| **Aylo Holdings, S.A.R.L.** (d/b/a **Pornhub**) et al., | ) | |
| | ) | |
| | ) | |
| Defendants. | ) | |

## PLAINTIFF'S MOTION FOR ADDITIONAL TIME TO FILE A COMPLAINT

Plaintiffs file the following Motion for Additional Time to File a Complaint and set forth the following:

1.  This matter stems, in part, from breaches of a settlement agreement by Defendant Prause. Defendant Prause has violated the contract thousands of times, often multiple times per day, necessitating extensive time for Plaintiffs to document, investigate, and summarize these breaches.

2.  Defendant Prause's breaches of the settlement agreement have persisted through the present. For example, on October 11, 2025, Defendant Prause posted on her X.com (formerly Twitter) account a photograph of Plaintiff Rhodes and his name, captured in a screenshot from Plaintiff NoFap's website, accompanied by disparaging content in violation of the settlement agreement.

3.  This matter involves complex legal and factual claims involving numerous defendants and causes of action.

4.      Plaintiffs are in the process of drafting a complaint and have been working diligently upon the same. Due to the scope of the complaint, Plaintiffs require additional time to finish their review and preparation of the same.

5.      The scope of this complaint is not intended to cause undue delay but is directly proportional to the breadth and severity of the tortious conduct to which Plaintiffs have been subjected by Defendants.

6.      Plaintiffs anticipate finalizing the complaint within the next forty-five (45) days.

7.      On September 22, 2025, Defendant UCLA filed a praecipe for rule to file a complaint directed to plaintiffs.

8.      Per Pa R.C.P. 1037, Plaintiffs are required to file a complaint on or before October 14, 2025 or request relief from the same.

9.      Unfortunately, due to the complexity of Plaintiffs' claims, Plaintiffs will not be able to finalize their complaint by this deadline.

10.    Plaintiffs respectfully request that this Court grant Plaintiffs' motion for additional time to file their complaint.

11.    Plaintiffs request an additional forty-five (45) days to file their complaint.

12.    Defendants will not be prejudiced by this brief extension of time.

WHEREFORE, Plaintiffs respectfully request that this Motion for Additional Time to File Complaint be granted.

Respectfully submitted,

**PRAETORIAN LAW GROUP, LLC**


   /s/ Peter T. Kobylinski
Peter T. Kobylinski, Esquire
304 Ross Street, Suite 510
Pittsburgh, PA 15219
(412) 281-6600

*Counsel for Plaintiffs*

October 14, 2025

## <u>CERTIFICATE OF SERVICE</u>

I certify that on this date I caused copies of the foregoing papers to be served on the person(s) listed below via regular mail:

| | |
|---|---|
| David Ley, Ph.D.<br>707 Broadway Blvd. NE #500<br>Albuquerque, NM 87102<br><br>*Defendant* | Jessica Sierras, Senior Operations<br>Parasec Incorporated<br>14001 W. State Hwy 29, #102<br>Liberty Hill, TX 78642<br><br>*Registered Agent for Aylo Holdings, SARL,*<br>*Aylo USA, Inc., Aylo Global Entertainment,*<br>*Inc. and Aylo Billing Limited (d/b/a Pornhub)* |
| Alexander Nemiroff, Esq.<br>Gordon & Fees<br>171 Arch Street, Suite 610<br>Philadelphia, PA 19103<br><br>*Counsel to Defendant UCLA* | Timothy Emmett Dages, President<br>Taylor + Francis Group, LLC<br>2385 NW Executive Center Drive, Ste 320<br>Boca Raton, FL 33431<br><br>*Defendant Taylor and Francis Group, LLC* |
| Michael R. Abbott, Esq.<br>Cipriani & Warner, P.C.<br>450 Sentry Parkway, Suite 200<br>Blue Bell, PA 19422<br><br>*Counsel to Nichole Prause, Ph.D.* | |

10/14/2025

_____/s/  Peter T. Kobylinski_____
PETER T. KOBYLINSKI

*Attorney for Plaintiffs*

## CERTIFICATE OF COMPLIANCE

I certify that this filing complies with the provisions of the *Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts* that require filing confidential information and documents differently than non-confidential information and documents.

Submitted by:

_____/s/  Peter T. Kobylinski_____
Peter T. Kobylinski, Esquire (PA ID # 309832)

# EXHIBIT D

### Allegheny County Department Of Court Records

Civil/Family Division Docket Report

**Run Date and Time: 10/23/2025 - 14:7:10**

| GD-24-013043 | | Rhodes etal vs Aylo Billing Limited etal |
|---|---|---|
| Filing Date: | 11/13/2024 | Case Type: | Defamation |
| Related Cases: | | Court Type: | General Docket |
| Consolidated Cases: | | Current Status: | Motion for Extension of Time |
| Judge: | Wagner Chelsa | Jury Requested: | N |
| Amount In Dispute: | $ 0 | | |

**--Parties--**

| LName | FName | MI | Type | Address | Initial Service Completion | Attorney |
|---|---|---|---|---|---|---|
| Rhodes | Alexander | | Plaintiff | ACP # 1328 PO Box 2465 Harrisburg PA 17105-2465 | -- | David M Kobylinski |
| NoFap LLC | | | Plaintiff | ACP #1328 PO Box 2465 Harrisburg PA 17105-2465 | -- | David M Kobylinski |
| Prause Ph.D. | Nicole | | Defendant | 100 Medical Plaza Los Angeles CA 90095 | -- | Michael Robert Abbott |
| Aylo Holdings S.A.R.L. | | | Defendant | 6975 Decarie Boulevard Montreal QU H3W 0B6 | -- | -- |
| Aylo USA Inc. | | | Defendant | 610 Brazos Street Suite 500 Austin TX 78701 | -- | -- |
| Taylor & Francis Group LLC | | | Defendant | 530 Walnut Street Suite 850 Philadelphia PA 19106 | -- | -- |
| Aylo Global Entertainment Inc. | | | Defendant | 610 Brazos Street Suite 500 Austin TX 78701 | -- | -- |
| University of California Los Angeles | | | Defendant | 100 Medical Plaza Los Angeles CA 90095 | -- | -- |
| Aylo Billing Limited | | | Defendant | 6975 Decarie Boulevard Montreal QU H3W 0B6 | -- | -- |
| Ley Ph.D. | David | | Defendant | 707 Broadway Boulevard Northeast #500 Albuquerque NM 87102 | -- | -- |

**--Attorney--**

| LName | FName | MI | Type | Address | Phone |
|---|---|---|---|---|---|
| Kobylinski | David | M | Plaintiff's Attorney | Kobylinski + Kobylinski 304 Ross Street Suite 510 Pittsburgh PA 15219 | 4122816600 |
| Kobylinski | Peter | T | Plaintiff's Attorney | Praetorian Law Group LLC 304 Ross Street Suite 510 Pittsburgh PA 15219 | 4122816600 |
| Abbott | Michael | Robert | Defendant's Attorney | 450 Sentry Parkway Suite 200 Blue Bell PA 19422 | 2155670700 |
| Nemiroff | Alexander | | Defendant's Attorney | | -- |

| --Non Litigants-- | | | | | |
|---|---|---|---|---|---|
| LName | FName | MI | Type | Address | Phone |
| Wagner | Chelsa | | Judge | | |

| --Docket Entries-- | | | |
|---|---|---|---|
| Filing Date | Docket Type | Docket Text | Filing Party |
| 10/14/2025 | Motion for Extension of Time | | Alexander Rhodes |
| 10/10/2025 | Praecipe for Appearance | For Michael R. Abbott Esq. on behalf of Nicole Prause Ph.D. | Michael Abbott Robert |
| 10/7/2025 | Order of Court | Dated: 10/06/2025. It is Ordered as follows: The Department of Court Records is directed to seal the Plaintiff's Motion for Alternative Service and this Court's Order dated October 6, 2025. See order for specifics. J. Wagner. As per Rule 236 Notice, copies sent to all parties 10/08/2025. | Chelsa Wagner |
| 10/6/2025 | Order of Court | Order of Court dated: 10/06/2025. It is hereby ordered that the plaintiffs' motion shall be and hereby IS GRANTED and plaintiff is permitted to serve defendant by the following means. See order for specifics. (Wagner, J.) As per Rule 236 Notice, copies sent to all parties 10/06/2025. | Chelsa Wagner |
| 10/6/2025 | Order of Court | Order of Court dated: 10/06/2025. It is hereby ordered that the Department of Court Records is directed to seal the plaintiff's Motion for Alternative Service and this Court's Order dated 10/06/2025. (Wagner, J.) As per Rule 236 Notice, copies sent to all parties 10/06/2025. | Chelsa Wagner |
| 9/22/2025 | Praecipe for Rule to File Complaint | | University of California Los Angeles |
| 9/17/2025 | Motion for Alternative Service | | Alexander Rhodes |
| 6/28/2025 | Writ Expired | Writ issued on 5/28/2025 2:04:14 PM expired as to Nicole Prause Ph.D. | |
| 5/28/2025 | Praecipe to Reissue Writ of Summons | | Alexander Rhodes |
| 4/16/2025 | Praecipe to Reissue Writ of Summons | | Alexander Rhodes |
| 4/15/2025 | Proof of Service | | Alexander Rhodes |
| 11/13/2024 | Praecipe for Writ of Summons | | Alexander Rhodes |

| --Alias Information-- | | |
|---|---|---|
| PornHub dba | | |
| PornHub dba | | |
| PornHub dba | | |
| UCLA aka | | |
| PornHub dba | | |

| --Judgments Against-- | | |
|---|---|---|
| Name | Amount | Satisfied(Y,N) |
| No Judgments Found | | |

| --Events Schedule-- |
|---|
| |

| Event Scheduled | Event Date & Time | Room Number | Judge/Hearing Officer |
|---|---|---|---|
| No Information Found | | | |

IN THE COURT OF COMMON PLEAS OF ALLEGHENY COUNTY, PENNSYLVANIA

**Alexander Rhodes,** et al.,      )
                                    )   CIVIL DIVISION

      Plaintiff,        )
                                    )   CASE NO.:  GD-24-013043

         v.         )
                                    )

**Aylo Holdings, S.A.R.L.** (d/b/a **Pornhub**) et  )
al.,                                    )
                                    )

      Defendants.      )

## ORDER OF COURT

AND NOW, on this **27th** day of **October**_____, 2025, upon consideration of

Plaintiff's Motion for Additional Time to File a Complaint, any response thereto, and for good

cause shown, it is hereby ORDERED that plaintiffs' motion shall be and hereby is GRANTED

and plaintiffs shall have an additional ~~forty-five (45)~~ ^THIRTY (30) days to file their complaint in this matter.

*NO ADDITIONAL EXTENSION*
*W/ OUT A SHOWING OF GOOD*
*CAUSE.*

BY THE COURT:

_____ J.

**IN THE COURT OF COMMON PLEAS OF ALLEGHENY COUNTY, PENNSYLVANIA**

| | |
|---|---|
| **Alexander Rhodes,** et al., | CIVIL DIVISION |
| Plaintiffs, | Docket #:  GD-24-13043 |
| v. | **MOTION TO AMEND COMPLAINT** |
| **Aylo Holdings, S.A.R.L. (**d/b/a **Pornhub**) et al., | |
| Defendants. | **JURY TRIAL DEMANDED** |

Filed on behalf of: Plaintiff.

COUNSEL OF RECORD FOR THIS PARTY:

David M. Kobylinski, Esquire
Pa. ID No.:  92233

Peter T. Kobylinski, Esquire
Pa. ID No.:  309832

PRAETORIAN LAW GROUP, LLC
304 Ross Street, Suite 510
Pittsburgh, PA  15219
(412) 281-6600

IN THE COURT OF COMMON PLEAS OF ALLEGHENY COUNTY, PENNSYLVANIA

| | | |
|---|---|---|
| **Alexander Rhodes,** et al., | ) | |
| | ) | CIVIL DIVISION |
| Plaintiffs, | ) | |
| | ) | CASE NO.:  GD-24-013043 |
| v. | ) | |
| | ) | |
| **Aylo Holdings, S.A.R.L. (**d/b/a **Pornhub**) et al., | ) | |
| | ) | |
| | ) | |
| Defendants. | ) | |

## <u>NOTICE OF PRESENTATION</u>

Kindly take notice that plaintiffs intends to present the following motion for leave to amend their complaint to the General Motions Judge in Courtroom 703 of the City County Building at December  17, 2025 at 9:30am. The Court will be asked to sign an order granting the prayer for relief. You may appear and be heard at that time if you wish.

Respectfully submitted,

**PRAETORIAN LAW GROUP, LLC**

Date:   12/3/2025

_____/s/ Peter T. Kobylinski_____
Peter T. Kobylinski, Esquire

IN THE COURT OF COMMON PLEAS OF ALLEGHENY COUNTY, PENNSYLVANIA

| | |
|---|---|
| **Alexander Rhodes,** et al., | ) |
| | )   CIVIL DIVISION |
| Plaintiffs, | ) |
| | )   CASE NO.:  GD-24-013043 |
| v. | ) |
| | ) |
| **Aylo Holdings, S.A.R.L. (**d/b/a **Pornhub**) et al., | ) |
| | ) |
| | ) |
| Defendants. | ) |

## PLAINTIFFS' MOTION FOR LEAVE TO AMEND COMPLAINT

Plaintiffs, through counsel, respectfully moves for leave to amend their complaint.  In support of their motion, plaintiffs state as follows:

1.      This lawsuit involves a long history of defamatory and derogatory conduct directed toward plaintiffs by defendant Prause.

2.      On November 26, 2025, plaintiffs filed their complaint.

3.      Upon review of the filed complaint, plaintiffs determined that an incorrect draft of the complaint was filed as opposed to the intended finalized version.

4.      Therefore, plaintiffs attach a true and correct copy of their proposed First Amended Complaint as Exhibit "A".

5.      Plaintiffs respectfully request this Court's permission for leave to amend their complaint to ensure the facts as pled accurately reflect the avers of plaintiffs.

6.      Plaintiffs' request will not prejudice defendants.

7.      Pursuant to Pa.R.C.P. 1033, a party may amend a complaint at any time upon being granted leave of court to ensure a pleading conforms to the factual avers of plaintiffs.

**Wherefore**, plaintiffs respectfully request leave to amend their complaint and to file the proposed First Amended Complaint attached hereto as Exhibit "A".

Respectfully submitted,

**PRAETORIAN LAW GROUP, LL**C


        /s/ Peter T. Kobylinski
Peter T. Kobylinski, Esquire
304 Ross Street, Suite 510
Pittsburgh, PA 15219
(412) 281-6600

*Attorneys for Plaintiff*

Dated:  12/3/2025

## <u>CERTIFICATE OF SERVICE</u>

I certify that on this date I caused copies of the foregoing papers to be served on the person(s) listed below by via regular mail:

| | |
|---|---|
| David Ley, Ph.D.<br>707 Broadway Blvd. NE #500<br>Albuquerque, NM 87102<br><br>*Defendant* | Jessica Sierras, Senior Operations<br>Parasec Incorporated<br>14001 W. State Hwy 29, #102<br>Liberty Hill, TX 78642<br><br>*Registered Agent for Aylo Holdings, SARL,*<br>*Aylo USA, Inc., Aylo Global Entertainment,*<br>*Inc. and Aylo Billing Limited (d/b/a Pornhub)* |
| Alexander Nemiroff, Esq.<br>Gordon & Fees<br>171 Arch Street, Suite 610<br>Philadelphia, PA 19103<br><br>*Counsel to Defendant UCLA* | Timothy Emmett Dages, President<br>Taylor + Francis Group, LLC<br>2385 NW Executive Center Drive, Ste 320<br>Boca Raton, FL 33431<br><br>*Defendant Taylor and Francis Group, LLC* |
| Michael R. Abbott, Esq.<br>Cipriani & Warner, P.C.<br>450 Sentry Parkway, Suite 200<br>Blue Bell, PA 19422<br><br>*Counsel to Nichole Prause, Ph.D.* | |

12/3/2025

/s/  Peter T. Kobylinski
PETER T. KOBYLINSKI

*Attorneys for Plaintiff*

**CERTIFICATE OF COMPLIANCE**

I certify that this filing complies with the provisions of the *Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts* that require filing confidential information and documents differently than non-confidential information and documents.

Submitted by:

_____/s/  Peter T. Kobylinski_____

12/3/2025          Peter T. Kobylinski, Esquire (PA ID # 309832)

**IN THE COURT OF COMMON PLEAS OF ALLEGHENY COUNTY, PENNSYLVANIA**

| | | |
|---|---|---|
| **Alexander Rhodes,** et al., | ) | |
| | ) | CIVIL DIVISION |
| Plaintiffs, | ) | |
| | ) | CASE NO.:  GD-24-013043 |
| v. | ) | |
| | ) | |
| **Aylo Holdings, S.A.R.L.** (d/b/a **Pornhub**) et al., | ) | |
| | ) | |
| | ) | |
| Defendants. | ) | |

**ORDER**

AND now, this _____th day of December, 2025, upon consideration of plaintiffs' motion for leave to amend their complaint, any response thereto, and for good cause shown, it is hereby ORDERED that:

1)    Plaintiffs' motion shall be and hereby is GRANTED;

2)    Plaintiffs are granted to leave to file the amended complaint attached to this motion as Exhibit "A".

BY THE COURT,

_____
J.

7

IN THE COURT OF COMMON PLEAS
OF ALLEGHENY COUNTY, PENNSYLVANIA

| | | |
|---|---|---|
| Alexander Rhodes, et al., | ) | GD-24-013043 |
| | ) | |
| | ) | **AMENDED COMPLAINT** |
| Plaintiffs, | ) | |
| v. | ) | |
| | ) | |
| Aylo Holdings S.A.R.L. (d/b/a Pornhub), | ) | **JURY TRIAL DEMANDED** |
| et al., | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |
| | ) | Filed on behalf of: Plaintiffs. |
| | ) | |
| | ) | COUNSEL OF RECORD FOR THE |
| | ) | PARTY |
| | ) | |
| | ) | David M. Kobylinski, Esquire |
| | ) | Pa. I.D. No. 92233 |
| | ) | dave@koby.law |
| | ) | |
| | ) | Peter T. Kobylinski, Esquire |
| | ) | Pa. I.D. No. 309832 |
| | ) | pete@koby.law |
| | ) | |
| | ) | 304 Ross Street, Suite 510 |
| | ) | Pittsburgh, PA 15219 |
| | ) | 412-281-6600 |
| | ) | |
| | ) | |

i

Exhibit "A"

IN THE COURT OF COMMON PLEAS
OF ALLEGHENY COUNTY, PENNSYLVANIA

| | | |
|---|---|---|
| Alexander Rhodes, et al., | ) | GD-24-013043 |
| | ) | |
| | ) | |
| Plaintiffs, | ) | |
| v. | ) | **JURY TRIAL DEMANDED** |
| | ) | |
| Aylo Holdings S.A.R.L. (d/b/a Pornhub), | ) | |
| et al., | ) | |
| | ) | |
| Defendants. | | |

### COMPLAINT

Plaintiffs Alexander Rhodes and NoFap LLC, through counsel, aver as follows:

**1.    Preliminary Statement**

1.    The world's largest pornography company conspired with others to intimidate and silence its targets through an illegal conspiracy that has turned Alexander Rhodes' life into a living nightmare.

2.    While falsely presenting itself as a sex positive and legal adult media business, Pornhub is a criminal racketeering operation that knowingly distributed illegal content hundreds of millions of times. It previously has been indicted and sued for proliferating videos of underaged individuals engaged in sexual acts as well as other videos of non-consensual sex.

3.    In or around 2015, Pornhub turned its sight on Alexander Rhodes and his organization NoFap LLC. NoFap LLC is a peer-support organization for persons affected by pornography addiction.

4.    To do so, Pornhub acted through its shills and professional mouthpieces, including Defendants David Ley, Ph.D. and Nicole Prause, Ph.D. These individuals portray themselves as

ii

Exhibit "A"

"scientists" on the cutting of forefront of sexuality; however, their "science" is a guise to mask porn industry disinformation and attack its targets.

5.    However, this is not a case about "science" and whose "science" is right. It is not "science" to falsely claim someone killed a dog or engaged in a mass shooting, domestic terrorism, or financial fraud. It is not "science" to falsely accuse someone of stalking or attempted murders. It is not "science" to interfere with another's business, breach a contract, or to undermine another's trademark rights. Defendants did all of this and more, to Plaintiffs countless times.

6.    What Defendants have done to Plaintiffs is not accidental. It is an intentional playbook they have used many other times to target many other people. Defendants did this to Gary Wilson, a cohort of Plaintiffs who also devoted his life to addressing pornography addiction and helping others affected by the same. After years of being targeted, on May 20, 2021, Gary Wilson took his own life. Following this tragedy, Defendant Prause celebrated Wilson's death publicly and in despicable fashion, literally gloating about the same.

7.    Defendants have also engaged in precisely the same type of defamatory attacks and false accusations against Laila Mickelwait, founder of Traffickinghub and the Justice Defense Fund. Mickelwait exposed Pornhub's illegal content, including that of minors and other forced sexual interactions.

8.    Defendants appear to have a "script," and they see no need to deviate from the same. Indeed, this lawsuit constitutes the second time Plaintiffs have had to come to court. Given Defendants' determined recalcitrance, an award of punitive damages is being sought in this case.

Exhibit "A"

## TABLE OF CONTENTS

1.   Preliminary Statement................................................................................................. ii

2.   Parties and Venue ...................................................................................................... 1

3.   Material and Operative Facts ..................................................................................... 2

 *Overview* ...................................................................................................................... 2

 *Background: The Plaintiffs* ....................................................................................... 16

 *Background of the Pornhub/Aylo Defendants* ........................................................ 22

 *Pornhub and Porn Addiction* .................................................................................. 25

 *Background of Defendant Nicole Prause* ................................................................ 26

  *Defendant Prause's Background at Idaho State University* ................................ 29

  *Defendant Prause's First Job with Defendant UCLA* ........................................ 31

 *Prior Complaints Submitted to Defendant UCLA by Third Parties* ........................ 32

  *Prause's Second Job with Defendant UCLA* ..................................................... 32

  *Defendant Prause and the Criminal Trafficking Enterprise OneTaste* .............. 34

 *Background of Defendant David Ley* ....................................................................... 36

 *Background of Gary Wilson* ..................................................................................... 38

 *The Extensive Targeting of Wilson* .......................................................................... 40

 *Real Your Brain on Porn* ......................................................................................... 41

  *Gary Wilson's Death* ........................................................................................... 45

4.   Background of The Prior Litigation........................................................................... 51

 *Early Interactions Between Plaintiffs and Defendants Ley and Prause* ................. 51

 *Defendants Ley and Prause Connecting Porn Addiction Recovery to Extremist Groups* .... 52

 *The Beginning of Defendant Prause's False Allegations of Criminality Targeting Plaintiff Rhodes* ................................................................................................................... 56

 *The Porn Industry Defendants Ley and Prause's Talking Points* ........................... 57

 *Plaintiff Rhodes Participates as a Witness Against Defendant Prause in Two Matters* ...... 58

 *The "Attempted Murder"* ........................................................................................ 58

 *The Prior Litigation: Procedural Background* ........................................................ 61

 *The Non-Disparagement Agreement* ....................................................................... 62

5.   Post-Settlement Disparagement ............................................................................... 63

6.   Disparagement Associated with Other Legal Actions .............................................. 67

 *Minc vs Prause* ........................................................................................................ 67

 *Prause vs Stebbins* ................................................................................................... 72

7.   The Taylor & Francis Paper...................................................................................... 73

1

Exhibit "A"

*Background of the Taylor & Francis Defendant* ........................................................ 73

*The Pornhub/Aylo Defendants' Involvement with the Taylor & Francis Paper* ...................... 81

*Data Falsification* ..................................................................................... 85

*Other Issues with the Taylor & Francis Paper* ......................................................... 90

*Promotion of the Taylor and Francis Paper* ............................................................ 92

*Communications Between Plaintiffs and Taylor & Francis* ............................................. 95

*The Conclusion of Defendant Taylor & Francis' Purported Investigation* ............................. 97

8.    The Porn Industry Succeeds in Getting Disinformation Published in NPR ........................ 98

9.    Disparagement in Publications ................................................................ 102

*The First Paper* ....................................................................................... 102

*The Second Paper* ..................................................................................... 104

*The Third Paper* ...................................................................................... 104

*The Forth Paper* ...................................................................................... 105

*The Fifth Paper* ...................................................................................... 106

*Defendant Prause's Announced Future Publications* ................................................... 107

   *The Conspiracy Paper* ............................................................................ 107

   The *"Vexatious Defamation Lawsuits"* and *"Moderation Issues [on NoFap]"* Papers ... 111

*Downstream Papers* .................................................................................... 111

*Disparagement at Events* .............................................................................. 112

10.    *Disparagement by Electronic Means* ........................................................ 118

*Disparagement in Blog Posts* .......................................................................... 123

*Disparagement in New Media* ........................................................................... 126

*Disparagement via Wikipedia Astroturfing* ............................................................ 127

*Disparagement via Social Media Posts* ................................................................ 132

*Disparagement via Email* .............................................................................. 144

*Other Disparagement* .................................................................................. 149

11.    Damages and Conclusion ..................................................................... 150

12.    The Pornhub Defendants' Common Enterprise .................................................. 158

Count I: Racketeering (RICO, 18 U.S.C. § 1962) ...................................................... 160

Count II: Unfair Competition under Lanham Act (15 U.S.C. § 1125(a)) ................................. 162

Count III: Trademark Dilution (15 U.S.C. § 1125(c)) ................................................. 163

Count IV: Trademark Infringement (15 U.S.C. § 1114) ................................................. 164

Count V: Trade Disparagement ........................................................................ 165

Count VI: Breach of Contract ........................................................................ 166

Exhibit "A"

Count VII: Fraudulent Inducement ................................................................ 167

Count VIII: Tortious Interference ................................................................ 169

Count IX: Defamation Per Se and Per Quod ................................................ 171

Count X: Publicity Placing Person in False Light ........................................ 174

Count XI: Publicity Given to Private Life .................................................... 175

Count XII: Intrusion into Private Affairs ..................................................... 176

Count XIII: Intentional Infliction of Emotional Distress ............................. 178

Count XIV: Civil Conspiracy ....................................................................... 179

Count XV: Gross Negligence and Negligence .............................................. 180

Count XVI: Negligent Hiring ....................................................................... 183

Count XVII: Declaratory Judgment .............................................................. 185

Exhibit "A"

**2.    Parties and Venue**

1.    Plaintiff Alexander Rhodes ("Plaintiff Rhodes") is a private individual residing in the Greater Pittsburgh region, Allegheny County, Pennsylvania, at all times material herein. Plaintiff Rhodes is of sound moral character and sound mind. He has never been charged with or convicted of any misdemeanor or felony, facts material to issues herein.

2.    Plaintiff NoFap LLC ("Plaintiff NoFap") is organized under the laws of Pennsylvania, with its principal place of operations in the Greater Pittsburgh region, Allegheny County, Pennsylvania, at all times material herein. Plaintiff Rhodes is the founder of Plaintiff NoFap. Plaintiff NoFap operates a secular, science-supported, and sex-positive peer-support website for recovery from pornography addiction.

3.    Defendant Aylo Holdings S.A.R.L., formerly MindGeek Holdings S.A.R.L. and doing business under the name Pornhub, is a foreign entity incorporated in Luxembourg, conducting business in the United States and serving customers in Pennsylvania.

4.    Defendant Aylo USA Incorporated, formerly MindGeek USA Incorporated and doing business under the name Pornhub, is a Delaware corporation conducting business throughout the United States, including in the Commonwealth of Pennsylvania.

5.    Defendant Aylo Global Entertainment Incorporated, formerly MindGeek Global Entertainment and doing business under the name Pornhub, is a Delaware corporation conducting business throughout the United States, including in the Commonwealth of Pennsylvania.

6.    Defendant Aylo Billing Limited, formerly MG Billing Ltd. and doing business under the name Pornhub, is a foreign entity incorporated in Ireland, conducting business throughout the United States, including in the Commonwealth of Pennsylvania.

Exhibit "A"

7. Collectively, the four Pornhub/Aylo Defendants shall be referred to as the "Pornhub/Aylo Defendants" or simply "Pornhub".

8. Defendant Nicole Prause ("Defendant Prause") is an individual believed to reside within Los Angeles County, California.

9. Defendant David Ley ("Defendant Ley") is an individual believed to reside within New Mexico.

10. Defendant Taylor & Francis Group ("Defendant Taylor & Francis") is currently a Delaware corporation (previously, a Pennsylvania corporation) with offices at Suite 850, 530 Walnut Street, Philadelphia, Pennsylvania 19106.

11. Defendant University of California Los Angeles (d/b/a UCLA) ("Defendant UCLA") is a California organization. Defendant UCLA's Office of the General Counsel is located at 1111 Franklin Street, 8th Floor, Oakland, CA 94607-5200.

12. Venue is appropriate in Allegheny County as the cause of action arose herein.

## 3. Material and Operative Facts

*Overview*

13. This is not a lawsuit about the cultural debates surrounding the use of legal pornography by consenting adults. This is a lawsuit about disinformation, sexual exploitation, and a criminal racketeering operation, in which a multinational, wealthy, and powerful pornography conglomerate—raking in hundreds of millions of dollars per year—and its collaborators use illegal and unethical tactics to target therapists, scientists, journalists, authors, educators, politicians, addicts in recovery, recovery peer support groups, pornography recovery and filtering software providers, academic journals, survivors of sexual exploitation, whistleblowers, critics, and anyone else who interferes with their efforts to make as much money as possible.

2

Exhibit "A"

14.     In this matter, the Pornhub/Aylo Defendants conspired with Defendants Prause and Ley to conduct a disinformation campaign aimed to suppress and shut down the largest porn addiction recovery peer-support platform. Much of this disinformation campaign occurred in breach of a Non-Disparagement Agreement arising from prior litigation. Defendants UCLA and Taylor & Francis knowingly aided and abetted the scheme, providing substantial assistance with actual knowledge of the wrongful activities. This action is brought to hold the Defendants accountable for their misconduct and to enforce the contract.

15.     Pornhub is one of the most visited websites in the world. According to Semrush.com, a search engine marketing data aggregator, Pornhub was the world's eighth most searched-for website in January 2025. With their tremendous financial resources and influence, the Pornhub/Aylo Defendants engaged in an extensive disinformation campaign to mislead professionals and the public about the potential adverse mental health effects of its product. The Pornhub/Aylo Defendants covertly collaborated with Defendant Prause and Defendant Ley to sway the public narrative about problematic pornography use ("PPU"), suppress legitimate scientific research, publish industry-aligned academic papers to create the appearance of scientific controversy, influence professional organizations, and prevent governmental regulation such as age verification.

16.     The Pornhub/Aylo Defendants go to great lengths to masquerade as a legitimate business through reputation management (such as publicists and marketing) and online astroturfing (such as on Wikipedia and social media). The Pornhub/Aylo Defendants have changed their name multiple times (from Mansef, to Manwin, to MindGeek, to Aylo and Ethical Capital Partners) and have engaged in sophisticated strategies to reduce their risk, reduce tax liability, and obfuscate

Exhibit "A"

their business structure (such as allegedly incorporating dozens of shell companies and funneling money to tax havens).

17.    While presenting itself as a sex-positive and legal commercial sex industry operation, the Pornhub/Aylo Defendants simultaneously partnered with sex traffickers (such as GirlsDoPorn) and, as verified by internal communications and metrics obtained through legal discovery, knowingly stored and distributed tens of thousands of videos featuring child sexual abuse material ("CSAM", often colloquially referred to as "child porn") hundreds of millions of occasions, making the Pornhub/Aylo Defendants one of largest distributors of CSAM in the world.

18.    The Pornhub/Aylo Defendants intentionally turned a blind eye to sexually exploitative content, didn't verify the ages or consent of individuals appearing in content, didn't remove illegal content flagged by survivors and third parties, didn't report anyone uploading CSAM to law enforcement for over a decade (Pornhub was created in 2007 and reportedly never filed any law enforcement reports until 2020). Despite the Pornhub/Aylo Defendants having recently deleted over 90% of the website's content, making changes to their upload policies, and attempting to rebrand following widespread public condemnation of their practices, survivors have continued to come forward with allegations that the company is still profiting from sexually exploitative content.

19.    As a result of the proliferation of CSAM and other content featuring sexual exploitation (such as rape, voyeurism, non-consensually filmed and/or distributed material, and sex trafficking) on their website, the Pornhub/Aylo Defendants have been embroiled with 27 lawsuits and counting (initiated by approximately 300 survivors, including RICO cases and multiple class actions on behalf of thousands of child victims), widespread condemnation, law enforcement investigations, an arraignment and deferred prosecution agreement by the U.S.

Exhibit "A"

government for engaging in unlawful monetary transactions involving sex trafficking proceeds, a Canadian parliamentary investigation (concluding that Pornhub was at-fault), an Office of the Privacy Commissioner of Canada investigation (concluding that Pornhub was at-fault), had their payment processors (Mastercard, Visa, Discover, and PayPal) cut ties, and were admonished by twenty-six state attorney generals.

20.    Rather than focusing on cleaning up the legacy porn industry, the Pornhub/Aylo Defendants have masked their misconduct and repeatedly denied wrongdoing, and their surrogates such as Defendant Prause, Defendant Ley, and the porn industry's primary trade association "Free Speech Coalition" have opted to take an aggressive stance toward the pornography industry's critics and other people who they view as threats to their cash flow. Anyone who stands in their way—from anti-sexual exploitation campaigners, to scientists, to clinicians, to journalists, to porn addiction recovery peer-support groups—gets similar treatment by the porn industry leadership and their collaborators.

21.    The porn industry's playbook includes a wide variety of actions intended to suppress their targets, including but not limited to academic fraud (disseminating disinformation, including with data falsification, in academic journals and conferences, without disclosure of conflicts of interest), obstructing academic research (such as attempting to get papers retracted, preventing papers from getting published through peer review and by sitting on the editorial boards of journals, and influencing or intimidating other researchers), opposition research, surveillance, data mining, pitching (and funneling disinformation and malinformation) to journalists to get negative stories placed, coordinated cyberbullying and cyberstalking, defamation (such as writing thousands of emails and social media messages intended to malign and deplatform targets), online astroturfing (such as Wikipedia page editing with sockpuppet accounts), false administrative

5

Exhibit "A"

reports to state agencies and employers and licensing organizations, false law enforcement reports, strategic lawsuits against public participation, hacking (and publicly disseminating hacked and data-mined data, such as embarrassing photographs), baseless legal threats (cease and desist letters, DMCA notices, and other legal notices to censor information), staging hoaxes (such as "death threats" and other crimes, often to discredit targets), impersonation, attacks on trademark rights, doxxing (such as posting personal information online), and targeting family members (such as opposition research, defamation, hacking, and distributing intimate photographs).

22.    For years, NoFap was the largest platform for recovering porn addicts. Similar to Alcoholics Anonymous and other peer support groups, Plaintiff NoFap focuses on recovery, not advocacy against the creation or consumption of legal pornography by consenting adults. Rather than leaving porn addicts alone to recover without interference, entities within the porn industry have endeavored to suppress Plaintiff NoFap through a carefully orchestrated, extensive, years-long disinformation campaign. The porn industry's campaign devastated Plaintiff NoFap, severely damaging its reputation, dismantling its operations, and making it increasingly difficult for NoFap to remain online, reducing its web traffic to a fraction of its prior levels.

23.    Upon information and belief, the Pornhub/Aylo Defendants and their collaborators such as Defendant Prause and Defendant Ley (collectively, the Pornhub/Aylo Defendants, Defendant Prause, and Defendant Ley shall be referred to as the "Porn Industry Defendants"), aim to suppress public and professional discussion about problematic pornography use, obstruct further research into PPU, prevent the classification of compulsive pornography use as a behavioral addiction, and impede downstream governmental regulation such as mandatory age verification laws. The pornography industry's disinformation campaign is not without precedent: the tobacco industry engaged in a systemic, decades-long disinformation effort—including the use of industry-

Exhibit "A"

aligned academics—to mislead regulators, academia, and the public about the nature and risks of its products. *See United States v. Philip Morris USA Inc.*, 449 F. Supp. 2d 1, 27 (D.D.C. 2006) *(finding defendants liable under RICO for a disinformation campaign)*. In the internet age, the pornography industry has adopted similar tactics—amplified by digital reach and personal targeting—to discredit critics, distort science, and suppress its perceived adversaries.

24.     Reducing excessive and otherwise maladaptive behavior is a common-sense concept, whether it's eating, alcohol use, other substance use, gambling, playing video games, using social media, or masturbating to pornography. The vast preponderance of scientific research supports that excessive pornography use can lead to adverse outcomes, including brain changes consistent with the behavioral addiction model, contributing to the World Health Organization formally recognizing Compulsive Sexual Behavior Disorder in 2019.

25.     While recovery from problematic pornography use is not legitimately controversial, the Pornhub/Aylo Defendants and their collaborators have endeavored to label recovery resources as controversial, disreputable, harmful, and unscientific. The Porn Industry Defendants have attempted to frame problematic pornography use as a religiously motivated invention, disinformation, pseudoscience, moral incongruence (leading to shame) with unremarkable or healthy sexual behavior, conservative sexual values (such as anti-pornography, anti-sex, or anti-masturbation), harmful misdiagnosis (claiming problematic pornography use is always just a symptom of an underlying issue such as depression, anxiety, or narcissism), along with mislabeling the goal of reducing or quitting pornography use as a harmful "abstinence" "anti-masturbation" "treatment", akin to alternative medicine (such as homeopathy), and profiteering. Further, the Porn Industry Defendants have sought to artificially connect porn addiction recovery to a wide range of unrelated subjects, such as anti-LGBTQIA+ conversion therapy, conspiracy theories, criminality

Exhibit "A"

(such as threats, mass shootings, violence, and terrorism), controversial online movements (such as the incel, MGTOW, manosphere, men's rights, and anti-feminism communities), extremism and discriminatory views (such as misogyny, antisemitism, and hate groups), sexual abuse, and politics (such as the far-right, censorship, and Christian nationalism).

26.    Since at least 2016, Defendant Prause has repeatedly targeted Plaintiffs through a variety of tortious actions, usually in collaboration with Defendant Ley. Her conduct has often followed a recurring pattern: make defamatory statements about Plaintiffs, falsely portray herself as a victim of Plaintiff NoFap or its users, and mischaracterize Plaintiffs' rare and good faith defenses as attacks against her. For example, Defendant Prause filed a false report against Plaintiffs with the Pennsylvania Department of State, temporarily got a television appearance for The Doctors canceled by falsely claiming to producers that Plaintiff Rhodes was stalking her and was subject to a restraining order (to date, Plaintiff Rhodes has never met or seen Defendant Prause, nor has he ever been the subject of a restraining order), claimed to have reported Plaintiff Rhodes to the FBI for "cyberstalking", commented that Plaintiff Rhodes stalked multiple women online "in violation of no-contact orders", repeatedly edited the Wikipedia page about NoFap, and posted a wide variety of false and defamatory statements about Plaintiffs online (for example, staging hoaxes that NoFap users sent her threats, posting that NoFap was a hate group and supportive of misogyny, creating and spreading disinformation that Plaintiffs "promoted" and "worked with" the Proud Boys far-right political group, and asserting that Plaintiff Rhodes was faking his symptoms for financial gain) using her name and various aliases.

27.    As the porn industry disinformation campaign continued to escalate—particularly Defendant Prause's actions—Plaintiffs filed suit against Defendant Prause and Liberos LLC in

Exhibit "A"

October 2019 for defamation and related claims (the "Prior Litigation"). *Rhodes v. Prause et al.,*
*No. 2:19-cv-01366-MPK (W.D. Pa.).*

28.    Entities within the pornography industry responded to Prior Litigation by
mobilizing industry members and allies to publish articles, post on social media, and otherwise
disseminate disinformation regarding the case.

29.    Various other women and men, including journalists, therapists, doctors,
academics, educators, and authors, have come forward to claim that they've also been targeted by
Defendant Prause and her collaborators, generally after they expressed opinions regarding
pornography. Multiple targets of Defendant Prause previously filed reports with the California
Board of Psychology. Defendant Prause has also accused various organizations and individuals of
causing or sending her threats, including but not limited to Fight the New Drug, Exodus Cry, the
National Center on Sexual Exploitation, Rebecca Watson, Laila Mickelwait, Gail Dines, IITAP
and Stefanie Carnes, Reboot Nation and Gabe Deem, the Society for the Advancement of Sexual
Health, and The Post Millennial. At least eleven Defendant Prause targets have submitted sworn
statements regarding her conduct: John Adler, D.J. Burr, Stefanie Carnes, Geoff Goodman,
Bradley Green, Linda Hatch, Donald Hilton, Laila Mickelwait, Aaron Minc, Staci Sprout, and
Gary Wilson.

30.    Defendant Ley has maintained a collaborative relationship with the pornography
industry, such as filming videos to "address the science and [debunk] the pseudoscience [of] anti-
masturbation campaigns like #NoNutNovember" with xHamster, regularly working with Free
Speech Coalition, maintaining personal relationships with pornography producers and performers,
and having his book endorsed by Pornhub.

Exhibit "A"

31.     After extended litigation, the Prior Litigation settled in February 2021. The terms of the settlement agreement were clear: Defendant Prause agreed to not disparage Plaintiff Rhodes and Plaintiff NoFap in any capacity. A true and correct copy of the same is attached hereto as Exhibit "A". This contract will be referred to as the "Non-Disparagement Agreement".

32.     Defendant Prause also settled two other defamation lawsuits initiated by Minc LLC (the law firm then representing Plaintiffs, who she falsely accused of sending her "physical location" to a "group that offered to kill me multiple times") and Donald Hilton (who she falsely accused of sexual harassment, stalking, cyberstalking, threatening her, and falsifying his credentials), with Defendant Prause paying damages and issuing written retractions for her false statements against them.

33.     Since the Prior Litigation settled, Defendant Prause has violated the Non-Disparagement Agreement thousands of times—often daily, in what often appears to be a full-time endeavor—often with the assistance of Defendant Ley.

34.     Defendant Prause has attempted to frame Plaintiff Rhodes with serious crimes, such as purporting to file (false) reports against Plaintiff Rhodes with law enforcement for "attempted murder" against her and "domestic terrorism" while publicly branding herself to be a victim of such fabrications. Defendant Prause claimed that Plaintiff Rhodes was under investigation by the "Pittsburgh Bureau of Police Crime Analysis / Intelligence" and which was referred to the "Joint Terrorism Task Force" for "a suspected felony on or about May 19, 2022". To date, Plaintiff Rhodes has not been contacted by any law enforcement agency in connection with Defendant Prause's defamatory allegations or her purported (false) reports.

35.     Since executing the Non-Disparagement Agreement, Defendant Prause has continued to falsely claim that Plaintiff Rhodes disseminated her physical address online and either

Exhibit "A"

personally physically grabbed her in Los Angeles or directed or caused another individual to do so.

36.    Defendant Prause has engaged in retaliatory conduct against witnesses and others perceived to be supportive of the Prior Litigation by filing vexatious lawsuits (none of which Defendant Prause has won), submitting false administrative reports, and repeatedly targeting them with defamatory statements online. Since executing the Non-Disparagement Agreement, Defendant Prause has impersonated NoFap users by creating alias accounts to post content that violated platform policies on the NoFap subreddit and Discord server.

37.    Plaintiff Rhodes came from a modest background, something he has never previously discussed in any publicly viewable manner. As a result, he experienced an unstable childhood, marred by periods of neglect and sexual abuse. During the Prior Litigation, Defendant Prause's counsel engaged a private investigation firm (upon information and belief, Matthew Bernstein from CoventBridge) to conduct opposition research on Plaintiff Rhodes, collecting information from an estranged and unstable biological family member of Plaintiff Rhodes, Plaintiff Rhodes' biological mother ("Azeff"). Plaintiff had previously distanced himself from this individual (and eventually cut her out of his life) after she made contradictory accusations against various family members, exhibited increasingly concerning behavior, and was accused by a family member of sexually abusing Plaintiff Rhodes while he was a child.

38.    Despite Defendant Prause's execution of the Non-Disparagement Agreement, Defendant Prause and Defendant Ley continued to cultivate Azeff, shop her to journalists, and collaborate with her to concoct and disseminate additional false and defamatory statements concerning Plaintiff Rhodes. These many false and defamatory statements included claims that Plaintiff Rhodes attempted to murder Azeff; that Plaintiff Rhodes had men following Azeff, spying

Exhibit "A"

on her, and attempting to kill her; that Plaintiff Rhodes attempted to murder Defendant Prause, traveling with a firearm to Los Angeles and camera to livestream the supposed murder; that Plaintiff Rhodes paid Matt Fradd (a well-known Catholic podcast host) $1000 to assault Defendant Prause; that Plaintiff Rhodes is a vexatious litigant; that Plaintiff Rhodes is abusive to women; that Plaintiff Rhodes attempted to commit mass shootings on two occasions; that Plaintiff Rhodes is a fraudster who made up using pornography; that Plaintiff Rhodes is severely mentally ill and "received additional mental health diagnoses concerning psychotic delusions of persecution" explaining his claims of being targeted by the porn industry; that Plaintiff Rhodes committed insurance fraud twice; that Plaintiff Rhodes harbored and expressed discriminatory beliefs; that Plaintiff NoFap is secretly funded by the Latter-day Saints church; that Plaintiff Rhodes engaged in tax evasion; that Plaintiff Rhodes is an illegal hacker; that the fundraiser for the prior litigation was fraudulent; and that Defendant Prause is a victim of Plaintiff Rhodes, with the Prior Litigation being "just his latest manifestation of his struggles with severe mental illness".

39.    In collaboration with Azeff, Defendant Prause and Defendant Ley were involved in communications with a Pittsburgh-area man named Doug Allen. Upon information and belief, in communications between Azeff and Doug Allen, further defamatory statements were concocted, including that Plaintiff Rhodes had a "gay ex-lover" and "forced him to masturbate watching Thailand child porn, then threatened his family"; that Plaintiff Rhodes was a secret accomplice to a mass shooting; that he sent a person "unsolicited pornographic online video chats"; that a woman claimed that she "caught her husband and Alex Rhodes masturbating on a Zoom calls [sic] and then was sent death threats"; and that he killed a dog to threaten a person who "threatened to go public" about how Plaintiff Rhodes "gamed the search engines" through "black hat" search engine optimization tactics.

Exhibit "A"

40.     Upon information and belief, in an email, Doug Allen described to Azeff how she could financially benefit from making accusations against Plaintiffs, writing "this book WILL be a money-maker […] I anticipate you will be able to get $8000 to $15,000 just for keynote speaking engagements."

41.     Upon information and belief, Defendant Prause paid for a Fiverr.com gig to disseminate Azeff's statements repeatedly across the Internet and emailed statements purportedly authored by Azeff to Plaintiffs' professional colleagues, including after execution of the Non-Disparagement Agreement.

42.     Upon information and belief, both Defendant Prause and Ley assisted Azeff with opposition research, with Defendant Ley even submitting a sworn declaration in support of Azeff.

43.     Since executing the Non-Disparagement Agreement, Defendant Prause has created numerous new Wikipedia accounts (legal discovery and other metadata unveiled that, upon information and belief, over 80 Wikipedia illicit sockpuppet aliases have been operated by Defendant Prause to date) to continue adding disparaging statements and influence Wikipedia pages, including over 30 aliases to control the page about NoFap. Since executing the Non-Disparagement Agreement, Defendant Prause and her collaborators have continued to publish false, defamatory, and disparaging statements about Plaintiffs on social media nearly every day, often multiple times per day.

44.     Defendants have attempted to undermine Plaintiff NoFap's trademark rights and falsify its history, disseminating fictions in papers, on social media, and in blog posts, generating disinformation which has been republished by others. Defendant Prause has appeared on over twenty podcasts to disparage Plaintiffs in violation of the Non-Disparagement Agreement, including but not limited to Dan Savage's Savage Lovecast, Rena Malik's YouTube channel, the

Exhibit "A"

TwoX Labs podcast, and Sarah Kell's "Psych and the City" episode titled "NO FAP! NO SCIENCE!". During the latter, Defendant Prause again falsely claimed that she was sexually assaulted outside of her laboratory because of Plaintiffs, further manufacturing that "[t]hey are able to threaten or do things because they have money to get out of it."

45.    Despite executing the Non-Disparagement Agreement, Defendant Prause has gone so far as to utilize photographs and videos of Plaintiff Rhodes to disparage him on social media and even on-stage while presenting at a conference.

46.    Since executing the Non-Disparagement Agreement, Defendant Prause has continued to email and otherwise contact various third parties with disparaging statements concerning Plaintiff NoFap and Plaintiff Rhodes, reach out to people who mention Plaintiff NoFap to discourage them from affiliating with or supporting Plaintiffs, and otherwise cause significant and widespread damage to Plaintiff NoFap's reputation and relationships. Defendant Ley intentionally and knowingly acted in concert with Defendant Prause.

47.    Since executing the Non-Disparagement Agreement, Defendant Prause has continued to disseminate disinformation to her associates to spread further disparaging statements concerning Plaintiff Rhodes. Since executing the Non-Disparagement Agreement, Defendant Prause has been in communication with multiple journalists, successfully getting disparaging stories published in *NPR* by Lisa Hagen, *The Sun* by John Mac Ghlionn, *Slate* by Will McCurdy, and *IFLScience* by James Felton targeting Plaintiff Rhodes and Plaintiff NoFap—all in violation of the Non-Disparagement Agreement.

48.    One of the most egregious Non-Disparagement Agreement breaches occurred when Defendant Prause and Defendant Ley purportedly co-authored a paper in an academic journal, *Deviant Behavior*, published by Defendant Taylor & Francis. The paper titled "Violence on Reddit

Exhibit "A"

Support Forums Unique to r/NoFap", a clear attempt to "deplatform" Plaintiff NoFap from the popular social media website Reddit.com. Defendants Prause and Ley's paper claimed that Plaintiff NoFap's subreddit contained a disproportionate number of violent posts compared to other peer-support subreddits. The paper was extensively data-falsified, contained numerous false and defamatory statements along with disparaging statements in violation of the Non-Disparagement Agreement, and relevant conflicts of interest were not declared. Despite receiving written notice and evidence of the academic fraud, Defendant Taylor & Francis decided not to retract the contract-breaching and data falsified paper, and not even require the Defendants Prause and Ley to declare conflicts of interest such as the Prior Litigation and ensuing bankruptcy, sweeping the matter under the rug in violation of Defendant Taylor & Francis' own stated policies.

49.    Upon information and belief, this libelous Taylor & Francis journal article was authored with the assistance and coordination of Pornhub.

50.    Cumulatively, Defendant Prause has collaborated with Defendant Ley and the Pornhub/Aylo Defendants to disparage Plaintiff NoFap and Plaintiff Rhodes to millions of people after she executed the Non-Disparagement Agreement.

51.    Despite Defendant Prause having a documented history of concerning conduct, including a criminal conviction (specifically, Domestic Violence-Violation of Protection Order) for physically stalking a student at a university she was a faculty member at in 2010, and despite Defendant UCLA receiving notice from Gary Wilson and others that she was continuing this general pattern of behavior, Defendant UCLA nevertheless permitted Defendant Prause to continue utilizing university resources to advance the interests of the pornography industry, lending the veneer of institutional credibility to her actions. Defendant Taylor & Francis, an academic publisher, knowingly allowed Defendants Prause and Ley to engage in data falsification,

Exhibit "A"

publish objectively false and defamatory disinformation, not declare numerous conflicts of interest (in violation of Defendant Taylor & Francis' own stated policies), and breach the Non-Disparagement Agreement in collaboration with the Pornhub/Aylo Defendants.

52.    The Defendants' course of conduct has had catastrophic effects on Plaintiff NoFap (resulting in enormous financial losses, steadily declining web traffic, and nearly causing the website to shut down), Plaintiff Rhodes (leaving him with six figures of financial debt), and a planned 501(c)(3) nonprofit organization that was ultimately unable to launch. The Porn Industry Defendants have disseminated disinformation and engaged in harassment on an industrial scale, which has had a chilling effect on the entire field of PPU, including among journalists, scientists, therapists, educators, and many others, causing harm to millions of people around the world who need effective resources to help them recover from excessive pornography use.

53.    It's time to hold the porn industry and its collaborators accountable for using a wide variety of unethical and illegal tactics to suppress and shut down resources for recovering porn addicts.

*Background: The Plaintiffs*

54.    Images of nudity and sexual acts have existed for centuries, including in primitive forms for millennia. However, today's pornography is very different from artistic nudity, erotic literature, and pornography of the past, and far more abundant and accessible. Decades ago, printed pornography, such as that seen in magazines, became widely available. From there, pornography moved to video format and eventually digitized. Through personal computers and the internet, distribution and use of digital pornography quickly expanded into widespread adoption.

55.    Pornography is currently a massive industry, with estimates of industry-wide revenue ranging from less than 15 to over 100 billion dollars per year (due to its often-murky

Exhibit "A"

business practices, exact figures can be challenging to ascertain). In 2019, *The Shift Project* estimated that approximately 27% of all online videos are pornography, and that pornography represents approximately 16% of all data flow.

56.     In the 2010s, there was a steep increase in people informally reporting that they felt their self-described excessive pornography use led to unexpected adverse effects. These self-reports included but were not limited to erectile dysfunction, anorgasmia, relationship dissatisfaction, and compulsivity. Peer-support communication platforms were established on standalone websites and social media where compulsive pornography users would congregate to discuss their experiences and motivate each other to quit or reduce pornography use, primarily citing sexual health, self-improvement, relationship satisfaction, and behavioral addiction recovery as their motivations for doing so. A 2023 study by Jonathan K. Noel and other researchers concluded that "[a]pproximately half of Rhode Island's young adults in this sample viewed pornography and 1 in 16 met the criteria for pornography addiction." Today, it is estimated that many millions of individuals may be problematic pornography users.

57.     Distinct from the decades-old concept of "sex addiction" (partnered sex as a behavioral addiction), excessive pornography users often report decreased interest in partnered sex, instead seeking out internet pornography, which is far more abundant and accessible. Unlike printed pornography of the past, internet-based pornography is often free—enabled by piracy and ad-based monetization—anonymous, accessible in complete privacy without identification, and available anytime, anywhere, in virtually unlimited quantities.

58.     Plaintiff NoFap was among the first porn addiction recovery peer support websites. Plaintiff Rhodes created the NoFap website to engage in discussion with others regarding the problems of excessive pornography consumption. Plaintiff Rhodes created the website primarily

Exhibit "A"

because of his own personal experiences with Internet pornography. Around the age of 11, Plaintiff Rhodes encountered pornography while using the Internet. This quickly led to what he refers to as a behavioral addiction that took over his life. Plaintiff Rhodes engaged in online reading and discussion about the subject and noticed that many other people seemed to be experiencing similar issues to his. He was additionally inspired by concepts that he learned while pursuing an undergraduate biology degree at the University of Pittsburgh. Plaintiff Rhodes formally created NoFap as a forum on Reddit (a "subreddit") in June 2011 to host gamified challenges for people to experiment with avoiding masturbation for a period of one week to one month, which quickly evolved into one of the largest websites dedicated to helping people with porn addiction, otherwise excessive and problematic Internet pornography use, and other forms of compulsive sexual behavior.

59.    NoFap is a website that hosts online forums with hundreds of thousands of users who have published millions of messages. Plaintiff NoFap's About page describes "NoFap® is a peer support website dedicated to helping people recover from porn addiction and other compulsive sexual behavior. We provide forums, information, and software to foster a safe, inclusive, and welcoming online environment for anyone seeking sexual self-improvement. We're secular and sex-positive, focusing on a science-supported and shame-free approach to recovery from problematic porn use. We are not an [']anti-porn['] nor [']anti-masturbation['] website (we're a recovery website), as we do not advocate against people engaging in the moderate use of either. We're here for people whose porn use and masturbation have become excessive, out-of-control, and detrimental to their lives. […] We facilitate community and share helpful content while regularly consulting with clinicians and researchers; however, we do not provide treatment, therapy, counseling, or other forms of professional intervention. Our website is for recovering porn

Exhibit "A"

addicts and was made by recovering porn addicts." Over time, NoFap grew in popularity, boasting over 365,000 forum members and 1,190,000 Reddit subscribers. The website receives millions of visits per month, though traffic has steadily declined since the porn industry launched its smear campaign. Despite this, NoFap remains one of the most visited websites for recovering porn addicts.

60.    NoFap's usership is incredibly diverse. The About page states "We believe that recovery is for everybody. NoFap has well over one million users from all around the world. NoFap users are men and women and people of other gender identities; atheists and agnostics and religious alike; LGBTQIA+ people; and people of varying races, ethnicities, socioeconomic positions, nationalities, national origins, medical conditions, familial statuses, language fluencies, and ages. Our website brings people from various backgrounds and belief systems to pursue sexual self-improvement together." Anyone with Internet access can register and post on NoFap's forums, but they do have to abide by a published list of rules. Among these rules, the site explicitly bans hate speech, harassment or organizing harassment of any kind, issuing threats, or other unlawful activity. A long list of other posting policies fosters an inclusive environment and healthy discourse.

61.    Community discussions on NoFap's subreddit, website forum, and Discord server are primarily overseen by volunteer moderators selected from active and helpful users. These volunteers enforce posting policies by removing rule-breaking content and issuing warnings, temporary bans, or permanent bans to users who violate the rules. In addition, Plaintiff NoFap employs automated moderation systems that flag potentially rule-breaking content for moderator review and action. These systems are regularly updated to improve the detection and removal of such content.

Exhibit "A"

62.    Plaintiff Rhodes incorporated NoFap LLC, a single member limited liability company for the purpose of operating NoFap.com to provide support and resources to those who have an addiction to pornography or who feel that they suffer from excessive pornographic consumption.

63.    Plaintiffs registered several trademarks to protect their brand identity and prevent misuse, to ensure that others could not falsely claim to represent NoFap, and to preserve NoFap's ability to stay online and grow to fulfill its mission of providing free support to individuals struggling with pornography addiction worldwide.

64.    However, as described below, the porn industry has waged an aggressive campaign to undermine Plaintiffs' trademark rights through dilution. Similarly, the Porn Industry Defendants attempted to register the "YourBrainOnPorn.com" trademark and launched a competing website under the name "RealYourBrainOnPorn.com"—a modus operandi that necessitates recovery sites invest considerable resources to defend their ability to remain online.

65.    Plaintiff Rhodes has had an excellent reputation within his field, although it has been substantially harmed by the Defendants. Plaintiff NoFap's website has been utilized by many individuals who struggle with issues stemming from excessive pornography consumption.

66.    Prior to the porn industry's smear campaign, Plaintiff Rhodes has been interviewed for articles about pornography addiction by numerous publications, including *Time Magazine*, the *Pittsburgh Post-Gazette* and *The New York Times*. Plaintiff Rhodes has been interviewed on NPR's *Here & Now*, Showtime's *Dark Net*, CNN's *This is Life with Lisa Ling*, and CBS's *The Doctors*. Plaintiff NoFap attracted attention from content creators who have published thousands of videos about their experiences recovering from porn addiction, some of them amassing millions of views. NoFap was named on television shows such as *Orange is the New Black* and was discussed or

Exhibit "A"

mentioned by personalities such as Joe Rogan and PewDiePie. Plaintiff NoFap has maintained a friendly relationship with pornography performers, and ex- and current-pornography performers have followed, supported, or just poked fun at Plaintiff NoFap—including Jenna Jameson, who was once named as "the world's most famous adult entertainment performer" and "the queen of porn," writing "I respect @nofap" in a Twitter post.

67.    Plaintiff Rhodes won *The Society for the Advancement of Sexual Health* ("SASH") Media Award for his work raising awareness about porn addiction. Plaintiff Rhodes wrote an opinion piece about pornography for *The Washington Post*. Prior to the porn industry's smear campaign, Plaintiff NoFap had been featured in numerous prominent publications, including *Esquire*, *Business Insider*, *Cosmopolitan*, *New York Magazine* and many more. At one point, Plaintiffs were engaged in discussions concerning the development of a dedicated television show.

68.    However, as a result of the porn industry's harassment campaign, plaintiff Rhodes has not participated in a media interview or spoken at a conference in over six years. Once contacted by clinicians, researchers, journalists, businesses, producers, authors, content creators, and even celebrities very regularly, Plaintiff NoFap is rarely reached out to due to the reputational damage incurred due to the Defendants. If a reporter contacts Plaintiff NoFap these days, it is usually requesting comment about a defamatory and/or disparaging article initiated by Defendant Prause and her collaborators.

*Background of the Pornhub/Aylo Defendants*

69.    The Pornhub/Aylo Defendants' flagship website is Pornhub, which has been described as "the YouTube of porn." Pornhub is one of the most visited websites in the world, including among non-pornographic websites.

Exhibit "A"

70.     In 2020, multiple outlets reported that Pornhub received 170 million visits per day (62 billion visits per year), estimating Pornhub to be the world's 5th most popular website. In 2025, Pornhub is still massively popular. According to *Semrush*, a search engine marketing data aggregator, Pornhub was the world's 8th most searched-for website in January 2025. This makes the Pornhub more searched-for than ChatGPT, Amazon.com, Yahoo, Netflix, X.com (formerly Twitter), Twitch.tv, and LinkedIn.

71.     The Pornhub/Aylo Defendants purposefully intend for their websites to be directed toward Pennsylvania residents. Of note, Pornhub routinely publishes the most popular search terms entered by persons within the Commonwealth. Pornhub also intentionally referenced Plaintiff NoFap in communications directed toward Pennsylvania residents.

72.     With all this web traffic comes advertising revenue, which is one of the primary ways the Pornhub/Aylo Defendants monetizes the Pornhub website. While being asked questions before a Canadian parliamentary committee, former CEO Feras Antoon estimated that half of Pornhub's revenue was derived from advertising. At one point, the Pornhub/Aylo Defendants claimed to have sold approximately 4.6 billion ad impressions per day. Publicly accessible revenue estimates for the Pornhub/Aylo Defendants range from several hundreds of millions of dollars per year, to multiple billions. The Pornhub/Aylo Defendants have been described as a "very private company" by *The Times* and financial figures are not a matter of public knowledge, but various websites cite a report claiming Pornhub brought in 460 million dollars in 2018. According to business reporter Bradley Saacks, "Pornhub's parent company is surprisingly profitable despite recent financial and reputational hits" with "with operating margins of about 27% in 2021 and almost 30% in 2022, according to estimates the company showed potential investors in 2021. In comparison, Facebook parent Meta had an operating margin of 25% in 2022."

Exhibit "A"

73.    Although other tube-style pornography websites exist, such as xHamster and XVideos, the Pornhub/Aylo Defendants have been described on having a near-monopoly of the global pornography industry. Their CEO claimed they had 1,800 employees, and the company is reported to have had staff and offices in Austin, Los Angeles, Montreal, London, San Diego, San Francisco, and Cyprus, Germany, Greece, Hungary, Ireland, and Luxembourg. While Pornhub is their flagship website, they also own a variety of (reportedly, over 100) other pornography websites including RedTube, YouPorn, Tube8, GayTube, and XTube. The Pornhub/Aylo Defendants also produce pornography content with their subsidiary production companies, which include but are not limited to Brazzers, Reality Kings, and Mofos.

74.    Pornhub has launched several publicity campaigns, propelling its brand into widespread public recognition. In 2014, the company reportedly spent $100,000 to place a billboard in Times Square, and that same year, it launched the "Pornhub Gives America Wood" campaign, pledging to plant trees based on video views. In 2017, it presented itself as a community-friendly company by claiming to offer free snow plowing services to those who wanted to "get plowed." During the COVID-19 pandemic, Pornhub capitalized on global lockdowns by offering free premium subscriptions, further embedding itself into mainstream culture. These viral moments illustrate Pornhub's long-term branding strategy: presenting itself as a socially conscious, progressive, and harmless entity while normalizing its presence in everyday life. These efforts were also directed toward Pennsylvania residents.

75.    In December 2020, *New York Times* columnist Nicholas Kristof published an exposé detailing the Pornhub/Aylo Defendants' complicity in sexual exploitation, bringing widespread public attention to Pornhub's role in hosting and monetizing illegal content. The article triggered a wave of follow-up coverage and investigations by outlets including *The Guardian*, *The*

Exhibit "A"

*New Yorker*, *Newsweek*, *CNN*, and many more. After the #Traffickinghub campaign garnered more attention, the Pornhub/Aylo Defendants mobilized an aggressive response, claiming the "claims were ['']lies['] spread by people seeking to destroy the porn industry for ['']religious reasons[']". The Pornhub/Aylo Defendants utilized "an extensive network of social media agents, influencers, and amplifiers", "smearing, discrediting, and intimidating advocates and victims who dared to speak out." *Fleites v. MindGeek S.A.R.L., et al., No. 2:21-cv-04920-WLH-ADS, Dkt. 385, ¶¶ 210–212 (C.D. Cal. May 23, 2024).*

76.    In a sworn statement, Laila Mickelwait wrote "On Feb 26, 2019 we were notified by several of our business partner donors that Nicole Prause had been personally emailing them with completely fabricated claims. For example, she falsely wrote: [']Exodus Cry members were sending 'rape' and 'stalking' threats to scientists online who study sex films. In particular author Laila Mickelworth [sic] was personally claiming that I fake my studies and am in pornography myself. […] Obviously neither is true and it shows a willingness to promote stalking and libel to promote a cause you never agreed to assist." *Rhodes v. Prause et al., No. 2:19-cv-01366-MPK, Dkt. 20-9 (W.D. Pa. Jan. 24, 2020) (Affidavit of Laila Mickelwait)*

77.    The Pornhub/Aylo Defendants and its operatives such as Defendants Prause and Ley have established a modus operandi of attempting to defame and frame targets of its criminal racketeering operation, whether sexual exploitation whistleblowers, critics, or operators of addiction recovery resources, with false allegations of criminal conduct, conduct that has persisted after the "sale" to "Ethical Capital Partners". Described herein, upon information and belief, Defendant Prause filed false law enforcement reports against Plaintiff Rhodes (for purported stalking and attempted murder and domestic terrorism), Laila Mickelwait of #Traffickinghub (for

Exhibit "A"

purported distribution of CSAM), and Gary Wilson, the author of *Your Brain on Porn* (for purported stalking).

*Pornhub and Porn Addiction*

78.    The Pornhub/Aylo Defendants initially took a cordial approach toward Plaintiff NoFap. The official Twitter account of their website Brazzers followed NoFap on Twitter and, on December 14, 2016, responded to @NoFap's tweet, "INTERNET PORN CAUSES ERECTILE DYSFUNCTION!" with, "do you always yell this when you come?"

79.    In 2018, the Pornhub/Aylo Defendants used NoFap's name, without license, notice, or authorization, to market premium memberships, placing banner ads across the Pornhub website that stated "[Pornhub Premium Logo] FAILED NO FAP? It's ok, we got you […] CLICK HERE [arrow]".

As noted above, this reference to NoFap was directed toward Pennsylvania residents.

80.    The Pornhub/Aylo Defendants have increasingly pushed back against the concepts of porn addiction and recovery resources. Illustrating this shift, upon information and belief, since at least 2012, the footer text of the Pornhub website read, "We're always working towards adding more features that will keep your porno addiction alive and well." Around 2018, they changed this to, "We're always working towards adding more features that will keep your love for porno alive and well," removing the word "addiction". In the years that followed, the Pornhub/Aylo Defendants, their lobbying arm Free Speech Coalition, Defendant Prause, Defendant Ley, and other porn industry surrogates repeatedly denied any connection between problematic pornography use and its potential adverse effects in the media, online, in academia, and in courtrooms.

Exhibit "A"

81.     For over a decade, Defendant Prause and Defendant Ley have publicly portrayed themselves as disinterested third-party academics, leveraging their carefully curated reputations as purportedly credible licensed psychologists to advance the pornography industry's interests and attack its targets. However, recently discovered metadata has revealed that Defendant Prause and Defendant Ley have been covertly collaborating with the Pornhub/Aylo Defendants, specifically to disseminate disinformation targeting Plaintiff NoFap.

82.     Further reinforcing their longstanding covert relationship with the pornography industry, in September 2024, it was discovered that Solomon Friedman, the current head and co-founding partner of the Pornhub/Aylo Defendants, personally referred a journalist (Belinda Luscombe from TIME) to Defendant Prause and Defendant Ley. Upon information and belief, another journalist (Mark McLaughlin from The Sunday Times) shared that Defendant Prause was personally referred to him by Free Speech Coalition, the Pornhub/Aylo Defendants' primary trade association. These disclosures align with prior whistleblower statements and other corroborating evidence of Defendants Prause and Ley's concealed collaboration with pornography industry entities. Cumulatively, Defendant Prause has collaborated with Defendant Ley and the Pornhub/Aylo Defendants to disparage Plaintiff NoFap and Plaintiff Rhodes to millions of people after she executed the Non-Disparagement Agreement.

*Background of Defendant Nicole Prause*

83.     Defendant Prause has been described as a neuroscientist, sexual psychophysiologist, and statistician. Defendant Prause currently holds a therapy license (#27778) issued by the state of California Board of Psychology. More recently, Defendant Prause has also presented herself as an expert on sexual harassment, violent extremism, domestic abuse, and online disinformation. She frequently argues against the existence of "porn addiction" and any causal link

Exhibit "A"

between pornography and potential adverse effects, both in academia and the media. Defendant Prause is often cited as an expert in blog articles that promote purported benefits of internet pornography or seek to debunk the classification of problematic pornography use (PPU) as a behavioral addiction.

84.     Defendant Prause's advocacy is far-reaching. Her publications often get ample press coverage, which, upon information and belief, appear to be amplified using publicists, creative professionals, and marketing services.



85.     Defendant Prause is frequently quoted, featured, or presented as an expert in major media outlets and productions. Upon information and belief, her appearances and coverage include After Porn Ends 2, BBC, Business Insider, CNN, Channel 4, CBS News, Comedy Central, Daily Beast, Der Spiegel, Discovery Channel, Factually with Adam Conover, Fox News, Fusion TV, Haaretz, HuffPost, i-D, MDLinx, Men's Health, Men's Journal, NBC News (including The Today Show), Newsweek, New York Post, NPR (including Only Human, AirTalk, and Watching America), PBS (NOVA: The Secret Lives of Scientists), PopTech, Psychology Today, PsyPost, Reason Magazine, Reuters, Rolling Stone, Salon.com, Slate.com, Studio 10, Techdirt, The

Atlantic, The California Sunday Magazine, The Daily Mail, The Guardian, The New York Times, The Sun (UK), The Times, Time Magazine, The Wall Street Journal, The Washington Post, Times Higher Education, and Vice Media.

86.    Defendant Prause has frequently collaborated with other academics and clinicians, most often Defendant Ley, but others including but not limited to James Binnie, Doug Braun-Harvey, Daniel A Burgess, Kelsy Burke, Kate Dawson, Chris Donaghue, Justin Dubin, Tammy Ellis, Peter Finn, Cynthia Graham, Joshua B Grubbs, Joshua A. Halpern, Victoria Hartmann, Natasha Helfer, Jonny Hunt, Erick Janssen, Erin Jesse, Taylor Kohut, Joe Kort, Marty Klein, Justin Lehmiller, Roger Libby, Rena Malik, Alan McKee, Geoffrey Miller, Silva Neves, Madita Oeming, Lisa A Paz, Samuel Perry, James Pfaus, Anna Randall, Emily F Rothman, Nicholas Sellke, Michael Seto, Rebecca Sullivan, Greg Siegle, Eric Sprankle, Cameron Staley, Jonathan N Stea, Vaughn R Steele, Michael Vigorito, Brian M Watson, and Ashley Winter. Many of these individuals have assisted Defendant Prause by providing letters of support, submitting declarations, disseminating disinformation, collaborating on research, and otherwise aiding and abetting Defendant Prause in the tortious acts described herein.

87.    Liberos LLC is (or was) a for-profit "sexual biotechnology company" founded and created by Defendant Prause in 2015. Shortly after this legal action was first initiated, Defendant Prause dissolved Liberos LLC on January 17, 2025. However, Defendant Prause has continued to portray in appearances that she is the founder of this purportedly non-existent entity, so its current operations are unknown to Plaintiffs. For example, a podcast featuring Dr. Erika Miley interviewing Defendant Prause released on March 17, 2025, describing Defendant Prause as being the founder of Liberos and a The Dissenter podcast episode, purportedly recorded on June 27, 2025, lists "[s]he is also the founder of Liberos LLC, an independent research institute" in its

Exhibit "A"

description. The Facebook page for Liberos LLC has continued to stay active and make posts. Under "[a]dditional affiliations" on Defendant Prause's ResearchGate.net profile, it listed Liberos LLC between "October 2014 – present" as of November 03, 2025.

88.    Defendant Prause also appears to have incorporated another business named Mind Measures LLC on October 01, 2021. It's only publicly viewable activity to date was to conduct "research" targeting Plaintiff NoFap. However, shortly after this legal action was first initiated, Defendant Prause dissolved Mind Measures LLC on January 17, 2025.

89.    Defendant Prause also has a serial tendency of falsely accusing others of harassment, stalking, threats, and otherwise attempting to harm her. She has made such false allegations against Laila Mickelwait, Gary Wilson, Plaintiff Rhodes, his attorneys, and many others. The one thing her recent victims have in common speaking up about pornography addiction, or sexual exploitation on Pornhub.

*Defendant Prause's Background at Idaho State University*

90.    On May 13, 2010, Defendant Prause was arrested by a Pocatello police officer for allegedly violating a restraining order after a series of incidents (documented over approximately 20 police reports) pertaining to a student she had reportedly been previously romantically involved with at Idaho State University where she worked at as an assistant professor. Police reports document that the student expressed that he "was in fear for his safety from Prause" and were also concerned that Defendant Prause, as "faculty at the University", would "access his student information and possibly have access to his grades and the like." *See Pocatello Police Dept. Incident Report No. 10-P06131 (March 30, 2010).*

91.    During another incident documented in the police reports, Defendant Prause was reportedly involuntarily committed to a behavioral health unit.

Exhibit "A"

92.     On May 14, 2010, Defendant Prause was criminally charged for "Domestic Violence-Protection of Restraining Order" to which she entered a plea of not guilty. The charge was originally dismissed by the court on June 22, 2010, with Defendant Prause under probation with a list of conditions requiring her to "[c]ommit no misdemeanor or felony" through December 22, 2010.

93.     However, on February 17, 2011, Defendant Prause received a sentence for "Domestic Violence-Protection of Restraining Order", suggesting that she may have violated the terms of her probation, although the exact circumstances of the criminal conviction remain unclear to Plaintiffs. *State of Idaho v. Nicole R. Prause, No. CR-2010-7529 (Bannock Cnty. Magis. Ct. filed May 14, 2010).* While Plaintiffs hesitate to reference such incidents, they are relevant to material issues herein, including Defendant Prause's pattern of concerning behavior—including her repeated self-portrayal as a victim of stalking, her own pattern of stalking others including Plaintiff Rhodes, and Defendant UCLA's negligence in hiring a problematic individual—conduct that has persisted from at least 2010 to the present.

Exhibit "A"



October 14, 2021

To Whom It May Concern:

In regards to your request for arrest information on Nicole Renee Prause, D.O.B.: 08/25/1978,
the following is the only time she was incarcerated in the Bannock County Jail:

Time Served:    05/13/10 to 05/14/10
Arresting Agency: Pocatello Police Department
Charge/Court Case #: Violation of No Contact Order (CR-2010-0007529-MD)

If you need the original report on this arrest you will need to contact Pocatello Police and reference
report 10-P09582, they also have additional reports along with Idaho State University Security.  For
dispositions on this case you will need to contact Bannock County Court Records at (208) 236-7272
and you can also check on traffic citations.  If you have any questions please feel free to contact us at
(208) 236-7123.

Sincerely,

R. Manning
Records Division
Bannock County Sheriff's Office

*Defendant Prause's First Job with Defendant UCLA*

94.     Upon information and belief, Defendant Prause was contracted by Defendant
UCLA between approximately 2012-2015.

95.     Upon information and belief, and as asserted by third parties and as suggested by
Defendant Prause's own accounts, Defendant Prause's first period of affiliation with Defendant
UCLA was the subject of dispute and controversy.

96.     Upon information and belief, Defendant UCLA decided to not renew Defendant
Prause's contract around 2015. While the exact circumstances of her departure are unknown to
Plaintiffs, upon information and belief, a former colleague of Plaintiff Prause has claimed the non-
renewal was due to her misconduct.

Exhibit "A"

*Prior Complaints Submitted to Defendant UCLA by Third Parties*

97.     As longstanding critics of the concepts of PPU within the behavioral addiction model or excessive pornography use being the cause of adverse effects, Defendant Prause and Defendant Ley have aggressively pushed back against those who advocate for such concepts.

98.     Both Gary Wilson and Marnia Robinson had blogs hosted on *Psychology Today*, which, upon information and belief, Defendants Prause and Ley eventually succeeded in convincing *Psychology Today* to remove. Upon information and belief, the dispute between these parties (Defendants Prause and Ley vs. Gary Wilson and his wife Marnia Robinson) started in 2013 surrounding these *Psychology Today* posts, which quickly escalated to Defendant Prause falsely accusing Gary Wilson of physically stalking her, as well as expressing a wide variety of other concerning behaviors. Gary Wilson and his widow would report Defendant Prause's defamatory and harassing conduct to UCLA on multiple occasions.

99.     Defendant UCLA received notice of Defendant Prause's escalating misconduct, including unprofessionalism, defamation, harassment, DMCA abuse, and use of Defendant UCLA resources to target critics, yet failed to take corrective action.

*Defendant Prause's Second Job with Defendant UCLA*

100.     Upon information and belief, after her departure as a contractor in 2015, Defendant Prause has been employed again by Defendant UCLA since November 2021 as a statistician. Defendant Prause is listed on uclahealth.org as a "senior statistician" as a member of Arpan A. Patel's digestive diseases laboratory.

101.     Upon information and belief, since Defendant Prause was re-hired by Defendant UCLA, at least two journalists have contacted Defendant UCLA to inquire about Defendant Prause.

Exhibit "A"

102.    Upon information and belief, after one individual reached out to Defendant UCLA after being targeted by Defendant Prause, a university employee apologized for Defendant Prause's conduct and stated that Defendant UCLA maintained a "large file" concerning her behavior.

103.    As of November 03, 2025, Defendant Prause's ResearchGate.net profile listed her biography as a "Bioinformatics Programmer at UCLA in the Department of Medicine working on reward sensitivity, especially as relevant to substance use disorders and sexual responsiveness. I am also running the largest lab study of male orgasm physiology and post-orgasmic illness syndrome at UCLA with collaborators."

104.    Defendant Prause published letters featuring representatives of Pornhub, xHamster, and Free Speech Coalition denying connection to her. Defendant Prause and her counsel have also issued legal threats, including DMCA takedown notices, removing evidence of such ties, such as photographs of her attending the XRCO Awards, an event exclusively for pornography industry insiders.

105.    Defendant Prause has publicly used her employment at Defendant UCLA, which has added credibility to her tortious behavior and helped to advance the pornography industry's interests. Defendant Prause has frequently represented herself as affiliated with Defendant UCLA in emails, social-media posts, conference appearances, podcasts, interviews with journalists, publications she has authored, and other contexts while engaging in tortious and contract-breaching conduct. Defendant Prause's BlueSky biography included "UCLA bioinformatics, Dept of Medicine" and her X.com biography included "[s]cientist (bioinformatic programmer and psychophysiologist) studying primary rewards related to mental health at UCLA."

Exhibit "A"



*Defendant Prause and the Criminal Trafficking Enterprise OneTaste*

106.    For years, Defendant Prause has been party to lucrative contracts—including at least one seven-figure agreement—while serving as a public-facing expert promoting the purported scientific benefits of OneTaste, an organization embroiled in controversy for alleged sex trafficking.

107.    Upon information and belief, Defendant Prause's involvement with OneTaste spans from as early as 2016 through 2025.

108.    According to the U.S. Attorney's Office, "OneTaste branded itself as a sexuality-focused wellness education company founded by Nicole Daedone in 2004. From approximately 2004 through 2018, OneTaste generated revenue by providing courses, coaching and events related to so-called wellness practices, in exchange for a fee. Many OneTaste members lived in residential warehouses where they participated in courses and experimented sexually."

109.    According to legal discovery, Defendant Prause spent substantial time working from this location and was party to a 1.6-million-dollar contract in exchange for her contributions. Plaintiffs believe and therefore aver that $1.6 million was a grossly disproportionate amount of money for the type of research Defendant Prause purportedly conducted.

Exhibit "A"

110.    According to the U.S. Attorney's Office, "Daedone and Cherwitz are both charged with forced labor conspiracy in connection with a years-long scheme to obtain the labor and services of a group of OneTaste members—including volunteers, contractors, and employees of OneTaste—by subjecting them to economic, sexual, emotional and psychological abuse, surveillance, indoctrination, and intimidation."

111.    Generally speaking, porn addiction recovery resources do not exist in opposition to pornography performers nor industry members. As such, in February 2018, a porn industry whistleblower corresponded with Gary Wilson, claiming that Defendant Prause was secretly collaborating with the porn industry lobbying arm, Free Speech Coalition. Further, the whistleblower alleged a personal friendship with Free Speech Coalition's then-executive director, Eric Paul Leue.

112.    Specifically, the whistleblower alleged that Defendant Prause helped facilitate a support group for pornography performers in Los Angeles for the Adult Performance Artists Guild. The whistleblower alleged that Defendant Prause leaked confidential information shared in the pornography performer support group meetings to Free Speech Coalition. Further, the whistleblower claimed that Defendant Prause got assistance with her research for OneTaste, which Defendant Prause claimed debunked the porn addiction model, from Free Speech Coalition.

*Background of Defendant David Ley*

113.    David Ley is a licensed therapist, *Psychology Today* blogger, the author of *The Myth of Sex Addiction* and *Ethical Porn for Dicks*, and an outspoken activist for the use of pornography. David Ley also advocates for what he has described as "sexual freedom," for example writing the book "*Insatiable Wives: Women Who Stray and the Men Who Love Them*"

Exhibit "A"

which explores and promotes non-monogamous sexual practices, namely "cuckolding" and "hot-wifing."

114.    Together, Defendants Prause and Ley are two of the most prominent media voices concerning pornography, frequently appearing in the same articles to argue that excessive pornography use does not lead to adverse effects, and to oppose the classification of PPU as a behavioral addiction. Articles concerning PPU routinely feature Defendants Prause and Ley mischaracterizing PPU as fringe pseudoscience while portraying their own views as the legitimate scientific consensus. Together, Defendants Prause and Ley continue to lead the opposition to PPU, supported by the substantial resources of the porn industry.

115.    The vast professional consensus is that it isn't ideal for children to use internet pornography.

116.    The Senior Community Manager for the Pornhub/Aylo Defendants posted on social media that "[a]ny age verification devastates traffic", that "Pornhub stands to lose 50%+ of traffic", that "it costs us money to verify, and overall it's a disaster" and "[a] law that censors an industry is not good for the industry." According to an October 31, 2025, *BBC* article, "Pornhub says the number of UK visitors to its website is down 77% compared with July, when more rigorous age checks for sexually explicit sites were introduced under the [United Kingdom] Online Safety Act. It claims sites that are ignoring the new requirements are benefiting. The BBC has not been able to independently verify Pornhub's claim - however, data from Google shows searches for the site have decreased by almost half since the law came into effect."

117.    In recent years, various countries and US states have enacted age verification requirements for pornography websites. Rather than complying with these laws, Pornhub has

Exhibit "A"

generally opted to block its website in many of these jurisdictions, encouraging pornography users to bypass local laws using VPNs.

118.    Defendant Ley was the "lead expert" in litigation for Pornhub, xVideos, and the lobbying group Free Speech Coalition to oppose an age verification law passed in Texas.

119.    Defendant Ley has also served as an expert witness in OneTaste's defense against the U.S. government's prosecution.

120.    For years, Defendants Ley and Prause have often posted false, defamatory, and disparaging statements targeting Plaintiffs and other targets of the porn industry in near unison, incorporating similar talking points, the same images, and the same links. They interact with many of the same people across various social-media platforms. They republish each other's content, tag each other, cite each other, cite the same links and sources, maintain similar affiliations, have mutual social and professional networks, and generally follow the same patterns of conduct online, upon information and belief, in coordination. Their conduct further includes mutual amplification of each other's messaging, use of similar hashtags and distinctive phrasing, and repeated appearances together in media or academic contexts to lend credibility to their statements, all evidencing a common plan, purpose, and method of operation.



121.    Upon information and belief, Defendant Ley and Prause coordinate their conduct using various communication platforms. David Ley posted a screenshot on X that revealed he

Exhibit "A"

communicates with Prause via the Signal communication, an encrypted text messaging app with a self-destruction feature.

122.    For one example of many, on July 10, 2023, Defendant Ley posted the *Slate* article titled "We Know [']NoFap['] Is Misleading Men About Masturbation. It Might Be More Dangerous Than That." published on the prior day, which featured Defendant Prause in breach of the Non-Disparagement Agreement.[1] In the Twitter post, Defendant Ley wrote: "NoFap has frequently used lawsuits to silence critics of their methods. This article probably has them panicked and breaking their fingers calling their attorneys."

*Background of Gary Wilson*

123.    Gary Wilson was the author of *Your Brain on Porn: Internet Pornography and the Emerging Science of Addiction*, a book that has sold over 100,000 English-language copies and has been translated into more than twenty languages. Before writing the book, Wilson created the website *YourBrainOnPorn.com*, which described itself as "a clearinghouse for the latest research, media, and self-reports on pornography's effects and harms."

124.    Gary Wilson's author royalties from *Your Brain on Porn* were donated, in full, to a United Kingdom-based nonprofit organization called The Reward Foundation. The YourBrainOnPorn.com website described: "we focus on internet pornography. We look at its impact on mental and physical health, relationships, educational attainment and criminality. Our aim is to make the supporting research accessible to non-scientists. Everyone should be able to make informed choices about the use of internet pornography and not fall into the trap of believing it is just harmless, largely free adult entertainment- a big lure for children. We look at the benefits of quitting porn based on research and the reports of the many who have experimented with

---

[1] https://x.com/DrDavidLey/status/1678396853153562625

Exhibit "A"

quitting it." Upon information and belief, The Reward Foundation is managed by Mary Sharpe, a Scottish lawyer (an advocate), and Darryl Mead, a PhD. The charity offers a free online training on problematic pornography use for professionals.

125.    Gary Wilson was regularly consulted by therapists, doctors, and researchers for his impressive breadth of knowledge regarding the effects of pornography on the brain. Although he did not hold a formal degree—having acquired his knowledge through college coursework and self-study—Wilson was widely respected for his extensive understanding of the neurological impacts of pornography. Prior to founding *Your Brain on Porn*, he taught courses in human pathology, anatomy, and physiology, serving as an "adjunct instructor" at Southern Oregon University and teaching anatomy independently at the Ashland Institute of Massage. In 2016, Wilson co-authored a peer-reviewed paper with seven U.S. Navy physicians titled *"Is Internet Pornography Causing Sexual Dysfunctions? A Review with Clinical Reports",* and subsequently another peer reviewed article he authored was published titled *"Eliminate Chronic Internet Pornography Use to Reveal Its Effects."*

*The Extensive Targeting of Wilson*

126.    Defendants engaged in a years-long campaign of defaming Gary Wilson, falsely accusing him of stalking and threatening Defendant Prause. The campaign was eerily similar to the one Defendants concocted against Plaintiffs in this matter.

127.    In addition, Defendant Prause filed sent Wilson multiple spurious cease and desist letters that had no basis in fact. As part of her campaign of harassment against Wilson, she went so far as to have one hand delivered to his residence at 10:00 pm at night.

128.    Defendant Prause and her colleagues, namely Defendant Ley, relentlessly harassed and defamed Gary Wilson on a near-daily basis. These messages included "Gary Wilson is a member of the Reward Foundation by his own admission. Gig is up, he has been stealing your money in this and who knows how many other ways. This information and the proof has been turned over to authorities. When I know if he will be arrested, I will update here. Be sure to look at the great majority of the [']reviews['] on his Amazon site too: most are the only review the person ever posted, five stars, claiming he saved their lives. These are hallmarks of fake reviews."

129.    In addition, Defendant Prause regularly attempted to get media outlets to publish false and defamatory statements concerning Gary Wilson, including but not limited to:

    a.    <u>August 26, 2017</u>: In an article in The Daily Beast written by Rob Kuznia, Kuznia wrote "Wilson frequently critiques Prause's studies on his website and also criticizes her in the comments sections of articles citing her work. In turn, Prause has accused him on public forums of being a [']stalker.['] [']The author, Gary Wilson, is a stalker who has written my name on his website over 1,500 times,['] she recently asserted in the comments section below an article about porn addiction. [']He has multiple no-contact and cease and desist orders, most recently for stalking.['] Wilson says he has never initiated a single email exchange with Prause and knows of no no-contact order. She is trying, he said, to create a [']mythology of herself as a victim... so that the content of the debate is ignored.['] Prause also points out that Wilson doesn't have a college degree (a fact that he confirmed to The Daily Beast, though he did attend college for six years). [']His pretending to represent science with no scientific training and

Exhibit "A"

fraudulent claims of expertise,['] Prause says, [']has led to a mass hysteria on par with the anti-vaccine movement.[']"

b.  <u>December 01, 2020</u>: Daniel Van Boom in *CNET*.

c.  <u>February 25, 2021</u>: On February 25, 2021, Eddie Kim from Mel Magazine sent an email to Gary Wilson requesting comment for "multiple stories on the various harassment and threats that sexual health researchers face, notably from those who oppose pornography." Eddie Kim continued that "I have spoken to Nicole Prause and am extremely familiar with your history with her". Eddie Kim wrote: "Prause's biggest concern is the posting of addresses where she may physically be, regardless of your dispute over whether it's a "residential" address or not. What was the purpose of you posting her possible location? Do you plan on doing it again in the future?" and "What conditions would it take for you to cease your public documentation of Prause's activities and claims that she is an alleged [']industry shill'] who conducts [']false science[']?"

d.  <u>March 02, 2021</u>: Upon information and belief, Gary Wilson received an email from a producer at Dr. Phil in Los Angeles, writing "One of our viewers wrote into the show about an ongoing dispute between Gary Wilson and Nicole Prause. As you probably know, Dr. Phil helps mend relationships and conflict, I am interested in talking to the both of you regarding the ongoing manner."

130.   On or around January 12, 2018, upon information and belief, Defendant Prause and her collaborators got Gary Wilson's scheduled keynote presentation at the European Society of Sexual Medicine canceled.

*Real Your Brain on Porn*

131.   On February 01, 2019, over eight years after Gary Wilson created YourBrainOnPorn.com, Defendant Prause applied for a trademark with the United States Patent and Trademark Office (USPTO) for "YOURBRAINONPORN YOURBRAINONPORN.COM YOURBRAINONPORN YOURBRAINONPORN.COM YOUR BRAIN ON PORN" under the US serial number 88281342.

132.   A trademark enables the public to distinguish one entity from another and ensures that the reputation, trust, and goodwill associated with a mark are not misappropriated by unrelated parties. A registered trademark prevents others from operating under the owner's identity,

Exhibit "A"

misleading consumers, or causing confusion regarding the source, sponsorship, or affiliation of goods or services. This protection is particularly critical for online service providers, as users rely heavily on names and branding to determine the authenticity and legitimacy of the websites they visit. In the absence of enforceable trademark rights, an organization faces significant risk when investing in developing or maintaining its services, because others would be able to freely misappropriate its name, goodwill, and brand identity. Competitors or malicious actors can pose as the organization, divert traffic, mislead consumers, distort messaging, or damage the goodwill associated with the organization's name, thereby creating substantial risk of consumer confusion, reputational injury, and economic harm rendering continued operation unsustainable.

133.    Plaintiff NoFap's trademarks rights are particularly important because, in an open marketplace of ideas, Plaintiff NoFap must be able to communicate its messages and positions clearly. The Porn Industry Defendants and their associates have repeatedly misattributed alleged statements by unrelated third parties to NoFap when disparaging the website, thereby increasing confusion about Plaintiff NoFap's actual views—the very type of confusion trademark law is intended to prevent. Upon information and belief, based on the conduct of the Porn Industry Defendants, they seek to be able to attribute anyone's statements—even their own—to Plaintiff NoFap as part of their campaign to undermine the platform's ability to remain online and reach new users.

134.    Defendant Prause and her collaborators' attempt to commandeer the trademark rights for "YOUR BRAIN ON PORN" demonstrates an established modus operandi of porn industry-affiliated entities attacking trademark rights to suppress and shut down recovery resources, just as the Porn Industry Defendants are attempting to undermine Plaintiff NoFap's right to use and operate under its own name through dilutive conduct, supporting trademark

Exhibit "A"

infringement, challenging NoFap's right to hold a trademark in its own name, and other activities designed to weaken its trademark rights.

135.    On March 13, 2019, RealYourBrainOnPorn.com was registered.

136.    While Daniel A. Burgess registered the domain name, he alleged that he did so for others to use and claimed that he did not create the content depicted on RealYourBrainOnPorn.com, nor operate the various social media accounts associated with the website. In short: Burgess claimed that his only involvement with RealYourBrainOnPorn.com was holding the domain name for others to use.

137.    On April 18. 2019: a press released was published: "New website [']RealYourBrainOnPorn.com['] launches for scientifically accurate information about pornography" - "Scientists and therapists specially trained in sexuality have merged their knowledge to support media, students, and consumers previously misled by inaccurate health information about pornography." The press release claimed to originate from Gary Wilson's hometown of Ashland, Oregon.

138.    After the press release was published to a new Twitter account, "Real Your Brain on Porn" at @BrainOnPorn, the very first account to publicize it was @Pornhub, the official Pornhub.com account owned by the Pornhub/Aylo Defendants.

Exhibit "A"



139.    The RealYourBrainOnPorn.com website listed the following "experts": Marty Klein, Defendant Prause, Defendant Prause, Emily Rothman, Samuel Perry, Taylor Kohut, William Fisher, Peter Finn, Janniko Georgiadis, Erick Janssen, Aleksandar Štulhofer, Joshua Grubbs, James Cantor, Michael Seto, Justin Lehmiller, Anna Randall, Victoria Hartmann, Michael Vigorito, Julia Velten, Roger Libby, Doug Braun-Harvey, Alan McKee, David Hersh, Jennifer Valli, Jason Winters, Chris Donaghue, and Charles Moser.

140.    Based on metadata evidence, Plaintiffs believe and therefore aver that Defendant Prause operated the RealYourBrainOnPorn website. Additionally, three individuals connected with the website independently attributed its operation to Defendant Prause.

Exhibit "A"



141.    In response to the infringement of his organization's intellectual property rights, Gary Wilson sent cease-and-desist letters to Defendant Prause and others associated with the site.

142.    In response to the cease-and-desist letters, rather than changing the name of the website and withdrawal the corresponding trademark application, Defendants Prause, Ley, and other RealYourBrainOnPorn.com team members claimed to be victims of censorship. In defense, they mobilized the resources of the porn industry to defend their right to continue operating under the "Real" YourBrainOnPorn name and trademark the name of Gary Wilson's preexisting website.

143.    In or around January 2021, Gary Wilson entered into a settlement agreement with Daniel Burgess and Tammy Ellis, who Burgess transferred the domain name to. The RealYourBrainOnPorn.com domain name was transferred to Gary Wilson's ownership, which now redirects to YourBrainOnPorn.com.

*Gary Wilson's Death*

144.    Gary Wilson died on May 20, 2021. While he had ongoing health issues related to a prior Lyme disease infection, those close to him consistently identified the harassment he endured from Defendant Prause and her associates as a major factor in causing his suicide. Multiple people close to Gary Wilson have stated that he would still be alive today if it weren't for Defendant Prause. One friend said, "Nicole Prause killed Gary Wilson."

Exhibit "A"

145.    Defendant Prause celebrated Gary Wilson's death on social media with multiple accounts. On the "soihrgoi" Reddit account and "Anonymous Otter" YouTube account, the comments linked to a PDF file hosted on Defendant Prause's Google Drive account.



[−] **soihrgoi**  -3 points 4 years ago

Gary Wilson was a vile thing. The world is better for his death. Now that he cannot threaten people doing actual work on pornography any more, maybe their families can feel safe again.

https://drive.google.com/file/d/1caIilwKZZpcwRl9f-b-p7dt\_oym4yBrD/view?usp=sharing



**Mark Queppet** ✔ @MarkQueppet · Nov 23, 2021

Stop scrolling and go do that thing you're putting off.

💬 3     🔁 10     ♡ 47     ili

**scienceofporn**
@scienceofporn

You still working with Gary Wilson who took non-consensual pornographic pictures of his massage therapy students?
Oh, nope, you can't!

10:53 PM · Nov 24, 2021

Exhibit "A"



[−] **soihrgoi** -11 points 4 years ago

Be sure you hear from Gary Wilson's victims, whom he incited violence, stalked and required law enforcement all over the world. Lyme disease causes rage and he also was an alcoholic. His last day all of his social media was covered in hatred. He was a spiteful, small, stupid man. Good riddance.

https://drive.google.com/file/d/1caliIwKZZpcwRl9f-b-p7dt\_oym4yBrD/view?usp=sharing



Exhibit "A"



**Mr Scriptor** 2 hours ago
@Anonymous Otter  Hatemongers like you, Nicole?
👍 👎 ❤ REPLY

**Anonymous Otter** 2 hours ago
@Purpose  Wait, are you threatening arson after someone actually committed arson from Gary Wilson's group? That is a felony. And exactly what I expect of Gary Wilson's idiot minions https://www.vice.com/en/article/akgdvk/police-investigating-arson-after-pornhub-ceos-mansion-goes-up-in-flames
👍 👎 REPLY

**Anonymous Otter** 2 hours ago
@Mr Scriptor  What are you talking about? Are you high?
👍 👎 REPLY

**Anonymous Otter** 2 hours ago
@Mr Scriptor  Literally the 24 hours before he croaked were nothing but bile from him. It is great. It shows what a horrific, evil, POS he really was, until his dying day spewing hatred.
👍 👎 REPLY



**Anonymous Otter** 1 hour ago
@Mr Scriptor  His wife was a weed dealer. Before it was legal. Try reading.
👍 👎 ❤ REPLY

**Mr Scriptor** 1 hour ago
@Anonymous Otter  Making claims without evidence?
👍 👎 ❤ REPLY

**Anonymous Otter** 55 minutes ago
@Mr Scriptor  It is literally on his social media right now. Gary Wilson tortured scientists, especially women, for nearly 10 years. Good riddance.
https://drive.google.com/file/d/1caliIwKZZpcwRl9f-b-p7dt_oym4yBrD/view?usp=sharing
👍 👎 REPLY

**Mr Scriptor** 37 minutes ago
@Anonymous Otter  It isn't on his social media right now. Also, I notice you don't show examples, their Nicole.

"Gary Wilson tortured scientists, especially women, for nearly 10 years."
Gary Wilson never tortured scientists, especially never tortured women. Although you seem to do that yourself, Nicole.

"Good riddance."
Goodness, you're acting like a 13-year-old.
Show less
👍 👎 ❤ REPLY

**Purpose** 24 minutes ago
@Anonymous Otter  hhahahahahahahahahahahahahahahahahaha wtf ahhahahahahaha this actually is hilarious, weed dealer, tortured scientists jahahajahhahaha I'm really amazed on how you think somehow you still have credibility after trying to sue so many people, even Rebeca Watson who is on your side, a pro porn influencer But yeah, keep lecturing me about Mr. Wilson, I'm having fun
👍 1 👎 ❤ REPLY

**Mr Scriptor** 17 minutes ago
@Purpose  Nicole is a joke.

Exhibit "A"



146.    On January 10, 2025, Defendant Ley wrote on X, referring to Gary Wilson's website as "the bizarre writings of an obsessed mentally ill paranoid troll with a high school education."

147.    On October 15th, 2024, Defendant Prause posted on her @NicoleRPrause Twitter account a response to somebody mentioning Gary Wilson and his book Your Brain on Porn. Defendant Prause replied "This little guy died by suicide and was immediately exposed for fraud he had threatened others for years against explosing [sic] … Wilson was a Karezza preacher who claimed his 'balls' shrunk … 'Chad' you say?"

Exhibit "A"



148.    On December 29, 2023, a Medium.com purportedly authored by Defendant Prause titled "Are any anecdotes in "Your Brain On Porn" by Gary Wilson real?" In this article, Defendant Prause claimed Gary Wilson had fabricated many quotes in his book.

149.    Defendant Prause's claims about Gary Wilson fabricating quotes for *Your Brain on Porn* were false and defamatory.

150.    The continued conduct after Gary Wilson's death caused tremendous anguish for his widow, family members, and friends such as Plaintiff Rhodes.

Exhibit "A"



Gary Bruce Wilson
May 12, 1956 - May 20, 2021

### 4.     Background of The Prior Litigation

*Early Interactions Between Plaintiffs and Defendants Ley and Prause*

151.    Defendant Ley and Defendant Prause have a long history of targeting Plaintiff NoFap with criticism, which eventually escalated into tortious conduct.

152.    In 2016, the behavioral addiction model for problematic pornography use received widespread media coverage, including on the cover of *TIME Magazine*. Belinda Luscombe's cover story featured people who believe excessive pornography use could lead to adverse effects, including Brian Anderson, coach Noah Church, actor Terry Crews, advocate Gabe Deem, app developer David Endacott, researcher Simone Kühn, Plaintiff Rhodes, researcher Chyng Sun, researcher Janis Whitlock, author Gary Wilson, researcher Valerie Voon, and psychologist Philip Zimbardo.

153.    On the other side of the debate, David Ley, Nicole Prause, and Mike Stabile from Free Speech Coalition argued against problematic pornography use as a behavioral addiction or directly causing adverse effects.

Exhibit "A"

*Defendants Ley and Prause Connecting Porn Addiction Recovery to Extremist Groups*

154.    While the pornography industry, Defendant Prause, and Defendant Ley have long targeted porn recovery resources with a variety of criticisms, this pattern of conduct drastically escalated on October 27, 2018. On the day of the antisemitic attack at the Pittsburgh Tree of Life synagogue which resulted in eleven deaths, Defendant Ley published a *Psychology Today* blog post titled *"Is One Sexual Behavior Triggering Certain Groups?"* where he alleged connection between that the purported "anti-masturbation" ideologies of three PPU recovery websites: Your Brain on Porn, NoFap, and Reboot Nation.

155.    Defendant Ley's article attempted to link Plaintiffs to the controversial Proud Boys group because Plaintiff Rhodes was interviewed about porn addiction by the founder of Vice Media, Gavin McInnes, prior to the Proud Boys existing. The article read: "(In 2016, Rhodes appeared on former Proud Boys leader Gavin McGinnes' podcast, and in 2018, denied knowing at the time that the Proud Boys was a white supremacist group.)"

156.    This statement by Defendant Ley is false. At the time of the interview, Gavin McInnes was known as a comedian and the co-founder of the popular media outlet Vice Media. Plaintiff Rhodes neither knew Gavin McInnes personally nor had any involvement of any kind with the Proud Boys, which McInnes founded at a later date. At the time of the interview, Plaintiff Rhodes did not know that the Vice Media co-founder Gavin McInnes would, at a later date, create the Proud Boys group and become a controversial figure. Likewise, as a media personality, McInnes also interviewed, collaborated, or appeared with a wide variety of individuals, including Ben Shapiro, David Cross, and Johnny Knoxville. However, Defendants Prause and Ley falsely

52

Exhibit "A"

accused Plaintiff Rhodes of supporting, promoting, or working with the Proud Boys and McInnes, and the porn industry would later launch a slew of hit pieces attempting to link Plaintiff Rhodes to the Proud Boys, despite him having no involvement in the same.

157.    Defendants Ley and Prause collaborated to disseminate the article widely. Defendant Ley's article was eventually shared on Twitter by xHamster, one of the most popular pornography websites, and Defendant Ley's *Psychology Today* article largely kicked off the pornography industry's strategy of attempting to connect pornography addiction recovery to violence, mass shootings, and extremist ideologies.

158.    On November 5, 2018, a pseudonymous Reddit account associated with Mike Stabile of the industry trade association Free Speech Coalition, posted a link to an xHamster blog post onto NoFap's Reddit.com-hosted forum ("r/NoFap"), writing "[a]ccording to xHamster, traffic from men was down 14.5% last November. They call it the #NoFap recession." Approximately three hours later, xHamster amplified Mike Stabile's r/NoFap post by sharing it on its official Twitter account. The day after, on November 06, 2018, xHamster posted "[e]arly this morning, after launching #YesFap #NutNovember to combat stigma against porn, we were hit with violent #NoFap threats" and claiming that Plaintiff NoFap was "exhorting followers" to "kill pornographers", further alleging that "[i]t was no surprise to find that the so-called #NoFap movement had its roots in anti-gay, anti-woman, antisemitic blogs", and tagging Free Speech Coalition in the thread of Twitter posts. xHamster later admitted that the statements it had attributed to NoFap did not actually originate from NoFap.

Exhibit "A"



159.    xHamster claimed the purported death threat images came from two separate websites: https://archive.4plebs.org/pol/thread/167398839 (a post from April 09, 2018) and https://www.moddb.com/groups/conservatives-of-mod-db/images/anti-porn    (a post from November 30, 2017). Notably, the moddb.com image they referenced did not contain the same threatening language as the image xHamster circulated (the image was manipulated), and neither of the linked sources were associated with NoFap nor even mentioned NoFap in any capacity. Upon information and belief, xHamster and Mike Stabile from Free Speech Coalition communicated prior to November 06, 2019, to seed a precursor for media hit pieces.

Exhibit "A"




160.    On November 13, 2018, a hit piece by Sarah Manavis was published in *The New Statesman* titled "No Nut November: the insidious internet challenge encouraging men not to masturbate" with the subheading "[w]hat may appear to be just another weird and bizarre internet challenge is underpinned by extreme misogyny and threats of violence." It featured quotes from "Girl on the Net", a "professional sex blogger" and "audio porn producer" who, upon information and belief, had been in communication with xHamster's Alex Hawkins and Defendant Ley from at least 2017. *The New Statesman* article parroted xHamster's dubious allegations of threats and republished disinformation originating from Defendants Ley and Prause. This included disparaging Gary Wilson (the author of Your Brain on Porn), framing NoFap and No Nut November as "anti-masturbation", attempting to link No Nut November to the political group Proud Boys, and purporting that the "anti-wanking" community is an "excellent recruitment tool" for the far-right.

161.    On November 30, 2018, a porn industry-aligned writer named Samantha Cole published a hit piece in *VICE* (featuring Defendant Ley's *Psychology Today* post and xHamster vice president Alex Hawkins), republishing xHamster's dubious allegations targeting Plaintiff NoFap, and writing that "[t]here's a real and concerning connection between the far right, racism,

Exhibit "A"

white nationalism, and anti-masturbation or anti-porn beliefs." A flood of similar industry-supportive hit pieces followed in the months and years ahead, including by Lauren Vinopal in *Fatherly* (featuring Defendant Prause) and EJ Dickson in *Rolling Stone* (featuring Defendant Ley, Alex Hawkins from xHamster, and "Corey Price" from the Pornhub/Aylo Defendants). As the porn industry disinformation campaign continued to escalate—particularly Defendant Prause's actions—Plaintiffs filed suit against Defendant Prause and Liberos LLC in October 2019 for defamation and related claims.

*The Beginning of Defendant Prause's False Allegations of Criminality Targeting Plaintiff*

*Rhodes*

162.    After the @NoFap Twitter posts denying Defendant Ley and Prause's assertions, Defendant Prause posted online comments asserting that Plaintiff Rhodes was a "serial, misogynist harasser" , that he "violated [her] consent & now have an FBI cyberstalking report", that Plaintiff Rhodes "[threatens] to rape [and] stalk women", that Plaintiff NoFap is a "hate group", that Plaintiff Rhodes works with a SPLC-identified hate group Proud Boys, that Plaintiff NoFap is "misogynist", that Plaintiff NoFap was "promoting hate speech", that Plaintiff Rhodes was "stalking women online in violation of no-contact orders", and that visiting Plaintiff NoFap's website supports and furthers antisemitism. Such communications were posted on Twitter, *Psychology Today*'s comments section, and relayed to the pornography website xHamster and at least two journalists.

163.    Plaintiff Rhodes has not initiated unwarranted communication with or about Defendant Prause or engaged in any behavior that could be reasonably interpreted as cyberstalking Defendant Prause. Plaintiff Rhodes has never cyberstalked Defendant Prause or anyone else.

Exhibit "A"

Plaintiff Rhodes has never threatened to stalk Defendant Prause or anyone else. Plaintiff Rhodes has had no known interactions with Defendant Prause outside of a few brief Twitter interactions.

164.    In her defamatory statements, Defendant Prause regularly knowingly and falsely equated posts across various websites, including, but not limited to posts containing the hashtag #nofap, mentioning or referencing "NoFap", or containing "NoFap" in their usernames, by other people to Plaintiffs NoFap or Rhodes, without evidence of any connection between the two, creating the impression that Plaintiff Rhodes or NoFap wrote these posts themselves.

165.    Among these false statements before the Prior Litigation, Defendant Prause reached out to a journalist who quoted Plaintiff Rhodes in a story about pornography published in *The Guardian*, tweeting false allegations that Plaintiff Rhodes has threatened to stalk and rape women.

166.    Upon information and belief, before the Prior Litigation and otherwise, Defendant Prause has repeatedly reached out to journalists to relay false and defamatory information about Plaintiffs Rhodes and NoFap.

167.    The conduct targeting both Plaintiff NoFap and Plaintiff Rhodes persisted, including Defendant Prause creating numerous sockpuppet accounts on Wikipedia to manipulate the page about NoFap.

*The Porn Industry Defendants Ley and Prause's Talking Points*

168.    A popular meme #NoNutNovember, reportedly inspired by Plaintiff NoFap, gained popularity on the Internet, gaining prominence in 2018. Participants would either pretend to or actually abstain from masturbating (or orgasm altogether) for one month and post about their experiences online, often accompanied with comedic or parodic commentary.

Exhibit "A"

169.    In 2018, Alex Hawkins, vice president of one of the top pornography websites xHamster, issued a press release[2] detailing a 14.5% drop in web traffic, dubbing the drop in traffic as "Porn's #NoFap Recession."

170.    In 2018, Alex Hawkins, vice president of one of the top pornography websites xHamster, issued a press release[3] detailing a 14.5% drop in web traffic, dubbing the drop in traffic as "Porn's #NoFap Recession." On November 06, 2018, the website launched a campaign which they labeled "#YesFap" and publicly posted allegations on Twitter that NoFap was launched by "misogynistic" and "antisemitic" blogs, eventually citing an anonymous post[4] on moddb.com.

*Plaintiff Rhodes Participates as a Witness Against Defendant Prause in Two Matters*

171.    Years previously, on May 22, 2017, Rhodes was contacted by the California Board of Psychology requesting his participation as a witness investigating complaints filed against Defendant Prause.

172.    Around June 2019, Rhodes participated as one of nine victim witnesses by agreeing to submit an affidavit in a defamation lawsuit filed against Prause by a neurosurgeon, Donald Hilton, she reported to his hospital and medical board for sexual harassing, stalking, and threatening her.

*The "Attempted Murder"*

173.    Plaintiff Rhodes appeared on a television show, filmed in September 2019, titled *The Doctors* to discuss his experiences with problematic pornography use. Upon information and belief, prior to his planned appearance, Defendant Prause contacted the show's producers to relay false statements that Plaintiff Rhodes was stalking her, that he was subject to a restraining order,

---

[2] https://xhamster.com/media/news/porns-nofap-recession
[3] https://xhamster.com/media/news/porns-nofap-recession
[4] https://twitter.com/xhamstercom/status/1059890195133157376

Exhibit "A"

and that Plaintiff Rhodes' appearance on the show would put Defendant Prause in physical danger. These false allegations by Defendant Prause resulted in Plaintiff Rhodes' appearance being temporarily canceled.

174.    Given Defendant Prause's pattern of filing false police reports against targets of the porn industry, including but Ms. Mickelwait, Gary Wilson, Plaintiff Rhodes used a time lapse camera to photograph his travel to Los Angeles every few seconds to ensure if accused of something, he could demonstrate his innocence.

175.    The timelapse camera acted as an alibi throughout Plaintiff Rhodes' short stay in Los Angeles, filming every moment of the ~23-hour trip, anticipating Defendant Prause would likely make a false accusation while he was there, knowing that she filed dubious police reports about others.



176.    Ultimately, rather than only falsely accusing him of stalking her, Defendant Prause ended up drastically escalating her usual claims by falsely accusing Plaintiff Rhodes of attempting

Exhibit "A"

to film himself murdering her with a firearm while he was in Los Angeles filming *The Doctors* segment.

177.    The timelapse camera footage definitively establishes that Plaintiff Rhodes was not present at Defendant Prause's location (which was and remains unknown) and did not attempt to locate, stalk, confront, assault, or murder Defendant Prause, nor could he have possessed a firearm as asserted by Defendant Prause. Plaintiffs' counsel has preserved the video files in the event Plaintiff Rhodes is contacted by law enforcement due to Defendant Prause's false accusations.

178.    Shifting her timeline, Defendant Prause has also claimed that the alleged incident occurred in October. During that month, however, Plaintiff Rhodes was in the Pittsburgh area assisting with the care of an elderly individual in hospice with terminal cancer. Plaintiff Rhodes has alibis for the entirety of October 2019.

179.    Since the Prior Litigation concluded, Defendant Prause has continued to make the defamatory and absurd claim that Plaintiff Rhodes attempted to murder her. For example, on December 28, 2021, Defendant Prause posted on her @NicoleRPrause Twitter account that "after Wilson posted my physical address I was sexually assaulted outside of my laboratory. We later found out one of his followers had flown to Los Angeles that weekend with a gun intending to [']confront['] me."

180.    On April 03, 2022, Defendant Prause posted to her @NicoleRPrause Twitter account: "When I heard an anti-porn activist flew across the country with a gun & body camera in his luggage to [']confront['] me and film it, our gun laws did not stop him."

Exhibit "A"

*The Prior Litigation: Procedural Background*

181.    In October 2019, Plaintiff Rhodes filed a federal lawsuit against Defendant Prause and her company Liberos LLC, alleging that Defendant Prause was collaborating with Defendant Ley and the pornography industry, including its primary lobbying group, to defame and ultimately deplatform Plaintiff NoFap from continuing to provide peer support resources for recovering problematic pornography users.

182.    Plaintiff Rhodes' prior lawsuit against Defendant Prause and Liberos LLC did not reduce Defendant Prause's conduct, which drastically escalated in subsequent months.

183.    On November 11, 2019, Plaintiff NoFap launched a fundraiser to raise money to help litigate against Prause and Liberos.

184.    Defendant Prause fabricated that she was receiving death threats as a result of a legal fundraiser, making the first false accusation approximately 22 minutes before the fundraiser was publicly viewable.

185.    The litigation between Plaintiff Rhodes and Defendant Prause settled on February 26, 2021 under "mutually agreeable and confidential terms." However, after the settlement, Defendant Prause's conduct targeting NoFap only escalated. Further, Defendants Prause and Ley took to social media to claim that Defendant Prause won the prior litigation, rather than settled it.

186.    Aaron Minc, the principal of a law firm representing NoFap LLC, initiated an adversary proceeding against Defendant Prause in the California Bankruptcy court seeking to file a defamation suit against her.

187.    After receiving permission from the bankruptcy court to pursue litigation against Defendant Prause, on March 12, 2021, Minc formally included Defendant Prause as a defendant in the state of Ohio alleging defamation. Trial was set for February 13, 2023, but on the eve of trial

Exhibit "A"

the parties reached a settlement agreement, which was eventually finalized on May 15, 2023, resulting in Defendant Prause paying damages and issuing a retraction statement.

*The Non-Disparagement Agreement*

188.    The purpose of the settlement agreement was simple. It was to allow Defendant Prause to move forward with her life without her continued targeting of Plaintiff. In exchange for Defendant Prause agreeing to sweeping non-disparagement clauses, Plaintiff Rhodes released Defendant Prause from any and all claims or potential claims to the point of the execution of the agreement.

189.    Specifically, the settlement agreement included:

"Dr. Prause agrees to not personally or anonymously defame or disparage Mr. Rhodes. For purposes of this Agreement, "disparagement" shall mean any negative and offensive statement (verbal, written, or electronic) made about Mr. Rhodes, his websites or products or services, companies or organizations owned by him, his registered trademarks or service marks, his employees or contractors or team members (but specifically excluding Gary Wilson, Stacy Sprout, DJ Burr, John Adler, Laila Mickelwait Haddad, Bradley Green, Stephanie Carnes, Linda Hatch and Geoffrey Goodman), or his family members, in a setting (real or virtual), that is accessible to the general public, has a reasonable likelihood of being seen or heard by one or more members of the general public, is, in fact, seen or heard by one or more members of the general public, and which either explicitly identifies Mr. Rhodes, his websites or products or services, companies or organizations owned by him, his registered trademarks or service marks, employees or contractors or team members or family members or provides sufficient detail that a passing member of the public would reasonably conclude that the statement is about Mr. Rhodes. Any and all statements published on the Internet shall be presumed to have been seen by one or more members of the general public without the need to provide evidence of the same." *Settlement Agreement and Full and Final Mutual Release, § 8, at 3–4 (Feb. 26, 2021).*

190.    Although many of the statements made by Defendant Prause and her collaborators have been false and defamatory—resulting in tortious violations entitling Plaintiffs to injunctive relief and damages—Plaintiffs do not need to meet the threshold of defamation *per quod* or *per se* to prevail on their claims. This is because Defendant Prause agreed not only to refrain from

Exhibit "A"

defaming Plaintiffs but also to refrain from disparaging them in any capacity. By definition, any negative statement seen or heard (or otherwise observed) by one or more members of the general public constitutes disparagement. In exchange for Plaintiffs releasing their prior legal claims against Defendant Prause up until the execution of the Non-Disparagement Agreement, Defendant Prause agreed to sweeping prohibitions on her future ability to criticize, insult, or disseminate any negative statement about Plaintiffs.

191.    The Non-Disparagement Agreement explicitly defines who is protected from disparagement: Plaintiff Rhodes, his websites or products or services, companies or organizations owned by him, his registered trademarks or service marks, his employees or contractors or team members, or his family members.

192.    Defendant Prause was well aware of her contractual obligation not to disparage the Plaintiffs. For example, to avoid answering a question, she cited the Non-Disparagement Agreement during a deposition conducted on August 12, 2022.

**5.      Post-Settlement Disparagement**

193.    Defendant Prause breached the Non-Disparagement Agreement within 9 days.

194.    On March 07, 2021 at 10:42 pm ET, Defendant Prause responded to a person on Twitter, writing "Is there a reason you insist on calling adult women [']girls[']? Or are you just following the pattern of misogyny common in the anti-porn extremists?" In the post, Defendant Prause linked to a disparaging paper about Plaintiff NoFap.

195.    Later on March 07, 2023, at 11:42 pm ET, Defendant Prause posted to Twitter, upon information and belief, referring to a victim-witness declaration submitted in November 2021: "A court filing by NoFap claimed that I used [']racist language['] in a complaint against DJ

Exhibit "A"

Burr. This defamatory claim was recently reposted by @GabeDeem and Gary Wilson. It is false. No evidence of any racist language was ever provided."

196.    In a second tweet, Defendant Prause posted "DJ Burr continues to state that I have been criminally convicted of slander and faked my own death threats. I have never been indicted, convicted, or found guilty of any criminal slander. I have made FBI and LAPD reports for criminal death threats I received." Defendant Prause attached a screenshot of the disparaging and retracted Scram News story to one of the March 07 Twitter posts.

197.    On March 11, 2023, Defendant Prause posted to Twitter "Today #NoFap posted yet again that I am in the porn industry, including a link to a statement by Alexander Rhodes that I am in porn. I have never been in any part of the porn industry or received any support from any porn industry. Any claims otherwise are false and defamatory."

198.    However, Plaintiffs did not make any post concerning Defendant Prause and does not know what she could have been referring to, nor has Plaintiff Rhodes ever claimed that Defendant Prause has ever appeared in pornography content.

199.    On March 11, 2021, Defendant Prause made four Twitter posts underneath mentions of Matt Fradd, repeatedly stating that the Legal Fees Fundraiser was fraudulent, in violation of the Non-Disparagement Agreement. The posts included a screenshot of the Legal Fees Fundraiser and an audio file of Matt Fradd imploring his listeners to donate to it. Defendant Prause wrote, in part, "Isn't this you lying to your followers that their money would go to fight the porn industry? […] Then it never did and is gone?" and "Matt Fradd also raised funds by lying to his followers that they could donate to take down ['] the porn industry[']. The funds never had anything to do with the porn industry and are now gone."

Exhibit "A"

200.    On March 15, 2021, Defendant Prause tweeted "NoFap has republished links today to Alexander Rhodes' claims that there were no threats against me posted on his NoFap websites. This is false and defamatory. Here are some of the threats, which NoFap moderators deleted, and have no evidence of reporting." However, Plaintiffs did not publish any statement concerning what Defendant Prause purported and does not know what she was referring to.

201.    On March 17, 2021, at 11:46 am ET, Defendant Prause tweeted "Science on anti-sex groups online have highlighted misogyny problems for years", linking to a disparaging paper about Plaintiff NoFap. Another Twitter post read "There is considerable science expressing concern about the increasing anti-woman sentiments in online [']sex addiction['] and [']porn addiction['] forums Example:" with another link to the disparaging paper. At 11:55 am ET, Defendant Prause tweeted screenshots from NoFap.com, writing "Days after my sexual assault outside my office, I received a notification that my name was on a sex addiction forum. They wanted to fine women who wear leggings for inciting men. I was wearing leggings when I was assaulted, which my perpetrator actually commented." and "This is how they think about women. This is how I was being discussed on a sex addiction forum."

202.    On March 17, 2021, Defendant Prause retweeted a post by her longtime collaborator and friend Geoffrey Miller, @primalpoly on Twitter, that read "Your periodic reminder that the key leaders of the anti-porn/'no-fap'/'sex addiction' movement are sociopathic grifters who ignore scientific research & inspire homicidal/suicidal levels of sexual shame & self-hatred in their followers."

203.    On March 17, 2021, Defendant Prause tweeted ".@NoFap just stated that they [']won['] a defamation lawsuit against me. That is false and defamatory. The lawsuit was dismissed with prejudice and no finding of defamation."

Exhibit "A"

204.    On March 18, 2021, Defendant Prause tweeted that "@StaciSprout, CSAT, just posted that I was [']forced['] to settle lawsuits with [']big['] fees. This is false and defamatory. Lawsuits were withdrawn with prejudice. I paid nothing. No defamation finding was ever made."[5]

205.    On March 21, 2021, Defendant Prause published a blog post on her Medium account titled "Pornography addiction forums could radicalize another shooter" with the description "What science is revealing about online pornography addiction forums", which violated the Non-Disparagement Agreement multiple times, even linking to articles by others, such as her collaborators, directly naming Plaintiff NoFap. The post included "I had been leading an independent lab for nearly 10 years studying various aspects of genital responsiveness, but the death threats first came when I published a study that did not support pornography addiction. The death threats were thick with misogyny and antisemitism, which seemed bizarre as they simultaneously bragged that they were liberal bastions for equality. I went quickly to being physically stalked, moving my home multiple times, and now living in address protection. Last week, someone threatened to send a private investigator to find my new home. Four days later, the Atlanta murder of (mostly) women seemed to manifest the incredible vitriol I have watched grow. […] As I have experienced first-hand, these forums are known for vitriolically attacking female scholars with differing viewpoints. A forthcoming study describes the validation and escape that seems to fuel these forums. This creates an in-group unable to integrate information inconsistent with their viewpoint. Furthermore, the [']porn addiction['] framework in these forums seems designed to keep these young men in distress, believing that they are powerless without the forum.

---

[5] Sprout was a witness in the Prior Litigation as well as Dr. Hilton's lawsuit against Defendant Prause. This caused Defendant Prause to escalate the intensity and nature of attacks against Sprout. Defendant Prause would sue Sprout on two separate occasions. Both cases were later dismissed without prejudice.

Exhibit "A"

This serves the agenda of well-funded religious organizations in the USA, so there is a protective wall around this growing group."

206.    The conduct described in this Complaint is a representative example of the frequency and nature of Defendant Prause and her collaborators' actions over the past four years since the execution of the Non-Disparagement Agreement.

207.    For the sake of brevity, many subsequent contract breaches will be summarized into categories based on the type of conduct or defamatory claims. Indeed, it would take Plaintiffs many hundreds of additional pages to fully describe the extent of the tortious conduct to which they had been subjected. However, Defendant Prause has violated the Non-Disparagement Agreement hundreds of times, disparaging Plaintiffs to millions of people in collaboration with the other Defendants—often while falsely portraying herself as a victim of the Plaintiffs and attributing fabricated actions to them.

**6.    Disparagement Associated with Other Legal Actions**

*Minc vs Prause*

208.    Aaron Minc was a principal of the law firm representing Plaintiffs in the Prior Litigation. Defendant Prause defamed him in retaliation for doing the same, which resulted in his commencing a lawsuit against her.

209.    While Aaron Minc's defamation lawsuit against Defendant Prause began in 2020, Defendant Prause continued to defame and disparage Plaintiffs in the context of this litigation numerous times after executing the Non-Disparagement Agreement.

210.    Defendant Prause settled the matter on February 12, 2023, paying damages to Aaron Minc and issuing a retraction statement. This statement included "At the time I published the tweets described, I had no information or evidence that Aaron Minc knew my address or

Exhibit "A"

disclosed it to anyone. I do not believe that Aaron Minc knew or disclosed my address and have never had information to the contrary. […] I have no information that Aaron Minc or Minc Law has ever stalked or harassed me in any way, or ever worked or cooperated with anyone, to do me any physical harm. […] I made a mistake publishing the tweets, because it was never my intention to suggest or claim that Mr. Minc or Minc Law has ever participated in any plan or scheme to harm me".

*Rhodes vs Azeff*

211.    Plaintiff Rhodes came from a modest background, experiencing an unstable childhood, marred by periods of neglect and sexual abuse. Plaintiff Rhodes was sexually abused by multiple people when he was a child, which he has never spoken about in a publicly observable manner and only started to process as an adult.

212.    Azeff is an attorney, writer, and former sex worker. After years of split custody, Plaintiff Rhodes entirely stopped living with Azeff around age 13, except for occasional visitation, although they remained in contact. In the years before and after, he grew increasingly uncomfortable with her as she subjected him to demeaning, inappropriate, and abusive treatment. Plaintiff Rhodes distanced himself over the years—and further still in 2019—after she expressed concerning behavior, including making contradictory allegations against a specific family member, along with numerous allegations about various other family members. Further, Plaintiff Rhodes was informed by an extended family member that they witnessed her sexually abusing him as a child. With the support of third parties and a therapist, Plaintiff Rhodes distanced himself from Azeff further and eventually was able to cut her off completely. Upon information and belief, Defendant Prause utilized an investigation firm called CoventBridge Group Ltd, including with an individual named Matthew stein, to conduct opposition research on Plaintiff Rhodes.

Exhibit "A"

213.    Upon information and belief, CoventBridge Group Ltd, or another agency hired by Defendant Prause, her counsel, or other entities connected to Defendant Prause, likely deployed an in-person private investigator to surveil Plaintiff Rhodes.

214.    Most of Azeff's assertions were easily refutable with material evidence, such as text messages, statements by others, emails, and other corroborating evidence.

215.    Upon information and belief, Defendant Prause assisted Azeff in preparing a defamatory statement which Defendant Prause produced in her bankruptcy and subsequently disseminated online, which Azeff supplemented with personal information presented in a false light.

216.    In or around January 2021, upon information and belief, Defendant Prause disseminated statements puportedly by Azeff widely online, including by hiring a service on Fiverr.com to assist.



217.    On June 14, 2021, a Pittsburgh-area man named Doug Allen emailed counsel for Plaintiff Rhodes, asserting that he had been included in email communication with Azeff, Defendant Ley, and Defendant Prause, concerning Plaintiff Rhodes being purportedly involved in a mass shooting incident that occurred in Pittsburgh in 2009. Upon information and belief, further emails with Doug Allen asserted that Plaintiff Rhodes was a hacker who likely wrote a manifesto that the killer published prior to the shooting, and that Plaintiff Rhodes was an accomplice to the mass shooting.

Exhibit "A"

218.    In emails purportedly between Doug Allen and Azeff, other defamatory claims were concocted, with discussion regarding how Azeff could make money from such claims:



### Indelibly (L)Inked - The Story of My Relationship With My Son, No Fap Founder Alex Rhodes.

(The Mistakes I Made Parenting A Boy Who Some Believe Is A Dangerous Con Artist, Thief, and Bullying Fraud)

Featuring interviews with:

- A man who claims to be Alex Rhodes' gay ex-lover who said Alex Rhodes forced him to masturbate watching Thailand child porn, then threatened his family.
- A man who claims to be member of Alex Rhodes online forum who said Alex Rhodes sent him unsolicited pornographic online video chats,
- A women who claims she caught her husband and Alex Rhodes masturbating on a Zoom calls and then was sent death threats,
- A man who claims to be a "black hat" SEO expert who gamed the search engines for Alex Rhodes and whose dog was found dead the day after he threatened to go public.
- A man who claims Alex Rhodes was the instigator in the incel mass shooting of women in a Pittsburgh gym,
- And many more...

DISCLAIMER: I have no way of verifying the stories of those I interviewed. All asked to remain anonymous.  They wanted their stories shared to protect innocent people from becoming future victims of Alex Rhodes. Each one reached out to me through DM on my private Reddit accounts.
----------------------------------------

The biggest thing I can tell you, Althea, is that this book WILL be a money-maker.  The book itself will become popular, AND you will become recognized globally as an expert in this arena.  There's nothing anybody can do to stop that.  Especially in the #metoo era.  How many other women feel bullied and victimized by entitled sons due to bad parenting advice given to an entire generation?

I anticipate you will be able to get $8000 to $15,000 just for keynote speaking engagements.  If the lawyers try to interfere in any way, you may be able to file a countersuit for REAL damages - not imaginary damages.

219.    Azeff would interact back and forth with Defendant Ley on social media to disseminate false and defamatory statement concerning Plaintiff Rhodes, along with making other social media interactions with Defendant Prause, Gustavo Turner from XBIZ, Mike Stabile from Free Speech Coalition, Eric Sprankle, Jacob Johanssen, @DaddyWolfBear, and @JFTxWine (a friend of Defendants Prause and Ley).

220.    On March 03, 2022, as counsel for Plaintiff Rhodes was still attempting to serve Azeff with the lawsuit, Defendant Ley announced the pseudonymous litigation against Azeff on social media:

Exhibit "A"



221.    On May 19, 2022, the @DrDavidLey Twitter account announced a video depicting Azeff and purportedly uploaded by her to YouTube, which was also shared by @DaddyWolfBear and others. According to the Biology Relative's sworn statement, she wrote "I included Dr. David Ley, too, as I had [']come out['] on Twitter on his account." Upon information and belief, Defendants Prause and Ley cultivated, advised, and coordinated with Azeff to maximize harm to Plaintiffs.



222.    On June 03, 2021, Defendant Ley posted on his Twitter account, encouraging people to follow Azeff on Twitter.

Exhibit "A"



223.    Throughout the litigation, Azeff and Defendants Prause and Ley disseminated additional false and defamatory claims concerning Plaintiff Rhodes. Azeff docketed information and statements that, upon information and belief, were provided to her by Defendants Prause and Ley.

224.    Since the Non-Disparagement Agreement was executed, Defendants Prause and Ley continued to collaborate with Azeff to disparage and defame Plaintiffs, including connecting Azeff with journalists and alerting journalists to her claims, to try to get hit pieces placed on Plaintiffs.

*Prause vs Stebbins*

225.    Upon information and belief, Defendant Prause previously filed reports against Plaintiffs' lead counsel, Andrew Stebbins, alleging unethical conduct. In a declaration, Stebbins wrote "As a result of my representation of my client, Ms. Prause has reported me to the Ohio Supreme Court Office of Disciplinary Council at least twice. Included in those complaints were allegations that I somehow violated Ms. Prause's rights under the California Safe at Home Act, similar to the vague allegations made in the Complaint in this matter. […] Both of these reports were summarily dismissed by the Ohio Supreme Court without any further investigation." *Prause*

Exhibit "A"

*v. Stebbins, No. 23SMSC00846 (Cal. Super. Ct., L.A. Cnty., Santa Monica Courthouse, Small*

*Claims Div., filed June 5, 2023) (Declaration of Andrew C. Stebbins, executed May 24, 2023, ¶¶5–*

*6).*

226.    On April 27, 2023, Prause filed a small claims lawsuit against Andrew Stebbins, an attorney representing NoFap, alleging defamation stemming from legal services representing NoFap and its founder against Prause. See Prause v. Stebbins, No. 23SMSC00846 (Cal. Super. Ct. L.A. Cnty.). The complaint alleged that "Defendant has engaged in multiple counts of defamation per se to five journalists and members of the public in California that resulted in real and presumed damages. Defendant has violated the California Safe At Home provisions three times, despite being notified of the Plaintiff's enrollment in same."

227.    On December 29, 2023, Defendant Prause's lawsuit against Andrew Stebbins was dismissed without prejudice for lack of jurisdiction.

**7.    The Taylor & Francis Paper**

*Background of the Taylor & Francis Defendant*

228.    Defendant Taylor & Francis is, according to its website, "one of the world's leading academic publishers – and one of its most enduring. For more than two centuries Taylor & Francis has been committed to the highest quality scholarly publishing, and this remains our goal today. Our purpose is to foster human progress through knowledge – something we've been doing since the Enlightenment. We aim to promote a positive future for everyone through our work. Our imprints include Taylor & Francis, Routledge, CRC Press, F1000 Research, Dove Medical Press and PeerJ. We've published over 145,000 book titles, and we actively publish over 2,700 journals." Defendant Taylor & Francis is the academic publishing division of their parent company Informa PLC, whose website reported over 4 billion dollars of revenue in 2023.

73

Exhibit "A"

229.    One of the journals published by Defendant Taylor & Francis is named *Deviant Behavior*. According to Taylor & Francis' website, "*Deviant Behavior* is the only journal that specifically and exclusively addresses social deviance. International and interdisciplinary in scope; it publishes referenced theoretical, descriptive, methodological, and applied papers. All aspects of deviant behavior are discussed, including crime, juvenile delinquency, alcohol abuse and narcotic addiction, sexual deviance, societal reaction to handicap and disfigurement, mental illness, and socially inappropriate behavior."

230.    Defendant Taylor & Francis purports to be a member of the Committee on Publication Ethics ("COPE") and lists purported ethical guidelines on their website, including but not limited to:

   a.    <u>Declaring Potential Conflicts of Interest</u>: "Competing interests can be financial or non-financial in nature. To ensure transparency, you must also declare any associations which can be perceived by others as a competing interest."

   b.    <u>Declaring Contributions</u>: "Listing authors' names on an article is an important mechanism to give credit to those who have significantly contributed to the work. It also ensures transparency for those who are responsible for the integrity of the content."

   c.    <u>Citing Credible Sources</u>: "Research and non-research articles must cite relevant, timely, and verified literature (peer-reviewed, where appropriate) to support any claims made in the article. You must avoid excessive and inappropriate self-citation or prearrangements among author groups to inappropriately cite each other's work, as this can be considered a form of misconduct called citation manipulation. […] If you're the author of a non-research article (e.g. a Review or Opinion) you should ensure the references you cite are relevant and provide a fair and balanced overview of the current state of research or scholarly work on the topic. Your references should not be unfairly biased towards a particular research group, organization or journal."

   d.    <u>Avoiding Misconduct</u>: "Taylor & Francis takes all forms of misconduct seriously and will take all necessary action, in accordance with COPE guidelines, to protect the integrity of the scholarly record. Examples of misconduct include (but are not limited to): Affiliation misrepresentation […] Citation manipulation […] Undisclosed competing interests […] Unethical research […] Image or data manipulation/fabrication".

Exhibit "A"

e. <u>Obtaining Consent from Subjects</u>: "Taylor & Francis endorses the recommendations of the International Committee of Medical Journal Editors (ICMJE), which emphasizes that patients and study participants have a right to privacy that should not be infringed without informed consent."

f. <u>Avoiding Citation Manipulation</u>: "Miscitation: where articles are inaccurately cited leading to misattribution. Where citation manipulation is suspected or detected, it will be subject to an investigation. Where this behaviour is identified, unpublished articles may be rejected, or if published, may be subject to a post-publication notice, such as retraction. Where there is evidence of repeated behavior, or a deliberate attempt to engage in citation manipulation, Taylor & Francis may notify the individual's institution."

g. <u>Not Manipulating the Publishing Process</u>: "Taylor & Francis has a zero tolerance policy regarding the manipulation of the submission, peer review or publication process […] Unethical or undue influence over editorial decision-making […] Upon being made aware of a concern, we will conduct a full investigation in accordance with this policy."

231.    Defendant Taylor & Francis defines a conflict of interest on their website.[6] They

write, "Some examples of financial conflicts of interests include:"

a. "Employment or voluntary involvement"
b. "Collaborations with advocacy groups relating to the content of the article."
c. "Personal fees received by the authors as honoraria, royalties, consulting fees, lecture fees, or testimonies."
d. "Holding a position on the boards of industry bodies or private companies that might benefit or be at a disadvantage financially or reputationally from the published findings."
e. "Writing assistance or administrative support from a person or organization that might benefit or be at a disadvantage from the published findings."
f. "Personal, political, religious, ideological, academic and intellectual competing interests which are perceived to be relevant to the published content."
g. "Involvement in legal action related to the work."

232.    Defendant Taylor & Francis defines data fabrication and falsification on their

website,[7] writing "It is essential that all data is accurate, and representative of your research. Cases

of data fabrication/falsification will be evaluated by the editor of the journal and Taylor & Francis."

---

[6] https://authorservices.taylorandfrancis.com/editorial-policies/competing-interest/
[7] https://editorresources.taylorandfrancis.com/policies/data-fabrication/

Exhibit "A"

On another page,[8] Defendant Taylor & Francis published: "Where deliberate action has been taken to inappropriately manipulate or fabricate images or data. This is a serious form of misconduct as it is designed to mislead others and damages the integrity of the scholarly record with wide-reaching impact and long-term consequences."

233.    By publishing these ethical guidelines and maintaining membership in the Committee on Publication Ethics ("COPE"), Defendant Taylor & Francis held itself out as a publisher of credible, scientifically rigorous, empirically supported, and otherwise reliable information.

*Overview of the Taylor & Francis Paper*

234.    Defendants Prause and Ley posted about the upcoming Taylor & Francis Paper on social media:

   a.  November 22, 2022: @NicoleRPrause posted on Twitter, writing "Thank you for the article. We have a scientific article under review about the violence on one anti-porn forum. […] I suspect people will be very surprised to find these groups are so violent!"

   b.  January 19, 2023: @NicoleRPrause posted on Twitter, writing "Reboot websites are still up and recruiting youth, where they glorify murdering people who work in the adult industry. @NCOSE, @lisaling, @gopTodd and others advertise these websites. Our paper on the extremist violence in these groups is under review."

   c.  March 29, 2023: @NicoleRPrause posted on Twitter, writing:

---

[8] https://authorservices.taylorandfrancis.com/editorial-policies/misconduct/

Exhibit "A"



d. <u>April 10, 2023</u>: @NicoleRPrause posted on Twitter, writing "We have data new under review linking her last campaign to increased planned-violence posts on anti-porn forums. This is incitement, and I will help law enforcement link anything they incite appropriately to the group."



e. <u>November 02, 2023</u>: Both Defendant Prause and Defendant Ley announced the upcoming paper on Twitter. Defendant Ley wrote "Very exciting. Research paper on violence in no-fap just accepted for publication. Details to come! (Or, umm, not come?)" On the same day, Defendant Prause posted "Paper accepted! Details forthcoming: [']Violence on Reddit support forums unique to r/NoFap[']", to which Rena Malik responded "!!!!!" and an industry-associated account, @JustinCasePnC, responded with "EXCITE".

f. <u>November 11, 2023</u>: @NicoleRPrause posted on X (formerly Twitter), writing "Our study (accepted, awaiting publication) connects Exodus Cry's #TraffickHub campaign to violent online posts, made on forums where mass murderers have been verified. I believe the data will show these anti-porn groups rely on intimidation/violence rather than argument/reason."

Exhibit "A"

235.    On November 15, 2023, Defendant Taylor & Francis published the paper titled "Violence on Reddit Support Forums Unique to r/NoFap" in a journal named *Deviant Behavior*. The listed co-authors were Defendants Prause and Ley.

236.    From its title to its entire premise, the Taylor & Francis Paper, purportedly co-authored by Defendants Prause and Ley, was published in direct violation of the Non-Disparagement Agreement. The paper contained numerous false and defamatory statements, as well as numerous disparaging assertions targeting Plaintiffs. Moreover, the purported study itself was fraudulent, premised on data falsification and designed to present opposition research conducted by the Porn Industry Defendants as legitimate scientific analysis.

237.    Notably, numerous conflicts or potential conflicts of interest between Plaintiffs and Defendants Prause and Ley were not disclosed by the authors, including but not limited to:

a.    Defendant Prause offers magnetic "brain stimulation" to increase or lower sexual drive on her LiberosCenter.com website, directly competing with Plaintiff NoFap which offers to provide a peer support platform for recovery from compulsive sexual behavior, such as problematic pornography use.

b.    Defendant Prause had previously filed two successful (false) administrative complaints against Plaintiffs to the Pennsylvania Department of State.

c.    Defendant Ley has collaborated with xHamster, receiving financial compensation (according to Defendant Ley, it was funneled through Sexual Health Alliance), to publish content critical of Plaintiff NoFap.

d.    Defendant Ley offers a "Problem Sexual Behavior Certification Program" for sale with Sexual Health Alliance, featuring Defendant Prause as an instructor and charging $4194 as an alternative approach to the addiction model for problematic pornography use.

e.    Both Defendants Prause and Ley are closely collaborating with numerous individuals within the pornography industry, including but not limited to at xHamster, the Pornhub/Aylo Defendants, and Free Speech Coalition.

f.    Defendants Prause and Ley have a long history of advocating and lobbying in support of pornography industry interests, including opposing legislation in collaboration with the Free Speech Coalition and other adult industry entities.

78

Exhibit "A"

g. Defendant Prause was party to seven figures of contracts by OneTaste, an organization which purported to facilitate partnered masturbation classes and that, upon information and belief, Defendant Ley agreed to testify for OneTaste in a United States criminal action alleging sex-trafficking–related misconduct.

h. Defendants Prause and Ley had a long history of posting disparaging and defamatory statements concerning Plaintiffs online, including through Defendant Prause's use of dozens of alias identities. Including through the use of dozens of Wikipedia pages used to control the page about Plaintiff NoFap, in collaboration with Tgeorgescu.

i. Defendant Prause has (falsely) accused Plaintiff Rhodes, a target repeatedly maligned in the paper, of physically stalking her, violating an alleged no-contact or restraining order, cyberstalking her, attempting to murder her, attempting to murder others, and engaging in domestic terrorism, and purportedly reporting him to law enforcement agencies for such purported crimes.

j. Defendant Prause has staged multiple death threat hoaxes targeting Plaintiffs and has impersonated NoFap community members.

k. Defendant Prause staged a hoax by falsely claiming, 22 minutes before a legal fundraiser for the Prior Litigation began, that she was receiving threats from the fundraiser, and she relayed this false allegation to a media outlet that later went out of business after Plaintiffs pursued a defamation claim.

l. Plaintiff Rhodes cooperated as a witness in a prior California Board of Psychology investigation against Defendant Prause and eventually filed a complaint against Defendant Prause himself after her conduct escalated.

m. Both Plaintiff Rhodes and Defendant Ley served as witnesses supporting opposite parties in *Hilton v. Prause*. And that Defendant Prause settled that case, with her issuing a retraction statement.

n. Plaintiff Rhodes participated as a witness, submitting a statement in the attempted *Prause v. Gary Wilson* restraining order, in which the court granted an anti-SLAPP motion against Defendant Prause.

o. Defendant Ley served as a witness supporting Defendant Prause in *Prause v. Sprout*, a lawsuit that was dismissed on August 02, 2022. And the litigation arose primarily from a fundraiser hosted by Plaintiff NoFap.

p. Plaintiffs initiated defamation litigation against Defendant Prause and Liberos LLC in October 2019, with the lawsuit settling in February 2021.

q. Defendant Prause declared bankruptcy, listing Plaintiffs are creditors.

Exhibit "A"

r.  Plaintiffs filed adversary proceedings within Defendant Prause's bankruptcy against both Defendant Prause and her company Liberos LLC, which settled in February 2021, with her insurance carrier paying damages.

s.  Both Plaintiff Rhodes and Defendant Ley served as witnesses supporting opposite parties in *Minc v. Prause*. That counsel for Defendant Prause filed an unsuccessful motion to attempt to prevent Plaintiff Rhodes from testifying. That Defendant Ley was purportedly to be Defendant Prause's sole witness to testify at trial. And that Defendant Prause settled that case, with her issuing a retraction statement and paying damages.

t.  Counsel for Plaintiffs obtained records reflecting Defendant Prause's prior criminal conviction and police reports concerning Defendant Prause's alleged physical stalking of an individual, and Defendant Prause was aware of the private investigation firm that obtained these materials within the context of the Prior Litigation.

u.  The Non-Disparagement Agreement contract arising from prior litigation with Defendant Prause and her company Liberos LLC.

v.  Defendants Prause and Ley established contact with Azeff of Plaintiff Rhodes who was accused of sexually abusing him as a child, then collaborated with her to concoct and disseminate further false and defamatory statements concerning Plaintiffs, including false allegations of violence and criminality.

w.  Defendant Ley cooperated as a witness in *Rhodes vs. Azeff*, writing a declaration in support of her, and disseminating announcements concerning the litigation online as her surrogate.

x.  There was ongoing litigation initiated by Defendant Prause against Plaintiffs' attorney Andrew Stebbins, pertaining to his representation of Plaintiffs, at the time the Taylor & Francis paper was published, which was dismissed by the court on December 29, 2023.

y.  Upon information and belief, both Defendants Prause and Ley knew that Plaintiff Rhodes and others blamed their course of conduct for the death of his friend Gary Wilson and was aware that Plaintiff Rhodes reported Prause to law enforcement for her cyberbullying conduct targeting Wilson.

z.  Defendant Ley served as an expert witness in multiple cases for the Pornhub/Aylo Defendants, including in Free Speech Coalition, the Pornhub/Aylo Defendants, and XVideos' Supreme Court challenge to age verification law.

Exhibit "A"

aa. Defendant Prause has advocated to "deplatform" any website that provides "support forums" which allow for the "abstinence goal" of avoiding pornography use.

bb. The conduct of Defendants Prause and Ley over the years has stretched Plaintiff NoFap's resources thin, making moderation and the recruitment of moderators far more challenging.

cc. Defendant Prause posted violent material (as defined by the Porn Industry Defendants' own purported methodology) celebrating the death of Gary Wilson to r/NoFap and later omitted those posts from the paper.

dd. Defendant Prause has advocated for organizations not to recognize problematic pornography use, such as in the World Health Organization's ICD forum.

ee. Defendant Prause has interfered with the conduct and publication of research about Plaintiff NoFap's users, including efforts to initiate studies and to bring completed work to publication.

ff. Defendant Prause has advocated for further research to not be conducted on Plaintiff NoFap, including writing "scientists also should not waste further time and resources testing harmful Reboot abstinence treatments."

*The Pornhub/Aylo Defendants' Involvement with the Taylor & Francis Paper*

238.    The Taylor & Francis did not disclose that, upon information and belief, Gary Nugent, a high-level employee of the Pornhub/Aylo Defendants, was involved in its creation.

239.    Defendant Prause has regularly hosted opposition research targeting Plaintiffs, The Reward Foundation, and Gary Wilson on Open Science Framework ("OSF"), hosted by the Center for Open Science.

240.    The purported study collected data from September 2011 through September 2022—an eleven-year span—and the authors analyzed 397 posts they labeled as "violent" purportedly posted on r/NoFap during that period. With porn industry resources behind them, the authors were able to surface some posts that NoFap's under-resourced moderators—who were themselves stretched thin, being frequently harassed by Defendants Prause and Ley and their collaborators—may have missed, along with many posts that moderators had already identified

Exhibit "A"

and addressed. However, the r/NoFap subreddit receives hundreds of thousands of posts per year, making the authors' scraped sample a minute fraction of total activity.

241.    Defendants Prause and Ley, upon information and belief in collaboration with the Pornhub/Aylo Defendants, compiled links to purportedly violent posts on Plaintiff NoFap's platforms in spreadsheets that were then posted to OSF. Defendant Prause repeatedly circulated links to these OSF-hosted opposition-research spreadsheets to disparage and defame Plaintiffs, often adding accompanying comments critical of Plaintiffs and other industry targets.

242.    According to the Taylor & Francis Paper, it was submitted to *Deviant Behavior* on July 26, 2023 and later revised on November 02, 2023 prior to final publication.

243.    A September 26, 2022, OSF-hosted spreadsheet[9] included two accounts for an individual named Gary Nugent.



244.    The "Gary Nugent" OSF user profile[10] displayed an avatar image sourced from Gravatar, a service that provides a "global avatar" usable across multiple websites.

---

[9] https://osf.io/rdx2q/
[10] https://osf.io/user/uthk3

Exhibit "A"



245.    Upon searching Google for the Gravatar avatar image, Plaintiffs located a CoFoundersLab profile[11] for "Gary Nugent" that used the same Gravatar-hosted image. The CoFoundersLab profile for "Gary Nugent" linked to a social media profile from LinkedIn.[12]



246.    According to the LinkedIn profile, Gary Nugent has worked for the Pornhub/Aylo Defendants for more than six years: Manager, Search and Digital Marketing (Feb. 2019–Apr. 2024) and Manager, Trust & Safety (Apr. 2024–present).

---

[11] https://cofounderslab.com/profile/gary-nugent and archived at https://archive.is/rKYK7
[12] https://ca.linkedin.com/in/garypnugent

Exhibit "A"



247.    Gary Nugent's LinkedIn profile reflects purportedly strong technical competency, including experience with online data scraping and analysis.

248.    After Gary Nugent was added to the OSF spreadsheet, Defendant Prause started publishing new versions of the spreadsheet to OSF periodically, amassing many more purportedly violent posts. Upon information and belief, opposition research was conducted by the Pornhub/Aylo Defendants for use in Defendants Prause and Ley's Taylor & Francis Paper. Posts from these revised spreadsheets, which were published after Gary Nugent's apparent involvement, made their way into the final published Taylor & Francis paper.

249.    Upon information and belief, Gary Nugent was listed as a contributor to the spreadsheet at least approximately 10 months prior to the paper being submitted for publication. Upon information and belief, opposition research that appears in the final paper was obtained only after Gary Nugent was added as a contributor.

250.    Upon information and belief, Gary Nugent also has an X profile under the username @goatfactor.

Exhibit "A"



*Data Falsification*

251.    The Taylor & Francis Paper was extensively data falsified. The data falsification

occurred in multiple ways:

>    a.   The inclusion of non-violent posts from the r/NoFap subreddit.
>
>    b.   The exclusion of violent posts from the r/stopdrinking and r/pornfree subreddits
>         (which Defendants Prause and Ley claimed were control groups).
>
>    c.   The inclusion of purportedly violent posts that could not have been gathered
>         through the paper's purported methodology.
>
>    d.   The exclusion of Defendant Prause's violence-themed posts, as defined by
>         purported methodology.

252.    The authors claimed to exclude posts that were not violent, writing "For example,

['[kill her king!['] might refer to a woman (violent) or an urge to masturbate (not violent). Posts

containing negating words (i.e., [']jk[']) were classified as not violent." Upon information and

belief, the Porn Industry Defendants did not equally search for similar joke posts on the purported

control subreddits. Examples of non-violent posts from the "data" on the r/NoFap subreddit, upon

information and belief, included:

>    a.   <u>Row 13</u>: This post describes a person's internal feelings while tapering off Effexor
>         (venlafaxine), which the authors classified in the paper as a violent threat.

Exhibit "A"

b.  <u>Row 25</u>: This post responds to a meme featuring the fictional dragon Paarthurnax by describing the plot of the widely popular video game The Elder Scrolls V: Skyrim—which the authors nevertheless classified in the paper as a violent threat.

c.  <u>Row 53</u>: This post involved a user sharing a George S. Patton quotation about fighting Germany. The co-authors classified it as a death threat against the porn industry and as a death threat against another forum user.

d.  <u>Row 56</u>: This post refers to metaphorically "slapping" an urge to use pornography, which the authors classified as "violence" targeting "women".

e.  <u>Row 70</u>: This post states "[f]apping causes terrorism", which the authors classified as a death threat. While sophomoric, the comment is not a death threat.

f.  <u>Row 105</u>: This is a post describing a struggle with masturbating to porn, which the authors classified as a death threat against the porn industry.

g.  <u>Row 132</u>: This post quotes a famous actor, which the authors mischaracterized as a death threat against another forum user.

h.  <u>Row 169</u>: This post quotes the pornography site xHamster for libeling NoFap with a graphic unrelated to NoFap, which the authors categorized as a death threat against the porn industry.

i.  <u>Row 171</u>: This post discusses the video game Grand Theft Auto and does not advocate real-world violence (such as murdering a sex worker to take money), yet the paper's datasheet labels it as a death threat against the porn industry.

j.  <u>Row 190</u>: This post appears to be from a Reddit troll who said "fuck all of you nofap monsters. i need my porn or i will rape women". Obviously, this is a problematic post, but it appears that the authors are ascribing to r/NoFap community members the comments of Reddit trolls who post to disparage NoFap members.

k.  <u>Row 197</u>: This row contains a post that includes "P.S. This is a sarcastic post, for dumb redditors", yet it is included in the dataset despite the authors' methods stating that "[p]osts containing negating words (i.e., "jk") were classified as not violent."

l.  <u>Row 201</u>: "We're basically fighting to the death against these people" is a metaphor about addiction recovery that the authors mischaracterized as a death threat against a scientist.

m.  <u>Row 227</u>: This metaphorical post is a response to a fundraiser for the Prior Litigation and stated, "I may not have money now but I am fighting to death as a no fap soldier." Within the community, "fighting [urges]" is commonly used to

Exhibit "A"

describe abstaining from using pornography. The authors nevertheless treated this kind of metaphorical language—including similar posts like "Yeah its truly a war now"—as death threats.

n.  Row 244: This post states "I AM A SOLDIER': I will stand against porn", which the authors describe as a death threat against the porn industry. It is an obvious metaphor, not a death threat.

o.  Row 310: The authors claim that a news story about the alleged arson at the home of Pornhub CEO Feras Antoon—with zero comments—constitutes a threat against the porn industry.

p.  Row 314: This post reads "So you really want to make erections painful for occurring in a small cage? Is the point of nofap to program your brain to start hating erections? Why not just castrate yourself?". The user appears to be making a rhetorical point, not issuing a threat as the spreadsheet purports.

q.  Row 330: This post states "Trust me, porn industry did hire a squad to take down newbie in this group. I did chat with them." It is odd, but it is not a death threat; classifying it as a death threat against the porn industry is erroneous.

r.  Row 340: This is a joke post responding to a video saying "Instructions unclear: I built a nuclear bomb" which is classified as a death threat.

s.  Row 372: The authors frame this post as "destruction of property," but it is simply a porn addict describing destroying their own hard drive with a hammer; in a subsequent post they added, "I chose to be more eco-friendly and I brought it to an electronics recycling center." If that counts as violence, the authors should likewise search the control subreddit r/StopDrinking for recovering alcoholics describing pouring out or smashing bottles of alcohol.

253.  Representative examples of (over 400) violence-themed posts (as defined by the Taylor & Francis Paper's purported methodology) excluded from the "control" subreddits r/StopDrinking and r/PornFree—occurring between September 2011 and September 2022 and located using the same search terms—include:

a.  "When I was 19 I didn't know why I had to stalk girls and why I had such violent desires to kill them."

b.  "I saw a kitchen knife on the counter and before I knew it I had stabbed him in the chest twice and he ran away. 20 minutes later I answer the door and I'm in a cop car on the way to the police department. I sat in a room for 3 or 4 hours and a cop walked in and said I was being charged for attempted murder."

Exhibit "A"

c.  "My husband, who does not drink, and I got into a HUGE fight over it. I had already attacked him, punching him in the face several times. Things escalated and I ended up grabbing a knife and cutting his throat."

d.  "I walk away from the station towards my house, When i get there everyone is gone, So i head upstairs grabbing the biggest knife i can from the kitchen. While i'm upstairs slowly cutting my stomach, Legs and arms and crying uncontrollably i hear my girlfriend come home. she comes upstairs and see's me with the knife and tries to grab it from me, I push her again. Then start punching, Kicking and headbutting the wall beside her, She got up and ran downstairs to phone the police who turned up and arrested me."

e.  "Well, I killed my girlfriend's father in self-defense. Stabbed him with a butcher knife in the kitchen."

254.    Plaintiffs compiled a spreadsheet of over 400 control subreddit posts the authors didn't include in the Taylor & Francis Paper, which was provided to Defendant Taylor & Francis. The number of posts the authors excluded from the control groups (at least 400, likely thousands) exceeded the total number of purported violent r/NoFap posts gathered for the study (397). It is unknown to Plaintiffs how many violence-themed posts, as defined by the listed co-authors, were excluded from the "control" subreddits, but likely thousands.

255.    According to the Taylor & Francis Paper's purported methodology, "R v.4.1.2 library RedditExtractoR" was utilized to collect purportedly violent posts from three Reddit-hosted subreddits over a specific time period ("[t]he search included posts from September 2011 to September 2022"), which were then "screened […] for violence directed at real persons or objects".

256.    The Taylor & Francis Paper's underlying spreadsheet includes posts from the NoFap.com forums (which are not on Reddit) and Reddit posts that had already been deleted (a whopping 156 rows, or 38.79% of the purported violent r/NoFap posts)—citing the deleted-post

Exhibit "A"

archive website unddit.com—materials that could not have been collected using the paper's purported methodology.

257.    The use of NoFap.com and unddit.com is not described in that methodology. It also appears that comparable efforts to locate previously deleted, violence-themed content—via, upon information and belief, web scraping—were not uniformly applied to the so-called control groups r/PornFree or r/StopDrinking. Further, the spreadsheet included a post from r/modtalk_leaks on row 196, which was not accounted for in the paper's purported methodology.

258.    The haphazard manner in which the "data" was added to the spreadsheet demonstrates that Defendants Prause and Ley (and upon information and belief, the Pornhub/Aylo Defendants) did not, in fact, stick to their purported methodology. Instead, those behind the Taylor & Francis Paper exhaustively scraped NoFap posts by any means available and did not apply comparable rigor to the designated control groups. In other words, the Taylor & Francis Paper's underlying "data" was porn industry opposition research poorly masquerading as science.

259.    Defendant Prause has made at least[13] two posts on r/NoFap that should have been included in the Taylor & Francis Paper's "data" but were excluded for unknown reasons.

   a.   "His tweets as he died were all vicious attacks on people. Some [']legacy['] of hate." (May 24, 2021): Upon information and belief, this r/NoFap post[14] by Defendant Prause's Reddit account included the word "die", expressed support for a death, and is far more violent in nature than many of the posts the co-authors included in the Taylor & Francis Paper. The post was made during the same time range the paper purportedly analyzed.

   b.   "Gary Wilson was a vile thing. The world is better for his death. Now that he cannot threaten people doing actual work on pornography anymore, maybe their families can feel safe again. [Link to file hosted on Defendant Prause's Google Drive account]" (May 22, 2021): Upon information and belief, this r/NoFap post[15] by Defendant Prause's Reddit account included the word "death", expressed support

---

[13] Upon information and belief, Defendant Prause has had other accounts banned from Plaintiff NoFap's platforms due to policy violations.

[14] https://reddit.com/r/NoFap/comments/nibrgd/gary_wilson_of_ybop_has_passed_away/gz834yl/?context=3

[15] https://reddit.com/r/NoFap/comments/nip2w8/gary_wilson_might_be_gone_but_his_legacy_remains/gz3r8oh/

Exhibit "A"

for a death, and is far more violent in nature than many of the posts the co-authors included in the Taylor & Francis Paper. The post was made during the same time range the paper purportedly analyzed.

260.    Due to the extensive data falsification in the Taylor & Francis Paper, the title and premise of the paper was not only published in breach of the Non-Disparagement Agreement, but is also false and defamatory.

261.    Upon information and belief, a proper peer review and editorial review would have identified the Taylor and Francis Paper's data falsification and other defects, including citations that do not support the propositions for which they are cited.

*Other Issues with the Taylor & Francis Paper*

262.    The Taylor & Francis Paper contained numerous false, defamatory, and disparaging statements concerning Plaintiffs. These included, but are not limited to:

   a.  <u>Trademark Dilution</u>: Upon information and belief, as part of the porn industry's endeavors to suppress Plaintiff NoFap, Defendants Prause and Ley intentionally engaged in multiple instances of trademark dilution as part of the Taylor & Francis Paper. The Taylor & Francis Paper included multiple false, defamatory, misleading, and disparaging statements concerning this, in breach of the Non-Disparagement Agreement.

   b.  <u>Asserting That Plaintiff NoFap is a Recognized Terrorist Group and Supportive of Violence</u>: The Taylor & Francis Paper included multiple false, defamatory, misleading, and disparaging statements concerning this, in breach of the Non-Disparagement Agreement.

   c.  <u>Including False and Defamatory Statements Concerning Plaintiff Rhodes</u>: The Taylor & Francis Paper included multiple false, defamatory, misleading, and disparaging statements targeting Plaintiff Rhodes, in breach of the Non-Disparagement Agreement., such as:

   Defendants write "[t]he other cofounder, Rhodes, described himself as a famous actor and bodybuilder who struggled with "severe bipolar disorder" and started NoFap to get "superpowers" (Rhodes 2013a: 2022; Rhodes and Ohanian 2015; Rhodes and Ohropax 2011)."

Exhibit "A"

"NoFap moderators have posted photographs of themselves on Reddit holding "an empty vodka bottle filled with water and some lighter fluid" (Rhodes 2012b) that appeared to be on fire (Rhodes 2012a)." – This is disparaging and, in the context of a paper regarding violence, presented in a false light. It was a simulated Molotov cocktail for a photograph project while in school, where the bottle was filled with water.

"The NoFap leaders have posts on Reddit describing running from police after wrecking a car (Rhodes 2013b), vandalizing public bathrooms with their own excrement (Rhodes 2011), and a "kiln" where NoFap was founded that could be used to conceal dead human bodies (Rhodes 2013c)."

d.  <u>Other Disparaging Remarks</u>: The Taylor & Francis Paper contained numerous other disparaging statements and imputations, in breach of the Non-Disparagement Agreement.

"Requirements to become a NoFap moderator were described as ['A distaste for the porn industry,['] which Rhodes described would form ['the elder council of a cult['] (Rhodes 2014)"

263.    The Taylor & Francis paper was false and defamatory *per se*, claiming that Plaintiff NoFap hosts a disproportionally violent usership based on data falsification; is a formally designated extremist group, as determined by an anti-terrorism organization, and Plaintiff Rhodes its leader; Plaintiff Rhodes is a criminal who wrecked his vehicle after running from police, created a functional Molotov cocktail, and seriously discussed hiding dead bodies; Plaintiff Rhodes is mentally ill, has "severe bipolar disorder" or was diagnosed with the same, and vandalizes bathrooms with his own excrement; and that Plaintiff NoFap's leadership promotes, encourages, and fosters violence and criminality.

264.    Upon information and belief, the prior disputes between Plaintiffs and Defendants Prause and Ley were readily ascertainable and should have been investigated by the journal's editors, the peer reviewer(s), and Defendant Taylor & Francis prior to publication.

265.    Upon information and belief, the Taylor and Francis Paper's inflammatory framing and its focus on a single website should have alerted the publisher and editors to conduct

Exhibit "A"

appropriate due diligence prior to publication. A simple internet search would reveal undeclared conflicts of interest.

266.    Upon information and belief, the original publication of the Taylor & Francis Paper supports a reasonable inference of bad faith by Defendant Taylor & Francis and, at minimum, constitutes gross negligence. However, as set forth below, actual malice became evident in Defendant Taylor & Francis's subsequent conduct.

267.    Upon information and belief, readers of Taylor & Francis journals reasonably expect that published articles (i) do not contain false statements or falsified data; (ii) do not involve the inappropriate collection of data from minors or other individuals without consent; (iii) include full disclosure of competing interests, including without limitation porn industry affiliations, bankruptcy, and past or ongoing litigation; (iv) were not developed with the collaboration of a Pornhub employee to conduct opposition research used in the paper; (v) are not authored by an individual with a criminal conviction who uses publication to target an opponent and witness in litigations; and (vi) follow the scientific method and accurately describe—rather than misrepresent—the purported methodology. By publishing the article and failing to retract nor even amend it, Defendant Taylor & Francis placed its institutional credibility behind the Porn Industry Defendants' paper, thereby substantially amplifying the damage to Plaintiffs.

*Promotion of the Taylor and Francis Paper*

268.    November 16, 2023: Defendant Prause published a series of posts promoting the Taylor & Francis Paper on social media. Upon information and belief, Defendant Prause crafted these posts to maximize reputational harm, including by tagging Reddit, its founder, people who have recommended Plaintiff NoFap, and the #NoFap hashtag to target NoFap's audience and users. These posts included:

92

Exhibit "A"

a. "New paper [']Violence on Reddit support forums unique to r/NoFap['] is at [']Deviant Behavior[']. We found NoFap has followers engaged in real murders, NoFap posts are remarkably violent, and the violence is supported by followers. [Link to the Taylor & Francis Paper] @tandfonline @drdavidley"

b. "Multiple, real mass murderers were followers of NoFap @Reddit platform. #NoFap is a part of the "manosphere", which seeks to disseminate anti-feminist beliefs online. This raised questions about whether NoFap might be contributing to violence by their followers."

c. "NoFap claimed to start from a founder's personal experience with porn or a testosterone study. It appears from interviews with @alexisohanian that r/NoFap actually came from http://BodyBuilding.com, which hosted NoFap since 2004. NoFap was solely anti-masturbation."

d. "Since violence in #NoFap had not been previously documented, we used a systematic search to characterize the nature of the threats. We also compared the violent posts on NoFap to violence on subreddits of comparable content (r/pornfree) and size (r/stopdrinking)."

e. "We used the R library RedditExtractor. 421 violent posts were identified. Violence was posted overwhelmingly on r/NoFap, so it could not be attributed to the content (pornography) nor subreddit size/post frequency."

f. "r/NoFap promotes false conspiracies, and claimed violent posts were the porn industry sneaking on their forums. We analyzed whether this was likely by examining the support by r/NoFap followers. r/NoFap strongly supported violent posts, especially those killing pornographers."

g. "Threats against NoFap's own users were growing most quickly. There was a spike in threats to kill pornographers in 2020. This coincided with the #TraffickingHub campaign, which was also promoted by NoFap. TraffickingHub could have caused that spike in violent threats."

h. "Why is an anti-masturbation forum uniquely violent? Data suggest the founder most likely modeled the observed violence. They promoted hatred of pornographers, described committing criminal acts, and had his other subreddits suspended for a lack of moderation."

i. "Clinicians already are planning interventions to help young men leave NoFap, described as extremist misogynist violence. This is a for-profit part of the manosphere seeking to sell hatred of women and others, likely targeting young men."

93

Exhibit "A"

j.   "Many clinicians and groups have referred clients or followers to this violent group, including @SASH1234, Therapy Today, @NCOSE, @brain_love_sex, and @GailDines. Men and youth should not be recommended to these forums."



269.   Defendant Prause's X.com announcement of the Taylor & Francis Paper was shared by Defendant Ley, along with numerous affiliates of the pornography industry, including Mike Stabile from the Free Speech Coalition, @JizLee, @sxyalicer0se90, @HoneyHousePR, @JustinCasePnC, and @DaddyWolfBear. Others shared the post, such as Brian Watson, a "Pornhub Sexual Wellness Center" contributor who had previously published disinformation concerning Plaintiff NoFap and Gary Wilson. Defendant Prause's announcement thread was not only rife with disinformation and inaccuracies, but each post constituted a blatant breach of the Non-Disparagement Agreement.



270.   On February 02, 2024, Defendant Ley posted to X discussing how many views the Taylor & Francis Paper received. The post was reposted by @DaddyWolfBear, Silva Neves, Defendant Prause, Eric Sprankle, Joe Kort, and others, receiving over 18,000 views.

Exhibit "A"



271.    On December 20, 2023, Defendant Prause posted a thread on X about a contract-breaching appearance on Dan Savage's "Lovecast" podcast to discuss the Taylor & Francis Paper. In that X thread, Defendant Prause posted a photograph and video of Plaintiff Rhodes and made multiple false and defamatory statements about Plaintiffs, including falsely referring to Plaintiff NoFap as "anti-masturbation," among other disparaging assertions:



*Communications Between Plaintiffs and Taylor & Francis*

272.    On November 20, 2023, Plaintiff NoFap reached out to Defendant Taylor & Francis, the Committee on Publication Ethics (COPE), and 36 *Deviant Behavior* editors and

Exhibit "A"

members of the *Deviant Behavior* editorial board



273.    On December 15, 2023, Plaintiff NoFap emailed a spreadsheet to editorial@taylorandfrancis.com with over 400 posts from r/StopDrinking and r/PornFree that Defendant Prause and Defendant Ley excluded, clearly demonstrating data falsification:



274.    On December 16, 2023, Plaintiff NoFap emailed editorial@taylorandfrancis.com, writing "FYI the paper is now on Reddit, #1 on the frontpage of r/science, causing great reputational harm to us". Indeed, the paper was listed #1 on the frontpage of r/science.[16] On December 17, 2023, Defendant Ley posted to X "This research appears to be going viral on Reddit.

---

[16] https://www.reddit.com/r/science/comments/18jtffm/violence_on_reddit_support_forums_unique_to/

Exhibit "A"

Flooding across different groups. Good. This ideology is dangerous and harmful. Violence on Reddit Support Forums Unique to r/NoFap [Link to the Taylor & Francis Paper]".

275.    Throughout December and January, Plaintiff NoFap continued to reach out to Defendant Taylor & Francis, the journal editors, the journal's editorial board, usually without response, providing them with further information and requesting updates.

*The Conclusion of Defendant Taylor & Francis' Purported Investigation*

276.    On February 12, 2024, ten days after Defendants Ley and Prause posted about the conclusion of the purported investigation on social media, Defendant Taylor & Francis sent an email to Plaintiff NoFap advising that it not retract or revise the defamatory article.

277.    The current "Disclosure statement" for the Taylor & Francis Paper is as follows:

"The authors were named in threats to harm and kill scientists posted on NoFap forums.[17] NP is paid to provide continuing education regarding sexual dsyfunctions, is a consultant for Vella Biosciences and Reckitt Industries, serves as a paid statistical consultant for dissertation students, and teaches for the Modern Sex Therapy Institute. DL is paid periodically as an expert witness concerning issues of sexuality. He has previously provided paid education and training on sexuality and pornography-related matters for the Sexual Health Alliance and other professional organizations."

278.    Defendants Prause and Ley have commented about Plaintiffs' assertions about the Taylor & Francis Paper, including specifically referencing communications with Taylor & Francis, multiple times on social media, and used mischaracterizations of the same to further disparage and defame Plaintiffs:

a.    February 02, 2024: Defendant Ley posted on X that "And I can now share that NoFap tried to bully the journal editors into retracting this article. They failed. Made easily disproven bizarre false claims."

b.    February 02, 2024: Defendant Prause posted on X that "Alexander Rhodes of @NoFap sent dozens of emails and posted on Reddit that [']PornHub['] authored our violence paper. This is false and defamatory. It was dismissed by the journal as having no evidence. NoFap is known for creating such false conspiracies:

---

[17] Plaintiffs question the veracity of this claim. In light of documented hoaxes and impersonations of NoFap community members, the assertion warrants heightened scrutiny.

Exhibit "A"

[Link] […] For those who would like to learn more about the study they attacked, it remains, fully available, online at Deviant Behavior: [Link to the Taylor & Francis Paper]" The post was reposted by Defendant Ley, Silva Neves, Eric Sprankle, and others, receiving over 24,000 views.

c. <u>February 02, 2024</u>: Defendant Prause posted on X that "He demanded the study be retracted and had no basis for the request. Something had to be fabricated to suggest wrongdoing. […] It does not get more formal. I will be documenting what he did in our conspiracy paper in detail. It is essential for public health that the public be aware of the attempts to stop science."

d. <u>September 29, 2024</u>: Defendant Prause posted on X that "Alexander Rhodes is continuing to disseminate false and defamatory claims. As [']u/NoFapMods['], he falsely stated [']We do know that Pornhub was involved in this study" referring to this study.['] Journal editors verified Rhodes conspiracy claims were false, yet he reposted them online."

e. <u>August 15, 2025</u>: On BlueSky, Defendant Prause published: "We also had a ~5000 word complaint demanding the retraction of our paper for purely political reasons. It also was filled with false and defamatory claims. This is just the latest way to attack scientists. [Link to the Taylor & Francis Paper] Our publisher stood against their egregious threats."

**8.    The Porn Industry Succeeds in Getting Disinformation Published in NPR**

279.    In 2024, Plaintiffs became apprised that Defendants Prause and Ley were coordinating another attack on them, this time through an NPR reporter, Lisa Hagen.

280.    On March 12, 2023, National Public Radio (often referred to and herein referenced as "NPR") published an article titled "*How law enforcement is promoting a troubling documentary about sextortion*" which was critical of the film Sextortion: The Hidden Pandemic. The article, authored by Lisa Hagen, included quotes from Defendant Prause, including "Prause believes Doan's statements in the film are outside his area of expertise. Doan said in a statement that his comments are based on peer-reviewed research and his clinical expertise as a physician."

281.    Andrew Doan previously co-authored a paper entitled "*Is Internet Pornography Causing Sexual Dysfunctions? A Review with Clinical Reports*," purporting a link between problematic pornography use and erectile dysfunction. Doan is a US-based physician, the former

Exhibit "A"

"Head of Addictions and Resilience Research" at the Naval Medical Center San Diego, and a former resident physician at the Naval Aerospace Medical Institute. According to the authors, before their paper was published, Defendant Prause attempted to prevent its publication. After the paper was published, Defendant Prause repeatedly tried to get it retracted by contacting the publisher, the US Navy, and the Committee on Publication Ethics. After those efforts failed, Defendant Prause has long endeavored to discredit the paper. According to the authors, Prause also reported multiple authors of the paper to their state licensing boards. According to Doan, Defendant Prause later reported him to his employer claiming that he sent her anonymous threats that were "tracked" to his office location. Doan denied Defendant Prause's claims and says he was residing outside of the country at the time of the purported threats.

282.    Lisa Hagen's March 12, 2023, *NPR* article featured allegations targeting Andrew Doan and an academic journal, mirroring the same allegations, nearly verbatim, that Defendant Prause has made for years: "One of Doan's most widely cited papers is on the purported link between pornography and erectile dysfunction, which the bulk of scientific research has shown to be weak. The paper was recommended for retraction because its authors did not obtain consent from some of the subjects. The journal it was published in is considered [']predatory['] by some academics because authors pay to be published and undergo little to no scientific review." Upon information and belief, Defendant Prause and Lisa Hagen established communication during or before March 2023.

283.    Shortly after the Lisa Hagen piece featuring Defendant Prause as a source, on May 31, 2023, Defendant Ley posted to Twitter: "Looking for people for interview who've left antiporn/anti-masturbation groups such as nofap, ybop, FTND, etc. please dm." Defendant Ley's NPR recruitment post  was subsequently shared by Defendant Prause, Justin Dubin, Justin

Exhibit "A"

Lehmiller, Jerry Barnett, Ashley Winter, and Eric Sprankle. The NPR recruitment post was also shared by Mike Stabile, the director of public affairs for Free Speech Coalition.

284.    On May 31, 2023, a self-described pornography producer and longtime collaborator of Defendant Prause and Defendant Ley, Twitter username @DaddyWolfBear who has gone by various aliases online (such as "nerdy kinky commie" and "nogoodchuck"), responded to Defendant Ley's NPR recruitment post, writing "Sent you a DM".   In other online posts, @DaddyWolfBear has identified himself as a 39-year-old named "Charles" (and "Chuck" in shorthand), residing in Colorado. For years, @DaddyWolfBear has frequently collaborated with Defendant Prause and Defendant Ley to conduct opposition research on Plaintiff NoFap, including combing NoFap's platforms for offensive user-generated content that had not yet been spotted or removed by moderators, and publishing defamatory and disparaging comments about Plaintiffs, Gary Wilson, and other Porn Industry Defendants' targets online. Upon information and belief, @DaddyWolfBear also ran the Twitter account @NoFapWatch1 from April 2021, which conducted and posted opposition research targeting Plaintiff NoFap, other recovery resources, and critics of the porn industry, often in collaboration with Defendants Prause and Ley.

285.    On June 04, 2023, @DaddyWolfBear posted to Twitter: "Oh yeah. I have an interview with NPR tomorrow talking about anti-porn/masturbation organizations and the dangers they do like normalizing misogyny and ANTI-LGBTQIA".

286.    Defendant Ley made another recruitment post on X (formerly Twitter) for Lisa Hagen's NPR article on September 14, 2023: "Reporter from npr @TwitrHagen still looking for people who've had experiences with NoFap. Please feel free to reach out to her." The post was reposted by @DaddyWolfBear.

Exhibit "A"

287.    Plaintiff NoFap and their counsel reached out to *NPR* multiple times to attempt to prevent Defendants Prause and Ley from successfully getting disinformation published, without success.

288.    The disparaging NPR article was published on February 3, 2024, resulting in widespread reputational harm to Plaintiffs. It was titled "Masturbation abstinence is popular online. Doctors and therapists are worried". The article included: "More than two decades of growing internet use has surfaced fears about the social and psychological impacts of nearly unfettered access to pornography. But many researchers and sex therapists worry that the online communities that have formed in response to these fears often endorse inaccurate medical information, exacerbate mental health problems and, in some cases, overlap with extremist and hate groups."

289.    Despite Plaintiff NoFap providing *NPR* with 40 experts to contact, the 4 experts quoted in the published NPR article were all friends and collaborators of Defendants Prause and Ley, and not one quote was taken from an interview with an uninvolved third-party expert. The article also featured friends of Defendants Prause and Ley, including a pornography producer, who were quoted as supposed "former NoFap users".

290.    On February 04, 2024, Mike Stabile from Free Speech Coalition shared the NPR article on X.com: "Absolutely stunning investigation by NPR into the racist, antisemitic, misogynist roots of "porn addiction" junk science — the very stuff being peddled by anti-porn groups in order to pass age-verification bills and other censorship. It's all nonsense." This single post by Stabile received over 1.5 million views.

291.    On February 04, 2024, Defendant Ley posted the NPR article to X.com, writing: "Can't decide whether my favorite part is: documenting Gary Wilson had no credentials and taught

Exhibit "A"

massage; publishing that Rhodes (NoFap) is suing his own mother; publishing the links to Proud Boys and KKK." His X post received over 14,500 views.

292.    Nicole Prause used the NPR article to astroturf online to disparage the Plaintiffs in violation of the Agreement, such as posting it on X.com hundreds of times. Additionally, the NPR article was added to the Wikipedia article about NoFap by Defendant Prause's collaborator tgeorgescu, a Wikipedia power user.

## 9.    Disparagement in Publications

293.    Although Defendant Prause frequently represented that the Prior Litigation concerned her research, that was false. Before the Prior Litigation, she had not published any paper about Plaintiff NoFap or directly targeting it. After the Non-Disparagement Agreement was executed, Defendant Prause published six papers targeting Plaintiff NoFap and collaborated with Defendant Ley and others to disseminate the false, defamatory, and disparaging statements contained in those papers.

*The First Paper*

294.    On October 17, 2022, a paper by Defendant Prause and James Binnie titled "Reboot/NoFap Participants Erectile Concerns Predicted by Anxiety and Not Mediated/Moderated by Pornography Viewing" was published[18] in the *Journal of Psychosexual Health*.

295.    The paper only listed the following purported conflicts of interest:

"The authors disclosed receipt of the following financial support for the research, authorship, and/or publication of this article: JB declares that he has no conflict of interest. NP teaches paid workshops for continuing education to therapists that include the treatment of erectile dysfunction. NP made reports to law enforcement due to threats of harassment and violence posted on Reboot forums that named her.[19]"

---

[18] https://journals.sagepub.com/doi/10.1177/26318318221116354
[19] Plaintiffs question the veracity of this claim. In light of documented hoaxes and impersonations of NoFap community members, the assertion warrants heightened scrutiny.

Exhibit "A"

296.    The paper contained false, defamatory, and disparaging statements concerning Plaintiffs in violation of the Non-Disparagement Agreement.

297.    Plaintiffs have not reviewed the paper's purported dataset or sample. The case record documents Defendant Prause's pattern of research fraud, including data falsification and undisclosed conflicts of interest. Accordingly, all of her publications—including this paper—should be independently audited.

298.    The paper was shared by Defendants Prause and Ley on social media, often alongside disparaging commentary targeting Plaintiffs and others.



299.    This defamatory paper has received widespread attention, including being cited by other papers, causing harm to plaintiffs.

Exhibit "A"

*The Second Paper*

300.    On February 22, 2023, a paper by Defendant Prause and James Binnie titled "Iatrogenic effects of Reboot/NoFap on public health: A preregistered survey study" was published[20] in the *Sexualities*.

301.    On or about February 23, 2023, Defendant Ley shared Defendant Prause and James Binnie's paper to a mailing list called SexNet.

302.    The paper, which contained false, defamatory, and disparaging claims in violation of the Non-Disparagement Agreement, caused widespread reputational harm to Plaintiffs. A slew of articles about the paper were released, further disparaging Plaintiff NoFap. For example, a PsyPost.org article about the paper reached #1 on the front page of Reddit.com,[21] upon information and belief, disparaging Plaintiff NoFap to hundreds of thousands of viewers.

*The Third Paper*

303.    On May 22, 2023, Defendant Prause authored an abstract titled "Disinformation on pornography effects on erectile function led to iatrogenic Reboot/NoFap [']treatment[']" in the *Journal of Sexual Medicine* published by the Oxford University Press on behalf of The International Society of Sexual Medicine.

304.    The title of the abstract is a violation of the Non-Disparagement Agreement, implying that Plaintiff NoFap is a "treatment" (it's a peer support website) that relies upon "[d]isinformation".

305.    The abstract contained false, defamatory, and disparaging statements concerning Plaintiffs in violation of the Non-Disparagement Agreement. These include:

---

[20] https://journals.sagepub.com/doi/10.1177/13634607231157070
[21] https://www.reddit.com/r/science/comments/11pny81/greater_engagement_with_antimasturbation_groups/

Exhibit "A"

"Yet, most sex addiction therapists and Reboot/NoFap coaches claim that their clients' sexual dysfunctions are caused by pornography viewing." – Plaintiff NoFap does not employ coaches.

"Examine whether engagement with Reboot/NoFap [']treatments['] might actually be causing or perpetuating sexual arousal problems attributed to pornography viewing." – Plaintiff NoFap does not offer psychological treatments.

"They also were more likely to report being told to [']kill or harm['] themselves in the support subreddit /r/NoFap and reported more suicidal ideation at their last relapse."

"The users who posted over time in r/NoFap, on average, included the same or more posts containing sad, angry, disgusted, or fear words."

306.    The only listed disclosure disclosed was: "Any of the authors act as a consultant, employee or shareholder of an industry for: Mind Measures LLC".

*The Forth Paper*

307.    On July 08, 2023, Defendant Prause authored a paper titled "Dhāt Syndrome Emerges in the United States from Anti-Masturbation Semen Retention/NoFap Groups" in the *International Journal of Impotence Research* published by Springer Nature.

308.    The title of the paper is a violation of the Non-Disparagement Agreement, implying that Plaintiff NoFap is "anti-masturbation" when it isn't; it is a peer support website for porn addiction recovery.

309.    Defendant Prause included: "The author declares no competing interests."

310.    The paper engaged in intentional misrepresentation of NoFap's history and trademark dilution:

"NoFap appeared on the social media platform Reddit (denoted "r/NoFap") in 2011 and later as a website NoFap.com. "NoFap" was trademarked around 2013. However, the earliest occurrence of the term "NoFap" identified in US media was on the BodyBuilding.com forums in 2006. NoFap subsequently became "No Nut November" on BodyBuilding.com by 2009, where it appeared to grow in popularity and spread online. NoFap appeared on BodyBuilding.-com, because these bodybuilders believed (falsely) that masturbation abstinence would increase their

Exhibit "A"

testosterone and, therefore, their muscular gains. Thus, despite the trademark, "NoFap" has been a very commonly used phrase for nearly 20 years. "NoFap" is used by many people and companies online with no known relationship with the for-profit company."

311. The paper contained false, defamatory, and disparaging statements concerning Plaintiffs in violation of the Non-Disparagement Agreement.

*The Fifth Paper*

312. On or around October 18, 2023, Defendant Prause authored a paper titled "Online ejaculation training programs promote non-evidence-based treatment of male sexual dysfunction" in the *International Journal of Impotence Research* published by Springer Nature.\

313. Defendant Prause listed her conflicts of interest as:

"To meet the journal requirement to assess potential conflicts of interest from contributors, each of the researchers in the acknowledgements reported no conflict of interest and reported their employers and/or associations a s accredited universities and medical and psychological practices in the USA. The author is a consultant for Vella Biosciences, Reckitt, and The Dissertation Coach, an instructor for Modern Sex Therapy Institutes, and provides continuing education to mental health clinicians concerning sexual functioning. The author was awarded damages from Andrew Stebbins, the legal counsel of NoFap LLC founder, during revisions of this manuscript for defamation per se and causing the dissemination of her current physical address in violation of her address privacy protections, due to stalking and violent threats, under California civil law 6208.1."

314. The main purpose of the paper appears to be trademark dilution.

"[']NoFap['] appeared on a forum for bodybuilders, bodybuilding.com, who hoped to increase their testosterone via masturbation abstinence in July 2006. [Referring to a forum signature that was retroactively changed] Body-building.com hosted [']NoFap November['] in 2009. [editing the title of the event] After starting a popular NoFap thread on that forum on May 28, 2011, a NoFap (['']r/NoFap[']) was started on the Reddit platform by two moderators [adding a non-existent co-founder] on June 20, 2011 that now has over 1.1 million followers."

"[']NoFap['] was trademarked about 2013, creating reported threats and demands by NoFap LLC against bodybuilding.com users [link to a 2020 post], scientists, (Matthew Plummer, Marcy 27, 2020, written communication, matthew@nofap.com) and others. Scientists made clear that public health research should not be silenced by NoFap's tactics as [']we deem it not only as legitimate

but necessary to acknowledge and cite [NoFap] as one prominent voice in the debate around masturbation abstinence[']."

"For-profit companies like NoFap LLC also explicitly discourage the public from visiting mental health professionals, such as the American Association of web.archive.org/web/20200615235108/https://nofap.com/articles/how-to-find-a-therapist/) licensed providers who specialize in treating such disorders."

*Defendant Prause's Announced Future Publications*

*The Conspiracy Paper*

315.    Defendants Prause and Ley, along with other porn industry surrogates such as Mike Stabile, frequently claim that secular anti–sexual-exploitation nonprofits, advocates, and pornography-recovery resources pursue a hidden religious or financial agenda.



316.    Defendant Prause has claimed on social media that she is working on a paper about conspiracies, again targeting Plaintiffs and others, namely The Reward Foundation and Gary Wilson's widow Marnia Robinson. Her social media posts have included:

    a.    <u>February, 05, 2024</u>: @NicoleRPrause on X posted: "Exactly the concerns of our peer-reviewed science, we highlighted poor moderation of NoFap as the likely explanation for the violence from their followers [Link to the Taylor & Francis Paper] Our new conspiracy paper traces the path from leaders posting false conspiracies to such violence."

Exhibit "A"



b. <u>May 30, 2024</u>: @NicoleRPrause on X posted "Progress on the conspiracy paper! NoFap army appears to incite violence largely by posting false conspiracies about porn and secret governments scheming to keep men masturbation/weak. This is important, because followers have engaged in real world violence [Link to the Taylor & Francis Paper]".

c. <u>August 21, 2024</u>: @NicoleRPrause on X posted "We are still at work on the NoFap false conspiracy paper, but just found a trove of old Reddit data we could not pass up! They deleted a ton of violent content after we started writing papers documenting what they were doing. We got it all, but the new NoFap Discord is as violent."

d. <u>September 07, 2024</u>: @NicoleRPrause on X posted "For the NoFap false conspiracy paper I'm learning they hosted public, weekly meetups online mixing kids and adults talking about masturbation. It did not mention parental consent or child assent that I could find. They deleted posts about them. Interesting. @paulahall_psych" This post included photographs of Plaintiff Rhodes, which was reposted by @DaddyWolfBear, @TunaSafeDolphin, @NemoEntropy, and others.

e. <u>September 16, 2024</u>: @NicoleRPrause on X posted "New evidence that exposure to false conspiracies leads to intentions to engage in violence [Link] Getting closer with our NoFap conspiracy paper...maybe why they also have such high rates of violence [Link to the Taylor & Francis Paper]".

f. <u>November 30, 2024</u>: @NicoleRPrause on X posted "Working on our NoFap conspiracy paper. A large for-profit industry has been guarding the false claims commonly called ['']conspiracy entrepreneurship['']. NoFap and The Reward Foundation fundraiser, Staci Sprout, describes humans are actually clones to sell her new [''']coaching['''] business."

g. <u>November 30, 2024</u>: @NicoleRPRause on X posted "Our conspiracy paper highlights the false conspiracy of @MattFradd, who told followers a donation could "see the pornography industry begin to crumble". There was never any such possibility. Fradd lied. Fradd was selling a book with false scientific claims he wanted to silence." In this post, Defendant Prause included an audio snippet of Matt Fradd talking about the Prior Litigation and her.

Exhibit "A"

h. <u>January 22, 2025</u>: @NicoleRPrause on X posted "Alexander Rhodes has been posting all over the Internet and to colleagues, societies, and editors that PornHub was involved in our paper: [Link to the Taylor & Francis Paper] This is completely false and defamatory. PornHub had zero role, which he knew when he posted his claims. […] We have made this available for years. It is still the case that we never worked with Free Speech Coalition. Rhodes also was aware of this when he made his false and defamatory, public claims. Our false conspiracy paper is long overdue!"

i. <u>March 10, 2025</u>: @NicoleRPrause on X posted "We actually found this for our research on conspiracy posts on NoFap. The website is down...often...and the owner would claim they were DDOS'd by the [']porn industry['], or similar. I was unable to find any support that for DDOS, now part of our false conspiracy paper! [Plaintiff NoFap]" Although NoFap has experienced DDoS attacks, Defendant Prause's post omits evidence that Plaintiffs ever attributed those attacks to the porn industry.

j. <u>April 18, 2025</u>: @NicoleRPrause on X posted "NoFap redirected their visitors to XXXChurch, a religious anti-porn group, for a very long time. We are reviewing NoFap's extensive religious payments, including from Covenant Eyes, in our conspiracy paper. There is no empirical basis for these interventions. [Screenshots]" To correct the record, Plaintiffs have never redirected NoFap visitors to the XXXChurch website; upon information and belief, Defendant Prause is referring to conduct that predated Plaintiffs' acquisition of its .com domain name.

k. <u>June 22, 2025</u>: @NicoleRPrause on X posted "We are working on our NoFap conspiracy paper and see NoFap discord having a normal one claiming scientists who link ejaculations with reduced prostate cancer risk, and the journalists who cover them, are all porn shills who should be sued (for what is not clear). [Screenshots]"

l. <u>July 18, 2025</u>: @NicoleRPrause on X posted: "Additional analyses appear consistent with NoFap moderators accelerating the removal/hiding of suicidal posts on their forums. This followed our paper demonstrating NoFap mechanisms for potentiating suicide and actual suicides within the group, giving the appearance of deception. […] Another finding was that the conspiracy content appear largely driven by Alexander Rhodes, a co-founder, which science refers to as a "super-spreader" of false information. NoFap appears more consistent with a for-profit [']manosphere['] group than a support group."

m. <u>August 12, 2025</u>: @NicoleRPrause on X posted "Anti-porn groups like The Reward Foundation's (@brain_love_sex) and NoFap's Staci Sprout also teach about [']lizard people['] roaming the earth to rape women. Our conspiracy paper touches on some of these more bizarre beliefs. They are more common than one might assume!" To correct the record, Staci Sprout does not represent Plaintiff NoFap, nor do Plaintiffs work with Sprout.

Exhibit "A"

n.  <u>October 15, 2025</u>: @NicoleRPrause on X posted "Our conspiracy paper provides evidence of the financial structure of NoFap, increasingly important to study such movements", and responding to a reply with "People who say I lobby for porn are just lying to make money off the lies."

317.    Upon information and belief, Defendant Prause has created an Open Science Framework ("OSF") project titled "Conspiracy Beliefs by NoFap" with a listed contributor named Justin Dubin, which was later changed to Claire Reid.

318.    The project's OSF storage contains an opposition-research dump about Plaintiffs that misrepresents facts and casts Plaintiffs in a false, defamatory, and disparaging light.

319.    This "Conspiracy beliefs by NoFap" file repository curated by Defendant Prause exemplifies Plaintiff Rhodes' lived reality: while publicly claiming to be stalked and harassed by Plaintiff Rhodes and others, Defendant Prause has transcribed years-old interviews of him, combed through anything she can find, published the addresses of his family members and the name of his former girlfriend, and publishes statements disparaging him almost every day, often throughout the day, on social media.

320.    Plaintiffs' efforts to defend themselves against Defendants Prause and Ley's continuing aggression are routinely reframed as attacks on "science".

321.    On April 23, 2024, Defendant Prause posted on X, writing: "Alexander Rhodes of NoFap threatened Open Science Framework trying to force them to remove our research! Rhodes lied that I am an agent of the porn industry, am a criminal (!), and violated a settlement. His claims are completely false and defamatory. Why attack scientists?"; "Scientists studying porn commonly face such attacks and defamation. I am speaking about the violence incited by this group at a scientific conference shortly. [']I hope there's bloodshed[']: How pornography research is shaped by threats, violence and conspiracies[']"; and "These groups are highly narcissistic. [Link to

Defendant Prause and James Binnie's Paper] They view research as personal and play narcissistic [']victim[']. That post is a great example of violence incited by such false victim claims. The real goal is to stop science."

322.    Upon information and belief, posting physical addresses of Plaintiff Rhodes or his family members, posting his phone number(s), posting private photographs, data scraping for anything he (or anyone who can be portrayed as him) has ever allegedly posted or done online, perusing hacked data, nor is investigating or posting other personal information concerning Plaintiff Rhodes appropriately categorized as science. In the campaign, Defendants Prause and Ley have even involved and targeted Plaintiff Rhodes' father, his stepmother, his grandmother, his sister, two ex-romantic partners, and others.

*The "Vexatious Defamation Lawsuits" and "Moderation Issues [on NoFap]" Papers*

323.    Defendant Prause has announced a future paper on "the abuse of defamation law by rich white men to silence women", at times specifically referring to Plaintiffs and other plaintiffs who have sued her in posts. On May 03, 2023, Defendant Prause created a project on OSF titled "Defamation law weaponized against women".

324.    On March 22, 2023, Defendant Prause posted on X claiming to be "[w]riting a paper about moderation problems." The post disparaged a NoFap volunteer and included screenshots of the individual's pre-volunteer posts, citing combative remarks made before the individual began moderating.

*Downstream Papers*

325.    Upon information and belief, Defendants' disinformation has been cited by, and has influenced the creation of, additional publications that either rely upon, were inspired by, or involved direct communication or collaboration with Defendant Prause, Defendant Ley, and their

Exhibit "A"

associates. Prior to the execution of the Non-Disparagement Agreement, examples of academics who cited Defendants Prause or Ley or who otherwise relied upon disinformation originating from pornography industry associates, include Kris Taylor, author of "'I Want That Power Back': Discourses of Masculinity Within an Online Pornography Abstinence Forum" (*Sexualities*); Marlene Hartmann, author of "The totalizing meritocracy of heterosex: Subjectivity in NoFap" (*Sexualities*); and James Binnie, author of "Exploring the Etiological Pathways of Problematic Pornography Use in NoFap/PornFree Rebooting Communities: A Critical Narrative Analysis of Internet Forum Data" (*Archives of Sexual Behavior*).

326.    Since the Non-Disparagement Agreement has been executed, Defendant Prause and Defendant Ley have maligned Plaintiffs to thousands of members of the academic community through conference presentations, professional trainings, direct communications both in person and online, academic listservs, and published articles. This conduct has generated a continuing ripple effect of disinformation: first, other academics adopt, repeat, or are otherwise influenced by these porn industry narratives in their own work and publications; then later, additional academics cite those secondary works or are influenced by them—rather than by the Porn Industry Defendants' original statements—thereby compounding the disinformation and giving it the false appearance of independent scholarly corroboration.

327.    The longstanding suppressive efforts of Defendants Prause and Ley, along with their collaborators, has had a chilling effect on the field of problematic pornography use research.

*Disparagement at Events*

328.    Upon information and belief, the dissemination of disinformation by Defendants Prause and Ley extends beyond the printed word to presentations, word-of-mouth communications, emails, and other channels.

Exhibit "A"



329.    On March 22, 2022, the Liberos LLC Facebook page announced:



330.    The Porn Industry Defendants have spread disinformation within academic conferences and other events, deterring academics, clinicians, and researchers from engaging with Plaintiffs or leading them to repeat such disinformation. Upon information and belief, Defendant Prause gave a presentation at the International Academy of Sex Research Annual Meeting on August 08, 2023, violating the Non-Disparagement Agreement numerous times.

331.    Upon information and belief, the poster presentation, purportedly co-authored by Defendant Prause, Defendant Ley, and James Binnie included a section titled "Recent violent

Exhibit "A"

events" with "The International Centre for Counter Terrorism recognized NoFap as an [']extremist misogynist['] group in 2023. […] To date, two mass murderers and 1 attempted murderer of a supreme court justice were known to be practicing [']NoFap['], raising questions as to the nature of violence associated with this group. 21.1% of followers reported witnessing violent posts on NoFap (Prause & Binnie, 2023)."

332.     Upon information and belief, on October 19, 2023, Defendant Prause gave the "keynote plenary" at the "Securing Sexuality 2023 Conference" with a talk titled "Manosphere For Sale". Defendant Prause announced the talk on her LinkedIn page, writing "I will be speaking at the [']Securing Sexuality['] conference concerning the recent, real-world violent acts from followers of Reboot/NoFap groups (which market treatments for erectile disorder and [']pornography['])) and how we (clinicians) can help men leave."

333.     Upon information and belief, during the presentation, she went so far as to utilize Plaintiff Rhodes' likeness in conjunction with disparaging Plaintiffs:



Exhibit "A"

334.    Upon information and belief, in 2023, Defendant Prause defamed and disparaged Plaintiffs again at the International Online Sexology Supervisors: https://sexologysupervisors.org/product/the-science-on-masturbation/.



335.    On September 26, 2024, Defendant Prause retweeted a post by @JustinCasePnC and @ swopusa, Sex Workers Outreach Project in violation of the Non-Disparagement Agreement.



336.    On February 06, 2025, Defendant Prause posted to her X account "Excited to be presenting an invited talk about the harms of NoFap to a national conference this year! I'll share details as they are made public. It is important that clinicians stop pushing boys into a harmful,

Exhibit "A"

sex-shaming manosphere group." This post was in violation of the Non-Disparagement Agreement.

337.    On May 29, 2025, Defendant Prause posted to X that "I presented an invited talk on how violent threats of anti-porn groups, including NoFap and Karezza, influence research. Data show one false post claiming a scientist [referring to herself] was porn sponsored by a NoFap [']superspreader['] caused >100 false and violent conspiracy posts on NoFap."

338.    Upon information and belief, on December 6, 2025, Definitely Prause will be presenting a seminar for Modern Sex Therapy Institutes entitled "Sex Therapies that Harm, Masturbation and New Diagnoses":



339.    On October 15, 2024, the book "*The Great Right North: Inside Far-Right Activism in Canada*" by Stéphane Leman-Langlois, Aurélie Campana, and Samuel Tanner was published.

Exhibit "A"

The book disseminated disinformation originating from Defendants Ley and Prause. Defendant Prause shared it on her X account on October 07, 2025, writing "New book agrees NoFap is best understood as part of a feminism-hating [']manosphere['], anti-masturbation group [Link]" in violation of the Non-Disparagement Agreement.

340.    On April 07, 2025, the book *"The Male Complaint: The Manosphere and Misogyny Online"* by Simon James Copland was published. On April 16, 2025, Defendant Prause shared the book on her X account, writing "New book: NoFap forces men to conform to a very narrow definition of [']masculinity['], harming self-expression and free speech on the forums. Legitimate emotional concerns are [']too feminine['] and not acknowledged as a potential cause of suffering." Defendant Prause's post was shared by Silva Neves, @NemoEntropy, @TunaSafeDolphin, and others.

341.    Upon information and belief, Defendants Prause and Ley have been involved, directly or indirectly, involved in such publications targeting Plaintiffs.

**10.    Disparagement by Electronic Means**

*Disparagement in Media Outlets*

342.    Since executing the Non-Disparagement Agreement, Defendant Prause has continued to communicate directly and indirectly with journalists, writers, and media outlets—often with the collaboration of Defendant Ley and others—for the purpose of disseminating false, defamatory, and disparaging disinformation about Plaintiffs. Many of these publications resulted from Defendant Prause and her collaborators personally providing false, defamatory, and disparaging claims to journalists, while others were a predictable and intended outcome of her widespread, contract-breaching dissemination or disinformation across social media, academic channels, and other public forums.

Exhibit "A"

343.    Not only have the following articles—initiated by porn industry disinformation—harmed Plaintiffs' reputations, but Plaintiffs have also expended considerable time and legal fees attempting to mitigate damages, largely without success, as their requests to journalists and publications for corrections are routinely refused or ignored. As noted previously, this complaint contains only a sampling of the defamatory and disparaging conduct at issue, as countless other instances of the same exist.

344.    Plaintiffs' efforts to prevent the publication of additional contract-breaching pieces initiated by Defendants Prause and Ley, or to request corrections or retractions of published defamatory and/or contract-breaching content, are routinely mischaracterized by Defendants Prause and Ley as evidence that Plaintiffs are wealthy, powerful, and litigious. They then employ these mischaracterizations to further disparage Plaintiffs and cast them in a false light, asserting that the pornography industry and its associates are victims of Plaintiffs' impecunious recovery peer support website.

345.    Upon information and belief, Defendants Prause and Ley, together with other porn industry surrogates such as Mike Stabile, regularly maintain communications with journalists (including Samantha Cole and EJ Dickson), editors (including Marlow Stern and Elizabeth Nolan Brown), and other media professionals in furtherance of their objectives, including promoting porn industry interests and attacking individuals and organizations they perceive as critics.

346.    Upon information and belief, Defendants Prause and Ley, along with their porn industry collaborators, also engage in behind-the-scenes groundwork to pitch media stories and to facilitate the insertion of disparaging content into articles targeting Plaintiffs and other perceived opponents of the porn industry.

Exhibit "A"

347.    Further, as defamatory and contract-breaching articles proliferate, later outlets can cite those prior publications as purported support, thereby lending false legitimacy to the defamatory claims and reinforcing the narratives advanced by the porn industry. Some of these later outlets are directly pitched by Defendants, while others inadvertently encounter the same material—including through republication on platforms such as Wikipedia and social media—resulting in a cycle in which disinformation is repeated and amplified. This iterative dynamic fabricates the appearance of independent third-party corroboration of porn industry disinformation, even though the claims originate from the same coordinated actors.

348.    Upon information and belief, the following articles were published after the Non-Disparagement Agreement was executed:

a.    March 13, 2023: A *Daily Dot* article by Ana Valens, titled "It's easy to see the role 'NoFap' played in yesterday's violence against Asian women", cited disinformation originating from porn industry associates, including Defendant Ley.

b.    March 19, 2021: A *Lifehacker* article by Stephen Johnson, titled "The Out-of-Touch Adults' Guide To Kid Culture: Anti-Masturbation Porn Conspiracies", parroted porn industry disinformation.

c.    March 25, 2021: *Rolling Stone* published an article by EJ Dickson titled "The Atlanta Spa Shootings Are Fueling Far-Right Attacks on Porn and Sex Work". Plaintiff is informed and believes, and thereon alleges, that EJ Dickson has maintained long-term communications with Defendants Ley and Prause, as well as Mike Stabile and other pornography-industry affiliates.

d.    March 29, 2021: A *The Conversation* article by Daniel Kelly, titled "Nofap: can giving up masturbation really boost men's testosterone levels? An expert's view", directly citing porn industry disinformation (the 2018 Samantha Cole article featuring xHamster and Defendant Ley), included misleading, false, and disparaging assertions about Plaintiff NoFap.

e.    June 15, 2021: EJ Dickson, who upon information and belief has maintained longstanding communication with various porn industry associates including Defendants Prause and Ley, published a piece in *Rolling Stone*, which included "In itself, a far-right group advocating for abstinence from self-pleasure is nothing new; there's extensive history of white-supremacist groups equating masturbation (and the [']Jewish-owned['] porn industry) with loss of masculinity, and the hugely

Exhibit "A"

popular subreddit NoFap, which traffics in such ideology, had been founded years before."

f.  September 23, 2021: A *Forward* article by Mira Fox, titled "The antisemitic conspiracy behind the anti-porn movement", disparaged Plaintiff NoFap, #Traffickinghub, and Exodus Cry. The original article cited EJ Dickson's *Rolling Stone* piece which featured Defendant Ley.

g.  November 02, 2021: Dani Blum from *The New York Times* reached out to Plaintiffs, writing "Hi, I'm a reporter at The New York Times working on a piece about sexuality research and, in particular, Nicole Prause's research. I'd like to speak with Alexander Rhodes for the piece, if he's available for a 30 minute interview in the coming days. Thanks so much!" Upon information and belief, Dani Blum had been provided with false, defamatory, and disparaging statements by Defendant Prause.

h.  April 20, 2022: Defendant Prause had long been in communication with Eddie Kim to provide false, defamatory, and disparaging claims about Plaintiffs in violation of the Non-Disparagement Agreement. Defendant Prause previously contacted Eddie Kim who planned to write a story targeting Gary Wilson about "the various harassment and threats that sexual health researchers face, notably from those who oppose pornography" featuring Defendant Prause as a victim of such purported harassment and threats. Gary Wilson died only weeks later after Eddie Kim threatened to publish the story regarding him. After Eddie Kim, then from Mel Magazine, attempted to author an article sourced by Defendant Prause targeting Gary Wilson in February 2021, Eddie Kim set his sights on Plaintiff Rhodes in April 2022 to target Plaintiff Rhodes with a similar disparaging story featuring Defendant Prause as a source.

i.  May 29, 2022: After Eddie Kim's story didn't get published, a friend of his and fellow *Mel Magazine* colleague C. Brian Smith wrote to Plaintiff NoFap on May 29, 2022, to December 05, 2022, attempting to publish a substantially identical and disparaging article.

j.  January 30, 2023: David S. Smith in *Current Affairs* authored a disparaging story about NoFap, citing Defendant Prause.

k.  February 26, 2023: Noor Al-Sibai in *Futurism* authored a disparaging article about NoFap, citing Defendant Prause.

l.  March 01, 2023: James Felton in *IFLScience* authored a disparaging article about NoFap, citing Defendant Prause.

m.  March 03, 2023: Luke Andrews in *Daily Mail* authored a disparaging article about NoFap, citing Defendant Prause.

Exhibit "A"

n. <u>March 12, 2023</u>: Eric W. Dolan in *PsyPost* authored a disparaging article about Plaintiff NoFap, citing Defendant Prause.

o. <u>March 13, 2023</u>: Tibi Puiu in *ZmeScience* authored a disparaging article about Plaintiff NoFap, citing Defendant Prause.

p. <u>March 13, 2023</u>: Daniel Villarreal authored a disparaging article in *Queerty*, citing Defendant Prause and James Binnie.

q. <u>March 19, 2023</u>: Freya Hodgson authored a disparaging article in *Daily Star*, citing Defendant Prause.

r. <u>April 21, 2023</u>: Heven Haile authored a disparaging article in Vice Media's *i-D*, citing Defendant Prause.

s. <u>June 04, 2023</u>: John Mac Ghlionn authored a disparaging article in *The Sun*, citing Defendant Prause.

t. <u>July 09, 2023</u>: Will McCurdy published a disparaging article in *Slate*, citing Defendant Prause.

u. <u>September 26, 2023</u>: Counsel for Plaintiff NoFap was contacted by Kieran Leavitt from *The Toronto Star*: "I'm working on a story about the years-long dispute involving many different people, but mainly Nicole Prause, Gary Wilson and Alex Rhodes. During my research into this story, I was given a letter that was sent from you on behalf of Alex Rhodes to Mel Magazine. I was hoping to get your side of the story behind this letter and the resulting fallout." On September 29, 2023, Leavitt contacted Plaintiffs directly. Leavitt later contacted Plaintiff Rhodes' father and sister. Plaintiff Rhodes called Leavitt and requested for him to stop contacting his family members, relaying that the contact was unwanted. However, since Plaintiffs could not find any apparent ties between Leavitt and the Porn Industry Defendants, he later agreed to speak with Leavitt off-the-record, with the intention of correcting the record. During these two long conversations, Plaintiff Rhodes had to spend significant time defending himself against numerous disparaging and defamatory statements originating from Nicole Prause—claims the reporter stated had been provided to him by Defendant Prause.

v. <u>November 14, 2023</u>: Silva Neves (a longtime collaborator of Defendants Prause and Ley) in *Psychology Today* published a piece disparaging Plaintiff NoFap, citing Defendant Prause.

w. <u>December 07, 2023</u>: Sarah-Louise Kelly published an article in the *HuffPost* disparaging Plaintiff NoFap, citing disinformation by Defendant Prause.

x. <u>April 30, 2024</u>: Heather Sherr published an article in *Public Health Post*, disparaging Plaintiff NoFap and citing Defendant Prause.

121

Exhibit "A"

y.  June 05, 2024: Elizabeth Hlavinka published an article in Salon, disparaging Plaintiff NoFap, citing Defendant Prause.

z.  July 1, 2024: A *Psychology Today* article authored by Michael Castleman, a contributor to the Pornhub/Aylo Defendants' "Sexual Wellness Center", disparaged Plaintiff NoFap, specifically citing the Taylor & Francis Paper co-authored by Defendants Prause and Ley.

aa. October 04, 2024: An *XBIZ* trade-publication article authored by Gustavo Turner, a frequent collaborator of Defendants Prause and Ley, featured an interview with Defendant Prause. Upon information and belief, Defendant Prause has been mentioned in at least 10 *XBIZ* articles since 2014, and Defendant Ley in at least 8. The article, titled "The Daily Mail Revives Discredited 'Pornography-Induced Erectile Dysfunction' (PIED) Theory", contained disparagement of NoFap, Gary Wilson, and The Reward Foundation.

bb. November 19, 2024: A disparaging *Salt Lake City Weekly* article was published by a porn industry associate named Michael Dean McGrady Jr, republishing disinformation originating from Defendants Prause and Ley.

cc. May 27, 2025: An article published by *GQ*, authored by Sascha Cohen, included disparaging statements concerning Plaintiff NoFap, citing Defendant Prause.

dd. October 27, 2025: A *TheColu.mn* article authored by Marcy Ellerton repeated disinformation disseminated by the Porn Industry Defendants.

*Disparagement in Blog Posts*

349.   Defendant Prause has published a series of blog posts on the website Medium.com, many of which violate the Non-Disparagement Agreement.

350.   In an article titled "Pornography addiction forums could radicalize another shooter: March 21 2021", Defendant Prause linked to multiple disparaging publications, including a book co-authored by her associate Alan McKee which included ""the true victims of porn - a stance adopted in the broadly visible, Reddit-based NoFap movement, the supporters of which have been known for vitriolically attacking female scholars not sharing their view on the harms caused."

Exhibit "A"

351.    On October 31, 2023, Defendant Prause published "How did No Nut November start?," using the tags "Nofap", "misogyny", and "Violence Against Women". In this article, she disparaged plaintiffs as follows:

"Semen Retention and NoFap are the most widely posted male sexual health topics on Instagram and TikTok, but also have the least accurate health information. Semen retention has its roots in ascetic religious practice, but the more recent practices appear largely unrelated to those ascetic principles. As best we can find, No Fap first appeared on a BodyBuilding.com forum on July 9, 2004. […] Specifically, a BodyBuilding.com user lamented that his girlfriend was away, and that she had demanded that he not ejaculate at all while she was gone. It would be 49 days until she would get back. He started a counter for his [']NoFap['] journey and rated his daily [']difficulty['] abstaining from ejaculation." - Defendant Prause falsified this by citing a forum signature and a thread that was retroactively altered after NoFap was created.

"Somehow, this caught on in the BodyBuilding.com forums and became a monthly challenge to abstain from masturbation. They mistakenly believed that ejaculation abstinence would increase their testosterone (abstinence actually decreases testosterone). The first instance of [']No Fap November['] I was able to find was November 1, 2009 on the BodyBuilding.com forum. […] This grew to be wildly popular on BodyBuilding.com forums, with a thousands-reply post on June 2011. About three weeks later, the subreddit [']NoFap['] (denoted [']r/NoFap[']) was created on Reddit by two cofounders/moderators who also had been active in Body Building forums. They stated the NoFap idea came from BodyBuilding.com and even linked to the popular post. The NoFap subreddit defined the practice as the rules for NoFap are [']Absolutely NO fapping. No self-pleasure AT ALL.['] Fapping is slang for male masturbation. […] One of the r/NoFap co-founders left to create a new PickUp Artist subreddit called r/TruePickup, which focused on men extracting sex from women. The other r/NoFap cofounder started dozens of NoFap subreddits, which have had various outcomes. The other subreddits included an apparent fan page for himself (r/AlexanderRhodes) and r/NoFapArmy. The later hosted challenges (r/NoFapWar) where members would be given military ranks, grouped into warring armies, and listed as [']dead['] when they masturbated or failed in some other way. Women could be directed to [']r/NoShlick['], an apparent reference to female masturbation. I scraped the last 1,000 posts on r/NoFap and found none identified as female."

"From these auspicious beginnings, seemingly thousands of spin-offs using the name [']NoFap['] have appeared online. Many appeared to be men offering [']coaching['] services promising to cure a variety of medical illnesses, which there is no evidence they do. Given that [']No Fap November['] actually started on a BodyBuilding forum, the groups appear to arise from a variety of different sources.

Exhibit "A"

NoFap has since been classified as a part of the manosphere, seeking to disseminate anti-feminist viewpoints."

"Abstaining from masturbation or ejaculation in November is probably not harmful if you have no expectations and engage for fun. However, if you think ['No Nut November['] will reap health benefits for you, it will not. Masturbation abstinence practices are consistently associated with negative health outcomes, promote false conspiracy beliefs about the pornography industry (for supposedly tricking them to ejaculate), promote antisemitic beliefs, and spread misogynist values. The International Centre for Counterterrorism described NoFap as a part of extremist misogyny online. The Violent Extremism Risk Assessment also included [']NoFap"['] as a term associated with online violence and misogyny. The likely outcomes of abstaining from ejaculation for November are to decrease testosterone, increase the frequency of nocturnal emissions (i.e., [']wet dreams['']), and possibly cause a new anxiety disorder called Dhāt Syndrome."

352.   On May 31, 2024, Defendant Ley promoted an article published on the website *agentsofishq.com* which contained disparaging content about Plaintiffs, going so far as to portray plaintiffs as Nazis. Moreover, upon information and belief, the false information reported in this article originated from Defendants Prause and Ley.



Exhibit "A"



353.    On September 13, 2024, Defendant Prause's published an article entitled "Time editor's Belinda Luscombe's problem with the truth," which contained numerous false, defamatory, misleading, and disparaging statements concerning Plaintiffs.

354.    On August 14, 2021, Defendant Ley published a defamatory article claiming a mass shooter was radicalized in Plaintiff NoFap without evidence.

355.    On August 15, 2025, David Ley published the article "The Evolution of the Incel Subculture article" in which he defamed and disparaged plaintiffs.

*Disparagement in New Media*

356.    Prause also has violated the Non-Disparagement Agreement serially by appearing on podcasts to disparage Plaintiffs, including:

    a.    August 14, 2021: Ball's Deep Podcast

    b.    October 11, 2021: Dunc Tank

    c.    February 02, 2022: Candice Horbacz

    d.    June 08, 2022: The Math Podcast

Exhibit "A"

e.  <u>August 05, 2022</u>: Max "mrgirl" Karson

f.  <u>January 18, 2023</u>: Natasha Helfer

g.  <u>March 04, 2023</u>: Joe Duncan

h.  <u>March 08, 2023</u>: ManWhore Podcast

i.  <u>March 16, 2023</u>: Stupid Sexy Privacy

j.  <u>December 19, 2023</u>: Dan Savage LoveCast

k.  <u>January 19, 2024</u>: Hone Healthy

l.  <u>April 12, 2024</u>: Susie Gronski

m.  <u>September 12, 2024</u>: Digital Defenders United

n.  <u>February 14, 2025</u>: Rena Malik

o.  <u>February 21, 2025</u>: Psych and the City

p.  <u>March 17, 2025</u>: The TwoX Labs Podcast

q.  <u>July 21, 2025</u>: The Dissenter Podcast

*Disparagement via Wikipedia Astroturfing*

357.    Porn industry entities have invested substantial time into manipulating Wikipedia's content. To achieve this, they have operated numerous illicit sockpuppet accounts in violation of Wikipedia's stated policies, concealing the true source of edits and creating the false appearance of organic public contributions. Porn industry entities systematically monitor and manipulate Wikipedia pages related to pornography, as well as pages concerning industry critics and recovery resources.

358.    Upon information and belief, Mike Stabile from Free Speech Coalition operated the Wikipedia account username "fauxjob". Upon information and belief, Mike Stabile also utilized "fauxjob" as his Instagram username and previously utilized the email address

Exhibit "A"

michael@fauxjob.com. Upon information and belief, Mike Stabile also utilized the "fauxjob" username on Reddit, where he, upon information and belief, posted to the r/NoFap subreddit and encourage a 16-year-old underage Reddit user to use pornography: "No, you're a teenager with a high sex drive. It's natural and not shameful. When I was your age, I had access to almost no porn and was CONVINCED that I was addicted to masturbation because I was so horny all the time."

359.    Using metadata and other evidence, Wikipedia administrators connected various clusters of sockpuppet accounts: https://en.wikipedia.org/wiki/Wikipedia:Sockpuppet_investigations/NeuroSex/Archive. Based on the University of Pittsburgh discovery and other metadata, it appears that Defendant Prause has utilized over 80 alias identities to edit Wikipedia pages.

360.    While #Traffickinghub was launched by Laila Mickelwait, the campaign was supported by Exodus Cry, Mickelwait's employer at the time, which described itself as "committed to abolishing sex trafficking and breaking the cycle of commercial sexual exploitation while assisting and empowering its victims." At the time of the #Traffickinghub launch, there wasn't a Wikipedia page about Exodus Cry. On December 17, 2020, the "Fauxjob" Wikipedia alias, which upon information and belief is operated by Free Speech Coalition's Mike Stabile, wrote and created the page about Exodus Cry. Metadata unveiled that, within hours, Defendant Prause operated a newly created Wikipedia sockpuppet account, "Dfgnbweo0", to insert disparaging content onto the newly created Exodus Cry page. One of Defendant Prause's edits included "On December 17, 2020, the Daily Beast revealed that Exodus Cry spokesperson Laila Haddad Mickelwait filed declarations supporting two men working with Exodus Cry [referring to Plaintiff Rhodes and Donald Hilton] accused of sexual harassment and posting death threats against a female scientist who studied pornography. [linking to a Daily Beast article quoting Defendant

Prause]". In the wake of #Traffickinghub, Defendant Prause-connected sockpuppet aliases would make further Wikipedia edits regarding Exodus Cry or its founder Benjamin Nolot under the Wikipedia aliases "Tp89j9c4t98", "Violetta2019", "EffortMoose", "Imp65", and "Bushwhacky" to insert disparaging information.

361.    Defendant Prause has frequently coordinated her Wikipedia edits with a power user under the username "Tgeorgescu", who claims on their Wikipedia user page to be a Netherlands-based individual named Tudor Georgescu. Tgeorgescu has exerted control over multiple Wikipedia pages related to pornography, including the pages about Plaintiff NoFap, Defendant Prause, the Pornhub/Aylo Defendants, OneTaste, pornography, pornography addiction, the effects of pornography, and the late Gary Wilson. To achieve this, Tgeorgescu has routinely removed edits made by the general public, implemented edits suggested by Defendant Prause, protected and incorporated edits made by Defendant Prause's sockpuppet accounts. Tgeorgescu has been editing the NoFap page since as early as January 7, 2017.

362.    Tgeorgescu and Defendant Prause have often communicated to discuss their coordinated Wikipedia edits with each other. Even on the Wikipedia website, Tgeorgescu has often taken direction from Defendant Prause-connected sockpuppet alias identities.[2223] Evidence obtained on social media reveals that Defendant Prause and Tgeorgescu have communicated outside the Wikipedia. For example, Tgeorgescu's X account shows direct off-Wikipedia communication related to these matters.[24]

---

[22] https://en.wikipedia.org/wiki/Talk:NoFap/Archive_4#c-Antfightclubcatsup-20221126041800-Tgeorgescu-20221121072700
[23] https://en.wikipedia.org/wiki/Talk:NoFap/Archive_4#c-Tgeorgescu-20230224175300-Figvostok1enchanting-20230224170500
[24] https://x.com/tugeorgescu/status/1733461667298660581

Exhibit "A"

363.    Upon information and belief, Defendant Prause has utilized the following thirty two Wikipedia aliases to edit the page about NoFap: "130.216.57.166", "Suuperon", "2601:281:CC80:7EF0:9505:4EB1:105A:D01", "DIsElArIONORsIvOCtOperT", "Mateherrera", "Nicklouisegordon", "Faustinecliffwalker", "NeTAbygO", "JackReacher2018", "Anemicdonalda", "Etta0xtkpiq45ulaey2", "Turnberry2018", "Islamaryoryan", "Transmitting2020", "CtRAmENtagNatK", "Sdjbaw;uo", "Uoheargopuherg", "Strawberrycerealbat", "OwDOnimEDGENiORmyTErentea", "Silverberrycomposer", "Deliganist", "HeavyWheeler", "IntroEggplant", "Angurispome", "Jkw85FLT", "Philosophydriven", "Guardsmanmario", "Figvostok1enchanting", "Antfightclubcatsup", "BrandolinisLaw", "UgherBob", and "Oysterthebigsleeplog".

364.    Defendant Prause-connected sockpuppet aliases and Tgeorgescu have written the majority of the Wikipedia page about Plaintiff NoFap, carefully shaping it to spread disinformation to millions of viewers. The page is rife with defamation, inaccuracies, and misleading claims. Many of the citations and quotes are sourced from Defendant Prause, Defendant Ley, their collaborators, or secondary sources that directly cite or otherwise stem from their originally planted disinformation. Meanwhile, more reliable mainstream news sources—such as articles about Plaintiff NoFap published by *CNN* and *The New York Times*—do not appear in the page. Scientific papers, mainstream news articles, and expert quotes from reliable sources supporting the view that excessive pornography use can lead to adverse effects, including behavioral addiction, are largely omitted or entirely absent from the Wikipedia page.

365.    Defendant Prause-connected sockpuppet accounts authored nearly the entire content of the following sections on the Wikipedia page about NoFap: "Political and religious motivation," "Reception," "Research concerning NoFap forums and followers," "Journalistic

Exhibit "A"

descriptions of NoFap," and "Litigation." The Talk page for Wikipedia's NoFap article, where editorial decisions about the underlying page are purported to be made, provides further insight. At the time of this research, according to Wikipedia's XTools statistics, the NoFap Talk page has received a total of 974 edits. Of these, Tgeorgescu alone is responsible for 602 edits—an overwhelming 61.8% of all activity on the page.

366.    Upon information and belief, Defendant Prause has utilized multiple aliases when editing Wikipedia pages about "Sexual Addiction"; "Pornography Addiction"; "Internet Sex Addiction"; "Fight the New Drug"; and "Nicole Prause".

367.    On March 27, 2021, Tgeorgescu added r/NoFap to Wikipedia's list of alleged "Controversial Reddit communities". Tgeorgescu has continued to exert control over Wikipedia pages concerning pornography through the time of this filing. For example, on June 21, 2025, Tgeorgescu made edits to Wikipedia pages concerning Defendant Prause and the Pornhub/Aylo Defendants, adding and revising content in a manner favorable to them. On June 18, 2025, Tgeorgescu edited the Wikipedia page about NoFap, adding the claim "According to a journal from Utah, NoFap has difficulties in distancing itself from Christian nationalism and antisemitism. It also says that the [']reboot['] therapy is not supported by evidence." This statement cited a publication by Michael Dean McGrady Jr., who is a member of the porn industry and has served as a contributing editor for AVN (Adult Video News) since 2023.

368.    On June 28, 2025, Tgeorgescu made comments onto the page about Nicole Prause favorable to her, and on the same day made edits on pages about Pornhub/Aylo Defendants and the alleged trafficking venture OneTaste. On July 19, 2025, Tgeorgescu added the following to the Wikipedia page about Defendant Prause: "According to her own paper, she [']was awarded damages from Andrew Stebbins, the legal counsel of NoFap LLC founder['] for defamation and

Exhibit "A"

revealing of her address. This is a mandatory disclosure she had to make under academic conflict of interest rules." On the same day, Tgeorgescu added something substantially similar to the Wikipedia page about Plaintiff NoFap, adding "According to Prause's own paper, she [']was awarded damages from Andrew Stebbins, the legal counsel of NoFap LLC founder['] for defamation and revealing of her address. This is a mandatory disclosure she had to make under academic conflict of interest rules." These assertions are not true and the case she filed against Andrew Stebbins was dismissed, however they continue to remain on both Wikipedia pages to date. While incorporating content sourced from Defendant Prause and her collaborators, Tgeorgescu has regularly deleted material from Wikipedia pages that is unfavorable to the pornography industry, claiming that such content violates Wikipedia's sourcing policies, yet failing to apply those policies uniformly.

369.    Many of the disparaging Wikipedia edits by Defendant Prause occurred after she executed the Non-Disparagement Agreement.

370.    Since executing the Non-Disparagement Agreement on February 26, 2021, the NoFap Wikipedia page has received over 1,301,283 direct pageviews. Of those, 1,233,460 views have occurred since Defendant Prause first edited the page in violation of the Non-Disparagement Agreement, according to the Wikipedia pageviews analysis tool. Those numbers do not include secondary impressions, such as through search engines and AI tools that source content from Wikipedia.

371.    Porn industry associates frequently cite their own disinformation—including both their own work and secondary sources misled by them—as evidence to support their claims against their targets. For example, on June 13, 2022, Defendant Ley wrote on Twitter: "Well. That's a whole lotta truth right there. Your Brain on Porn gets fact-checked on Wiki. [link to the Wikipedia

page about Gary Wilson], which was largely constructed and controlled by Defendant Prause and Tgeorgescu]"

*Disparagement via Social Media Posts*

372.    Since executing the Non-Disparagement Agreement, Defendant Prause has escalated to posting about Plaintiffs on social media in breach of contract on a near-daily basis—often multiple times per day—and frequently names Plaintiffs directly. These messages have been preserved for trial using preservation software, namely Page Vault.

373.    Upon information and belief, Defendant Prause utilized the following Reddit accounts, many of which were used to post disparaging statements about Plaintiffs in breach of the Non-Disparagement Agreement.

    a.  https://www.reddit.com/user/SexMythBusters
    b.  https://www.reddit.com/user/ReadMoreAndMore
    c.  https://www.reddit.com/user/CupOJoe2010
    d.  https://www.reddit.com/user/GaryWilsonPervert
    e.  https://www.reddit.com/user/PenisAddict
    f.  https://www.reddit.com/user/DataScienceLA
    g.  https://www.reddit.com/user/JumpinJackFlashZ0oom
    h.  https://www.reddit.com/user/sciencearousal
    i.  https://www.reddit.com/user/Agreeable-Plane-5361
    j.  https://www.reddit.com/user/soihrgoi
    k.  https://www.reddit.com/user/RebootStudy2021
    l.  https://www.reddit.com/user/RebootStudy2022
    m.  https://www.reddit.com/user/FancyExamination2099
    n.  https://www.reddit.com/user/Winter-Oil5423
    o.  https://www.reddit.com/user/funkcC
    p.  https://www.reddit.com/user/Appropriate-Week-718
    q.  https://www.reddit.com/user/Solid_Visit_1342
    r.  https://www.reddit.com/user/SeaYou4528
    s.  https://www.reddit.com/user/Pleasant_Gas_4303
    t.  https://www.reddit.com/user/AskingForProof
    u.  https://www.reddit.com/user/TruthWithout
    v.  https://www.reddit.com/user/DontDoDallas
    w.  https://www.reddit.com/user/EvidenceForYou
    x.  https://www.reddit.com/user/GaryWilsonSteas
    y.  https://www.reddit.com/user/gjacwo
    z.  https://www.reddit.com/user/HeartInternetPorn

Exhibit "A"

aa. https://www.reddit.com/user/FightPower
bb. https://www.reddit.com/user/DallasLandia
cc. https://www.reddit.com/user/locuspocuspenisless
dd. https://www.reddit.com/user/ijdfgo
ee. https://www.reddit.com/user/vnwpwejfb
ff.  https://www.reddit.com/user/alahewakbear
gg. https://www.reddit.com/user/SearchingForTruthNot
hh. https://www.reddit.com/user/HighHorseNotOn
ii.  https://www.reddit.com/user/SoManyMalts
jj.  https://www.reddit.com/user/RevealingAll
kk. https://www.reddit.com/user/sinwvon
ll.  https://www.reddit.com/user/GermanExpat18

374.    <u>Personal Information</u>: Since executing the Non-Disparagement Agreement,

Defendant Prause has regularly posted Plaintiff Rhodes' personal information online. This

includes addresses for family members and other loved ones, Plaintiff Rhodes' address, his

phone number(s), the mailing address for Plaintiff NoFap, private photographs, names from his

personal life, and much more. Much of this personal information was obtained through data

mining or opposition research. Oftentimes, Defendant Ley has joined in in disseminating such

personal information. Examples include:

a.  <u>April 22, 2024</u>, Defendant Prause published the physical address of Plaintiff
    Rhodes' family members, Plaintiff Rhodes' personal cell phone number, Plaintiff
    Rhodes' personal email address.

b.  <u>June 1, 2024</u>, Defendant Prause published the name of an ex-girlfriend of Plaintiff
    Rhodes, along with two legal documents from a small claims case the ex-girlfriend
    had filed against a former landlord. Defendant Prause falsely claimed she lost the
    case, when in fact she ultimately prevailed.

c.  <u>August 12, 2024</u>: Defendant Ley posted a photograph of Plaintiff Rhodes as a
    teenager at school doing a skit with a group of other male students, who were all
    dressed up in women's clothing. It is unclear how Defendant Ley obtained this
    private image, which he claimed, "popped up". Defendant Ley wrote on X: "Is there
    a modern price to hypocrisy? I'm interested in math. When these examples of
    conflict pop up, does it shift anything? If, for instance, a photo of the head of
    @nofap in drag popped up, does it change the view that trans/drag is addictive?
    And maybe he's just a grifter?" After Defendant Ley posted the image, Plaintiff
    Rhodes was subjected to subsequent online statements disparaging him that
    continue to cause harm. For example, a January 28, 2025 post linked directly to
    Defendant Ley's X.com post, claiming: "Founder of Nofap was Trans [Link to

Exhibit "A"

Defendant Ley's X.com Post] The founder of nofap is a crossdresser trying to cope with sexual desire to be a woman." Defendant Ley's post was shared widely, including by @DaddyWolfBear.

    d. <u>February 15, 2025</u>: Defendant Prause posted about a former romantic partner of Plaintiff Rhodes on X (formerly Twitter) and Bluesky, including false statements and doxxing details that could be used to identify her name and address. She wrote: "Apparently, the vexatious litigation history of anti-porn groups is longstanding. In 2018, one sued their apartment owner, lying they were living in asbestos, lost, and spent *years* harassing them afterwards. History suggests these [']porn lawsuits['] are really for personal gain." Defendant Prause's posts included the case number, venue, dates, and defendants' names, enabling anyone to identify the plaintiff within minutes. The referenced matter was a small-claims case filed by Plaintiff Rhodes' former partner, who won on appeal. There wasn't any contact with the defendants after the suit was filed, so the "harassment" claim is unfounded.

375.   <u>Violence and Terrorism</u>: Following execution of the Non-Disparagement Agreement, Defendant Prause disseminated accusations that Plaintiffs are violent, associated with threats or violence, supportive of violence, and terrorism, intentionally conveying them to cause harm:

    a. <u>June 09, 2022</u>: Defendant Prause disparaged NoFap by engaging in Twitter postings with @JFTxWine, who upon information and belief is a friend of Defendant Prause. @JFTxWine posted on June 02, 2022, that "You have it the other way around, there have been many death threats and attacks on journalists and scientists from [NoFap]. These are very well documented.... No one in the porn industry cares about nofap. And this is all smoke and mirrors played by a grifter." The thread also included additional posts by @JFTxWine that disparaged NoFap and Plaintiff Rhodes. The @NicoleRPrause Twitter account responded on June 09, 2022, writing "Now, WHO specifically excluded addiction and keeps having to republish this because of accounts like this that sell health disinformation", republishing @JFTxWine's false and defamatory statements, and adding further disparagement.

    b. <u>December 03, 2023</u>: Defendant Prause posted on X.com that "I have reported to multiple law enforcement that are tracking NoFap. I am aware that the International Centre for Counter Terrorism and Joint Terrorism Task Force have been monitoring them, consistent with our data:"

    c. <u>March 28, 2025</u>: Defendant Prause reached out to the NHS Greater Glasgow and Clyde (username @NHSGGC on X.com) to claim that Plaintiff NoFap is a "group of extremist misogyny as defined by the International Centre for Counter Terrorism".

Exhibit "A"

d. <u>June 28, 2025</u>: Defendant Prause posted to BlueSky, writing "These posts and images are from the r/NoFap anti-masturbation website, calling for the murder of the PornHub CEO and porn performers. Anti-porn coaches and religious groups regularly recommend sending youth to r/NoFap, despite this well-documented, violent content [Link to the Taylor & Francis Paper]"

376.    <u>Conspiracy Theories</u>: Defendant Prause has repeatedly posted that Plaintiffs are associated with dissemination of conspiracy theories. For one example, on September 30, 2024, @NicoleRPrause on X posted "This is some of the best evidence I have seen that the anti-porn community is causing the spread of false porn industry conspiracies. After a NoFap founder posting a single conspiracy theory on r/NoFap November 2019, posts about the false conspiracy exploded for months on NoFap." In a reply post, @NicoleRPrause wrote "They claimed that the porn industry and scientists were in a secret cabal to attack and close NoFap. [upon information and belief, referring to Defendants Prause and Ley] We can find no evidence that ever occurred."

377.    <u>Discriminatory Views</u>: Defendant Prause has posted that NoFap hosts discriminatory views. For example:

a. <u>April 28, 2022</u>: Defendant Prause made a post to her @NicoleRPrause Twitter account identifying NoFap by description, including a screenshot of NoFap as an attached image, posting "like [']Reboot['] anti-porn forums, where women who dress sexy on Instagram are still [']girls being like a slut[']. Teaching men to shame women for their sexual choices on Reddit anti-porn forums might be worse than the church doing it."

b. <u>June 22, 2022</u>: Defendant Prause disparaged NoFap by utilizing her @NicoleRPrause Twitter account, identifying NoFap by description, posting "Analyzing misogynist language in Reboot forums. [']Bitch['] is the favorite, followed by [']pussy['], then [']cunt['], then [']slut['], then [']whore[']. I rarely see references to women/woman, almost always [']girl[']. In sum: NLP is verifying reports of extreme misogyny in these forums." In response to her Twitter post, another Twitter user @furfunz28 replied to Defendant Prause, identifying NoFap by name. Prause elaborated that "These are gurus or [']coaches['] who profit by telling men/boys they can cure their erectile concerns by helping them abstain from pornography. Never mind that porn doesn't cause ED. They are the primary sources of sexual health disinformation. We study their harm of public health."

Exhibit "A"

378.    <u>Direct Interactions</u>: Defendant Prause would directly retweet, respond, or interact with recent or past NoFap social media posts, such as:

    a.    <u>July 11, 2022</u>: NoFap posted to Twitter "Just a friendly reminder that the World Health Organization (@WHO) officially recognizes Compulsive Sexual Behaviour Disorder. It's great to see more scientists & clinicians speaking up about this important issue. Onwards to more research & recognition!" On July 11, 2022, Defendant Prause disparaged NoFap by utilizing her @NicoleRPrause Twitter account, posting "Reminder: Neither APA nor WHO include [']sex addiction['] or [']porn addiction['] as diagnoses. They specifically rejected it for lack of evidence. If someone is selling you a treatment for such a non-existent diagnosis, it is fraudulent."

    b.    <u>August 05, 2022</u>: Defendant Prause disparaged Plaintiff by utilizing her @NicoleRPrause Twitter account, referencing Plaintiff by including a screenshot of an earlier post from the NoFap Twitter account, and posting "Ever watched someone fall apart in real time? This is...not stable."

379.    <u>Accusing Plaintiffs of nonconsensual data surveillance/electronic misconduct</u>: Prause would claim NoFap uses bots, tracks visitors inappropriately, and fakes engagement. For example, on July 25, 2025 Defendant Prause wrote on BlueSky "NoFap, FightTheNewDrug, and other anti-porn websites are placing hidden tracking that follows you around the web and cannot be stopped by clearing cookies by BlackLight report. Both websites are design for youth to talk about their sexual behaviors." In a follow up post, Defendant Prause wrote "Youth should be warned not to visit these websites, especially as it is can secretly track their sexual behaviors if they are viewing porn." On July 25, 2025, Defendant Prause on BlueSky wrote "NoFap, FightTheNewDrug, and other anti-porn websites are placing hidden tracking that follows you around the web and cannot be stopped by clearing cookies by BlackLight report. Both websites are design for youth to talk about their sexual behaviors." In a follow up post, Defendant Prause wrote "Youth should be warned not to visit these websites, especially as it is can secretly track their sexual behaviors if they are viewing porn."

Exhibit "A"

380.    <u>Defendant Prause would regularly relay messages to Plaintiff NoFap's connections or potential connections, such as those who recommend or link to NoFap. Examples include:</u>

a.    <u>January 19, 2023</u>: Defendant Prause posted to X, including screenshots of NoFap, writing "Reboot websites are still up and recruiting youth, where they glorify murdering people who work in the adult industry. @NCOSE, @lisaling, @gopTodd and others advertise these websites. Our paper on the extremist violence in these groups is under review."

b.    <u>March 28, 2025</u>: @NicoleRPrause posted on X directing a message to @NHSGGC, the NHS Greater Glasgow and Clyde, writing "[…] [Link to the Taylor & Francis Paper] You even send boys to [']NoFap[', a group of extremist misogyny as defined by the International Centre for Counter Terrorism"

381.    <u>Fabricated Statements</u>: Prause would often post things that neither Plaintiff Rhodes nor Plaintiff NoFap LLC ever said and then use to justify further attacks.

a.    <u>May 09, 2022</u>: Defendant Prause made a post to her @NicoleRPrause Twitter account, posting "On Reddit, @NoFap is posting that I lost a lawsuit to Alexander Rhodes, apologized to him, retracted statements, and paid [']damages[']. This is false and defamatory. I never lost any lawsuit, never retracted any statements, including about Alexander Rhodes, and never paid damages." Plaintiffs did not post any of the aforementioned messages anywhere on Reddit and do not know what Defendant Prause is referring to. Upon information and life, Defendant Prause is fabricating these claims. Further, Defendant Prause is using this fabricated opportunity to disparage Plaintiff and to misrepresent the prior litigation against her.

b.    <u>August 22, 2022</u>: Defendant Prause tweeted "Yesterday @NoFap of Alexander Rhodes posted that I was paid by the porn industry to conduct studies to find fault with his treatment. This is (still) false and defamatory." In response, the Defendant Ley posted "@NicoleRPrause @NoFap Gotta love that guy. What a winner he is." No such post was made by Plaintiffs.

382.    <u>Staging Hoaxes</u>: Defendant Prause has staged numerous targeting Plaintiffs, claiming to be a victim.

a.    <u>March 09, 2021</u>: Defendant Prause asserted on Twitter that a well-known cybercriminal, "Maxsim Yakubets," alleged by U.S. authorities to be associated with the Russia-based cybercrime group commonly referred to as Evil Corp (and linked to the Dridex malware operation), took down her website LiberosCenter.com. She published purported messages from "Yakubets" stating, "Leave Alex and the Nofap community alone. Sincerely – MAXsim Yakubets" and

Exhibit "A"

"Leave Alex alone or I hit this site and your internet exchange point with a 2 tbps DDOS attack." While Plaintiffs do not yet possess all evidence they would rely upon at trial, preliminary investigation into Yakubets's known modus operandi and publicly documented patterns render Defendant Prause's assertions highly implausible, particularly in light of her pattern of reporting fabricated incidents. Upon information and belief, the statements and their purported attribution to "Yakubets" were fabricated or otherwise inauthentic.

b.  January 24, 2022: Defendant Prause posted on Twitter that "Yet another post be @NoFap resulted in a another [sic] death threat against me. /r/NoFap stated I am ['‘]pro-porn['‘], paid by porn, my research was ['‘]unethical['‘], and this is done ['‘]before she dies['‘]. NoFap further incited attacks calling me ['‘]disgusting['‘] & ['‘]sick['‘]. This is false and defamatory." Defendant Prause also purported to file an FBI report about this fabricated incident, describing the figurative title of a third-party post critiquing her "science", "The Final Nail in the Coffin of Pro-PMO ['‘]Science['‘]", as a threat. Another third party responded to the initial post, purporting that Defendant Prause is unethical and does not fear the afterlife, which Defendant Prause mischaracterized as a threat. NoFap did not make the posts Defendant Prause described, nor did the users she claimed posted threats against her actually do so.

c.  June 11, 2025: Upon information and belief, Defendant Prause utilized a sockpuppet alias, "jonathana_1972" under the user ID "1182353941036548219", to post policy-breaching content on NoFap's Discord server, posing as a NoFap community member.

d.  July 02, 2025: Upon information and belief, Defendant Prause utilized a sockpuppet alias, "sandybeach787" under the user ID "1389946428217884682", to post on NoFap's Discord server, posing as a NoFap community member. The posts, which were instantly removed, included "Warning everyone this discord is being monitor by Nicole Prause", "Just be careful what you type here it will be used in her pseudoscience", and "In my opinion we should go on her Wikipedia".

383.  Personal Insults: Prause has serially posted disparaging comments about Plaintiffs.

Many of these posts explicitly mentioned Rhodes by name, while others clearly described him.

One such post disparaged Plaintiff Rhodes for purportedly having greasy hair. Other examples

include:

a.  May 17, 2022: Defendant Prause posted on her @NicoleRPrause Twitter account "If a therapist ever says: every time you relapse, you should give me money to make up for your failure. They are not a therapist, they are a Reboot coach. Their scam is incredible, unethical, and harmful", later following up with "Apparently. I found one Reboot coach posted this dozens of times on his Reddit ['‘]support['‘] group.

Pure grift. Harmful therapeutically. It was just straight health disinformation to profit himself."

b. <u>June 09, 2022</u>: Defendant Prause disparaged Plaintiff by responding to a June 02 post by another Twitter user who posted that "[Plaintiff] has been subject to a lot of harassment by people connected with the porn industry. Like the same shit that happened with the cig companies back when scientists were first saying cigs gave people cancer." Prause responded to this post approximately one week later, which did not mention Defendant Prause by name and was not directed to her, that "This is false and defamatory. I have never been found to have harassed Alexander Rhodes nor anyone else in that group, nor to my knowledge has any scientist."

c. <u>August 15, 2022</u>: Defendant Prause tweeted "We have an anti-porn extremist with zero training to treat anything telling his over 1 million followers: [']I am an expert on quitting porn.['] This public needs to know this is absolutely false, so they can avoid seeking treatments from someone making such false claims."

384.    <u>Opposition Research</u>: The Porn Industry Defendants conducted extensive opposition research on Rhodes and closely surveilled him, then publicized such material and disseminated it to journalists. As a result, Plaintiff Rhodes has struggled to live a normal life, participate on social media, or maintain an online presence.

a. <u>July 08, 2022</u>: NoFap has hosted peer support forums for people to discuss various topics in further detail, including LGBTQIA+ issues, relationships, dating, marriages, and various religions. On July 05, 2022, Plaintiff set up two new sub-forums hosted on Reddit for Jewish and LGBTQ+ related discussion. Both of these sub-topics already existed on NoFap.com prior to this day. On July 08, 2022, Defendant Prause disparaged Plaintiff by utilizing her @NicoleRPrause Twitter account, posting "If you are selling a product that is widely documented to cater to antisemitic, anti-LGBT people, you do not fix it by telling the Jewish and LGBT people to go to this other product you want to sell because you refuse to address bigotry in your main cash cow. Life coaches. :face_with_rolling_eyes:"

b. <u>May 02, 2023</u>, Plaintiff NoFap quietly created a Discord server. Before the server had even 50  members, on May 04, 2023, @DaddyWolfBear, a porn producer, signed up under the user id "375285658521960448", who on July 04, 2025, goes by the username "wolfbear84". Under this username, @DaddyWolfBear would post messages to pose as a community member, and upon information and belief, relay surveillance to Defendant Prause, who would post screenshots of the Discord server on Twitter. Upon information and belief, this is not the only account monitoring the Discord server.

Exhibit "A"

385.    <u>SLAPP Allegations</u>: Prause would post frequently that she is a victim of SLAPPs. For example, on April 28, 2022, Defendant Prause made a post to her @NicoleRPrause Twitter account identifying NoFap by description, posting "Lawsuits filed by for-profit companies against scientists who criticize them know they will never win on merits. Their single purpose is to intimidate scientists into silence to keep bilking money from an unsuspecting public."

386.    <u>Claiming NoFap is Hiding Posts</u>: Prause would claim that NoFap is hiding posts, specifically suicidal ideation posts. One of the most common strategies of the Porn Industry Defendants is to scour Plaintiff NoFap's platforms with a fine-tooth comb, searching for the few rule-breaking posts—among millions of rule-abiding posts—that were either (a) already removed, but recovered by the Porn Industry Defendants through data-scraping tools, or (b) not yet spotted by volunteer moderators or the automated filters that assist them. Rather than reporting such posts to NoFap moderators for removal and action, the Porn Industry Defendants compile lists of them, take screenshots, and disseminates them to disparage and attempt to deplatform NoFap—falsely implying that NoFap promotes, endorses, or tolerates these rare occasions when such rule-breaking material may slip onto its platforms.

387.    Despite having a minuscule budget compared to Pornhub, upon information and belief, Plaintiff NoFap deploys far more resources into moderation of comments than the Pornhub/Aylo Defendants, as according to a 2017 *Esquire* article, "PornHub rep Brett Hall told me: [']We don't actively monitor for racist language but it is against our TOS [Terms Of Service]. We have a similar approach as YouTube where we rely on the community to flag content and comments against our TOS for us to review and take action.[']" According to a 2019 Forbes article, there were 11.5 million comments left by users on Pornhub in 2019. For comparison, NoFap users made approximately over 1,500,000 Reddit posts over the past year. Despite having far less traffic

and user-generated content than the Pornhub/Aylo Defendants, Plaintiff NoFap has always proactively moderated for racist language or other rule-breaking comments.

388.    Due to the Porn Industry Defendants' efforts to pressure Reddit into deplatforming r/NoFap, Plaintiff NoFap was forced to implement far more aggressive filtering to prevent rule-breaking posts from even temporarily appearing on the subreddit—far exceeding the moderation levels typical of other communities. As a result, hundreds of thousands of rule-abiding posts were flagged and held for manual approval by moderators. This led to a suppression of activity on r/NoFap, as posts often remained in the queue for hours before being published. People seeking support were forced to wait for their posts to be approved, and some deleted their posts after receiving no response. This diminished the supportive atmosphere that NoFap was known for.

389.    This caused serious harm to NoFap users by delaying access to peer support, including for individuals experiencing serious mental health concerns. For example, users seeking urgent support for suicidal ideation, posting that they wish to "kill myself", might have to wait for hours before their posts became visible. Although NoFap has always directed individuals expressing suicidal thoughts to hotlines and licensed mental health professionals, the delay in peer support—caused by filtering implemented due to the porn industry's course of conduct—often reduced the effectiveness of the community's response.

390.    <u>Retroactive Purported Statements</u>: Defendant Prause would post about purported defamatory statements from years prior to the settlement as justifications to continue attacks on Rhodes. For example, on August 18, 2022, Defendant Prause tweeted that "PJ media wrote an incredibly defamatory column about me, literally every sentence was false. It sourced one extremely ill anti-porn extremist and fact-checked nothing. It would have more readers if grandma put it on her church bulletin board. PJ is why [']fake news['] remains useful." This posting by

Exhibit "A"

Defendant Prause referenced Plaintiff by description, referring to a prior article by the publication titled "'No Fap' Porn Addiction Support Group Founder Sues Obsessed Pro-Porn Sexologist for Defamation". The article in question was published on November 21, 2019.

391.    <u>Retaliating Against Witnesses</u>: Defendant Prause and her collaborators engaged in a repeated pattern of targeting witnesses from, and supporters of, the Prior Litigation by filing false administrative reports and publishing disparaging statements on social media, often mentioning Plaintiffs in violation of the Non-Disparagement Agreement. Some but not all of those targeted include:

        a.  John Adler
        b.  DJ Burr
        c.  Stefanie Carnes
        d.  Matt Fradd
        e.  Geoff Goodman
        f.  Laila Mickelwait
        g.  The National Center on Sexual Exploitation
        h.  Staci Sprout
        i.  Rebecca Watson
        j.  Gary Wilson

392.    <u>Posting Photographs of Plaintiff Rhodes</u>: Defendant Prause would regularly incorporate photographs of Plaintiff Rhodes in her social media posts, including after executing the Non-Disparagement Agreement.

        a.  <u>November 16, 2023</u>: While announcing the Taylor & Francis Paper, @NicoleRPrause posted on X, including a photograph of Plaintiff Rhodes: "Many clinicians and groups have referred clients or followers to this violent group, including @SASH1234, Therapy Today, @NCOSE ,@brain_love_sex, and @GailDines. Men and youth should not be recommended to these forums. [Images, including a photograph of Plaintiff Rhodes]"

        b.  April 18, 2025: @NicoleRPrause posted on X:

Exhibit "A"



c. <u>May 07, 2025</u>: @NicoleRPrause posted on X that "Prior to NoFap, scholars note Alexander Rhodes was involved in ['][The performance of idiocy['] online stunts. Specifically, he watched Nyan Cat for 10 hours, including while using the restroom on camera. NoFap appeared to just be another attention stunt."



393.    Upon information and belief, Defendant Prause and her collaborators have lobbied Reddit to deplatform r/NoFap, including through non-public communications. Upon information and belief, this campaign has materially strained Plaintiff NoFap's previously close relationship with Reddit.

394.    <u>Moderation Team Opposition Research</u>: Defendants Prause and Ley would target NoFap moderation team members, such as disseminating opposition research on them, and otherwise dissuading them from working or volunteering with NoFap.

a. <u>June 30, 2025</u>: Defendant Prause posted message on the Discord server discouraging people from volunteering to moderate for NoFap, writing "it's a business and they refuse to pay mods", "they don't pay even tho it's a biz", and "they make money on u".

Exhibit "A"

b. <u>May 16, 2022</u>: Defendant Prause made a post to her @NicoleRPrause Twitter account disparaging and identifying NoFap by description, quoting Reddit posts by a NoFap moderation account arguing with online trolls, claiming that they are examples of support from an ['']unlicensed porn addiction coach.['] Defendant Prause went on to state that ['']Therapists do not mock, deride and degrade their clients. This shaming ['']treatment['] is likely why it has been linked to increased suicidal ideation. Avoid unlicensed Reboot ['']coaches['].

*Disparagement via Email*

395.    Subsequent to the execution of the Non-Disparagement Agreement, two researchers were conducting an academic study on Plaintiff NoFap's forum users regarding "how deficits in metacognitive processing, lack of self-regulation, and maladaptive coping mechanisms could prove to be a possible cause of recurrent relapses in pornography use through the recovery process."

396.    On January 10, 2022, Defendant Prause disparaged Plaintiffs in an email to Wichita State University:

"Hi,

There is a study listed by Treva Etsitty and Jason Herron that provides this resource list (attached).
https://wichitastate.co1.qualtrics.com/jfe/form/SV_3duQAESD7ooSZ4q

I was shocked to see this. NoFap, Reboot Nation, and YourBrainOnPorn, not only have no empirical data supporting their efficacy, but have data showing their harms to public health (e.g., https://link.springer.com/article/10.1007/s10508-021-01930-z. They also are known for threatening to kill and assault scientists and therapists who study pornography (statements available from Dr. Kate Dawson, Dr. Rebecca Sullivan, Dr. Madita Oeming, Dr. Taylor Kohut, Mr. Daniel Burgess, and more). Science has demonstrated that members of the NoFap forum overlap most heavily with MensRights and violent Incel communities. Incels have claimed responsibilities for 9 mass murders of women to date. The YourBrainOnPorn website is published for its well-known scientific fraud (https://journals.ala.org/index.php/jifp/article/view/7177). These recommendations are so harmful, I was not even sure where to start.

I actually am conducting a pre-registered study just to further characterize the harms of these programs (https://osf.io/ux47b/?view_only=6739f68d4e74a809e95cd64b836dade). So far,

Exhibit "A"

25% of people who visit these forums say they were told to "kill themself" by someone in the forums. Those who experience "relapse", which is unique to those fake treatments, 23% report feeling suicidal.

There is no reason to send a vulnerable population to any of those websites. This needs to stop immediately. I have not directly contacted the investigators, because I do not know if they may be members of those communities.

Nicole Prause, PhD"

397.    Upon information and belief, Defendant Prause has actively sought to obstruct or shut down academic research involving Plaintiff NoFap's website, and research on problematic pornography use more broadly, by contacting researchers and academic institutions to discourage or interfere with such studies.

398.    Defendant Prause's communications caused Plaintiff NoFap to be removed from a Qualtrics survey associated with researcher Treva Etsitty, jeopardizing Etsitty's research.

399.    In social media posts on or around May 31, 2023, Defendant Prause alleged that Alec Sproten's 2016 research on NoFap contained ethical violations, continuing her pattern of interfering with legitimate academic inquiry related to Plaintiff NoFap.

400.    Upon information and belief, on July 08, 2022, Defendant Prause emailed a document defaming and disparaging Plaintiff Rhodes to hello@defendyoungminds.com.

401.    Upon information and belief, on October 12, 2022, Defendant Ley sent an email to William Costello and a listserv called SEXNET, writing: "William, we are finding similar data on nofap, that participation in nofap forums dramatically increases anxiety, distress, erectile dysfunction and anger/hopelessness." Upon information and belief, on October 13, 2022, William Costello responded, writing "Dr. Prause has been telling me about that overlap between NoFap and Incel forums."

402.    Upon information and belief, on June 04, 2023, Defendant Ley emailed a listserv associated with AASECT, writing: "The linked article includes some interesting details not before revealed about nofap, including their profit motives, links to the violent incel community, and the fact that the founder believes watching porn somehow caused his bipolar disorder. I'm aware there are more such stories coming, exposing the dirty underbelly of these groups claiming to treat porn addiction through abstinence. As I've said previously, any clinicians recommending these groups to patients should think carefully, as people are experiencing harm within them."

403.    Upon information and belief, Defendant Ley disparaged Plaintiffs on June 29, 2023. On the SexNet mailing list, Defendant Ley wrote "I'm sure we will learn more. I'm hearing on back channels that this may have been related to the professor rejecting the idea of porn addiction and online nofappers being upset with it. Police are apparently investigating that aspect."

404.    Defendants Prause and Ley have long tried to link Plaintiff NoFap to violent acts. Plaintiffs are unaware of any single individual committing a violent act in support of Plaintiff NoFap. However, following numerous mass shootings and other mass-casualty events, Plaintiffs have observed Defendants Prause and Ley post about scouring the web for perceived connections to Plaintiffs or other targets of the porn industry. Usually, these efforts have proven fruitless. However, in the few instances they have been able to locate something that could be utilized, the purported connections typically consist of a person once mentioning NoFap on a social media account, posting a meme, or even disparaging NoFap, after which Defendants attribute the shooter's later conduct to Plaintiff NoFap without supporting evidence. In other words, their argument reduces to: a murderer once drank a can of Coca-Cola—or merely mentioned or disparaged Coca-Cola while preferring Pepsi—therefore Coca-Cola is responsible for the later conduct.

Exhibit "A"

405.    Upon information and belief, on November 16, 2023, Defendant Ley posted the defamatory Taylor & Francis Paper he wrote with Defendant Prause to the SEXNET mailing list. In doing so, he added the following additional disparaging and defamatory comments:

> "Colleagues: I'm pleased to share the publication of new research, examining explicit violence, misogyny and homophobia in a unique online anti-masturbation, anti-pornography group known as [']NoFap.[']
>
> Though many paint this group as a harmless, even silly endeavor, we found quite extraordinary, troubling and pervasive evidence of calls for violence against scientists, pornography performers, women, and other nofap group members.
>
> The below comments are just a few of the direct examples: [']Categories of violent post targets included people in the pornography industry (e.g., [']pornographers should be executed[']), women (e.g., [']you should murder her and burn the body, that's the only way to fully protect yourself[']), a specific person  in the poster's life (e.g., [']Cut his dick off[']), other posters (e.g., ['] if you fap i will kill you[']), scientists (e.g., [']this attack is actually their death wish, because the force they will face now is beyond anything they can imagine[']), any person they might contact (e.g., [']Better go out and punch someone in the face, get in a fight like a real man[']), and smaller categories, like animals or members of the LGBT community (e.g., [']homosexuals should kill themselfs[']). Categories of violent acts described included death (e.g., [']We should lynch all porn stars and porn productions[']), rape (e.g., [']Punch that rejection in the vagina and rape it like a real American[']), destroying property (e.g., [']Punch a stranger in the face and commit arson[']), doxxing (e.g., [']I just found my dream girl . . . by doxxing her[']), and general violence such as [']punching['] (e.g., [']I want to punch ALL the things (if male) and Fuck ALL the things (if they are female)['][']
>
> Please take note that the above direct quotes were not rare aberrations but reflect many thousands of such comments. Further, these comments were [']upvoted['] by group members, showing their support and encouragement for these violent statements.
>
> I'm aware that many clinicians may recommend or support participation in groups such as NoFap, as a corollary to a person's effort to control their sexual behaviors. I strongly encourage clinicians to reconsider this, given the findings we detail in this publication. Of note is the concerning fact that there are many unsupervised adolescent males participating in these groups, who may be quite vulnerable to unhealthy influence."

406.    Upon information and belief, on November 16, 2023, Simon LeVay responded to Defendant Ley on SexNet, writing: "I searched recent r/NoFap listings for over an hour without

Exhibit "A"

finding a single post that encouraged or even mentioned violence. On the contrary, all entries were exactly what I would expect for a support group of this kind -- people posting about their successes avoiding masturbation, confessing their failures, and asking for or offering tips on how to resist the temptation. David mentions ['']many thousands['] of violence-themed posts on r/NoFap, but his and Nicole's study only identified 397 such posts after searching more than a decade's worth of posts. I surmise that the posts David mentions, though certainly concerning, represent a miniscule fraction of all r/NoFap material. I think that the NoFap movement is largely misguided. The world would be a better place if people masturbated more, not less, in my opinion. Still there are some men whose lives are being harmed by the amount of time they devote to porn and masturbation. r/NoFap may offer such men useful support in their efforts to ['']reboot.['] Perhaps David and Nicole's study will encourage (or has already encouraged?) more careful moderation of r/NoFap's content to exclude the occasional violence-themed post." Defendant Ley responded: "if you look at the links included in the paper, you'll see that most such posts have been deleted. most within the past year, as public attention to these issues escalated. it's why we included the links."

407.    Upon information and belief, on February 04, 2024, David Ley emailed ASECT the NPR hit piece he helped create, writing "I hope folks will check out this very thoughtful and well-researched article examining the online nofap and semen retention industry. Many of their deceptions and unsavory tactics get critical attention. As I've said before, any clinicians who recommend or endorse these groups should be wary of potential harm to their clients. D https://www.npr.org/2026/01/01/1198916105/mens-health-masturbation-abstinence"

408.    Upon information and belief, on May 15, 2024, Defendant Prause emailed mail@rcsed.ac.uk, birmingham@rcsed.ac.uk and malaysia@rcsed.ac.uk, targeting a problematic

Exhibit "A"

pornography use e-course offered by a UK-based charity, The Reward Foundation. Defendant

Prause's email stated, in part:

> "I study, in part, the Karezza religion. This religion believes that all intense sexual pleasures, including climax, are pathological and should never be a part of anyone's life. […] None of the treatments they recommend have any evidence to support them. To the contrary, there is extensive evidence they are harmful, causing suicidal ideation, depression, and similar. For example, **NoFap is a recognized terrorist group** [emphasis added] with extensive violence in their "support" groups: [Link to the Taylor & Francis Paper] […] Is their claim accurate that you offer CPD credits for completing their course? If so, whom should I contact about getting this content properly reviewed? This "course" is demonstrably harmful to public health and used solely for the profit and governmental lobbying of the Karezza religious leaders."

409.    Upon information and belief, Defendant Prause—often collaborating with

Defendant Ley—sent numerous additional emails to hundreds of recipients, in direct violation of

the Non-Disparagement Agreement.

*Other Disparagement*

410.    Upon information and belief, Defendant Prause utilized her X.com account to post

disparaging "community notes" (https://x.com/i/communitynotes/u/amazing-pineapple-bluejay)

in violation of the Non-Disparagement agreement, including:

    a.  "Coaches often charge high fees to lead men in semen retention and NoFap practices despite this lack of evidence."
    b.  "NoFap is part of the [']manosphere['] that seeks to sell unproven products. NoFap is associated with increased depression and anxiety, not less."
    c.  "NoFap coaching is known for claiming to treat medical disorders that it actually appears to worsen, while charging high prices to young men for [']coaching[']"
    d.  "The claims of online semen retention and NoFap coaches have been described by scientists as medically inaccurate and harmful to public health in peer-reviewed science."
    e.  "Practicing NoFap actually is associated with worse depression, anxiety and ED. It cannot treat any addiction."
    f.  "In particular, the communities promoting No Nut/NoFap November are part of the [']manosphere['], promoting anti-feminist messages."
    g.  "The NoFap anti-masturbation practice is associated with a number of harms, and the community appears remarkably violent."

Exhibit "A"

> h.  "NoFap is an anti-masturbation practice associated with increasing depression, anxiety, and erectile dysfunction [link to Defendant Prause & James Binnie paper] and is a violent, misogynist group associated with real-world mass murders [link to disparaging Defendant Prause and Defendant Ley paper]"

411.    After the Non-Disparagement Agreement was executed, upon information and belief, Defendant Prause changed her ResearchGate.net profile headline to include contract-breaching disparagement: "Reboot/NoFap treatment claims and violence; Post-orgasmic illness syndrome; Alcohol abuse treatments".

## 11.    Damages and Conclusion

412.    The Pornhub/Aylo Defendants—the world's largest pornography company, generating hundreds of millions of dollars annually and operating one of the ten most-visited websites on the internet—collaborated with faux academics, namely Defendant Prause and Defendant Ley, in a tortious scheme to dismantle Plaintiff NoFap, a low-budget pornography addiction peer-support website and its affiliated Reddit forum.

413.    This lawsuit heralds how disinformation can originate and spread in today's digitally connected society, especially when fueled by powerful financial interests. For years, pornography industry entities have systematically planted seeds of disinformation—through blog posts, hoaxes, and coordinated social media astroturfing—which have grown into more formalized disinformation, such as academic papers and articles published by industry affiliates and ideologically aligned collaborators, and ultimately into widely circulated narratives republished by disinformed third parties.

414.    Much of the porn industry's disinformation campaign was carried out in violation of the Non-Disparagement Agreement between Plaintiffs and Defendant Prause. Defendant Prause and Defendant Ley acted as surrogates for the pornography industry, conspiring with the Pornhub/Aylo Defendants, to suppress Plaintiff NoFap and Plaintiff Rhodes.

Exhibit "A"

415.    Since February 27, 2021, the day after the Non-Disparagement Agreement was executed, many millions of people have viewed contract-breaching disparaging blog posts, articles, videos, social media posts, podcasts, Wikipedia edits, and news stories initiated by Defendant Prause and her collaborators within the pornography industry. As a result, Plaintiff NoFap has suffered substantial economic and reputational damages, while Plaintiff Rhodes has suffered both economic and non-economic damages, including reputational harm, emotional distress, and interference with his professional and personal life.

416.    As direct and proximate result of defendants' conduct, fewer people are likely to utilize, recommend, link to, discuss, or otherwise engage with NoFap.

417.    The defamation is so pervasive that every time a person searches for NoFap on Google and other search engines, they are likely to encounter disinformation placed by the porn industry entities.

418.    Since 2016, the Porn Industry Defendants have undertaken a coordinated campaign to attempt to influence the Southern Poverty Law Center and other organizations to designate Plaintiff NoFap — a porn-addiction peer-support platform — as a hate group or terrorist organization. This campaign has involved direct lobbying efforts, the strategic placement of disinformation, and the cultivation of sympathetic academics to publish derivative works. Although, to Plaintiffs' knowledge, no organization has designated NoFap as a hate group or terrorist organization, Defendants' efforts have nevertheless severely damaged Plaintiffs' reputations, caused substantial harm, and chilled opportunities. This campaign is particularly distressing to Plaintiff Rhodes — a Jewish individual who has personally experienced antisemitism — and who has been maliciously and falsely portrayed as Nazi-adjacent merely for operating an addiction recovery peer support website.

Exhibit "A"

419.    The Defendants have permanently influenced the field of problematic pornography use research by maligning Plaintiffs to thousands of members of the academic community through conference presentations, trainings, one-on-one communication in-person and through the internet, email listservs, and published papers. As a result, academics are less likely to collaborate with Plaintiffs.

420.    Plaintiffs used to be contacted regularly by therapists, doctors, academics, scientists, journalists, public figures, authors, nonprofit leaders, and entrepreneurs. However, due to Defendants' successful efforts to malign Plaintiff NoFap's reputation, such outreach has become exceedingly rare.

421.    Despite being featured in a TIME Magazine cover story in March 2016, profiled in The New York Times in July 2016, and appearing in CNN's This Is Life with Lisa Ling in September 2019, Plaintiff Rhodes has not participated in a media interview in over six years. Plaintiff NoFap is now rarely mentioned by media outlets—and when it is, coverage is typically negative, echoing porn industry disinformation, and the pieces are usually initiated by Defendant Prause and other porn industry operatives.

422.    As a direct consequence of the pornography industry's coordinated disinformation and retaliation campaign, Plaintiff Rhodes has not spoken at a conference in years, has withdrawn from social media, and has effectively been forced out of public discourse concerning the effects of pornography.

423.    Plaintiffs are far from being the only targets of the Porn Industry Defendants' disinformation campaign, which has included both direct targets and collateral damage among various entities and individuals. To date, plaintiff has identified over seventy individuals who

Exhibit "A"

received similar treatment. This speaks toward the intentionality and outrageousness of Defendants' conduct.

424.    The pornography industry's disinformation campaign has directly and proximately caused Plaintiff NoFap to suffer hundreds of millions of dollars in damages, including declining web traffic, lost productivity, reduced membership, missed partnership opportunities, diminished funding opportunities, and decreased market value and brand equity. Plaintiffs have also suffered reputational harm and erosion of goodwill, which continue to suppress future growth and financial viability.

425.    The pornography industry's disinformation campaign has directly and proximately caused Plaintiff NoFap to incur substantial administrative and legal expenses in attempting to mitigate ongoing attacks.

426.    It is well understood that website traffic tends to decline without regular updates and improvements. The porn industry's campaign has severely burdened Plaintiff NoFap, taking away time and resources away from their ability to run and improve the website. The traffic to NoFap, including its website, subreddit, and other social media pages, steadily increased until around its peak, which is when the porn industry launched its smear campaign. From there, traffic has steadily decreased. According to Google Trends, search volume for NoFap has steadily decreased since the porn industry's disinformation campaign, with current search engine traffic in 2025 being as low as traffic levels around 2013. According to Google Trends, March 2025 search engine traffic for Plaintiff NoFap is approximately 21.7%-29% its all-time peak, depending on the search term utilized.

Exhibit "A"



427.    When other websites link to a site, it increases that site's credibility in the eyes of search engines, which tend to rank higher-authority websites more prominently in search results. Defendant Prause and her collaborators have contacted individuals and organizations who link to or mention NoFap, and others may be deterred from linking after encountering such porn industry disinformation. This has had a downstream effect of not only eliminating valuable sources of web traffic, but also reducing the likelihood that search engines will display NoFap pages in search results for individuals seeking resources on pornography addiction and related issues.

428.    Between 2017-2019, it was not uncommon for 2,000 website forum members to log in on a single day. More recently, that number is often below 650, or approximately 32.5% of 2020 levels. Between 2017-2019, the website forum regularly received over 300 new members per day. In 2024, the forum often received fewer than 50 new members per day, with recent efforts bringing registration up to approximately 140 per day. Website forum posts are also substantially down from often 1,500 per day in 2017-2019 to approximately 450 per day in 2025. Google Analytics data supports this trend of the porn industry disinformation campaign directly corresponding with reduced web traffic for Plaintiff NoFap.

429.    While Plaintiff NoFap has been stretched to a breaking point by the Porn Industry Defendants' campaign, other websites and applications with far less notability and traffic have been able to launch brands addressing pornography use, securing funding and revenue. For example, Adam Singer and Gabe Zichermann reportedly raised $2 million in 2016 from Founders

Fund to launch Onward. Another app, Quittr, reportedly spammed NoFap's subreddit with fake accounts and were quickly able to quickly generate $3 million in annual recurring revenue. Another app, Remojo, reached a $22 million valuation according to its founder. Each of these initiatives had far less reputability and standing than Plaintiff NoFap, which, if unconstrained by Defendants' misconduct, would have been capable of generating substantially greater revenue and value. Plaintiff NoFap is informed and therefore avers that it should be generating revenues in the tens of millions of dollars annually but for Defendants' tortious conduct.

430.    According to various sources, the global age-verification, parental-control, and content-filtering market generates billions of dollars in annual revenue. For example, a senior executive's publicly available LinkedIn profile for the religiously affiliated pornography-filtering software provider Covenant Eyes stated that the company generates more than $30 million per year. Plaintiff NoFap previously published a free porn-blocking browser extension and planned to launch a pornography-filtering service—plans that have never come to fruition due to the conduct of the Defendants.

431.    Websites with the reputability and traffic levels comparable to Plaintiff NoFap's prior to the smear campaign could be valued hundreds of millions of dollars. As a result of the loss in web traffic and reputational harm caused by the pornography industry's disinformation campaign, Plaintiff NoFap has suffered many millions of dollars in damages—including from potential revenue (donations, memberships, advertising, and launching new products and services) and diminished brand value.

432.    The pornography industry's campaign—resulting in decreased usership and web traffic—and its opposition research targeting Plaintiff's volunteers have made it increasingly difficult to recruit new individuals to assist in moderating content on the NoFap website. Further,

Exhibit "A"

any prospective volunteer moderators must be thoroughly vetted because Defendant Prausehave impersonated NoFap users.

433.    Although not wealthy, prior to the porn industry disinformation campaign, Plaintiff Rhodes was financially secure. After the Porn Industry Defendants' disinformation campaign and the resulting continuous legal expenses since 2019 (which, for example, could exceed 20,000 dollars in one month alone), Plaintiff Rhodes has not had health insurance in years, has had utilities temporarily shut off for non-payment, has maxed out credit cards to meet basic living expenses, has taken on side jobs, has overdrawn his bank accounts numerous times (to the extent that one bank closed his accounts), and at one point had to drive DoorDash (with all of his cards maxed and bank accounts overdrawn, he paid for gas to complete the deliveries with his last remaining cash) to afford to buy food for his cats. While Plaintiff Rhodes was in six figures of debt due to legal bills and reduced income caused by the Porn Industry Defendants, those same parties were simultaneously smearing him as a "rich" "profiteer."

434.    Plaintiff Rhodes has experienced significant sleep disruptions as a result of the ongoing conduct of Defendant Prause and her collaborators, which has occurred on a near-daily basis for many years.

435.    Plaintiff Rhodes has been unable to live a normal life as a result of the Defendants' conduct. Though not a celebrity or public figure, he has been subjected to continuous monitoring and opposition research akin to what high-profile individuals might endure—but without any of the financial resources, positive publicity, connections, or protections that public figures may possess. Due to the persistent targeting by Defendant Prause and her collaborators, Plaintiff Rhodes has been effectively forced to abandon social media platforms for years out of concern for his own privacy and the privacy of his friends and family.

Exhibit "A"

436.    As a direct result of Defendants' course of conduct, Plaintiff Rhodes enrolled in a governmental address confidentiality program and has incurred ongoing expenses to maintain the secrecy and security of his residence from Defendant Prause and her collaborators.

437.    There is a legitimate risk that, if Defendants' conduct continues unabated, Plaintiff NoFap will ultimately be forced to shut down or be deplatformed from essential services, software providers, and social media. Plaintiffs have exhausted every reasonable avenue to stop the reputational, economic, and personal harm caused by Defendants. Despite attempts to resolve these matters privately and professionally, Defendants have persisted—if not escalated—in their conduct. Plaintiffs now turn to the judicial system as their only viable path to obtain justice and relief from a campaign of suppression and harassment that continues unabated. This lawsuit seeks to hold Defendants accountable for the irreversible damage they have caused—and to put an end to the pornography industry's disinformation campaign.

Exhibit "A"

12.    **The Pornhub Defendants' Common Enterprise**

438.    Plaintiffs are suing four known Pornhub entities, although Pornhub has allegedly utilized "hundreds of shells located in dozens of jurisdictions" in order to "(a) circumvent tax, money transfer, and pornography laws in the United States and other countries in which MindGeek actually does business; (b) facilitate self-dealing; (c) obscure MindGeek's ownership, business practices, and transfers of money; (d) impede regulatory scrutiny and enforcement; and (e) insulate the [owners] from legal accountability." *Fleites v. MindGeek, No. 2:21-cv-04920-WLH-ADS, Doc. 385, ¶¶ 21, 59 (C.D. Cal. May 23, 2024).*

439.    According to the United States Federal Trade Commission (the "FTC"), various Pornhub entities "have operated as a common enterprise while engaging in the unlawful acts and practices alleged […] owning and operating their adult-video websites, through an interrelated network of companies that have common control and ownership; shared officers, managers, employees, business functions, office space, and email systems; unified advertising; and commingled funds." *United States Federal Trade Commission and the State of Utah Division of Consumer Protection v. Aylo Group Ltd., et al., No. 2:25-cv-00752, Complaint ¶ 32, at 12 (D. Utah filed Sept. 3, 2025)*

440.    To further illustrate the interrelated ownership and control of the Pornhub Defendants named herein, Plaintiffs reference the organizational chart prepared by the FTC in its enforcement action against Aylo Group Ltd. and related entities. In that case, the FTC described the chart as setting forth the "corporate organizational structure … (with the Cyprus entities in orange, the Canadian entities in red, the U.S. entities in blue, and AYLO Billing Limited in green), indicating common ownership under Aylo Holdings S.à.r.l." *United States Federal Trade*

Exhibit "A"

*Commission and the State of Utah Division of Consumer Protection v. Aylo Group Ltd., et al., No.*

*2:25-cv-00752, Complaint ¶ 31, at 12 (D. Utah filed Sept. 3, 2025).*



441.    The Pornhub/Aylo Defendants have themselves acknowledged that they operate as a common enterprise. In recent litigation against an insurance company, ten corporate entities associated with the Pornhub/Aylo Defendants repeatedly referred to themselves collectively as a single, unified "Aylo Group." Those ten plaintiffs included all four Pornhub/Aylo Defendants currently named in the instant lawsuit: Aylo USA Incorporated, Aylo Holdings S.A.R.L., Aylo Global Entertainment Inc., and Aylo Billing Limited. *See 9219-1568 Quebec Inc., et al. v. Sovereign Gen. Ins. Co., No. 500-17-128780-247 (Que. Super. Ct., Dist. of Montreal, Civ. Div.), ¶ 0.1 ("[t]he [p]laintiffs are affiliated companies (hereinafter: [']Aylo Group[']) engaged in the production and distribution of media content, particularly adult-oriented content").*

442.    Taken together, these findings, admissions, and regulatory actions demonstrate that the Pornhub/Aylo Defendants operate as a unified enterprise and are jointly and severally liable for the tortious and unlawful acts alleged herein. The Pornhub/Aylo Defendants may be tried together as alter egos.

Exhibit "A"

443.    In addition, the Pornhub/Aylo Defendants acted in concert with Defendants Prause and Ley. Together, these defendants engaged in a common enterprise directed toward extorting, intimidating and harming Plaintiffs through means of interstate commerce.

444.    Upon information and belief, the Pornhub/Aylo Defendants' common enterprise also includes other affiliated or cooperating entities not yet fully identified in this Complaint who acted in concert to further the unlawful scheme alleged herein. Plaintiffs anticipate that the identities and roles of such additional defendants will be confirmed through discovery, and Plaintiffs expressly reserve the right to amend this Complaint to identify them as Defendants.

**Count I: Racketeering (RICO, 18 U.S.C. § 1962)**

**(Against All Defendants)**

419.    Plaintiffs incorporate the foregoing paragraphs as if set forth at length.

420.    Defendants constitute an enterprise within the meaning of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. §§ 1961 et seq., having systematically engaged in an ongoing pattern of racketeering activity affecting interstate and international commerce.

421.    Relevant to Plaintiffs, Defendants engaged in a pattern of racketeering activity, including but not limited to: distribution of obscene materials through interstate commerce (18 U.S.C. §§ 1461-1465); obstruction of justice (18 U.S.C. § 1503); tampering with a witness, victim or informant (18 U.S.C. § 1512); wire fraud (18 U.S.C. § 1343); retaliating against a witness, victim or informant (18 U.S.C. § 1513); and interference with commerce by threats or violence (18 U.S.C. § 1951).

Exhibit "A"

422.    In broader scope, however, the enterprise further involves peonage, slavery, and trafficking in persons (18 U.S.C. §§ 1581-1592); money laundering (§§ 1956–1957); and child sexual exploitation offenses (18 USC §§ 2251–2252A).

423.    Each Defendant in this action has participated in the enterprise described above.

424.    Plaintiffs have suffered significant harm as a direct result of Defendants' racketeering activities, including financial loss, reputational damage, interference with professional relationships, and suppression of their ability to provide critical services for those suffering from pornography addiction.

425.    The ongoing, coordinated racketeering activities of Defendants constitute a continuing threat of significant harm to Plaintiffs, other recovery peer support groups, sexual exploitation survivors and whistleblowers and critics, and the general public. Because Defendants' conduct was outrageous and done with deliberate disregard for the rights of others, Plaintiffs request an award of treble damages.

WHEREFORE, Plaintiffs respectfully request the Court enter judgment against the Defendants in an amount in excess of the jurisdictional minimum for Allegheny County local rule 1301(1)(a) as follows:

    a.  Awarding treble damages under RICO;

    b.  Issuing injunctive relief, permanently prohibiting the Defendants from continuing their racketeering activities and requiring complete transparency of their corporate and financial activities;

    c.  Awarding Plaintiffs their costs, expenses, and reasonable attorneys' fees incurred in prosecuting this RICO action; and

Exhibit "A"

d.   Ordering comprehensive disclosure and disgorgement of all profits derived from the Defendants' racketeering activities.

**Count II: Unfair Competition under Lanham Act (15 U.S.C. § 1125(a))**

**(Against the Pornhub/Aylo Defendants and Defendants Prause, Ley, and UCLA)**

426.   Plaintiffs incorporate the foregoing paragraphs as if set forth at length.

427.   Plaintiffs maintain and possess a protectable right in their marks.

428.   Defendants repeatedly used Plaintiffs' protected marks in a manner likely to cause confusion, violating 15 U.S.C. § 1125(a)(1)(A).

429.   Defendants' actions and conduct violate 15 U.S.C. § 1125(a)(1)(B).

430.   Defendants engaged in a systematic disinformation campaign, including but not limited to falsely representing Plaintiffs' marks and services, discrediting its website, and misleading the public regarding its mission and operations.

431.   Defendants deliberately engaged in acts of deception, including the use of fraudulent academic publications and defamatory statements designed to harm Plaintiffs' credibility and economic viability.

432.   Defendants engaged in anti-competitive conduct by intentionally targeting those seeking Plaintiffs by diverting web traffic, spreading disinformation, and otherwise suppressing competition.

433.   Defendants' intentional actions caused damage to Plaintiffs' trademark rights through dilution and diminishing its distinctiveness and market recognition.

434.   As a direct and proximate result of Defendants' above actions, Plaintiffs suffered significant financial losses, reputational damage, lost business opportunities, and ongoing harm to their business and professional interests.

Exhibit "A"

435.    Because Defendants' conduct was outrageous and done with deliberate disregard for the rights of others, Plaintiffs request an award of punitive damages.

WHEREFORE, Plaintiffs respectfully request the Court enter judgment against the Defendants in an amount in excess of the jurisdictional minimum for Allegheny County local rule 1301(1)(a) as follows:

e.    Awarding actual, compensatory, treble and/or punitive damages;

f.    Awarding Plaintiffs their costs, expenses, and attorneys' fees incurred in this action;

g.    Issuing injunctive relief prohibiting further deceptive and anti-competitive conduct by Defendants;

h.    All damages permitted by law for Defendants' willful counterfeiting and/or infringement of Plaintiffs' marks; and

i.    Ordering disgorgement of any profits derived from Defendants' unfair competition.

## Count III: Trademark Dilution (15 U.S.C. § 1125(c))

### (Against All Defendants)

436.    Plaintiffs incorporate the foregoing paragraphs as if set forth at length.

437.    Plaintiffs own and/or possess at least one valid and legally protectable mark. The trademark for NoFap is well-known and distinctive.

438.    Defendants used Plaintiffs' trademark without consent to identify goods and/or services that caused a likelihood of confusion to Plaintiffs' commercial interests.

439.    After obtaining its recognized status, Defendants use of Plaintiffs' mark in commercial activities caused dilution of the mark's quality through blurring and/or tarnishment and caused confusion to Plaintiffs' commercial interests.

Exhibit "A"

440.    As a direct and proximate result of Defendants' above actions, Plaintiffs suffered significant financial losses, reputational damage, lost business opportunities, and ongoing harm to their business and professional interests.

441.    Because Defendants' conduct was outrageous and done with deliberate disregard for the rights of others, Plaintiffs request an award of treble damages.

WHEREFORE, Plaintiffs respectfully request the Court enter judgment against the Defendants in an amount in excess of the jurisdictional minimum for Allegheny County local rule 1301(1)(a) as follows:

j.    Awarding actual, compensatory, treble and/or punitive damages;

k.    Awarding Plaintiffs their costs, expenses, and attorneys' fees incurred in this action;

l.    Issuing injunctive relief prohibiting Defendants from continuing the diluting activities;

m.    All damages permitted by law for Defendants' willful conduct; and

n.    Ordering disgorgement of any profits derived from Defendants' conduct.

### Count IV: Trademark Infringement (15 U.S.C. § 1114)

**(Against the Pornhub/Aylo Defendants and Defendants Prause, Ley, and UCLA)**

442.    Plaintiffs incorporate the foregoing paragraphs as if set forth at length.

443.    Plaintiffs own and/or possess a valid and legally protectable mark. The trademark for NoFap is well-known and distinctive.

444.    Defendants used Plaintiffs' trademark without consent to identify goods and/or services that caused a likelihood of confusion to Plaintiffs' commercial interests.

445.    Defendants use of Plaintiffs' mark in commercial activities caused confusion to Plaintiffs' commercial interests.

Exhibit "A"

446.    As a direct and proximate result of Defendants' above actions, Plaintiffs suffered significant financial losses, reputational damage, lost business opportunities, and ongoing harm to their business and professional interests.

447.    Because Defendants' conduct was outrageous and done with deliberate disregard for the rights of others, Plaintiffs request an award of treble damages.

WHEREFORE, Plaintiffs respectfully request the Court enter judgment against the Defendants in an amount in excess of the jurisdictional minimum for Allegheny County local rule 1301(1)(a) as follows:

o.    Awarding actual, compensatory, treble and/or punitive damages;

p.    Awarding Plaintiffs their costs, expenses, and attorneys' fees incurred in this action;

q.    Issuing injunctive relief prohibiting Defendants from continuing the infringing activities;

r.    All damages permitted by law for Defendants' willful conduct; and

s.    Ordering disgorgement of any profits derived from Defendants' conduct.

### Count V: Trade Disparagement

**(Against All Defendants)**

448.    Plaintiffs incorporate by reference all preceding paragraphs as if fully set forth herein.

449.    Plaintiffs operate an organization as addressed above in this complaint.

450.    Defendants engaged in a pattern and practice of publishing false and/or defamatory statements regarding Plaintiffs' organization.

Exhibit "A"

451.    As a direct and proximate result of Defendants' trade disparagement, Plaintiffs' organization has suffered damages, including reputational injury, loss of goodwill, and financial harm.

452.    The conduct of Defendants was intentional, willful, wanton, and committed with reckless or callous disregard for the rights and well-being of Plaintiffs, thereby justifying an award of punitive damages in an amount to be determined at trial.

WHEREFORE, Plaintiffs respectfully request the Court enter judgment against the Defendants in an amount in excess of the jurisdictional minimum for Allegheny County local rule 1301(1)(a).

## **Count VI: Breach of Contract**

### **(Against Defendant Prause)**

453.    Plaintiffs incorporate by reference all preceding paragraphs as if fully set forth herein.

454.    Plaintiff Rhodes and Defendant Prause entered into a valid and binding contractual agreement, the Non-Disparagement Agreement, executed on February 26, 2021. A true and correct copy of this agreement is attached to this Complaint as Exhibit "A".

455.    At all times relevant to this matter, Plaintiffs met and fulfilled all of their obligations per the agreement.

456.    Per the agreement, Defendant Prause agreed to refrain from making disparaging statements about Plaintiffs, their websites, organizations, products or services, trademarks, employees, contractors, team members, family members, and other affiliated entities.

Exhibit "A"

457.    Defendant Prause breached the agreement by repeatedly and intentionally publishing and disseminating negative, disparaging, and defamatory statements regarding Plaintiffs.

458.    Defendant Prause's breaches of the Non-Disparagement Agreement have directly and proximately caused significant harm and financial losses to Plaintiffs.

459.    Plaintiffs have suffered and continue to suffer damages, including economic loss, loss of business opportunities, and severe reputational injury as a direct result of Defendant Prause's breaches of the Non-Disparagement Agreement.

460.    Defendant Prause's breaches of the Non-Disparagement Agreement constitute material violations, entitling Plaintiffs to actual, compensatory, and consequential damages in an amount exceeding the jurisdictional minimum, as well as injunctive relief prohibiting further breaches and requiring removal of the disparaging statements.

WHEREFORE, Plaintiffs respectfully request the Court enter judgment against the Defendants in an amount in excess of the jurisdictional minimum for Allegheny County local rule 1301(1)(a).

## Count VII: Fraudulent Inducement

### (Against Defendants Prause and Ley)

461.    Plaintiffs incorporate by reference all preceding paragraphs as if fully set forth herein.

462.    During negotiations leading to the execution of the Non-Disparagement Agreement (Exhibit "A"), Defendant Prause, in collaboration with Defendant Ley, made false representations regarding her intention and willingness to fully comply with the obligations of the Agreement.

Exhibit "A"

463. Defendant Prause made knowingly false statements to Plaintiffs during the settlement negotiations.

464. Defendant Prause knew and/or should have known that her false statements would induce Plaintiffs and/or a reasonable person to rely upon their statements.

465. Plaintiffs relied upon defendants' representations, which resulted in Plaintiffs incurring damages.

466. During settlement negotiations leading to the execution of the Non-Disparagement Agreement, Defendant Prause made false representations regarding her intention and willingness to fully comply with the obligations of the Agreement.

467. Upon information and belief, Defendant Prause knew these representations regarding her future compliance were false and made such representations to fraudulently induce Plaintiffs into entering into the Non-Disparagement Agreement.

468. Plaintiffs reasonably relied on Defendant Prause's representations of future compliance and good faith when entering the agreement.

469. Upon information and belief, Defendant Prause never intended to comply with her contractual obligations and immediately began a pattern and practice of breaching the Non-Disparagement Agreement repeatedly.

470. The mediation sessions leading to the execution of the Non-Disparagement Agreement were contractually agreed upon to be confidential.

471. Upon information and belief, during the mediation session, Defendants Prause and Ley communicated with one another and exchanged confidential information pertaining to settlement negotiations.

Exhibit "A"

472.    During the mediation process, Defendants Prause and Ley both posted on social media about the ongoing mediation, upon information and belief, to pressure Plaintiffs into entering into an agreement under terms more favorable to them.

473.    As a direct and proximate result of Defendants Prause and Ley's fraudulent inducement, Plaintiffs have sustained substantial harm, including reputational damage, emotional distress, financial losses, and additional damages exceeding the jurisdictional minimum, with the exact amount to be proven at trial.

WHEREFORE, Plaintiffs respectfully request the Court enter judgment against the Defendants in an amount in excess of the jurisdictional minimum for Allegheny County local rule 1301(1)(a) as follows:

    a.    Awarding actual, consequential, and punitive damages;

    b.    Granting permanent injunctive relief holding Defendant Prause responsible to fully comply with all terms of the Non-Disparagement Agreement;

    c.    Awarding Plaintiffs their costs and attorneys' fees incurred in this action; and

    d.    Granting such further relief as the Court seems just and proper.

## Count VIII: Tortious Interference

### (Against All Defendants)

474.    Plaintiffs incorporate by reference all preceding paragraphs as if fully set forth herein.

475.    Plaintiffs entered into a contractual agreement with Defendant Prause, Exhibit "A".

476.    All Defendants had knowledge and/or should have known that Plaintiffs and Defendant Prause entered into the above agreement.

Exhibit "A"

477.    Defendants intentionally interfered with the contractual agreement between Plaintiffs and Defendant Prause.

478.    Plaintiffs maintained existing and prospective relationships with paying members, professional collaborators, and other entities critical to their operations and success.

479.    Defendants knowingly interfered with these relationships through intentional, malicious, and wrongful acts, including but not limited to disseminating false, defamatory, and disparaging statements about Plaintiffs, encouraging others to cease doing business with Plaintiffs, and damaging Plaintiffs' reputation through coordinated disinformation campaigns.

480.    Defendants acted without privilege or justification, specifically intending to harm Plaintiffs' professional relationships and opportunities.

481.    As a direct and proximate result of Defendants' intentional and malicious interference, Plaintiffs have suffered substantial economic damages, loss of opportunities, and reputational harm exceeding the jurisdictional minimum, with exact amounts to be proven at trial.

WHEREFORE, Plaintiffs respectfully request the Court enter judgment against the Defendants in an amount in excess of the jurisdictional minimum for Allegheny County local rule 1301(1)(a) as follows:

e.    Awarding actual, compensatory, and punitive damages;

f.    Awarding Plaintiffs their costs, expenses, and attorneys' fees incurred in this action;

g.    Issuing injunctive relief prohibiting further tortious interrereference;

h.    Such other and further relief as the Court seems just and proper.

Exhibit "A"

## Count IX: Defamation Per Se and Per Quod

### (Against All Defendants)

482.    Plaintiffs incorporate by reference all preceding paragraphs as if fully set forth herein.

483.    Defendants published false and defamatory statements pertaining to Plaintiffs in a journal published by Defendant Taylor & Francis, on the Internet (including websites, social media, and various online forums), and through other outlets. These false statements included, but are not limited to, the assertions that:

   a.   Plaintiff Rhodes is a criminal, including accusations that he engaged in hacking, financial fraud, stalking, domestic terrorism, sexual assault, and attempted murders;

   b.   Plaintiff NoFap is a hate group and Plaintiff Rhodes is its leader, endorsing violence, bigotry, and extremism;

   c.   Plaintiff NoFap is a designated terrorist organization and Plaintiff Rhodes is its leader;

   d.   Plaintiffs endorse violence, including claims that their platforms contain a disproportionate amount of violence-themed posts;

   e.   Plaintiff Rhodes is a fraudster who fabricated struggling with excessive pornography use for ulterior motives, such as fame and money; and

   f.   Plaintiff Rhodes is severely mentally ill, violent, abusive to women, and dangerous.

484.    In addition to these false statements, Defendants further made other false and defamatory statements against Plaintiffs.

485.    Defendants purposely intended to cause harm to Plaintiffs in Pennsylvania.

Exhibit "A"

486.    In furtherance of this shared purpose, Defendants engaged in a campaign to intentionally defame Plaintiffs over the course of years that included targeting him in Pennsylvania.

487.    These statements are *per se* defamatory as the statements impute criminal offense, loathsome disease, business misconduct and/or serious sexual misconduct.

488.    Defendants published these defamatory statements through both written and oral means.

489.    Plaintiffs aver that these false statements have been understood by the community including prospective business partners, supporters, and community members as defamatory and relating directly to Plaintiffs.

490.    These false statements have harmed and continue to harm Plaintiffs' reputations in the community including prospective business partners, supporters, and community members—from associating with or dealing with Plaintiffs.

491.    These false statements have damaged Plaintiffs' role in providing legitimate peer support resources to individuals experiencing behavioral addiction or otherwise problematic pornography use.

492.    These false statements have damaged Plaintiffs' standing in the community and produced a negative impression resulting in damage to Plaintiffs' personal and professional relationships.

493.    Defendants have published and continue to publish the false statements without Plaintiffs' authorization or consent, and in direct violation of the Non-Disparagement Agreement.

494.    The false statements constitute libel per se because they falsely accuse Plaintiffs of serious criminal conduct, hate-based or terroristic behavior, and other unethical actions that

Exhibit "A"

injuriously affect Plaintiffs' businesses, names, and trades. By their very nature, the false statements also impute that Plaintiffs engage in morally reprehensible or disqualifying conduct, requiring no extrinsic evidence to establish their defamatory meaning.

495.    Defendants made these statements with the knowledge of their falsity and/or with reckless disregard for their truth or falsity.

496.    As a direct and proximate result of the false statements, Plaintiffs have suffered significant reputational harm and sustained actual damages, including but not limited to: (a) Loss of capital, revenue, and other business opportunities; (b) Decreased productivity and disruption of day-to-day business; (c) Expenses incurred to address and counteract the defamatory claims; (d) Loss of intangible assets such as goodwill and professional relationships; (e) Emotional distress and associated harms. Plaintiffs estimate these damages to exceed the jurisdictional minimum, with the precise amount to be proven at trial.

497.    These false and defamatory statements are not subject to any privilege.

498.    Plaintiffs request a permanent injunction halting the continued dissemination of these false and defamatory statements.

WHEREFORE, Plaintiffs respectfully request the Court enter judgment against the Defendants in an amount in excess of the jurisdictional minimum for Allegheny County local rule 1301(1)(a) as follows:

a.  Compensatory damages, including general and special damages, in an amount to be proven at trial;

b.  Punitive damages in an amount sufficient to deter such egregious conduct;

c.  Injunctive and equitable relief as described herein;

d.  Pre- and post-judgment interest as allowed by law;

Exhibit "A"

e.    Attorneys' fees and costs of suit where permitted; and

f.    Such other relief as the Court may deem just and proper under the circumstances.

### Count X: Publicity Placing Person in False Light

**(Against All Defendants)**

499.    Plaintiffs incorporate by reference all preceding paragraphs as if fully set forth herein.

500.    Defendants made and/or published erroneous and/or false statements related to plaintiffs that were widely disseminated to the public at large.

501.    These erroneous and/or false statements were made specifically identifying plaintiffs as the subject of the statements.

502.    These erroneous and/or false statements placed Plaintiffs in a "false light" in that any reasonable person would find the same offensive.

503.    The statements published were false.

504.    Through the false statements, Defendants have given publicity (i.e. widespread dissemination on the Internet) to matters concerning Plaintiff Rhodes that unreasonably place Plaintiff Rhodes in a false light before the public as the publications create the false impression that Plaintiff Rhodes maintains and promotes extremist values and engages in criminal activity.

505.    The false statements contain such major misrepresentations and create such a false impression of Plaintiff Rhodes' character, history, activities, and beliefs that serious offense may reasonably be expected to be taken by a reasonable person in his position.

506.    As a direct and proximate result of Defendants' above actions, Plaintiffs suffered significant financial losses, reputational damage, lost business opportunities, and ongoing harm to their business and professional interests.

Exhibit "A"

507.    Because Defendants' conduct was outrageous and done with deliberate disregard for the rights of others, Plaintiffs request an award of treble and/or punitive damages.

WHEREFORE, Plaintiffs respectfully request the Court enter judgment against the Defendants in an amount in excess of the jurisdictional minimum for Allegheny County local rule 1301(1)(a).

### Count XI: Publicity Given to Private Life

**(Against All Defendants)**

508.    Plaintiffs incorporate by reference all preceding paragraphs as if fully set forth herein.

509.    Defendants disclosed and published private matters related to Plaintiff Rhodes to the public at large.

510.    The disclosure of private information was and/or could be construed as highly offensive to a reasonable person.

511.    No public interest exists relative to Defendants' disclosure and/or publication of Plaintiff Rhodes' private matters.

512.    At various times and for malicious purposes, Defendants obtained private and highly personal material pertaining to Plaintiff Rhodes. These alleged facts and items included, but were not limited to, Plaintiff Rhodes' personal address, the address of Plaintiff Rhodes' family members, personal photographs from his teenage years, medical records, the names of Plaintiff Rhodes' former romantic partners, partially unclothed photographs of Plaintiff Rhodes, obtained via opposition research.

513.    As a direct and proximate result of Defendants' actions, Plaintiff Rhodes has suffered: (1) Public humiliation and severe emotional distress, as his private matters and

175

Exhibit "A"

manipulated statements were thrust onto the public stage; (2) Damage to his personal reputation and professional opportunities, as prospective associates, colleagues, partners, or supporters encountered these skewed portrayals; and (3) Other losses and special damages, the exact amount of which shall be demonstrated at trial.

514.    Because Defendants' conduct was outrageous and done with deliberate disregard for the rights of others, Plaintiff Rhodes requests an award of treble and/or punitive damages.

WHEREFORE, Plaintiff Rhodes respectfully requests the Court enter judgment against the Defendants in an amount in excess of the jurisdictional minimum for Allegheny County local rule 1301(1)(a).

<u>**Count XII: Intrusion into Private Affairs**</u>

**(Against the Pornhub/Aylo Defendants and Defendants Prause, Ley, and UCLA)**

515.    Plaintiffs incorporate by reference all preceding paragraphs as if fully set forth herein.

516.    Defendants, without invitation or consent, intentionally and/or recklessly intruded upon Plaintiff Rhodes' solitude and/or seclusion of his private life.

517.    Defendants' intrusion would be deemed highly offensive to a reasonable person.

518.    At all times relevant, Plaintiff Rhodes had a reasonable expectation of privacy in his personal life, communications, and sensitive personal information—including, but not limited to, his private correspondence, medical records, family relationships, social media usage, and other intimate or confidential details.

519.    Defendants engaged in a coordinated campaign to intrude upon Plaintiff Rhodes' private affairs by monitoring, data mining, or otherwise accessing and collecting personal and confidential information about him without authorization or justification.

Exhibit "A"

520.    Defendants used the information obtained to portray false and humiliating narratives; tracking, surveilling, or monitoring Plaintiff Rhodes' online activities or private communications to cause Plaintiff Rhodes harm.

521.    As a direct and proximate result of Defendants' actions, Plaintiff Rhodes has suffered: (1) Public humiliation and severe emotional distress, as his private matters and manipulated statements were thrust onto the public stage; (2) Damage to his personal reputation and professional opportunities, as prospective associates, colleagues, partners, or supporters encountered these inaccurate portrayals; and (3) Other losses and special damages, the exact amount of which shall be demonstrated at trial.

522.    Because Defendants' conduct was outrageous and done with deliberate disregard for the rights of others, Plaintiff Rhodes requests an award of treble and/or punitive damages.

WHEREFORE, Plaintiff Rhodes respectfully requests the Court enter judgment against the Defendants in an amount in excess of the jurisdictional minimum for Allegheny County local rule 1301(1)(a) as follows:

a.    Compensatory damages, including general, special, and consequential damages, in an amount according to proof at trial;

b.    Punitive damages to punish and deter such egregious behavior;

c.    Injunctive and equitable relief, including an order prohibiting any further unauthorized collection, surveillance, or dissemination of Plaintiff Rhodes' private information;

d.    Attorneys' fees and costs of suit, where permitted by law; and

e.    Such other and further relief as the Court deems just and proper.

Exhibit "A"

## Count XIII: Intentional Infliction of Emotional Distress

### (Against All Defendants)

523.    Plaintiffs incorporate by reference all preceding paragraphs as if fully set forth herein.

524.    Defendants intentionally conspired to fabricate false and defamatory accusations against Plaintiffs for the purposes of harming their reputation and standing in the community.

525.    Defendants conduct was extreme and outrageous.

526.    The above-detailed acts and omissions by Defendants—including but not limited to (a) disseminating fabricated and defamatory allegations against Plaintiffs; (b) conspiring with an estranged and unstable biological family member of Plaintiff Rhodes; (c) repeatedly falsely accusing Plaintiff Rhodes of serious crimes; (d) filing false administrative and law-enforcement reports targeting Plaintiff Rhodes; (e) closely surveilling, data-mining, and conducting extensive opposition research on Plaintiff Rhodes; (f) relaying disparaging and defamatory statements about Plaintiff Rhodes to his associates and the public up to dozens of times per day; (g) coordinating efforts with each other and/or third parties to undermine Plaintiff Rhodes' reputation and professional standing; and (h) relaying celebratory messages concerning the death of Gary Wilson to his friend Plaintiff Rhodes—constitutes extreme and outrageous conduct.

527.    Defendants' actions were undertaken with the intent to cause, or in reckless disregard of a substantial probability of causing severe emotional distress to Plaintiff Rhodes.

528.    It was highly foreseeable that a causal connection would exist between Defendants' deliberate and malicious targeted harassment of Plaintiff Rhodes and his resulting severe emotional distress.

Exhibit "A"

529.    As a direct and proximate result of Defendants' extreme and outrageous conduct, Plaintiff Rhodes has suffered—and continues to suffer—severe emotional pain and suffering, humiliation, anxiety, depression, reputational harm, and other damages. Plaintiff Rhodes has also incurred substantial economic losses, loss of opportunities, and other injuries, including reputational harm.

530.    The conduct of Defendants was intentional, willful, wanton, and committed with reckless or callous disregard for the rights and well-being of Plaintiff Rhodes, thereby justifying an award of punitive damages in an amount to be determined at trial.

WHEREFORE, Plaintiff Rhodes respectfully requests the Court enter judgment against the Defendants in an amount in excess of the jurisdictional minimum for Allegheny County local rule 1301(1)(a).

## Count XIV: Civil Conspiracy

### (Against All Defendants)

531.    Plaintiffs incorporate by reference all preceding paragraphs as if fully set forth herein.

532.    Defendants entered into an agreement, understanding, or concerted action intended to harm Plaintiffs by engaging in defamatory, fraudulent, and otherwise tortious conduct.

533.    Specifically, the Defendants conspired to target Plaintiffs with tortious conduct, including to cause reputational and economic harm to Plaintiffs.

534.    Each Defendant committed one or more overt acts in furtherance of the conspiracy, including but not limited to: conducting coordinated opposition research on Plaintiffs; publishing and disseminating false, defamatory, and contract-breaching disparaging statements; and actively participating in efforts to suppress Plaintiffs' organization.

Exhibit "A"

535.    Defendants acted with malicious intent, specifically intending to cause Plaintiffs harm, injury, and financial loss through coordinated, deliberate efforts.

536.    As a direct and proximate result of Defendants' civil conspiracy, Plaintiffs suffered substantial damages, including economic losses, loss of business opportunities, severe reputational injury, emotional distress, and other compensable injuries exceeding the jurisdictional minimum, with exact amounts to be proven at trial.

WHEREFORE, Plaintiffs respectfully request the Court enter judgment against the Defendants in an amount in excess of the jurisdictional minimum for Allegheny County local rule 1301(1)(a) as follows:

    a.    Awarding actual, compensatory, and punitive damages jointly and severally;

    b.    Awarding Plaintiffs their costs and attorneys' fees incurred in prosecuting this action;

    c.    Granting injunctive relief requiring Defendants to cease their ongoing conspiracy, remove all defamatory and contract-breaching disparaging statements, and prohibit further dissemination of such statements; and

    d.    Such further relief as the Court deems just and proper.

### Count XV: Gross Negligence and Negligence

**(Against All Defendants)**

537.    Plaintiffs incorporate by reference all preceding paragraphs as if fully set forth herein.

538.    As licensed psychologists, Defendants Prause and Ley owed a professional duty of care to exercise reasonable judgment, avoid foreseeable harm, and refrain from conduct that foreseeably inflicts emotional or reputational injury on others, including Plaintiffs. They breached

Exhibit "A"

that duty by engaging in coordinated harassment, defamation, and exploitation of vulnerable individuals for professional or commercial advantage.

539.    The Pornhub/Aylo Defendants owed a duty of care to refrain from negligently supporting, funding, or coordinating campaigns of harassment and defamation through agents or collaborators acting on their behalf. Despite being aware of Defendants Prause and Ley's longstanding pattern of targeting industry critics with false and defamatory claims, Pornhub/Aylo negligently enabled, financed, and amplified their activities, thereby creating a foreseeable and substantial risk of harm to Plaintiffs.

540.    Defendant Taylor & Francis, as a large academic publisher, owed a duty to exercise reasonable care in enforcing its ethics policies, to prevent the publication of falsified material masquerading as academic research, and to act upon credible notice of misconduct. Defendant Taylor & Francis breached that duty by publishing and continuing to host a data-falsified article co-authored by Defendants Prause and Ley that defamed Plaintiffs, ignored clear evidence of data falsification and other ethical breaches, and refused to retract the publication or even require the listed authors to disclose conflicts of interest.

541.    Defendant UCLA owed a duty of reasonable care to Plaintiff Rhodes and other foreseeable victims of Defendant Prause's conduct to exercise due diligence in hiring, retaining, and supervising its employees and contractors, and to prevent foreseeable misuse of its institutional resources and credibility to cause harm.

542.    Defendant UCLA breached its duty by hiring, retaining, and failing to supervise Defendant Prause despite her prior criminal conviction for "domestic violence-violation of protection order" arising from her physical stalking of a student while employed as a faculty member at Idaho State University, as well as documented harassment of colleagues and members

Exhibit "A"

of the public and an ongoing pattern of instability and unethical conduct. Upon information and belief, Defendant UCLA either knew or should have known of these red flags but nevertheless permitted Defendant Prause to use the university's name, facilities, and institutional authority to advance the pornography industry's interests, including by engaging in harassment, defamation, and coordinated attacks against industry targets, thereby enabling foreseeable harm and reputational damage to Plaintiffs.

543.    Defendant Prause, at times relevant herein, acted as an agent of Defendant UCLA and performed the acts described herein within the scope of her employment.

544.    As a direct and proximate result of Defendants' negligence, Plaintiff Rhodes has suffered severe emotional distress, humiliation, reputational harm, and related economic losses, and Plaintiff NoFap has suffered damages, including reputational injury, loss of goodwill, and financial harm exceeding the jurisdictional minimum.

545.    Defendants' conduct further constituted gross negligence, evidencing a reckless and conscious disregard for Plaintiffs' rights and well-being and justifying an award of punitive damages.

WHEREFORE, Plaintiffs respectfully request the Court enter judgment against the Defendants in an amount in excess of the jurisdictional minimum for Allegheny County local rule 1301(1)(a) as follows:

a.    Actual and compensatory damages in an amount to be determined at trial;

b.    Punitive damages for gross negligence;

c.    Costs of suit, expenses, and attorneys' fees as permitted by law; and

d.    Such other and further relief as the Court deems just and proper.

Exhibit "A"

### Count XVI: Negligent Hiring

**(Against Defendant UCLA)**

546.    Plaintiffs incorporate by reference all preceding paragraphs as if fully set forth herein.

547.    Defendant UCLA owed a duty of reasonable care to Plaintiffs and other foreseeable victims of its employees' conduct to exercise due diligence in hiring, supervising, and retaining its staff, agents, and contractors, and prevent foreseeable misuse of its institutional name, resources, and authority to cause harm.

548.    Defendant UCLA breached this duty by hiring, retaining, and failing to adequately supervise Defendant Prause despite her prior criminal conviction, documented harassment of at least one colleague and various individuals not associated with Defendant UCLA, and longstanding pattern of instability and unethical conduct that were either known or readily discoverable through ordinary diligence.

549.    Upon information and belief, Defendant UCLA received multiple credible complaints and warnings from at least one colleague, journalists, and members of the public concerning Defendant Prause's misconduct and misuse of university resources yet failed to take appropriate disciplinary or corrective action.

550.    Defendant UCLA further breached its duty by allowing Defendant Prause to continue using university facilities, digital infrastructure, and institutional credibility to advance pornography industry interests, engage in harassment and defamation, and publish falsified, fraudulent, and misleading academic work.

Exhibit "A"

551.    Defendant UCLA failed to enforce or monitor compliance with its ethics, professional conduct, and Institutional Review Board (IRB) standards, despite clear notice that Defendant Prause had repeatedly violated them.

552.    Defendant UCLA's negligent hiring, supervision, and retention of Defendant Prause created a foreseeable risk that she would misuse her institutional position to inflict reputational, emotional, and economic harm on Plaintiffs and others.

553.    Defendant Prause, at times relevant herein, acted as an agent of Defendant UCLA and performed the acts described herein within the scope of her employment.

554.    As a direct and proximate result of Defendant UCLA's negligence, Plaintiff Rhodes suffered severe emotional distress, reputational injury, and related financial losses, and Plaintiff NoFap LLC suffered reputational and economic harm.

WHEREFORE, Plaintiffs respectfully request the Court enter judgment against the Defendants in an amount in excess of the jurisdictional minimum for Allegheny County local rule 1301(1)(a) as follows:

   a.    Actual and compensatory damages in an amount to be determined at trial;

   b.    Costs of suit, expenses, and attorneys' fees as permitted by law; and

   c.    Such other and further relief as the Court deems just and proper.

Exhibit "A"

## Count XVII: Declaratory Judgment

### (Against All Defendants)

555.    Plaintiffs incorporate by reference all preceding paragraphs as if fully set forth herein.

556.    An actual, substantial, and immediate controversy exists between Plaintiffs and Defendants regarding their respective rights, obligations, and liabilities under the Non-Disparagement Agreement executed on February 26, 2021.

557.    Pursuant to the Non-Disparagement Agreement, Defendant Prause expressly agreed to refrain from making any disparaging statements about Plaintiff Rhodes, his websites, products or services, trademarks, employees, contractors, team members, family members, or affiliated entities. Exhibit "A".

558.    Despite this clear obligation, Defendant Prause has repeatedly and continuously breached this Non-Disparagement Agreement, publishing disparaging statements, including defamatory allegations targeting Plaintiffs designed to damage Plaintiffs' reputations.

559.    Defendant Ley, the Pornhub/Aylo Defendants, Defendant Taylor & Francis, and Defendant UCLA have knowingly conspired with, facilitated, benefited from, or otherwise participated in Defendant Prause's breaches of the Non-Disparagement Agreement, amplifying these disparaging statements through publications, social media, and other means, causing significant harm to Plaintiffs.

560.    Plaintiffs seek a judicial declaration clarifying their rights under the Non-Disparagement Agreement, specifically declaring:

　　　　a.    That Defendant Prause materially breached the Non-Disparagement Agreement;

Exhibit "A"

b.  That Defendants Ley, Taylor & Francis, UCLA, and the Pornhub/Aylo Defendants facilitated, conspired, or otherwise participated in Defendant Prause's breaches of the Non-Disparagement Agreement;

c.  That Plaintiffs are excused from any further performance under the Non-Disparagement Agreement due to the nature and severity of Defendant Prause's repeated breaches;

d.  Despite Plaintiffs being excused from further performance, Defendant Prause remains obligated to comply with all terms and obligations contained within the Non-Disparagement Agreement;

e.  That Plaintiffs are entitled to injunctive relief compelling Defendants and their collaborators to cease further breaches, remove and delete previously published disparaging statements, and prohibit future disparaging publications or statements violating the Non-Disparagement Agreement;

f.  Any other relief the Court deems appropriate, including costs and attorneys' fees incurred in obtaining this declaratory judgment.

### Count XVIII: Injunction

### (Against All Defendants)

561.  Plaintiffs incorporate by reference all preceding paragraphs as if fully set forth herein.

562.  Plaintiffs request written retractions of all prior false and defamatory statements.

563.  Plaintiffs request removal of all prior statements determined by this Court to have violated the Non-Disparagement Agreement by the Defendants or third parties in collaboration with the Defendants.

Exhibit "A"

564.    Plaintiffs request an order enjoining and restraining Defendants from directly or indirectly committing further breaches of the Non-Disparagement Agreement and to order Defendants issue retractions to all publishers of prior breaches of the Non-Disparagement Agreement.

## PRAYER

WHEREFORE, Plaintiffs Alexander Rhodes and NoFap LLC demand judgment against Defendants Aylo Holdings S.A.R.L., Aylo USA Incorporated, Aylo Global Entertainment Incorporated, Aylo Billing Limited, Nicole Prause, David Ley, Taylor & Francis Group, and University of California Los Angeles as follows:

(a)    Plaintiffs request declaratory judgment finding that Defendant Prause breached the Non-Disparagement Agreement executed in the Western District of Pennsylvania, and further declaring that Defendant Prause, Defendant Ley, the Pornhub/Aylo Defendants, Defendant Taylor & Francis, and Defendant UCLA conspired, facilitated, or otherwise participated in breaches of contract, and clarifying Plaintiffs' rights and Defendants' obligations under the Non-Disparagement Agreement;

(b)    Plaintiffs request injunctive relief prohibiting Defendant Prause from disseminating any statements that violate the Non-Disparagement Agreement, including disparaging statements identifying, describing, or alluding to Plaintiff NoFap, Plaintiff Rhodes, his family members, employees, business partners, attorneys, agents, representatives, affiliated entities, or others protected by the Non-Disparagement Agreement;

Exhibit "A"

(c)      Plaintiffs request injunctive relief compelling Defendants, their agents, representatives, employees, and all persons or entities acting in concert or participation with them, to remove, delete, retract, or otherwise cause the removal or deletion of any previously published statements that violate the Non-Disparagement Agreement, including statements published directly or indirectly through any third-party platforms, collaborators, or intermediaries;

(d)      Plaintiffs request declaratory judgment finding that the Defendants have published false, defamatory, and damaging statements regarding Plaintiff Rhodes and Plaintiff NoFap, and further declaring these statements defamatory per se, thereby entitling Plaintiffs to appropriate injunctive and monetary relief;

(e)      Plaintiffs request declaratory judgment finding that Defendants have engaged in invasion of privacy, trademark dilution, intentional infliction of emotional distress, tortious interference, and other tortious conduct alleged herein, thereby entitling Plaintiffs to appropriate injunctive and monetary relief;

(f)      Actual, compensatory, and punitive damages, jointly and severally against Defendants, in an amount exceeding the jurisdictional minimum, with the exact amount to be proven at trial;

(g)      Plaintiffs request recovery of costs, reasonable attorney fees, and pre- and post-judgment interest at the maximum rate permitted by law;

(h)      For any and all other relief to which the Court determines Plaintiffs are entitled.

Exhibit "A"

**TRIAL BY JURY DEMANDED.**

Respectfully submitted,

_____

David M. Kobylinski (Pa. I.D. No. 92233)

*Counsel for Plaintiffs*

Dated:

Exhibit "A"

IN THE COURT OF COMMON PLEAS
OF ALLEGHENY COUNTY, PENNSYLVANIA

| | | |
|---|---|---|
| Alexander Rhodes, et al., | ) | GD-24-013043 |
| | ) | |
| | ) | **AMENDED** COMPLAINT |
| Plaintiffs, | ) | |
| v. | ) | |
| | ) | |
| Aylo Holdings S.A.R.L., (d/b/a Pornhub), et al., | ) | **JURY TRIAL DEMANDED** |
| | ) | |
| Defendants. | ) | |
| | ) | |
| | ) | |
| | ) | Filed on behalf of: Plaintiffs. |
| | ) | |
| | ) | COUNSEL OF RECORD FOR THE PARTY |
| | ) | |
| | ) | David M. Kobylinski, Esquire |
| | ) | Pa. I.D. No. 92233 |
| | ) | dave@koby.law |
| | ) | dave@koby.law |
| | ) | |
| | ) | Peter T. Kobylinski, Esquire |
| | ) | Pa. I.D. No. 309832 |
| | ) | pete@koby.law |
| | ) | pete@koby.law |
| | ) | |
| | ) | 304 Ross Street, Suite 510 |
| | ) | Pittsburgh, PA 15219 |
| | ) | 412-281-6600 |

i

IN THE COURT OF COMMON PLEAS
OF ALLEGHENY COUNTY, PENNSYLVANIA

| | | |
|---|---|---|
| Alexander Rhodes, et al., | ) | GD-24-013043 |
| | ) | |
| | ) | |
| Plaintiffs, | ) | |
| v. | ) | **JURY TRIAL DEMANDED** |
| | ) | |
| Aylo Holdings S.A.R.L~~.,~~. (d/b/a | ) | |
| Pornhub), et al., | ) | |
| | ) | |
| Defendants. | | |

**COMPLAINT**

Plaintiffs Alexander Rhodes and NoFap LLC, through counsel, ~~avers~~aver as follows:

**1.    Preliminary Statement**

1.      The world's largest pornography company conspired with others to intimidate and silence its targets through an illegal conspiracy that has turned Alexander Rhodes' life into a living nightmare.

2.      While falsely presenting itself as a sex positive and legal adult media business, Pornhub is a criminal racketeering operation that knowingly distributed illegal content hundreds of millions of times. It previously has been indicted and sued for proliferating videos of underaged individuals engaged in sexual acts as well as other videos of non-consensual sex.

3.      In or around 2015, Pornhub turned its sight on Alexander Rhodes and his organization NoFap LLC. NoFap LLC is a peer-support organization for persons affected by pornography addiction.

4.      To do so, Pornhub acted through its shills and professional mouthpieces, including Defendants David Ley, Ph.D. and Nicole Prause, Ph.D. These individuals portray themselves as

ii

"scientists" on the cutting of forefront of sexuality; however, their "science" is a guise to mask porn industry disinformation and attack its targets.

5.      However, this is not a case about "science" and whose "science" is right. It is not "science" to falsely claim someone killed a dog or engaged in a mass shooting, domestic terrorism, or financial fraud. It is not "science" to falsely accuse someone of stalking or attempted murders. It is not "science" to interfere with another's business, breach a contract, or to undermine another's trademark rights. Defendants did all of this and more, to Plaintiffs countless times.

6.      What Defendants have done to Plaintiffs is not accidental. It is an intentional playbook they have used many other times to target many other people. Defendants did this to Gary Wilson, a cohort of Plaintiffs who also devoted his life to addressing pornography addiction and helping others affected by the same. After years of being targeted, on May 20, 2021, Gary Wilson took his own life. Following this tragedy, Defendant Prause celebrated Mr. Wilson's death publicly and in despicable fashion, literally gloating about the same.

7.      Defendants have also engaged in precisely the same type of defamatory attacks and false accusations against Laila Mickelwait, founder of Traffickinghub and the Justice Defense Fund. Ms. Mickelwait exposed Pornhub's illegal content, including that of minors and other forced sexual interactions.

8.      Defendants appear to have a "script," and they see no need to deviate from the same. Indeed, this lawsuit constitutes the second time Plaintiffs have had to come to court. Given Defendants' determined recalcitrance, an award of punitive damages is being sought in this case.

iii

**TABLE OF CONTENTS**

1.    Preliminary Statement .......................................................................................... ii

2.    Parties and Venue ................................................................................................ 1

3.    Material and Operative Facts .............................................................................. 2

    *Overview* ................................................................................................................ 2

    *Background: The Plaintiffs* .................................................................................. 16

    *Background of the Pornhub/Aylo Defendants* ..................................................... 22

    *Pornhub and Porn Addiction* ............................................................................... 25

    *Background of Defendant Nicole Prause* ............................................................. 26

        *Defendant Prause's Background at Idaho State University* ............................. 29

        *Defendant Prause's First Job with Defendant UCLA* ..................................... 31

    *Prior Complaints Submitted to Defendant UCLA by Third Parties* ...................... 31

        *Prause's Second Job with Defendant UCLA* ................................................... 32

        *Defendant Prause and the Criminal Trafficking Enterprise OneTaste* ........... 34

    *Background of Defendant David Ley* .................................................................... 36

    *Background of Gary Wilson* ................................................................................ 38

    *The Extensive Targeting of Wilson* ...................................................................... 39

    *Real Your Brain on Porn* ..................................................................................... 41

    *Gary Wilson's Death* ........................................................................................... 45

4.    Background of The Prior Litigation ..................................................................... 51

    *Early Interactions Between Plaintiffs and Defendants Ley and Prause* ............... 51

    *Defendants Ley and Prause Connecting Porn Addiction Recovery to Extremist Groups* .... 52

    *The Beginning of Defendant Prause's False Allegations of Criminality Targeting Plaintiff Rhodes* ................................................................................................................ 56

    *The Porn Industry Defendants Ley and Prause's Talking Points* ......................... 57

    *Plaintiff Rhodes Participates as a Witness Against Defendant Prause in Two Matters* ...... 58

    *The "Attempted Murder"* ..................................................................................... 58

    *The Prior Litigation: Procedural Background* ..................................................... 60

    *The Non-Disparagement Agreement* ................................................................... 62

5.    Post-Settlement Disparagement ........................................................................... 63

6.    Disparagement Associated with Other Legal Actions ......................................... 67

    *Mine vs Prause* .................................................................................................... 67

    *Prause vs Stebbins* ............................................................................................... 72

7.    The Taylor & Francis Paper ................................................................................. 73

1

*Background of the Taylor & Francis Defendant* ............................................................ 73

*The Pornhub/Aylo Defendants' Involvement with the Taylor & Francis Paper* ............ 81

*Data Falsification* .......................................................................................................... 84

*Other Issues with the Taylor & Francis Paper* .............................................................. 89

*Promotion of the Taylor and Francis Paper* .................................................................. 92

*Communications Between Plaintiffs and Taylor & Francis* ........................................... 95

*The Conclusion of Defendant Taylor & Francis' Purported Investigation* .................... 96

8.    The Porn Industry Succeeds in Getting Disinformation Published in NPR ................ 97

9.    Disparagement in Publications ................................................................................. 101

*The First Paper* ............................................................................................................ 101

*The Second Paper* ....................................................................................................... 103

*The Third Paper* .......................................................................................................... 103

*The Forth Paper* .......................................................................................................... 104

*The Fifth Paper* ........................................................................................................... 105

*Defendant Prause's Announced Future Publications* .................................................. 106

   *The Conspiracy Paper* ............................................................................................. 106

   *The "Vexatious Defamation Lawsuits" and "Moderation Issues [on NoFap]" Papers* ... 110

*Downstream Papers* ..................................................................................................... 110

*Disparagement at Events* ............................................................................................ 111

10.    Disparagement by Electronic Means ..................................................................... 117

*Disparagement in Blog Posts* ..................................................................................... 122

*Disparagement in New Media* ..................................................................................... 125

*Disparagement via Wikipedia Astroturfing* ................................................................ 126

*Disparagement via Social Media Posts* ...................................................................... 131

*Disparagement via Email* ........................................................................................... 143

*Other Disparagement* .................................................................................................. 148

11.    Damages and Conclusion ...................................................................................... 148

12.    The Pornhub Defendants' Common Enterprise ..................................................... 156

Count I: Racketeering (RICO, 18 U.S.C. § 1962) ........................................................ 158

Count II: Unfair Competition under Lanham Act (15 U.S.C. § 1125(a)) ..................... 160

1.    Preliminary Statement ................................................................................................. ii

2.    Parties and Venue ........................................................................................................ 1

3.    Material and Operative Facts ....................................................................................... 2

*Overview* ........................................................................................................................ 2

2

*Background: The Plaintiffs* ................................................................................. 16
*Background of the Pornhub/Aylo Defendants* ..................................................... 22
*Pornhub and Porn Addiction* ............................................................................. 25
*Background of Defendant Nicole Prause* ............................................................ 26
   *Defendant Prause's Background at Idaho State University* ................................ 29
   *Defendant Prause's First Job with Defendant UCLA* ...................................... 31
*Prior Complaints Submitted to Defendant UCLA by Third Parties* ..................... 32
   *Prause's Second Job with Defendant UCLA* ................................................... 32
   *Defendant Prause and the Criminal Trafficking Enterprise OneTaste* ............. 34
*Background of Defendant David Ley* ................................................................... 36
*Background of Gary Wilson* ............................................................................... 38
*The Extensive Targeting of Wilson* ..................................................................... 40
*Real Your Brain on Porn* ................................................................................... 41
   *Gary Wilson's Death* ..................................................................................... 45
4.   Background of The Prior Litigation ................................................................ 51
   *Early Interactions Between Plaintiffs and Defendants Ley and Prause* ............. 51
   *Defendants Ley and Prause Connecting Porn Addiction Recovery to Extremist Groups* .... 52
   *The Beginning of Defendant Prause's False Allegations of Criminality Targeting Plaintiff Rhodes* .... 56
   *The Porn Industry Defendants Ley and Prause's Talking Points* ....................... 57
   *Plaintiff Rhodes Participates as a Witness Against Defendant Prause in Two Matters* ...... 58
   *The "Attempted Murder"* ............................................................................... 58
   *The Prior Litigation: Procedural Background* ................................................. 61
   *The Non-Disparagement Agreement* ............................................................... 62
5.   Post-Settlement Disparagement ...................................................................... 63
6.   Disparagement Associated with Other Legal Actions ....................................... 67
   *Minc vs Prause* ............................................................................................. 67
   *Prause vs Stebbins* ........................................................................................ 72
7.   The Taylor & Francis Paper ........................................................................... 73
   *Background of the Taylor & Francis Defendant* .............................................. 73
   *The Pornhub/Aylo Defendants' Involvement with the Taylor & Francis Paper* ..... 81
   *Data Falsification* ......................................................................................... 85
   *Other Issues with the Taylor & Francis Paper* ............................................... 90
   *Promotion of the Taylor and Francis Paper* ................................................... 92
   *Communications Between Plaintiffs and Taylor & Francis* ............................... 95

*The Conclusion of Defendant Taylor & Francis' Purported Investigation* .......................... 97

8.    The Porn Industry Succeeds in Getting Disinformation Published in NPR ....................... 98

9.    Disparagement in Publications ................................................................................................ 102

*The First Paper* ................................................................................................................ 102

*The Second Paper* ........................................................................................................... 104

*The Third Paper* ............................................................................................................. 104

*The Forth Paper* ............................................................................................................. 105

*The Fifth Paper* ............................................................................................................... 106

*Defendant Prause's Announced Future Publications* ................................................. 107

*The Conspiracy Paper* ............................................................................................. 107

*The "Vexatious Defamation Lawsuits" and "Moderation Issues [on NoFap]" Papers* ... 111

*Downstream Papers* ........................................................................................................ 111

*Disparagement at Events* ............................................................................................... 112

10.    Disparagement by Electronic Means .................................................................................. 118

*Disparagement in Blog Posts* ........................................................................................ 123

*Disparagement in New Media* ....................................................................................... 126

*Disparagement via Wikipedia Astroturfing* ................................................................ 127

*Disparagement via Social Media Posts* ........................................................................ 132

*Disparagement via Email* .............................................................................................. 144

*Other Disparagement* ..................................................................................................... 149

11.    Damages and Conclusion ..................................................................................................... 150

12.    The Pornhub Defendants' Common Enterprise ................................................................ 158

Count I: Racketeering (RICO, 18 U.S.C. § 1962) ...................................................................... 160

Count II: Unfair Competition under Lanham Act (15 U.S.C. § 1125(a)) ................................. 162

Count III: Trademark Dilution (15 U.S.C. § 1125(c)) ............................................................... 163

Count IV: Trademark Infringement (15 U.S.C. § 1114) ............................................................ 164

Count V: Trade Disparagement .................................................................................................. 165

Count VI: Breach of Contract ...................................................................................................... 166

Count VII: Fraudulent Inducement ............................................................................................. 167

Count VIII: Tortious Interference ................................................................................................ 169

Count IX: Defamation Per Se and Per Quod .............................................................................. 171

Count X: Publicity Placing Person in False Light ...................................................................... 174

Count XI: Publicity Given to Private Life ................................................................................... 175

Count XII: Intrusion into Private Affairs .................................................................................... 176

Count XIII: Intentional Infliction of Emotional Distress ........................................................ 178

Count XIV: Civil Conspiracy ........................................................................................................ 179

Count XV: Gross Negligence and Negligence ........................................................................ 180

Count XVI: Negligent Hiring ....................................................................................................... 183

Count XVII: Declaratory Judgment ........................................................................................... 185

2.      **Parties and Venue**

1.      Plaintiff Alexander Rhodes ("Plaintiff Rhodes") is a private individual residing in the Greater Pittsburgh region, Allegheny County, Pennsylvania, at all times material herein. Plaintiff Rhodes is of sound moral character and sound mind. He has never been charged with or convicted of any misdemeanor or felony, facts material to issues herein.

2.      Plaintiff NoFap LLC ("Plaintiff NoFap") is organized under the laws of Pennsylvania, with its principal place of operations in the Greater Pittsburgh region, Allegheny County, Pennsylvania, at all times material herein. Plaintiff Rhodes is the founder of Plaintiff NoFap. Plaintiff NoFap operates a secular, science-supported, and sex-positive peer-support website for recovery from pornography addiction.

3.      Defendant Aylo Holdings S.A.R.L., formerly MindGeek Holdings S.A.R.L. and doing business under the name Pornhub, is a foreign entity incorporated in Luxembourg, conducting business in the United States and serving customers in Pennsylvania.

4.      Defendant Aylo USA Incorporated, formerly MindGeek USA Incorporated and doing business under the name Pornhub, is a Delaware corporation conducting business throughout the United States, including in the Commonwealth of Pennsylvania.

5.      Defendant Aylo Global Entertainment Incorporated, formerly MindGeek Global Entertainment and doing business under the name Pornhub, is a Delaware corporation conducting business throughout the United States, including in the Commonwealth of Pennsylvania.

6.      Defendant Aylo Billing Limited, formerly MG Billing Ltd. and doing business under the name Pornhub, is a foreign entity incorporated in Ireland, conducting business throughout the United States, including in the Commonwealth of Pennsylvania.

1

7.    Collectively, the four Pornhub/Aylo Defendants shall be referred to as the "Pornhub/Aylo Defendants" or simply "Pornhub".

8.    Defendant Nicole Prause ("Defendant Prause") is an individual believed to reside within Los Angeles County, California.

9.    Defendant David Ley ("Defendant Ley") is an individual believed to reside within New Mexico.

10.    Defendant Taylor & Francis Group ("Defendant Taylor & Francis") is currently a Delaware corporation (previously, a Pennsylvania corporation) with offices at Suite 850, 530 Walnut Street, Philadelphia, Pennsylvania 19106.

11.    Defendant University of California Los Angeles (d/b/a UCLA) ("Defendant UCLA") is a California organization. Defendant UCLA's Office of the General Counsel is located at 1111 Franklin Street, 8th Floor, Oakland, CA 94607-5200.

12.    Venue is appropriate in Allegheny County as the cause of action arose herein.

**3.    Material and Operative Facts**

*Overview*

13.    This is not a lawsuit about the cultural debates surrounding the use of legal pornography by consenting adults. This is a lawsuit about disinformation, sexual exploitation, and a criminal racketeering operation, in which a multinational, wealthy, and powerful pornography conglomerate—raking in hundreds of millions of dollars per year—and its collaborators use illegal and unethical tactics to target therapists, scientists, journalists, authors, educators, politicians, addicts in recovery, recovery peer support groups, pornography recovery and filtering software providers, academic journals, survivors of sexual exploitation, whistleblowers, critics, and anyone else who interferes with their efforts to make as much money as possible.

2

14.     In this matter, the Pornhub/Aylo Defendants conspired with Defendants Prause and Ley to conduct a disinformation campaign aimed to suppress and shut down the largest porn addiction recovery peer-support platform. Much of this disinformation campaign occurred in breach of a Non-Disparagement Agreement arising from prior litigation. Defendants UCLA and Taylor & Francis knowingly aided and abetted the scheme, providing substantial assistance with actual knowledge of the wrongful activities. This action is brought to hold the Defendants accountable for their misconduct and to enforce the contract.

15.     Pornhub is one of the most visited websites in the world. According to Semrush.com, a search engine marketing data aggregator, Pornhub was the world's eighth most searched-for website in January 2025. With their tremendous financial resources and influence, the Pornhub/Aylo Defendants engaged in an extensive disinformation campaign to mislead professionals and the public about the potential adverse mental health effects of its product. The Pornhub/Aylo Defendants covertly collaborated with Defendant Prause and Defendant Ley to sway the public narrative about problematic pornography use ("PPU"), suppress legitimate scientific research, publish industry-aligned academic papers to create the appearance of scientific controversy, influence professional organizations, and prevent governmental regulation such as age verification.

16.     The Pornhub/Aylo Defendants go to great lengths to masquerade as a legitimate business through reputation management (such as publicists and marketing) and online astroturfing (such as on Wikipedia and social media). The Pornhub/Aylo Defendants have changed their name multiple times (from Mansef, to Manwin, to MindGeek, to Aylo and Ethical Capital Partners) and have engaged in sophisticated strategies to reduce their risk, reduce tax liability, and obfuscate

3

their business structure (such as allegedly incorporating dozens of shell companies and funneling money to tax havens).

17.     While presenting itself as a sex-positive and legal commercial sex industry operation, the Pornhub/Aylo Defendants simultaneously partnered with sex traffickers (such as GirlsDoPorn) and, as verified by internal communications and metrics obtained through legal discovery, knowingly stored and distributed tens of thousands of videos featuring child sexual abuse material ("CSAM", often colloquially referred to as "child porn") hundreds of millions of occasions, making the Pornhub/Aylo Defendants one of largest distributors of CSAM in the world.

18.     The Pornhub/Aylo Defendants intentionally turned a blind eye to sexually exploitative content, didn't verify the ages or consent of individuals appearing in content, didn't remove illegal content flagged by survivors and third parties, didn't report anyone uploading CSAM to law enforcement for over a decade (Pornhub was created in 2007 and reportedly never filed any law enforcement reports until 2020). Despite the Pornhub/Aylo Defendants having recently deleted over 90% of the website's content, making changes to their upload policies, and attempting to rebrand following widespread public condemnation of their practices, survivors have continued to come forward with allegations that the company is still profiting from sexually exploitative content.

19.     As a result of the proliferation of CSAM and other content featuring sexual exploitation (such as rape, voyeurism, non-consensually filmed and/or distributed material, and sex trafficking) on their website, the Pornhub/Aylo Defendants have been embroiled with 27 lawsuits and counting (initiated by approximately 300 survivors, including RICO cases and multiple class actions on behalf of thousands of child victims), widespread condemnation, law enforcement investigations, an arraignment and deferred prosecution agreement by the U.S.

4

government for engaging in unlawful monetary transactions involving sex trafficking proceeds, a Canadian parliamentary investigation (concluding that Pornhub was at-fault), an Office of the Privacy Commissioner of Canada investigation (concluding that Pornhub was at-fault), had their payment processors (Mastercard, Visa, Discover, and PayPal) cut ties, and were admonished by twenty-six state attorney generals.

20.    Rather than focusing on cleaning up the legacy porn industry, the Pornhub/Aylo Defendants have masked their misconduct and repeatedly denied wrongdoing, and their surrogates such as Defendant Prause, Defendant Ley, and the porn industry's primary trade association "Free Speech Coalition" have opted to take an aggressive stance toward the pornography industry's critics and other people who they view as threats to their cash flow. Anyone who stands in their way—from anti-sexual exploitation campaigners, to scientists, to clinicians, to journalists, to porn addiction recovery peer-support groups—gets similar treatment by the porn industry leadership and their collaborators.

21.    The porn industry's playbook includes a wide variety of actions intended to suppress their targets, including but not limited to academic fraud (disseminating disinformation, including with data falsification, in academic journals and conferences, without disclosure of conflicts of interest), obstructing academic research (such as attempting to get papers retracted, preventing papers from getting published through peer review and by sitting on the editorial boards of journals, and influencing or intimidating other researchers), opposition research, surveillance, data mining, pitching (and funneling disinformation and malinformation) to journalists to get negative stories placed, coordinated cyberbullying and cyberstalking, defamation (such as writing thousands of emails and social media messages intended to malign and deplatform targets), online astroturfing (such as Wikipedia page editing with sockpuppet accounts), false administrative

5

reports to state agencies and employers and licensing organizations, false law enforcement reports, strategic lawsuits against public participation, hacking (and publicly disseminating hacked and data-mined data, such as embarrassing photographs), baseless legal threats (cease and desist letters, DMCA notices, and other legal notices to censor information), staging hoaxes (such as "death threats" and other crimes, often to discredit targets), impersonation, attacks on trademark rights, doxxing (such as posting personal information online), and targeting family members (such as opposition research, defamation, hacking, and distributing intimate photographs).

22.    For years, NoFap was the largest platform for recovering porn addicts. Similar to Alcoholics Anonymous and other peer support groups, Plaintiff NoFap focuses on recovery, not advocacy against the creation or consumption of legal pornography by consenting adults. Rather than leaving porn addicts alone to recover without interference, entities within the porn industry have endeavored to suppress Plaintiff NoFap through a carefully orchestrated, extensive, years-long disinformation campaign. The porn industry's campaign devastated Plaintiff NoFap, severely damaging its reputation, dismantling its operations, and making it increasingly difficult for NoFap to remain online, reducing its web traffic to a fraction of its prior levels.

23.    Upon information and belief, the Pornhub/Aylo Defendants and their collaborators such as Defendant Prause and Defendant Ley (collectively, the Pornhub/Aylo Defendants, Defendant Prause, and Defendant Ley shall be referred to as the "Porn Industry Defendants"), aim to suppress public and professional discussion about problematic pornography use, obstruct further research into PPU, prevent the classification of compulsive pornography use as a behavioral addiction, and impede downstream governmental regulation such as mandatory age verification laws. The pornography industry's disinformation campaign is not without precedent: the tobacco industry engaged in a systemic, decades-long disinformation effort—including the use of industry-

6

aligned academics—to mislead regulators, academia, and the public about the nature and risks of its products. *See United States v. Philip Morris USA Inc., 449 F. Supp. 2d 1, 27 (D.D.C. 2006) (finding defendants liable under RICO for a disinformation campaign).* In the internet age, the pornography industry has adopted similar tactics—amplified by digital reach and personal targeting—to discredit critics, distort science, and suppress its perceived adversaries.

24.     Reducing excessive and otherwise maladaptive behavior is a common-sense concept, whether it's eating, alcohol use, other substance use, gambling, playing video games, using social media, or masturbating to pornography. The vast preponderance of scientific research supports that excessive pornography use can lead to adverse outcomes, including brain changes consistent with the behavioral addiction model, contributing to the World Health Organization formally recognizing Compulsive Sexual Behavior Disorder in 2019.

25.     While recovery from problematic pornography use is not legitimately controversial, the Pornhub/Aylo Defendants and their collaborators have endeavored to label recovery resources as controversial, disreputable, harmful, and unscientific. The Porn Industry Defendants have attempted to frame problematic pornography use as a religiously motivated invention, disinformation, pseudoscience, moral incongruence (leading to shame) with unremarkable or healthy sexual behavior, conservative sexual values (such as anti-pornography, anti-sex, or anti-masturbation), harmful misdiagnosis (claiming problematic pornography use is always just a symptom of an underlying issue such as depression, anxiety, or narcissism), along with mislabeling the goal of reducing or quitting pornography use as a harmful "abstinence" "anti-masturbation" "treatment", akin to alternative medicine (such as homeopathy), and profiteering. Further, the Porn Industry Defendants have sought to artificially connect porn addiction recovery to a wide range of unrelated subjects, such as anti-LGBTQIA+ conversion therapy, conspiracy theories, criminality

7

(such as threats, mass shootings, violence, and terrorism), controversial online movements (such as the incel, MGTOW, manosphere, men's rights, and anti-feminism communities), extremism and discriminatory views (such as misogyny, antisemitism, and hate groups), sexual abuse, and politics (such as the far-right, censorship, and Christian nationalism).

26.     Since at least 2016, Defendant Prause has repeatedly targeted Plaintiffs through a variety of tortious actions, usually in collaboration with Defendant Ley. Her conduct has often followed a recurring pattern: make defamatory statements about Plaintiffs, falsely portray herself as a victim of Plaintiff NoFap or its users, and mischaracterize Plaintiffs' rare and good faith defenses as attacks against her. For example, Defendant Prause filed a false report against Plaintiffs with the Pennsylvania Department of State, temporarily got a television appearance for The Doctors canceled by falsely claiming to producers that Plaintiff Rhodes was stalking her and was subject to a restraining order (to date, Plaintiff Rhodes has never met or seen Defendant Prause, nor has he ever been the subject of a restraining order), claimed to have reported Plaintiff Rhodes to the FBI for "cyberstalking", commented that Plaintiff Rhodes stalked multiple women online "in violation of no-contact orders", repeatedly edited the Wikipedia page about NoFap, and posted a wide variety of false and defamatory statements about Plaintiffs online (for example, staging hoaxes that NoFap users sent her threats, posting that NoFap was a hate group and supportive of misogyny, creating and spreading disinformation that Plaintiffs "promoted" and "worked with" the Proud Boys far-right political group, and asserting that Plaintiff Rhodes was faking his symptoms for financial gain) using her name and various aliases.

27.     As the porn industry disinformation campaign continued to escalate—particularly Defendant Prause's actions—Plaintiffs filed suit against Defendant Prause and Liberos LLC in

8

October 2019 for defamation and related claims (the "Prior Litigation"). *Rhodes v. Prause et al.,*

*No. 2:19-cv-01366-MPK (W.D. Pa.).*

28.     Entities within the pornography industry responded to Prior Litigation by mobilizing industry members and allies to publish articles, post on social media, and otherwise disseminate disinformation regarding the case.

29.     Various other women and men, including journalists, therapists, doctors, academics, educators, and authors, have come forward to claim that they've also been targeted by Defendant Prause and her collaborators, generally after they expressed opinions regarding pornography. Multiple targets of Defendant Prause previously filed reports with the California Board of Psychology. Defendant Prause has also accused various organizations and individuals of causing or sending her threats, including but not limited to Fight the New Drug, Exodus Cry, the National Center on Sexual Exploitation, Rebecca Watson, Laila Mickelwait, Gail Dines, IITAP and Stefanie Carnes, Reboot Nation and Gabe Deem, the Society for the Advancement of Sexual Health, and The Post Millennial. At least eleven Defendant Prause targets have submitted sworn statements regarding her conduct: John Adler, D.J. Burr, Stefanie Carnes, Geoff Goodman, Bradley Green, Linda Hatch, Donald Hilton, Laila Mickelwait, Aaron Minc, Staci Sprout, and Gary Wilson.

30.     Defendant Ley has also maintained a collaborative relationship with the pornography industry, such as filming videos to "address the science and [debunk] the pseudoscience [of] anti-masturbation campaigns like #NoNutNovember" with xHamster, regularly working with Free Speech Coalition, maintaining personal relationships with pornography producers and performers, and having his book endorsed by Pornhub.

9

31.     After extended litigation, the Prior Litigation settled in February 2021. The terms of the settlement agreement were clear: Defendant Prause agreed to not disparage Plaintiff Rhodes and Plaintiff NoFap in any capacity. A true and correct copy of the same is attached hereto as Exhibit "A". This agreementcontract will be referred to as the "Non-Disparagement Agreement".

32.     Defendant Prause also settled two other defamation lawsuits initiated by Minc LLC (the law firm then representing Plaintiffs, who she falsely accused of sending her "physical location" to a "group that offered to kill me multiple times") and Donald Hilton (who she falsely accused of sexual harassment, stalking, cyberstalking, threatening her, and falsifying his credentials), with Defendant Prause paying damages and issuing written retractions for her false statements against them.

33.     Since the Prior Litigation settled, Defendant Prause has violated the Non-Disparagement Agreement thousands of times—often daily, in what often appears to be a full-time endeavor—often with the assistance of Defendant Ley.

34.     Defendant Prause has attempted to frame Plaintiff Rhodes with serious crimes, such as purporting to file (false) reports against Plaintiff Rhodes with law enforcement for "attempted murder" against her and "domestic terrorism" while publicly branding herself to be a victim of such fabrications. Defendant Prause claimed that Plaintiff Rhodes was under investigation by the "Pittsburgh Bureau of Police Crime Analysis / Intelligence" and which was referred to the "Joint Terrorism Task Force" for "a suspected felony on or about May 19, 2022". To date, Plaintiff Rhodes has not been contacted by any law enforcement agency in connection with Defendant Prause's defamatory allegations or her purported (false) reports.

35.     Since executing the Non-Disparagement Agreement, Defendant Prause has continued to falsely claim that Plaintiff Rhodes disseminated her physical address online and either

10

personally physically grabbed her in Los Angeles or directed or caused another individual to do so.

36.     Defendant Prause has engaged in retaliatory conduct against witnesses and others perceived to be supportive of the Prior Litigation by filing vexatious lawsuits (none of which Defendant Prause has won), submitting false administrative reports, and repeatedly targeting them with defamatory statements online. Since executing the Non-Disparagement Agreement, Defendant Prause has impersonated NoFap users by creating alias accounts to post content that violated platform policies on the NoFap subreddit and Discord server.

37.     Plaintiff Rhodes came from a modest background, something he has never previously discussed in any publicly viewable manner. As a result, he experienced an unstable childhood, marred by periods of neglect and sexual abuse. During the Prior Litigation, Defendant Prause's counsel engaged a private investigation firm (upon information and belief, Matthew Bernstein from CoventBridge) to conduct opposition research on Plaintiff Rhodes, collecting information from an estranged and unstable biological family member of Plaintiff Rhodes, Plaintiff Rhodes' biological mother ("Azeff"). Plaintiff had previously distanced himself from this individual (and eventually cut her out of his life) after she made contradictory accusations against various family members, exhibited increasingly concerning behavior, and was accused by a family member of sexually abusing Plaintiff Rhodes while he was a child.

38.     Despite Defendant Prause's execution of the Non-Disparagement Agreement, Defendant Prause and Defendant Ley continued to cultivate Azeff, shop her to journalists, and collaborate with her to concoct and disseminate additional false and defamatory statements concerning Plaintiff Rhodes. These many false and defamatory statements included claims that Plaintiff Rhodes attempted to murder Azeff; that Plaintiff Rhodes had men following Azeff, spying

11

on her, and attempting to kill her; that Plaintiff Rhodes attempted to murder Defendant Prause, traveling with a firearm to Los Angeles and camera to livestream the supposed murder; that Plaintiff Rhodes paid Matt Fradd (a well-known Catholic podcast host) $1000 to assault Defendant Prause; that Plaintiff Rhodes is a vexatious litigant; that Plaintiff Rhodes is abusive to women; that Plaintiff Rhodes attempted to commit mass shootings on two occasions; that Plaintiff Rhodes is a fraudster who made up using pornography; that Plaintiff Rhodes is severely mentally ill and "received additional mental health diagnoses concerning psychotic delusions of persecution" explaining his claims of being targeted by the porn industry; that Plaintiff Rhodes committed insurance fraud twice; that Plaintiff Rhodes harbored and expressed discriminatory beliefs; that Plaintiff NoFap is secretly funded by the Latter-day Saints church; that Plaintiff Rhodes engaged in tax evasion; that Plaintiff Rhodes is an illegal hacker; that the fundraiser for the prior litigation was fraudulent; and that Defendant Prause is a victim of Plaintiff Rhodes, with the Prior Litigation being "just his latest manifestation of his struggles with severe mental illness".

39.    In collaboration with Azeff, Defendant Prause and Defendant Ley were involved in communications with a Pittsburgh-area man named Doug Allen. Upon information and belief, in communications between Azeff and Doug Allen, further defamatory statements were concocted, including that Plaintiff Rhodes had a "gay ex-lover" and "forced him to masturbate watching Thailand child porn, then threatened his family"; that Plaintiff Rhodes was a secret accomplice to a mass shooting; that he sent a person "unsolicited pornographic online video chats"; that a woman claimed that she "caught her husband and Alex Rhodes masturbating on a Zoom calls [sic] and then was sent death threats"; and that he killed a dog to threaten a person who "threatened to go public" about how Plaintiff Rhodes "gamed the search engines" through "black hat" search engine optimization tactics.

12

40.    Upon information and belief, in an email, Doug Allen described to Azeff how she could financially benefit from making accusations against Plaintiffs, writing "this book WILL be a money-maker […] I anticipate you will be able to get $8000 to $15,000 just for keynote speaking engagements."

41.    Upon information and belief, Defendant Prause paid for a Fiverr.com gig to disseminate Azeff's statements repeatedly across the Internet and emailed statements purportedly authored by Azeff to Plaintiffs' professional colleagues, including after execution of the Non-Disparagement Agreement.

42.    Upon information and belief, both Defendant Prause and Ley assisted Azeff with opposition research, with Defendant Ley even submitting a sworn declaration in support of Azeff.

43.    Since executing the Non-Disparagement Agreement, Defendant Prause has created numerous new Wikipedia accounts (legal discovery and other metadata unveiled that, upon information and belief, over 80 Wikipedia illicit sockpuppet aliases have been operated by Defendant Prause to date) to continue adding disparaging statements and influence Wikipedia pages, including over 30 aliases to control the page about NoFap. Since executing the Non-Disparagement Agreement, Defendant Prause and her collaborators have continued to publish false, defamatory, and disparaging statements about Plaintiffs on social media nearly every day, often multiple times per day.

44.    Defendants have attempted to undermine Plaintiff NoFap's trademark rights and falsify its history, disseminating fictions in papers, on social media, and in blog posts, generating disinformation which has been republished by others. Defendant Prause has appeared on over twenty podcasts to disparage Plaintiffs in violation of the Non-Disparagement Agreement, including but not limited to Dan Savage's Savage Lovecast, Rena Malik's YouTube channel, the

13

TwoX Labs podcast, and Sarah Kell's "Psych and the City" episode titled "NO FAP! NO SCIENCE!". During the latter, Defendant Prause again falsely claimed that she was sexually assaulted outside of her laboratory because of Plaintiffs, further manufacturing that "[t]hey are able to threaten or do things because they have money to get out of it."

45.    Despite executing the Non-Disparagement Agreement, Defendant Prause has gone so far as to utilize photographs and videos of Plaintiff Rhodes to disparage him on social media and even on-stage while presenting at a conference.

46.    Since executing the Non-Disparagement Agreement, Defendant Prause has continued to email and otherwise contact various third parties with disparaging statements concerning Plaintiff NoFap and Plaintiff Rhodes, reach out to people who mention Plaintiff NoFap to discourage them from affiliating with or supporting Plaintiffs, and otherwise cause significant and widespread damage to Plaintiff NoFap's reputation and relationships. Defendant Ley intentionally and knowingly acted in concert with Defendant Prause.

47.    Since executing the Non-Disparagement Agreement, Defendant Prause has continued to disseminate disinformation to her associates to spread further disparaging statements concerning Plaintiff Rhodes. Since executing the Non-Disparagement Agreement, Defendant Prause has been in communication with multiple journalists, successfully getting disparaging stories published in *NPR* by Lisa Hagen, *The Sun* by John Mac Ghlionn, *Slate* by Will McCurdy, and *IFLScience* by James Felton targeting Plaintiff Rhodes and Plaintiff NoFap—all in violation of the Non-Disparagement Agreement.

48.    One of the most egregious Non-Disparagement Agreement breaches occurred when Defendant Prause and Defendant Ley purportedly co-authored a paper in an academic journal, *Deviant Behavior*, published by Defendant Taylor & Francis. The paper titled "Violence on Reddit

14

Support Forums Unique to r/NoFap", a clear attempt to "deplatform" Plaintiff NoFap from the popular social media website Reddit.com. Defendants Prause and Ley's paper claimed that Plaintiff NoFap's subreddit contained a disproportionate number of violent posts compared to other peer-support subreddits. The paper was extensively data -falsified, contained numerous false and defamatory statements along with disparaging statements in violation of the Non-Disparagement Agreement, and relevant conflicts of interest were not declared. Despite receiving written notice and evidence of the academic fraud, Defendant Taylor & Francis decided not to retract the contract-breaching and data falsified paper, and not even require the Defendants Prause and Ley to declare conflicts of interest such as the Prior Litigation and ensuing bankruptcy, sweeping the matter under the rug in violation of Defendant Taylor & Francis' own stated policies.

49.    Upon information and belief, this libelous Taylor & Francis journal article was authored with the assistance and coordination of Pornhub.

50.    Cumulatively, Defendant Prause has collaborated with Defendant Ley and the Pornhub/Aylo Defendants to disparage Plaintiff NoFap and Plaintiff Rhodes to millions of people after she executed the Non-Disparagement Agreement.

51.    Despite Defendant Prause having a documented history of concerning conduct, including a criminal conviction (specifically, Domestic Violence-Violation of Protection Order) for physically stalking a student at a university she was a faculty member at in 2010, and despite Defendant UCLA receiving notice from Gary Wilson and others that she was continuing this general pattern of behavior, Defendant UCLA nevertheless permitted Defendant Prause to continue utilizing university resources to advance the interests of the pornography industry, lending the veneer of institutional credibility to her actions. Defendant Taylor & Francis, an academic publisher, knowingly allowed Defendants Prause and Ley to engage in data falsification,

15

publish objectively false and defamatory disinformation, not declare numerous conflicts of interest (in violation of Defendant Taylor & Francis' own stated policies), and breach the Non-Disparagement Agreement in collaboration with the Pornhub/Aylo Defendants.

52.     The Defendants' course of conduct has had catastrophic effects on Plaintiff NoFap (resulting in enormous financial losses, steadily declining web traffic, and nearly causing the website to shut down), Plaintiff Rhodes (leaving him with six figures of financial debt), and a planned 501(c)(3) nonprofit organization that was ultimately unable to launch. The Porn Industry Defendants have disseminated disinformation and engaged in harassment on an industrial scale, which has had a chilling effect on the entire field of PPU, including among journalists, scientists, therapists, educators, and many others, causing harm to millions of people around the world who need effective resources to help them recover from excessive pornography use. Indeed, the Porn Industry defendants have gone so far was to interfere with a doctoral student's research into PPU.

53.     It's time to hold the porn industry and its collaborators accountable for using a wide variety of unethical and illegal tactics to suppress and shut down resources for recovering porn addicts.

*Background: The Plaintiffs*

54.     Images of nudity and sexual acts have existed for centuries, including in primitive forms for millennia. However, today's pornography is very different from artistic nudity, erotic literature, and pornography of the past, and far more abundant and accessible. Decades ago, printed pornography, such as that seen in magazines, became widely available. From there, pornography moved to video format and eventually digitized. Through personal computers and the internet, distribution and use of digital pornography quickly expanded into widespread adoption.

16

55.    Pornography is currently a massive industry, with estimates of industry-wide revenue ranging from less than 15 to over 100 billion dollars per year (due to its often-murky business practices, exact figures can be challenging to ascertain). In 2019, *The Shift Project* estimated that approximately 27% of all online videos are pornography, and that pornography represents approximately 16% of all data flow.

56.    In the 2010s, there was a steep increase in people informally reporting that they felt their self-described excessive pornography use led to unexpected adverse effects. These self-reports included but were not limited to erectile dysfunction, anorgasmia, relationship dissatisfaction, and compulsivity. Peer-support communication platforms were established on standalone websites and social media where compulsive pornography users would congregate to discuss their experiences and motivate each other to quit or reduce pornography use, primarily citing sexual health, self-improvement, relationship satisfaction, and behavioral addiction recovery as their motivations for doing so. A 2023 study by Jonathan K. Noel and other researchers concluded that "[a]pproximately half of Rhode Island's young adults in this sample viewed pornography and 1 in 16 met the criteria for pornography addiction." Today, it is estimated that many millions of individuals may be ~~Problematic Pornography Users~~problematic pornography users.

57.    Distinct from the decades-old concept of "sex addiction" (partnered sex as a behavioral addiction), excessive pornography users often report decreased interest in partnered sex, instead seeking out internet pornography, which is far more abundant and accessible. Unlike printed pornography of the past, internet-based pornography is often free—enabled by piracy and ad-based monetization—anonymous, accessible in complete privacy without identification, and available anytime, anywhere, in virtually unlimited quantities.

17

58.     Plaintiff NoFap was among the first porn addiction recovery peer support websites. Plaintiff Rhodes created the NoFap website to engage in discussion with others regarding the problems of excessive pornography consumption. Plaintiff Rhodes created the website primarily because of his own personal experiences with Internet pornography. Around the age of 11, Plaintiff Rhodes encountered pornography while using the Internet.  This quickly led to what he refers to as a behavioral addiction that took over his life. Plaintiff Rhodes engaged in online reading and discussion about the subject and noticed that many other people seemed to be experiencing similar issues to his. He was additionally inspired by concepts that he learned while pursuing an undergraduate biology degree at the University of Pittsburgh. Plaintiff Rhodes formally created NoFap as a forum on Reddit (a "subreddit") in June 2011 to host gamified challenges for people to experiment with avoiding masturbation for a period of one week to one month, which quickly evolved into one of the largest websites dedicated to helping people with porn addiction, otherwise excessive and problematic Internet pornography use, and other forms of compulsive sexual behavior.

59.     NoFap is a website that hosts online forums with hundreds of thousands of users who have published millions of messages. Plaintiff NoFap's About page describes "NoFap® is a peer support website dedicated to helping people recover from porn addiction and other compulsive sexual behavior. We provide forums, information, and software to foster a safe, inclusive, and welcoming online environment for anyone seeking sexual self-improvement. We're secular and sex-positive, focusing on a science-supported and shame-free approach to recovery from problematic porn use. We are not an [']anti-porn['] nor [']anti-masturbation['] website (we're a recovery website), as we do not advocate against people engaging in the moderate use of either. We're here for people whose porn use and masturbation have become excessive, out-of-control,

18

and detrimental to their lives. […] We facilitate community and share helpful content while regularly consulting with clinicians and researchers; however, we do not provide treatment, therapy, counseling, or other forms of professional intervention. Our website is for recovering porn addicts and was made by recovering porn addicts." Over time, NoFap grew in popularity, boasting over 365,000 forum members and 1,190,000 Reddit subscribers. The website receives millions of visits per month, though traffic has steadily declined since the porn industry launched its smear campaign. Despite this, NoFap remains one of the most visited websites for recovering porn addicts.

60.    NoFap's usership is incredibly diverse. The About page states "We believe that recovery is for everybody. NoFap has well over one million users from all around the world. NoFap users are men and women and people of other gender identities; atheists and agnostics and religious alike; LGBTQIA+ people; and people of varying races, ethnicities, socioeconomic positions, nationalities, national origins, medical conditions, familial statuses, language fluencies, and ages. Our website brings people from various backgrounds and belief systems to pursue sexual self-improvement together." Anyone with Internet access can register and post on NoFap's forums, but they do have to abide by a published list of rules. Among these rules, the site explicitly bans hate speech, harassment or organizing harassment of any kind, issuing threats, or other unlawful activity. A long list of other posting policies fosters an inclusive environment and healthy discourse.

61.    Community discussions on NoFap's subreddit, website forum, and Discord server are primarily overseen by volunteer moderators selected from active and helpful users. These volunteers enforce posting policies by removing rule-breaking content and issuing warnings, temporary bans, or permanent bans to users who violate the rules. In addition, Plaintiff NoFap

19

employs automated moderation systems that flag potentially rule-breaking content for moderator review and action. These systems are regularly updated to improve the detection and removal of such content.

62.     Plaintiff Rhodes incorporated NoFap LLC, a single member limited liability company for the purpose of operating NoFap.com to provide support and resources to those who have an addiction to pornography or who feel that they suffer from excessive pornographic consumption.

63.     Plaintiffs registered several trademarks to protect their brand identity and prevent ~~further~~ misuse, to ensure that others could not falsely claim to represent NoFap, and to preserve NoFap's ability to stay online and grow to fulfill its mission of providing free support to individuals struggling with pornography addiction worldwide.

64.     However, as described below, the porn industry has waged an aggressive campaign to undermine Plaintiffs' trademark rights through dilution. Similarly, the Porn Industry Defendants attempted to register the "YourBrainOnPorn.com" trademark and launched a competing website under the name "RealYourBrainOnPorn.com"—a modus operandi that necessitates recovery sites invest considerable resources to defend their ability to remain online.

65.     Plaintiff Rhodes has had an excellent reputation within his field, although it has been substantially harmed by the Defendants. ~~Plaintiff Rhodes is rightminded and has never been charged with, or convicted of, any misdemeanor or felony.~~ Plaintiff NoFap's website has been utilized by many individuals who struggle with issues stemming from excessive pornography consumption.

66.     Prior to the porn industry's smear campaign, Plaintiff Rhodes has been interviewed for articles about pornography addiction by numerous publications, including *Time Magazine*, the

20

*Pittsburgh Post-Gazette* and *The New York Times*. Plaintiff Rhodes has been interviewed on NPR's *Here & Now*, Showtime's *Dark Net*, CNN's *This is Life with Lisa Ling*, and CBS's *The Doctors*. Plaintiff NoFap attracted attention from content creators who have published thousands of videos about their experiences recovering from porn addiction, some of them amassing millions of views. NoFap was named on television shows such as *Orange is the New Black* and was discussed or mentioned by personalities such as Joe Rogan and PewDiePie. Plaintiff NoFap has maintained a friendly relationship with pornography performers, and ex- and current-pornography performers have followed, supported, or just poked fun at Plaintiff NoFap—including Jenna Jameson, who was once named as "the world's most famous adult entertainment performer" and "the queen of porn," writing "I respect @nofap" in a Twitter post.

67.     Plaintiff Rhodes won *The Society for the Advancement of Sexual Health* ("SASH") Media Award for his work raising awareness about porn addiction. Plaintiff Rhodes wrote an opinion piece about pornography for *The Washington Post*. Prior to the porn industry's smear campaign, Plaintiff NoFap had been featured in numerous prominent publications, including *Esquire*, *Business Insider*, *Cosmopolitan*, *New York Magazine* and many more. At one point, Plaintiffs were engaged in discussions concerning the development of a dedicated television show.

68.     However, as a result of the porn industry's harassment campaign, plaintiff Rhodes has not participated in a media interview or spoken at a conference in over six years. Once contacted by clinicians, researchers, journalists, businesses, producers, authors, content creators, and even celebrities very regularly, Plaintiff NoFap is rarely reached out to due to the reputational damage incurred due to the Defendants. If a reporter contacts Plaintiff NoFap these days, it is usually requesting comment about a defamatory and/or disparaging article initiated by Defendant Prause and her collaborators.

*Background of the Pornhub/Aylo Defendants*

69.    The Pornhub/Aylo Defendants' flagship website is Pornhub, which has been described as "the YouTube of porn." Pornhub is one of the most visited websites in the world, including among non-pornographic websites.

70.    In 2020, multiple outlets reported that Pornhub received 170 million visits per day (62 billion visits per year), estimating Pornhub to be the world's 5th most popular website. In 2025, Pornhub is still massively popular. According to *Semrush*, a search engine marketing data aggregator, Pornhub was the world's 8th most searched-for website in January 2025. This makes the Pornhub more searched-for than ChatGPT, Amazon.com, Yahoo, Netflix, X.com (formerly Twitter), Twitch.tv, and LinkedIn.

71.    The Pornhub/Aylo Defendants purposefully intend for their websites to be directed toward Pennsylvania residents. Of note, Pornhub routinely publishes the most popular search terms entered by persons within the Commonwealth. Pornhub also intentionally referenced Plaintiff NoFap in communications directed toward Pennsylvania residents.

72.    With all this web traffic comes advertising revenue, which is one of the primary ways the Pornhub/Aylo Defendants monetizes the Pornhub website. While being asked questions before a Canadian parliamentary committee, former CEO Feras Antoon estimated that half of Pornhub's revenue was derived from advertising. At one point, the Pornhub/Aylo Defendants claimed to have sold approximately 4.6 billion ad impressions per day. Publicly accessible revenue estimates for the Pornhub/Aylo Defendants range from several hundreds of millions of dollars per year, to multiple billions. The Pornhub/Aylo Defendants have been described as a "very private company" by *The Times* and financial figures are not a matter of public knowledge, but various websites cite a report claiming Pornhub brought in 460 million dollars in 2018. According to

22

business reporter Bradley Saacks, "Pornhub's parent company is surprisingly profitable despite recent financial and reputational hits" with "with operating margins of about 27% in 2021 and almost 30% in 2022, according to estimates the company showed potential investors in 2021. In comparison, Facebook parent Meta had an operating margin of 25% in 2022."

73.     Although other tube-style pornography websites exist, such as xHamster and XVideos, the Pornhub/Aylo Defendants have been described on having a near-monopoly of the global pornography industry. Their CEO claimed they had 1,800 employees, and the company is reported to have had staff and offices in Austin, Los Angeles, Montreal, London, San Diego, San Francisco, and Cyprus, Germany, Greece, Hungary, Ireland, and Luxembourg. While Pornhub is their flagship website, they also own a variety of (reportedly, over 100) other pornography websites including RedTube, YouPorn, Tube8, GayTube, and XTube. The Pornhub/Aylo Defendants also produce pornography content with their subsidiary production companies, which include but are not limited to Brazzers, Reality Kings, and Mofos.

74.     Pornhub has launched several publicity campaigns, propelling its brand into widespread public recognition. In 2014, the company reportedly spent $100,000 to place a billboard in Times Square, and that same year, it launched the "Pornhub Gives America Wood" campaign, pledging to plant trees based on video views. In 2017, it presented itself as a community-friendly company by claiming to offer free snow plowing services to those who wanted to "get plowed." During the COVID-19 pandemic, Pornhub capitalized on global lockdowns by offering free premium subscriptions, further embedding itself into mainstream culture. These viral moments illustrate Pornhub's long-term branding strategy: presenting itself as a socially conscious, progressive, and harmless entity while normalizing its presence in everyday life. These efforts were also directed toward Pennsylvania residents.

75.     In December 2020, *New York Times* columnist Nicholas Kristof published an exposé detailing the Pornhub/Aylo Defendants' complicity in sexual exploitation, bringing widespread public attention to Pornhub's role in hosting and monetizing illegal content. The article triggered a wave of follow-up coverage and investigations by outlets including *The Guardian*, *The New Yorker*, *Newsweek*, *CNN*, and many more. After the #Traffickinghub campaign garnered more attention, the Pornhub/Aylo Defendants mobilized an aggressive response, claiming the "claims were [']lies['] spread by people seeking to destroy the porn industry for [']religious reasons[']". The Pornhub/Aylo Defendants utilized "an extensive network of social media agents, influencers, and amplifiers", "smearing, discrediting, and intimidating advocates and victims who dared to speak out." *Fleites v. MindGeek S.A.R.L., et al., No. 2:21-cv-04920-WLH-ADS, Dkt. 385, ¶¶ 210–212 (C.D. Cal. May 23, 2024).*

76.     In a sworn statement, Laila Mickelwait wrote "On Feb 26, 2019 we were notified by several of our business partner donors that Nicole Prause had been personally emailing them with completely fabricated claims. For example, she falsely wrote: [']Exodus Cry members were sending 'rape' and 'stalking' threats to scientists online who study sex films. In particular author Laila Mickelworth [sic] was personally claiming that I fake my studies and am in pornography myself. […] Obviously neither is true and it shows a willingness to promote stalking and libel to promote a cause you never agreed to assist." *Rhodes v. Prause et al., No. 2:19-cv-01366-MPK, Dkt. 20-9 (W.D. Pa. Jan. 24, 2020) (Affidavit of Laila Mickelwait)*

77.     The Pornhub/Aylo Defendants and its operatives such as Defendants Prause and Ley have established a modus operandi of attempting to defame and frame targets of its criminal racketeering operation, whether sexual exploitation whistleblowers, critics, or operators of addiction recovery resources, with false allegations of criminal conduct, conduct that has persisted

24

after the "sale" to "Ethical Capital Partners". Described herein, upon information and belief, Defendant Prause filed false law enforcement reports against Plaintiff Rhodes (for purported stalking and attempted murder and domestic terrorism), Laila Mickelwait of #Traffickinghub (for purported distribution of CSAM), and Gary Wilson, the author of *Your Brain on Porn* (for purported stalking).

*Pornhub and Porn Addiction*

78.    The Pornhub/Aylo Defendants initially took a cordial approach toward Plaintiff NoFap. The official Twitter account of their website Brazzers followed NoFap on Twitter and, on December 14, 2016, responded to @NoFap's tweet, "INTERNET PORN CAUSES ERECTILE DYSFUNCTION!" with, "do you always yell this when you come?"

79.    In 2018, the Pornhub/Aylo Defendants used NoFap's name, without license, notice, or authorization, to market premium memberships, placing banner ads across the Pornhub website that stated "[Pornhub Premium Logo] FAILED NO FAP? It's ok, we got you […] CLICK HERE [arrow]".



As noted above, this reference to NoFap was directed toward Pennsylvania residents.

80.    The Pornhub/Aylo Defendants have increasingly pushed back against the concepts of porn addiction and recovery resources. Illustrating this shift, upon information and belief, since at least 2012, the footer text of the Pornhub website read, "We're always working towards adding more features that will keep your porno addiction alive and well." Around 2018, they changed this to, "We're always working towards adding more features that will keep your love for porno alive and well," removing the word "addiction". In the years that followed, the Pornhub/Aylo Defendants, their lobbying arm Free Speech Coalition, Defendant Prause, Defendant Ley, and

25

other porn industry surrogates repeatedly denied any connection between problematic pornography use and its potential adverse effects in the media, online, in academia, and in courtrooms.

81.    For over a decade, Defendant Prause and Defendant Ley have publicly portrayed themselves as disinterested third-party academics, leveraging their carefully curated reputations as purportedly credible licensed psychologists to advance the pornography industry's interests and attack its targets. However, recently discovered metadata has revealed that Defendant Prause and Defendant Ley have been covertly collaborating with the Pornhub/Aylo Defendants, specifically to disseminate disinformation targeting Plaintiff NoFap.

82.    Further reinforcing their longstanding covert relationship with the pornography industry, in September 2024, it was discovered that Solomon Friedman, the current head and co-founding partner of the Pornhub/Aylo Defendants, personally referred a journalist (Belinda Luscombe from TIME) to Defendant Prause and Defendant Ley. Upon information and belief, another journalist (Mark McLaughlin from The Sunday Times) shared that Defendant Prause was personally referred to him by Free Speech Coalition, the Pornhub/Aylo Defendants' primary trade association. These disclosures align with prior whistleblower statements and other corroborating evidence of Defendants Prause and Ley's concealed collaboration with pornography industry entities. Cumulatively, Defendant Prause has collaborated with Defendant Ley and the Pornhub/Aylo Defendants to disparage Plaintiff NoFap and Plaintiff Rhodes to millions of people after she executed the Non-Disparagement Agreement.

*Background of Defendant Nicole Prause*

83.    Defendant Prause has been described as a neuroscientist, sexual psychophysiologist, and statistician. Defendant Prause currently holds a therapy license (#27778)

26

issued by the state of California Board of Psychology. More recently, Defendant Prause has also presented herself as an expert on sexual harassment, violent extremism, domestic abuse, and online disinformation. She frequently argues against the existence of "porn addiction" and any causal link between pornography and potential adverse effects, both in academia and the media. Defendant Prause is often cited as an expert in blog articles that promote purported benefits of internet pornography or seek to debunk the classification of problematic pornography use (PPU) as a behavioral addiction.

84.    Defendant Prause's advocacy is far-reaching. Her publications often get ample press coverage, which, upon information and belief, appear to be amplified using publicists, creative professionals, and marketing services.



85.    Defendant Prause is frequently quoted, featured, or presented as an expert in major media outlets and productions. Upon information and belief, her appearances and coverage include After Porn Ends 2, BBC, Business Insider, CNN, Channel 4, CBS News, Comedy Central, Daily Beast, Der Spiegel, Discovery Channel, Factually with Adam Conover, Fox News, Fusion TV, Haaretz, HuffPost, i-D, MDLinx, Men's Health, Men's Journal, NBC News (including The Today

27

Show), Newsweek, New York Post, NPR (including Only Human, AirTalk, and Watching America), PBS (NOVA: The Secret Lives of Scientists), PopTech, Psychology Today, PsyPost, Reason Magazine, Reuters, Rolling Stone, Salon.com, Slate.com, Studio 10, Techdirt, The Atlantic, The California Sunday Magazine, The Daily Mail, The Guardian, The New York Times, The Sun (UK), The Times, Time Magazine, The Wall Street Journal, The Washington Post, Times Higher Education, and Vice Media.

86.     Defendant Prause has frequently collaborated with other academics and clinicians, most often Defendant Ley, but others including but not limited to James Binnie, Doug Braun-Harvey, Daniel A Burgess, Kelsy Burke, Kate Dawson, Chris Donaghue, Justin Dubin, Tammy Ellis, Peter Finn, Cynthia Graham, Joshua B Grubbs, Joshua A. Halpern, Victoria Hartmann, Natasha Helfer, Jonny Hunt, Erick Janssen, Erin Jesse, Taylor Kohut, Joe Kort, Marty Klein, Justin Lehmiller, Roger Libby, Rena Malik, Alan McKee, Geoffrey Miller, Silva Neves, Madita Oeming, Lisa A Paz, Samuel Perry, James Pfaus, Anna Randall, Emily F Rothman, Nicholas Sellke, Michael Seto, Rebecca Sullivan, Greg Siegle, Eric Sprankle, Cameron ~~Stanley~~Staley, Jonathan N Stea, Vaughn R Steele, Michael Vigorito, Brian M Watson, and Ashley Winter. Many of these individuals have assisted Defendant Prause by providing letters of support, submitting declarations, disseminating disinformation, collaborating on research, and otherwise aiding and abetting Defendant Prause in the tortious acts described herein.

87.     Liberos LLC is (or was) a for-profit "sexual biotechnology company" founded and created by Defendant Prause in 2015. Shortly after this legal action was first initiated, Defendant Prause dissolved Liberos LLC on January 17, 2025. However, Defendant Prause has continued to portray in appearances that she is the founder of this purportedly non-existent entity, so its current operations are unknown to Plaintiffs. For example, a podcast featuring Dr. Erika Miley

28

interviewing Defendant Prause released on March 17, 2025, describing Defendant Prause as being the founder of Liberos and a The Dissenter podcast episode, purportedly recorded on June 27, 2025, lists "[s]he is also the founder of Liberos LLC, an independent research institute" in its description. The Facebook page for Liberos LLC has continued to stay active and make posts. Under "[a]dditional affiliations" on Defendant Prause's ResearchGate.net profile, it listed Liberos LLC between "October 2014 – present" as of November 03, 2025.

88.     Defendant Prause also appears to have incorporated another business named Mind Measures LLC on October 01, 2021. It's only publicly viewable activity to date was to conduct "research" targeting Plaintiff NoFap. However, shortly after this legal action was first initiated, Defendant Prause dissolved Mind Measures LLC on January 17, 2025.

89.     Defendant Prause also has a serial tendency of falsely accusing others of harassment, stalking, threats, and otherwise attempting to harm her. She has made such false allegations against Laila Mickelwait, Gary Wilson, Plaintiff Rhodes, his attorneys, and many others. The one thing her recent victims have in common speaking up about pornography addiction, or sexual exploitation on Pornhub.

*Defendant Prause's Background at Idaho State University*

90.     On May 13, 2010, Defendant Prause was arrested by a Pocatello police officer for allegedly violating a restraining order after a series of incidents (documented over approximately 20 police reports) pertaining to a student she had reportedly been previously romantically involved with at Idaho State University where she worked at as an assistant professor. Police reports document that the student expressed that he "was in fear for his safety from Prause" and were also concerned that Defendant Prause, as "faculty at the University", would "access his student

information and possibly have access to his grades and the like." *See Pocatello Police Dept.*
*Incident Report No. 10-P06131 (March 30, 2010).*

91.     During another incident documented in the police reports, Defendant Prause was
reportedly involuntarily committed to a behavioral health unit.

92.     On May 14, 2010, Defendant Prause was criminally charged for "Domestic
Violence-Protection of Restraining Order" to which she entered a plea of not guilty. The charge
was originally dismissed by the court on June 22, 2010, with Defendant Prause under probation
with a list of conditions requiring her to "[c]ommit no misdemeanor or felony" through December
22, 2010.

93.     However, on February 17, 2011, Defendant Prause received a sentence for
"Domestic Violence-Protection of Restraining Order", suggesting that she may have violated the
terms of her probation, although the exact circumstances of the criminal conviction remain unclear
to Plaintiffs. *State of Idaho v. Nicole R. Prause, No. CR-2010-7529 (Bannock Cnty. Magis. Ct.
filed May 14, 2010).* While Plaintiffs hesitate to reference such incidents, they are relevant to
material issues herein, including Defendant Prause's pattern of concerning behavior—including
her repeated self-portrayal as a victim of stalking, her own pattern of stalking others including
Plaintiff Rhodes, and Defendant UCLA's negligence in hiring a problematic individual—conduct
that has persisted from at least 2010 to the present.



October 14, 2021

To Whom It May Concern:

In regards to your request for arrest information on Nicole Renee Prause, D.O.B.: 08/25/1978, the following is the only time she was incarcerated in the Bannock County Jail:

Time Served:  05/13/10 to 05/14/10
Arresting Agency: Pocatello Police Department
Charges/Court Case #: Violation of No Contact Order (CR-2010-0007729-MD)

If you need the original report on this arrest you will need to contact Pocatello Police and reference report 10-P09382, they also have additional reports along with Idaho State University Security. For dispositions on this case you will need to contact Bannock County Court Records at (208) 236-7272 and you can also check on traffic citations. If you have any questions please feel free to contact us at (208) 236-7123.

Sincerely,

R. Manning
Records Division
Bannock County Sheriff's Office

*Defendant Prause's First Job with Defendant UCLA*

94.    Upon information and belief, Defendant Prause was contracted by Defendant UCLA between approximately 2012-2015.

95.    Upon information and belief, and as asserted by third parties and as suggested by Defendant Prause's own accounts, Defendant Prause's first period of affiliation with Defendant UCLA was the subject of dispute and controversy.

96.    Upon information and belief, Defendant UCLA decided to not renew Defendant Prause's contract around 2015. While the exact circumstances of her departure are unknown to Plaintiffs, upon information and belief, a former colleague of Plaintiff Prause has claimed the non-renewal was due to her misconduct.

31

*Prior Complaints Submitted to Defendant UCLA by Third Parties*

97.    As longstanding critics of the concepts of PPU within the behavioral addiction model or excessive pornography use being the cause of adverse effects, Defendant Prause and Defendant Ley have aggressively pushed back against those who advocate for such concepts.

98.    Both Gary Wilson and Marnia Robinson had blogs hosted on *Psychology Today*, which, upon information and belief, Defendants Prause and Ley eventually succeeded in convincing *Psychology Today* to remove. Upon information and belief, the dispute between these parties (Defendants Prause and Ley vs. Gary Wilson and his wife Marnia Robinson) started in 2013 surrounding these *Psychology Today* posts, which quickly escalated to Defendant Prause falsely accusing Gary Wilson of physically stalking her, as well as expressing a wide variety of other concerning behaviors. Gary Wilson and his widow would report Defendant Prause's defamatory and harassing conduct to UCLA on ~~many~~multiple occasions.

99.    Defendant UCLA received notice of Defendant Prause's escalating misconduct, including unprofessionalism, defamation, harassment, DMCA abuse, and use of Defendant UCLA resources to target critics, yet failed to take corrective action.

*Defendant Prause's Second Job with Defendant UCLA*

100.    Upon information and belief, after her departure as a contractor in 2015, Defendant Prause has been employed again by Defendant UCLA since November 2021 as a statistician. Defendant Prause is listed on uclahealth.org as a "senior statistician" as a member of Arpan A. Patel's digestive diseases laboratory.

101.    Upon information and belief, since Defendant Prause was re-hired by Defendant UCLA, at least two journalists have contacted Defendant UCLA to inquire about Defendant ~~Prause's support of the pornography industry~~Prause.

32

102.     Upon information and belief, after one individual reached out to Defendant UCLA after being targeted by Defendant Prause, a university employee apologized for Defendant Prause's conduct and stated that Defendant UCLA maintained a "large file" concerning her behavior.

103.     As of November 03, 2025, Defendant Prause's ResearchGate.net profile listed her biography as a "Bioinformatics Programmer at UCLA in the Department of Medicine working on reward sensitivity, especially as relevant to substance use disorders and sexual responsiveness. I am also running the largest lab study of male orgasm physiology and post-orgasmic illness syndrome at UCLA with collaborators."

104.     Defendant Prause published letters featuring representatives of Pornhub, xHamster, and Free Speech Coalition denying connection to her. Defendant Prause and her counsel have also issued legal threats, including DMCA takedown notices, removing evidence of such ties, such as photographs of her attending the XRCO Awards, an event exclusively for pornography industry insiders.

105.     Defendant Prause has publicly used her employment at Defendant UCLA, which has added credibility to her tortious behavior and helped to advance the pornography industry's interests. Defendant Prause has frequently represented herself as affiliated with Defendant UCLA in emails, social-media posts, conference appearances, podcasts, interviews with journalists, publications she has authored, and other contexts while engaging in tortious and contract-breaching conduct. Defendant Prause's BlueSky biography included "UCLA bioinformatics, Dept of Medicine" and her X.com biography included "[s]cientist (bioinformatic programmer and psychophysiologist) studying primary rewards related to mental health at UCLA."



*Defendant Prause and the Criminal Trafficking Enterprise OneTaste*

106.    For years, Defendant Prause has been party to lucrative contracts—including at least one seven-figure agreement—while serving as a public-facing expert promoting the purported scientific benefits of OneTaste, an organization embroiled in controversy for alleged sex trafficking.

107.    Upon information and belief, Defendant Prause's involvement with OneTaste spans from as early as 2016 through 2025.



108.    According to the U.S. Attorney's Office, "OneTaste branded itself as a sexuality-focused wellness education company founded by Nicole Daedone in 2004. From approximately 2004 through 2018, OneTaste generated revenue by providing courses, coaching and events related

34

to so-called wellness practices, in exchange for a fee. Many OneTaste members lived in residential warehouses where they participated in courses and experimented sexually."

109. According to legal discovery, Defendant Prause spent substantial time working from this location and was party to a 1.6-million-dollar contract in exchange for her contributions. Plaintiffs believe and therefore aver that $1.6 million was a grossly disproportionate amount of money for the type of research Defendant Prause purportedly conducted.

110. According to the U.S. Attorney's Office, "Daedone and Cherwitz are both charged with forced labor conspiracy in connection with a years-long scheme to obtain the labor and services of a group of OneTaste members—including volunteers, contractors, and employees of OneTaste—by subjecting them to economic, sexual, emotional and psychological abuse, surveillance, indoctrination, and intimidation."

111. Generally speaking, porn addiction recovery resources do not exist in opposition to pornography performers nor industry members. As such, in February 2018, a porn industry whistleblower corresponded with Gary Wilson, claiming that Defendant Prause was secretly collaborating with the porn industry lobbying arm, Free Speech Coalition. Further, the whistleblower alleged a personal friendship with Free Speech Coalition's then-executive director, Eric Paul Leue.

112. Specifically, the whistleblower alleged that Defendant Prause helped facilitate a support group for pornography performers in Los Angeles for the Adult Performance Artists Guild. The whistleblower alleged that Defendant Prause leaked confidential information shared in the pornography performer support group meetings to Free Speech Coalition. Further, the whistleblower claimed that Defendant Prause got assistance with her research for OneTaste, which Defendant Prause claimed debunked the porn addiction model, from Free Speech Coalition.

35

*Background of Defendant David Ley*

113.    David Ley is a licensed therapist, *Psychology Today* blogger, the author of *The Myth of Sex Addiction* and *Ethical Porn for Dicks*, and an outspoken activist for the use of pornography. David Ley also advocates for what he has described as "sexual freedom," for example writing the book "*Insatiable Wives: Women Who Stray and the Men Who Love Them*" which explores and promotes non-monogamous sexual practices, namely "cuckolding" and "hot-wifing."

114.    Together, Defendants Prause and Ley are two of the most prominent media voices concerning pornography, frequently appearing in the same articles to argue that excessive pornography use does not lead to adverse effects, and to oppose the classification of PPUas a behavioral addiction. Articles concerning PPU routinely feature Defendants Prause and Ley mischaracterizing PPU as fringe pseudoscience while portraying their own views as the legitimate scientific consensus. Together, Defendants Prause and Ley continue to lead the opposition to PPU, supported by the substantial resources of the porn industry.

115.    The vast professional consensus is that it isn't ideal for children to use internet pornography. ~~As more and more children grow up using internet pornography, a growing number of US states have introduced laws requiring pornography websites to verify the ages of viewers.~~

116.    The Senior Community Manager for the Pornhub/Aylo Defendants posted on social media that "[a]ny age verification devastates traffic", that "Pornhub stands to lose 50%+ of traffic", that "it costs us money to verify, and overall it's a disaster" and "[a] law that censors an industry is not good for the industry." According to an October 31, 2025, *BBC* article, "Pornhub says the number of UK visitors to its website is down 77% compared with July, when more rigorous age checks for sexually explicit sites were introduced under the [United Kingdom] Online Safety Act.

36

It claims sites that are ignoring the new requirements are benefiting. The BBC has not been able to independently verify Pornhub's claim - however, data from Google shows searches for the site have decreased by almost half since the law came into effect."

117.    In recent years, various countries and US states have enacted age verification requirements for pornography websites. Rather than complying with these laws, Pornhub has generally opted to block its website in many of these jurisdictions, encouraging pornography users to bypass local laws using VPNs.

118.    Defendant Ley was the "lead expert" in litigation for Pornhub, xVideos, and the lobbying group Free Speech Coalition to oppose an age verification law passed in Texas.

119.    Defendant Ley has also served as an expert witness in OneTaste's defense against the U.S. government's prosecution.

120.    For years, Defendants Ley and Prause have often posted false, defamatory, and disparaging statements targeting Plaintiffs and other targets of the porn industry in near unison, incorporating similar talking points, the same images, and the same links. They interact with many of the same people across various social-media platforms. They republish each other's content, tag each other, cite each other, cite the same links and sources, maintain similar affiliations, have mutual social and professional networks, and generally follow the same patterns of conduct online, upon information and belief, in coordination. Their conduct further includes mutual amplification of each other's messaging, use of similar hashtags and distinctive phrasing, and repeated appearances together in media or academic contexts to lend credibility to their statements, all evidencing a common plan, purpose, and method of operation.



121.    Upon information and belief, Defendant Ley and Prause coordinate their conduct using various communication platforms. ~~For example,~~ David Ley posted a screenshot on X that revealed he communicates with Prause via the Signal communication, an encrypted text messaging app with a self-destruction feature.

122.    ~~On~~For one example of many, on July 10, 2023, Defendant Ley posted the *Slate* article titled "We Know ['']NoFap['] Is Misleading Men About Masturbation. It Might Be More Dangerous Than That." published on the prior day, which featured Defendant Prause in breach of the Non-Disparagement Agreement.[1]  In the Twitter post, Defendant Ley wrote: "NoFap has frequently used lawsuits to silence critics of their methods. This article probably has them panicked and breaking their fingers calling their attorneys."

*Background of Gary Wilson*

123.    Gary Wilson was the author of *Your Brain on Porn: Internet Pornography and the Emerging Science of Addiction*, a book that has sold over 100,000 English-language copies and has been translated into more than twenty languages. Before writing the book, Wilson created the website *YourBrainOnPorn.com*, which described itself as "a clearinghouse for the latest research, media, and self-reports on pornography's effects and harms."

---

[1] https://x.com/DrDavidLey/status/1678396853153562625

38

124.    Gary Wilson's author royalties from *Your Brain on Porn* were donated, in full, to a United Kingdom-based nonprofit organization called The Reward Foundation. The YourBrainOnPorn.com website described: "we focus on internet pornography. We look at its impact on mental and physical health, relationships, educational attainment and criminality. Our aim is to make the supporting research accessible to non-scientists. Everyone should be able to make informed choices about the use of internet pornography and not fall into the trap of believing it is just harmless, largely free adult entertainment- a big lure for children. We look at the benefits of quitting porn based on research and the reports of the many who have experimented with quitting it." Upon information and belief, The Reward Foundation is managed by Mary Sharpe, a Scottish lawyer (an advocate), and Darryl Mead, a PhD. The charity offers a free online training on problematic pornography use for professionals.

125.    Gary Wilson was regularly consulted by therapists, doctors, and researchers for his impressive breadth of knowledge regarding the effects of pornography on the brain. Although he did not hold a formal degree—having acquired his knowledge through college coursework and self-study—Wilson was widely respected for his extensive understanding of the neurological impacts of pornography. Prior to founding *Your Brain on Porn*, he taught courses in human pathology, anatomy, and physiology, serving as an "adjunct instructor" at Southern Oregon University and teaching anatomy independently at the Ashland Institute of Massage. In 2016, Wilson co-authored a peer-reviewed paper with seven U.S. Navy physicians titled *"Is Internet Pornography Causing Sexual Dysfunctions? A Review with Clinical Reports",* and subsequently another peer reviewed article he authored was published titled *"Eliminate Chronic Internet Pornography Use to Reveal Its Effects."*

*The Extensive Targeting of Wilson*

126.   Defendants engaged in a years-long campaign of defaming Gary Wilson, falsely accusing him of stalking and threatening Defendant Prause. The campaign was eerily similar to the one Defendants concocted against Plaintiffs in this matter.

127.   In addition, Defendant Prause filed sent ~~Mr.~~ Wilson multiple spurious cease and desist letters that had no basis in fact. As part of her campaign of harassment against ~~Mr.~~ Wilson, she went so far as to have one hand delivered to his residence at 10:00 pm at night.

128.   Defendant Prause and her colleagues, namely Defendant Ley, relentlessly harassed and defamed Gary Wilson on a near-daily basis. These messages included "Gary Wilson is a member of the Reward Foundation by his own admission. Gig is up, he has been stealing your money in this and who knows how many other ways. This information and the proof has been turned over to authorities. When I know if he will be arrested, I will update here. Be sure to look at the great majority of the [']reviews['] on his Amazon site too: most are the only review the person ever posted, five stars, claiming he saved their lives. These are hallmarks of fake reviews."

129.   In addition, Defendant Prause regularly ~~caused numerous hit pieces~~attempted to ~~be published in which she defamed~~get media outlets to publish false and defamatory statements concerning Gary Wilson, including but not limited to:

   a.   August 26, 2017: In an article in The Daily Beast written by Rob Kuznia, Kuznia wrote "Wilson frequently critiques Prause's studies on his website and also criticizes her in the comments sections of articles citing her work. In turn, Prause has accused him on public forums of being a [']stalker.['] [']The author, Gary Wilson, is a stalker who has written my name on his website over 1,500 times,['] she recently asserted in the comments section below an article about porn addiction. [']He has multiple no-contact and cease and desist orders, most recently for stalking.['] Wilson says he has never initiated a single email exchange with Prause and knows of no-contact order. She is trying, he said, to create a [']mythology of herself as a victim... so that the content of the debate is ignored.['] Prause also points out that Wilson doesn't have a college degree (a fact that he confirmed to The Daily Beast, though he did attend college for six

40

years). [']His pretending to represent science with no scientific training and fraudulent claims of expertise,['] Prause says, [']has led to a mass hysteria on par with the anti-vaccine movement.[']"

b. December 01, 2020: Daniel Van Boom in *CNET*.

c. February 25, 2021: Eddie Kim in Mel Magazine: On February 25, 2021, Eddie Kim from Mel Magazine sent an email to Gary Wilson requesting comment for "multiple stories on the various harassment and threats that sexual health researchers face, notably from those who oppose pornography." Eddie Kim continued that "I have spoken to Nicole Prause and am extremely familiar with your history with her". Eddie Kim wrote: "Prause's biggest concern is the posting of addresses where she may physically be, regardless of your dispute over whether it's a "residential" address or not. What was the purpose of you posting her possible location? Do you plan on doing it again in the future?" and "What conditions would it take for you to cease your public documentation of Prause's activities and claims that she is an alleged [']industry shill'] who conducts [']false science[']?"

d. March 02, 2021: Upon information and belief, Gary Wilson received an email from a producer at Dr. Phil in Los Angeles, writing "One of our viewers wrote into the show about an ongoing dispute between Gary Wilson and Nicole Prause. As you probably know, Dr. Phil helps mend relationships and conflict, I am interested in talking to the both of you regarding the ongoing manner."

130.     On or around January 12, 2018, upon information and belief, Defendant Prause and her collaborators got Gary Wilson's scheduled keynote presentation at the ~~International~~European Society of Sexual Medicine canceled.

*Real Your Brain on Porn*

131.     On February 01, 2019, over eight years after Gary Wilson created YourBrainOnPorn.com, Defendant Prause applied for a trademark with the United States Patent and Trademark Office (USPTO) for "YOURBRAINONPORN YOURBRAINONPORN.COM YOURBRAINONPORN YOURBRAINONPORN.COM YOUR BRAIN ON PORN" under the US serial number 88281342.

132.     A trademark enables the public to distinguish one entity from another and ensures that the reputation, trust, and goodwill associated with a mark are not misappropriated by unrelated

41

parties. A registered trademark prevents others from operating under the owner's identity, misleading consumers, or causing confusion regarding the source, sponsorship, or affiliation of goods or services. This protection is particularly critical for online service providers, as users rely heavily on names and branding to determine the authenticity and legitimacy of the websites they visit. In the absence of enforceable trademark rights, an organization faces significant risk when investing in developing or maintaining its services, because others would be able to freely misappropriate its name, goodwill, and brand identity. Competitors or malicious actors can pose as the organization, divert traffic, mislead consumers, distort messaging, or damage the goodwill associated with the organization's name, thereby creating substantial risk of consumer confusion, reputational injury, and economic harm rendering continued operation unsustainable.

133.    Plaintiff NoFap's trademarks rights are particularly important because, in an open marketplace of ideas, Plaintiff NoFap must be able to communicate its messages and positions clearly. The Porn Industry Defendants and their associates have repeatedly misattributed alleged statements by unrelated third parties to NoFap when disparaging the website, thereby increasing confusion about Plaintiff NoFap's actual views—the very type of confusion trademark law is intended to prevent. Upon information and belief, based on the conduct of the Porn Industry Defendants, they seek to be able to attribute anyone's statements—even their own—to Plaintiff NoFap as part of their campaign to undermine the platform's ability to remain online and reach new users.

134.    Defendant Prause and her collaborators' attempt to commandeer the trademark rights for "YOUR BRAIN ON PORN" demonstrates an established modus operandi of porn industry-affiliated entities attacking trademark rights to suppress and shut down recovery resources, just as the Porn Industry Defendants are attempting to undermine Plaintiff NoFap's right

to use and operate under its own name through dilutive conduct, supporting trademark infringement, challenging NoFap's right to hold a trademark in its own name, and other activities designed to weaken its trademark rights.

135.    On March 13, 2019, RealYourBrainOnPorn.com was registered.

136.    While Daniel A. Burgess registered the domain name, he alleged that he did so for others to use, and claimed that he did not create the content depicted on RealYourBrainOnPorn.com, nor operate the various social media accounts associated with the website. In short: Burgess claimed that his only involvement with RealYourBrainOnPorn.com was holding the domain name for others to use.

137.    On April 18. 2019: a press released was published: "New website [']RealYourBrainOnPorn.com['] launches for scientifically accurate information about pornography" - "Scientists and therapists specially trained in sexuality have merged their knowledge to support media, students, and consumers previously misled by inaccurate health information about pornography." The press release claimed to originate from Gary Wilson's hometown of Ashland, Oregon.

138.    After the press release was published to a new Twitter account, "Real Your Brain on Porn" at @BrainOnPorn, the very first account to publicize it was @Pornhub, the official Pornhub.com account owned by the Pornhub/Aylo Defendants.

43



139.    The RealYourBrainOnPorn.com website listed the following "experts": Marty
Klein, Defendant Prause, Defendant Prause, Emily Rothman, Samuel Perry, Taylor Kohut,
William Fisher, Peter Finn, Janniko Georgiadis, Erick Janssen, Aleksandar Štulhofer, Joshua
Grubbs, James Cantor, Michael Seto, Justin Lehmiller, Anna Randall, Victoria Hartmann, Michael
Vigorito, Julia Velten, Roger Libby, Doug Braun-Harvey, Alan McKee, David Hersh, Jennifer
Valli, Jason Winters, Chris Donaghue, and Charles Moser.

140.    Based on metadata evidence, Plaintiffs believe and therefore aver that Defendant
Prause operated the RealYourBrainOnPorn website. Additionally, three individuals connected
with the website independently attributed its operation to Defendant Prause.

44



141.    In response to the infringement of his organization's intellectual property rights, Gary Wilson sent cease-and-desist letters to Defendant Prause and others associated with the site.

142.    In response to the cease-and-desist letters, rather than changing the name of the website and withdrawal the corresponding trademark application, Defendants Prause, Ley, and other RealYourBrainOnPorn.com team members claimed to be victims of censorship. In defense, they mobilized the resources of the porn industry to defend their right to continue operating RealYourBrainOnPorn.com under the "Real" YourBrainOnPorn name and trademark the name of Gary Wilson's existingpreexisting website.

143.    In or around January 2021, Gary Wilson entered into a settlement agreement with Daniel Burgess and others.Tammy Ellis, who Burgess transferred the domain name to. The RealYourBrainOnPorn.com domain name was transferred to Gary Wilson's ownership, which now redirects to YourBrainOnPorn.com.

*Gary Wilson's Death*

144.    Gary Wilson died on May 20, 2021. While he had ongoing health issues related to a prior Lyme disease infection, those close to him consistently identified the harassment he endured from Defendant Prause and her associates as a major factor in causing his suicide. Multiple

45

people close to Gary Wilson have stated that he would still be alive today if it weren't for Defendant Prause. One friend said, "Nicole Prause killed Gary Wilson."

145.    Defendant Prause celebrated Gary Wilson's death on social media with multiple accounts. On the "soihrgoi" Reddit account and "Anonymous Otter" YouTube account, the comments linked to a PDF file hosted on Defendant Prause's Google Drive account.





[–] **soihrgoi** -11 points 4 years ago

Be sure you hear from Gary Wilson's victims, whom he incited violence, stalked and required law enforcement all over the world. Lyme disease causes rage and he also was an alcoholic. His last day all of his social media was covered in hatred. He was a spiteful, small, stupid man. Good riddance.

https://drive.google.com/file/d/1caIilwKZZpcwRl9f-b-p7dt\_oym4yBrD/view?usp=sharing





**Mr Scriptor** 2 hours ago
@Anonymous Otter  Hatemongers like you, Nicole?

**Anonymous Otter** 2 hours ago
@Purpose  Wait, are you threatening arson after someone actually committed arson from Gary Wilson's group? That is a felony. And exactly what I expect of Gary Wilson's idiot minions https://www.vice.com/en/article/akg6lv/police-investigating-arson-after-pornhub-ceos-mansion-goes-up-in-flames

**Anonymous Otter** 2 hours ago
@Mr Scriptor  What are you talking about? Are you high?

**Anonymous Otter** 2 hours ago
@Mr Scriptor  Literally the 24 hours before he croaked were nothing but bile from him. It is great. It shows what a horrific, evil, POS he really was, until his dying day spewing hatred.

---

**Anonymous Otter** 1 hour ago
@Mr Scriptor  His wife was a weed dealer. Before it was legal. Try reading.

**Mr Scriptor** 1 hour ago
@Anonymous Otter  Making claims without evidence?

**Anonymous Otter** 55 minutes ago
@Mr Scriptor  It is literally on his social media right now. Gary Wilson tortured scientists, especially women, for nearly 10 years. Good riddance.
https://drive.google.com/file/d/1callilwKZZpcwRl9f-b-p7dl_oym4yBrD/view?usp=sharing

**Mr Scriptor** 37 minutes ago
@Anonymous Otter  It isn't on his social media right now. Also, I notice you don't show examples, their Nicole.

"Gary Wilson tortured scientists, especially women, for nearly 10 years."
Gary Wilson never tortured scientists, especially never tortured women. Although you seem to do that yourself, Nicole.

"Good riddance."
Goodness, you're acting like a 13-year-old.
Show less

**Purpose** 24 minutes ago
@Anonymous Otter  hhahahahahahahhahahahahahahahahaha wtf ahhahahahahaha this actually is hilarious, weed dealer, tortured scientists jahahajahhahaha I'm really amazed on how you think somehow you still have credibility after trying to sue so many people, even Rebeca Watson who is on your side, a pro porn influencer But yeah, keep lecturing me about Mr. Wilson, I'm having fun

**Mr Scriptor** 17 minutes ago
@Purpose  Nicole is a joke.



146.    On January 10, 2025, Defendant Ley wrote on X ~~referred~~, referring to Gary Wilson's website as "the bizarre writings of an obsessed mentally ill paranoid troll with a high school education."

147.    On October 15th, 2024, Defendant Prause posted on her @NicoleRPrause Twitter account a response to somebody mentioning Gary Wilson and his book Your Brain on Porn. Defendant Prause replied "This little guy died by suicide and was immediately exposed for fraud he had threatened others for years against explosing [sic] ... Wilson was a Karezza preacher who claimed his 'balls' shrunk ... 'Chad' you say?"



148.    On December 29, 2023, a Medium.com purportedly authored by Defendant Prause titled "Are any anecdotes in "Your Brain On Porn" by Gary Wilson real?" In this article, Defendant Prause claimed Gary Wilson had fabricated many quotes in his book.

149.    Defendant Prause's claims about Gary Wilson fabricating quotes for *Your Brain on Porn* were false and defamatory.

150.    The continued conduct after Gary Wilson's death caused tremendous anguish for his widow, family members, and friends such as Plaintiff Rhodes.



Gary Bruce Wilson
May 12, 1956 - May 20, 2021

Commented [AR1]: Let me just say, before anyone recommends this be removed, that it is improper, etc., that I am insistent on a memorial for Gary staying in. I don't care about if the Defendants move to strike it, or if it is unusal in court filings. Please do not touch this memorial. And I wish to keep the page blank before the next section.

**4.    Background of The Prior Litigation**

*Early Interactions Between Plaintiffs and Defendants Ley and Prause*

151.    Defendant Ley and Defendant Prause have a long history of targeting Plaintiff NoFap with criticism, which eventually escalated into tortious conduct.

152.    In 2016, the behavioral addiction model for problematic pornography use received widespread media coverage, including on the cover of *TIME Magazine*. Belinda Luscombe's cover story featured people who believe excessive pornography use could lead to adverse effects, including Brian Anderson, coach Noah Church, actor Terry Crews, advocate Gabe Deem, app developer David Endacott, researcher Simone Kühn, Plaintiff Rhodes, researcher Chyng Sun, researcher Janis Whitlock, author Gary Wilson, researcher Valerie Voon, and psychologist Philip Zimbardo.

153.    On the other side of the debate, David Ley, Nicole Prause, and Mike Stabile from Free Speech Coalition argued against problematic pornography use as a behavioral addiction or directly causing adverse effects.

51



*Defendants Ley and Prause Connecting Porn Addiction Recovery to Extremist Groups*

154.    While the pornography industry, Defendant Prause, and Defendant Ley have long targeted porn recovery resources with a variety of criticisms, this pattern of conduct drastically escalated on October 27, 2018. On the day of the antisemitic attack at the Pittsburgh Tree of Life synagogue which resulted in eleven deaths, Defendant Ley published a *Psychology Today* blog post  titled *"Is One Sexual Behavior Triggering Certain Groups?"* where he alleged connection between that the purported "anti-masturbation" ideologies of three PPU recovery websites: Your Brain on Porn, NoFap, and Reboot Nation.

155.    Defendant Ley's article attempted to link Plaintiffs to the controversial Proud Boys group because Plaintiff Rhodes was interviewed about porn addiction by the founder of Vice Media, Gavin McInnes, prior to the Proud Boys existing. The article read: "(In 2016, Rhodes appeared on former Proud Boys leader Gavin McGinnes' podcast, and in 2018, denied knowing at the time that the Proud Boys was a white supremacist group.)"

52

156.    This statement by Defendant Ley is false. At the time of the interview, Gavin McInnes was known as a comedian and the co-founder of the popular media outlet Vice Media. Plaintiff Rhodes neither knew Gavin McInnes personally nor had any involvement of any kind with the Proud Boys, which McInnes founded at a later date. At the time of the interview, Plaintiff Rhodes did not know that the Vice Media co-founder Gavin McInnes would, at a later date, create the Proud Boys group and become a controversial figure. Likewise, as a media personality, McInnes also interviewed, collaborated, or appeared with a wide variety of individuals, including Ben Shapiro, David Cross, and Johnny Knoxville. However, Defendants Prause and Ley falsely accused Plaintiff Rhodes of supporting, promoting, or working with the Proud Boys and McInnes, and the porn industry would later launch a slew of hit pieces attempting to link Plaintiff Rhodes to the Proud Boys, despite him having no involvement in the same.

157.    Defendants Ley and Prause collaborated to disseminate the article widely. Defendant Ley's article was eventually shared on Twitter by xHamster, one of the most popular pornography websites, and Defendant Ley's *Psychology Today* article largely kicked off the pornography industry's strategy of attempting to connect pornography addiction recovery to violence, mass shootings, and extremist ideologies.

158.    On November 5, 2018, a pseudonymous Reddit account associated with Mike Stabile of the industry trade association Free Speech Coalition, posted a link to an xHamster blog post onto NoFap's Reddit.com-hosted forum ("r/NoFap"), writing "[a]ccording to xHamster, traffic from men was down 14.5% last November. They call it the #NoFap recession." Approximately three hours later, xHamster amplified Mike Stabile's r/NoFap post by sharing it on its official Twitter account. The day after, on November 06, 2018, xHamster posted "[e]arly this morning, after launching #YesFap #NutNovember to combat stigma against porn, we were hit with

53

violent #NoFap threats" and claiming that Plaintiff NoFap was "exhorting followers" to "kill pornographers", further alleging that "[i]t was no surprise to find that the so-called #NoFap movement had its roots in anti-gay, anti-woman, ~~anti-semitic~~antisemitic blogs", and tagging Free Speech Coalition in the thread of Twitter posts. xHamster later admitted that the statements it had attributed to NoFap did not actually originate from NoFap.



159.    xHamster claimed the purported death threat images came from two separate websites: https://archive.4plebs.org/pol/thread/167398839 (a post from April 09, 2018) and https://www.moddb.com/groups/conservatives-of-mod-db/images/anti-porn     (a     post     from November 30, 2017). Notably, the moddb.com image they referenced did not contain the same threatening language as the image xHamster circulated (the image was manipulated), and neither of the linked sources were associated with NoFap nor even mentioned NoFap in any capacity. Upon information and belief, xHamster and Mike Stabile from Free Speech Coalition communicated prior to November 06, 2019, to seed a precursor for media hit pieces.

54

 

160. On November 13, 2018, a hit piece by Sarah Manavis was published in *The New Statesman* titled "No Nut November: the insidious internet challenge encouraging men not to masturbate" with the subheading "[w]hat may appear to be just another weird and bizarre internet challenge is underpinned by extreme misogyny and threats of violence." It featured quotes from "Girl on the Net", a "professional sex blogger" and "audio porn producer" who, upon information and belief, had been in communication with xHamster's Alex Hawkins and Defendant Ley from at least 2017. *The New Statesman* article parroted xHamster's dubious allegations of threats and republished disinformation originating from Defendants Ley and Prause. This included disparaging Gary Wilson (the author of Your Brain on Porn), framing NoFap and No Nut November as "anti-masturbation", attempting to link No Nut November to the political group Proud Boys, and purporting that the "anti-wanking" community is an "excellent recruitment tool" for the far-right.

161. On November 30, 2018, a porn industry-aligned writer named Samantha Cole published a hit piece in *VICE* (featuring Defendant Ley's *Psychology Today* post and xHamster vice president Alex Hawkins), republishing xHamster's dubious allegations targeting Plaintiff NoFap, and writing that "[t]here's a real and concerning connection between the far right, racism,

55

white nationalism, and anti-masturbation or anti-porn beliefs." A flood of similar industry-supportive hit pieces followed in the months and years ahead, including by Lauren Vinopal in *Fatherly* (featuring Defendant Prause) and EJ Dickson in *Rolling Stone* (featuring Defendant Ley, Alex Hawkins from xHamster, and "Corey Price" from the Pornhub/Aylo Defendants). As the porn industry disinformation campaign continued to escalate—particularly Defendant Prause's actions—Plaintiffs filed suit against Defendant Prause and Liberos LLC in October 2019 for defamation and related claims.

*The Beginning of Defendant Prause's False Allegations of Criminality Targeting Plaintiff*

*Rhodes*

162.    After the @NoFap Twitter posts denying Defendant Ley and Prause's assertions, Defendant Prause posted online comments asserting that Plaintiff Rhodes was a "serial, misogynist harasser" , that he "violated [her] consent & now have an FBI cyberstalking report", that Plaintiff Rhodes "[threatens] to rape [and] stalk women", that Plaintiff NoFap is a "hate group", that Plaintiff Rhodes works with a SPLC-identified hate group Proud Boys, that Plaintiff NoFap is "misogynist", that Plaintiff NoFap was "promoting hate speech", that Plaintiff Rhodes was "stalking women online in violation of no-contact orders", and that visiting Plaintiff NoFap's website supports and furthers antisemitism. Such communications were posted on Twitter, *Psychology Today*'s comments section, and relayed to the pornography website xHamster and at least two journalists.

163.    Plaintiff Rhodes has not initiated unwarranted communication with or about Defendant Prause or engaged in any behavior that could be reasonably interpreted as cyberstalking Defendant Prause. Plaintiff Rhodes has never cyberstalked Defendant Prause or anyone else.

Plaintiff Rhodes has never threatened to stalk Defendant Prause or anyone else. Plaintiff Rhodes has had no known interactions with Defendant Prause outside of a few brief Twitter interactions.

164.    In her defamatory statements, Defendant Prause regularly knowingly and falsely equated posts across various websites, including, but not limited to posts containing the hashtag #nofap, mentioning or referencing "NoFap", or containing "NoFap" in their usernames, by other people to Plaintiffs NoFap or Rhodes, without evidence of any connection between the two, creating the impression that Plaintiff Rhodes or NoFap wrote these posts themselves.

165.    Among these false statements before the Prior Litigation, Defendant Prause reached out to a journalist who quoted Plaintiff Rhodes in a story about pornography published in *The Guardian*, tweeting false allegations that Plaintiff Rhodes has threatened to stalk and rape women.

166.    Upon information and belief, before the Prior Litigation and otherwise, Defendant Prause has repeatedly reached out to journalists to relay false and defamatory information about Plaintiffs Rhodes and NoFap.

167.    The conduct targeting both Plaintiff NoFap and Plaintiff Rhodes persisted, including Defendant Prause ~~purportedly~~ creating numerous sockpuppet accounts on Wikipedia to manipulate the page about NoFap.

*The Porn Industry Defendants Ley and Prause's Talking Points*

168.    A popular meme #NoNutNovember, reportedly inspired by Plaintiff NoFap, gained popularity on the Internet, gaining prominence in 2018. Participants would either pretend to or actually abstain from masturbating (or orgasm altogether) for one month and post about their experiences online, often accompanied with comedic or parodic commentary.

57

169.    In 2018, Alex Hawkins, vice president of one of the top pornography websites xHamster, issued a press release[2] detailing a 14.5% drop in web traffic, dubbing the drop in traffic as "Porn's #NoFap Recession."

170.    In 2018, Alex Hawkins, vice president of one of the top pornography websites xHamster, issued a press release[3] detailing a 14.5% drop in web traffic, dubbing the drop in traffic as "Porn's #NoFap Recession." On November 06, 2018, the website launched a campaign which they labeled "#YesFap" and publicly posted allegations on Twitter that NoFap was launched by "misogynistic" and "antisemitic" blogs, eventually citing an anonymous post[4] on moddb.com.

*Plaintiff Rhodes Participates as a Witness Against Defendant Prause in Two Matters*

171.    Years previously, on May 22, 2017, Rhodes was contacted by the California Board of Psychology requesting his participation as a witness investigating ~~a complaint or~~ complaints filed against Defendant Prause.

172.    Around June 2019, Rhodes participated as one of nine victim ~~witness~~witnesses by agreeing to submit an affidavit in a defamation lawsuit filed against Prause by a neurosurgeon, Donald Hilton, she reported to his hospital and medical board for sexual harassing, stalking, and threatening her, ~~which is detailed more thoroughly below.~~

*The "Attempted Murder"*

173.    Plaintiff Rhodes appeared on a television show, filmed in September 2019, titled *The Doctors* to discuss his experiences with problematic pornography use. Upon information and belief, prior to his planned appearance, Defendant Prause contacted the show's producers to relay false statements that Plaintiff Rhodes was stalking her, that he was subject to a restraining order,

---

[2] https://xhamster.com/media/news/porns-nofap-recession
[3] https://xhamster.com/media/news/porns-nofap-recession
[4] https://twitter.com/xhamstercom/status/1059890195133157376

and that Plaintiff Rhodes' appearance on the show would put Defendant Prause in physical danger. These false allegations by Defendant Prause resulted in Plaintiff Rhodes' appearance being temporarily canceled.

174.    Given Defendant Prause's pattern of filing false police reports against targets of the porn industry, including but Ms. Mickelwait, Gary Wilson, Plaintiff Rhodes used a time lapse camera to photograph his travel to Los Angeles every few seconds to ensure if accused of something, he could demonstrate his innocence.

175.    The timelapse camera acted as an alibi throughout Plaintiff Rhodes' short stay in Los Angeles, filming every moment of the ~23-hour trip, anticipating Defendant Prause would likely make a false accusation while he was there, knowing that she filed dubious police reports about others.



176.    Ultimately, rather than only falsely accusing him of stalking her, Defendant Prause ended up drastically escalating her usual claims by falsely accusing Plaintiff Rhodes of attempting

59

to film himself murdering her with a firearm while he was in Los Angeles filming *The Doctors* segment.

177.    The timelapse camera footage definitively establishes that Plaintiff Rhodes was not present at Defendant Prause's location (which was and remains unknown) and did not attempt to locate, stalk, confront, assault, or murder Defendant Prause, nor could he have possessed a firearm as asserted by Defendant Prause. Plaintiffs' counsel ~~have~~has preserved the video files in the event Plaintiff Rhodes is ~~ever~~ contacted by law enforcement due to Defendant Prause's false accusations.

178.    Shifting her timeline, Defendant Prause has also claimed that the alleged incident occurred in October. During that month, however, Plaintiff Rhodes was in the Pittsburgh area assisting with the care of an elderly individual in hospice with terminal cancer. Plaintiff Rhodes has alibis for the entirety of October 2019~~, including a witness who has already submitted a declaration under penalty of perjury substantiating that Plaintiff Rhodes was in the Pittsburgh~~.

179.    Since the Prior Litigation concluded, Defendant Prause has continued to make the defamatory and absurd claim that Plaintiff Rhodes attempted to murder her. For example, on December 28, 2021, Defendant Prause posted on her @NicoleRPrause Twitter account that ~~""October 19, 2019 "~~after Wilson posted my physical address I was sexually assaulted outside of my laboratory. We later found out one of his followers had flown to Los Angeles that weekend with a gun intending to [']confront['] me."

180.    On April 03, 2022, Defendant Prause posted to her @NicoleRPrause Twitter account: "When I heard an anti-porn activist flew across the country with a gun & body camera in his luggage to [']confront['] me and film it, our gun laws did not stop him."

*The Prior Litigation: Procedural Background*

181.    In October 2019, Plaintiff Rhodes filed a federal lawsuit against Defendant Prause and her company Liberos LLC alleging defamation, alleging that Defendant Prause was collaborating with DavidDefendant Ley and the pornography industry, including its primary lobbying group, to defame and ultimately deplatform Plaintiff NoFap from continuing to provide peer support resources for recovering problematic pornography users.

182.    Plaintiff Rhodes' prior lawsuit against Defendant Prause and Liberos LLC did not reduce Defendant Prause's conduct, which drastically escalated in subsequent months.

183.    On November 11, 2019, Plaintiff NoFap launched a fundraiser to raise money to help litigate against Prause and Liberos.

184.    Defendant Prause fabricated that she was receiving death threats as a result of thea legal fundraiser, making the first false accusation approximately 22 minutes before itthe fundraiser was publicly viewable.

185.    The litigation between Plaintiff Rhodes and Defendant Prause settled on February 26, 2021 under "mutually agreeable and confidential terms." However, after the settlement, Defendant Prause's conduct targeting NoFap only escalated. Further, Defendants Prause and David Ley took to social media and mailing lists to claim that Defendant Prause won the prior litigation, rather than settled it.

186.    Aaron Minc, the principal of a law firm representing NoFap LLC, initiated an adversary proceeding against Defendant Prause in the California Bankruptcy court seeking to file a defamation suit against her.

187.    After receiving permission from the bankruptcy court to pursue litigation against Defendant Prause, on March 12, 2021, Minc formally included Defendant Prause as a defendant

in the state of Ohio alleging defamation. Trial was set for February 13, 2023, but on the eve of trial

the parties reached a settlement agreement, which was eventually finalized on May 15, 2023,

resulting in Defendant Prause paying damages and issuing a retraction statement. Remarkably,

Prause did not declare that she has been embroiled in litigation connected to the very subject of

her paper, throughout the entire authoring and publication process.

*The Non-Disparagement Agreement*

188.    The purpose of the settlement agreement was simple. It was to allow Defendant

Prause to move forward with her life without her continued targeting of Plaintiff. In exchange for

Defendant Prause agreeing to sweeping non-disparagement clauses, Plaintiff Rhodes released

Defendant Prause from any and all claims or potential claims to the point of the execution of the

agreement.

189.    Specifically, the settlement agreement included:

> "Dr. Prause agrees to not personally or anonymously defame or disparage Mr.
> Rhodes. For purposes of this Agreement, "disparagement" shall mean any negative
> and offensive statement (verbal, written, or electronic) made about Mr. Rhodes, his
> websites or products or services, companies or organizations owned by him, his
> registered trademarks or service marks, his employees or contractors or team
> members (but specifically excluding Gary Wilson, Stacy Sprout, DJ Burr, John
> Adler, Laila Mickelwait Haddad, Bradley Green, Stephanie Carnes, Linda Hatch
> and Geoffrey Goodman), or his family members, in a setting (real or virtual), that
> is accessible to the general public, has a reasonable likelihood of being seen or
> heard by one or more members of the general public, is, in fact, seen or heard by
> one or more members of the general public, and which either explicitly identifies
> Mr. Rhodes, his websites or products or services, companies or organizations
> owned by him, his registered trademarks or service marks, employees or contractors
> or team members or family members or provides sufficient detail that a passing
> member of the public would reasonably conclude that the statement is about Mr.
> Rhodes. Any and all statements published on the Internet shall be presumed to have
> been seen by one or more members of the general public without the need to provide
> evidence of the same." *Settlement Agreement and Full and Final Mutual Release,*
> *§ 8, at 3–4 (Feb. 26, 2021).*

190.    Although many of the statements made by Defendant Prause and her collaborators have been false and defamatory—resulting in tortious violations entitling Plaintiffs to injunctive relief and damages—Plaintiffs do not need to meet the threshold of defamation *per quod* or *per se* to prevail on their claims. This is because Defendant Prause agreed not only to refrain from defaming Plaintiffs but also to refrain from disparaging them in any capacity. By definition, any negative statement seen or heard (or otherwise observed) by one or more members of the general public constitutes disparagement. In exchange for Plaintiffs releasing their prior legal claims against Defendant Prause up until the execution of the Non-Disparagement Agreement, Defendant Prause agreed to sweeping prohibitions on her future ability to criticize, insult, or disseminate any negative statement about Plaintiffs.

191.    The Non-Disparagement Agreement explicitly defines who is protected from disparagement: Plaintiff Rhodes, his websites or products or services, companies or organizations owned by him, his registered trademarks or service marks, his employees or contractors or team members, or his family members.

192.    Defendant Prause was well aware of her contractual obligation not to disparage the Plaintiffs. For example, to avoid answering a question, she cited the Non-Disparagement Agreement during a deposition conducted on August 12, 2022.

**5.    Post-Settlement Disparagement**

193.    Defendant Prause breached the Non-Disparagement Agreement within 9 days.

194.    On March 07, 2021 at 10:42 pm ET, Defendant Prause responded to a person on Twitter, writing "Is there a reason you insist on calling adult women [']girls[']? Or are you just following the pattern of misogyny common in the anti-porn extremists?" In the post, Defendant Prause linked to a disparaging paper about Plaintiff NoFap.

63

195.    Later on March 07, 2023, at 11:42 pm ET, Defendant Prause posted to Twitter, upon information and belief, referring to a victim-witness declaration submitted in November 2021: "A court filing by NoFap claimed that I used ['] racist language['] in a complaint against DJ Burr. This defamatory claim was recently reposted by @GabeDeem and Gary Wilson. It is false. No evidence of any racist language was ever provided."

196.    In a second tweet, Defendant Prause posted "DJ Burr continues to state that I have been criminally convicted of slander and faked my own death threats. I have never been indicted, convicted, or found guilty of any criminal slander. I have made FBI and LAPD reports for criminal death threats I received." Defendant Prause attached a screenshot of the disparaging and retracted Scram News story to one of the March 07 Twitter posts.

197.    On March 11, 2023, Defendant Prause posted to Twitter "Today #NoFap posted yet again that I am in the porn industry, including a link to a statement by Alexander Rhodes that I am in porn. I have never been in any part of the porn industry or received any support from any porn industry. Any claims otherwise are false and defamatory."

198.    However, Plaintiffs did not make any post concerning Defendant Prause and does not know what she could have been referring to, nor has Plaintiff Rhodes ever claimed that Defendant Prause has ever appeared in pornography content.

199.    On March 11, 2021, Defendant Prause made four Twitter posts underneath mentions of Matt Fradd, repeatedly stating that the Legal Fees Fundraiser was fraudulent, in violation of the Non-Disparagement Agreement. The posts included a screenshot of the Legal Fees Fundraiser and an audio file of Matt Fradd imploring his listeners to donate to it. Defendant Prause wrote, in part, "Isn't this you lying to your followers that their money would go to fight the porn industry? […] Then it never did and is gone?" and "Matt Fradd also raised funds by lying to his

64

followers that they could donate to take down ['] the porn industry[']. The funds never had anything

to do with the porn industry and are now gone."

200.    On March 15, 2021, Defendant Prause tweeted "NoFap has republished links today

to Alexander Rhodes' claims that there were no threats against me posted on his NoFap websites.

This is false and defamatory. Here are some of the threats, which NoFap moderators deleted, and

have no evidence of reporting." However, Plaintiffs did not publish any statement concerning what

Defendant Prause purported and does not know what she ~~could be~~was referring to.

201.    On March 17, 2021, at 11:46 am ET, Defendant Prause tweeted "Science on anti-

sex groups online have highlighted misogyny problems for years", linking to a disparaging paper

about Plaintiff NoFap. Another Twitter post read "There is considerable science expressing

concern about the increasing anti-woman sentiments in online ['] sex addiction['] and ['] porn

addiction['] forums Example:" with another link to the disparaging paper. At 11:55 am ET,

Defendant Prause tweeted screenshots from NoFap.com, writing "Days after my sexual assault

outside my office, I received a notification that my name was on a sex addiction forum. They

wanted to fine women who wear leggings for inciting men. I was wearing leggings when I was

assaulted, which my perpetrator actually commented." and "This is how they think about women.

This is how I was being discussed on a sex addiction forum."

202.    On March 17, 2021, Defendant Prause retweeted a post by her longtime

collaborator and friend Geoffrey Miller, @primalpoly on Twitter, that read "Your periodic

reminder that the key leaders of the anti-porn/'no-fap'/'sex addiction' movement are sociopathic

grifters who ignore scientific research & inspire homicidal/suicidal levels of sexual shame & self-

hatred in their followers."

65

203.    On March 17, 2021, Defendant Prause tweeted ".@NoFap just stated that they [']won['] a defamation lawsuit against me. That is false and defamatory. The lawsuit was dismissed with prejudice and no finding of defamation."

204.    On March 18, 2021, Defendant Prause tweeted that "@StaciSprout, CSAT, just posted that I was [']forced['] to settle lawsuits with [']big['] fees. This is false and defamatory. Lawsuits were withdrawn with prejudice. I paid nothing. No defamation finding was ever made."[5]

205.    On March 21, 2021, Defendant Prause published a blog post on her Medium account titled "Pornography addiction forums could radicalize another shooter" with the description "What science is revealing about online pornography addiction forums", which violated the Non-Disparagement Agreement multiple times, even linking to articles by others, such as her collaborators, directly naming Plaintiff NoFap. The post included "I had been leading an independent lab for nearly 10 years studying various aspects of genital responsiveness, but the death threats first came when I published a study that did not support pornography addiction. The death threats were thick with misogyny and antisemitism, which seemed bizarre as they simultaneously bragged that they were liberal bastions for equality. I went quickly to being physically stalked, moving my home multiple times, and now living in address protection. Last week, someone threatened to send a private investigator to find my new home. Four days later, the Atlanta murder of (mostly) women seemed to manifest the incredible vitriol I have watched grow. […] As I have experienced first-hand, these forums are known for vitriolically attacking female scholars with differing viewpoints. A forthcoming study describes the validation and escape that

---

[5] ~~Ms.~~ Sprout ~~would ultimately serve as~~was a witness in the Prior Litigation as well as Dr. Hilton's lawsuit against Defendant Prause. This caused Defendant Prause to escalate the intensity and nature of attacks against ~~Ms.~~ Sprout. Defendant Prause would sue ~~Ms.~~ Sprout on two separate occasions~~, the first for stalking or harassment, the second for defamation.~~ Both cases were later dismissed~~, the former for lack of jurisdiction, the later through an anti-SLAPP motion to dismiss. Defendant Prause used the same playbook against Ms. Sprout as she did against Plaintiffs and many others~~ without prejudice.

349 of 506

seems to fuel these forums. This creates an in-group unable to integrate information inconsistent with their viewpoint. Furthermore, the [']porn addiction['] framework in these forums seems designed to keep these young men in distress, believing that they are powerless without the forum. This serves the agenda of well-funded religious organizations in the USA, so there is a protective wall around this growing group."

**Commented [AR2]:** The footnote here contained an outright falsity.

206.    Between March 2021 to present, Defendant Prause posted defamatory and disparaging links about Plaintiffs to her Medium blog at many many times.

207.206.    The conduct described in this Complaint is a representative example of the frequency and nature of Defendant Prause and her collaborators' actions over the past four years since the execution of the Non-Disparagement Agreement.

208.207.    For the sake of brevity, many subsequent contract breaches will be summarized into categories based on the type of conduct or defamatory claims. Indeed, it would take plaintiffPlaintiffs many hundreds of additional pages to fully describe the extent of the tortious conduct to which they had been subjected. However, Defendant Prause has violated the Non-Disparagement Agreement hundreds of times, disparaging Plaintiffs to millions of people in collaboration with the other Defendants—often while falsely portraying herself as a victim of the Plaintiffs and attributing fabricated actions to them.

6.    **Disparagement Associated with Other Legal Actions**

*Minc vs Prause*

209.208.    Aaron Minc was a memberprincipal of the law firm representing Plaintiffs in the Prior Litigation. Defendant Prause defamed him in retaliation for doing the same, which resulted in his commencing a lawsuit against her.

210.209.    While Aaron Minc's defamation lawsuit against Defendant Prause began in 2020, Defendant Prause continued to defame and disparage Plaintiffs in the context of this litigation numerous times after executing the Non-Disparagement Agreement.

211.210.    Defendant Prause settled the matter on February 12, 2023, paying damages to Aaron Minc and issuing a retraction statement. This statement included "At the time I published the tweets described, I had no information or evidence that Aaron Minc knew my address or disclosed it to anyone. I do not believe that Aaron Minc knew or disclosed my address and have never had information to the contrary. […] I have no information that Aaron Minc or Minc Law has ever stalked or harassed me in any way, or ever worked or cooperated with anyone, to do me any physical harm. […] I made a mistake publishing the tweets, because it was never my intention to suggest or claim that Mr. Minc or Minc Law has ever participated in any plan or scheme to harm me".

*Rhodes vs Azeff*

212.211.    Plaintiff Rhodes came from a modest background, experiencing an unstable childhood, marred by periods of neglect and sexual abuse. Plaintiff Rhodes was sexually abused by multiple people when he was a child, which he has never spoken about in a publicly observable manner and only started to process as an adult.

213.212.    Azeff is an attorney, writer, and former sex worker. After years of split custody, Plaintiff Rhodes entirely stopped living with Azeff around age 13, except for occasional visitation, although they remained in contact. In the years before and after, he grew increasingly uncomfortable with her as she subjected him to demeaning, inappropriate, and abusive treatment. Plaintiff Rhodes distanced himself over the years—and further still in 2019—after she expressed concerning behavior, including making contradictory allegations against a specific family

member, along with numerous allegations about various other family members. Further, Plaintiff

Rhodes was informed by an extended family member that they witnessed her sexually abusing him

as a child. With the support of third parties and a therapist, Plaintiff Rhodes distanced himself from

Azeff further and eventually was able to cut her off completely. Upon information and belief,

Defendant Prause utilized an investigation firm called CoventBridge Group Ltd, including with an

individual named Matthew stein, to conduct opposition research on Plaintiff Rhodes.

214.213.     Upon information and belief, CoventBridge Group Ltd, or another agency

hired by Defendant Prause, her counsel, or other entities connected to Defendant Prause, likely

deployed an in-person private investigator to surveil Plaintiff Rhodes.

215.214.     Most of Azeff's assertions were easily refutable with material evidence,

such as text messages, statements by others, emails, and other corroborating evidence.

216.215.     Upon information and belief, Defendant Prause assisted Azeff in preparing

the statementa defamatory statement which Defendant Prause produced in her bankruptcy and

subsequently disseminated online, which Azeff supplemented with personal information presented

in a false light.

> **Commented [AR3]:** .... what statement? When you delete vast swaths of content, things do not make sense anymore.

217.216.     In or around January 2021, upon information and belief, Defendant Prause

disseminated statements puportedly by Ms. Azeff widely online, including by hiring a service on

Fiverr.com to assist.



218.217.    On June 14, 2021, a Pittsburgh-area man named Doug Allen emailed counsel for Plaintiff Rhodes, asserting that he had been included in email communication with Ms. Azeff, Defendant Ley, and Defendant Prause, concerning Plaintiff Rhodes being purportedly involved in a mass shooting incident that occurred in Pittsburgh in 2009. Upon information and belief, further emails with Doug Allen asserted that Plaintiff Rhodes was a hacker who likely wrote a manifesto that the killer published prior to the shooting, and that Plaintiff Rhodes was an accomplice to the mass shooting.

219.218.    In emails purportedly between Doug Allen and Ms. Azeff, other defamatory claims were concocted, with discussion regarding how Azeff could make money from her such claims:

Indelibly (L)Inked - The Story of My
Relationship With My Son, No Fap Founder
Alex Rhodes.

(The Mistakes I Made Parenting A Boy Who Some Believe Is A Dangerous
Con Artist, Thief, and Bullying Fraud)

Featuring interviews with:

- A man who claims to be Alex Rhodes' gay ex-lover who said Alex Rhodes forced him to masturbate watching Thailand child porn, then threatened his family.
- A man who claims to be member of Alex Rhodes online forum who said Alex Rhodes sent him unsolicited pornographic online video chats.
- A woman who claims she caught her husband and Alex Rhodes masturbating on a Zoom calls and then was sent death threats.
- A man who claims to be a "black hat" SEO expert who gamed the search engines for Alex Rhodes and whose dog was found dead the day after he threatened to go public.
- A man who claims Alex Rhodes was the instigator in the most mass shooting of women in a Pittsburgh gym.
- And many more...

DISCLAIMER: I have no way of verifying the stories of those I interviewed. All asked to remain anonymous.  They wanted their stories shared to protect innocent people from becoming future victims of Alex Rhodes. Each one reached out to me through DM on my private Reddit accounts.

The biggest thing I can tell you, Althea, is that this book WILL be a money-maker.  The book itself will become popular, AND you will become recognized globally as an expert in this arena.  There's nothing anybody can do to stop that.  Especially in the #metoo era.  How many other women feel bullied and victimized by entitled sons due to bad parenting advice given to an entire generation?

I anticipate you will be able to get $8000 to $15,000 just for keynote speaking engagements.  If the lawyers try to interfere in any way, you may be able to file a countersuit for REAL damages - not imaginary damages.

220.219.    Azeff would interact back and forth with Defendant Ley on social media to disseminate false and defamatory statement concerning Plaintiff Rhodes, along with making other social media interactions with Defendant Prause, Gustavo Turner from XBIZ, Mike Stabile from

70

Free Speech Coalition, Eric Sprankle, Jacob Johanssen, @DaddyWolfBear, and @JFTxWine (a friend of Defendants Prause and Ley).

221.220.	On March 03, 2022, as counsel for Plaintiff Rhodes was still attempting to serve Azeff with the lawsuit, Defendant Ley announced the pseudonymous litigation against Azeff on social media:



222.221.	On May 19, 2022, the @DrDavidLey Twitter account announced a video depicting Ms. Azeff and purportedly uploaded by her to YouTube, which was also shared by @DaddyWolfBear and others. According to the Biology Relative's sworn statement, she wrote "I included Dr. David Ley, too, as I had ['] come out['] on Twitter on his account." Upon information and belief, Defendants Prause and Ley cultivated, advised, and coordinated with Ms. Azeff to maximize harm to Plaintiffs.



71

223.222.    On June 03, 2021, Defendant Ley posted on his Twitter account, encouraging people to follow ~~Ms.~~ Azeff on Twitter.



224.223.    Throughout the litigation, Azeff and Defendants Prause and Ley disseminated additional false and defamatory claims concerning Plaintiff Rhodes. Azeff docketed information and statements that, upon information and belief, were provided to her by Defendants Prause and Ley.

225.224.    Since the Non-Disparagement Agreement was executed, Defendants Prause and Ley continued to collaborate with ~~Ms.~~ Azeff to disparage and defame Plaintiffs, including connecting ~~Ms.~~ Azeff with journalists and alerting journalists to her claims, to try to get hit pieces placed on Plaintiffs.

*Prause vs Stebbins*

226.225.    Upon information and belief, Defendant Prause previously filed reports against Plaintiffs' lead counsel, Andrew Stebbins, alleging unethical conduct. In a declaration, Stebbins wrote "As a result of my representation of my client, Ms. Prause has reported me to the Ohio Supreme Court Office of Disciplinary Council at least twice. Included in those complaints were allegations that I somehow violated Ms. Prause's rights under the California Safe at Home

72

Act, similar to the vague allegations made in the Complaint in this matter. […] Both of these reports were summarily dismissed by the Ohio Supreme Court without any further investigation." *Prause v. Stebbins, No. 23SMSC00846 (Cal. Super. Ct., L.A. Cnty., Santa Monica Courthouse, Small Claims Div., filed June 5, 2023) (Declaration of Andrew C. Stebbins, executed May 24, 2023, ¶¶5–6).*

227.226.      On April 27, 2023, Prause filed a small claims lawsuit against Andrew Stebbins, an attorney representing NoFap, alleging defamation stemming from legal services representing NoFap and its founder against Prause. See Prause v. Stebbins, No. 23SMSC00846 (Cal. Super. Ct. L.A. Cnty.). The complaint alleged that "Defendant has engaged in multiple counts of defamation per se to five journalists and members of the public in California that resulted in real and presumed damages. Defendant has violated the California Safe At Home provisions three times, despite being notified of the Plaintiff's enrollment in same."

228.227.      On December 29, 2023, Defendant Prause's lawsuit against Andrew Stebbins was dismissed without prejudice for lack of jurisdiction.

### 7.    The Taylor & Francis Paper

*Background of the Taylor & Francis Defendant*

229.228.      Defendant Taylor & Francis is, according to its website, "one of the world's leading academic publishers – and one of its most enduring. For more than two centuries Taylor & Francis has been committed to the highest quality scholarly publishing, and this remains our goal today. Our purpose is to foster human progress through knowledge – something we've been doing since the Enlightenment. We aim to promote a positive future for everyone through our work. Our imprints include Taylor & Francis, Routledge, CRC Press, F1000 Research, Dove Medical Press and PeerJ. We've published over 145,000 book titles, and we actively publish over

73

2,700 journals." Defendant Taylor & Francis is the academic publishing division of their parent

company Informa PLC, whose website reported over 4 billion dollars of revenue in 2023.

230.229.    One of the journals published by Defendant Taylor & Francis is named

*Deviant Behavior*. Explanation of Deviant Behavior. According to Taylor & Francis' website,

"*Deviant Behavior* is the only journal that specifically and exclusively addresses social deviance.

International and interdisciplinary in scope; it publishes refereedreferenced theoretical,

descriptive, methodological, and applied papers. All aspects of deviant behavior are discussed,

including: crime, juvenile delinquency, alcohol abuse and narcotic addiction, sexual deviance,

societal reaction to handicap and disfigurement, mental illness, and socially inappropriate

behavior."

231.230.    Defendant Taylor & Francis purports to be a member of the Committee on

Publication Ethics ("COPE") and lists purported ethical guidelines on their website, including but

not limited to:

a. Declaring Potential Conflicts of Interest: "Competing interests can be financial or
   non-financial in nature. To ensure transparency, you must also declare any
   associations which can be perceived by others as a competing interest."

b. Declaring Contributions: "Listing authors' names on an article is an important
   mechanism to give credit to those who have significantly contributed to the work.
   It also ensures transparency for those who are responsible for the integrity of the
   content."

c. Citing Credible Sources: "Research and non-research articles must cite relevant,
   timely, and verified literature (peer-reviewed, where appropriate) to support any
   claims made in the article. You must avoid excessive and inappropriate self-citation
   or prearrangements among author groups to inappropriately cite each other's work,
   as this can be considered a form of misconduct called citation manipulation. […] If
   you're the author of a non-research article (e.g. a Review or Opinion) you should
   ensure the references you cite are relevant and provide a fair and balanced overview
   of the current state of research or scholarly work on the topic. Your references
   should not be unfairly biased towards a particular research group, organization or
   journal."

74

d. <u>Avoiding Misconduct</u>: "Taylor & Francis takes all forms of misconduct seriously and will take all necessary action, in accordance with COPE guidelines, to protect the integrity of the scholarly record. Examples of misconduct include (but are not limited to): Affiliation misrepresentation […] Citation manipulation […] Undisclosed competing interests […] Unethical research […] Image or data manipulation/fabrication".

e. <u>Obtaining Consent from Subjects</u>: "Taylor & Francis endorses the recommendations of the International Committee of Medical Journal Editors (ICMJE), which emphasizes that patients and study participants have a right to privacy that should not be infringed without informed consent."

f. <u>Avoiding Citation Manipulation</u>: "Miscitation: where articles are inaccurately cited leading to misattribution. Where citation manipulation is suspected or detected, it will be subject to an investigation. Where this behaviour is identified, unpublished articles may be rejected, or if published, may be subject to a post-publication notice, such as retraction. Where there is evidence of repeated behavior, or a deliberate attempt to engage in citation manipulation, Taylor & Francis may notify the individual's institution."

g. <u>Not Manipulating the Publishing Process</u>: "Taylor & Francis has a zero tolerance policy regarding the manipulation of the submission, peer review or publication process […] Unethical or undue influence over editorial decision-making […] Upon being made aware of a concern, we will conduct a full investigation in accordance with this policy."

~~232.~~231.    Defendant Taylor & Francis defines a conflict of interest on their website.[6]

They write, "Some examples of financial conflicts of interests include:"

a. "Employment or voluntary involvement"
b. "Collaborations with advocacy groups relating to the content of the article[12]."
c. "Personal fees received by the authors as honoraria, royalties, consulting fees, lecture fees, or testimonies[12]."
d. "Holding a position on the boards of industry bodies or private companies that might benefit, or be at a disadvantage financially or reputationally from the published findings[12]."
e. "Writing assistance or administrative support from a person or organization that might benefit, or be at a disadvantage from the published findings[12]."
f. "Personal, political, religious, ideological, academic and intellectual competing interests which are perceived to be relevant to the published content[12]."
g. "Involvement in legal action related to the work[12]."

---

[6] https://authorservices.taylorandfrancis.com/editorial-policies/competing-interest/

233.232.    Defendant Taylor & Francis defines data fabrication and falsification on their website,[7] writing "It is essential that all data is accurate, and representative of your research. Cases of data fabrication/falsification will be evaluated by the editor of the journal and Taylor & Francis." On another page,[8] Defendant Taylor & Francis published: "Where deliberate action has been taken to inappropriately manipulate or fabricate images or data. This is a serious form of misconduct as it is designed to mislead others and damages the integrity of the scholarly record with wide-reaching impact and long-term consequences."

234.233.    By publishing these ethical guidelines and maintaining membership in the Committee on Publication Ethics ("COPE"), Defendant Taylor & Francis held itself out as a publisher of credible, scientifically rigorous, empirically supported, and otherwise reliable information.

*Overview of the Taylor & Francis Paper*

235.234.    Defendants Prause and Ley posted about the upcoming Taylor & Francis Paper on social media:

    a.   November 22, 2022: @NicoleRPrause posted on Twitter, writing "Thank you for the article. We have a scientific article under review about the violence on one anti-porn forum. […] I suspect people will be very surprised to find these groups are so violent!"

    b.   January 19, 2023: @NicoleRPrause posted on Twitter, writing "Reboot websites are still up and recruiting youth, where they glorify murdering people who work in the adult industry. @NCOSE, @lisaling, @gopTodd and others advertise these websites. Our paper on the extremist violence in these groups is under review."

    c.   March 29, 2023: @NicoleRPrause posted on Twitter, writing:

---

[7] https://editorresources.taylorandfrancis.com/policies/data-fabrication/
[8] https://authorservices.taylorandfrancis.com/editorial-policies/misconduct/



d. <u>April 10, 2023</u>: @NicoleRPrause posted on Twitter, writing "We have data new under review linking her last campaign to increased planned-violence posts on anti-porn forums. This is incitement, and I will help law enforcement link anything they incite appropriately to the group."



e. <u>November 02, 2023</u>: Both Defendant Prause and Defendant Ley announced the upcoming paper on Twitter. Defendant Ley wrote "Very exciting. Research paper on violence in no-fap just accepted for publication. Details to come! (Or, umm, not come?)" On the same day, Defendant Prause posted "Paper accepted! Details forthcoming: [']Violence on Reddit support forums unique to r/NoFap[']", to which Rena Malik responded "!!!!!" and an industry-associated account, @JustinCasePnC, responded with "EXCITE".

f. <u>November 11, 2023</u>: @NicoleRPrause posted on X (formerly Twitter), writing "Our study (accepted, awaiting publication) connects Exodus Cry's #TraffickHub campaign to violent online posts, made on forums where mass murderers have been verified. I believe the data will show these anti-porn groups rely on intimidation/violence rather than argument/reason."

77

236.235.     On November 15, 2023, Defendant Taylor & Francis published the paper titled "Violence on Reddit Support Forums Unique to r/NoFap" in a journal named *Deviant Behavior*. The listed co-authors were Defendants Prause and Ley.

237.236.     From its title to its entire premise, the Taylor & Francis Paper, purportedly co-authored by Defendants Prause and Ley, was published in direct violation of the Non-Disparagement Agreement. The paper contained numerous false and defamatory statements, as well as numerous disparaging assertions targeting Plaintiffs. Moreover, the purported study itself was fraudulent, premised on data falsification and designed to present opposition research conducted by the Porn Industry Defendants as legitimate scientific analysis.

238.237.     Notably, numerous conflicts or potential conflicts of interest between Plaintiffs and Defendants Prause and Ley were not disclosed by the authors, including but not limited to:

a.  Defendant Prause offers magnetic "brain stimulation" to increase or lower sexual drive on her LiberosCenter.com website, directly competing with Plaintiff NoFap which offers to provide a peer support platform for recovery from compulsive sexual behavior, such as problematic pornography use.

b.  Defendant Prause had previously filed two successful (false) administrative complaints against Plaintiffs to the Pennsylvania Department of State.

c.  Defendant Ley has collaborated with xHamster, receiving financial compensation (according to Defendant Ley, it was funneled through Sexual Health Alliance), to publish content critical of Plaintiff NoFap.

d.  Defendant Ley offers a "Problem Sexual Behavior Certification Program" for sale with Sexual Health Alliance, featuring Defendant Prause as an instructor and charging $4194 as an alternative approach to the addiction model for problematic pornography use.

e.  Both Defendants Prause and Ley are closely collaborating with numerous individuals within the pornography industry, including but not limited to at xHamster, the Pornhub/Aylo Defendants, and Free Speech Coalition.

78

f.   Defendants Prause and Ley have a long history of advocating and lobbying in support of pornography industry interests, including opposing legislation in collaboration with the Free Speech Coalition and other adult industry entities.

g.   Defendant Prause was party to seven figures of contracts by OneTaste, an organization which purported to facilitate partnered masturbation classes and that, upon information and belief, Defendant Ley agreed to testify for OneTaste in a United States criminal action alleging sex-trafficking–related misconduct.

h.   Defendants Prause and Ley had a long history of posting disparaging and defamatory statements concerning Plaintiffs online, including through Defendant Prause's use of dozens of alias identities. Including through the use of dozens of Wikipedia pages used to control the page about Plaintiff NoFap, in collaboration with Tgeorgescu.

i.   Defendant Prause has (falsely) accused Plaintiff Rhodes, a target repeatedly maligned in the paper, of physically stalking her, violating an alleged no-contact or restraining order, cyberstalking her, attempting to murder her, attempting to murder others, and engaging in domestic terrorism, and purportedly reporting him to law enforcement agencies for such purported crimes.

j.   Defendant Prause has staged multiple death threat hoaxes targeting Plaintiffs and has impersonated NoFap community members.

k.   Defendant Prause staged a hoax by falsely claiming, 22 minutes before a legal fundraiser for the Prior Litigation began, that she was receiving threats from the fundraiser, and she relayed this false allegation to a media outlet that later went out of business after Plaintiffs pursued a defamation claim.

l.   Plaintiff Rhodes cooperated as a witness in a prior California Board of Psychology investigation against Defendant Prause and eventually filed a complaint against Defendant Prause himself after her conduct escalated.

m.   Both Plaintiff Rhodes and Defendant Ley served as witnesses supporting opposite parties in *Hilton v. Prause*. And that Defendant Prause settled that case, with her issuing a retraction statement.

n.   Plaintiff Rhodes participated as a witness, submitting a statement in the attempted *Prause v. Gary Wilson* restraining order, in which the court granted an anti-SLAPP motion against Defendant Prause.

o.   Defendant Ley served as a witness supporting Defendant Prause in *Prause v. Sprout*, a lawsuit that was dismissed on August 02, 2022. And the litigation arose primarily from a fundraiser hosted by Plaintiff NoFap.

79

p.  Plaintiffs initiated defamation litigation against Defendant Prause and Liberos LLC in October 2019, with the lawsuit settling in February 2021.

q.  Defendant Prause ~~declare~~declared bankruptcy, listing Plaintiffs are creditors.

r.  Plaintiffs filed adversary proceedings within Defendant Prause's bankruptcy against both Defendant Prause and her company Liberos LLC, which settled in February 2021, with her insurance carrier paying damages.

s.  Both Plaintiff Rhodes and Defendant Ley served as witnesses supporting opposite parties in *Minc v. Prause*. That counsel for Defendant Prause filed an unsuccessful motion to attempt to prevent Plaintiff Rhodes from testifying. That Defendant Ley was purportedly to be Defendant Prause's sole witness to testify at trial. And that Defendant Prause settled that case, with her issuing a retraction statement and paying damages.

t.  Counsel for Plaintiffs obtained records reflecting Defendant Prause's prior criminal conviction and police reports concerning Defendant Prause's alleged physical stalking of an individual, and Defendant Prause was aware of the private investigation firm that obtained these materials within the context of the Prior Litigation.

u.  The Non-Disparagement Agreement contract arising from prior litigation with Defendant Prause and her company Liberos LLC.

v.  Defendants Prause and Ley established contact with Azeff of Plaintiff Rhodes who was accused of sexually abusing him as a child, then collaborated with her to concoct and disseminate further false and defamatory statements concerning Plaintiffs, including false allegations of violence and criminality.

w.  Defendant Ley cooperated as a witness in *Rhodes vs. Azeff*, writing a declaration in support of her, and disseminating announcements concerning the litigation online as her surrogate.

x.  There was ongoing litigation initiated by Defendant Prause against Plaintiffs' attorney Andrew Stebbins, pertaining to his representation of Plaintiffs, at the time the Taylor & Francis paper was published, which was dismissed by the court on December 29, 2023.

y.  Upon information and belief, both Defendants Prause and Ley knew that Plaintiff Rhodes and others blamed their course of conduct for the death of his friend Gary Wilson, and was aware that Plaintiff Rhodes reported Prause to law enforcement for her cyberbullying conduct targeting Wilson.

80

z.  Defendant Ley served as an expert witness in multiple cases for the Pornhub/Aylo Defendants, including in Free Speech Coalition, the Pornhub/Aylo Defendants, and XVideos' Supreme Court challenge to age verification law.

aa.  Defendant Prause has advocated to "deplatform" any website that provides "support forums" which allow for the "abstinence goal" of avoiding pornography use.

bb.  The conduct of Defendants Prause and Ley over the years havehas stretched Plaintiff NoFap's resources thin, making moderation and the recruitment of moderators far more challenging.

cc.  Defendant Prause posted violent material (as defined by the Porn Industry Defendants' own purported methodology) celebrating the death of Gary Wilson to r/NoFap, and later omitted those posts from the paper.

dd.  Defendant Prause has advocated for organizations not to recognize problematic pornography use, such as in the World Health Organization's ICD forum.

ee.  Defendant Prause has interfered with the conduct and publication of research about Plaintiff NoFap's users, including efforts to initiate studies and to bring completed work to publication.

ff.  Defendant Prause has advocated for further research to not be conducted on Plaintiff NoFap, including writing "scientists also should not waste further time and resources testing harmful Reboot abstinence treatments."

*The Pornhub/Aylo Defendants' Involvement with the Taylor & Francis Paper*

239.238.    The Taylor & Francis did not disclose that, upon information and belief, Gary Nugent, a high-level employee of the Pornhub/Aylo Defendants, was involved in its creation.

240.239.    Defendant Prause has regularly hosted opposition research targeting Plaintiffs, The Reward Foundation, and Gary Wilson on Open Science Framework ("OSF"), hosted by the Center for Open Science.

241.240.    The purported study collected data from September 2011 through September 2022—an eleven-year span—and the authors analyzed 397 posts they labeled as "violent" purportedly posted on r/NoFap during that period. With porn- industry resources behind them, the authors were able to surface some posts that NoFap's under-resourced moderators—who

81

were themselves stretched thin, being frequently harassed by Defendants Prause and Ley and their collaborators—may have missed, along with many posts that moderators had already identified and addressed. However, the r/NoFap subreddit receives hundreds of thousands of posts per year, making the authors' scraped sample a minute fraction of total activity.

242.241.    Defendants Prause and Ley, upon information and belief in collaboration with the Pornhub/Aylo Defendants, compiled links to purportedly violent posts on Plaintiff NoFap's platforms in spreadsheets that were then posted to OSF. Defendant Prause repeatedly circulated links to these OSF-hosted opposition-research spreadsheets to disparage and defame Plaintiffs, often adding accompanying comments critical of Plaintiffs and other industry targets.

243.242.    According to the Taylor & Francis Paper, it was submitted to *Deviant Behavior* on July 26, 2023 and later revised on November 02, 2023 prior to final publication.

244.243.    A September 26, 2022, OSF-hosted spreadsheet[9] included two accounts for an individual named Gary Nugent.



245.244.    The "Gary Nugent" OSF user profile[10] displayed an avatar image sourced from Gravatar, a service that provides a "global avatar" usable across multiple websites.

---

[9] https://osf.io/rdx2q/
[10] https://osf.io/user/uthk3



246.245.     Upon searching Google for the Gravatar avatar image, Plaintiffs located a CoFoundersLab profile[11] for "Gary Nugent" that used the same Gravatar-hosted image. The CoFoundersLab profile for "Gary Nugent" linked to a social media profile from LinkedIn.[12]



247.246.     According to the LinkedIn profile, Gary Nugent has worked for the Pornhub/Aylo Defendants for more than six years: Manager, Search and Digital Marketing (Feb. 2019–Apr. 2024) and Manager, Trust & Safety (Apr. 2024–present).

---

[11] https://cofounderslab.com/profile/gary-nugent and archived at https://archive.is/rKYK7
[12] https://ca.linkedin.com/in/garypnugent



248.247.     Gary Nugent's LinkedIn profile reflects purportedly strong technical competency, including experience with online data scraping and analysis.

249.248.     After Gary Nugent was added to the OSF spreadsheet, Defendant Prause started publishing new versions of the spreadsheet to OSF periodically, amassing many more purportedly violent posts. Upon information and belief, opposition research was conducted by the Pornhub/Aylo Defendants for use in Defendants Prause and Ley's Taylor & Francis Paper. Posts from these revised spreadsheets, ~~that~~which were published after Gary Nugent's apparent involvement, made their way into the final published Taylor & Francis paper.

250.249.     Upon information and belief, Gary Nugent was listed as a contributor to the spreadsheet at least approximately 10 months prior to the paper being submitted for publication. Upon information and belief, opposition research that appears in the final paper was obtained only after Gary Nugent was added as a contributor.

251.250.     Upon information and belief, Gary Nugent also has an X profile under the username @goatfactor.



*Data Falsification*

252.251.    The Taylor & Francis Paper was extensively data falsified. The data falsification occurred in multiple ways:

    a.  The inclusion of non-violent posts from the r/NoFap subreddit.

    b.  The exclusion of violent posts from the r/stopdrinking and r/pornfree subreddits (which Defendants Prause and Ley claimed were control groups).

    c.  The inclusion of purportedly violent posts that could not have been gathered through the paper's purported methodology.

    d.  The exclusion of Defendant Prause's violence-themed posts, as defined by purported methodology.

253.252.    The authors claimed to exclude posts that were not violent, writing "For example, ['] kill her king!['] might refer to a woman (violent) or an urge to masturbate (not violent). Posts containing negating words (i.e., ['] jk['] ) were classified as not violent." Upon information and belief, the Porn Industry Defendants did not equally search for similar joke posts on the purported control subreddits. Examples of non-violent posts from the "data" on the r/NoFap subreddit, upon information and belief, included:

    a.  Row 13: This post describes a person's internal feelings while tapering off Effexor (venlafaxine), which the authors classified in the paper as a violent threat.

85

b.  <u>Row 25</u>: This post responds to a meme featuring the fictional dragon Paarthurnax by describing the plot of the widely popular video game The Elder Scrolls V: Skyrim—which the authors nevertheless classified in the paper as a violent threat.

c.  <u>Row 53</u>: This post involved a user sharing a George S. Patton quotation about fighting Germany. The co-authors classified it as a death threat against the porn industry and as a death threat against another forum user.

d.  <u>Row 56</u>: This post refers to metaphorically "slapping" an urge to use pornography, which the authors classified as "violence" targeting "women".

e.  <u>Row 70</u>: This post states "[f]apping causes terrorism", which the authors classified as a death threat. While sophomoric, the comment is not a death threat.

f.  <u>Row 105</u>: This is a post describing a struggle with masturbating to porn, which the authors classified as a death threat against the porn industry.

g.  <u>Row 132</u>: This post quotes a famous actor, which the authors mischaracterized as a death threat against another forum user.

h.  <u>Row 169</u>: This post quotes the pornography site xHamster for libeling NoFap with a graphic unrelated to NoFap, which the authors categorized as a death threat against the porn industry.

i.  <u>Row 171</u>: This post discusses the video game Grand Theft Auto and does not advocate real-world violence (such as murdering a sex worker to take money), yet the paper's datasheet labels it as a death threat against the porn industry.

j.  <u>Row 190</u>: This post appears to be from a Reddit troll who said "fuck all of you nofap monsters. i need my porn or i will rape women". Obviously, this is a problematic post, but it appears that the authors are ascribing to r/NoFap community members the comments of Reddit trolls who post to disparage NoFap members.

k.  <u>Row 197</u>: This row contains a post that includes "P.S. This is a sarcastic post, for dumb redditors", yet it is included in the dataset despite the authors' methods stating that "[p]osts containing negating words (i.e., "jk") were classified as not violent."

l.  <u>Row 201</u>: "We're basically fighting to the death against these people" is a metaphor about addiction recovery that the authors mischaracterized as a death threat against a scientist.

m.  <u>Row 227</u>: This metaphorical post is a response to a fundraiser for the Prior Litigation and stated, "I may not have money now but I am fighting to death as a no fap soldier." Within the community, "fighting [urges]" is commonly used to

86

describe abstaining from using pornography. The authors nevertheless treated this kind of metaphorical language—including similar posts like "Yeah its truly a war now"—as death threats.

n.  Row 244: This post states "I AM A SOLDIER': I will stand against porn", which the authors describe as a death threat against the porn industry. It is an obvious metaphor, not a death threat.

o.  Row 310: The authors claim that a news story about the alleged arson at the home of Pornhub CEO Feras Antoon—with zero comments—constitutes a threat against the porn industry.

p.  Row 314: This post reads "So you really want to make erections painful for occurring in a small cage? Is the point of nofap to program your brain to start hating erections? Why not just castrate yourself?". The user appears to be making a rhetorical point, not issuing a threat as the spreadsheet purports.

q.  Row 330: This post states "Trust me, porn industry did hire a squad to take down newbie in this group. I did chat with them." It is odd, but it is not a death threat; classifying it as a death threat against the porn industry is erroneous.

r.  Row 340: This is a joke post responding to a video saying "Instructions unclear: I built a nuclear bomb" which is classified as a death threat.

s.  Row 372: The authors frame this post as "destruction of property," but it is simply a porn addict describing destroying their own hard drive with a hammer; in a subsequent post they added, "I chose to be more eco-friendly and I brought it to an electronics recycling center." If that counts as violence, the authors should likewise search the control subreddit r/StopDrinking for recovering alcoholics describing pouring out or smashing bottles of alcohol.

254.253.    Representative examples of (over 400) violence-themed posts (as defined by the Taylor & Francis Paper's purported methodology) excluded from the "control" subreddits r/StopDrinking and r/PornFree—occurring between September 2011 and September 2022 and located using the same search terms—include:

a.  "When I was 19 I didn't know why I had to stalk girls and why I had such violent desires to kill them."

b.  "I saw a kitchen knife on the counter and before I knew it I had stabbed him in the chest twice and he ran away. 1 20 minutes later I answer the door and I'm in a cop

87

car on the way to the police department. I sat in a room for 3 or 4 hours and a cop walked in and said I was being charged for attempted murder."

c. "My husband, who does not drink, and I got into a HUGE fight over it. I had already attacked him, punching him in the face several times. Things escalated and I ended up grabbing a knife and cutting his throat."

d. "I walk away from the station towards my house, When i get there everyone is gone, So i head upstairs grabbing the biggest knife i can from the kitchen. While i'm upstairs slowly cutting my stomach, Legs and arms and crying uncontrollably i hear my girlfriend come home. she comes upstairs and see's me with the knife and tries to grab it from me, I push her again. Then start punching, Kicking and headbutting the wall beside her, She got up and ran downstairs to phone the police who turned up and arrested me."

e. "Well, I killed my ~~girlfriends~~girlfriend's father in self-~~ ~~defense. Stabbed him with a butcher knife in the kitchen~~"~~."

~~255.~~254.    Plaintiffs compiled a spreadsheet of over 400 control subreddit posts the authors didn't include in the Taylor & Francis Paper, which was provided to Defendant Taylor & Francis. The number of posts the authors excluded from the control groups (at least 400, likely thousands) exceeded the total number of purported violent r/NoFap posts gathered for the study (397). It is unknown to Plaintiffs how many violence-themed posts, as defined by the listed co-authors, were excluded from the "control" subreddits, but likely thousands.

~~256.~~255.    According to the Taylor & Francis Paper's purported methodology, "R v.4.1.2 library RedditExtractoR" was utilized to collect purportedly violent posts from three Reddit-hosted subreddits over a specific time period ("[t]he search included posts from September 2011 to September 2022"), which were then "screened […] for violence directed at real persons or objects".

~~257.~~256.    The Taylor & Francis Paper's underlying spreadsheet includes posts from the NoFap.com forums (which are not on Reddit) and Reddit posts that had already been deleted (a whopping 156 rows, or 38.79% of the purported violent r/NoFap posts)—citing the deleted-post

88

archive website unddit.com—materials that could not have been collected using the paper's purported methodology.

258.257.    The use of NoFap.com and unddit.com is not described in that methodology. It also appears that comparable efforts to locate previously deleted, violence-themed content—via, upon information and belief, web scraping—were not uniformly applied to the so-called control groups r/PornFree or r/StopDrinking. Further, the spreadsheet included a post from r/modtalk_leaks on row 196, which was not accounted for in the paper's purported methodology.

259.258.    The haphazard manner in which the "data" was added to the spreadsheet demonstrates that Defendants Prause and Ley (and upon information and belief, the Pornhub/Aylo Defendants) did not, in fact, stick to their purported methodology. Instead, those behind the Taylor & Francis Paper exhaustively scraped NoFap posts by any means available and did not apply comparable rigor to the designated control groups. In other words, the Taylor & Francis Paper's underlying "data" was porn industry opposition research poorly masquerading as science.

260.259.    Defendant Prause has made at least[13] two posts on r/NoFap that should have been included in the Taylor & Francis Paper's "data" but were excluded for unknown reasons.

    a. "His tweets as he died were all vicious attacks on people. Some [']legacy['] of hate." (May 24, 2021): Upon information and belief, this r/NoFap post[14] by Defendant Prause's Reddit account included the word "die", expressed support for a death, and is far more violent in nature than many of the posts the co-authors included in the Taylor & Francis Paper. The post was made during the same time range the paper purportedly analyzed.

    b. "Gary Wilson was a vile thing. The world is better for his death. Now that he cannot threaten people doing actual work on pornography any moreanymore, maybe their families can feel safe again. [Link to file hosted on Defendant Prause's Google Drive account]" (May 22, 2021): Upon information and belief, this r/NoFap post[15] by Defendant Prause's Reddit account included the word "death", expressed

---

[13] Upon information and belief, Defendant Prause has had numerous other accounts banned from Plaintiff NoFap's platforms due to policy violations.
[14] https://reddit.com/r/NoFap/comments/nibrgd/gary_wilson_of_ybop_has_passed_away/gz834yl/?context=3
[15] https://reddit.com/r/NoFap/comments/nip2w8/gary_wilson_might_be_gone_but_his_legacy_remains/gz3r8oh/

support for a death, and is far more violent in nature than many of the posts the co-authors included in the Taylor & Francis Paper. The post was made during the same time range the paper purportedly analyzed.

261.260.     Due to the extensive data falsification in the Taylor & Francis Paper, the entire title "Violence and premise of the paper was not only published in breach of the Non-Disparagement Agreement, but is also false and defamatory.

262.261.     Upon information and belief, a proper peer review and editorial review would have identified the Taylor and Francis Paper's data falsification and other defects, including citations that do not support the propositions for which they are cited.

*Other Issues with the Taylor & Francis Paper*

263.262.     The Taylor & Francis Paper contained numerous false, defamatory, and disparaging statements concerning Plaintiffs. These included, but are not limited to:

a. <u>Trademark Dilution</u>: Upon information and belief, as part of the porn industry's endeavors to suppress Plaintiff NoFap, Defendants Prause and Ley intentionally engaged in multiple instances of trademark dilution as part of the Taylor & Francis Paper. The Taylor & Francis Paper included multiple false, defamatory, misleading, and disparaging statements concerning this, in breach of the Non-Disparagement Agreement.

b. <u>Asserting That Plaintiff NoFap is a Recognized Terrorist Group and Supportive of Violence</u>: The Taylor & Francis Paper included multiple false, defamatory, misleading, and disparaging statements concerning this, in breach of the Non-Disparagement Agreement.

c. <u>Including False and Defamatory Statements Concerning Plaintiff Rhodes</u>: The Taylor & Francis Paper included multiple false, defamatory, misleading, and disparaging statements targeting Plaintiff Rhodes, in breach of the Non-Disparagement Agreement., such as:

Defendants write "[t]he other cofounder, Rhodes, described himself as a famous actor and bodybuilder who struggled with "severe bipolar disorder" and started NoFap to get "superpowers" (Rhodes 2013a: 2022; Rhodes and Ohanian 2015; Rhodes and Ohropax 2011).": Every assertion here is misleading, disparaging.)."

90

"NoFap moderators have posted photographs of themselves on Reddit holding "an empty vodka bottle filled with water and some lighter fluid" (Rhodes 2012b) that appeared to be on fire (Rhodes 2012a)." – This is disparaging and, in the context of a paper regarding violence, presented in a false light. It was a simulated Molotov cocktail for a photograph project while in school, where the bottle was filled with water.

"The NoFap leaders have posts on Reddit describing running from police after wrecking a car (Rhodes 2013b), vandalizing public bathrooms with their own excrement (Rhodes 2011), and a "kiln" where NoFap was founded that could be used to conceal dead human bodies (Rhodes 2013c)."

d.  Other Disparaging Remarks: The Taylor & Francis Paper contained numerous other disparaging statements and imputations, in breach of the Non-Disparagement Agreement.

"Requirements to become a NoFap moderator were described as ['']A distaste for the porn industry,['] which Rhodes described would form ['']the elder council of a cult['] (Rhodes 2014)"

~~264.~~263.        The Taylor & Francis paper was false and defamatory *per se*, claiming that Plaintiff NoFap hosts a disproportionally violent usership based on data falsification; is a formally designated extremist group, as determined by an anti-terrorism organization, and Plaintiff Rhodes its leader; Plaintiff Rhodes is a criminal who wrecked his vehicle after running from police, created a functional Molotov cocktail, and seriously discussed hiding dead bodies; Plaintiff Rhodes is mentally ill, has "severe bipolar disorder" or was diagnosed with the same, and vandalizes bathrooms with his own excrement; and that Plaintiff NoFap's leadership promotes, encourages, and fosters violence and criminality.

~~265.~~264.        Upon information and belief, the prior disputes between Plaintiffs and Defendants Prause and Ley were readily ascertainable and should have been investigated by the journal's editors, the peer reviewer(s), and Defendant Taylor & Francis prior to publication.

~~266.~~265.        Upon information and belief, the Taylor and Francis Paper's inflammatory framing and its focus on a single website should have alerted the publisher and editors to conduct

91

appropriate due diligence prior to publication. A simple internet search would reveal undeclared conflicts of interest.

267.266.    Upon information and belief, the original publication of the Taylor & Francis Paper supports a reasonable inference of bad faith by Defendant Taylor & Francis and, at minimum, constitutes gross negligence. However, as set forth below, actual malice became evident in Defendant Taylor & Francis's subsequent conduct.

268.267.    Upon information and belief, readers of Taylor & Francis journals reasonably expect that published articles (i) do not contain false statements or falsified data; (ii) do not involve the inappropriate collection of data from minors or other individuals without consent; (iii) include full disclosure of competing interests, including without limitation porn industry affiliations, bankruptcy, and past or ongoing litigation; (iv) were not developed with the collaboration of a Pornhub employee to conduct opposition research used in the paper; (v) are not authored by an individual with a criminal conviction who uses publication to target an opponent and witness in litigations; and (vi) follow the scientific method and accurately describe—rather than misrepresent—the purported methodology. By publishing the article and failing to retract nor even amend it, Defendant Taylor & Francis placed its institutional credibility behind the Porn-Industry Defendants' paper, thereby substantially amplifying the damage to Plaintiffs.

*Promotion of the Taylor and Francis Paper*

269.268.    November 16, 2023: Defendant Prause published a series of posts promoting the Taylor & Francis Paper on social media. Upon information and belief, Defendant Prause crafted these posts to maximize reputational harm, including by tagging Reddit, its founder, people who have recommended Plaintiff NoFap, and the #NoFap hashtag to target NoFap's audience and users. These posts included:

a.   "New paper [']Violence on Reddit support forums unique to r/NoFap['] is at [']Deviant Behavior[']. We found NoFap has followers engaged in real murders, NoFap posts are remarkably violent, and the violence is supported by followers. [Link to the Taylor & Francis Paper] @tandfonline @drdavidley"

b.   "Multiple, real mass murderers were followers of NoFap @Reddit platform. #NoFap is a part of the "manosphere", which seeks to disseminate anti-feminist beliefs online. This raised questions about whether NoFap might be contributing to violence by their followers."

c.   "NoFap claimed to start from a founder's personal experience with porn or a testosterone study. It appears from interviews with @alexiohanian that r/NoFap actually came from http://BodyBuilding.com, which hosted NoFap since 2004. NoFap was solely anti-masturbation."

d.   "Since violence in #NoFap had not been previously documented, we used a systematic search to characterize the nature of the threats. We also compared the violent posts on NoFap to violence on subreddits of comparable content (r/pornfree) and size (r/stopdrinking)."

e.   "We used the R library RedditExtractor. 421 violent posts were identified. Violence was posted overwhelmingly on r/NoFap, so it could not be attributed to the content (pornography) nor subreddit size/post frequency."

f.   "

g.f. "r/NoFap promotes false conspiracies, and claimed violent posts were the porn industry sneaking on their forums. We analyzed whether this was likely by examining the support by r/NoFap followers. r/NoFap strongly supported violent posts, especially those killing pornographers."

h.g. "Threats against NoFap's own users were growing most quickly. There was a spike in threats to kill pornographers in 2020. This coincided with the #TraffickingHub campaign, which was also promoted by NoFap. TraffickingHub could have caused that spike in violent threats."

i.h. "Why is an anti-masturbation forum uniquely violent? Data suggest the founder most likely modeled the observed violence. They promoted hatred of pornographers, described committing criminal acts, and had his other subreddits suspended for a lack of moderation."

j.i. "Clinicians already are planning interventions to help young men leave NoFap, described as extremist misogynist violence. This is a for-profit part of the manosphere seeking to sell hatred of women and others, likely targeting young men."

93

k.j. "Many clinicians and groups have referred clients or followers to this violent group, including @SASH1234, Therapy Today, @NCOSE, @brain_love_sex, and @GailDines. Men and youth should not be recommended to these forums."



270.269.      Defendant Prause's X.com announcement of the Taylor & Francis Paper was shared by Defendant Ley, along with numerous affiliates of the pornography industry, including Mike Stabile from the Free Speech Coalition, @JizLee, @sxyalicer0se90, @HoneyHousePR, @JustinCasePnC, and @DaddyWolfBear. Others shared the post, such as Brian Watson, thea "Pornhub Sexual Wellness Center" contributor who had previously published disinformation concerning Plaintiff NoFap and Gary Wilson. Defendant Prause's announcement thread was not only rife with disinformation and inaccuracies, but each post constituted a blatant breach of the Non-Disparagement Agreement.



271.270.      On February 02, 2024, Defendant Ley posted to X discussing how many views the Taylor & Francis Paper received. The post was reposted by @DaddyWolfBear, Silva Neves, Defendant Prause, Eric Sprankle, Joe Kort, and others, receiving over 18,000 views.

94



272.271.        On December 20, 2023, Defendant Prause posted a thread on X about a contract-breaching appearance on Dan Savage's "Lovecast" podcast to discuss the Taylor & Francis Paper. In that X thread, Defendant Prause posted a photograph and video of Plaintiff Rhodes and made multiple false and defamatory statements about Plaintiffs, including falsely referring to Plaintiff NoFap as "anti-masturbation," among other disparaging assertions:



*Communications Between Plaintiffs and Taylor & Francis*

273.272.        On November 20, 2023, Plaintiff NoFap reached out to Defendant Taylor & Francis, the Committee on Publication Ethics (COPE), and 36 *Deviant Behavior* editors and

members of the *Deviant Behavior* editorial board



274.273.    On December 15, 2023, Plaintiff NoFap emailed a spreadsheet to editorial@taylorandfrancis.com with over 400 posts from r/StopDrinking and r/PornFree that Defendant Prause and Defendant Ley excluded, clearly demonstrating data falsification:



275.274.    On December 16, 2023, Plaintiff NoFap emailed editorial@taylorandfrancis.com,editorial@taylorandfrancis.com, writing "FYI the paper is now on Reddit, #1 on the frontpage of r/science, causing great reputational harm to us". Indeed, the paper was listed #1 on the frontpage of r/science.[16] On December 17, 2023, Defendant Ley posted

---

[16] https://www.reddit.com/r/science/comments/18jtffm/violence_on_reddit_support_forums_unique_to/

to X "This research appears to be going viral on Reddit. Flooding across different groups. Good. This ideology is dangerous and harmful. Violence on Reddit Support Forums Unique to r/NoFap [Link to the Taylor & Francis Paper]".

276.275.    Throughout December and January, Plaintiff NoFap continued to reach out to Defendant Taylor & Francis, the journal editors, the journal's editorial board, usually without response, providing them with further information and requesting updates.

*The Conclusion of Defendant Taylor & Francis' Purported Investigation*

277.276.    On February 12, 2024, ten days after Defendants Ley and Prause posted about the conclusion of the purported investigation on social media, Defendant Taylor & Francis sent an email to Plaintiff NoFap advising that it would not retract noror revise the defamatory article.

278.277.    The current "Disclosure statement" for the Taylor & Francis Paper is as follows:

"The authors were named in threats to harm and kill scientists posted on NoFap forums.[17] NP is paid to provide continuing education regarding sexual dsyfunctions, is a consultant for Vella Biosciences and Reckitt Industries, serves as a paid statistical consultant for dissertation students, and teaches for the Modern Sex Therapy Institute. DL is paid periodically as an expert witness concerning issues of sexuality. He has previously provided paid education and training on sexuality and pornography-related matters for the Sexual Health Alliance and other professional organizations."

279.278.    Defendants Prause and Ley have commented about Plaintiffs' assertions about the Taylor & Francis Paper, including specifically referencing communications with Taylor & Francis, multiple times on social media, and used mischaracterizations of the same to further disparage and defame Plaintiffs:

---

[17] Plaintiffs question the veracity of this claim. In light of documented hoaxes and impersonations of NoFap community members, the assertion warrants heightened scrutiny.

a. <u>February 02, 2024</u>: Defendant Ley posted on X that "And I can now share that NoFap tried to bully the journal editors into retracting this article. They failed. Made easily disproven bizarre false claims."

b. <u>February 02, 2024</u>: Defendant Prause posted on X that "Alexander Rhodes of @NoFap sent dozens of emails and posted on Reddit that [']PornHub['] authored our violence paper. This is false and defamatory. It was dismissed by the journal as having no evidence. NoFap is known for creating such false conspiracies: [Link] […] For those who would like to learn more about the study they attacked, it remains, fully available, online at Deviant Behavior: [Link to the Taylor & Francis Paper]" The post was reposted by Defendant Ley, Silva Neves, Eric Sprankle, and others, receiving over 24,000 views.

c. <u>February 02, 2024</u>: Defendant Prause posted on X that "He demanded the study be retracted and had no basis for the request. Something had to be fabricated to suggest wrongdoing. […] It does not get more formal. I will be documenting what he did in our conspiracy paper in detail. It is essential for public health that the public be aware of the attempts to stop science."

d. <u>September 29, 2024</u>: Defendant Prause posted on X that "Alexander Rhodes is continuing to disseminate false and defamatory claims. As [']u/NoFapMods['], he falsely stated [']We do know that Pornhub was involved in this study" referring to this study.['] Journal editors verified Rhodes conspiracy claims were false, yet he reposted them online."

e. <u>August 15, 2025</u>: On BlueSky, Defendant Prause published: "We also had a ~5000 word complaint demanding the retraction of our paper for purely political reasons. It also was filled with false and defamatory claims. This is just the latest way to attack scientists. [Link to the Taylor & Francis Paper] Our publisher stood against their egregious threats."

**8.    The Porn Industry Succeeds in Getting Disinformation Published in NPR**

~~280.~~279.    In 2024, Plaintiffs became apprised that Defendants Prause and Ley were coordinating another attack on them, this time through an NPR reporter, Lisa Hagen.

~~281.~~280.    On March 12, 2023, National Public Radio (often referred to and herein referenced as "NPR") published an article titled "*How law enforcement is promoting a troubling documentary about sextortion"* which was critical of the film Sextortion: The Hidden Pandemic. The article, authored by Lisa Hagen, included quotes from Defendant Prause, including "Prause

believes Doan's statements in the film are outside his area of expertise. Doan said in a statement that his comments are based on peer-reviewed research and his clinical expertise as a physician."

282.281.    Andrew Doan previously co-authored a paper titled entitled "*Is Internet Pornography Causing Sexual Dysfunctions? A Review with Clinical Reports,.*" purporting a link between problematic pornography use and erectile dysfunction. Doan is a US-based physician, the former "Head of Addictions and Resilience Research" at the Naval Medical Center San Diego, and a former resident physician at the Naval Aerospace Medical Institute. According to the authors, before their paper was published, Defendant Prause attempted to prevent its publication. After the paper was published, Defendant Prause repeatedly tried to get it retracted by contacting the publisher, the US Navy, and the Committee on Publication Ethics. After those efforts failed, Defendant Prause has long endeavored to discredit the paper. According to the authors, Prause also reported multiple authors of the paper to their state licensing boards. According to Doan, Defendant Prause later reported him to his employer claiming that he sent her anonymous threats that were "tracked" to his office location. Doan denied Defendant Prause's claims and says he was residing outside of the country at the time of the purported threats.

283.282.    Lisa Hagen's March 12, 2023, *NPR* article featured allegations targeting Andrew Doan and an academic journal, mirroring the same allegations, nearly verbatim, that Defendant Prause has made for years: "One of Doan's most widely cited papers is on the purported link between pornography and erectile dysfunction, which the bulk of scientific research has shown to be weak. The paper was recommended for retraction because its authors did not obtain consent from some of the subjects. The journal it was published in is considered [']predatory['] by some academics because authors pay to be published and undergo little to no scientific review."

99

Upon information and belief, Defendant Prause and Lisa Hagen established communication during or before March 2023.

284.283.     Shortly after the Lisa Hagen piece featuring Defendant Prause as a source, on May 31, 2023, Defendant Ley posted to Twitter: "Looking for people for interview who've left antiporn/anti-masturbation groups such as nofap, ybop, FTND, etc. please dm." Defendant Ley's NPR recruitment post  was subsequently shared by Defendant Prause, Justin Dubin, Justin Lehmiller, Jerry Barnett, Ashley Winter, and Eric Sprankle. The NPR recruitment post was also shared by Mike Stabile, the director of public affairs for Free Speech Coalition.

285.284.     On May 31, 2023, a self-described pornography producer and longtime collaborator of Defendant Prause and Defendant Ley, Twitter username @DaddyWolfBear who has gone by various aliases online (such as "nerdy kinky commie" and "nogoodchuck"), responded to Defendant Ley's NPR recruitment post, writing "Sent you a DM".  In other online posts, @DaddyWolfBear has identified himself as a 39-year-old named "Charles" (and "Chuck" in shorthand), residing in Colorado. For years, @DaddyWolfBear has frequently collaborated with Defendant Prause and Defendant Ley to conduct opposition research on Plaintiff NoFap, including combing NoFap's platforms for offensive user-generated content that had not yet been spotted or removed by moderators, and publishing defamatory and disparaging comments about Plaintiffs, Gary Wilson, and other Porn Industry Defendants' targets online. Upon information and belief, @DaddyWolfBear also ran the Twitter account @NoFapWatch1 from April 2021, which conducted and posted opposition research targeting Plaintiff NoFap, other recovery resources, and critics of the porn industry, often in collaboration with Defendants Prause and Ley.

100

286.285.     On June 04, 2023, @DaddyWolfBear posted to Twitter: "Oh yeah. I have an interview with NPR tomorrow talking about anti-porn/masturbation organizations and the dangers they do like normalizing misogyny and ANTI-LGBTQIA".

287.286.     Defendant Ley made another recruitment post on X (formerly Twitter) for Lisa Hagen's NPR article on September 14, 2023: "Reporter from npr @TwitrHagen still looking for people who've had experiences with NoFap. Please feel free to reach out to her." The post was reposted by @DaddyWolfBear.

288.287.     Plaintiff NoFap and their counsel reached out to *NPR* multiple times to attempt to prevent Defendants Prause and Ley from successfully getting disinformation published, without success.

289.288.     The disparaging NPR article was published on February 3, 2024, resulting in widespread reputational harm to Plaintiffs. It was titled "Masturbation abstinence is popular online. Doctors and therapists are worried". The article included: "More than two decades of growing internet use has surfaced fears about the social and psychological impacts of nearly unfettered access to pornography. But many researchers and sex therapists worry that the online communities that have formed in response to these fears often endorse inaccurate medical information, exacerbate mental health problems and, in some cases, overlap with extremist and hate groups."

290.289.     Despite Plaintiff NoFap providing *NPR* with 40 experts to contact, the 4 experts quoted in the published NPR article were all friends orand collaborators of Defendants Prause and Ley, and not one quote was taken from an interview with an uninvolved third-party expert. The article also featured friends of Defendants Prause and Ley, including a pornography producer, who were quoted as supposed "former NoFap users".

291.290.    On February 04, 2024, Mike Stabile from Free Speech Coalition shared the NPR article on X.com: "Absolutely stunning investigation by NPR into the racist, antisemitic, misogynist roots of "porn addiction" junk science — the very stuff being peddled by anti-porn groups in order to pass age-verification bills and other censorship. It's all nonsense." This single post by Stabile received over 1.5 million views.

292.291.    On February 04, 2024, Defendant Ley posted the NPR article to X.com, writing: "Can't decide whether my favorite part is: documenting Gary Wilson had no credentials and taught massage; publishing that Rhodes (NoFap) is suing his own mother; publishing the links to Proud Boys and KKK." His X post received over 14,500 views.

293.292.    Nicole Prause used the NPR article to astroturf online to disparage the Plaintiffs in violation of the Agreement, such as posting it on X.com over 330hundreds of times as of December 21, 2024. Additionally, the NPR article was added to the Wikipedia article about NoFap by Defendant Prause's collaborator tgeorgescu, a Wikipedia power user.

**9.    Disparagement in Publications**

294.293.    Although Defendant Prause frequently represented that the Prior Litigation concerned her research, that was false. Before the Prior Litigation, she had not published any paper about Plaintiff NoFap or directly targeting it. After the Non-Disparagement Agreement was executed, Defendant Prause published six papers targeting Plaintiff NoFap and collaborated with Defendant Ley and others to disseminate the false, defamatory, and disparaging statements contained in those papers.

*The First Paper*

102

~~295.~~294.        On October 17, 2022, a paper by Defendant Prause and James Binnie titled

"Reboot/NoFap Participants Erectile Concerns Predicted by Anxiety and Not Mediated/Moderated

by Pornography Viewing" was published[18] in the *Journal of Psychosexual Health*.

~~296.~~295.        The paper only listed the following purported conflicts of interest:

"The authors disclosed receipt of the following financial support for the research, authorship,
and/or publication of this article: JB declares that he has no conflict of interest. NP teaches paid
workshops for continuing education to therapists that include the treatment of erectile dysfunction.
NP made reports to law enforcement due to threats of harassment and violence posted on Reboot
forums that named her.[19]"

~~297.~~296.        The paper contained false, defamatory, and disparaging statements

concerning Plaintiffs in violation of the Non-Disparagement Agreement.

~~298.~~297.        Plaintiffs have not reviewed the paper's purported dataset or sample. The

case record documents Defendant Prause's pattern of research fraud, including data falsification

and undisclosed conflicts of interest. Accordingly, all of her publications—including this paper—

should be independently audited.

~~299.~~298.        The paper was shared by Defendants Prause and Ley on social media, often

alongside disparaging commentary targeting Plaintiffs and others.

Commented [AR4]: Can we just leave this as is? I'd rather save time since this one isn't very important.

---

[18] https://journals.sagepub.com/doi/10.1177/26318318221116354
[19] Plaintiffs question the veracity of this claim. In light of documented hoaxes and impersonations of NoFap
community members, the assertion warrants heightened scrutiny.



300.299.     This defamatory paper has received widespread attention in the community, including being cited by other papers, causing extensive harm to plaintiffs.

*The Second Paper*

~~301.~~300.     On February 22, 2023, a paper by Defendant Prause and James Binnie titled "Iatrogenic effects of Reboot/NoFap on public health: A preregistered survey study" was published[20] in the *Sexualities*.

~~302.~~301.     On or about February 23, 2023, Defendant Ley shared Defendant Prause and James Binnie's paper to a mailing list called SexNet.

~~303.     defamatory, and disparaging statements concerning Plaintiffs in violation of the Non-Disparagement Agreement.~~

~~304.~~302.     The paper, which contained false, defamatory, and disparaging claims in violation of the Non-Disparagement Agreement, caused widespread reputational harm to Plaintiffs. A slew of articles about the paper were released, further disparaging Plaintiff NoFap. For example, a PsyPost.org article about the paper reached #1 on the ~~frontpage~~front page of Reddit.com,[21] upon information and belief, disparaging Plaintiff NoFap to hundreds of thousands of viewers.

*The Third Paper*

~~305.~~303.     On May 22, 2023, Defendant Prause authored an abstract titled "Disinformation on pornography effects on erectile function led to iatrogenic Reboot/NoFap [']treatment[']" in the *Journal of Sexual Medicine* published by the Oxford University Press on behalf of The International Society of Sexual Medicine.

~~306.~~304.     The title of the abstract is a violation of the Non-Disparagement Agreement, implying that Plaintiff NoFap is a "treatment" (it's a peer support website) that relies upon "[d]isinformation".

---

[20] https://journals.sagepub.com/doi/10.1177/13634607231157070
[21] https://www.reddit.com/r/science/comments/11pny81/greater_engagement_with_antimasturbation_groups/

307.305.     The abstract contained false, defamatory, and disparaging statements concerning Plaintiffs in violation of the Non-Disparagement Agreement. These include:

> "Yet, most sex addiction therapists and Reboot/NoFap coaches claim that their clients' sexual dysfunctions are caused by pornography viewing." – Plaintiff NoFap does not employ coaches.

> "Examine whether engagement with Reboot/NoFap ['']treatments['] might actually be causing or perpetuating sexual arousal problems attributed to pornography viewing." – Plaintiff NoFap does not offer psychological treatments.

> "They also were more likely to report being told to [']kill or harm['] themselves in the support subreddit /r/NoFap and reported more suicidal ideation at their last relapse."

> "The users who posted over time in r/NoFap, on average, included the same or more posts containing sad, angry, disgusted, or fear words."

308.306.     The only listed disclosure disclosed was: "Any of the authors act as a consultant, employee or shareholder of an industry for: Mind Measures LLC."

*The Forth Paper*

309.307.     On July 08, 2023, Defendant Prause authored a paper titled "Dhāt Syndrome Emerges in the United States from Anti-Masturbation Semen Retention/NoFap Groups" in the *International Journal of Impotence Research* published by Springer Nature.

310.308.     The title of the paper is a violation of the Non-Disparagement Agreement, implying that Plaintiff NoFap is "anti-masturbation" when it isn't; it is a peer support website for porn addiction recovery.

311.309.     Defendant Prause included: "The author declares no competing interests."

312.310.     The paper engaged in intentional misrepresentation of NoFap's history and trademark dilution:

> "NoFap appeared on the social media platform Reddit (denoted "r/NoFap") in 2011 and later as a website NoFap.com. "NoFap" was trademarked around 2013. However, the earliest occurrence of the term "NoFap" identified in US media was

106

on the BodyBuilding.com forums in 2006. NoFap subsequently became "No Nut November" on BodyBuilding.com by 2009, where it appeared to grow in popularity and spread online. NoFap appeared on BodyBuilding.-com, because these bodybuilders believed (falsely) that masturbation abstinence would increase their testosterone and, therefore, their muscular gains. Thus, despite the trademark, "NoFap" has been a very commonly used phrase for nearly 20 years. "NoFap" is used by many people and companies online with no known relationship with the for-profit company."

~~313.~~311.      The paper contained false, defamatory, and disparaging statements concerning Plaintiffs in violation of the Non-Disparagement Agreement.

*The Fifth Paper*

~~314.~~312.      On or around October 18, 2023, Defendant Prause authored a paper titled "Online ejaculation training programs promote non-evidence-based treatment of male sexual dysfunction" in the *International Journal of Impotence Research* published by Springer Nature.\

~~315.~~313.      Defendant Prause listed her conflicts of interest as:

"To meet the journal requirement to assess potential conflicts of interest from contributors, each of the researchers in the acknowledgements reported no conflict of interest and reported their employers and/or associations a s accredited universities and medical and psychological practices in the USA. The author is a consultant for Vella Biosciences, Reckitt, and The Dissertation Coach, an instructor for Modern Sex Therapy Institutes, and provides continuing education to mental health clinicians concerning sexual functioning. The author was awarded damages from Andrew Stebbins, the legal counsel of NoFap LLC founder, during revisions of this manuscript for defamation per se and causing the dissemination of her current physical address in violation of her address privacy protections, due to stalking and violent threats, under California civil law 6208.1."

~~316.~~314.      The main purpose of the paper appears to be trademark dilution.

"[']NoFap['] appeared on a forum for bodybuilders, bodybuilding.com, who hoped to increase their testosterone via masturbation abstinence in July 2006. [Referring to a forum signature that was retroactively changed] Body-building.com hosted [']NoFap November['] in 2009. [editing the title of the event] After starting a popular NoFap thread on that forum on May 28, 2011, a NoFap ([']r/NoFap['])) was started on the Reddit platform by two moderators [adding a non-existent co-founder] on June 20, 2011 that now has over 1.1 million followers."

"['']NoFap['] was trademarked about 2013, creating reported threats and demands by NoFap LLC against bodybuilding.com users [link to a 2020 post], scientists, (Matthew Plummer, Marcy 27, 2020, written communication, ~~matthew@nofap.com)~~matthew@nofap.com) and others. Scientists made clear that public health research should not be silenced by NoFap's tactics as ['']we deem it not only as legitimate but necessary to acknowledge and cite [NoFap] as one prominent voice in the debate around masturbation abstinence['']."

"For-profit companies like NoFap LLC also explicitly discourage the public from visiting mental health professionals, such as the American Association of web.archive.org/web/20200615235108/https://nofap.com/articles/how-to-find-a-therapist/) licensed providers who specialize in treating such disorders."

*Defendant Prause's Announced Future Publications*

*The Conspiracy Paper*

~~317.~~315.     Defendants Prause and Ley, along with other porn-industry surrogates such as Mike Stabile, frequently claim that secular anti–sexual-exploitation nonprofits, advocates, and pornography-recovery resources pursue a hidden religious or financial agenda.



~~318.~~316.     Defendant Prause has claimed on social media that she is working on a paper about conspiracies, again targeting Plaintiffs and others, namely The Reward Foundation and Gary Wilson's widow Marnia Robinson. Her social media posts have included:

   a. February, 05, 2024: @NicoleRPrause on X posted: "Exactly the concerns of our peer-reviewed science, we highlighted poor moderation of NoFap as the likely explanation for the violence from their followers [Link to the Taylor & Francis Paper] Our new conspiracy paper traces the path from leaders posting false conspiracies to such violence."

108

b. <u>May 30, 2024</u>: @NicoleRPrause on X posted "Progress on the conspiracy paper! NoFap army appears to incite violence largely by posting false conspiracies about porn and secret governments scheming to keep men masturbation/weak. This is important, because followers have engaged in real world violence [Link to the Taylor & Francis Paper]".

c. <u>August 21, 2024</u>: @NicoleRPrause on X posted "We are still at work on the NoFap false conspiracy paper, but just found a trove of old Reddit data we could not pass up! They deleted a ton of violent content after we started writing papers documenting what they were doing. We got it all, but the new NoFap Discord is as violent<u>".</u>"

d. <u>September 07, 2024</u>: @NicoleRPrause on X posted "For the NoFap false conspiracy paper I'm learning they hosted public, weekly ~~meet-ups~~meetups online mixing kids and adults talking about masturbation. It did not mention parental consent or child assent that I could find. They deleted posts about them. Interesting. @paulahall_psych" This post included photographs of Plaintiff Rhodes, which was reposted by @DaddyWolfBear, @TunaSafeDolphin, @NemoEntropy, and others.

e. <u>September 16, 2024</u>: @NicoleRPrause on X posted "New evidence that exposure to false conspiracies leads to intentions to engage in violence [Link] Getting closer with our NoFap conspiracy paper...maybe why they also have such high rates of violence [Link to the Taylor & Francis Paper]".

f. <u>November 30, 2024</u>: @NicoleRPrause on X posted "Working on our NoFap conspiracy paper. A large for-profit industry has been guarding the false claims commonly called ['] conspiracy entrepreneurship[']. NoFap and The Reward Foundation fundraiser, Staci Sprout, describes humans are actually clones to sell her new [']coaching['] business."

g. <u>November 30, 2024</u>: @NicoleRPrause on X posted "Our conspiracy paper highlights the false conspiracy of @MattFradd, who told followers a donation could "see the pornography industry begin to crumble". There was never any such possibility. Fradd lied. Fradd was selling a book with false scientific claims he wanted to silence." In this post, Defendant Prause included an audio snippet of Matt Fradd talking about the Prior Litigation and her.

h. <u>January 22, 2025</u>: @NicoleRPrause on X posted "Alexander Rhodes has been posting all over the Internet and to colleagues, societies, and editors that PornHub was involved in our paper: [Link to the Taylor & Francis Paper] This is completely false and defamatory. PornHub had zero role, which he knew when he posted his claims. […] We have made this available for years. It is still the case that we never worked with Free Speech Coalition. Rhodes also was aware of this when he made his false and defamatory, public claims. Our false conspiracy paper is long overdue!"

i. <u>March 10, 2025</u>: @NicoleRPrause on X posted "We actually found this for our research on conspiracy posts on NoFap. The website is down...often...and the owner would claim they were DDOS'd by the ['']porn industry['']. or similar. I was unable to find any support for that for DDOS, now part of our false conspiracy paper! [Plaintiff NoFap]" Although NoFap has experienced DDoS attacks, Defendant Prause's post omits evidence that Plaintiffs ever attributed those attacks to the porn industry.

j. <u>April 18, 2025</u>: @NicoleRPrause on X posted "NoFap redirected their visitors to XXXChurch, a religious anti-porn group, for a very long time. We are reviewing NoFap's extensive religious payments, including from Covenant Eyes, in our conspiracy paper. There is no empirical basis for these interventions. [Screenshots]" To correct the record, Plaintiffs have never redirected NoFap visitors to the XXXChurch website; upon information and belief, Defendant Prause is referring to conduct that predated Plaintiffs' acquisition of its .com domain name.

k. <u>June 22, 2025</u>: @NicoleRPrause on X posted "We are working on our NoFap conspiracy paper and see NoFap discord having a normal one claiming scientists who link ejaculations with reduced prostate cancer risk, and the journalists who cover them, are all porn shills who should be sued (for what is not clear). [Screenshots]"

l. <u>July 18, 2025</u>: @NicoleRPrause on X posted: "Additional analyses appear consistent with NoFap moderators accelerating the removal/hiding of suicidal posts on their forums. This followed our paper demonstrating NoFap mechanisms for potentiating suicide and actual suicides within the group, giving the appearance of deception. […] Another finding was that the conspiracy content appear largely driven by Alexander Rhodes, a co-founder, which science refers to as a "super-spreader" of false information. NoFap appears more consistent with a for-profit [']manosphere['] group than a support group."

m. <u>August 12, 2025</u>: @NicoleRPrause on X posted "Anti-porn groups like The Reward Foundation's (@brain_love_sex) and NoFap's Staci Sprout also teach about [']lizard people['] roaming the earth to rape women. Our conspiracy paper touches on some of these more bizarre beliefs. They are more common than one might assume!" To correct the record, Staci Sprout does not represent Plaintiff NoFap, nor do Plaintiffs work with Sprout.

110

n. <u>October 15, 2025</u>: @NicoleRPrause on X posted "Our conspiracy paper provides evidence of the financial structure of NoFap, increasingly important to study such movements", and responding to a reply with "People who say I lobby for porn are just lying to make money off the lies."

~~319.~~317.　　Upon information and belief, Defendant Prause has created an Open Science Framework ("OSF") project titled "Conspiracy Beliefs by NoFap" with a <u>listed</u> contributor named <u>Justin Dubin, which was later changed to</u> Claire Reid.

~~320.~~318.　　The project's OSF storage contains an opposition-research dump about Plaintiffs that misrepresents facts and casts Plaintiffs in a false, defamatory, and disparaging light.

~~321.~~319.　　This "Conspiracy beliefs by NoFap" file repository curated by Defendant Prause exemplifies Plaintiff Rhodes' lived reality: while publicly claiming to be stalked and harassed by Plaintiff Rhodes and others, Defendant Prause has transcribed years-old interviews of him, combed through anything she can find, published the addresses of his family members and the name of his former girlfriend, and publishes statements disparaging him almost every day, often throughout the day, on social media.

~~322.~~320.　　Plaintiffs' efforts to defend themselves against Defendants Prause and Ley's continuing aggression are routinely reframed as attacks on "science".

~~323.~~321.　　On April 23, 2024, Defendant Prause posted on X, writing: "Alexander Rhodes of NoFap threatened Open Science Framework trying to force them to remove our research! Rhodes lied that I am an agent of the porn industry, am a criminal (!), and violated a settlement. His claims are completely false and defamatory. Why attack scientists?"; "Scientists studying porn commonly face such attacks and defamation. I am speaking about the violence incited by this group at a scientific conference shortly. [']I hope there's bloodshed[']: How pornography research is shaped by threats, violence and conspiracies[']"; and "These groups are

highly narcissistic. [Link to Defendant Prause and James Binnie's Paper] They view research as personal and play narcissistic ['']victim['']. That post is a great example of violence incited by such false victim claims. The real goal is to stop science."

324.322.    Upon information and belief, posting physical addresses of Plaintiff Rhodes or his family members, posting his phone number(s), posting private photographs, data scraping for anything he (or anyone who can be portrayed as him) has ever allegedly posted or done online, perusing hacked data, nor is investigating or posting other personal information concerning Plaintiff Rhodes appropriately categorized as science. In the campaign, Defendants Prause and Ley have even involved and targeted Plaintiff Rhodes' father, his stepmother, his grandmother, his sister, two ex-romantic partners, and others.

*The "Vexatious Defamation Lawsuits" and "Moderation Issues [on NoFap]" Papers*

325.323.    Defendant Prause has announced a future paper on "the abuse of defamation law by rich white men to silence women", at times specifically referring to Plaintiffs and other plaintiffs who have sued her in posts. On May 03, 2023, Defendant Prause created a project on OSF titled "Defamation law weaponized against women".

326.324.    On March 22, 2023, Defendant Prause posted on X claiming to be "[w]riting a paper about moderation problems." The post disparaged a NoFap volunteer and included screenshots of the individual's pre-volunteer posts, citing combative remarks made before the individual began moderating.

*Downstream Papers*

327.325.    Upon information and belief, Defendants' disinformation has been cited by, and has influenced the creation of, additional publications that either rely upon, were inspired by, or involved direct communication or collaboration with Defendant Prause, Defendant Ley, and

their associates. Prior to the execution of the Non-Disparagement Agreement, examples of academics who cited Defendants Prause or Ley or who otherwise relied upon disinformation originating from pornography industry associates, include Kris Taylor, author of "'I Want That Power Back': Discourses of Masculinity Within an Online Pornography Abstinence Forum" (*Sexualities*); Marlene Hartmann, author of "The totalizing meritocracy of heterosex: Subjectivity in NoFap" (*Sexualities*); and James Binnie, author of "Exploring the Etiological Pathways of Problematic Pornography Use in NoFap/PornFree Rebooting Communities: A Critical Narrative Analysis of Internet Forum Data" (*Archives of Sexual Behavior*).

328.326.      Since the Non-Disparagement Agreement has been executed, Defendant Prause and Defendant Ley have maligned Plaintiffs to thousands of members of the academic community through conference presentations, professional trainings, direct communications both in person and online, academic listservs, and published articles. This conduct has generated a continuing ripple effect of disinformation: first, other academics adopt, repeat, or are otherwise influenced by these porn industry narratives in their own work and publications; then later, additional academics cite those secondary works or are influenced by them—rather than by the Porn Industry Defendants' original statements—thereby compounding the disinformation and giving it the false appearance of independent scholarly corroboration.

329.327.      The longstanding suppressive efforts of Defendants Prause and Ley, along with their collaborators, has had a chilling effect on the field of problematic pornography use research.

*Disparagement at Events*

113

~~330.~~328.    Upon information and belief, the dissemination of disinformation by Defendants Prause and Ley extends beyond the printed word to presentations, word-of-mouth communications, emails, and other channels.



~~331.~~329.    On March 22, 2022, the Liberos LLC Facebook page announced:



~~332.~~330.    The Porn Industry Defendants have spread disinformation within academic conferences and other events, deterring academics, clinicians, and researchers from engaging with Plaintiffs or leading them to repeat such disinformation. Upon information and belief, Defendant Prause gave a presentation at the International Academy of Sex Research Annual Meeting on August 08, 2023, violating the Non-Disparagement Agreement numerous times.

114



The

333.331.    Upon information and belief, the poster presentation, purportedly co-authored by Defendant Prause, Defendant Ley, and James Binnie included a section titled "Recent violent events" with "The International Centre for Counter Terrorism recognized NoFap as an [']extremist misogynist['] group in 2023. […] To date, two mass murderers and 1 attempted murderer of a supreme court justice were known to be practicing [']NoFap['], raising questions as to the nature of violence associated with this group. 21.1% of followers reported witnessing violent posts on NoFap (Prause & Binnie, 2023)."

334.332.    OnUpon information and belief, on October 19, 2023, Defendant Prause gave the "keynote plenary" at the "Securing Sexuality 2023 Conference" with a talk titled "Manosphere For Sale". Defendant Prause announced the talk on her LinkedIn page, writing "I will be speaking at the [']Securing Sexuality['] conference concerning the recent, real-world violent acts from followers of Reboot/NoFap groups (which market treatments for erectile disorder and [']pornography[']) and how we (clinicians) can help men leave."

115

335.333.    DuringUpon information and belief, during the presentation, she went so far as to utilize Plaintiff Rhodes' likeness in conjunction with disparaging Plaintiffs:



336.334.    InUpon information and belief, in 2023, Defendant Prause defamed and disparaged Plaintiffs again at the International Online Sexology Supervisors.: https://sexologysupervisors.org/product/the-science-on-masturbation/.



116

337.335.    On September 26, 2024, Defendant Prause retweeted a post by @JustinCasePnC and @ swopusa, Sex Workers Outreach Project in violation of the Non-Disparagement Agreement.



338.336.    On February 06, 2025, Defendant Prause posted to her X account "Excited to be presenting an invited talk about the harms of NoFap to a national conference this year! I'll share details as they are made public. It is important that clinicians stop pushing boys into a harmful, sex-shaming manosphere group." This post was in violation of the Non-Disparagement Agreement.

339.337.    On May 29, 2025, Defendant Prause posted to X that "I presented an invited talk on how violent threats of anti-porn groups, including NoFap and Karezza, influence research. Data show one false post claiming a scientist [referring to herself] was porn sponsored by a NoFap [']superspreader['] caused >100 false and violent conspiracy posts on NoFap."



~~Defendant Prause shows no signs of stopping her egregious conduct. For example~~

~~340.~~338.      Upon information and belief, on December 6, 2025 ~~she~~, Definitely Prause will be presenting a seminar for Modern Sex Therapy Institutes entitled "Sex Therapies that Harm, Masturbation and New Diagnoses":



~~341.~~339.      On October 15, 2024, the book "*The Great Right North: Inside Far-Right Activism in Canada*" by Stéphane Leman-Langlois, Aurélie Campana, and Samuel Tanner was

118

published. The book disseminated disinformation originating from Defendants Ley and Prause. Defendant Prause shared it on her X account on October 07, 2025, writing "New book agrees NoFap is best understood as part of a feminism-hating ['']manosphere[''], anti-masturbation group [Link]" in violation of the Non-Disparagement Agreement.

342.340.     On April 07, 2025, the book *"The Male Complaint: The Manosphere and Misogyny Online"* by Simon James Copland was published. On April 16, 2025, Defendant Prause shared the book on her X account, writing "New book: NoFap forces men to conform to a very narrow definition of ['']masculinity[''], harming self-expression and free speech on the forums. Legitimate emotional concerns are ['']too feminine[''] and not acknowledged as a potential cause of suffering." Defendant Prause's post was shared by Silva Neves, @NemoEntropy, @TunaSafeDolphin, and others.

343.341.     Upon information and belief, Defendants Prause and Ley have been involved, directly or indirectly, involved in such publications targeting Plaintiffs.

**10.     Disparagement by Electronic Means**

*Disparagement in Media Outlets*

344.342.     Since executing the Non-Disparagement Agreement, Defendant Prause has continued to communicate directly and indirectly with journalists, writers, and media outlets—often with the collaboration of Defendant Ley and others—for the purpose of disseminating false, defamatory, and disparaging disinformation about Plaintiffs. Many of these publications resulted from Defendant Prause and her collaborators personally providing false, defamatory, and disparaging claims to journalists, while others were a predictable and intended outcome of her widespread, contract-breaching dissemination or disinformation across social media, academic channels, and other public forums.

119

345.343.    Not only have the following articles—initiated by porn- industry disinformation—harmed Plaintiffs' reputations, but Plaintiffs have also expended considerable time and legal fees attempting to mitigate damages, largely without success, as their requests to journalists and publications for corrections are routinely refused or ignored. As noted previously, this complaint contains only a sampling of the defamatory and disparaging conduct at issue, as countless other instances of the same exist.

346.344.    Plaintiffs' efforts to prevent the publication of additional contract-breaching pieces initiated by Defendants Prause and Ley, or to request corrections or retractions of published defamatory and/or contract-breaching content, are routinely mischaracterized by Defendants Prause and Ley as evidence that Plaintiffs are wealthy, powerful, and litigious. They then employ these mischaracterizations to further disparage Plaintiffs and cast them in a false light, asserting that the pornography industry and its associates are victims of Plaintiffs' impecunious recovery peer support website.

347.345.    Upon information and belief, Defendants Prause and Ley, together with other porn industry surrogates such as Mike Stabile, regularly maintain communications with journalists (including Samantha Cole and EJ Dickson), editors (including Marlow Stern and Elizabeth Nolan Brown), and other media professionals in furtherance of their objectives, including promoting porn industry interests and attacking individuals and organizations they perceive as critics.

348.346.    Upon information and belief, Defendants Prause and Ley, along with their porn industry collaborators, also engage in behind-the-scenes groundwork to pitch media stories and to facilitate the insertion of disparaging content into articles targeting Plaintiffs and other perceived opponents of the porn industry.

120

349.347.     Further, as defamatory and contract-breaching articles proliferate, later outlets can cite those prior publications as purported support, thereby lending false legitimacy to the defamatory claims and reinforcing the narratives advanced by the porn industry. Some of these later outlets are directly pitched by Defendants, while others inadvertently encounter the same material—including through republication on platforms such as Wikipedia and social media—resulting in a cycle in which disinformation is repeated and amplified. This iterative dynamic fabricates the appearance of independent third-party corroboration of porn-_industry disinformation, even though the claims originate from the same coordinated actors.

350.348.     Upon information and belief, the following articles were published after the Non-Disparagement Agreement was executed:

a. March 13, 2023: A *Daily Dot* article by Ana Valens, titled "It's easy to see the role 'NoFap' played in yesterday's violence against Asian women", cited disinformation originating from porn industry associates, including Defendant Ley.

b. March 19, 2021: A *Lifehacker* article by Stephen Johnson, titled "The Out-of-Touch Adults' Guide To Kid Culture: Anti-Masturbation Porn Conspiracies", parroted porn industry disinformation.

c. March 25, 2021: *Rolling Stone* published an article by EJ Dickson titled "The Atlanta Spa Shootings Are Fueling Far-Right Attacks on Porn and Sex Work". Plaintiff is informed and believes, and thereon alleges, that EJ Dickson has maintained long-term communications with Defendants Ley and Prause, as well as Mike Stabile and other pornography-industry affiliates.

d. March 29, 2021: A *The Conversation* article by Daniel Kelly, titled "Nofap: can giving up masturbation really boost men's testosterone levels? An expert's view", directly citing porn industry disinformation (the 2018 Samantha Cole article featuring xHamster and Defendant Ley), included misleading, false, and disparaging assertions about Plaintiff NoFap.

e. June 15, 2021: EJ Dickson, who upon information and belief has maintained longstanding communication with various porn industry associates including Defendants Prause and Ley, published a piece in *Rolling Stone*, which included "In itself, a far-right group advocating for abstinence from self-pleasure is nothing new; there's extensive history of white-supremacist groups equating masturbation (and the [']Jewish-owned['] porn industry) with loss of masculinity, and the hugely

121

popular subreddit NoFap, which traffics in such ideology, had been founded years before."

f.   September 23, 2021: A *Forward* article by Mira Fox, titled "The antisemitic conspiracy behind the anti-porn movement", disparaged Plaintiff NoFap, #Traffickinghub, and Exodus Cry. The original article cited EJ Dickson's *Rolling Stone* piece which featured Defendant Ley.

g.   November 02, 2021: Dani Blum from *The New York Times* reached out to Plaintiffs, writing "Hi, I'm a reporter at The New York Times working on a piece about sexuality research and, in particular, Nicole Prause's research. I'd like to speak with Alexander Rhodes for the piece, if he's available for a 30 minute interview in the coming days. Thanks so much!" Upon information and belief, Dani Blum had been provided with false, defamatory, and disparaging statements by Defendant Prause.

h.   April 20, 2022: Defendant Prause had long been in communication with Eddie Kim to provide false, defamatory, and disparaging claims about Plaintiffs in violation of the Non-Disparagement Agreement. Defendant Prause previously contacted Eddie Kim who planned to write a story targeting Gary Wilson about "the various harassment and threats that sexual health researchers face, notably from those who oppose pornography" featuring Defendant Prause as a victim of such purported harassment and threats. Gary Wilson died only weeks later after Eddie Kim threatened to publish the story regarding him. After Eddie Kim, then from Mel Magazine, attempted to author an article sourced by Defendant Prause targeting Gary Wilson in February 2021, Eddie Kim set his sights on Plaintiff Rhodes in April 2022 to target Plaintiff Rhodes with a similar disparaging story featuring Defendant Prause as a source.

i.   May 29, 2022: After Eddie Kim's story didn't get published, a friend of his and fellow *Mel Magazine* colleague C. Brian Smith wrote to Plaintiff NoFap on May 29, 2022, to December 05, 2022, attempting to publish a substantially identical and disparaging article.

j.   January 30, 2023: David S. Smith in *Current Affairs* authored a disparaging story about NoFap, citing Defendant Prause.

k.   February 26, 2023: Noor Al-Sibai in *Futurism* authored a disparaging article about NoFap, citing Defendant Prause.

l.   March 01, 2023: James Felton in *IFLScience* authored a disparaging article about NoFap, citing Defendant Prause.

m.   March 03, 2023: Luke Andrews in *Daily Mail* authored a disparaging article about NoFap, citing Defendant Prause.

n.  <u>March 12, 2023</u>: Eric W. Dolan in *PsyPost* authored a disparaging article about Plaintiff NoFap, citing Defendant Prause.

o.  <u>March 13, 2023</u>: Tibi Puiu in *ZmeScience* authored a disparaging article about Plaintiff NoFap, citing Defendant Prause.

p.  <u>March 13, 2023</u>: Daniel Villarreal authored a disparaging article in *Queerty*, citing Defendant Prause and James Binnie.

q.  <u>March 19, 2023</u>: Freya Hodgson authored a disparaging article in *Daily Star*, citing Defendant Prause.

r.  <u>April 21, 2023</u>: Heven Haile authored a disparaging article in Vice Media's *i-D*, citing Defendant Prause.

s.  <u>June 04, 2023</u>: John Mac Ghlionn authored a disparaging article in *The Sun*, citing Defendant Prause.

t.  <u>July 09, 2023</u>: Will McCurdy published a disparaging article in *Slate*, citing Defendant Prause.

u.  <u>September 26, 2023</u>: Counsel for Plaintiff NoFap was contacted by Kieran Leavitt from *The Toronto Star*: "I'm working on a story about the years-long dispute involving many different people, but mainly Nicole Prause, Gary Wilson and Alex Rhodes. During my research into this story, I was given a letter that was sent from you on behalf of Alex Rhodes to Mel Magazine. I was hoping to get your side of the story behind this letter and the resulting fallout." On September 29, 2023, Leavitt contacted Plaintiffs directly. Leavitt later contacted Plaintiff Rhodes' father and sister. Plaintiff Rhodes called Leavitt and requested for him to stop contacting his family members, relaying that the contact was unwanted. However, since Plaintiffs could not find any apparent ties between Leavitt and the Porn Industry Defendants, he later agreed to speak with Leavitt off-the-record, with the intention of correcting the record. During these two long conversations, Plaintiff Rhodes had to spend significant time defending himself against numerous disparaging and defamatory statements originating from Nicole Prause—claims the reporter stated had been provided to him by Defendant Prause.

v.  <u>November 14, 2023</u>: Silva Neves (a longtime collaborator of Defendants Prause and Ley) in *Psychology Today* published a piece disparaging Plaintiff NoFap, citing Defendant Prause.

w.  <u>December 07, 2023</u>: Sarah-Louise Kelly published an article in the *HuffPost* disparaging Plaintiff NoFap, citing disinformation by Defendant Prause.

x.  <u>April 30, 2024</u>: Heather Sherr published an article in *Public Health Post*, disparaging Plaintiff NoFap and citing Defendant Prause.

y.  <u>June 05, 2024</u>: Elizabeth Hlavinka published an article in Salon, disparaging Plaintiff NoFap, citing Defendant Prause.

z.  <u>July 1, 2024</u>: A *Psychology Today* article authored by Michael Castleman, a contributor to the Pornhub/Aylo Defendants' "Sexual Wellness Center", disparaged Plaintiff NoFap, specifically citing the Taylor & Francis Paper co-authored by Defendants Prause and Ley.

aa. <u>October 04, 2024</u>: An *XBIZ* trade-publication article authored by Gustavo Turner, a frequent collaborator of Defendants Prause and Ley, featured an interview with Defendant Prause. Upon information and belief, Defendant Prause has been mentioned in at least 10 *XBIZ* articles since 2014, and Defendant Ley in at least 8. The article, titled "The Daily Mail Revives Discredited 'Pornography-Induced Erectile Dysfunction' (PIED) Theory", contained disparagement of NoFap, Gary Wilson, and The Reward Foundation.

bb. <u>November 19, 2024</u>: A disparaging *Salt Lake City Weekly* article was published by a porn industry associate named Michael Dean McGrady Jr, republishing disinformation originating from Defendants Prause and Ley.

cc. <u>May 27, 2025</u>: An article published by *GQ*, authored by Sascha Cohen, included disparaging statements concerning Plaintiff NoFap, citing Defendant Prause.

dd. <u>October 27, 2025</u>: A *TheColu.mn* article authored by Marcy Ellerton repeated disinformation disseminated by the Porn Industry Defendants.

*Disparagement in Blog Posts*

Commented [AR5]: Make sure we include the "retraction" of the testosterone paper.

~~351.~~349.    Defendant Prause has published a series of blog posts on the website Medium.com, many of which violate the Non-Disparagement Agreement.

~~352.~~350.    In an article titled "Pornography addiction forums could radicalize another shooter: March 21 2021", Defendant Prause linked to multiple disparaging publications, including a book co-authored by her associate Alan McKee which included ""the true victims of porn - a stance adopted in the broadly visible, Reddit-based NoFap movement, the supporters of which have been known for vitriolically attacking female scholars not sharing their view on the harms caused."

124

353.351.     On October 31, 2023, Defendant Prause published "How did No Nut November start?," using the tags "Nofap", "misogyny", and "Violence Against Women". In this article, she disparaged plaintiffs as follows:

"Semen Retention and NoFap are the most widely posted male sexual health topics on Instagram and TikTok, but also have the least accurate health information. Semen retention has its roots in ascetic religious practice, but the more recent practices appear largely unrelated to those ascetic principles. As best we can find, No Fap first appeared on a BodyBuilding.com forum on July 9, 2004. […] Specifically, a BodyBuilding.com user lamented that his girlfriend was away, and that she had demanded that he not ejaculate at all while she was gone. It would be 49 days until she would get back. He started a counter for his "["]NoFap"["] journey and rated his daily "["]difficulty"["] abstaining from ejaculation." ——— Defendant Prause falsified this by using citing a forum signature and a thread that was retroactively altering the thread altered after NoFap LLC was created.

"Somehow, this caught on in the BodyBuilding.com forums and became a monthly challenge to abstain from masturbation. They mistakenly believed that ejaculation abstinence would increase their testosterone (abstinence actually decreases testosterone). The first instance of "["]No Fap November"["] I was able to find was November 1, 2009 on the BodyBuilding.com forum. […] This grew to be wildly popular on BodyBuilding.com forums, with a thousands-reply post on June 2011. About three weeks later, the subreddit "["]NoFap"["] (denoted "["]r/NoFap"["]) was created on Reddit by two cofounders/moderators who also had been active in Body Building forums. They stated the NoFap idea came from BodyBuilding.com and even linked to the popular post. The NoFap subreddit defined the practice as the rules for NoFap are "["]Absolutely NO fapping. No self-pleasure AT ALL."["] Fapping is slang for male masturbation. […] One of the r/NoFap co-founders left to create a new PickUp Artist subreddit called r/TruePickup, which focused on men extracting sex from women. The other r/NoFap cofounder started dozens of NoFap subreddits, which have had various outcomes. The other subreddits included an apparent fan page for himself (r/AlexanderRhodes) and r/NoFapArmy. The later hosted challenges (r/NoFapWar) where members would be given military ranks, grouped into warring armies, and listed as "["]dead"["] when they masturbated or failed in some other way. Women could be directed to "["]r/NoShlick"["], an apparent reference to female masturbation. I scraped the last 1,000 posts on r/NoFap and found none identified as female."

"From these auspicious beginnings, seemingly thousands of spin-offs using the name "["]NoFap"["] have appeared online. Many appeared to be men offering "["]coaching"["] services promising to cure a variety of medical illnesses, which there is no evidence they do. Given that "["]No Fap November"["] actually started on a BodyBuilding forum, the groups appear to arise from a variety of different

sources. NoFap has since been classified as a part of the manosphere, seeking to disseminate anti-feminist viewpoints."

"Abstaining from masturbation or ejaculation in November is probably not harmful if you have no expectations and engage for fun. However, if you think [•]No Nut November[•] will reap health benefits for you, it will not. Masturbation abstinence practices are consistently associated with negative health outcomes, promote false conspiracy beliefs about the pornography industry (for supposedly tricking them to ejaculate), promote antisemitic beliefs, and spread misogynist values. The International Centre for ~~Counter-Terrorism~~Counterterrorism described NoFap as a part of extremist misogyny online. The Violent Extremism Risk Assessment also included [•]NoFap[•][•] as a term associated with online violence and misogyny. The likely outcomes of abstaining from ejaculation for November are to decrease testosterone, increase the frequency of nocturnal emissions (i.e., [•]wet dreams[•][•]), and possibly cause a new anxiety disorder called Dhāt Syndrome."

~~354.~~352.        On May 31, 2024, Defendant Ley promoted an article published on the website *agentsofishq.com* which contained disparaging content about Plaintiffs, going so far as to portray plaintiffs as Nazis. Moreover, upon information and belief, the false information reported in this article originated from Defendants Prause and Ley.





355.353.    On September 13, 2024, Defendant Prause's published an article entitled "Time editor's Belinda Luscombe's problem with the truth," which contained numerous false, defamatory, misleading, and disparaging statements concerning Plaintiffs.

356.354.    On August 14, 2021, Defendant Ley published a defamatory article claiming a mass shooter was radicalized in Plaintiff NoFap without evidence.

357.355.    On August 15, 2025, David Ley published the article "The Evolution of the Incel Subculture article" in which he defamed and disparaged plaintiffs.

*Disparagement in New Media*

358.356.    Prause also has violated the Non-Disparagement Agreement serially by appearing on the following podcasts to disparage Plaintiffs, including:

    a.    August 14, 2021: Ball's Deep Podcast

    b.    October 11, 2021: Dunc Tank

    c.    February 02, 2022: Candice Horbacz

    d.    June 08, 2022: The Math Podcast

127

e.  <u>August 05, 2022</u>: Max "mrgirl" Karson

f.  <u>January 18, 2023</u>: Natasha Helfer

g.  <u>March 04, 2023</u>: Joe Duncan

h.  <u>March 08, 2023</u>: ManWhore Podcast

i.  <u>March 16, 2023</u>: Stupid Sexy Privacy

j.  <u>December 19, 2023</u>: Dan Savage LoveCast

k.  <u>January 19, 2024</u>: Hone Healthy

l.  <u>April 12, 2024</u>: Susie Gronski

m.  <u>September 12, 2024</u>: Digital Defenders United

n.  <u>February 14, 2025</u>: Rena Malik

o.  <u>February 21, 2025</u>: ~~Psye~~Psych and the City

p.  <u>March 17, 2025</u>: The TwoX Labs Podcast

q.  <u>July 21, 2025</u>: The Dissenter Podcast

*Disparagement via Wikipedia Astroturfing*

~~359.~~357.     Porn industry entities have invested substantial time into manipulating Wikipedia's content. To achieve this, they have operated numerous illicit sockpuppet accounts in violation of Wikipedia's stated policies, concealing the true source of edits and creating the false appearance of organic public contributions. Porn industry entities systematically monitor and manipulate Wikipedia pages related to pornography, as well as pages concerning industry critics and recovery resources.

~~360.~~358.     Upon information and belief, Mike Stabile from Free Speech Coalition operated the Wikipedia account username "fauxjob". Upon information and belief, Mike Stabile also utilized "fauxjob" as his Instagram username and previously utilized the email address

michael@fauxjob.com. Upon information and belief, Mike Stabile also utilized the "fauxjob"

username on Reddit, where he, upon information and belief, posted to the r/NoFap subreddit and

encourage a 16-year-old underage Reddit user to use pornography: "No, you're a teenager with a

high sex drive. It's natural and not shameful. When I was your age, I had access to almost no porn

and was CONVINCED that I was addicted to masturbation because I was so horny all the time."

361.359.     Using metadata and other evidence, Wikipedia administrators connected

various            clusters            of            sockpuppet            accounts:

https://en.wikipedia.org/wiki/Wikipedia:Sockpuppet_investigations/NeuroSex/Archive.https://en

.wikipedia.org/wiki/Wikipedia:Sockpuppet_investigations/NeuroSex/Archive.     Based    on    the

University of Pittsburgh discovery and other metadata, it appears that Defendant Prause has

utilized over 80 alias identities to edit Wikipedia pages.

362.360.     While  the  #Traffickinghub  was  launched  by  Laila  Mickelwait,  the

campaign was supported by Exodus Cry, Mickelwait's employer at the time, which described itself

as  "committed  to  abolishing  sex  trafficking  and  breaking  the  cycle  of  commercial  sexual

exploitation while assisting and empowering its victims." At the time of the #Traffickinghub

launch, there wasn't a Wikipedia page about Exodus Cry. On December 17, 2020, the "Fauxjob"

Wikipedia alias, which upon information and belief is operated by Free Speech Coalition's Mike

Stabile, wrote and created the page about Exodus Cry.  Metadata unveiled that, within hours,

Defendant Prause operated a newly created Wikipedia sockpuppet account, "Dfgnbweo0", to

insert disparaging content onto the newly- created Exodus Cry page. One of Defendant Prause's

edits included "On December 17, 2020, the Daily Beast revealed that Exodus Cry spokesperson

Laila Haddad Mickelwait filed declarations supporting two men working with Exodus Cry

[referring to Plaintiff Rhodes and Donald Hilton] accused of sexual harassment and posting death

129

threats against a female scientist who studied pornography. [linking to a Daily Beast article quoting Defendant Prause]". In the wake of #Traffickinghub, Defendant Prause-connected sockpuppet aliases would make further Wikipedia edits regarding Exodus Cry or its founder Benjamin Nolot under the Wikipedia aliases "Tp89j9c4t98", "Violetta2019", "EffortMoose", "Imp65", and "Bushwhacky" to insert disparaging information.

363.361.       Defendant Prause has frequently coordinated her Wikipedia edits with a power user under the username "Tgeorgescu", who claims on their Wikipedia user page to be a Netherlands-based individual named Tudor Georgescu. Tgeorgescu has exerted control over multiple Wikipedia pages related to pornography, including the pages about Plaintiff NoFap, Defendant Prause, the Pornhub/Aylo Defendants, OneTaste, pornography addiction, the effects of pornography, and the late Gary Wilson. To achieve this, Tgeorgescu has routinely removed edits made by the general public, implemented edits suggested by Defendant Prause, protected and incorporated edits made by Defendant Prause's sockpuppet accounts. Tgeorgescu has been editing the NoFap page since as early as January 7, 2017.

364.362.       Tgeorgescu and Defendant Prause have often communicated to discuss their coordinated Wikipedia edits with each other. Even on the Wikipedia website, Tgeorgescu has often taken direction from Defendant Prause-connected sockpuppet alias identities.[22][23] Evidence obtained on social media reveals that Defendant Prause and Tgeorgescu have communicated outside the Wikipedia. For example, Tgeorgescu's X account shows direct off-Wikipedia communication related to these matters.[24]

---

[22] https://en.wikipedia.org/wiki/Talk:NoFap/Archive_4#c-Antfightclubcatsup-20221126041800-Tgeorgescu-20221121072700
[23] https://en.wikipedia.org/wiki/Talk:NoFap/Archive_4#c-Tgeorgescu-20230224175300-Figvostok1enchanting-20230224170500
[24] https://x.com/tugeorgescu/status/1733461667298660581

365.363.    Upon information and belief, Defendant Prause has utilized the following thirty two Wikipedia aliases to edit the page about NoFap: "130.216.57.166", "Suuperon", "2601:281:CC80:7EF0:9505:4EB1:105A:D01", "DIsElArIONORsIvOCtOperT", "Mateherrera", "Nicklouisegordon", "Faustinecliffwalker", "NeTAbygO", "JackReacher2018", "Anemicdonalda", "Etta0xtkpiq45ulaey2", "Turnberry2018", "Islamaryoryan", "Transmitting2020", "CtRAmENtagNatK", "Sdjbaw;uo", "Uoheargopuherg", "Strawberrycerealbat", "OwDOnimEDGENiORmyTErentea", "Silverberrycomposer", "Deliganist", "HeavyWheeler", "IntroEggplant", "Angurispome", "Jkw85FLT", "Philosophydriven", "Guardsmanmario", "Figvostok1enchanting", "Antfightclubcatsup", "BrandolinisLaw", "UgherBob", and "Oysterthebigsleeplog".

366.364.    Defendant Prause-connected sockpuppet aliases and Tgeorgescu have written the majority of the Wikipedia page about Plaintiff NoFap, carefully shaping it to spread disinformation to millions of viewers. The page is rife with defamation, inaccuracies, and misleading claims. Many of the citations and quotes are sourced from Defendant Prause, Defendant Ley, their collaborators, or secondary sources that directly cite or otherwise stem from their originally planted disinformation. Meanwhile, more reliable mainstream news sources—such as articles about Plaintiff NoFap published by *CNN* and *The New York Times*—do not appear in the page. Scientific papers, mainstream news articles, and expert quotes from reliable sources supporting the view that excessive pornography use can lead to adverse effects, including behavioral addiction, are largely omitted or entirely absent from the Wikipedia page.

367.365.    Defendant Prause-connected sockpuppet accounts authored nearly the entire content of the following sections on the Wikipedia page about NoFap: "Political and religious motivation," "Reception," "Research concerning NoFap forums and followers,"

131

"Journalistic descriptions of NoFap," and "Litigation." The Talk page for Wikipedia's NoFap article, where editorial decisions about the underlying page are purported to be made, provides further insight. ~~According~~At the time of this research, according to Wikipedia's XTools statistics, the NoFap Talk page has received a total of 974 edits. Of these, Tgeorgescu alone is responsible for 602 edits—an overwhelming 61.8% of all activity on the page.

~~368.~~366.    Upon information and belief, Defendant Prause has utilized multiple aliases when editing Wikipedia pages about "Sexual Addiction"; "Pornography Addiction"; "Internet Sex Addiction"; "Fight the New Drug"; and "Nicole Prause".

~~369.~~367.    On March 27, 2021, Tgeorgescu added r/NoFap to Wikipedia's list of alleged "Controversial Reddit communities". Tgeorgescu has continued to exert control over Wikipedia pages concerning pornography through the time of this filing. For example, on June 21, 2025, Tgeorgescu made edits to Wikipedia pages concerning Defendant Prause and the Pornhub/Aylo Defendants, adding and revising content in a manner favorable to them. On June 18, 2025, Tgeorgescu edited the Wikipedia page about NoFap, adding the claim "According to a journal from Utah, NoFap has difficulties in distancing itself from Christian nationalism and antisemitism. It also says that the ['] reboot ['] therapy is not supported by evidence." This statement cited a publication by Michael Dean McGrady Jr., who is a member of the porn industry and has served as a contributing editor for AVN (Adult Video News) since 2023.

~~370.~~368.    On June 28, 2025, Tgeorgescu made comments onto the page about Nicole Prause favorable to her, and on the same day made edits on pages about Pornhub/Aylo Defendants and the alleged trafficking venture OneTaste. On July 19, 2025, Tgeorgescu added the following to the Wikipedia page about Defendant Prause: "According to her own paper, she ['] was awarded damages from Andrew Stebbins, the legal counsel of NoFap LLC founder['] for defamation and

132

revealing of her address. This is a mandatory disclosure she had to make under academic conflict of interest rules." On the same day, Tgeorgescu added something substantially similar to the Wikipedia page about Plaintiff NoFap, adding "According to Prause's own paper, she [']was awarded damages from Andrew Stebbins, the legal counsel of NoFap LLC founder['] for defamation and revealing of her address. This is a mandatory disclosure she had to make under academic conflict of interest rules." These assertions are not true and the case she filed against Andrew Stebbins was dismissed, however they continue to remain on both Wikipedia pages to date. While incorporating content sourced from Defendant Prause and her collaborators, Tgeorgescu has regularly deleted material from Wikipedia pages that is unfavorable to the pornography industry, claiming that such content violates Wikipedia's sourcing policies, yet failing to apply those policies uniformly.

371.369.        Many of the disparaging Wikipedia edits by Defendant Prause occurred after she executed the Non-Disparagement Agreement.

372.370.        Since executing the Non-Disparagement Agreement on February 26, 2021, the NoFap Wikipedia page has received over 1,301,283 direct pageviews. Of those, 1,233,460 views have occurred since Defendant Prause first edited the page in violation of the Non-Disparagement Agreement, according to the Wikipedia pageviews analysis tool. Those numbers do not include secondary impressions, such as through search engines and AI tools that source content from Wikipedia.

373.371.        Porn industry associates frequently cite their own disinformation—including both their own work and secondary sources misled by them—as evidence to support their claims against their targets. For example, on June 13, 2022, Defendant Ley wrote on Twitter: "Well. That's a whole lotta truth right there. Your Brain on Porn gets fact-checked on Wiki. [link

133

to the Wikipedia page about Gary Wilson], which was largely constructed and controlled by Defendant Prause and Tgeorgescu]"

*Disparagement via Social Media Posts*

~~374.~~372.    Since executing the Non-Disparagement Agreement, Defendant Prause has escalated to posting about Plaintiffs on social media in breach of contract on a near-daily basis—often multiple times per day—and frequently names Plaintiffs directly. These messages have been preserved for trial using preservation software, namely Page Vault.

~~375.~~373.    Upon information and belief, Defendant Prause utilized the following Reddit accounts, many of which were used to post disparaging statements about Plaintiffs in breach of the Non-Disparagement Agreement.

     a.   https://www.reddit.com/user/SexMythBusters
     b.   https://www.reddit.com/user/ReadMoreAndMore
     c.   https://www.reddit.com/user/CupOJoe2010
     d.   https://www.reddit.com/user/GaryWilsonPervert
     e.   https://www.reddit.com/user/PenisAddict
     f.   https://www.reddit.com/user/DataScienceLA
     g.   https://www.reddit.com/user/JumpinJackFlashZ0oom
     h.   https://www.reddit.com/user/sciencearousal
     i.   https://www.reddit.com/user/Agreeable-Plane-5361
     j.   https://www.reddit.com/user/soihrgoi
     k.   https://www.reddit.com/user/RebootStudy2021
     l.   https://www.reddit.com/user/RebootStudy2022
     m.   https://www.reddit.com/user/FancyExamination2099
     n.   https://www.reddit.com/user/Winter-Oil5423
     o.   https://www.reddit.com/user/funkcC
     p.   https://www.reddit.com/user/Appropriate-Week-718
     q.   https://www.reddit.com/user/Solid_Visit_1342
     r.   https://www.reddit.com/user/SeaYou4528
     s.   https://www.reddit.com/user/Pleasant_Gas_4303
     t.   https://www.reddit.com/user/AskingForProof
     u.   https://www.reddit.com/user/TruthWithout
     v.   https://www.reddit.com/user/DontDoDallas
     w.   https://www.reddit.com/user/EvidenceForYou
     x.   https://www.reddit.com/user/GaryWilsonSteas
     y.   https://www.reddit.com/user/gjacwo
     z.   https://www.reddit.com/user/HeartInternetPorn

aa. https://www.reddit.com/user/FightPower
bb. https://www.reddit.com/user/DallasLandia
cc. https://www.reddit.com/user/locuspocuspenisless
dd. https://www.reddit.com/user/ijdfgo
ee. https://www.reddit.com/user/vnwpwejfb
ff. https://www.reddit.com/user/alahewakbear
gg. https://www.reddit.com/user/SearchingForTruthNot
hh. https://www.reddit.com/user/HighHorseNotOn
ii. https://www.reddit.com/user/SoManyMalts
jj. https://www.reddit.com/user/RevealingAll
kk. https://www.reddit.com/user/sinwvon
ll. https://www.reddit.com/user/GermanExpat18

376.374.     **Personal Information**: Since executing the Non-Disparagement

Agreement, Defendant Prause has regularly posted Plaintiff Rhodes' personal information

online. This includes addresses for family members and other loved ones, Plaintiff Rhodes'

address, his phone number(s), the mailing address for Plaintiff NoFap, private photographs,

names from his personal life, and much more. Much of this personal information was obtained

through data mining or opposition research. Oftentimes, Defendant Ley has joined in

disseminating such personal information. Examples include:

a. <u>April 22, 2024</u>, Defendant Prause published the physical address of Plaintiff Rhodes' family members, Plaintiff Rhodes' personal cell phone number, Plaintiff Rhodes' personal email address.

b. <u>June 1, 2024</u>, Defendant Prause published the name of an ex-girlfriend of Plaintiff Rhodes, along with two legal documents from a small claims case the ex-girlfriend had filed against a former landlord. Defendant Prause falsely claimed she lost the case, when in fact she ultimately prevailed.

c. <u>August 12, 2024</u>: Defendant Ley posted a photograph of Plaintiff Rhodes as a teenager at school doing a skit with a group of other male students, who were all dressed up in women's clothing. It is unclear how Defendant Ley obtained this private image, which he claimed "popped up". Defendant Ley wrote on X: "Is there a modern price to hypocrisy? I'm interested in math. When these examples of conflict pop up, does it shift anything? If, for instance, a photo of the head of @nofap in drag popped up, does it change the view that trans/drag is addictive? And maybe he's just a grifter?" After Defendant Ley posted the image, Plaintiff Rhodes was subjected to subsequent online statements disparaging him that continue to cause harm. For example, a January 28, 2025 post linked directly to Defendant Ley's X.com post, claiming: "Founder of Nofap was Trans [Link to

135

Defendant Ley's X.com Post] The founder of nofap is a crossdresser trying to cope with sexual desire to be a woman." Defendant Ley's post was shared widely, including by @DaddyWolfBear.

d. <u>February 15, 2025</u>: Defendant Prause posted about a former romantic partner of Plaintiff Rhodes on X (formerly Twitter) and Bluesky, including false statements and doxxing details that could be used to identify her name and address. She wrote: "Apparently, the vexatious litigation history of anti-porn groups is longstanding. In 2018, one sued their apartment owner, lying they were living in asbestos, lost, and spent *years* harassing them afterwards. History suggests these ['[porn lawsuits['] are really for personal gain." Defendant Prause's posts included the case number, venue, dates, and defendants' names, enabling anyone to identify the plaintiff within minutes. The referenced matter was a small-claims case filed by Plaintiff Rhodes' former partner, who won on appeal. There wasn't any contact with the defendants after the suit was filed, so the "harassment" claim is unfounded.

~~377.~~375.    <u>Violence and Terrorism</u>: Following execution of the Non-Disparagement Agreement, Defendant Prause disseminated accusations that Plaintiffs are violent, associated with threats or violence, supportive of violence, and ~~terroristic~~terrorism, intentionally conveying them to cause harm:

a. <u>June 09, 2022</u>: Defendant Prause disparaged NoFap by engaging in Twitter postings with @JFTxWine, who upon information and belief is a friend of Defendant Prause. @JFTxWine posted on June 02, 2022, that "You have it the other way around, there have been many death threats and attacks on journalists and scientists from [NoFap]. These are very well documented.... No one in the porn industry cares about nofap. And this is all smoke and mirrors played by a grifter." The thread also included additional posts by @JFTxWine that disparaged NoFap and Plaintiff Rhodes. The @NicoleRPrause Twitter account responded on June 09, 2022, writing "Now, WHO specifically excluded addiction and keeps having to republish this because of accounts like this that sell health disinformation", republishing @JFTxWine's false and defamatory statements, and adding further disparagement.

b. <u>December 03, 2023</u>: Defendant Prause posted on X.com that "I have reported to multiple law enforcement that are tracking NoFap. I am aware that the International Centre for Counter Terrorism and Joint Terrorism Task Force have been monitoring them, consistent with our data:"

c. <u>March 28, 2025</u>: Defendant Prause reached out to the NHS Greater Glasgow and Clyde (username @NHSGGC on X.com) to claim that Plaintiff NoFap is a "group of extremist misogyny as defined by the International Centre for Counter Terrorism".

136

d. <u>June 28, 2025</u>: Defendant Prause posted to BlueSky, writing "These posts and images are from the r/NoFap anti-masturbation website, calling for the murder of the PornHub CEO and porn performers. Anti-porn coaches and religious groups regularly recommend sending youth to r/NoFap, despite this well-documented, violent content [Link to the Taylor & Francis Paper]"

~~378.~~   <u>Conspiracy Theories</u>: Defendant Prause has repeatedly posted that Plaintiffs are associated with dissemination of conspiracy theories.

~~a.~~376.   For one example, on September 30, 2024~~.~~, @NicoleRPrause on X posted "This is some of the best evidence I have seen that the anti-porn community is causing the spread of false porn industry conspiracies. After a NoFap founder posting a single conspiracy theory on r/NoFap November 2019, posts about the false conspiracy exploded for months on NoFap." In a reply post, @NicoleRPrause wrote "They claimed that the porn industry and scientists were in a secret cabal to attack and close NoFap. [upon information and belief, referring to Defendants Prause and Ley] We can find no evidence that ever occurred."

~~379.~~377.    <u>Discriminatory Views</u>: Defendant Prause has posted that NoFap hosts discriminatory views. For example:

a. <u>April 28, 2022</u>: Defendant Prause made a post to her @NicoleRPrause Twitter account identifying NoFap by description, including a screenshot of NoFap as an attached image, posting "like [']Reboot['] anti-porn forums, where women who dress sexy on Instagram are still [']girls being like a slut[']. Teaching men to shame women for their sexual choices on Reddit anti-porn forums might be worse than the church doing it."

b. <u>June 22, 2022</u>: Defendant Prause disparaged NoFap by utilizing her @NicoleRPrause Twitter account, identifying NoFap by description, posting that "Analyzing misogynist language in Reboot forums. [']Bitch['] is the favorite, followed by [']pussy['], then [']cunt['], then [']slut['], then [']whore[']. I rarely see references to women/woman, almost always [']girl[']. In sum: NLP is verifying reports of extreme misogyny in these forums." In response to her Twitter post, another Twitter user @furfunz28 replied to Defendant Prause, identifying NoFap by name. Prause elaborated that "These are gurus or [']coaches['] who profit by telling men/boys they can cure their erectile concerns by helping them abstain from

137

pornography. Never mind that porn doesn't cause ED. They are the primary sources of sexual health disinformation. We study their harm of public health."

~~380.~~378.    Direct Interactions: Defendant Prause would directly retweet, respond, or interact with recent or past NoFap social media posts, such as:

a. July 11, 2022: NoFap posted to Twitter "Just a friendly reminder that the World Health Organization (@WHO) officially recognizes Compulsive Sexual Behaviour Disorder. It's great to see more scientists & clinicians speaking up about this important issue. Onwards to more research & recognition!" On July 11, 2022, Defendant Prause disparaged NoFap by utilizing her @NicoleRPrause Twitter account, posting "Reminder: Neither APA nor WHO include [']sex addiction['] or [']porn addiction['] as diagnoses. They specifically rejected it for lack of evidence. If someone is selling you a treatment for such a non-existent diagnosis, it is fraudulent."

b. August 05, 2022: Defendant Prause disparaged Plaintiff by utilizing her @NicoleRPrause Twitter account, referencing Plaintiff by including a screenshot of an earlier post from the NoFap Twitter account, and posting "Ever watched someone fall apart in real time? This is...not stable."

~~381.~~ Accusing Plaintiffs of ~~unconsensual~~nonconsensual data surveillance/electronic misconduct: Prause would claim NoFap uses bots, tracks visitors inappropriately, and fakes engagement~~:~~

~~a.~~379. ~~July 25, 2025:~~ For example, on July 25, 2025 Defendant Prause wrote on BlueSky "NoFap, FightTheNewDrug, and other anti-porn websites are placing hidden tracking that follows you around the web and cannot be stopped by clearing cookies by BlackLight report. Both websites are design for youth to talk about their sexual behaviors." In a follow up post, Defendant Prause wrote "Youth should be warned not to visit these websites, especially as it is can secretly track their sexual behaviors if they are viewing porn." On July 25, 2025, Defendant Prause on BlueSky wrote "NoFap, FightTheNewDrug, and other anti-porn websites are placing hidden tracking that follows you around the web and cannot be stopped by clearing cookies by BlackLight report. Both websites are design for youth to talk about their sexual behaviors." In a follow up post, Defendant

138

Prause wrote "Youth should be warned not to visit these websites, especially as it is can secretly

track their sexual behaviors if they are viewing porn."

382.    ~~Targeting NoFap's Connections or Potential Connections:~~

380.    Defendant Prause would regularly relay messages to Plainitff NoFap's connections

or potential connections, such as those who recommend or link to NoFap. Examples include:

    a.  <u>January 19, 2023</u>: Defendant Prause posted to X, including screenshots of NoFap,
writing "Reboot websites are still up and recruiting youth, where they glorify
murdering people who work in the adult industry. @NCOSE, @lisaling,
@gopTodd and others advertise these websites. Our paper on the extremist violence
in these groups is under review."

    b.  <u>March 28, 2025</u>: @NicoleRPrause posted on X directing a message to @NHSGGC,
the NHS Greater Glasgow and Clyde, writing "[…] [Link to the Taylor & Francis
Paper] You even send boys to [']NoFap['], a group of extremist misogyny as
defined by the International Centre for Counter Terrorism"

~~383.~~381.        <u>Fabricated Statements</u>: Prause would often post things that neither Plaintiff

Rhodes nor Plaintiff NoFap LLC ever said, and then use ~~that~~ to justify further attacks.

    a.  <u>May 09, 2022</u>: Defendant Prause made a post to her @NicoleRPrause Twitter
account, posting "On Reddit, @NoFap is posting that I lost a lawsuit to Alexander
Rhodes, apologized to him, retracted statements, and paid [']damages[']. This is
false and defamatory. I never lost any lawsuit, never retracted any statements,
including about Alexander Rhodes, and never paid damages." Plaintiffs did not
post any of the aforementioned messages anywhere on Reddit and ~~does~~do not
know what Defendant Prause is referring to. Upon information and life,
Defendant Prause is fabricating these claims. Further, Defendant Prause is using
this fabricated opportunity to disparage Plaintiff and to misrepresent the prior
litigation against her.

    b.  <u>August 22, 2022</u>: Defendant Prause tweeted "Yesterday @NoFap of Alexander
Rhodes posted that I was paid by the porn industry to conduct studies to find fault
with his treatment. This is (still) false and defamatory." In response, the Defendant
Ley posted "@NicoleRPrause @NoFap Gotta love that guy. What a winner he is."
No such post was made by Plaintiffs.

~~384.~~382.        <u>Staging Hoaxes</u>: Defendant Prause has staged numerous targeting Plaintiffs,

claiming to be a victim.

a. <u>March 09, 2021</u>: Defendant Prause asserted on Twitter that a well-known cybercriminal, "Maxsim Yakubets," alleged by U.S. authorities to be associated with the Russia-based cybercrime group commonly referred to as Evil Corp (and linked to the Dridex malware operation), took down her website LiberosCenter.com. She published purported messages from "Yakubets" stating, "Leave Alex and the Nofap community alone. Sincerely – MAXsim Yakubets" and "Leave Alex alone or I hit this site and your internet exchange point with a 2 tbps DDOS attack." While Plaintiffs do not yet possess all evidence they would rely upon at trial, preliminary investigation into Yakubets's known modus operandi and publicly documented patterns render Defendant Prause's assertions highly implausible, particularly in light of her pattern of reporting fabricated incidents. Upon information and belief, the statements and their purported attribution to "Yakubets" were fabricated or otherwise inauthentic.

b. <u>January 24, 2022</u>: Defendant Prause posted on Twitter that "Yet another post be @NoFap resulted in a another [sic] death threat against me. /r/NoFap stated I am [']pro-porn['], paid by porn, my research was [']unethical['], and this is done [']before she dies[']. NoFap further incited attacks calling me [']disgusting['] & [']sick[']. This is false and defamatory." Defendant Prause also purported to file an FBI report about this fabricated incident, describing the figurative title of a third-party post critiquing her "science", "The Final Nail in the Coffin of Pro-PMO [']Science[']", as a threat. Another third party responded to the initial post, purporting that Defendant Prause is unethical and does not fear the afterlife, which Defendant Prause mischaracterized as a threat. NoFap did not make the posts Defendant Prause described, nor did the users she claimed posted threats against her actually do so.

c. <u>June 11, 2025</u>: Upon information and belief, Defendant Prause utilized a sockpuppet alias, "jonathana_1972" under the user ID "1182353941036548219", to post policy-breaching content on NoFap's Discord server, posing as a NoFap community member.

d. <u>July 02, 2025</u>: Upon information and belief, Defendant Prause utilized a sockpuppet alias, "sandybeach787" under the user ID "1389946428217884682", to post on NoFap's Discord server, posing as a NoFap community member. The posts, which were instantly removed, included "Warning everyone this discord is being monitor by Nicole Prause", "Just be careful what you type here it will be used in her pseudoscience", and "In my opinion we should go on her Wikipedia".

~~385.~~383.    <u>Personal Insults</u>: Prause has serially posted disparaging comments about Plaintiffs. Many of these posts explicitly mentioned Rhodes by name, while others clearly described him. One such post disparaged Plaintiff Rhodes for purportedly having greasy hair. Other examples include:

a. <u>May 17, 2022</u>: Defendant Prause posted on her @NicoleRPrause Twitter account "If a therapist ever says: every time you relapse, you should give me money to make up for your failure. They are not a therapist, they are a Reboot coach. Their scam is incredible, unethical, and harmful", later following up with "Apparently. I found one Reboot coach posted this dozens of times on his Reddit ['']support['] group. Pure grift. Harmful therapeutically. It was just straight health disinformation to profit himself."

b. <u>June 09, 2022</u>: Defendant Prause disparaged Plaintiff by responding to a June 02 post by another Twitter user who posted that "[Plaintiff] has been subject to a lot of harassment by people connected with the porn industry. Like the same shit that happened with the cig companies back when scientists were first saying cigs gave people cancer." Prause responded to this post approximately one week later, which did not mention Defendant Prause by name and was not directed to her, that "This is false and defamatory. I have never been found to have harassed Alexander Rhodes nor anyone else in that group, nor to my knowledge has any scientist."

c. <u>August 15, 2022</u>: Defendant Prause tweeted "We have an anti-porn extremist with zero training to treat anything telling his over 1 million followers: ['']I am an expert on quitting porn.['] This public needs to know this is absolutely false, so they can avoid seeking treatments from someone making such false claims."

~~386.~~384.    <u>Opposition Research</u>: The Porn Industry Defendants conducted extensive opposition research on Rhodes and closely surveilled him, then publicized such material and disseminated it to journalists. As a result, <u>Plaintiff</u> Rhodes has struggled to live a normal life, participate on social media, or maintain an online presence.

a. <u>July 08, 2022</u>: NoFap has hosted peer support forums for people to discuss various topics in further detail, including LGBTQIA+ issues, relationships, dating, marriages, and various religions. On July 05, 2022, Plaintiff set up two new sub-forums hosted on Reddit for Jewish and LGBTQ+ related discussion. Both of these sub-topics already existed on NoFap.com prior to this day. On July 08, 2022, Defendant Prause disparaged Plaintiff by utilizing her @NicoleRPrause Twitter account, posting "If you are selling a product that is widely documented to cater to antisemitic, anti-LGBT people, you do not fix it by telling the Jewish and LGBT people to go to this other product you want to sell because you refuse to address bigotry in your main cash cow. Life coaches. :face_with_rolling_eyes:"

b. <u>May 02, 2023</u>, Plaintiff NoFap quietly created a Discord server. Before the server had even 50 members, on May 04, 2023, @DaddyWolfBear, a porn producer, signed up under the user id "375285658521960448", who on July 04, 2025, goes by the username "wolfbear84". Under this username, @DaddyWolfBear would post messages to pose as a community member, and upon information and belief,

141

relay surveillance to Defendant Prause, who would post screenshots of the Discord server on Twitter. Upon information and belief, this is not the only account monitoring the Discord server.

387.    SLAPP Allegations: Prause would post frequently that she is a victim of SLAPPs. For example:

a. 385.  , on April 28, 2022;, Defendant Prause made a post to her @NicoleRPrause Twitter account identifying  NoFap by description, posting "Lawsuits filed by for-profit companies against scientists who criticize them know they will never win on merits. Their single purpose is to intimidate scientists into silence to keep bilking money from an unsuspecting public."

388. 386.     Claiming NoFap is Hiding Posts: Prause would claim that NoFap is hiding posts, specifically suicidal ideation posts. One of the most common strategies of the Porn Industry Defendants is to scour Plaintiff NoFap's platforms with a fine-tooth comb, searching for the few rule-breaking posts—among millions of rule-abiding posts—that were either (a) already removed, but recovered by the Porn Industry Defendants through data-scraping tools, or (b) not yet spotted by volunteer moderators or the automated filters that assist them. Rather than reporting such posts to NoFap moderators for removal and action, the Porn Industry Defendants compile lists of them, take screenshots, and disseminates them to disparage and attempt to deplatform NoFap—falsely implying that NoFap promotes, endorses, or tolerates these rare occasions when such rule-breaking material may slip onto its platforms.

389. 387.     Despite having a minuscule budget compared to Pornhub, upon information and belief, Plaintiff NoFap deploys far more resources into moderation of comments than the Pornhub/Aylo Defendants, as according to a 2017 *Esquire* article, "PornHub rep Brett Hall told me: ['']We don't actively monitor for racist language but it is against our TOS [Terms Of Service]. We have a similar approach as YouTube where we rely on the community to flag content and

142

comments against our TOS for us to review and take action.[']" According to a 2019 Forbes article, there were 11.5 million comments left by users on Pornhub in 2019. For comparison, NoFap users made approximately over 1,500,000 Reddit posts over the past year. Despite having far less traffic and user-generated content than the Pornhub/Aylo Defendants, Plaintiff NoFap has always proactively moderated for racist language or other rule-breaking comments.

390.388.     Due to the Porn Industry Defendants' efforts to pressure Reddit into deplatforming r/NoFap, Plaintiff NoFap was forced to implement far more aggressive filtering to prevent rule-breaking posts from even temporarily appearing on the subreddit—far exceeding the moderation levels typical of other communities. As a result, hundreds of thousands of rule-abiding posts were flagged and held for manual approval by moderators. This led to a suppression of activity on r/NoFap, as posts often remained in the queue for hours before being published. People seeking support were forced to wait for their posts to be approved, and some deleted their posts after receiving no response. This diminished the supportive atmosphere that NoFap was known for.

391.389.     This caused serious harm to NoFap users by delaying access to peer support, including for individuals experiencing serious mental health concerns. For example, users seeking urgent support for suicidal ideation, posting that they wish to "kill myself", might have to wait for hours before their posts became visible. Although NoFap has always directed individuals expressing suicidal thoughts to hotlines and licensed mental health professionals, the delay in peer support—caused by filtering implemented due to the porn industry's course of conduct—often reduced the effectiveness of the community's response.

392.    Retroactive Purported Statements: Defendant Prause would post about purported defamatory statements from years earlier prior to the settlement as justifications to continue attacks on Rhodes.

a.390.    For example, on August 18, 2022:, Defendant Prause tweeted that "PJ media wrote an incredibly defamatory column about me, literally every sentence was false. It sourced one extremely ill anti-porn extremist and fact-checked nothing. It would have more readers if grandma put it on her church bulletin board. PJ is why [']fake news['] remains useful." This posting by Defendant Prause references referenced Plaintiff by description, referring to a prior article by the publication titled "'No Fap' Porn Addiction Support Group Founder Sues Obsessed Pro-Porn Sexologist for Defamation". The article in question was published on November 21, 2019.

393.391.    Retaliating Against Witnesses: Defendant Prause and her collaborators engaged in a repeated pattern of targeting witnesses from, and supporters of, the Prior Litigation by filing false administrative reports and publishing disparaging statements on social media, often mentioning Plaintiffs in violation of the Non-Disparagement Agreement. Some but not all of those harmed targeted include:

a.    John Adler;
b.    DJ Burr;
c.    Stefanie Carnes;
d.    Matt Fradd;
e.    Geoff Goodman;
f.    Laila Mickelwait;
g.    The National Center on Sexual Exploitation;
h.    Staci Sprout;
i.    Rebecca Watson;
j.    Gary Wilson;

394.392.    Posting ~~Rhodes' Photograph~~Photographs of Plaintiff Rhodes: Defendant

Prause would regularly incorporate photographs of Plaintiff Rhodes in her social media posts,

including after executing the Non-Disparagement Agreement.

a.  November 16, 2023: While announcing the Taylor & Francis Paper,
    @NicoleRPrause posted on X, including a photograph of Plaintiff Rhodes: "Many
    clinicians and groups have referred clients or followers to this violent group,
    including @SASH1234, Therapy Today, @NCOSE ,@brain_love_sex, and
    @GailDines. Men and youth should not be recommended to these forums.
    [Images, including a photograph of Plaintiff Rhodes]"

b.  April 18, 2025: @NicoleRPrause posted on X:



c.  May 07, 2025: @NicoleRPrause posted on X that "Prior to NoFap, scholars note
    Alexander Rhodes was involved in [']The performance of idiocy['] online stunts.
    Specifically, he watched Nyan Cat for 10 hours, including while using the restroom
    on camera. NoFap appeared to just be another attention stunt."



395.393.    Upon information and belief, Defendant Prause and her collaborators have

lobbied Reddit to deplatform r/NoFap, including through non-public communications. Upon

145

information and belief, this campaign has materially strained Plaintiff NoFap's previously close

relationship with Reddit.

396.394.    Moderation Team Opposition Research: Defendants Prause and Ley would

target NoFap moderation team members, such as disseminating opposition research on them, and

otherwise dissuading them from working or volunteering with NoFap.

     a.  June 30, 2025: Defendant Prause posted message on the Discord server
         discouraging people from volunteering to moderate for NoFap, writing "it's a
         business and they refuse to pay mods", "they don't pay even tho it's a biz", and
         "they make money on u".

     b.  May 16, 2022: Defendant Prause made a post to her @NicoleRPrause Twitter
         account disparaging and identifying NoFap by description, quoting Reddit posts by
         a NoFap moderation account arguing with online trolls, claiming that they are
         examples of support from an [']unlicensed porn addiction coach.['] Defendant
         Prause went on to state that [']Therapists do not mock, deride and degrade their
         clients. This shaming [']treatment['] is likely why it ashas been linked to increased
         suicidal ideation. Avoid unlicensed Reboot [']coaches['].

*Disparagement via Email*

397.395.    Subsequent to the execution of the Non-Disparagement Agreement, two

researchers were conducting an academic study on Plaintiff NoFap's forum users regarding "how

deficits in metacognitive processing, lack of self-regulation, and maladaptive coping mechanisms

could prove to be a possible cause of recurrent relapses in pornography use through the recovery

process."

398.396.    On January 10, 2022, Defendant Prause disparaged Plaintiffs in an attempt

to have the study thwarted.email to Wichita State University:

     "Hi,

     There is a study listed by Treva Etsitty and Jason Herron that provides this resource
     list (attached).
     https://wichitastate.co1.qualtrics.com/jfe/form/SV_3duQAESD7ooSZ4q

146

I was shocked to see this. NoFap, Reboot Nation, and YourBrainOnPorn, not only have no empirical data supporting their efficacy, but have data showing their harms to public health (e.g., https://link.springer.com/article/10.1007/s10508-021-01930-z.https://link.springer.com/article/10.1007/s10508-021-01930-z. They also are known for threatening to kill and assault scientists and therapists who study pornography (statements available from Dr. Kate Dawson, Dr. Rebecca Sullivan, Dr. Madita Oeming, Dr. Taylor Kohut, Mr. Daniel Burgess, and more). Science has demonstrated that members of the NoFap forum overlap most heavily with MensRights and violent Incel communities. Incels have claimed responsibilities for 9 mass murders of women to date. The YourBrainOnPorn website is published for its well-known scientific fraud (https://journals.ala.org/index.php/jifp/article/view/7177). These recommendations are so harmful, I was not even sure where to start.

I actually am conducting a pre-registered study just to further characterize the harms of these programs (https://osf.io/ux47b/?view_only=6739f68d4e74a809e95ed64b836dade).(https://osf.io/ux47b/?view_only=6739f68d4e74a809e95ed64b836dade). So far, 25% of people who visit these forums say they were told to "kill themself" by someone in the forums. Those who experience "relapse", which is unique to those fake treatments, 23% report feeling suicidal.

There is no reason to send a vulnerable population to any of those websites. This needs to stop immediately. I have not directly contacted the investigators, because I do not know if they may be members of those communities.

Nicole Prause, PhD"

399.397.    Upon information and belief, Defendant Prause has actively sought to obstruct or shut down academic research involving Plaintiff NoFap's website, and research on problematic pornography use more broadly, by contacting researchers and academic institutions to discourage or interfere with such studies.

400.398.    Defendant Prause's communications caused Plaintiff NoFap to be removed from a Qualtrics survey associated with researcher Treva Etsitty, jeopardizing Etsitty's research..

147

401.399.     In social media posts on or around May 31, 2023, Defendant Prause alleged that Alec Sproten's 2016 research on NoFap contained ethical violations, continuing her pattern of interfering with legitimate academic inquiry related to Plaintiff NoFap.

402.400.     Upon information and belief, on July 08, 2022, Defendant Prause emailed a document defaming and disparaging Plaintiff Rhodes to hello@defendyoungminds.com, under the pseudonym "SproutWarning"..

403.401.     Upon information and belief, on October 12, 2022, David Defendant Ley sent an email to William Costello and a listserv called SEXNET, writing: "William, we are finding similar data on nofap, that participation in nofap forums dramatically increases anxiety, distress, erectile dysfunction and anger/hopelessness." On Upon information and belief, on October 13, 2022, William Costello responded, writing "Dr. Prause has been telling me about that overlap between NoFap and Incel forums."

404.402.     Upon information and belief, on June 04, 2023, David, Defendant Ley to emailed a listserv associated with AASECT, writing: "The linked article includes some interesting details not before revealed about nofap, including their profit motives, links to the violent incel community, and the fact that the founder believes watching porn somehow caused his bipolar disorder. I'm aware there are more such stories coming, exposing the dirty underbelly of these groups claiming to treat porn addiction through abstinence. As I've said previously, any clinicians recommending these groups to patients should think carefully, as people are experiencing harm within them.."

405.403.     Upon information and belief, Defendant Ley disparaged Plaintiffs again on June 29, 2023, in an article he wrote about a knife attack in Canada. On the SexNet, David mailing list, Defendant Ley wrote "I'm sure we will learn more. I'm hearing on back channels that this

> **Commented [AR6]:** I'm concerned you just completely made up that David Ley wrote an article about a knife attack? This never happened, nor did my write-up allege that. Why did the submitted complaint state this?

may have been related to the professor rejecting the idea of porn addiction and online nofappers being upset with it. Police are apparently investigating that aspect."

406.   Defendants would regularly conduct research into any mass shooting incident to see if their online profiles ever mentioned NoFap. In the few instances they did, even if they were disparaging comments about NoFap, they would claim they were from NoFap or a part of NoFap.

404.    Defendants Prause and Ley have long tried to link Plaintiff NoFap to violent acts. Plaintiffs are unaware of any single individual committing a violent act in support of Plaintiff NoFap. However, following numerous mass shootings and other mass-casualty events, Plaintiffs have observed Defendants Prause and Ley post about scouring the web for perceived connections to Plaintiffs or other targets of the porn industry. Usually, these efforts have proven fruitless. However, in the few instances they have been able to locate something that could be utilized, the purported connections typically consist of a person once mentioning NoFap on a social media account, posting a meme, or even disparaging NoFap, after which Defendants attribute the shooter's later conduct to Plaintiff NoFap without supporting evidence. In other words, their argument reduces to: a murderer once drank a can of Coca-Cola—or merely mentioned or disparaged Coca-Cola while preferring Pepsi—therefore Coca-Cola is responsible for the later conduct.

407.405.      Upon information and belief, on November 16, 2023, Defendant Ley posted the defamatory articleTaylor & Francis Paper he wrote with Defendant Prause onto the SEXNET. mailing list. In doing so, he added the following additional disparaging and defamatory comments:

"Colleagues: I'm pleased to share the publication of new research, examining explicit violence, misogyny and homophobia in a unique online anti-masturbation, anti-pornography group known as [']NoFap.[']

149

Though many paint this group as a harmless, even silly endeavor, we found quite extraordinary, troubling and pervasive evidence of calls for violence against scientists, pornography performers, women, and other nofap group members.

The below comments are just a few of the direct examples: "["]Categories of violent post targets included people in the pornography industry (e.g., "["]pornographers should be executed"),["]), women (e.g., "["]you should murder her and burn the body, that's the only way to fully protect yourself"),["]), a specific person in the poster's life (e.g., "["]Cut his dick off"),["]), other posters (e.g., "["]if you fap i will kill you"),["]), scientists (e.g., "["]this attack is actually their death wish, because the force they will face now is beyond anything they can imagine"),["]), any person they might contact (e.g., "["]Better go out and punch someone in the face, get in a fight like a real man"),["]), and smaller categories, like animals or members of the LGBT community (e.g., "["]homosexuals should kill themselfs"),["]). Categories of violent acts described included death (e.g., "["]We should lynch all porn stars and porn productions"),["]), rape (e.g., "["]Punch that rejection in the vagina and rape it like a real American"),["]), destroying property (e.g., "["]Punch a stranger in the face and commit arson"),["]), doxxing (e.g., "["]I just found my dream girl . . . by doxxing her"),["]), and general violence such as "["]punching"["] (e.g., "["]I want to punch ALL the things (if male) and Fuck ALL the things (if they are female)"")["]["]

Please take note that the above direct quotes were not rare aberrations, but reflect many thousands of such comments. Further, these comments were "["]upvoted"["] by group members, showing their support and encouragement for these violent statements.

I'm aware that many clinicians may recommend or support participation in groups such as NoFap, as a corollary to a person's effort to control their sexual behaviors. I strongly encourage clinicians to reconsider this, given the findings we detail in this publication. Of note is the concerning fact that there are many unsupervised adolescent males participating in these groups, who may be quite vulnerable to unhealthy influence."

408.406.    OnUpon information and belief, on November 16, 2023, Simon LeVay responded to Defendant Ley on SexNet, writing: "I searched recent r/NoFap listings for over an hour without finding a single post that encouraged or even mentioned violence. On the contrary, all entries were exactly what I would expect for a support group of this kind -- people posting about their successes avoiding masturbation, confessing their failures, and asking for or offering tips on how to resist the temptation. David mentions "["]many thousands"["] of violence-themed

posts on r/NoFap, but his and Nicole's study only identified 397 such posts after searching more than a decade's worth of posts. I surmise that the posts David mentions, though certainly concerning, represent a miniscule fraction of all r/NoFap material. I think that the NoFap movement is largely misguided. The world would be a better place if people masturbated more, not less, in my opinion. Still there are some men whose lives are being harmed by the amount of time they devote to porn and masturbation. r/NoFap may offer such men useful support in their efforts to "['·]reboot."['·] Perhaps David and Nicole's study will encourage (or has already encouraged?) more careful moderation of r/NoFap's content to exclude the occasional violence-themed post." Defendant Ley responded: "if you look at the links included in the paper, you'll see that most such posts have been deleted. most within the past year, as public attention to these issues escalated. it's why we included the links."

409.407.    OnUpon information and belief, on February 04, 2024, David Ley emailed ASECT the NPR hit piece he helped create, writing "I hope folks will check out this very thoughtful and well-researched article examining the online nofap and semen retention industry. Many of their deceptions and unsavory tactics get critical attention. As I've said before, any clinicians who recommend or endorse these groups should be wary of potential harm to their clients. D https://www.npr.org/2026/01/01/1198916105/mens-health-masturbation-abstinence"D https://www.npr.org/2026/01/01/1198916105/mens-health-masturbation-abstinence"

410.408.    Upon information and belief, on May 15, 2024;. Defendant Prause emailed mail@rcsed.ac.uk, birmingham@rcsed.ac.uk and malaysia@rcsed.ac.uk, targeting a problematic pornography use e-course offered by a UK-based charity, The Reward Foundation. Defendant Prause's email stated, in part:

> "I study, in part, the Karezza religion. This religion believes that all intense sexual pleasures, including climax, are pathological and should never be a part of anyone's

151

life. […] None of the treatments they recommend have any evidence to support them. To the contrary, there is extensive evidence they are harmful, causing suicidal ideation, depression, and similar. For example, **NoFap is a recognized terrorist group** [emphasis added] with extensive violence in their "support" groups: [Link to the Taylor & Francis Paper] […] Is their claim accurate that you offer CPD credits for completing their course? If so, whom should I contact about getting this content properly reviewed? This "course" is demonstrably harmful to public health and used solely for the profit and governmental lobbying of the Karezza religious leaders."

~~411.~~409.      Upon information and belief, Defendant Prause—often collaborating with

Defendant Ley—sent numerous additional emails to hundreds of recipients, in direct violation of

the Non-Disparagement Agreement.

*Other Disparagement*

~~412.~~410.      Upon information and belief, Defendant Prause utilized her X.com account

to post disparaging "community notes" (https://x.com/i/communitynotes/u/amazing-pineapple-

bluejay) in violation of the Non-Disparagement agreement, including:

a. "Coaches often charge high fees to lead men in semen retention and NoFap practices despite this lack of evidence."
b. "NoFap is part of the [']manosphere['] that seeks to sell unproven products. NoFap is associated with increased depression and anxiety, not less."
c. "NoFap coaching is known for claiming to treat medical disorders that it actually appears to worsen, while charging high prices to young men for [']coaching[']"
d. "The claims of online semen retention and NoFap coaches have been described by scientists as medically inaccurate and harmful to public health in peer-reviewed science"."
e. "Practicing NoFap actually is associated with worse depression, anxiety and ED. It cannot treat any addiction."
f. "In particular, the communities promoting No Nut/NoFap November are part of the [']manosphere['], promoting anti-feminist messages."
g. "The NoFap anti-masturbation practice is associated with a number of harms, and the community appears remarkably violent."
h. "NoFap is an anti-masturbation practice associated with increasing depression, anxiety, and erectile dysfunction [link to Defendant Prause & James Binnie paper] and is a violent, misogynist group associated with real-world mass murders [link to disparaging Defendant Prause and Defendant Ley paper]"

152

413.411.    After the Non-Disparagement Agreement was executed, upon information and belief, Defendant Prause changed her ResearchGate.net profile headline to include contract-breaching disparagement: "Reboot/NoFap treatment claims and violence; Post-orgasmic illness syndrome; Alcohol abuse treatments".

**11.    Damages and Conclusion**

414.412.    The Pornhub/Aylo Defendants—the world's largest pornography company, generating hundreds of millions of dollars annually and operating one of the ten most-visited websites on the internet—collaborated with faux academics, namely Defendant Prause and Defendant Ley, in a tortious scheme to dismantle Plaintiff NoFap, a low-budget pornography addiction peer-support website and its affiliated Reddit forum.

415.413.    This lawsuit heralds how disinformation can originate and spread in today's digitally connected society, especially when fueled by powerful financial interests. For years, pornography industry entities have systematically planted seeds of disinformation—through blog posts, hoaxes, and coordinated social media astroturfing—which have grown into more formalized disinformation, such as academic papers and articles published by industry affiliates and ideologically aligned collaborators, and ultimately into widely circulated narratives republished by disinformed third parties.

416.414.    Much of the porn industry's disinformation campaign was carried out in violation of the Non-Disparagement Agreement between Plaintiffs and Defendant Prause. Defendant Prause and Defendant Ley acted as surrogates for the pornography industry, conspiring with the Pornhub/Aylo Defendants, to suppress Plaintiff NoFap and Plaintiff Rhodes.

417.415.    Since February 27, 2021, the day after the Non-Disparagement Agreement was executed, many millions of people have viewed contract-breaching disparaging blog posts,

articles, videos, social media posts, podcasts, Wikipedia edits, and news stories initiated by Defendant Prause and her collaborators within the pornography industry. As a result, Plaintiff NoFap has suffered substantial economic and reputational damages, while Plaintiff Rhodes has suffered both economic and non-economic damages, including reputational harm, emotional distress, and interference with his professional and personal life.

418.416.    As direct and proximate result of defendants' conduct, fewer people are likely to utilize, recommend, link to, discuss, or otherwise engage with NoFap.

419.417.    The defamation is so pervasive that every time a person searches for NoFap on Google and other search engines, they are likely to encounter disinformation placed by the porn industry entities.

420.418.    Since 2016, the Porn Industry Defendants have undertaken a coordinated campaign to attempt to influence the Southern Poverty Law Center and other organizations to designate Plaintiff NoFap — a porn-addiction peer-support platform — as a hate group or terrorist organization. This campaign has involved direct lobbying efforts, the strategic placement of disinformation, and the cultivation of sympathetic academics to publish derivative works. Although, to Plaintiffs' knowledge, no organization has designated NoFap as a hate group or terrorist organization, Defendants' efforts have nevertheless severely damaged Plaintiffs' reputations, caused substantial harm, and chilled opportunities. This campaign is particularly distressing to Plaintiff Rhodes — a Jewish individual who has personally experienced antisemitism — and who has been maliciously and falsely portrayed as Nazi-adjacent merely for operating an addiction recovery peer support website.

421.419.    The Defendants have permanently influenced the field of problematic pornography use research by maligning Plaintiffs to thousands of members of the academic

community through conference presentations, trainings, one-on-one communication in-person and through the internet, email listservs, and published papers. As a result, academics are less likely to collaborate with Plaintiffs.

422.420.     Plaintiffs used to be contacted regularly by therapists, doctors, academics, scientists, journalists, public figures, authors, nonprofit leaders, and entrepreneurs. However, due to Defendants' successful efforts to malign Plaintiff NoFap's reputation, such outreach has become exceedingly rare.

423.421.     Despite being featured in a TIME Magazine cover story in March 2016, profiled in The New York Times in July 2016, and appearing in CNN's This Is Life with Lisa Ling in September 2019, Plaintiff Rhodes has not participated in a media interview in over six years. Plaintiff NoFap is now rarely mentioned by media outlets—and when it is, coverage is typically negative, echoing porn industry disinformation, and the pieces are usually initiated by Defendant Prause and other porn industry operatives.

424.422.     As a direct consequence of the pornography industry's coordinated disinformation and retaliation campaign, Plaintiff Rhodes has not spoken at a conference in years, has withdrawn from social media, and has effectively been forced out of public discourse concerning the effects of pornography.

425.423.     Plaintiffs are far from being the only targets of the Porn Industry Defendants' disinformation campaign, which has included both direct targets and collateral damage among various entities and individuals. To date, plaintiff has identified over seventy (70) individuals who received similar treatment. This speaks toward the intentionality and outrageousness of Defendants' conduct.

155

426.424.    The pornography industry's disinformation campaign has directly and proximately caused Plaintiff NoFap to suffer tens to hundreds of millions of dollars in damages, including declining web traffic, lost productivity, reduced membership, missed partnership opportunities, diminished funding opportunities, and decreased market value and brand equity. Plaintiffs have also suffered reputational harm and erosion of goodwill, which continue to suppress future growth and financial viability.

427.425.    The pornography industry's disinformation campaign has directly and proximately caused Plaintiff NoFap to incur substantial administrative and legal expenses in attempting to mitigate ongoing attacks.

428.426.    It is well understood that website traffic tends to decline without regular updates and improvements. The porn industry's campaign has severely burdened Plaintiff NoFap, taking away time and resources away from their ability to run and improve the website. The traffic to NoFap, including its website, subreddit, and other social media pages, steadily increased until around its peak, which is when the porn industry launched its smear campaign. From there, traffic has steadily decreased. According to Google Trends, search volume for NoFap has steadily decreased since the porn industry's disinformation campaign, with current search engine traffic in 2025 being as low as traffic levels around 2013. According to Google Trends, March 2025 search engine traffic for Plaintiff NoFap is approximately 21.7%-29% its all-time peak, depending on the search term utilized.



429.427.    When other websites link to a site, it increases that site's credibility in the eyes of search engines, which tend to rank higher-authority websites more prominently in search results. Defendant Prause and her collaborators have contacted individuals and organizations who link to or mention NoFap, and others may be deterred from linking after encountering such porn industry disinformation. This has had a downstream effect of not only eliminating valuable sources of web traffic, but also reducing the likelihood that search engines will display NoFap pages in search results for individuals seeking resources on pornography addiction and related issues.

430.428.    Between 2017-2019, it was not uncommon for 2,000 website forum members to log in on a single day. More recently, that number is often below 650, or approximately 32.5% of 2020 levels. Between 2017-2019, the website forum regularly received over 300 new members per day. In 2024, the forum often received fewer than 50 new members per day, with recent efforts bringing registration up to approximately 140 per day. Website forum posts are also substantially down from often 1,500 per day in 2017-2019 to approximately 450 per day in 2025. Google Analytics data supports this trend of the porn industry disinformation campaign directly corresponding with reduced web traffic for Plaintiff NoFap.

431.429.    While Plaintiff NoFap has been stretched to a breaking point by the Porn Industry Defendants' campaign, other websites and applications with far less notability and traffic have been able to launch brands addressing pornography use, securing funding and revenue. For example, Adam Singer and Gabe Zichermann reportedly raised $2 million in 2016 from Founders Fund to launch Onward. Another app, Quittr, reportedly spammed NoFap's subreddit with fake accounts and were quickly able to quickly generate $3 million in annual recurring revenue. Another app, Remojo, reached a $22 million valuation according to its founder. Each of these initiatives had far less reputability and standing than Plaintiff NoFap, which, if unconstrained by

157

Defendants' misconduct, would have been capable of generating substantially greater revenue and value. Plaintiff NoFap is informed and therefore avers that it should be generating revenues in the tens of millions of dollars annually but for Defendants' tortious conduct.

432.430.    According to various sources, the global age-verification, parental-control, and content-filtering market generates billions of dollars in annual revenue. For example, a senior executive's publicly available LinkedIn profile for the religiously affiliated pornography-filtering software provider Covenant Eyes stated that the company generates more than $30 million per year. Plaintiff NoFap previously published a free porn-blocking browser extension and planned to launch a pornography-filtering service—plans that have never come to fruition due to the conduct of the Defendants.

433.431.    Websites with the reputability and traffic levels comparable to Plaintiff NoFap's prior to the smear campaign could be valued hundreds of millions of dollars. As a result of the loss in web traffic and reputational harm caused by the pornography industry's disinformation campaign, Plaintiff NoFap has suffered many millions of dollars in damages—including from potential revenue (donations, memberships, advertising, and launching new products and services) and diminished brand value.

434.432.    The pornography industry's campaign—resulting in decreased usership and web traffic—and its opposition research targeting Plaintiff's volunteers have made it increasingly difficult to recruit new individuals to assist in moderating content on the NoFap website. Further, any prospective volunteer moderators must be thoroughly vetted because Defendant Prausehave impersonated NoFap users.

435.433.    Although not wealthy, prior to the porn industry disinformation campaign, Plaintiff Rhodes was financially secure. After the Porn Industry Defendants' disinformation

158

campaign and the resulting continuous legal expenses since 2019 (which, for example, could exceed 20,000 dollars in one month alone), Plaintiff Rhodes has not had health insurance in years, has had utilities temporarily shut off for non-payment, has maxed out credit cards to meet basic living expenses, has taken on side jobs, has overdrawn his bank accounts numerous times (to the extent that one bank closed his accounts), and at one point had to drive DoorDash (with all of his cards maxed and bank accounts overdrawn, he paid for gas to complete the deliveries with his last remaining cash) to afford to buy food for his cats. While Plaintiff Rhodes was in six figures of debt due to legal bills and reduced income caused by the Porn Industry Defendants, those same parties were simultaneously smearing him as a "rich" "profiteer."

436.434.    Plaintiff Rhodes has experienced significant sleep disruptions as a result of the ongoing conduct of Defendant Prause and her collaborators, which has occurred on a near-daily basis for many years.

437.    The pornography industry's campaign has had adverse effects on Plaintiff Rhodes' mental health. Plaintiff Rhodes has sought treatment for symptoms consistent with complex post-traumatic stress disorder and has incurred thousands of dollars in therapy expenses as a result of Defendants' conduct.

438.    Plaintiff Rhodes has been unable to live a normal life as a result of the Defendants' conduct. Though not a celebrity or public figure, he has been subjected to continuous monitoring and opposition research akin to what high-profile individuals might endure—but without any of the financial resources, positive publicity, connections, or protections that public figures may possess. Due to the persistent targeting by Defendant Prause and her collaborators, Plaintiff Rhodes has been effectively forced to abandon social media platforms for years out of concern for his own privacy and the privacy of his friends and family.

159

439.435.    ~~The pornography industry's campaign has had adverse effects on Plaintiff Rhodes' physical health. As a result of the conduct of Defendant Prause and her collaborators, Plaintiff Rhodes has experienced physical symptoms, including weight gain, spikes in blood pressure, and acute hand tremors that directly correspond with periods of heightened targeting by the Porn Industry Defendants.~~

440.436.    As a direct result of Defendants' course of conduct, Plaintiff Rhodes enrolled in a governmental address confidentiality program and has incurred ongoing expenses to maintain the secrecy and security of his residence from Defendant Prause and her collaborators. ~~Plaintiff Rhodes has also incurred substantial costs for security cameras to safeguard his home and loved ones, as well as~~

441.437.    There is a legitimate risk that, if Defendants' conduct continues unabated, Plaintiff NoFap will ultimately be forced to shut down or be deplatformed from essential services, software providers, and social media. Plaintiffs have exhausted every reasonable avenue to stop the reputational, economic, and personal harm caused by Defendants. Despite attempts to resolve these matters privately and professionally, Defendants have persisted—if not escalated—in their conduct. Plaintiffs now turn to the judicial system as their only viable path to obtain justice and relief from a campaign of suppression and harassment that continues unabated. This lawsuit seeks to hold Defendants accountable for the irreversible damage they have caused—and to put an end to the pornography industry's disinformation campaign.

160

12.    **The Pornhub Defendants' Common Enterprise**

~~442.~~438.    Plaintiffs are suing four known Pornhub entities, although Pornhub has allegedly utilized "hundreds of shells located in dozens of jurisdictions" in order to "(a) circumvent tax, money transfer, and pornography laws in the United States and other countries in which MindGeek actually does business; (b) facilitate self-dealing; (c) obscure MindGeek's ownership, business practices, and transfers of money; (d) impede regulatory scrutiny and enforcement; and (e) insulate the [owners] from legal accountability." *Fleites v. MindGeek, No. 2:21-cv-04920-WLH-ADS, Doc. 385, ¶¶ 21, 59 (C.D. Cal. May 23, 2024).*

~~443.~~439.    According to the United States Federal Trade Commission (the "FTC"), various Pornhub entities "have operated as a common enterprise while engaging in the unlawful acts and practices alleged […] owning and operating their adult-video websites, through an interrelated network of companies that have common control and ownership; shared officers, managers, employees, business functions, office space, and email systems; unified advertising; and commingled funds." *United States Federal Trade Commission and the State of Utah Division of Consumer Protection v. Aylo Group Ltd., et al., No. 2:25-cv-00752, Complaint ¶ 32, at 12 (D. Utah filed Sept. 3, 2025)*

~~444.~~440.    To further illustrate the interrelated ownership and control of the Pornhub Defendants named herein, Plaintiffs reference the organizational chart prepared by the FTC in its enforcement action against Aylo Group Ltd. and related entities. In that case, the FTC described the chart as setting forth the "corporate organizational structure … (with the Cyprus entities in orange, the Canadian entities in red, the U.S. entities in blue, and AYLO Billing Limited in green), indicating common ownership under Aylo Holdings S.à.r.l." *United States Federal Trade*

161

*Commission and the State of Utah Division of Consumer Protection v. Aylo Group Ltd., et al., No. 2:25-cv-00752, Complaint ¶ 31, at 12 (D. Utah filed Sept. 3, 2025).*



445.441.     The Pornhub/Aylo Defendants have themselves acknowledged that they operate as a common enterprise. In recent litigation against an insurance company, ten corporate entities associated with the Pornhub/Aylo Defendants repeatedly referred to themselves collectively as a single, unified "Aylo Group." Those ten plaintiffs included all four Pornhub/Aylo Defendants currently named in the instant lawsuit: Aylo USA Incorporated, Aylo Holdings S.A.R.L., Aylo Global Entertainment Inc., and Aylo Billing Limited. *See 9219-1568 Quebec Inc., et al. v. Sovereign Gen. Ins. Co., No. 500-17-128780-247 (Que. Super. Ct., Dist. of Montreal, Civ. Div.), ¶ 0.1 ("[t]he [p]laintiffs are affiliated companies (hereinafter: ['] Aylo Group[']) engaged in the production and distribution of media content, particularly adult-oriented content").*

446.442.     Taken together, these findings, admissions, and regulatory actions demonstrate that the Pornhub/Aylo Defendants operate as a unified enterprise and are jointly and severally liable for the tortious and unlawful acts alleged herein. The Pornhub/Aylo Defendants may be tried together as alter egos.

447.443.     In addition, the Pornhub/Aylo Defendants acted in concert with Defendants Prause and Ley. Together, these defendants engaged in ana common enterprise directed toward extorting, intimidating and harming Plaintiffs through means of interstate commerce.

448.444.     Upon information and belief, the Pornhub/Aylo Defendants' common enterprise also includes other affiliated or cooperating entities not yet fully identified in this Complaint who acted in concert to further the unlawful scheme alleged herein. Plaintiffs anticipate that the identities and roles of such additional defendants will be confirmed through discovery, and Plaintiffs expressly reserve the right to amend this Complaint to identify them as Defendants.

## **Count I: Racketeering (RICO, 18 U.S.C. § 1962)**

### **(Against All Defendants)**

419.     Plaintiffs incorporate the foregoing paragraphs as if set forth at length.

420.     Defendants constitute an enterprise within the meaning of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. §§ 1961 et seq., having systematically engaged in an ongoing pattern of racketeering activity affecting interstate and international commerce.

421.     Relevant to Plaintiffs, Defendants engaged in a pattern of racketeering activity, including but not limited to: distribution of obscene materials through interstate commerce (18 U.S.C. §§ 1461-1465); obstruction of justice (18 U.S.C. § 1503); tampering with a witness, victim or informant (18 U.S.C. § 1512); wire fraud (18 U.S.C. § 1343); retaliating against a witness, victim or informant (18 U.S.C. § 1513); and interference with commerce by threats or violence (18 U.S.C. § 1951).

163

422. In broader scope, however, the enterprise further involves peonage, slavery, and trafficking in persons (18 U.S.C. §§ 1581-1592); money laundering (§§ 1956–1957); and child sexual exploitation offenses (18 USC §§ 2251–2252A).

423. Each Defendant in this action has participated in the enterprise described above.

424. Plaintiffs have suffered significant harm as a direct result of Defendants' racketeering activities, including financial loss, reputational damage, interference with professional relationships, and suppression of their ability to provide critical services for those suffering from pornography addiction.

425. The ongoing, coordinated racketeering activities of Defendants constitute a continuing threat of significant harm to Plaintiffs, other recovery peer support groups, sexual exploitation survivors and whistleblowers and critics, and the general public. Because Defendants' conduct was outrageous and done with deliberate disregard for the rights of others, Plaintiffs request an award of treble damages.

_____WHEREFORE, Plaintiffs respectfully request the Court enter judgment against the Defendants in an amount in excess of the jurisdictional minimum for Allegheny County local rule 1301(1)(a) as follows:

   a. Awarding treble damages under RICO;

   b. Issuing injunctive relief, permanently prohibiting the Defendants from continuing their racketeering activities and requiring complete transparency of their corporate and financial activities;

   c. Awarding Plaintiffs their costs, expenses, and reasonable attorneys' fees incurred in prosecuting this RICO action; and

   d.  Ordering comprehensive disclosure and disgorgement of all profits derived from

       the Defendants' racketeering activities.

**Count II: Unfair Competition under Lanham Act (15 U.S.C. § 1125(a))**

**(Against the Pornhub/Aylo Defendants and Defendants Prause, Ley, and UCLA)**

426.    Plaintiffs incorporate the foregoing paragraphs as if set forth at length.

427.    Plaintiffs maintain and possess a protectable right in their marks.

428.    Defendants repeatedly used Plaintiffs' protected marks in a manner likely to cause confusion, violating 15 U.S.C. § 1125(a)(1)(A).

429.    Defendants' actions and conduct violate 15 U.S.C. § 1125(a)(1)(B).

430.    Defendants engaged in a systematic disinformation campaign, including but not limited to falsely representing Plaintiffs' marks and services, discrediting its website, and misleading the public regarding its mission and operations.

431.    Defendants deliberately engaged in acts of deception, including the use of fraudulent academic publications and defamatory statements designed to harm Plaintiffs' credibility and economic viability.

432.    Defendants engaged in anti-competitive conduct by intentionally targeting those seeking Plaintiffs by diverting web traffic, spreading disinformation, and otherwise suppressing competition.

433.    Defendants' intentional actions caused damage to Plaintiffs' trademark rights through dilution and diminishing its distinctiveness and market recognition.

434.    As a direct and proximate result of Defendants' above actions, Plaintiffs suffered significant financial losses, reputational damage, lost business opportunities, and ongoing harm to their business and professional interests.

435.   Because Defendants' conduct was outrageous and done with deliberate disregard for the rights of others, Plaintiffs request an award of punitive damages.

_____WHEREFORE, Plaintiffs respectfully request the Court enter judgment against the Defendants in an amount in excess of the jurisdictional minimum for Allegheny County local rule 1301(1)(a) as follows:

e.   Awarding actual, compensatory, treble and/or punitive damages;

f.   Awarding Plaintiffs their costs, expenses, and attorneys' fees incurred in this action;

g.   Issuing injunctive relief prohibiting further deceptive and anti-competitive conduct by Defendants;

h.   All damages permitted by law for Defendants' willful counterfeiting and/or infringement of Plaintiffs' marks; and

i.   Ordering disgorgement of any profits derived from Defendants' unfair competition.

**Count III: Trademark Dilution (15 U.S.C. § 1125(c))**

**(Against All Defendants)**

436.   Plaintiffs incorporate the foregoing paragraphs as if set forth at length.

437.   Plaintiffs own and/or ~~possesses~~possess at least one valid and legally protectable mark. The trademark for NoFap is well-known and distinctive.

438.   Defendants used Plaintiffs' trademark without consent to identify goods and/or services that caused a likelihood of confusion to Plaintiffs' commercial interests.

439.   After obtaining its recognized status, Defendants use of Plaintiffs' mark in commercial activities caused dilution of the mark's quality through blurring and/or tarnishment and caused confusion to Plaintiffs' commercial interests.

166

440.    As a direct and proximate result of Defendants' above actions, Plaintiffs suffered significant financial losses, reputational damage, lost business opportunities, and ongoing harm to their business and professional interests.

441.    Because Defendants' conduct was outrageous and done with deliberate disregard for the rights of others, Plaintiffs request an award of treble damages.

WHEREFORE, Plaintiffs respectfully request the Court enter judgment against the Defendants in an amount in excess of the jurisdictional minimum for Allegheny County local rule 1301(1)(a) as follows:

j.    Awarding actual, compensatory, treble and/or punitive damages;

k.    Awarding Plaintiffs their costs, expenses, and attorneys' fees incurred in this action;

l.    Issuing injunctive relief prohibiting Defendants from continuing the diluting activities;

m.    All damages permitted by law for Defendants' willful conduct; and

n.    Ordering disgorgement of any profits derived from Defendants' conduct.

**Count IV: Trademark Infringement (15 U.S.C. § 1114)**

**(Against the Pornhub/Aylo Defendants and Defendants Prause, Ley, and UCLA)**

442.    Plaintiffs incorporate the foregoing paragraphs as if set forth at length.

443.    Plaintiffs own and/or possess a valid and legally protectable mark. The trademark for NoFap is well-known and distinctive.

444.    Defendants used Plaintiffs' trademark without consent to identify goods and/or services that caused a likelihood of confusion to Plaintiffs' commercial interests.

445.    Defendants use of Plaintiffs' mark in commercial activities caused confusion to Plaintiffs' commercial interests.

167

446.    As a direct and proximate result of Defendants' above actions, Plaintiffs suffered significant financial losses, reputational damage, lost business opportunities, and ongoing harm to their business and professional interests.

447.    Because Defendants' conduct was outrageous and done with deliberate disregard for the rights of others, Plaintiffs requestsrequest an award of treble damages.

WHEREFORE, Plaintiffs respectfully request the Court enter judgment against the Defendants in an amount in excess of the jurisdictional minimum for Allegheny County local rule 1301(1)(a) as follows:

o.    Awarding actual, compensatory, treble and/or punitive damages;

p.    Awarding Plaintiffs their costs, expenses, and attorneys' fees incurred in this action;

q.    Issuing injunctive relief prohibiting Defendants from continuing the infringing activities;

r.    All damages permitted by law for Defendants' willful conduct; and

s.    Ordering disgorgement of any profits derived from Defendants' conduct.

**Count V: Trade Disparagement**

**(Against All Defendants)**

45.448.    Plaintiffs incorporate by reference all preceding paragraphs as if fully set forth herein.

46.449.    Plaintiffs operate an organization as addressed above in this complaint.

47.450.    Defendants engaged in a pattern and practice of publishing false and/or defamatory statements regarding Plaintiffs' organization.

48.451.    As a direct and proximate result of Defendants' trade disparagement, Plaintiffs' organization has suffered damages, including reputational injury, loss of goodwill, and financial harm.

49.452.    The conduct of Defendants was intentional, willful, wanton, and committed with reckless or callous disregard for the rights and well-being of Plaintiffs, thereby justifying an award of punitive damages in an amount to be determined at trial.

WHEREFORE, Plaintiffs respectfully request the Court enter judgment against the Defendants in an amount in excess of the jurisdictional minimum for Allegheny County local rule 1301(1)(a).

### Count VI: Breach of Contract

### (Against Defendant Prause)

448.453.    Plaintiffs incorporate by reference all preceding paragraphs as if fully set forth herein.

449.454.    Plaintiff Rhodes and Defendant Prause entered into a valid and binding contractual agreement, the Non-Disparagement Agreement, executed on February 26, 2021. A true and correct copy of this agreement is attached to this Complaint as Exhibit "A".

450.455.    At all timetimes relevant to this matter, Plaintiffs met and fulfilled all of their obligations per the agreement.

451.456.    Per the agreement, Defendant Prause agreed to refrain from making disparaging statements about Plaintiffs, their websites, organizations, products or services, trademarks, employees, contractors, team members, family members, and other affiliated entities.

169

452.457.     Defendant Prause breached the agreement by repeatedly and intentionally publishing and disseminating negative, disparaging, and defamatory statements regarding Plaintiffs.

453.458.     Defendant Prause's breaches of the Non-Disparagement Agreement have directly and proximately caused significant harm and financial losses to Plaintiffs.

454.459.     Plaintiffs have suffered and continue to suffer damages, including economic loss, loss of business opportunities, and severe reputational injury as a direct result of Defendant Prause's breaches of the Non-Disparagement Agreement.

455.460.     Defendant Prause's breaches of the Non-Disparagement Agreement constitute material violations, entitling Plaintiffs to actual, compensatory, and consequential damages in an amount exceeding the jurisdictional minimum, as well as injunctive relief prohibiting further breaches and requiring removal of the disparaging statements.

          WHEREFORE, Plaintiffs respectfully request the Court enter judgment against the Defendants in an amount in excess of the jurisdictional minimum for Allegheny County local rule 1301(1)(a).

### Count VII: Fraudulent Inducement

**(Against Defendants Prause and Ley)**

50.461.     Plaintiffs incorporate by reference all preceding paragraphs as if fully set forth herein.

51.462.     During negotiations leading to the execution of the Non-Disparagement Agreement (Exhibit "A"), Defendant Prause, in collaboration with Defendant Ley, made false representations regarding her intention and willingness to fully comply with the obligations of the Agreement.

170

52.463.    Defendant Prause made knowingly false statements to Plaintiffs during the settlement negotiations.

53.464.    Defendant Prause knew and/or should have known that her false statements would induce Plaintiffs and/or a reasonable person to rely upon their statements.

54.465.    Plaintiffs relied upon defendants' representations, which resulted in Plaintiffs incurring damages.

55.466.    During settlement negotiations leading to the execution of the Non-Disparagement Agreement, Defendant Prause made false representations regarding her intention and willingness to fully comply with the obligations of the Agreement.

56.467.    Upon information and belief, Defendant Prause knew these representations regarding her future compliance were false and made such representations to fraudulently induce Plaintiffs into entering into the Non-Disparagement Agreement.

57.468.    Plaintiffs reasonably relied on Defendant Prause's representations of future compliance and good faith when entering the agreement.

58.469.    Upon information and belief, Defendant Prause never intended to comply with her contractual obligations and immediately began a pattern and practice of breaching the Non-Disparagement Agreement repeatedly.

59.470.    The mediation sessions leading to the execution of the Non-Disparagement Agreement were contractually agreed upon to be confidential.

60.471.    Upon information and belief, during the mediation session, Defendants Prause and Ley communicated with one another and exchanged confidential information pertaining to settlement negotiations.

61.472.    During the mediation process, Defendants Prause and Ley both posted on social media about the ongoing mediation, upon information and belief, to pressure Plaintiffs into entering into an agreement under terms more favorable to them.

62.473.    As a direct and proximate result of Defendants Prause and Ley's fraudulent inducement, Plaintiffs have sustained substantial harm, including reputational damage, emotional distress, financial losses, and additional damages exceeding the jurisdictional minimum, with the exact amount to be proven at trial.

WHEREFORE, Plaintiffs respectfully request the Court enter judgment against the Defendants in an amount in excess of the jurisdictional minimum for Allegheny County local rule 1301(1)(a) as follows:

    a.  Awarding actual, consequential, and punitive damages;

    b.  Granting permanent injunctive relief holding Defendant Prause responsible to fully comply with all terms of the Non-Disparagement Agreement;

    c.  Awarding Plaintiffs their costs and attorneys' fees incurred in this action; and

    d.  Granting such further relief as the Court seems just and proper.

**Count VIII: Tortious Interference**

**(Against All Defendants)**

63.474.    Plaintiffs incorporate by reference all preceding paragraphs as if fully set forth herein.

64.475.    Plaintiffs entered into a contractual agreement with Defendant Prause, Exhibit "A".

65.476.    All Defendants had knowledge and/or should have known that Plaintiffs and Defendant Prause entered into the above agreement.

172

66.477.    Defendants intentionally interfered with the contractual agreement between Plaintiffs and Defendant Prause.

67.478.    Plaintiffs maintained existing and prospective relationships with paying members, professional collaborators, and other entities critical to their operations and success.

68.479.    Defendants knowingly interfered with these relationships through intentional, malicious, and wrongful acts, including but not limited to disseminating false, defamatory, and disparaging statements about Plaintiffs, encouraging others to cease doing business with Plaintiffs, and damaging Plaintiffs' reputation through coordinated disinformation campaigns.

69.480.    Defendants acted without privilege or justification, specifically intending to harm Plaintiffs' professional relationships and opportunities.

70.481.    As a direct and proximate result of Defendants' intentional and malicious interference, Plaintiffs have suffered substantial economic damages, loss of opportunities, and reputational harm exceeding the jurisdictional minimum, with exact amounts to be proven at trial.

WHEREFORE, Plaintiffs respectfully request the Court enter judgment against the Defendants in an amount in excess of the jurisdictional minimum for Allegheny County local rule 1301(1)(a) as follows:

e.  Awarding actual, compensatory, and punitive damages;

f.  Awarding Plaintiffs their costs, expenses, and attorneys' fees incurred in this action;

g.  Issuing injunctive relief prohibiting further tortious interreference;

h.  Such other and further relief as the Court seems just and proper.

173

**Count IX: Defamation Per Se and Per Quod**

**(Against All Defendants)**

71.482.    Plaintiffs incorporate by reference all preceding paragraphs as if fully set forth herein.

72.483.    Defendants published false and defamatory statements pertaining to Plaintiffs in a journal published by Defendant Taylor & Francis, on the Internet (including websites, social media, and various online forums), and through other outlets. These false statements included, but are not limited to, the assertions that:

a.  Plaintiff Rhodes is a criminal, including accusations that he engaged in hacking, financial fraud, stalking, domestic terrorism, sexual assault, and attempted murders;

b.  Plaintiff NoFap is a hate group and Plaintiff Rhodes is its leader, endorsing violence, bigotry, and extremism;

c.  Plaintiff NoFap is a designated terrorist organization and Plaintiff Rhodes is its leader;

d.  Plaintiffs endorse violence, including claims that their platforms contain a disproportionate amount of violence-themed posts;

e.  Plaintiff Rhodes is a fraudster who fabricated struggling with excessive pornography use for ulterior motives, such as fame and money; and

f.  Plaintiff Rhodes is severely mentally ill, violent, abusive to women, and dangerous.

73.484.    In addition to these false statements, Defendants further made other false and defamatory statements against Plaintiffs.

74.485.    Defendants purposely intended to cause harm to Plaintiffs in Pennsylvania.

174

75.486.    In furtherance of this shared purpose, Defendants engaged in a campaign to intentionally defame Plaintiffs over the course of years that included targeting him in Pennsylvania.

76.487.    These statements are *per se* defamatory as the statements impute criminal offense, loathsome disease, business misconduct and/or serious sexual misconduct.

77.488.    Defendants published these defamatory statements through both written and oral means.

78.489.    Plaintiffs aver that these false statements have been understood by the community including prospective business partners, supporters, and community members as defamatory and relating directly to Plaintiffs.

79.490.    These false statements have harmed and continue to harm Plaintiffs' reputations in the community including prospective business partners, supporters, and community members—from associating with or dealing with Plaintiffs.

80.491.    These false statements have damaged Plaintiffs' role in providing legitimate peer support resources to individuals experiencing behavioral addiction or otherwise problematic pornography use.

81.492.    These false statements have damaged Plaintiffs' standing in the community and produced a negative impression resulting in damage to Plaintiffs' personal and professional relationships.

82.493.    Defendants have published and continue to publish the false statements without Plaintiffs' authorization or consent, and in direct violation of the Non-Disparagement Agreement.

83.494.    The false statements constitute libel per se because they falsely accuse Plaintiffs of serious criminal conduct, hate-based or terroristic behavior, and other unethical actions that injuriously affect Plaintiffs' businesses, names, and trades. By their very nature, the false statements also impute that Plaintiffs engage in morally reprehensible or disqualifying conduct, requiring no extrinsic evidence to establish their defamatory meaning.

84.495.    Defendants made these statements with the knowledge of their falsity and/or with reckless disregard for their truth or falsity.

85.496.    As a direct and proximate result of the false statements, Plaintiffs have suffered significant reputational harm and sustained actual damages, including but not limited to: (a) Loss of capital, revenue, and other business opportunities; (b) Decreased productivity and disruption of day-to-day business; (c) Expenses incurred to address and counteract the defamatory claims; (d) Loss of intangible assets such as goodwill and professional relationships; (e) Emotional distress and associated harms. Plaintiffs estimate these damages to exceed the jurisdictional minimum, with the precise amount to be proven at trial.

86.497.    These false and defamatory statements are not subject to any privilege.

87.498.    Plaintiffs request a permanent injunction halting the continued dissemination of these false and defamatory statements.

WHEREFORE, Plaintiffs respectfully request the Court enter judgment against the Defendants in an amount in excess of the jurisdictional minimum for Allegheny County local rule 1301(1)(a) as follows:

a.  Compensatory damages, including general and special damages, in an amount to be proven at trial;

b.  Punitive damages in an amount sufficient to deter such egregious conduct;

176

c.  Injunctive and equitable relief as described herein;

d.  Pre- and post-judgment interest as allowed by law;

e.  Attorneys' fees and costs of suit where permitted; and

f.  Such other relief as the Court may deem just and proper under the circumstances.

**Count X: Publicity Placing Person in False Light**

**(Against All Defendants)**

88.499.    Plaintiffs incorporate by reference all preceding paragraphs as if fully set forth herein.

89.500.    Defendants made and/or published erroneous and/or false statements related to plaintiffs that were widely disseminated to the public at large.

90.501.    These erroneous and/or false statements were made specifically identifying plaintiffs as the subject of the statements.

91.502.    These erroneous and/or false statements placed Plaintiffs in a "false light" in that any reasonable person would find the same offensive.

92.503.    The statements published were false.

93.504.    Through the false statements, Defendants have given publicity (i.e. widespread dissemination on the Internet) to matters concerning Plaintiff Rhodes that unreasonably place Plaintiff Rhodes in a false light before the public as the publications create the false impression that Plaintiff Rhodes maintains and promotes extremist values and engages in criminal activity.

94.505.    The false statements contain such major misrepresentations and create such a false impression of Plaintiff Rhodes' character, history, activities, and beliefs that serious offense may reasonably be expected to be taken by a reasonable person in his position.

177

95.506.    As a direct and proximate result of Defendants' above actions, Plaintiffs suffered significant financial losses, reputational damage, lost business opportunities, and ongoing harm to their business and professional interests.

96.507.    Because Defendants' conduct was outrageous and done with deliberate disregard for the rights of others, Plaintiffs request an award of treble and/or punitive damages.

WHEREFORE, Plaintiffs respectfully request the Court enter judgment against the Defendants in an amount in excess of the jurisdictional minimum for Allegheny County local rule 1301(1)(a).

**Count XI: Publicity Given to Private Life**

**(Against All Defendants)**

97.508.    Plaintiffs incorporate by reference all preceding paragraphs as if fully set forth herein.

98.509.    Defendants disclosed and published private matters related to Plaintiff Rhodes to the public at large.

99.510.    The disclosure of private information was and/or could be construed as highly offensive to a reasonable person.

100.511.    No public interest exists relative to Defendants' disclosure and/or publication of Plaintiff Rhodes' private matters.

101.512.    At various times and for malicious purposes, Defendants obtained private and highly personal material pertaining to Plaintiff Rhodes. These alleged facts and items included, but were not limited to, Plaintiff Rhodes' personal address, the address of Plaintiff Rhodes' family members, personal photographs from his teenage years, medical records, the names of Plaintiff

178

Rhodes' former romantic partners, partially unclothed photographs of Plaintiff Rhodes, obtained via opposition research.

102.513.    As a direct and proximate result of Defendants' actions, Plaintiff Rhodes has suffered: (1) Public humiliation and severe emotional distress, as his private matters and manipulated statements were thrust onto the public stage; (2) Damage to his personal reputation and professional opportunities, as prospective associates, colleagues, partners, or supporters encountered these skewed portrayals; and (3) Other losses and special damages, the exact amount of which shall be demonstrated at trial.

103.514.    Because Defendants' conduct was outrageous and done with deliberate disregard for the rights of others, Plaintiff Rhodes requests an award of treble and/or punitive damages.

WHEREFORE, Plaintiff Rhodes respectfully requests the Court enter judgment against the Defendants in an amount in excess of the jurisdictional minimum for Allegheny County local rule 1301(1)(a).

**Count XII: Intrusion into Private Affairs**

**(Against the Pornhub/Aylo Defendants and Defendants Prause, Ley, and UCLA)**

104.515.    Plaintiffs incorporate by reference all preceding paragraphs as if fully set forth herein.

105.516.    Defendants, without invitation or consent, intentionally and/or recklessly intruded upon Plaintiff Rhodes' solitude and/or seclusion of his private life.

106.517.    Defendants' intrusion would be deemed highly offensive to a reasonable person.

179

107.518.    At all times relevant, Plaintiff Rhodes had a reasonable expectation of privacy in his personal life, communications, and sensitive personal information—including, but not limited to, his private correspondence, medical records, family relationships, social media usage, and other intimate or confidential details.

108.519.    Defendants engaged in a coordinated campaign to intrude upon Plaintiff Rhodes' private affairs by monitoring, data-_mining, or otherwise accessing and collecting personal and confidential information about him without authorization or justification.

109.520.    Defendants used the information obtained to portray false and humiliating narratives; tracking, surveilling, or monitoring Plaintiff Rhodes' online activities or private communications to cause Plaintiff Rhodes harm.

110.521.    As a direct and proximate result of Defendants' actions, Plaintiff Rhodes has suffered: (1) Public humiliation and severe emotional distress, as his private matters and manipulated statements were thrust onto the public stage; (2) Damage to his personal reputation and professional opportunities, as prospective associates, colleagues, partners, or supporters encountered these inaccurate portrayals; and (3) Other losses and special damages, the exact amount of which shall be demonstrated at trial.

111.522.    Because Defendants' conduct was outrageous and done with deliberate disregard for the rights of others, Plaintiff Rhodes requests an award of treble and/or punitive damages.    WHEREFORE, Plaintiff Rhodes respectfully requests the Court enter judgment against the Defendants in an amount in excess of the jurisdictional minimum for Allegheny County local rule 1301(1)(a) as follows:

        a.  Compensatory damages, including general, special, and consequential damages, in an amount according to proof at trial;

b.  Punitive damages to punish and deter such egregious behavior;

c.  Injunctive and equitable relief, including an order prohibiting any further unauthorized collection, surveillance, or ~~disseminate~~dissemination of Plaintiff Rhodes' private information;

d.  Attorneys' fees and costs of suit, where permitted by law; and

e.  Such other and further relief as the Court deems just and proper.

181

**Count XIII: Intentional Infliction of Emotional Distress**

**(Against All Defendants)**

112.523.    Plaintiffs incorporate by reference all preceding paragraphs as if fully set forth herein.

113.524.    Defendants intentionally conspired to fabricate false and defamatory accusations against Plaintiffs for the purposes of harming their reputation and standing in the community.

114.525.    Defendants conduct was extreme and outrageous.

115.526.    The above-detailed acts and omissions by Defendants—including but not limited to (a) disseminating fabricated and defamatory allegations against Plaintiffs; (b) conspiring with an estranged and unstable biological family member of Plaintiff Rhodes; (c) repeatedly falsely accusing Plaintiff Rhodes of serious crimes; (d) filing false administrative and law-enforcement reports targeting Plaintiff Rhodes; (e) closely surveilling, data-mining, and conducting extensive opposition research on Plaintiff Rhodes; (f) relaying disparaging and defamatory statements about Plaintiff Rhodes to his associates and the public up to dozens of times per day; and (g) coordinating efforts with each other and/or third parties to undermine Plaintiff Rhodes' reputation and professional standing; and (h) relaying celebratory messages concerning the death of Gary Wilson to his friend Plaintiff Rhodes—constitutes extreme and outrageous conduct.

116.527.    Defendants' actions were undertaken with the intent to cause, or in reckless disregard of a substantial probability of causing, severe emotional distress to Plaintiff Rhodes.

117.528.    It was highly foreseeable that a causal connection would exist between Defendants' deliberate and malicious targeted harassment of Plaintiff Rhodes and his resulting severe emotional distress.

118.529.    As a direct and proximate result of Defendants' extreme and outrageous conduct, Plaintiff Rhodes has suffered—and continues to suffer—severe emotional pain and suffering, humiliation, anxiety, depression, reputational harm, and other damages. Plaintiff Rhodes has also incurred substantial economic losses, loss of opportunities, and other injuries, including reputational harm.

119.530.    The conduct of Defendants was intentional, willful, wanton, and committed with reckless or callous disregard for the rights and well-being of Plaintiff Rhodes, thereby justifying an award of punitive damages in an amount to be determined at trial.

WHEREFORE, Plaintiff Rhodes respectfully requests the Court enter judgment against the Defendants in an amount in excess of the jurisdictional minimum for Allegheny County local rule 1301(1)(a).

### Count XIV: Civil Conspiracy

**(Against All Defendants)**

120.531.    Plaintiffs incorporate by reference all preceding paragraphs as if fully set forth herein.

121.532.    Defendants entered into an agreement, understanding, or concerted action intended to harm Plaintiffs by engaging in defamatory, fraudulent, and otherwise tortious conduct.

122.533.    Specifically, the Defendants conspired to target Plaintiffs with tortious conduct, including to cause reputational and economic harm to Plaintiffs.

123.534.    Each Defendant committed one or more overt acts in furtherance of the conspiracy, including but not limited to: conducting coordinated opposition research on Plaintiffs; publishing and disseminating false, defamatory, and contract-breaching disparaging statements; and actively participating in efforts to suppress Plaintiffs' organization.

183

124.535.    Defendants acted with malicious intent, specifically intending to cause Plaintiffs harm, injury, and financial loss through coordinated, deliberate efforts.

125.536.    As a direct and proximate result of Defendants' civil conspiracy, Plaintiffs suffered substantial damages, including economic losses, loss of business opportunities, severe reputational injury, emotional distress, and other compensable injuries exceeding the jurisdictional minimum, with exact amounts to be proven at trial.

WHEREFORE, Plaintiffs respectfully request the Court enter judgment against the Defendants in an amount in excess of the jurisdictional minimum for Allegheny County local rule 1301(1)(a) as follows:

    a.  Awarding actual, compensatory, and punitive damages jointly and severally;

    b.  Awarding Plaintiffs their costs and attorneys' fees incurred in prosecuting this action;

    c.  Granting injunctive relief requiring Defendants to cease their ongoing conspiracy, remove all defamatory and contract-breaching disparaging statements, and prohibitingprohibit further dissemination of such statements; and

    d.  Such further relief as the Court deems just and proper.

**Count XV: Gross Negligence and Negligence**

**(Against All Defendants)**

126.537.    Plaintiffs incorporate by reference all preceding paragraphs as if fully set forth herein.

127.538.    As licensed psychologists, Defendants Prause and Ley owed a professional duty of care to exercise reasonable judgment, avoid foreseeable harm, and refrain from conduct that foreseeably inflicts emotional or reputational injury on others, including Plaintiffs. They

breached that duty by engaging in coordinated harassment, defamation, and exploitation of vulnerable individuals for professional or commercial advantage.

128.539.    The Pornhub/Aylo Defendants owed a duty of care to refrain from negligently supporting, funding, or coordinating campaigns of harassment and defamation through agents or collaborators acting on their behalf. Despite being aware of Defendants Prause and Ley's longstanding pattern of targeting industry critics with false and defamatory claims, Pornhub/Aylo negligently enabled, financed, and amplified their activities, thereby creating a foreseeable and substantial risk of harm to Plaintiffs.

129.540.    Defendant Taylor & Francis, as a large academic publisher, owed a duty to exercise reasonable care in enforcing its ethics policies, to prevent the publication of falsified material masquerading as academic research, and to act upon credible notice of misconduct. Defendant Taylor & Francis breached that duty by publishing and continuing to host a data-falsified article co-authored by Defendants Prause and Ley that defamed Plaintiffs, ignored clear evidence of data falsification and other ethical breaches, and refused to retract the publication or even require the listed authors to disclose conflicts of interest.

130.541.    Defendant UCLA owed a duty of reasonable care to Plaintiff Rhodes and other foreseeable victims of Defendant Prause's conduct to exercise due diligence in hiring, retaining, and supervising its employees and contractors, and to prevent foreseeable misuse of its institutional resources and credibility to cause harm.

131.542.    Defendant UCLA breached its duty by hiring, retaining, and failing to supervise Defendant Prause despite her prior criminal conviction for "domestic violence-violation of protection order" arising from her physical stalking of a student while employed as a faculty member at Idaho State University, as well as documented harassment of colleagues and members

185

of the public and an ongoing pattern of instability and unethical conduct. Upon information and belief, Defendant UCLA either knew or should have known of these red flags but nevertheless permitted Defendant Prause to use the university's name, facilities, and institutional authority to advance the pornography industry's interests, including by engaging in harassment, defamation, and coordinated attacks against industry targets, thereby enabling foreseeable harm and reputational damage to Plaintiffs.

132.543.    Defendant Prause, at times relevant herein, acted as an agent of Defendant UCLA and performed the acts described herein within the scope of her employment.

133.544.    As a direct and proximate result of Defendants' negligence, Plaintiff Rhodes has suffered severe emotional distress, humiliation, reputational harm, and related economic losses, and Plaintiff NoFap has suffered damages, including reputational injury, loss of goodwill, and financial harm exceeding the jurisdictional minimum.

134.545.    Defendants' conduct further constituted gross negligence, evidencing a reckless and conscious disregard for Plaintiffs' rights and well-being and justifying an award of punitive damages.

WHEREFORE, Plaintiffs respectfully request the Court enter judgment against the Defendants in an amount in excess of the jurisdictional minimum for Allegheny County local rule 1301(1)(a) as follows:

    a.  Actual and compensatory damages in an amount to be determined at trial;

    b.  Punitive damages for gross negligence;

    c.  Costs of suit, expenses, and attorneys' fees as permitted by law; and

    d.  Such other and further relief as the Court deems just and proper.

**Count XVI: Negligent Hiring**

**(Against Defendant UCLA)**

135.546.        Plaintiffs incorporate by reference all preceding paragraphs as if fully set forth herein.

136.547.        Defendant UCLA owed a duty of reasonable care to Plaintiffs and other foreseeable victims of its employees' conduct to exercise due diligence in hiring, supervising, and retaining its staff, agents, and contractors, and to prevent foreseeable misuse of its institutional name, resources, and authority to cause harm.

137.548.        Defendant UCLA breached this duty by hiring, retaining, and failing to adequately supervise Defendant Prause despite her prior criminal conviction, documented harassment of at least one colleague and various individuals not associated with Defendant UCLA, and longstanding pattern of instability and unethical conduct that were either known or readily discoverable through ordinary diligence.

138.549.        Upon information and belief, Defendant UCLA received multiple credible complaints and warnings from at least one colleague, journalists, and members of the public concerning Defendant Prause's misconduct and misuse of university resources, yet failed to take appropriate disciplinary or corrective action.

139.550.        Defendant UCLA further breached its duty by allowing Defendant Prause to continue using university facilities, digital infrastructure, and institutional credibility to advance pornography industry interests, engage in harassment and defamation, and publish falsified, fraudulent, and misleading academic work.

187

140.551.    Defendant UCLA failed to enforce or monitor compliance with its ethics, professional conduct, and Institutional Review Board (IRB) standards, despite clear notice that Defendant Prause had repeatedly violated them.

141.552.    Defendant UCLA's negligent hiring, supervision, and retention of Defendant Prause created a foreseeable risk that she would misuse her institutional position to inflict reputational, emotional, and economic harm on Plaintiffs and others.

142.553.    Defendant Prause, at times relevant herein, acted as an agent of Defendant UCLA and performed the acts described herein within the scope of her employment.

143.554.    As a direct and proximate result of Defendant UCLA's negligence, Plaintiff Rhodes suffered severe emotional distress, reputational injury, and related financial losses, and Plaintiff NoFap LLC suffered reputational and economic harm.

WHEREFORE, Plaintiffs respectfully request the Court enter judgment against the Defendants in an amount in excess of the jurisdictional minimum for Allegheny County local rule 1301(1)(a) as follows:

     a.   Actual and compensatory damages in an amount to be determined at trial;

     b.   Costs of suit, expenses, and attorneys' fees as permitted by law; and

     c.   Such other and further relief as the Court deems just and proper.

188

**Count XVII: Declaratory Judgment**

**(Against All Defendants)**

144.555.    Plaintiffs incorporate by reference all preceding paragraphs as if fully set forth herein.

145.556.    An actual, substantial, and immediate controversy exists between Plaintiffs and Defendants regarding their respective rights, obligations, and liabilities under the Non-Disparagement Agreement executed on February 26, 2021.

146.557.    Pursuant to the Non-Disparagement Agreement, Defendant Prause expressly agreed to refrain from making any disparaging statements about Plaintiff Rhodes, his websites, products or services, trademarks, employees, contractors, team members, family members, or affiliated entities. Exhibit "A".

147.558.    Despite this clear obligation, Defendant Prause has repeatedly and continuously breached this Non-Disparagement Agreement, publishing disparaging statements, including defamatory allegations targeting Plaintiffs designed to damage Plaintiffs' reputations.

148.559.    Defendant Ley, the Pornhub/Aylo Defendants, Defendant Taylor & Francis, and Defendant UCLA have knowingly conspired with, facilitated, benefited from, or otherwise participated in Defendant Prause's breaches of the Non-Disparagement Agreement, amplifying these disparaging statements through publications, social media, and other means, causing significant harm to Plaintiffs.

149.560.    Plaintiffs seek a judicial declaration clarifying their rights under the Non-Disparagement Agreement, specifically declaring:

a.    That Defendant Prause materially breached the Non-Disparagement Agreement;

189

b.  That Defendants Ley, Taylor & Francis, UCLA, and the Pornhub/Aylo Defendants facilitated, conspired, or otherwise participated in Defendant Prause's breaches of the Non-Disparagement Agreement;

c.  That Plaintiffs are excused from any further performance under the Non-Disparagement Agreement due to the nature and severity of Defendant Prause's repeated breaches;

d.  ~~That despite~~Despite Plaintiffs being excused from further performance, Defendant Prause remains obligated to comply with all terms and obligations contained within the Non-Disparagement Agreement;

e.  That Plaintiffs are entitled to injunctive relief compelling Defendants and their collaborators to cease further breaches, remove and delete previously published disparaging statements, and prohibit future disparaging publications or statements violating the Non-Disparagement Agreement;

f.  Any other relief the Court deems appropriate, including costs and attorneys' fees incurred in obtaining this declaratory judgment.

**Count XVIII: Injunction**

**(Against All Defendants)**

~~150.~~561.    Plaintiffs incorporate by reference all preceding paragraphs as if fully set forth herein.

~~151.~~562.    Plaintiffs request written retractions of all prior false and defamatory statements.

190

152.563.    Plaintiffs request removal of all prior statements determined by this Court to have violated the Non-Disparagement Agreement by the Defendants or third parties in collaboration with the Defendants.

153.564.    Plaintiffs request an order enjoining and restraining Defendants from directly or indirectly committing further breaches of the Non-Disparagement Agreement and to order Defendants issue retractions to all publishers of prior breaches of the Non-Disparagement Agreement.

**PRAYER**

WHEREFORE, Plaintiffs Alexander Rhodes and NoFap LLC demand judgment against Defendants Aylo Holdings S.A.R.L., Aylo USA Incorporated, Aylo Global Entertainment Incorporated, Aylo Billing Limited, Nicole Prause, David Ley, Taylor & Francis Group, and University of California Los Angeles as follows:

(a)    Plaintiffs request declaratory judgment finding that Defendant Prause breached the Non-Disparagement Agreement executed in the Western District of Pennsylvania, and further declaring that Defendant Prause, Defendant Ley, the Pornhub/Aylo Defendants, Defendant Taylor & Francis, and Defendant UCLA conspired, facilitated, or otherwise participated in breaches of contract, and clarifying Plaintiffs' rights and Defendants' obligations under the Non-Disparagement Agreement;

(b)    Plaintiffs request injunctive relief prohibiting Defendant Prause from disseminating any statements that violate the Non-Disparagement Agreement, including disparaging statements identifying, describing, or alluding to Plaintiff NoFap, Plaintiff Rhodes, his family members, employees, business partners, attorneys,

191

agents, representatives, affiliated entities, or others protected by the Non-Disparagement Agreement;

(c)  Plaintiffs request injunctive relief compelling Defendants, their agents, representatives, employees, and all persons or entities acting in concert or participation with them, to remove, delete, retract, or otherwise cause the removal or deletion of any previously published statements that violate the Non-Disparagement Agreement, including statements published directly or indirectly through any third-party platforms, collaborators, or intermediaries;

(d)  Plaintiffs request declaratory judgment finding that the Defendants have published false, defamatory, and damaging statements regarding Plaintiff Rhodes and Plaintiff NoFap, and further declaring these statements defamatory per se, thereby entitling Plaintiffs to appropriate injunctive and monetary relief;

(e)  Plaintiffs request declaratory judgment finding that Defendants have engaged in invasion of privacy, trademark dilution, intentional infliction of emotional distress, tortious interference, and other tortious conduct alleged herein, thereby entitling Plaintiffs to appropriate injunctive and monetary relief;

(f)  Actual, compensatory, and punitive damages, jointly and severally against Defendants, in an amount exceeding the jurisdictional minimum, with the exact amount to be proven at trial;

(g)  Plaintiffs request recovery of costs, reasonable attorney fees, and pre- and post-judgment interest at the maximum rate permitted by law;

(h)  For any and all other relief to which the Court determines Plaintiffs are entitled.

192

**TRIAL BY JURY** ~~is~~ **DEMANDED.**

Respectfully submitted,

~~/s/~~

David M. Kobylinski (Pa. I.D. No. 92233)

~~David M. Kobylinski (PAID: 111111)~~

*Counsel for* ~~*Plaintiff*~~*Plaintiffs*

~~November 26, 2025~~Dated:

193

**IN THE COURT OF COMMON PLEAS OF ALLEGHENY COUNTY, PENNSYLVANIA**
**CIVIL DIVISION**

COVER SHEET

| Plaintiff(s) | CIVIL DIVISION |
|---|---|
| ALEXANDER RHODES, et al. | Case Number : GD - 24 - 013043 |
| | Type of pleading : Praecipe for Entry of Appearance |
| | Code and Classification : |
| | Filed on behalf of Defendant Taylor & Francis Group, LLC |
| Vs | (Name of the filing party) |
| Defendant(s) | ☑ Counsel of Record |
| AYLO HOLDINGS, S.A.R.L., et al. | ☐ Individual, If Pro Se |
| | Required Information: |
| | Name: Kaitlin M. Gurney |
| | Address: Ballard Spahr LLP, 1735 Market St., 51st Fl., Phila., PA 19103 |
| | Phone Number: (215) 665-8500 |
| | Email Address: gurneyk@ballardspahr.com |
| | Attorney's State ID : 309581 |
| | Attorney's Firm ID : |

GD-24-013043

[cover]

BALLARD SPAHR LLP
Kaitlin M. Gurney (No. 309581)
1735 Market Street, 51st Floor
Philadelphia, PA 19103-7599
T: 215.665.8500
F: 215.864.8999                           *Attorney for Defendant Taylor & Francis*
gurneyk@ballardspahr.com                  *Group, LLC*

| | |
|---|---|
| | : |
| ALEXANDER RHODES, et al., | : IN THE COURT OF COMMON PLEAS |
| | : ALLEGHENY COUNTY, PENNSYLVANIA |
| Plaintiffs, | : |
| v. | : CIVIL DIVISION |
| | : |
| AYLO HOLDINGS, S.A.R.L., et al. | : CASE NO. GD-24-013043 |
| | : |
| Defendants. | : |

## PRAECIPE FOR ENTRY OF APPEARANCE

TO THE PROTHONOTARY:

     Kindly enter the appearance of Kaitlin M. Gurney of the law firm of Ballard Spahr LLP on

behalf of Defendant Taylor & Francis Group, LLC in the above-captioned matter.

Dated: December 8, 2025           Respectfully submitted,

                        By: */s/ Kaitlin M. Gurney*
                           Kaitlin M. Gurney (No. 309581)
                           BALLARD SPAHR LLP
                           1735 Market Street, 51st Floor
                           Philadelphia, PA 19103
                           T: (215) 665-8500
                           F: (215) 864-8999
                           gurneyk@ballardspahr.com

                           *Attorney for Defendant Taylor & Francis*
                           *Group, LLC*

## <u>CERTIFICATE OF COMPLIANCE</u>

Undersigned counsel hereby certifies this filing complies with the provisions of the

Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the

Appellate and Trial Courts that require filing confidential information and documents

differently than non-confidential information and documents.


 */s/ Kaitlin M. Gurney*
Kaitlin M. Gurney

<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that on this 8th day of December, 2025, I caused a true and correct copy of the foregoing Entry of Appearance to be served upon the following via the Court's electronic filing system:

David M. Kobylinski
Kobylinski + Kobylinski
304 Ross Street Suite 510
Pittsburgh PA 15219

*Counsel for Plaintiffs*

Peter T. Kobylinski
Praetorian Law Group LLC
304 Ross Street Suite 510
Pittsburgh PA 15219

*Counsel for Plaintiffs*

Alexander Nemiroff
Rebecca Simms
Gordon & Rees
Three Logan Square
1717 Arch St., Suite 610
Philadelphia, PA 19103

*Counsel for Defendant Univ. of Cal., Los Angeles*

Jessica M. Heinz
Michael R. Abbott
Cipriani & Werner, P.C.
450 Sentry Parkway Suite 200
Blue Bell PA 19422

*Counsel for Defendant Nicole Prause, Ph.D.*

and upon the following unrepresented parties via U.S. Mail, First Class:

Aylo Holdings, S.A.R.L. (d/b/a PornHub)
6975 Decarie Blvd.
Montreal, Quebec
H3W 0B6

Aylo USA, Inc. (d/b/a PornHub)
610 Brazos Street, Suite 500
Austin, TX 78701

Aylo Global Entertainment, Inc. (d/b/a PornHub)
610 Brazos Street, Suite 500
Austin, TX 78701

Aylo Billing Limited (d/b/a PornHub)
6975 Decarie Blvd.
Montreal, Quebec
H3W 0B6

David Ley, Ph.D.
707 Broadway Blvd NE # 500
Albuquerque, NY 87102

Dated: December 8, 2025

 */s/ Kaitlin M. Gurney*
Kaitlin M. Gurney

BALLARD SPAHR LLP
Elizabeth Seidlin-Bernstein (No. 317931)
1735 Market Street, 51st Floor
Philadelphia, PA 19103-7599
T: 215.665.8500
F: 215.864.8999          *Attorney for Defendant Taylor & Francis*
seidline@ballardspahr.com          *Group, LLC*

_____

|  |  |
|---|---|
| ALEXANDER RHODES, et al., | : IN THE COURT OF COMMON PLEAS |
|  | : ALLEGHENY COUNTY, PENNSYLVANIA |
| Plaintiffs, | : |
| v. | : CIVIL DIVISION |
|  | : |
| AYLO HOLDINGS, S.A.R.L., et al. | : CASE NO. GD-24-013043 |
|  | : |
| Defendants. | : |

### PRAECIPE FOR ENTRY OF APPEARANCE

TO THE PROTHONOTARY:

Kindly enter the appearance of Elizabeth Seidlin-Bernstein of the law firm of Ballard Spahr

LLP on behalf of Defendant Taylor & Francis Group, LLC in the above-captioned matter.

Dated:  December 8, 2025          Respectfully submitted,

By: */s/ Elizabeth Seidlin-Bernstein*
          Elizabeth Seidlin-Bernstein (No. 317931)
          BALLARD SPAHR LLP
          1735 Market Street, 51st Floor
          Philadelphia, PA 19103
          T: (215) 665-8500
          F: (215) 864-8999
          seidline@ballardspahr.com

          *Attorney for Defendant Taylor & Francis*
          *Group, LLC*

## <u>CERTIFICATE OF COMPLIANCE</u>

Undersigned counsel hereby certifies this filing complies with the provisions of the

Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the

Appellate and Trial Courts that require filing confidential information and documents

differently than non-confidential information and documents.

<u>/s/ Elizabeth Seidlin-Bernstein</u>
Elizabeth Seidlin-Bernstein

## CERTIFICATE OF SERVICE

I hereby certify that on this 8th day of December, 2025, I caused a true and correct copy of the foregoing Entry of Appearance to be served upon the following via the Court's electronic filing system:

David M. Kobylinski
Kobylinski + Kobylinski
304 Ross Street Suite 510
Pittsburgh PA 15219

*Counsel for Plaintiffs*

Peter T. Kobylinski
Praetorian Law Group LLC
304 Ross Street Suite 510
Pittsburgh PA 15219

*Counsel for Plaintiffs*

Alexander Nemiroff
Rebecca Simms
Gordon & Rees
Three Logan Square
1717 Arch St., Suite 610
Philadelphia, PA 19103

*Counsel for Defendant Univ. of Cal., Los Angeles*

Jessica M. Heinz
Michael R. Abbott
Cipriani & Werner, P.C.
450 Sentry Parkway Suite 200
Blue Bell PA 19422

*Counsel for Defendant Nicole Prause, Ph.D.*

and upon the following unrepresented parties via U.S. Mail, First Class:

Aylo Holdings, S.A.R.L. (d/b/a PornHub)
6975 Decarie Blvd.
Montreal, Quebec
H3W 0B6

Aylo USA, Inc. (d/b/a PornHub)
610 Brazos Street, Suite 500
Austin, TX 78701

Aylo Global Entertainment, Inc. (d/b/a PornHub)
610 Brazos Street, Suite 500
Austin, TX 78701

Aylo Billing Limited (d/b/a PornHub)
6975 Decarie Blvd.
Montreal, Quebec
H3W 0B6

David Ley, Ph.D.
707 Broadway Blvd NE # 500
Albuquerque, NY 87102

Dated: December 8, 2025

*/s/ Elizabeth Seidlin-Bernstein*
Elizabeth Seidlin-Bernstein

**IN THE COURT OF COMMON PLEAS OF ALLEGHENY COUNTY, PENNSYLVANIA**
**CIVIL DIVISION**

COVER SHEET

| Plaintiff(s)          Vs | GD-24-013043 |
|---|---|
| Alexander Rhodes and NoFapLLC | |

Case Number :

Type of pleading :

SUBSTITUTION OF COUNSEL

Filed on behalf of

Nicole Prause, Ph.D.

(Name of the filing party)

Vs.

Defendant(s)

Aylo Holdings, S.A.R.L. (d/b/a PornHub);
Aylo USA, Inc. (d/b/a PornHub);
Aylo Global Entertainment, Inc. (d/b/a
PornHub); Aylo Billing Limited (d/b/a
PornHub); Nicole Prause, Ph.D.;
University of California, Los Angeles
(d/b/a) UCLA); David Ley, Ph.D.;
Taylor & Francis Group, LLC,

■ Counsel of Record

☐ Individual, If Pro Se

Address, Telephone Number, and Email Address:

Michael R. Abbott, Esquire
Attorney I.D. # 203398
450 Sentry Parkway, Suite 200
Blue Bell, PA 19422
(610) 567-0700

Attorney's State ID   203398

Attorney's Firm ID

**CIPRIANI & WERNER, P.C.**          **Attorney for Defendant,**
**Ernest F. Koschineg, Esquire**       **NICOLE PRAUSE, PH.D.**
**Attorney I.D. # 83350**
**David G. Volk, Esquire**
**Attorney I.D. # 208444**
**Jessica M. Heinz, Esquire**
**Attorney I.D. 206166**
**450 Sentry Parkway, Suite 200**
**Blue Bell, PA  19422**
**(610) 567-0700**

---

| | |
|---|---|
| **Alexander Rhodes and NoFapLLC,**<br><br>**Plaintiffs,**<br><br>**v.**<br><br>**Aylo Holdings, S.A.R.L. (d/b/a PornHub);**<br>**Aylo USA, Inc. (d/b/a PornHub);**<br>**Aylo Global Entertainment, Inc. (d/b/a**<br>**PornHub); Aylo Billing Limited (d/b/a**<br>**PornHub); Nicole Prause, Ph.D.;**<br>**University of California, Los Angeles**<br>**(d/b/a) UCLA); David Ley, Ph.D.;**<br>**Taylor & Francis Group, LLC,**<br><br>**Defendants.** | **IN THE COURT OF COMMON PLEAS**<br>**OF ALLEGHENY COUNTY,**<br>**PENNSYLVANIA**<br><br>**NO:  GD-24-013043** |

---

## SUBSTITUTION OF COUNSEL

      Kindly enter the appearance of David G. Volk, Esquire of Cipriani & Werner, P.C., as

counsel of record for Defendant, Nicole Prause, Ph.D., and kindly withdraw the appearance of

Michael R. Abbott, Esquire of Cipriani & Werner, P.C., as counsel of record for Defendant,

Nicole Prause, Ph.D.

Respectfully submitted,                Respectfully submitted,

/s/_ *Michael R. Abbott* _____    /s/__ *David G. Volk* _____
Michael R. Abbott, Esquire, I.D. # 203398    David G. Volk, Esquire, I.D. # 208444
CIPRIANI & WERNER, P.C.          CIPRIANI & WERNER, P.C.
450 Sentry Parkway, Suite 200         450 Sentry Parkway, Suite 200
Blue Bell, PA  19422              Blue Bell, PA  19422
*Withdrawing Attorney for Defendant,*     *Entering Attorney for Defendant,*
*Nicole Prause, Ph.D.*             *Nicole Prause, Ph.D.*

## CERTIFICATE OF SERVICE

That Counsel for Defendant, Nicole Prause, Ph.D., hereby certifies that a true and correct copy of the foregoing Substitution of Counsel has been served on all counsel of record and/or unrepresented parties, by electronic and/or first-class mail, postage pre-paid, according to the Pennsylvania Rules of Civil Procedure.

David M. Kobylinski, Esquire
Peter T. Kobylinski, Esquire
304 Ross Street, Suite 510
Pittsburgh, PA 15219
*Attorney for Plaintiffs*

Alexander Nemiroff, Esq.
Gordon & Fees
171 Arch Street, Suite 610
Philadelphia, PA 19103
anemiroff@grsm.com
*Counsel to Defendant UCLA*

David Ley, Ph.D.
707 Broadway Blvd. NE #500
Albuquerque, NM 87102

Courtney C.T. Horrigan, Esq.
Alexa L. Austin, Esq.
REED SMITH LLP
225 Fifth Avenue
Pittsburgh, PA 15222-2716
*Counsel for Defendant, AYLO*
*HOLDINGS, S.A.R.L (d/b/a PornHub)*

Timothy Emmett Dages, President
Taylor + Francis Group, LLC
2385 NW Executive Center Drive, Ste 320
Boca Raton, FL 33431
*Defendant Taylor and Francis Group, LLC*

Aylo USA, Inc. (d/b/a PornHub)
610 Brazos Street, Suite 500
Austin, TX 78701

Aylo Billing Limited (d/b/a PornHub)
6975 Decarie Blvd.
Montreal, Quebec
H3W 0B6

Respectfully submitted,

**CIPRIANI & WERNER, P.C.**

By: _/s/Michael R. Abbott_
Michael R. Abbott
*Attorney for Defendant,*
*Nicole Prause, Ph.D.*

Date:  December 9, 2025

**IN THE COURT OF COMMON PLEAS OF ALLEGHENY COUNTY, PENNSYLVANIA**

| | |
|---|---|
| ALEXANDER RHODES, *et al.*, | GD 24-013043 |
| Plaintiffs, | |
| v. | **PRAECIPE FOR APPEARANCE** |
| AYLO HOLDINGS, S.A.R.L (d/b/a PornHub), *et al.*, | Filed on behalf of Defendant, AYLO HOLDINGS, S.A.R.L (d/b/a PornHub |
| Defendants. | |

Counsel of Record:

Courtney C.T. Horrigan, Esq.
Pa. I.D. No. 70427
chorrigan@reedsmith.com

Hudson M. Stoner
Pa. I.D. No. 326013
hstoner@reedsmith.com

Alexa L. Austin, Esq.
Pa. I.D. No. 334224
aaustin@reedsmith.com

REED SMITH LLP
Firm No. 234
225 Fifth Avenue
Pittsburgh, PA  15222
Tele:  (412) 288-3131
Fax:  (412) 288-3063

**IN THE COURT OF COMMON PLEAS OF ALLEGHENY COUNTY, PENNSYLVANIA**

|  |  |  |
|---|---|---|
| ALEXANDER RHODES, *et al.*, | ) | GD 24-013043 |
|  | ) |  |
| Plaintiffs, | ) |  |
|  | ) |  |
| v. | ) |  |
|  | ) |  |
| AYLO HOLDINGS, S.A.R.L (d/b/a | ) |  |
| PornHub), *et al.*, | ) |  |
| Defendants. | ) |  |
|  | ) |  |
|  | ) |  |
|  | ) |  |

**PRAECIPE OF APPEARANCE**

TO:    MICHAEL McGEEVER, DIRECTOR OF COURT RECORDS

Kindly enter the appearance of Alexa Austin, Esq. as counsel on behalf of Defendant,

AYLO HOLDINGS, S.A.R.L (d/b/a PornHub), in the above captioned matter.

Dated: December 9, 2025                    Respectfully submitted,

                                                  /s/ Alexa L. Austin
                                                  Alexa L. Austin Esq.
                                                  Pa. I.D. No. 334224

                                                  **REED SMITH LLP**
                                                  225 Fifth Avenue
                                                  Pittsburgh, PA 15222-2716
                                                  Tele: (412) 288-3131
                                                  Fax: (412) 288-3063
                                                  chorrigan@reedsmith.com

                                                  *Counsel for Defendant, AYLO*
                                                  *HOLDINGS, S.A.R.L (d/b/a PornHub)*

**<u>CERTIFICATE OF SERVICE</u>**

The undersigned hereby certifies that a true and correct copy of the foregoing *Praecipe for Appearance* has been served on this 9th day of December, 2025 to the following counsel of record via electronic mail only:

| | |
|---|---|
| David M. Kobylinski, Esquire<br>dave@koby.law<br>Peter T. Kobylinski, Esquire<br>pete@koby.law<br>304 Ross Street, Suite 510<br>Pittsburgh, PA 15219<br>*Counsel for Plaintiff* | Michael R. Abbott, Esq.<br>mabbott@c-wlaw.com<br>Cipriani & Warner, P.C.<br>450 Sentry Parkway, Suite 200<br>Blue Bell, PA 19422<br>*Counsel to Nichole Prause, Ph.D.*<br><br>Alexander Nemiroff, Esq.<br>anemiroff@grsm.com<br>Gordon & Fees<br>171 Arch Street, Suite 610<br>Philadelphia, PA 19103<br>*Counsel to Defendant UCLA* |

The undersigned hereby certifies that a true and correct copy of the foregoing *Praecipe for Appearance* has been served on this 9th day of December, 2025 to the following via U.S. Regular Mail:

| | |
|---|---|
| David Ley, Ph.D.<br>707 Broadway Blvd. NE #500<br>Albuquerque, NM 87102<br>*Defendant* | Timothy Emmett Dages, President<br>Taylor + Francis Group, LLC<br>2385 NW Executive Center Drive, Ste 320<br>Boca Raton, FL 33431<br>*Defendant Taylor and Francis Group, LLC* |

By: *s/ Alexa L. Austin*
Alexa L. Austin Esq.
*Counsel for Defendant, AYLO HOLDINGS, S.A.R.L (d/b/a PornHub)*

## <u>CERTIFICATE OF COMPLIANCE</u>

I certify that this filing complies with the provisions of the *Case Records Public Access Policy of the Unified Judicial System of Pennsylvania* that require filing confidential information and documents differently than non-confidential information and documents.

Submitted by:  <u>Defendant</u>

Signature: <u>*s/ Alexa L. Austin*</u>

Name:  <u>Alexa L. Austin, Esq.</u>

Attorney No.:   <u>334224</u>

**IN THE COURT OF COMMON PLEAS OF ALLEGHENY COUNTY, PENNSYLVANIA**

| | | |
|---|---|---|
| ALEXANDER RHODES, *et al.*, | ) | GD 24-013043 |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | **PRAECIPE FOR APPEARANCE** |
| | ) | |
| AYLO HOLDINGS, S.A.R.L (d/b/a | ) | Filed on behalf of Defendant, AYLO |
| PornHub, *et al.*, | ) | HOLDINGS, S.A.R.L (d/b/a PornHub |
| Defendants. | ) | |
| | ) | |
| | ) | Counsel of Record: |
| | ) | |
| | ) | Courtney C.T. Horrigan, Esq. |
| | ) | Pa. I.D. No. 70427 |
| | ) | chorrigan@reedsmith.com |
| | ) | |
| | ) | Hudson M. Stoner |
| | ) | Pa. I.D. No. 326013 |
| | ) | hstoner@reedsmith.com |
| | ) | |
| | ) | Alexa L. Austin, Esq. |
| | ) | Pa. I.D. No. 334224 |
| | ) | aaustin@reedsmith.com |
| | ) | |
| | ) | |
| | ) | REED SMITH LLP |
| | ) | Firm No. 234 |
| | ) | 225 Fifth Avenue |
| | ) | Pittsburgh, PA  15222 |
| | ) | Tele:  (412) 288-3131 |
| | | Fax:  (412) 288-3063 |

**IN THE COURT OF COMMON PLEAS OF ALLEGHENY COUNTY, PENNSYLVANIA**

|  |  |  |
|---|---|---|
| ALEXANDER RHODES, *et al.*, | ) | GD 24-013043 |
|  | ) |  |
| Plaintiffs, | ) |  |
|  | ) |  |
| v. | ) |  |
|  | ) |  |
| AYLO HOLDINGS, S.A.R.L (d/b/a | ) |  |
| PornHub, *et al.*, | ) |  |
| Defendants. | ) |  |
|  | ) |  |
|  | ) |  |
|  | ) |  |

## PRAECIPE OF APPEARANCE

TO:    MICHAEL McGEEVER, DIRECTOR OF COURT RECORDS

Kindly enter the appearance of Courtney C.T. Horrigan, Esq. as counsel on behalf of

Defendant, *AYLO HOLDINGS, S.A.R.L (d/b/a PornHub),* in the above captioned matter.

Dated: December 9, 2025

Respectfully submitted,

*/s/ Courtney C.T. Horrigan*
Courtney C.T. Horrigan,  Esq.
Pa. I.D. No. 70427

**REED SMITH LLP**
225 Fifth Avenue
Pittsburgh, PA 15222-2716
Tele: (412) 288-3131
Fax: (412) 288-3063
chorrigan@reedsmith.com

*Counsel for Defendant, AYLO*
*HOLDINGS, S.A.R.L (d/b/a PornHub)*

## <u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that a true and correct copy of the foregoing *Praecipe for Appearance* has been served on this 9th day of December, 2025 to the following counsel of record via electronic mail only:

| | |
|---|---|
| David M. Kobylinski, Esquire<br>dave@koby.law<br>Peter T. Kobylinski, Esquire<br>pete@koby.law<br>304 Ross Street, Suite 510<br>Pittsburgh, PA 15219<br>*Counsel for Plaintiff* | Michael R. Abbott, Esq.<br>mabbott@c-wlaw.com<br>Cipriani & Warner, P.C.<br>450 Sentry Parkway, Suite 200<br>Blue Bell, PA 19422<br>*Counsel to Nichole Prause, Ph.D.*<br><br>Alexander Nemiroff, Esq.<br>anemiroff@grsm.com<br>Gordon & Fees<br>171 Arch Street, Suite 610<br>Philadelphia, PA 19103<br>*Counsel to Defendant UCLA* |

The undersigned hereby certifies that a true and correct copy of the foregoing *Praecipe for Appearance* has been served on this 9th day of December, 2025 to the following via U.S. Regular Mail:

| | |
|---|---|
| David Ley, Ph.D.<br>707 Broadway Blvd. NE #500<br>Albuquerque, NM 87102<br>*Defendant* | Timothy Emmett Dages, President<br>Taylor + Francis Group, LLC<br>2385 NW Executive Center Drive, Ste 320<br>Boca Raton, FL 33431<br>*Defendant Taylor and Francis Group, LLC* |

*s/ Courtney C.T. Horrigan*
Courtney C.T. Horrigan
*Counsel for Defendant, AYLO*
*HOLDINGS, S.A.R.L (d/b/a PornHub)*

## <u>CERTIFICATE OF COMPLIANCE</u>

I certify that this filing complies with the provisions of the *Case Records Public Access Policy of the Unified Judicial System of Pennsylvania* that require filing confidential information and documents differently than non-confidential information and documents.

Submitted by:  <u>Defendant</u>

Signature: <u>*s/ Courtney C.T. Horrigan*</u>

Name: <u>Courtney C.T. Horrigan, Esq.</u>

Attorney No.:  <u>70427</u>

**IN THE COURT OF COMMON PLEAS OF ALLEGHENY COUNTY, PENNSYLVANIA**

|  |  |
|---|---|
| ALEXANDER RHODES, *et al.*, | GD 24-013043 |
| Plaintiffs, | |
| v. | **PRAECIPE FOR APPEARANCE** |
| AYLO HOLDINGS, S.A.R.L. (d/b/a PornHub), *et al.*, Defendants. | Filed on behalf of Defendants, AYLO HOLDINGS, S.A.R.L. (d/b/a PornHub), Aylo USA Inc., Aylo Global Entertainment Inc., and Aylo Billing Limited |

Counsel of Record:

Courtney C.T. Horrigan, Esq.
Pa. I.D. No. 70427
chorrigan@reedsmith.com

Hudson M. Stoner
Pa. I.D. No. 326013
hstoner@reedsmith.com

Alexa L. Austin, Esq.
Pa. I.D. No. 334224
aaustin@reedsmith.com

REED SMITH LLP
Firm No. 234
225 Fifth Avenue
Pittsburgh, PA  15222
Tele:  (412) 288-3131
Fax:  (412) 288-3063

**IN THE COURT OF COMMON PLEAS OF ALLEGHENY COUNTY, PENNSYLVANIA**

|  |  |  |
|---|---|---|
| ALEXANDER RHODES, *et al.*, | ) ) ) | GD 24-013043 |
| Plaintiffs, | ) ) | |
| v. | ) ) | |
| AYLO HOLDINGS, S.A.R.L. (d/b/a PornHub), *et al.*, | ) ) ) | |
| Defendants. | ) ) ) ) ) | |

**PRAECIPE OF APPEARANCE**

TO:    MICHAEL McGEEVER, DIRECTOR OF COURT RECORDS

Kindly enter the appearance of Hudson M. Stoner, Esq. as counsel on behalf of Defendants,

AYLO HOLDINGS, S.A.R.L. (d/b/a PornHub), Aylo USA Inc., Aylo Global Entertainment Inc.,

and Aylo Billing Limited*,* in the above captioned matter.

Dated: December 12, 2025

Respectfully submitted,

/*s/ Hudson M. Stoner*
Hudson M. Stoner, Esq.
Pa. I.D. No. 326013

**REED SMITH LLP**
225 Fifth Avenue
Pittsburgh, PA 15222-2716
Tele: (412) 288-3131
Fax: (412) 288-3063
hstoner@reedsmith.com

*Counsel for Defendants, AYLO
HOLDINGS, S.A.R.L. (d/b/a PornHub),
Aylo USA Inc., Aylo Global Entertainment
Inc., and Aylo Billing Limited*

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and correct copy of the foregoing *Praecipe for Appearance* has been served on this 12th day of December, 2025 to the following counsel of record via electronic mail only:

| | |
|---|---|
| David M. Kobylinski, Esq.<br>dave@koby.law<br>Peter T. Kobylinski, Esq.<br>pete@koby.law<br>304 Ross Street, Suite 510<br>Pittsburgh, PA 15219<br>*Counsel for Plaintiff* | David G. Volk, Esq.<br>dvolk@c-vlaw.com<br>Jessica M. Heinz, Esq.<br>jheinz@c-vlaw,con<br>Cipriani & Warner, P.C.<br>450 Sentry Parkway, Suite 200<br>Blue Bell, PA 19422<br>*Counsel to Nichole Prause, Ph.D.* |
| Elizabeth Seidlin-Bernstein, Esq.<br>seidline@ballardspahr.com<br>Kaitlin M. Gurney, Esq.<br>gurneyk@ballardspahr.com<br>BALLARD SPAHR LLP<br>1735 Market Street, 51st Floor<br>Philadelphia, PA 19103<br>T: (215) 665-8500<br>F: (215) 864-8999<br>*Attorney for Defendant Taylor & Francis Group, LLC* | Alexander Nemiroff, Esq.<br>anemiroff@grsm.com<br>Rebecca Simms<br>rsimms@grsm.com<br>Gordon & Rees<br>171 Arch Street, Suite 610<br>Philadelphia, PA 19103<br>*Counsel to Defendant UCLA* |

The undersigned hereby certifies that a true and correct copy of the foregoing *Praecipe for Appearance* has been served on this 12th day of December, 2025 to the following via U.S. Regular Mail:

| | |
|---|---|
| David Ley, Ph.D.<br>707 Broadway Blvd. NE #500<br>Albuquerque, NM 87102<br>*Defendant* | |

*s/ Hudson M. Stoner*
Hudson M. Stoner

## CERTIFICATE OF COMPLIANCE

I certify that this filing complies with the provisions of the *Case Records Public Access Policy of the Unified Judicial System of Pennsylvania* that require filing confidential information and documents differently than non-confidential information and documents.

Submitted by:  Defendant

Signature: *s/ Hudson M. Stoner*

Name:  Hudson M. Stoner, Esq.

Attorney No.:   326013

**IN THE COURT OF COMMON PLEAS OF ALLEGHENY COUNTY, PENNSYLVANIA**

| | |
|---|---|
| ALEXANDER RHODES, *et al.*, | GD 24-013043 |
| Plaintiffs, | |
| v. | **PRAECIPE FOR APPEARANCE** |
| AYLO HOLDINGS, S.A.R.L. (d/b/a PornHub), *et al.*, | Filed on behalf of Defendants, AYLO HOLDINGS, S.A.R.L. (d/b/a PornHub), |
| Defendants. | Aylo USA Inc., Aylo Global Entertainment Inc., and Aylo Billing Limited |

Counsel of Record:

Courtney C.T. Horrigan, Esq.
Pa. I.D. No. 70427
chorrigan@reedsmith.com

Hudson M. Stoner
Pa. I.D. No. 326013
hstoner@reedsmith.com

Alexa L. Austin, Esq.
Pa. I.D. No. 334224
aaustin@reedsmith.com

REED SMITH LLP
Firm No. 234
225 Fifth Avenue
Pittsburgh, PA 15222
Tele: (412) 288-3131
Fax: (412) 288-3063

**IN THE COURT OF COMMON PLEAS OF ALLEGHENY COUNTY, PENNSYLVANIA**

|  |  |  |
|---|---|---|
| ALEXANDER RHODES, *et al.*, | ) | GD 24-013043 |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| AYLO HOLDINGS, S.A.R.L. (d/b/a | ) | |
| PornHub), *et al.*, | ) | |
| Defendants. | ) | |
| | ) | |
| | ) | |
| | ) | |

**PRAECIPE OF APPEARANCE**

TO:    MICHAEL McGEEVER, DIRECTOR OF COURT RECORDS

Kindly enter the appearance of Alexa Austin, Esq. as counsel on behalf of Defendants, AYLO HOLDINGS, S.A.R.L. (d/b/a PornHub), Aylo USA Inc., Aylo Global Entertainment Inc., and Aylo Billing Limited, in the above captioned matter.

Dated: December 12, 2025

Respectfully submitted,

/s/ *Alexa L. Austin*
Alexa L. Austin Esq.
Pa. I.D. No. 334224

**REED SMITH LLP**
225 Fifth Avenue
Pittsburgh, PA 15222-2716
Tele: (412) 288-3131
Fax: (412) 288-3063
chorrigan@reedsmith.com

*Counsel for Defendants, AYLO
HOLDINGS, S.A.R.L. (d/b/a PornHub),
Aylo USA Inc., Aylo Global Entertainment
Inc., and Aylo Billing Limited*

## <u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that a true and correct copy of the foregoing *Praecipe for Appearance* has been served on this 12th day of December, 2025 to the following counsel of record via electronic mail only:

| | |
|---|---|
| David M. Kobylinski, Esq.<br>dave@koby.law<br>Peter T. Kobylinski, Esq.<br>pete@koby.law<br>304 Ross Street, Suite 510<br>Pittsburgh, PA 15219<br>*Counsel for Plaintiff*<br><br>Elizabeth Seidlin-Bernstein, Esq.<br>seidline@ballardspahr.com<br>Kaitlin M. Gurney, Esq.<br>gurneyk@ballardspahr.com<br>BALLARD SPAHR LLP<br>1735 Market Street, 51st Floor<br>Philadelphia, PA 19103<br>T: (215) 665-8500<br>F: (215) 864-8999<br>*Attorney for Defendant Taylor & Francis Group, LLC* | David G. Volk, Esq.<br>dvolk@c-wlaw.com<br>Jessica M. Heinz, Esq.<br>jheinz@c-wlaw,con<br>Cipriani & Warner, P.C.<br>450 Sentry Parkway, Suite 200<br>Blue Bell, PA 19422<br>*Counsel to Nichole Prause, Ph.D.*<br><br>Alexander Nemiroff, Esq.<br>anemiroff@grsm.com<br>Rebecca Simms<br>rsimms@grsm.com<br>Gordon & Rees<br>171 Arch Street, Suite 610<br>Philadelphia, PA 19103<br>*Counsel to Defendant UCLA* |

The undersigned hereby certifies that a true and correct copy of the foregoing *Praecipe for Appearance* has been served on this 12th day of December, 2025 to the following via U.S. Regular Mail:

| | |
|---|---|
| David Ley, Ph.D.<br>707 Broadway Blvd. NE #500<br>Albuquerque, NM 87102<br>*Defendant* | |

By: *s/ Alexa L. Austin*

Alexa L. Austin Esq.

## <u>CERTIFICATE OF COMPLIANCE</u>

I certify that this filing complies with the provisions of the *Case Records Public Access Policy of the Unified Judicial System of Pennsylvania* that require filing confidential information and documents differently than non-confidential information and documents.

Submitted by: <u>Defendant</u>

Signature: <u>*s/ Alexa L. Austin*</u>

Name: <u>Alexa L. Austin, Esq.</u>

Attorney No.: <u>334224</u>

**.IN THE COURT OF COMMON PLEAS OF ALLEGHENY COUNTY, PENNSYLVANIA**

|  |  |
|---|---|
| ALEXANDER RHODES, *et al.*, | GD 24-013043 |
| Plaintiffs, | |
| v. | **PRAECIPE FOR APPEARANCE** |
| AYLO HOLDINGS, S.A.R.L. (d/b/a PornHub, *et al.*,<br>Defendants. | Filed on behalf of Defendants, AYLO HOLDINGS, S.A.R.L. (d/b/a PornHub), Aylo USA Inc., Aylo Global Entertainment Inc., and Aylo Billing Limited |

Counsel of Record:

Courtney C.T. Horrigan, Esq.
Pa. I.D. No. 70427
chorrigan@reedsmith.com

Hudson M. Stoner
Pa. I.D. No. 326013
hstoner@reedsmith.com

Alexa L. Austin, Esq.
Pa. I.D. No. 334224
aaustin@reedsmith.com

REED SMITH LLP
Firm No. 234
225 Fifth Avenue
Pittsburgh, PA  15222
Tele:  (412) 288-3131
Fax:  (412) 288-3063

**IN THE COURT OF COMMON PLEAS OF ALLEGHENY COUNTY, PENNSYLVANIA**

|  |  |  |
|---|---|---|
| ALEXANDER RHODES, *et al.*, | ) | GD 24-013043 |
|  | ) |  |
| Plaintiffs, | ) |  |
|  | ) |  |
| v. | ) |  |
|  | ) |  |
| AYLO HOLDINGS, S.A.R.L. (d/b/a | ) |  |
| PornHub, *et al.*, | ) |  |
| Defendants. | ) |  |
|  | ) |  |
|  | ) |  |
|  | ) |  |

**PRAECIPE OF APPEARANCE**

TO:   MICHAEL McGEEVER, DIRECTOR OF COURT RECORDS

Kindly enter the appearance of Courtney C.T. Horrigan, Esq. as counsel on behalf of Defendants,

AYLO HOLDINGS, S.A.R.L. (d/b/a PornHub), Aylo USA Inc., Aylo Global Entertainment Inc.,

and Aylo Billing Limited*,* in the above captioned matter.

Dated: December 12, 2025                    Respectfully submitted,

                              */s/ Courtney C.T. Horrigan*
                              Courtney C.T. Horrigan,  Esq.
                              Pa. I.D. No. 70427

                              **REED SMITH LLP**
                              225 Fifth Avenue
                              Pittsburgh, PA 15222-2716
                              Tele: (412) 288-3131
                              Fax: (412) 288-3063
                              chorrigan@reedsmith.com

                              *Counsel for Defendants, AYLO*
                              *HOLDINGS, S.A.R.L. (d/b/a PornHub),*
                              *Aylo USA Inc., Aylo Global Entertainment*
                              *Inc., and Aylo Billing Limited*

## <u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that a true and correct copy of the foregoing *Praecipe for*

*Appearance* has been served on this 12th day of December, 2025 to the following counsel of record

via electronic mail only:

| | |
|---|---|
| David M. Kobylinski, Esq.<br>dave@koby.law<br>Peter T. Kobylinski, Esq.<br>pete@koby.law<br>304 Ross Street, Suite 510<br>Pittsburgh, PA 15219<br>*Counsel for Plaintiff* | David G. Volk, Esq.<br>dvolk@c-wlaw.com<br>Jessica M. Heinz, Esq.<br>jheinz@c-wlaw,con<br>Cipriani & Warner, P.C.<br>450 Sentry Parkway, Suite 200<br>Blue Bell, PA 19422<br>*Counsel to Nichole Prause, Ph.D.* |
| Elizabeth Seidlin-Bernstein, Esq.<br>seidline@ballardspahr.com<br>Kaitlin M. Gurney, Esq.<br>gurneyk@ballardspahr.com<br>BALLARD SPAHR LLP<br>1735 Market Street, 51st Floor<br>Philadelphia, PA 19103<br>T: (215) 665-8500<br>F: (215) 864-8999<br>*Attorney for Defendant Taylor & Francis Group, LLC* | Alexander Nemiroff, Esq.<br>anemiroff@grsm.com<br>Rebecca Simms<br>rsimms@grsm.com<br>Gordon & Rees<br>171 Arch Street, Suite 610<br>Philadelphia, PA 19103<br>*Counsel to Defendant UCLA* |

The undersigned hereby certifies that a true and correct copy of the foregoing *Praecipe for*

*Appearance* has been served on this 12th day of December, 2025 to the following via U.S. Regular

Mail:

| | |
|---|---|
| David Ley, Ph.D.<br>707 Broadway Blvd. NE #500<br>Albuquerque, NM 87102<br>*Defendant* | |

*s/ Courtney C.T. Horrigan*
Courtney C.T. Horrigan

## <u>CERTIFICATE OF COMPLIANCE</u>

I certify that this filing complies with the provisions of the *Case Records Public Access Policy of the Unified Judicial System of Pennsylvania* that require filing confidential information and documents differently than non-confidential information and documents.

Submitted by:  <u>Defendant</u>

Signature: <u>*s/ Courtney C.T. Horrigan*</u>

Name: <u>Courtney C.T. Horrigan, Esq.</u>

Attorney No.:  <u>70427</u>