# CIPRIANI & WERNER

A PROFESSIONAL CORPORATION

————

ATTORNEYS AT LAW

DAVID G. VOLK
dvolk@c-wlaw.com

450 Sentry Parkway, Suite 200
Blue Bell, PA  19422

Phone:  (610) 567-0700
Fax:  (610) 567-0712

www.C-WLAW.com

A Mid-Atlantic Litigation Firm

Visit us online at
www.C-WLAW.com

February 12, 2026

**VIA EMAIL AND FEDERAL EXPRESS**
David M. Kobylinski, Esquire
304 Ross Street, Ste. 510
Pittsburgh, Pennsylvania 15219

> **RE: *Alexander Rhodes, Et. Al. v. Aylo Holdings S.A.R.L, Et. Al.*, United States District Court for the Western District of Pennsylvania, Civil Action No. 2:25-cv-01956**

Dear Mr. Kobylinski,

This letter serves as a formal Rule 11 safe harbor notice pursuant to Federal Rule of Civil Procedure 11(c)(2). This office represents Dr. Nicole Prause in the above-referenced action. We are writing to address the First Amended Complaint filed by your client on **_December 30, 2025._**

As you know, my client's Motion to Dismiss for lack of personal jurisdiction is currently pending. And while the allegations against my client are completely baseless, contain complete fabrications, and are unmoored from reality, these meritless allegations will be properly addressed in our answer **_and potential counterclaims_**, if a formal response is ultimately required by the Court.

The First Amended Complaint (and supporting RICO Case Statement) contain specific allegations which are **_frivolous and warrant sanctions._** These egregious lies are completely absurd and include allegations that Dr. Prause was engaged in the "distribution of obscene materials through interstate commerce," "obstruction of justice," "witness tampering," "wire fraud," "retaliation against a witness," "threats and violence," "peonage," "slavery," "trafficking persons," "money laundering," and "child exploitation offenses." **_These bizarre and harmful claims against my client are the very definition of frivolous._**

The standard for imposing Rule 11 sanctions focuses on the objective unreasonableness of the allegations.  The rule imposes on counsel a duty to look before leaping. *Keister v. PPL Corp.*, 318 F.R.D. 247 (M.D. Pa. 2015).

PENNSYLVANIA o NEW JERSEY o WEST VIRGINIA o DELAWARE o MARYLAND o WASHINGTON, DC o NEW YORK o VIRGINIA o GEORGIA

A court may impose sanctions on any attorney, law firm, or party that violates Rule 11(b) or is responsible for the violation.  F.R.C.P. 11(c)(1).  "The lodestar of Rule 11 is reasonableness, not bad faith." *EuroOptic Ltd. v. W.L. Gore & Associates, Inc*., 781 F. Supp.3d 320, 333 (M.D. Pa. 2025).  "So lawyers can be sanctioned for objectively unreasonable conduct – in a word, negligence." *Id.*  "'Rule 11 also imposes a duty of candor, which attorneys violate whenever they misrepresent the evidence supporting their claims.  Thus, a court may sanction attorneys under Rule 11(b)(3) for factual assertions they know – are false or wholly unsupported.'" *Id*.  "The Third Circuit and the Advisory Committee Notes to Rule 11 have set forth certain factors useful in determining whether an attorney's conduct has violated Rule 11." *Keister*, 318 F.R.D. at 256.  Those factors include:

> [H]ow much time for investigation was available to the signer; whenever he had to rely on a client for information as to the facts underlying the pleading, motion, or other paper; whether the pleading, motion or other paper was based on a plausible view of the law; [] whether he depended on forwarding counsel or another remember of the bar; [and] whether [one] is in a position to know or acquire the relevant factual details.

*Id.* (quoting F.R.C.P. 11 Advisory Committee Notes to 1983 Amendment; CTC Imports & Exports, 951 F.2d at 578.).

"Above all else, '[g]reater attention by the district courts to pleading and motion abuses and the imposition of sanctions when appropriate, should discourage dilatory or abusive tactics and help to streamline the litigation process by lessening frivolous claims or defenses." *Keister*, 318 F.R.D. at 256.

"'The court has available a variety of possible sanctions to impose for violations, such as striking the offending paper, issuing an admonition, reprimand, or censure; requiring participation in seminars or other educational programs; ordering a fine payable to the court; referring the matter to disciplinary authorities…etc." *Id.* (citing F.R.C.P. 11 Advisory Committee Notes to 1993 Amendment ("Since the purpose of Rule 11 sanctions is to deter rather than to compensate, the rule provides that, if a monetary sanction is imposed, it should ordinarily be paid into court as a penalty. However, under unusual circumstances, particularly for (b)(1) violations, deterrence may be ineffective unless the sanction not only requires the person violating the rule to make a monetary payment, but also directs that some or all of this payment be made to those injured by the violation. Accordingly, the rule authorizes the court, if requested in a motion and if so warranted, to award attorney's fees to another party.").

Federal courts in the Third Circuit's venire and the Advisory Committee Notes to Rule 11 have set forth certain factors useful in determining the appropriate sanction for a violation of Rule 11, including:

> Whether the improper conduct was willful, or negligent; whether it was part of pattern of activity, or an isolated event; whether it infected the entire pleading, or only one particular county or

defense; whether the person has engaged in similar conduct in other litigation; whether it was intended to injury; what effect it had on the litigation process in time or expense; whether the responsible person is trained in the law; what amount, given the financial resources of the responsible person, is needed to deter that person from repetition in the same case; what amount is needed to deter similar activity by other litigants: all of these may in a particular case be proper considerations.

*Id.* (quoting F.R.C.P. 11 Advisory Committee Notes to 1993 Amendment. *See also In re Cendant Corp. Derivative Action Litig.*, 96 F.Supp.2d 403, 407–08 (D.N.J. 2000)).

If the Court decides to impose monetary sanctions, which we absolutely plan to seek if these allegations are not corrected, the following factors will weigh in favor of our request for a significant amount to be awarded in our client's favor to deter future similar conduct:

> [T]he sanctioned party's ability to pay; [whether the attorney] has already been subject to adverse press scrutiny as a result of the sanction by the district court; [whether the attorney] has been subject to at least one other disciplinary action; [whether] any other evidence would tend to substantiate [the attorney's] claim that he has already been deterred sufficiently from filing frivolous actions; the attorney's history of filing frivolous actions or alternatively, his or her good reputation; the defendant's need for compensation; the degree of frivolousness; whether the frivolousness also indicated that a less sophisticated or expensive response [by the other party] was required; and the importance of not discouraging particular types of litigation which may provide the basis for legislative and executive ameliorative action when the courts lack power to act.

*Keister,* 318 F.R.D. at 272, n.120 (quoting *Doering v. Union Cty. Bd. of Chosen Freeholders*, 857 F.2d 191, 195-97 (3d Cir. 1988). *See also Zuk v. Eastern Pennsylvania Psychiatric Institute*, 103 F.3d 294 (3d. Cir. 1996) (Rosenn, J.)).

In the *Keister* case, the United States District Court for the Middle District of Pennsylvania granted the Defendant's Rule 11 Motion for Sanctions because it found that the claims in the plaintiff's second amended complaint where not warranted by existing law. The Court explained its decision, in part, as follows, regarding the conduct of the Plaintiff's attorney, Mr. Russo:

> **Even more troubling than the non-responsive nature of Mr. Russo's submissions is the fact that they appear intentionally vague and calculated to raise disputes of law or fact where none existed**. In addition to Mr. Russo's questionable factual claims outlined earlier, his papers cite two cases and propositions whose applicability to the case at hand is highly questionable and often

inaccurate. **Moreover, just like his questionable factual assertions, Mr. Russo's indiscriminately quotes to random doctrine in a "see what sticks" approach to briefing, which often resulted in nothing more than utter confusion for the Court and the Defendants.** Consequently, both were left to expend unnecessary time and effort dissecting Mr. Russo's strategically placed, yet baseless arguments. Unfortunately, as the Court and the Defendants unraveled this case, it became patently clear that Plaintiff's case was nothing more than an illusion, one supported by baseless factual contentions and inapplicable legal conclusions proffered by Mr. Russo. Regrettably, it took significant time to come to that realization because Mr. Russo impeded its discovery at every juncture.

. . .

Mr. Russo…consistently disguised the fatal flaws of his client's claims by furthering unsupported factual allegations and failing to adequately address Defendants' factual contentions. This was a case built largely on Mr. Russo's posturing, the consistent filing of pleadings, which amounted to nothing more than bluffs that Defendants here were not afraid to call**. That the underlying claims were meritless was known to at least one person: Mr. Russo. Yet, he chose to conceal his case's weaknesses rather than litigate in good faith.** Had Defendants not been forced to deal with Mr. Russo's circuitous and less than straightforward pleadings, this litigation would have ended long ago. **Because the frivolous nature of the underlying claims was concealed by Mr. Russo, Defendants are entitled to the reasonable attorney's fees in the full amount of those fees incurred defending the entire case. That is because the entire case was enabled by Mr. Russo's violations**.

*Id.* at 263 and 271.

Consider also *Bruce v. City of Pittston, Pennsylvania*, 2023 WL 6609023 (M.D. Pa. Oct. 10, 2023). The defendant served a Rule 11 safe harbor notice on the plaintiff's attorney seeking the withdrawal of the complaint. The plaintiff was a former Deputy District Attorney. The plaintiff's attorney withdrew his representation after they disagreed over the invalidity of the Complaint. The plaintiff proceeded to represent himself *pro se*. The defendant filed a motion for judgment on the pleadings and a motion for sanctions. Both motions were granted by the Court. In the motion for sanctions, the defendant argued that the plaintiff's claims were "objectively meritless, groundless, and frivolous" and requested sanctions in the form of dismissal of the complaint with prejudice and an award of attorney's fees paid by the plaintiff to the defendant, the City of Pittston. The Court followed the standard applied in *Keister* and

decided to award the defendant the attorney's fees associated with defending the case. The Court explained as follows:

> [Plaintiff], who is in a unique position of representing himself, plainly failed to engage in appropriate behavior, failed to produce evidentiary support for his case, and failed to conduct a reasonable inquiry into the facts and law governing the causes of action advanced in the complaint prior to initiated this action. **Indeed, the City provides evidence to suggest that [Plaintiff's] intent to sue the City of Pittston was born from emotion and a third for retaliation** than from a sense that his constitutional rights had been infringed. Thus, the Court finds that this action is more the fulfillment of a threat of litigation than the product of any reasonable assessment of relevant facts and law."

*Id.* at *19.

In the First Amended Complaint filed by Mr. Rhodes, the following claims and allegations (and RICO Case Statement) lack any evidentiary support and are legally frivolous:

- ☐ ***Paragraph 6:*** "Defendants attempted to frame Gary Wilson with crimes"…
- ☐ ***Paragraph 7:*** "Pornhub surrogates, including Defendants Prause…attempted to frame Laila Mickelwait with a felony"…
- ☐ ***Paragraph 13:*** "and its collaborators use illegal"…
- ☐ ***Paragraph 37:*** "and either personally physically grabbed her in Los Angeles"…
- ☐ ***Paragraph 53:*** "including a criminal conviction (specifically, Domestic Violence-Violation of Protection Order) for physically stalking a student at a university she was a faculty member at in 2010"…
- ☐ ***Paragraph 87:*** "of its criminal racketeering operation"…"Defendant Prause filed false law enforcement reports against Plaintiff Rhodes (for purported stalking and attempted murder and domestic terrorism), Laila Mickelwait of #Traffickinghub (for purported distribution of CSAM), and Gary Wilson, the author of Your Brain on Porn (for purported stalking).
- ☐ ***Paragraph 102:*** "During another incident documented in the police reports, Defendant Prause was reportedly involuntarily committed to a behavioral health unit."
- ☐ ***Paragraph 104:*** "However, on February 17, 2011, Defendant Prause received a sentence for "Domestic Violence-Protection of Restraining Order", suggesting that she may have violated the terms of her probation"…
- ☐ ***Paragraph 138:*** "Defendants engaged in a years-long campaign of defaming Gary Wilson, falsely accusing him of stalking and threatening Defendant Prause. The campaign was eerily similar to the one Defendants concocted against Plaintiffs in this matter."
- ☐ ***Paragraph 141:*** The court awarded him his costs and imposed a monetary penalty against Defendant Prause."
- ☐ ***Paragraph 195:*** "and filing false law enforcement reports"…
- ☐ ***Paragraph 196:*** "knowing that she previously filed dubious law enforcement reports."

☐ ***Paragraph 205:*** "Defendant Prause fabricated that she was receiving death threats as a result of a legal fundraiser, making the first false accusation approximately 22 minutes before the fundraiser was publicly viewable."

☐ ***Paragraph 233:*** "Upon information and belief, CoventBridge Group Ltd, or another agency hired by Defendant Prause, her counsel, or other entities connected to Defendant Prause, likely deployed an in-person private investigator to surveil Plaintiff Rhodes. This determination was made by a third-party expert."

☐ ***Paragraph 257(j):*** "Defendant Prause has staged multiple death threat hoaxes targeting Plaintiffs and has impersonated NoFap community members."

☐ ***Paragraph 257(m):*** "Both Plaintiff Rhodes and Defendant Ley served as witnesses supporting opposite parties in Hilton v. Prause. And that Defendant Prause settled that case, with her issuing a retraction statement."

☐ ***Paragraph 257(t):*** "Counsel for Plaintiffs obtained records reflecting Defendant Prause's prior criminal conviction and police reports concerning Defendant Prause's alleged physical stalking of an individual, and Defendant Prause was aware of the identity of the private investigation firm that obtained these materials within the context of the Prior Litigation."

☐ ***Paragraph 257(cc):*** "Defendant Prause posted violent material (as defined by the Porn Industry Defendants' own purported methodology)"…

☐ ***Paragraph 289:*** "are not authored by an individual with a criminal conviction"…

☐ ***Paragraph 319:*** "The case record documents Defendant Prause's pattern of research fraud, including data falsification and undisclosed conflicts of interest."

☐ ***Paragraph 369:*** "The book specifically cited the data falsified paper published by Defendant Taylor & Francis."

☐ ***Paragraph 401:*** "These assertions are not true and the case she filed against Andrew Stebbins was dismissed."

☐ ***Paragraph 408(a):*** "Defendant Prause published the physical address of Plaintiff Rhodes' family members, Plaintiff Rhodes' personal cell phone number, Plaintiff Rhodes' personal email address."

☐ ***Paragraph 415(a):*** Fabricated Statements: Defendant Prause would often misattribute statements that neither Plaintiff Rhodes nor Plaintiff NoFap ever stated and then use to justify further attacks. a. May 09, 2022: Defendant Prause made a post to her @NicoleRPrause Twitter account, posting "On Reddit, @NoFap is posting that I lost a lawsuit to Alexander Rhodes, apologized to him, retracted statements, and paid [']damages[']. This is false and defamatory. I never lost any lawsuit, never retracted any statements, including about Alexander Rhodes, and never paid damages." Plaintiffs did not post any of the aforementioned messages anywhere on Reddit and do not know what Defendant Prause is referring to. Upon information and life, Defendant Prause is fabricating these claims. Further, Defendant Prause is using this fabricated opportunity to disparage Plaintiff and to misrepresent the prior litigation against her."

☐ ***Paragraph 416:*** Staging Hoaxes: Defendant Prause has staged numerous targeting Plaintiffs, claiming to be a victim. a. March 09, 2021: Defendant Prause asserted on Twitter that a well-known cybercriminal, "Maxsim Yakubets," alleged by U.S. authorities to be associated with the Russia-based cybercrime group commonly referred to as Evil Corp (and linked to the Dridex malware operation), took down her website LiberosCenter.com. She published purported messages from "Yakubets" stating "Leave

Alex and the Nofap community alone. Sincerely – MAXsim Yakubets" and "Leave Alex alone or I hit this site and your internet exchange point with a 2 tbps DDOS attack." While Plaintiffs do not yet possess all evidence they would rely upon at trial, preliminary investigation into Yakubets's known modus operandi and publicly documented patterns render Defendant Prause's assertions highly implausible, particularly in light of her pattern of reporting fabricated incidents. Upon information and belief, the statements and their purported attribution to "Yakubets" were fabricated or otherwise inauthentic. January 24, 2022: Defendant Prause posted on Twitter that "Yet another post be @NoFap resulted in a another [sic] death threat against me. /r/NoFap stated I am [']pro-porn['], paid by porn, my research was [']unethical['], and this is done [']before she dies[']. NoFap further incited attacks calling me [']disgusting['] & [']sick[']. This is false and defamatory." Defendant Prause also purported to file an FBI report about this fabricated incident, describing the figurative title of a thirdparty post critiquing her "science", "The Final Nail in the Coffin of Pro-PMO [']Science[']", as a threat. Another third party responded to the initial post, purporting that Defendant Prause is unethical and does not fear facing judgment in any purported afterlife, which Defendant Prause mischaracterized as a threat. NoFap did not make the posts Defendant Prause described, nor did the users she claimed posted threats against her actually do so. c. June 11, 2025: Upon information and belief, Defendant Prause utilized a sockpuppet alias, "jonathana_1972" under the user ID "1182353941036548219", to post policy-breaching content on NoFap's Discord server, posing as a NoFap community member. d. July 02, 2025: Upon information and belief, Defendant Prause utilized a sockpuppet alias, "sandybeach787" under the user ID "1389946428217884682", to post on NoFap's Discord server, posing as a NoFap community member. The posts, which were instantly removed, included "Warning everyone this discord is being monitor by Nicole Prause", "Just be careful what you type here it will be used in her pseudoscience", and "In my opinion we should go on her Wikipedia".

☐ ***Paragraph 425:*** "by filing false administrative reports"…
☐ ***Paragraph 431:*** "Upon information and belief, Defendant Prause has actively sought to obstruct or shut down academic research involving Plaintiff NoFap's website, and research on problematic pornography use more broadly, by contacting researchers and academic institutions to discourage or interfere with such studies."
☐ ***Paragraph 432:*** "Defendant Prause's communications caused Plaintiff NoFap to be removed from a Qualtrics survey associated with researcher Treva Etsitty, jeopardizing Etsitty's research."
☐ ***Paragraph 447:*** "faux academics, namely Defendant Prause"…
☐ ***Paragraph 479:*** "Together, these defendants engaged in a common enterprise directed toward extorting"…
☐ ***Paragraph 421 (on page 174 of the First Amended Complaint):*** "Relevant to Plaintiffs, Defendants engaged in a pattern of racketeering activity, including but not limited to: **distribution of obscene materials through interstate commerce** (18 U.S.C. §§ 1461-1465); **obstruction of justice** (18 U.S.C. § 1503); **tampering with a witness, victim or informant** (18 U.S.C. § 1512); wire fraud (18 U.S.C. § 1343); **retaliating against a witness, victim or informant** (18 U.S.C. § 1513); **and interference with commerce by threats or violence** (18 U.S.C. § 1951)."

- [ ] ***Paragraph 422 (on page 175 of the First Amended Complaint):*** "In broader scope, however, the enterprise further involves **peonage, slavery, and trafficking in persons** (18 U.S.C. §§ 1581-1592); **money laundering** (§§ 1956–1957); and **child sexual exploitation offenses** (18 USC §§ 2251–2252A)."
- [ ] ***Paragraph 548:*** "despite her prior criminal conviction, documented harassment of at least one colleague"…
- [ ] ***Paragraph 550:*** "and publish falsified, fraudulent, and misleading academic work"…
- [ ] ***Paragraph 551:*** "and Institutional Review Board (IRB) standards, despite clear notice that Defendant Prause had repeatedly violated them"…
- [ ] ***RICO CASE STATEMENT:***
  - 2b. "As set forth in the complaint, defendant Prause often did so through means of wire fraud":

  - 5b. "Defendants engaged in a pattern of racketeering activity, including but not limited to: distribution of obscene materials through interstate commerce (18 U.S.C. §§ 1461-1465); obstruction of justice (18 U.S.C. § 1503); tampering with a witness, victim or informant (18 U.S.C. § 1512); wire fraud (18 U.S.C. § 1343); retaliating against a witness, victim or informant (18 U.S.C. § 1513); and interference with commerce by threats or violence (18 U.S.C. § 1951)";

  - 14. "The same was accomplished through wire fraud and other illegal conduct through means of interstate commerce."

Accordingly, these ***specific allegations*** appear to have been filed for an improper purpose by both your client and your law firm, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation.

In accordance with the safe harbor provisions in the federal rules, we hereby request that you voluntarily withdraw the above allegations within twenty-one (21) days of receipt of this letter.  If this is not done, we will file a motion for sanctions under Federal Rule of Civil Procedure 11 without further notice where sanctions will be sought, including ***significant monetary sanctions, dismissal of Plaintiff's claims against Dr. Rhodes, attorneys' fees and costs of defending this action, and/or other equitable relief as the Court will permit.***

Please contact me immediately if you wish to discuss this matter.

Very truly yours,

***/s/ David G. Volk***
David G. Volk, Esq.