# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **ALEXANDER RHODES** and **NOFAP LLC** | ) | |
| | ) | Case No.: 2:25-cv-01956-MJH |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| **AYLO HOLDINGS, S.A.R.L. (d/b/a PORNHUB), et al**, | ) | |
| | ) | |
| | ) | |
| Defendants. | ) | |

## PLAINTIFFS' MEMORANDUM IN OPPOSITION TO DEFENDANT TAYLOR & FRANCIS GROUP, LLC'S MOTION TO DISMISS

**KOBYLINSKI + KOBYLINSKI**
David M. Kobylinski, Esquire
Pa. ID No.:  92233
Peter T. Kobylinski, Esquire
Pa. ID No.:  309832
304 Ross Street, Suite 510
Pittsburgh, PA  15219
(412) 281-6600
dave@koby.law
pete@koby.law

*Counsel for Plaintiffs*

Dated: April 13, 2026

**Table of Contents**

Table of Authorities ........................................................................................................... 3

1.  Introduction ................................................................................................................ 5

2.  Factual Background .................................................................................................... 7

3.  Legal Standard ........................................................................................................... 8

4.  Argument .................................................................................................................... 9

    a)  Plaintiffs have stated valid claims for defamation and false light against Taylor & Francis. ...................................................................................................................... 10

        i.  The article is actionable because the complaint alleges objectively false statements and fraudulent underlying "data". ..................................................................................... 10

        ii.  The FAC plausibly alleges defamatory statements and defamatory implication. ........ 12

        iii.  Plaintiffs plead that Rhodes is not a public figure; even if he were, the FAC plausibly pleads actual malice ........................................................................................ 18

        iv)  The false-light claim rises or falls with the same adequately pleaded falsity and actual-malice allegations ............................................................................................ 20

    b)  The tortious-interference claim is plausibly pleaded and cannot be dismissed by resolving factual disputes against Plaintiffs ............................................................................. 21

    c)  The publicity-given-to-private-life claim is recognized under Pennsylvania law and should not be dismissed before factual development. .................................................... 22

    d)  The Intentional Infliction of Emotional Distress ("IIED") and Negligence claims are plausibly pleaded, and any narrowing should await a factual record. .................................... 27

    e)  The conspiracy claim is plausibly pleaded and depends on discovery into coordinated conduct. ........................................................................................................................ 29

    f)  Taylor & Francis has not shown entitlement to dismissal of the RICO, trademark dilution, or trade disparagement with prejudice at the pleading stage. .................................... 30

    g)  The declaratory-judgment claim should proceed as a separate and forward-looking form of relief. ....................................................................................................................... 33

    h)  UPEPA does not provide a basis for dismissal, immunity, or fees, and Taylor & Francis's argument improperly seeks an early merits ruling outside the Federal Rules. ......................... 34

5.  Leave to Amend ......................................................................................................... 35

6.  Conclusion ................................................................................................................ 35

**Table of Authorities**

**Cases**

Acumed LLC v. Advanced Surgical Servs., Inc., 561 (3d Cir. 2009) ........................................ 22

Adler, Barish, Daniels, Levin & Creskoff v. Epstein, 482 (Pa. 1978) ..................................... 22

American Future Systems, Inc. v. Better Business Bureau, 923 (Pa. 2007) .............................. 28

Burger v. Blair Med. Assocs., Inc., 964 (Pa. 2009); ................................................................. 32

Clark v. Coupe, 55 F.4th 167 (3d Cir. 2022) ............................................................................... 8

Constantakis v. Bryan Advisory Servs., LLC, 275 (Pa. Super. Ct. 2022); ................................ 28

CrossFit, Inc. v. National Strength & Conditioning Ass'n, (S.D. Cal. Sept. 21, 2016), .............. 10

Doe v. Township of Robinson, 637 (Pa. Commw. Ct. 1994). ..................................................... 23

Dow Jones & Co., Inc. v. Harrods, Ltd., 237 (S.D.N.Y. 2002) ................................................. 33

Fine v. Checcio, 870 (Pa. 2005). ................................................................................................ 32

Gordon v. Lancaster Osteopathic Hosp. Ass'n, Inc., 489 A.2d 1364 (Pa. Super. 1985) .............. 17

Graboff v. Colleran Firm, 744 F.3d 128 (3d Cir. 2014) ............................................................ 20

Grayson v. Mayview State Hosp., 293 (3d Cir. 2002); .............................................................. 35

Harris by Harris v. Easton Pub. Co., 483 (Pa. Super. Ct. 1984) ............................................... 23

In re Insurance Brokerage Antitrust Litig., 618  (3d Cir. 2010). .............................................. 31

Isuzu Motors Ltd. v. Consumers Union of U.S., Inc., 12 F. Supp. 2d 1035 (C.D. Cal. 1998) ..... 33

Jakes v. Youngblood, Civil Action 2:24-cv-1608 (W.D. Pa. Apr. 25, 2025) ......................... 6, 34

Kyllo v. United States, 533 (2001 ............................................................................................... 25

Lackner v. Glosser, 892 (Pa. Super. Ct. 2006). ........................................................................ 29

MacElree v. Phila. Newspapers, Inc., 674 (Pa. 1996); ............................................................. 32

McCafferty v. Newsweek Media Group, Ltd., 955 F.3d 352 (3d Cir. 2020); ............................ 17

Menkowitz v. Peerless Publications, Inc., 176 (Pa. Super. Ct. 2017) ....................................... 28

Milkovich v. Lorain Journal Co., (1990). ............................................................................ 10, 17

Mzamane v. Winfrey, 693 (E.D. Pa. 2010). .............................................................................. 18

Pacira Biosciences, Inc. v. Am. Soc'y of Anesthesiologists, Inc., 583 F. Supp. 3d 654, 658
    (D.N.J. 2022) (3d Cir. 2023) ................................................................................................. 10

Peterka v. Setter, 2020 U.S. Dist. LEXIS 260538, (W.D. Pa. Feb. 5, 2020) ............................ 17

Pro Golf Mfg., Inc. v. Tribune Review Newspaper Co., 809 (Pa. 2002) ................................... 32

Reading Radio, Inc. v. Fink, 833 (Pa. Super. Ct. 2003) ........................................................... 29

Rumbaugh v. Beck, 601 (Pa. Super. Ct. 1991); ........................................................................ 29

Salsberg v. Mann, 310 (Pa. 2024); ........................................................................................... 21

Santillo v. Reedel, 430 Pa. Super. 290(Pa. Super. Ct. 1993) .................................................... 20

Shane v. Fauver, 213 (3d Cir. 1999) ......................................................................................... 35

Smith v. Griffiths, 476 (Pa. Super. Ct. 1984). .......................................................................... 32

Thompson Coal Co. v. Pike Coal Co., 488 (Pa. 1979); ....................................................... 29, 30

Time, Inc. v. Hill, 385 U.S. 374 (1967); ................................................................................... 20

Vogel v. W.T. Grant Co., 458 (Pa. 1974) .................................................................................. 23

Wilson v. USI Ins. Serv. LLC, 57 F.4th 131 (3d Cir. 2023) ....................................................... 8

**Statutes**

(Second) of Torts § 652D ......................................................................................................... 23

Pennsylvania's UPEPA ..................................................................................................... 6, 23, 34

**Rules**

F.R.C.P. 12........................................................................ 6, 8, 13, 14, 15, 22, 26, 30, 33, 34, 35
F.R.C.P. 8................................................................................................ 12, 15, 29, 35
Fed. R. Civ. P. 15(a)(2);............................................................................................ 32

Plaintiffs Alexander Rhodes and NoFap LLC, through counsel, respectfully submit the following memorandum in opposition to the motion to dismiss (ECF No. 42) and brief in support (ECF No. 43) filed by Defendant Taylor & Francis. For the reasons set forth below, Defendant Taylor & Francis's motion should be denied.

## 1.    Introduction

Taylor & Francis's motion to dismiss does not meaningfully challenge the legal sufficiency of the pleadings. Instead, it seeks to recast factual disputes as deficiencies at the pleading stage. The motion disregards the First Amended Complaint's central allegation: many of the defamatory statements at issue were derived from purported "data" that Plaintiffs allege is verifiably false, falsified, and fraudulently assembled. Plaintiffs do not allege a disagreement over scientific interpretation. "[T]his is not a case about [']science['] and whose [']science['] is right." FAC ¶ 5.

Plaintiffs allege that Defendant Taylor & Francis published and then refused to retract a fraudulent study which depended on falsified data, a false methodology that could not have occurred as described, undisclosed conflicts, and false factual depictions of Plaintiffs. FAC ¶¶ 254–299. Plaintiffs' FAC alleges that the publication at issue is not a legitimate scientific paper and lacks any legitimate academic purpose or value. FAC ¶ 256.

There is no First Amendment protection for defamatory publications that rest on falsified or fraudulent data merely because they appear in an academic journal. Among other issues, the FAC specifically alleges that the article's purported dataset included material that could not have been gathered through the stated methodology, omitted hundreds of violence-themed control group posts, and excluded qualifying posts by Defendant Prause herself, all in service of a false

portrayal of Plaintiffs as being violent, associated with real-world murders, engaged in criminal conduct, supportive of criminal conduct, akin to a terrorist group, and dangerous. FAC ¶¶ 273–280.

The FAC alleges that Defendants Prause and Ley collaborated with the Pornhub/Aylo Defendants to disseminate defamatory statements through Defendant Taylor & Francis as part of a coordinated effort to suppress and shut down the largest pornography addiction recovery peer-support platform. FAC ¶ 14. Plaintiffs allege that Taylor & Francis knowingly "aided and abetted" the scheme orchestrated by Defendants Prause and Ley, and the Pornhub/Aylo Defendants, "with actual knowledge of the wrongful activities." FAC ¶ 14. The alleged data falsification renders the entire premise of the paper—including its title, abstract, and numerous statements contained therein—false and defamatory. FAC ¶ 284(a). Additionally, Plaintiffs assert that the Taylor & Francis publication contains numerous independent statements that are defamatory. FAC ¶¶ 284-285.

At the Rule 12(b)(6) stage, allegations within the FAC must be accepted as true and all reasonable inferences drawn in Plaintiffs' favor. Once the FAC is read that way, Taylor & Francis's Motion to Dismiss fails. Its arguments depend on resolving factual disputes in Defendants' favor, assuming the truth of the article's methodology and data and statements, and treating allegedly fraudulent factual assertions as if they were protected scholarly opinion. Rule 12(b)(6) permits none of that. Dismissal is therefore unwarranted, and Taylor & Francis's separate request for immunity and fees under Pennsylvania's UPEPA should likewise be denied because that statute's special anti-SLAPP mechanisms do not displace the Federal Rules in this Court. See Jakes v. Youngblood, Civil Action 2:24-cv-1608 (W.D. Pa. Apr. 25, 2025).

## 2.    Factual Background

The FAC alleges that Taylor & Francis published the article "Violence on Reddit Support Forums Unique to r/NoFap" in *Deviant Behavior* on November 15, 2023, crediting Defendants Prause and Ley as co-authors. FAC ¶ 254. The FAC further alleges that the article was published in direct violation of the Rhodes-Prause settlement agreement's non-disparagement provision, which prohibits Prause from disparaging Plaintiffs in any capacity. The non-disparagement agreement was specifically negotiated to protect Plaintiffs from harm caused by Defendant Prause's course of conduct. FAC ¶ 212. The non-disparagement provisions remain in full force and effect even when Defendant Prause critiques scientific claims made by Plaintiffs. FAC ¶ 256; Ex. A at 3–4. For example, if Plaintiff NoFap references a 2014 Cambridge study by Valerie Voon regarding brain sensitization to pornography cues, that does not give Defendant Prause license to respond that NoFap is a designated terrorist group or supports violence. Such statements fall squarely within the category of disparagement she is contractually prohibited from making. The FAC alleges the Taylor and Francis article was utilized to widely defame Plaintiffs, including social media posts by Defendants Ley and Prause (FAC ¶¶ 291, 292), by pornography industry collaborators (FAC ¶ 291), on the frontpage of r/science on Reddit.com (FAC ¶ 296), on podcasts (FAC ¶ 293), and downstream publications that were influenced by or directly cited the Taylor & Francis article (FAC ¶ 348). The article continues to cause ongoing harm, as it is encountered, relied upon, cited by others, and further disseminated both on Taylor & Francis's website and by other Defendants. The FAC asserts that by publishing the article and failing to retract it, Taylor & Francis placed its institutional credibility behind the Porn Industry Defendants' paper, thereby substantially amplifying the damage to Plaintiffs. This amplification foreseeably extended to the dissemination of further disparaging and defamatory statements

targeting Plaintiffs, such as the disparaging NPR article sourced from Defendants Prause and Ley. (FAC ¶¶ 289, 305).

The FAC goes on to allege that Taylor & Francis held itself out as a publisher committed to conflict disclosure, data integrity, and publication ethics; that the article omitted numerous alleged conflicts; that its underlying dataset was extensively falsified; that the article falsely connected Plaintiffs to violence, extremism, terrorism, and criminal conduct; and that Taylor & Francis received detailed notice of those defects but still declined to retract or revise the article. FAC ¶¶ 247–252, 257–289, 294–299.

### 3.      Legal Standard

Plaintiffs have stated claims against Taylor & Francis upon which relief may be granted. On a motion to dismiss under Rule 12(b)(6), the Court must "accept the factual allegations in the complaint as true, draw all reasonable inferences in favor of the plaintiff, and assess whether the complaint and the exhibits attached to it 'contain enough facts to state a claim to relief that is plausible on its face.'" Wilson v. USI Ins. Serv. LLC, 57 F.4th 131, 140 (3d Cir. 2023) (quoting Watters v. Scranton Bd. of Sch. Directors, 975 F.3d 406, 412 (3d Cir. 2020)). "A claim is facially plausible 'when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" Clark v. Coupe, 55 F.4th 167, 178 (3d Cir. 2022) (quoting Mammana v. Fed. Bureau of Prisons, 934 F.3d 368, 372 (3d Cir. 2019)).

That standard is modest by design. Plausibility is not probability. A court may not choose among competing factual narratives, credit a defendant's explanation over the FAC's allegations, or require a plaintiff to prove their case before discovery. Rule 12(b)(6) tests only whether the

pleaded facts, assumed true, plausibly suggest liability. It is not a vehicle for factfinding, evidentiary weighing, or merits determinations dependent on a fuller record.

That point is especially important here. Taylor & Francis repeatedly asks the Court to assume the truth of the article's stated methodology, the legitimacy of its dataset, and the benign character of the publication process. But Plaintiffs plead the opposite: that the data was falsified, that the stated methodology was not actually followed, and that Taylor & Francis maliciously persisted after receiving detailed notice of those defects, knowingly cooperating with the Pornhub/Aylo Defendants, Defendant Prause, and Defendant Ley to sweep academic fraud under the rug. FAC ¶¶ 273–299.

Those allegations readily justify discovery. This case turns on what Taylor & Francis knew, what they reviewed, how the "data" was gathered, what Taylor & Francis learned from Plaintiffs' complaints, and why it nevertheless left the article in place. The Federal Rules do not require Plaintiffs to possess Taylor & Francis's editorial file, peer-review communications, internal deliberations, or correspondence with the authors before proceeding past the pleadings. They require only a plausible claim, and the FAC supplies one.

Accordingly, the Court's task is not to determine whether Taylor & Francis's account is correct. It is to determine whether the well-pleaded allegations, accepted as true, plausibly warrant relief and discovery on a fuller record. They do.

## 4.    Argument

Taylor and Francis's motion to dismiss should be denied. Plaintiffs have pled a plausible claim against Defendant Taylor & Francis.

a)      Plaintiffs have stated valid claims for defamation and false light against Taylor & Francis.

   i.      *The article is actionable because the complaint alleges objectively false statements and fraudulent underlying "data".*

A defamation claim is adequately pleaded where the challenged publication contains statements with sufficient factual content to be "capable of objective proof of truth or falsity." See Pacira Biosciences, Inc. v. Am. Soc'y of Anesthesiologists, Inc., 583 F. Supp. 3d 654, 658 (D.N.J. 2022), aff'd, 63 F.4th 240 (3d Cir. 2023). While statements of opinion are generally nonactionable, there is no blanket *First Amendment* privilege for "anything that might be labeled 'opinion.'" Milkovich v. Lorain Journal Co., 497 U.S. 1 (1990). Statements remain actionable where they imply false underlying objective facts or are otherwise susceptible of being proved true or false. Id. The Third Circuit has likewise emphasized that "[t]he higher the 'fact content' of a statement, the more likely that the statement will be actionable." Pacira, 63 F.4th at 245 n.9. Those principles defeat dismissal here. The FAC does not allege disagreement with an academic interpretation, academic opinion, or methodological disputes. It alleges that the Taylor & Francis article rests on fraudulent "data", false methodological representations, and false factual depictions of Plaintiffs. FAC ¶¶ 257–289. In other words, the FAC details, with specificity, extensive data fraud. That makes this case materially different from *Pacira*. There, the Third Circuit repeatedly stressed that the challenged articles were based on "nonfraudulent data" and methodology. Pacira, 63 F.4th at 246–49. Here, the FAC alleges the opposite.

The Southern District of California's decision in CrossFit, Inc. v. National Strength & Conditioning Ass'n, 2016 U.S. Dist. LEXIS 129170 (S.D. Cal. Sept. 21, 2016), illustrates the point. There, the court held that publication in an academic journal did not insulate a study from liability where a factfinder could conclude the underlying data was fabricated and the publication

10

furthered the defendants' economic interests. That logic fits the allegations here. Plaintiffs plead that the article expressly claimed the data was collected through "R v.4.1.2 library RedditExtractoR" over a defined period, yet the dataset allegedly included non-Reddit material, already-deleted Reddit posts, and other material that could not have possibly been collected through the stated methodology. FAC ¶¶ 275–277. In summary: the stated methodology did not occur, the alleged study was incapable of producing the results it purported, and the entire work was fabricated.

In its motion to dismiss, Taylor & Francis claims that Plaintiffs "do not challenge the authenticity or content of any of the posts in the data set" and misportray Plaintiffs' allegations as "methodological disputes". This is not an accurate portrayal of the FAC. Plaintiffs specifically allege intentional data fraud, detailing the manner in which such fraud was carried out, not methodological disputes. FAC ¶¶ 271–279. Further, Defendant Prause created multiple sockpuppet accounts to post content on NoFap's subreddit. The FAC alleges that multiple policy-violating posts appearing on the NoFap subreddit were likely created by Defendant Prause or individuals acting in concert with her, which Plaintiffs seek to further confirm through discovery. FAC ¶¶ 38, 257(j), 468; FAC n.13. Plaintiffs further allege that Prause excluded two of her own posts that satisfied the article's purported criteria and that, when Plaintiffs applied the authors' own methodology to the designated control subreddits, they identified more than 400 additional violence-themed control-group posts omitted from the published data, including explicit references to homicide. FAC ¶¶ 273–279. Plaintiffs expressly allege that the data falsification was intentional and designed to create a false image of Plaintiffs that furthered Defendants' economic interests. FAC ¶ 278.

11

On these allegations, the article is not insulated as opinion. It is actionable because the FAC alleges the publication conveyed provably false factual assertions and factual implications through fraudulent data masquerading as scholarship.

This case does not concern competing scientific interpretations of non-fraudulent data. It concerns allegations that the underlying data was falsified and that the stated methodology did not occur as represented. Such allegations, accepted as true at this stage, remove the publication from the realm of academic opinion and place it squarely within actionable false statements of fact. Taylor & Francis' position, as stated in their motion to dismiss, would effectively immunize any defamatory statement so long as it is embedded within a publication alleged to be academic, even where the underlying facts are fabricated. The First Amendment does not extend that far.

>   *ii.      The FAC plausibly alleges defamatory statements and defamatory implication.*

The FAC adequately pleads defamatory meaning. False allegations that Plaintiffs are associated with criminality, violence, and terrorism are concrete, reputation-damaging assertions capable of defamatory meaning under Pennsylvania law. Consistent with Rule 8's requirement of a short and plain statement, Plaintiffs categorized the defamatory statements rather than exhaustively listing each instance, despite the Taylor & Francis article containing numerous such statements. To the extent the Court finds particularization helpful, Plaintiffs can readily amend to identify and refute each defamatory statement with further specificity. FAC ¶ 284. However, Plaintiffs respectfully submit that the FAC contains sufficient allegations to proceed to discovery. It alleges the article asserted or conveyed that NoFap is uniquely violent, associated with real-world murders, aligned with extremism or terrorism, designated as an "extremist misogynist group" by an anti-terrorism organization, supportive of violence against the

pornography industry and others, and led by a founder who is a criminal and mentally ill. FAC ¶¶ 284–285. Plaintiffs allege that the Porn Industry Defendants, through the Taylor & Francis publication, sought to recast an innocuous addiction recovery peer support platform as adjacent to misogyny, extremism, violence, murders, death threats, and terrorism, and to portray Plaintiff Rhodes as mentally ill, violent, supportive of violence, and engaged in criminal conduct. See FAC, generally.

Those allegations are sufficient under Pennsylvania law. In its motion to dismiss, Taylor & Francis cherry-picks certain statements alleged to be defamatory to dispute, or disagrees with Plaintiffs' interpretation of statements published in the paper, but those disputes raise factual issues that cannot be resolved at the Rule 12(b)(6) stage and must be addressed through the normal course of litigation. For example, Taylor & Francis disputes that the paper asserts that Plaintiff NoFap is "a recognized terrorist group", instead arguing that a more accurate takeaway is that "NoFap was recently described by the International Centre for Counter-Terrorism as an 'extremist' misogynist group[.]" Plaintiffs maintain that an ordinary reader could reasonably understand the Taylor & Francis publication to convey that NoFap has been recognized as a terrorist or extremist group. However, even if the Court were to accept Taylor & Francis's characterization of the statement published in the publication over Plaintiffs', the statement Taylor & Francis contends is true in their motion to dismiss is false and defamatory too: the International Centre for Counter-Terrorism never described NoFap as an extremist misogynist group. Because the parties advance competing factual contentions, resolution of this issue is not appropriate at the Rule 12(b)(6) stage.

Taylor & Francis asserts that the use of "NoFap Army" is supported by references to "r/NoFapArmy," which it claims was banned by Reddit. Plaintiffs dispute that characterization.

13

The subreddit was never an operational subreddit utilized by Plaintiffs, and its citation does not support the imputation advanced in the article. In context, invoking a purported "ban" alongside allegations of extremism and violence further contributes to a misleading and defamatory implication that NoFap is associated with harmful or dangerous activity. Moreover, even if this particular statement were deemed non-actionable in isolation, that would not render the publication as a whole, or each statement within it, non-actionable.

Taylor & Francis asserts that Plaintiffs object to being labeled as "part of the manosphere" to advance the defamation claim, but fails to recognize that the FAC addresses two distinct concepts: disparagement in breach of the non-disparagement contract and defamatory statements. Statements may be false (i.e., untrue), disparaging (as defined by the non-disparagement agreement), defamatory in the legally actionable sense, or any combination thereof. While Plaintiffs assert that this "manosphere" label is both false and disparaging, Plaintiffs did not necessarily aver that this particular assertion is always independently defamatory outside of the context of the Taylor & Francis publication. Moreover, even if this particular statement were deemed non-actionable in isolation, that would not render the publication as a whole, or each statement within it, non-actionable.

Taylor & Francis contends that the paper does not state that NoFap is "[h]ostile to [m]inorities" and further argues that even if it did, such a statement would not be legally actionable. Plaintiffs dispute that characterization. The paper, read in context, portrays NoFap as hostile to minorities and associates it with extremism, violence, and dangerous conduct. This goes well beyond a mere accusation of racism and instead conveys a broader, defamatory imputation that NoFap is a harmful and dangerous organization. At a minimum, this creates a factual dispute not suitable for resolution at the Rule 12(b)(6) stage. Moreover, even if this

14

particular statement were deemed non-actionable in isolation, that would not render the publication as a whole, or each statement within it, non-actionable.

Taylor & Francis asserts that "Plaintiffs object to statements in the Article noting that some NoFap followers have perpetrated violent acts […] but they do not challenge the truth of the specific examples the Article provides." To be clear, the FAC expressly challenges this assertion. FAC ¶¶ 284(e), 439. This presents a disputed question of fact not suitable for resolution at the Rule 12(b)(6) stage. In the context of the Taylor & Francis publication, the imputation that NoFap is associated with or fosters violence is clear. On multiple occasions in their motion to dismiss, Taylor & Francis asserts that Plaintiffs do not challenge the citations in the paper, but Plaintiffs did. "The Taylor & Francis Paper cites sources that fail to support the propositions attributed to them." FAC ¶ 283(d). Consistent with Rule 8, Plaintiffs did not exhaustively list each such instance.

To reiterate, the FAC categorized the overarching defamatory themes reflected throughout the publication, and many of the false and defamatory statements contained in the underlying paper were not addressed by Taylor & Francis. "The Taylor & Francis Paper contained numerous false, defamatory, and disparaging statements concerning Plaintiffs. These included, **but are not limited to**" FAC ¶ 284 (emphasis supplied). As stated above, Plaintiffs can further particularize these allegations and exhaustively identify each defamatory statement if the Court so requires, but respectfully submit that the FAC contains more than sufficient allegations to proceed at this stage. Even if the Court were to conclude that any particular statement is not independently actionable, that would not warrant dismissal of the FAC as a whole, given the FAC's allegations of numerous other false and defamatory statements and imputations.

15

Taylor & Francis appears to acknowledge that the publication conveys the takeaway implication that Plaintiff Rhodes personally engaged in criminal conduct, supports criminal conduct, has a serious mental illness, and attempts to justify those implications through disputed explanations. Plaintiffs expressly deny that Rhodes has ever fled from police, been arrested, charged, or convicted of any crime, vandalized a bathroom with human excrement, seriously discussed disposing of dead bodies in the manner described in the article, or has bipolar disorder. If any of these statements were true, Plaintiffs would not include them in the defamation claim. However, they are not true. The context in which the alleged statements are included, such as Plaintiffs supporting criminality and being adjacent to terrorism, adds to their defamatory meaning.

The publication's assertion that Rhodes is the founder and leader of a group characterized as violent or extremist—based on falsified data—further defames him in his personal capacity. The article states that the purportedly disproportionate number of allegedly violent posts "may reflect an ideology specific to the founder[] and/or moderators of NoFap", and suggests the removal of Plaintiff Rhodes from leadership. It further asserts that "[i]nterventions to assist young men influenced by violent extremism in NoFap ideology are already underway (Frounfelker et al. 2023). [Plaintiffs allege that the cited source does not support the proposition for which it is offered.] The public and clinicians can confidently discourage young men from seeking support for their sexual concerns from NoFap."

Finally, the Taylor & Francis article also includes "NoFap leadership appears to promote violence and criminality in NoFap forums." These statements, which the FAC disputes, convey the clear implication that Rhodes promotes or is associated with violence, criminality, and extremism. Plaintiffs' FAC makes it clear that they do not support terrorism, do not support

16

violence, and do not support policy-breaching content being posted on their platforms. The FAC also alleges that quitting or reducing a behavioral addiction, such as problematic pornography use, is not legitimately controversial and is not associated with criminality, hate groups, terrorism, or violence, and that such characterizations are smears utilized by the Porn Industry Defendants to disparage recovery resources. See FAC, generally. At a minimum, whether these statements published by Taylor & Francis are false and defamatory presents a question not suitable for resolution at the pleadings stage.

Even if some statements are framed in evaluative language, they remain actionable where they imply false underlying facts. See McCafferty v. Newsweek Media Group, Ltd., 955 F.3d 352, 357–59 (3d Cir. 2020); Milkovich. Moreover, courts applying Pennsylvania law have recognized that where there is doubt as to defamatory character, the issue belongs to the jury, not to the court on a motion to dismiss. See Peterka v. Setter, 2020 U.S. Dist. LEXIS 260538, at *11–13 (W.D. Pa. Feb. 5, 2020) (relying on Gordon v. Lancaster Osteopathic Hosp. Ass'n, Inc., 489 A.2d 1364, 1368 (Pa. Super. 1985) and holding that if the court has any doubt whether a communication is defamatory, the issue must be given to the jury).

That rule should be applied forcefully here. Taylor & Francis seeks a ruling that statements branding Plaintiffs as uniquely violent, terror-adjacent, criminal, misogynistic, and mentally ill are nondefamatory as a matter of law, notwithstanding the FAC's detailed allegations that those characterizations were manufactured through falsified data and false factual premises. Peterka confirms that Pennsylvania law does not permit a defendant to obtain dismissal by repackaging a sharply disputed defamatory publication as benign commentary whenever defamatory meaning is at least reasonably contestable. If anything, this case presents a far stronger basis to deny dismissal than Peterka, because the FAC alleges not only

17

reputationally devastating implications, but that the underlying dataset itself was fraudulent. Under Peterka, Taylor & Francis's effort to strip the publication of defamatory meaning as a matter of law should be rejected.

> iii.     Plaintiffs plead that Rhodes is not a public figure; even if he were, the FAC plausibly pleads actual malice

Taylor & Francis argues that actual malice is not plausibly alleged. But Plaintiffs' position that Plaintiff Rhodes is not a public figure, and thus Defendant Taylor & Francis's effort to impose a public-figure pleading burden is misplaced. FAC ¶¶ 1, 418, 456, 457, 458. To the extent that Defendant Taylor & Francis asserts that the article is about a matter of public concern, Plaintiffs aver that falsely associating an innocuous pornography addiction recovery support group with criminality, terrorism, extremism, and violence falls far outside the bounds of legitimate debate regarding the potential effects of pornography. FAC ¶ 25. Even so, the argument fails either way. Even if the Court were to conclude that Plaintiff Rhodes must ultimately satisfy the actual-malice standard, the FAC explicitly pleads it. FAC ¶ 288.

Actual malice may be pleaded and proven circumstantially. See Mzamane v. Winfrey, 693 F. Supp. 2d 442 (E.D. Pa. 2010). Here, the FAC alleges at least three independent bases from which reckless disregard or knowledge of falsity may reasonably be inferred.

First, Plaintiffs allege pre-publication red flags that should have prompted scrutiny, including inflammatory framing, a narrow focus on a single identified target, and conflicts and prior disputes that were readily ascertainable from public sources. FAC ¶¶ 286–287. Second, Plaintiffs allege that the article itself contained obvious signs of unreliability severe enough to support an inference of bad faith, including data that could not have been collected under the stated method, exclusion of contrary control-group material, and selective omission of qualifying

18

posts by Defendant Prause herself. FAC ¶¶ 276–281, 288. The FAC does not rely on conclusory allegations of malice. It pleads specific facts supporting a plausible inference of reckless disregard. These are not subtle or technical disputes; they are defects so apparent that publication despite them supports a reasonable inference that Taylor & Francis acted with reckless disregard for the truth. (FAC ¶ 495). In other words: it was alleged in the FAC that Taylor & Francis ignored obvious falsity.

Third, Plaintiffs allege detailed post-publication notice. They contacted Taylor & Francis, the journal's editors, and the journal's editorial board; supplied detailed explanations and a spreadsheet identifying more than 400 omitted control group posts; continued to provide additional information through December and January; and were ultimately told that Taylor & Francis would not retract or revise the article. FAC ¶¶ 294–299. That alleged refusal to correct after receipt of detailed notice is itself powerful circumstantial evidence that, even if actual malice were required, discovery could further substantiate it. Post-publication failure to retract is highly probative where, as here, Plaintiffs allege that Taylor & Francis received detailed, specific, and substantiated notice of falsity and nonetheless chose to maintain the publication without correction. At minimum, these allegations reinforce the plausibility of reckless disregard and warrant discovery into Taylor & Francis's knowledge and decision-making process.

Accordingly, Taylor & Francis's motion fails regardless of the public-figure issue. Plaintiffs plead that Rhodes is not a public figure. But even if the Court were to consider otherwise, the FAC plausibly alleges actual malice, and Plaintiffs are entitled to discovery on what Taylor & Francis knew, when it knew it, what it reviewed, and why it left the defamatory article in place. Even assuming arguendo that Plaintiff Rhodes is a limited-purpose public figure with respect to debates concerning pornography use, that status would not immunize false

19

statements portraying him as violent, a criminal, terrorist-adjacent, dangerous, or mentally ill based on fabricated or knowingly unreliable data. The actual-malice standard does not protect the publication of statements premised on facts the publisher had reason to doubt or that were alleged to be impossible as described. Plaintiffs' allegations go far beyond disagreement with interpretation and instead concern the publication and continued maintenance of statements grounded in purported data that, as alleged, could not have been generated through the stated methodology. That is sufficient to plausibly plead reckless disregard.

> iv)     *The false-light claim rises or falls with the same adequately pleaded falsity and actual-malice allegations*

Taylor & Francis separately disputes false light, but Pennsylvania law treats that claim as closely related to defamation where a publication places the plaintiff before the public in a false light that would be highly offensive to a reasonable person. See Santillo v. Reedel, 430 Pa. Super. 290, 634 A.2d 264, 266 (Pa. Super. Ct. 1993); Graboff v. Colleran Firm, 744 F.3d 128, 136–37 (3d Cir. 2014). If the publication concerns a matter of public concern, the same actual-malice principles likewise apply. See Time, Inc. v. Hill, 385 U.S. 374, 387–88 (1967); Graboff, 744 F.3d at 136–37. Plaintiffs allege that the article falsely portrayed them as uniquely violent, extremist, criminally dangerous, and associated with homicidal conduct through fraudulent data and false factual premises. FAC ¶¶ 284–285. Those allegations readily satisfy the pleading standard for false light, and for the same reasons the defamation claim survives, the false-light claim survives as well.

b)      The tortious-interference claim is plausibly pleaded and cannot be dismissed by resolving factual disputes against Plaintiffs

Taylor & Francis argues that the tortious-interference claim is duplicative and inadequately pleads knowledge of the Rhodes-Prause agreement. That argument again depends on drawing inferences in Defendant's favor rather than Plaintiffs'. The FAC alleges the existence of the non-disparagement agreement, that the article was published in direct violation of it, that the prior disputes between Plaintiffs and the authors were readily ascertainable, and that Taylor & Francis had both pre-publication reason to investigate and post-publication notice connecting the publication to the contractual prohibition on disparaging statements. FAC ¶¶ 256, 286–287, 294–299. Taylor & Francis's argument that Defendant Prause breached the contractual agreement prior to and after publication does not defeat the claim at the pleading stage. Plaintiffs do not allege only a single, discrete historical breach that Taylor & Francis participated in. Rather, the FAC alleges that Taylor & Francis knowingly participated in, ratified, and materially advanced ongoing interference by publishing the article and, critically, by maintaining and refusing to retract it after receiving detailed notice of the contractual prohibition on disparagement. Taylor & Francis was informed that Defendants Prause and Ley were continuing to utilize the publication in a manner causing ongoing harm, and had the opportunity to mitigate that harm, but repeatedly declined to do so. FAC ¶¶ 295-298. Under Pennsylvania law, liability extends to parties who knowingly participate in or substantially assist continuing interference with contractual relations and prospective economic relationships, including by amplifying and perpetuating the breach. At a minimum, whether Taylor & Francis's conduct constitutes such participation presents a factual question not suitable for resolution under Rule 12(b)(6).

That is enough to plausibly plead intentional interference with a known contractual relation under Pennsylvania law. See Salsberg v. Mann, 310 A.3d 104 (Pa. 2024); Adler, Barish,

Daniels, Levin & Creskoff v. Epstein, 482 Pa. 416, 393 A.2d 1175 (Pa. 1978); Acumed LLC v. Advanced Surgical Servs., Inc., 561 F.3d 199, 212–14 (3d Cir. 2009). Taylor & Francis's contrary position again depends on factual assumptions in its favor—namely, that it lacked knowledge, lacked intent, and played no meaningful role once the article was published. But the FAC alleges the opposite. It alleges publication in direct violation of the agreement, readily ascertainable prior disputes, the readily ascertainable existence of a contract, and post-publication notice followed by a decision to leave the article in place. FAC ¶¶ 256, 286–287, 294–299.

Those allegations are more than sufficient to foreclose dismissal. Whether Taylor & Francis knew enough before publication, when precisely it learned of the agreement, what it understood about the article's relationship to the agreement, and whether its refusal to retract or revise intentionally prolonged or deepened the interference are not pleading questions; they are discovery questions. Rule 12(b)(6) does not permit the Court to answer them on an undeveloped record.

     c)       The publicity-given-to-private-life claim is recognized under Pennsylvania law and should not be dismissed before factual development.

Taylor & Francis claims the FAC "contains no allegations that the Article conveyed any private facts about Rhodes." That is incorrect. The FAC specifically alleges the disclosure of private facts at FAC ¶ 509-514. Plaintiffs' FAC asserts that Defendants' Taylor & Francis publication gives rise to both defamation and public disclosure of private facts. To the extent the article asserts or implies false statements—including crimes (vandalism with human excrement and resisting arrest) and attributing a serious mental health diagnosis to Plaintiff Rhodes that he does not have (bipolar disorder)—it is defamatory. These assertions are not related to any

legitimate public issue or academic debate; they are purely sensational and prurient. To the extent it relies on purported private materials, including leaked communications and alleged deleted, pseudonymous content obtained through web scraping, it constitutes a highly offensive disclosure of private facts not of legitimate public concern. Even where Taylor & Francis relies on materials they claim are "public", which Plaintiffs dispute, their selective, decontextualized, and distorted presentation creates a misleading portrayal that is actionable under both theories. Taylor & Francis may argue that Plaintiffs cannot simultaneously contend that statements are both defamatory and based on private facts. That is incorrect. The claims are pled in the alternative and address distinct harms. To the extent the publication asserts false statements— such as allegations of criminal conduct or mental illness—it is defamatory. To the extent it relies on and publicizes purported underlying materials, including alleged private, anonymous, pseudonymous, or non-public communications obtained through intrusive means, it constitutes publicity given to private life. The same publication may give rise to both claims where it both falsely portrays the plaintiff and improperly discloses or exploits private information. At this stage, Plaintiffs are entitled to proceed on both theories.

Pennsylvania recognizes a claim for publicity given to private life under Restatement (Second) of Torts § 652D. See Vogel v. W.T. Grant Co., 458 Pa. 124, 327 A.2d 133 (Pa. 1974); Harris by Harris v. Easton Pub. Co., 483 A.2d 1377, 335 Pa. Super. 141 (Pa. Super. Ct. 1984); Doe v. Township of Robinson, 637 A.2d 764, 161 Pa. Commw. 604 (Pa. Commw. Ct. 1994). The claim turns on whether publicity was given to matters concerning another's private life in a manner that would be highly offensive to a reasonable person and not of legitimate public concern.

23

That framework makes dismissal inappropriate here. The FAC alleges that the publication disclosed highly sensitive personal assertions concerning Rhodes, derived from extensive surveillance (FAC ¶¶ 21, 520), the use of a private investigator (FAC ¶ 39), leaked private data (FAC ¶ 277), and data scraping (FAC ¶¶ 21, 344), including allegations relating to mental health and other intensely personal subjects. FAC ¶ 285. The FAC also alleges that Defendant Prause has utilized hacked data to conduct opposition research (FAC ¶ 344), and that associates of the Pornhub/Aylo Defendants have allegedly engaged in hacking and "publicly disseminating hacked and data-mined data" (FAC ¶ 21). Taylor & Francis claim "[t]he Article relied entirely on publicly available sources, including social media posts created by Rhodes himself" and "did not contain […] any other arguably private information." Plaintiffs dispute these assertions. Taylor & Francis relies on alleged unearthed previously-deleted online posts—obtained via sophisticated web scraping conducted by pornography industry associates—and mischaracterizes this opposition research conducted by pornography industry associates as publicly available information. The Porn Industry Defendants conducted large-scale data scraping of statements they attribute to Plaintiff Rhodes—whether made under his name, pseudonymously, anonymously, or posted by other people and misattributed to him, including in informal contexts such as online profiles and comment sections—and presented them as verified, literal fact, without regard for context, exaggeration, humor, fictional content, or the non-literal nature of such alleged statements. There was a reasonable expectation of privacy in information at issue. The intrusive methods used to obtain defamation fodder that was not readily accessible, but was then widely disseminated by Taylor & Francis, further increase the offensiveness of the publication.

24

Material obtained through such methods is not equivalent to readily accessible public content, and these sources are neither authenticated nor verified. The article selectively cites and repurposes materials attributed to Plaintiff Rhodes, presenting them in a manner that creates an inaccurate and harmful portrayal. This constitutes a highly offensive and misleading disclosure of private facts. Plaintiffs raise questions regarding Taylor & Francis's assertions to the authenticity, attribution, context, and characterization of these materials, as well as the propriety of treating them as factual. The fact that material may be technically obtainable through sophisticated web-scraping technologies does not render it immune to a publicity given to private life claim. The fact that information can be technically obtained does not eliminate a reasonable expectation of privacy, particularly where it is not readily accessible and is obtained through intrusive or non-routine means. See Kyllo v. United States, 533 U.S. 27, 34 (2001). Similarly, content obtained through targeted web scraping, perusing hacked or leaked data, or similar surveillance methods does not necessarily transform it into reliable or genuinely public information. Likewise, the Taylor & Francis article relies on leaked messages from 2015, in which Plaintiff Rhodes allegedly privately communicated with Reddit administration regarding a problematic user, and incorporates those materials into the paper. FAC ¶ 277.

Even where content is argued to be "public," courts recognize that context, accessibility, and method of acquisition matter. Information that is obscure, deleted, pseudonymous, anonymous, or obtained through aggregation, scraping, hacking, or reconstruction is not equivalent to readily accessible public facts. The FAC alleges that Defendants engaged in precisely this type of conduct—extracting, reconstructing, and republishing material in a manner that created a highly offensive and misleading portrayal of Plaintiff Rhodes. Whether such

25

material qualifies as "public" for purposes of a privacy claim is a fact-intensive inquiry not suitable for resolution at the pleading stage.

The FAC alleges that the Defendants disclosed purported private communications and materials not of legitimate public concern, obtained through improper means, in a manner that would be highly offensive to a reasonable person. Even if Taylor & Francis contends that certain statements are alleged to be true, liability may still attach where the publication discloses previously non-public, private communications in a manner that is highly offensive and not of legitimate public concern. The FAC alleges that the Defendants relied on non-public communications, rather than information voluntarily exposed to the public. The fact that such material may have been obtained through leaks or data scraping means does not render it public for purposes of the tort, particularly where it was not readily accessible to ordinary users and was repurposed in a misleading and harmful context. Whether the challenged material was in fact private, whether it had already entered the public domain, whether the publicity would be highly offensive to a reasonable person, and whether the matter was of legitimate public concern all depend on the actual content of the publication, the underlying sources, the extent of any prior disclosure, and the context in which Taylor & Francis disseminated the alleged information. Those are paradigmatically fact-sensitive issues.

Taylor & Francis's contrary argument assumes away those questions by adopting its own characterization of the publication and the underlying facts. But the Court cannot resolve privacy status, offensiveness, and public-concern issues on Defendant's say-so at Rule 12(b)(6). At this stage, Plaintiffs have plausibly alleged the claim, and discovery is necessary to determine what information Taylor & Francis published, what it knew about the status of that information, and how the publication gave publicity to Rhodes' private life.

d)      The Intentional Infliction of Emotional Distress ("IIED") and Negligence claims are plausibly pleaded, and any narrowing should await a factual record.

Taylor & Francis contends that the IIED claim is duplicative of defamation and that the negligence claim fails for lack of duty. Those arguments may ultimately be renewed later, but they do not justify dismissal now because both claims depend on factual questions not yet developed.

As pleaded, this case involves more than a single isolated publication. Plaintiffs allege a course of conduct consisting of publication of an article allegedly grounded in falsified data, failure to correct or retract after repeated notice, and continued use of Taylor & Francis's institutional credibility to amplify portrayals of Plaintiffs as violent and dangerous. FAC ¶ 289. Plaintiffs allege that Taylor & Francis's conduct was extreme and outrageous (FAC ¶ 525) and provide detailed allegations supporting that claim (FAC ¶¶ 247-300), while Taylor & Francis minimizes its conduct and conclusorily asserts that it was not; this presents a factual dispute not suitable for resolution on a motion to dismiss. Whether that conduct is sufficiently outrageous for IIED, whether it is wholly coextensive with defamation, and what harm it caused are matters better addressed on a fuller record.

Taylor & Francis also claims that "Rhodes does not allege that Taylor & Francis's conduct caused him any physical harm", citing FAC ¶ 529. FAC ¶ 529 alleges that Plaintiff Rhodes has suffered "severe emotional pain and suffering, humiliation, anxiety, depression, reputational harm, **and other damages** […] substantial economic losses, loss of opportunities, **and other injuries**" from Taylor & Francis's conduct [emphasis added]. These allegations encompass and do not exclude physical harm. Plaintiffs further allege that Defendant Taylor & Francis's conduct caused severe emotional distress accompanied by physical manifestations, including stress-related physiological effects. At the pleading stage, such allegations are

27

sufficient, and Plaintiffs can further particularize these injuries if required by the Court. To the extent the Court seeks additional specificity, Plaintiffs can further particularize those allegations through amendment.

The negligence claim likewise should proceed. Pennsylvania authority recognizes, at minimum in the defamation context, that a publisher's failure to use reasonable care to ascertain the truth before publication may be actionable. See American Future Systems, Inc. v. Better Business Bureau, 923 A.2d 389, 592 Pa. 66 (Pa. 2007); Constantakis v. Bryan Advisory Servs., LLC, 275 A.3d 998 (Pa. Super. Ct. 2022); Menkowitz v. Peerless Publications, Inc., 176 A.3d 968 (Pa. Super. Ct. 2017). Plaintiffs do not ask the Court at this stage to definitively resolve the outer boundaries of a standalone negligence tort against a publisher. They allege that Taylor & Francis held itself out as adhering to publication-integrity standards regarding conflicts, data falsification, and ethical review, then failed to exercise reasonable care in connection with a publication it presented as credible scholarship. FAC ¶¶ 247–252.

At a minimum, those allegations underscore the plausibility of negligent editorial conduct and weigh strongly against dismissal with prejudice before discovery. Whether Taylor & Francis's representations, relationships, and conduct are sufficient to establish a duty, and whether it breached that duty, are not questions that should be conclusively resolved before discovery into its editorial practices, internal review, source and data verification, and post-publication response. If the Court is ultimately inclined to narrow the negligence theory, it should do so only after a fuller factual record or, at most, without prejudice at this stage. However, Plaintiffs aver that the FAC already contains sufficient allegations to support the negligence claim, and that this matter should proceed to discovery for further development of the record.

e)      The conspiracy claim is plausibly pleaded and depends on discovery into coordinated conduct.

Under Pennsylvania law, a civil conspiracy requires proof that "two or more persons combined or agreed with intent to do an unlawful act or to do an otherwise lawful act by unlawful means," together with an overt act done in pursuance of the common purpose and actual legal damage. Thompson Coal Co. v. Pike Coal Co., 488 Pa. 198, 412 A.2d 466 (Pa. 1979); see also Lackner v. Glosser, 892 A.2d 21 (Pa. Super. Ct. 2006). Proof of malice is required, but that element, like agreement itself, may be inferred from the surrounding conduct and circumstances rather than admitted directly. See Rumbaugh v. Beck, 601 A.2d 319 (Pa. Super. Ct. 1991); Reading Radio, Inc. v. Fink, 833 A.2d 199 (Pa. Super. Ct. 2003).

Taylor & Francis argues that the conspiracy claim fails absent an independently viable tort and absent allegations that it acted solely to injure Plaintiffs. But the FAC plausibly alleges underlying torts, including defamation and false light. The FAC further asserts that Taylor & Francis deviated from its stated policies by sharing Plaintiffs' communications with Defendants Prause and Ley (FAC ¶¶ 300(a)-300(c), 300(e)); collaborating with those Defendants to sweep the academic fraud under the rug (FAC ¶¶ 50, 534); and failing to enforce its own policies regarding data falsification and the disclosure of potential conflicts of interest (FAC ¶¶ 249-252, 257-289). It also plausibly alleges coordinated conduct among Prause, Ley, Pornhub/Aylo actors, and Taylor & Francis in the article's development, publication, and amplification. FAC ¶¶ 261, 268–270, 290–300.

Evidence of wrongdoing by Taylor & Francis, including coordination with the other Defendants, abounds and is set forth in the FAC, though certain information has been withheld at this stage pending discovery. Rule 8 requires only a short and plain statement of the claim showing that Plaintiffs are entitled to relief, not the pleading of all evidence. At the pleading

stage, those allegations are sufficient. Plaintiffs seek discovery to determine why a large and respected scientific publisher permitted the publication of an article that contains falsified data and defamatory content. Specifically, discovery is necessary to uncover why Taylor & Francis bypassed standard conflict-of-interest disclosures and maintained the publication despite ample notice of misconduct—issues of intent and internal process that cannot be resolved prior to a full evidentiary record. Taylor & Francis's response again asks the Court to discount the FAC's allegations and accept innocent explanations before any discovery into communications among the authors, contributors (including the Pornhub/Aylo Defendants), peer reviewer, editors, publisher, and affiliated actors, such as Free Speech Coalition. But the existence, scope, purpose, and timing of coordinated action are quintessential discovery issues. Plaintiffs are not required at Rule 12(b)(6) to produce the internal communications, editorial exchanges, or third-party coordination evidence that discovery is designed to obtain. They need only plausibly allege concerted action and unlawful objective or unlawful means. Under Thompson Coal and its progeny, they have done so.

f)    Taylor & Francis has not shown entitlement to dismissal of the RICO, trademark dilution, or trade disparagement with prejudice at the pleading stage.

Taylor & Francis notes that Plaintiffs' counsel previously indicated Plaintiffs would not pursue certain claims against this defendant. Specifically, after a meaningful meet and confer as ordered by this Court, Plaintiffs agreed to stipulate for the dismissal of several causes of action against Taylor & Francis without prejudice: Count I (RICO), Count III (Trademark Dilution), and Count V (Trade Disparagement). But that is not a substitute for Rule 12(b)(6) analysis, and it does not entitle Taylor & Francis to dismissal with prejudice on the merits for these causes of action. Plaintiffs consent to dismissal without prejudice of Counts I, III, and V.

30

As to RICO, Taylor & Francis's argument depends on merits determinations about enterprise participation, common purpose, pattern, and injury that are not suitable for resolution on the pleadings. A civil RICO claim requires a plausible allegation of an enterprise, a defendant's participation in the conduct of that enterprise's affairs, and a pattern of racketeering activity causing injury. See In re Insurance Brokerage Antitrust Litig., 618 F.3d 300 (3d Cir. 2010). Plaintiffs allege that the Pornhub/Aylo Defendants operated a criminal enterprise to monetize child sexual abuse material and sex trafficking, and have targeted critics, whistleblowers, sexual exploitation survivors, and dozens of others through coordinated efforts with Defendants Prause, Ley, and others. FAC ¶¶ 1-8, 16-32, 419-425. Plaintiffs do not allege that Defendant Taylor & Francis engaged in sex trafficking or the distribution of child sexual abuse material. However, not every participant in an unlawful enterprise directly carries out its core acts; participants may include those who facilitate, enable, or otherwise further the enterprise's objectives in different ways. Plaintiffs allege a broad coordinated scheme among Pornhub/Aylo actors, Prause, Ley, Free Speech Coalition, and others to discredit targets of the legacy pornography industry, including critics of the enterprise's sexually exploitative practices, and they specifically plead Taylor & Francis's alleged role in publishing and then maintaining an article that Plaintiffs contend was built on falsified data and used as part of a larger campaign to retaliate against Plaintiffs, a target of the Pornhub/Aylo Defendants. FAC ¶¶ 14, 50–54, 261, 268–289, 294–300. Notably, the Taylor & Francis article itself includes statements targeting Laila Mickelwait, a sexual exploitation whistleblower, and the #Traffickinghub campaign by linking them to threats and violence, while explicitly defending the Pornhub/Aylo Defendants. FAC ¶¶ 7, 290. Whether those allegations can ultimately be marshaled into a provable RICO theory is a question for a fuller record. At this stage, Taylor & Francis is essentially asking the Court to decide, without

31

discovery, the nature of the actors' relationships, the scope of any coordinated enterprise, and the function of the publication in the alleged larger scheme. That request is premature. As per the Parties' meet-and-confer, Plaintiffs respectfully request that the Court dismiss the RICO claim as to Taylor & Francis without prejudice. Although Plaintiffs have stipulated to dismiss this cause of action against Taylor & Francis, Taylor & Francis nevertheless moves to dismiss the trade disparagement claim with prejudice.

A federal court must accept the complaint's well-pleaded allegations as true and may dismiss with prejudice only where amendment would be futile; thus, if any deficiency in the trade disparagement count concerns factual specificity as to falsity, malice, or pecuniary loss, the proper remedy is leave to amend rather than a prejudicial dismissal. See Fed. R. Civ. P. 15(a)(2); MacElree v. Phila. Newspapers, Inc., 674 A.2d 1050 (Pa. 1996); Smith v. Griffiths, 476 A.2d 22 (Pa. Super. Ct. 1984). Nor should the claim be dismissed with prejudice on limitations grounds unless untimeliness is clear on the face of the complaint and no tolling or accrual issue is plausibly available. Under Pennsylvania law, trade-disparagement limitations questions are nuanced, and Pro Golf Mfg., Inc. v. Tribune Review Newspaper Co., 809 A.2d 243 (Pa. 2002) does not support prejudicial dismissal unless the claim is plainly time-barred as a matter of law. See also Burger v. Blair Med. Assocs., Inc., 964 A.2d 374 (Pa. 2009); Fine v. Checcio, 870 A.2d 850 (Pa. 2005). Accordingly, because amendment could cure any pleading defect and the claim is not clearly untimely on the pleadings, dismissal with prejudice is unwarranted. As per the Parties' meet-and-confer, Plaintiffs respectfully request that the Court dismiss the trade disparagement claim as to Taylor & Francis without prejudice.

The same is true of trademark dilution. Taylor & Francis insists the article's use of the NoFap mark is exempt as descriptive fair use or noncommercial use. But whether the use is

properly characterized that way cannot be resolved in the abstract simply by labeling the article "scholarship." Plaintiffs allege that the publication served a targeted campaign to suppress and damage the NoFap brand, that the article used the mark in connection with false and disparaging statements, and that the publication furthered economic interests adverse to Plaintiffs. FAC ¶¶ 50–54, 257, 284(f), 285. Whether the challenged use was truly noncommercial, whether it functioned merely descriptively, and whether any statutory exemption applies should not be decided on a bare Rule 12(b)(6) record where the FAC alleges a coordinated commercial and reputational attack rather than detached commentary.

Accordingly, even if the Court is ultimately skeptical of the RICO, trade disparagement, or dilution counts as applied to Taylor & Francis, it should not foreclose those theories with prejudice before discovery clarifies the relationships among the actors, the economic interests at stake, the purpose and use of the publication, and the role Taylor & Francis allegedly played in the broader scheme. As per the Parties' meet-and-confer, Plaintiffs respectfully request that the Court dismiss the trademark dilution claim as to Taylor & Francis without prejudice.

g) The declaratory-judgment claim should proceed as a separate and forward-looking form of relief.

Taylor & Francis argues that declaratory relief is duplicative. But declaratory judgment is properly available where it serves a forward-looking purpose distinct from damages, including clarifying rights and legal relations concerning the challenged publication, its continued availability, and related conduct. See Isuzu Motors Ltd. v. Consumers Union of U.S., Inc., 12 F. Supp. 2d 1035, 1049 (C.D. Cal. 1998) (addressing declaratory relief sought against a publishing defendant in a publication dispute); Dow Jones & Co., Inc. v. Harrods, Ltd., 237 F. Supp. 2d 394 (S.D.N.Y. 2002) (publisher sought declaratory relief in connection with alleged defamation controversy).

33

Here, Plaintiffs seek more than backward-looking damages. The FAC places in issue the continuing presence and legal status of the challenged publication and the parties' rights and obligations with respect to it. In that setting, declaratory relief is not merely redundant. It may clarify the legal relations surrounding the publication and provide prospective relief distinct from money damages. Whether the claim ultimately overlaps with other remedies is better assessed after the factual and legal contours of the case are more fully developed. It should not be dismissed now on a bare assertion of duplication.

> h)      UPEPA does not provide a basis for dismissal, immunity, or fees, and Taylor & Francis's argument improperly seeks an early merits ruling outside the Federal Rules.

Taylor & Francis invokes Pennsylvania's Uniform Public Expression Protection Act. That request fails for at least two independent reasons.

First, Jakes v. Youngblood, Civil Action 2:24-cv-1608 (W.D. Pa. Apr. 25, 2025) holds that UPEPA's special-motion procedure in § 8340.16 is not yet effective[1] and that § 8340.15's anti-SLAPP dismissal mechanism does not apply in federal court because it conflicts with Rules 12 and 56. That reasoning directly answers Taylor & Francis's request here.

Second, Taylor & Francis's UPEPA argument is, in substance, another attempt to obtain an early merits determination by contesting Plaintiffs' factual allegations and demanding further evidentiary proof before discovery. That is precisely what the Federal Rules do not permit on a Rule 12(b)(6) motion. Even apart from Jakes, the FAC alleges detailed, nonconclusory facts

---

[1] The UPEPA explicitly states that it will not become effective until the Supreme Court of Pennsylvania promulgates Rules of Civil Procedure addressing the same. As of this memorandum's date, the Supreme Court has proposed Rules addressing UPEPA—for which public comments are due April 22, 2026. See Civil Procedural Rules Committee, https://www.pacourts.us/courts/supreme-court/committees/rules-committees/civil-procedural-rules-committee/ (accessed April 13, 2026).

supporting each core claim. This is not the sort of bare retaliatory pleading that could justify extraordinary early dismissal or fees.

**5.      Leave to Amend**

If the Court is inclined toward concluding that any portion of the FAC is deficient, Plaintiffs respectfully request leave to amend rather than dismissal with prejudice. In accordance with Rule 8's requirement of a short and plain statement, Plaintiffs have substantially streamlined a far more extensive factual record into the FAC and can further particularize their allegations through amendment if directed by the Court. The Third Circuit has made clear that if a complaint is vulnerable to dismissal under Rule 12(b)(6), the district court must permit a curative amendment unless amendment would be inequitable or futile. See Grayson v. Mayview State Hosp., 293 F.3d 103, 108 (3d Cir. 2002); Shane v. Fauver, 213 F.3d 113, 116 (3d Cir. 1999). That principle applies with full force here, where the case remains at the pleading stage and any perceived deficiency could be cured through more specific factual allegations or narrower pleading following the Court's guidance. At minimum, no claim should be dismissed with prejudice without affording Plaintiffs an opportunity to replead.

**6.      Conclusion**

For the foregoing reasons, Plaintiffs respectfully submit that Taylor & Francis's motion to dismiss should be denied in its entirety. Rule 12(b)(6) does not permit Taylor & Francis to convert factual disputes into pleading deficiencies or to foreclose discovery into the pre- and post-publication communications between the Defendants, editorial review, internal communications, data provenance, conflict disclosures, post-publication deliberations, and other materials that are central to Plaintiffs' claims. Pursuant to the Parties' meet-and-confer, Plaintiffs

further respectfully request that Count I (RICO), Count III (Trademark Dilution), and Count V (Trade Disparagement) be dismissed as to Defendant Taylor & Francis without prejudice.

A proposed form of order is attached.

Respectfully submitted,


_____/s/ David M. Kobylinski_____
David M. Kobylinski, Esq.
PA ID No.: 92233
304 Ross Street, Suite 510
Pittsburgh, PA 15219
dave@koby.law
412-281-6600
412-281-6610 (fax)

*Counsel for Plaintiffs*

Dated: April 13, 2026