## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **ALEXANDER RHODES** and **NOFAP LLC**  ) | |
| ) | Case No.: 2:25-cv-01956-MJH |
| Plaintiffs,                            ) | |
| ) | |
| v.                                     ) | |
| ) | |
| **AYLO HOLDINGS, S.A.R.L. (d/b/a**     ) | |
| **PORNHUB), et al**,                   ) | |
| ) | |
| Defendants.                            ) | |

### PLAINTIFFS' MEMORANDUM IN OPPOSITION TO DEFENDANT AYLO HOLDINGS, S.A.R.L.'S MOTION TO DISMISS

**KOBYLINSKI + KOBYLINSKI**

David M. Kobylinski, Esquire
Pa. ID No.: 92233
Peter T. Kobylinski, Esquire
Pa. ID No.: 309832
304 Ross Street, Suite 510
Pittsburgh, PA 15219
(412) 281-6600
dave@koby.law
pete@koby.law

*Counsel for Plaintiffs*

Dated: April 13, 2026

**Table of Contents**

Table of Authorities ........................................................................................................ 4

I.    INTRODUCTION ................................................................................................. 6

II.   FACTUAL BACKGROUND ................................................................................ 6

III.  LEGAL STANDARD ......................................................................................... 13

IV.   ARGUMENT ...................................................................................................... 13

    A.    Plaintiffs' Claims Are Timely Raised ............................................................ 14

        1)    *Plaintiffs' Defamation Claims Are Timely* .................................................. 14

        2)    *Plaintiffs' Lanham Act Claims Are Timely, Pornhub Continues Violating the Act to this Day.* 16

        3)    *Plaintiffs' RICO Claims Are Timely under the Separate Accrual Rule.* ....................... 17

Al George, Inc. v. Envirotech ........................................................................................ 17

        4)    *Because Plaintiff's Defamation Claim Is Timely, So Are the Related Torts* ............... 18

    B.    Plaintiffs' Have Standing to Pursue their RICO and Lanham Act Claims ...................... 18

        1)    *Plaintiffs have RICO Standing* ............................................................... 19

            a)    Plaintiffs Have Pled Concrete Damages .................................................. 19

            b)    Plaintiffs Have Pled Multiple Instances of Harm by Predicate Acts ....................... 21

        2)    *Plaintiffs Have Standing to Sue under the Lanham Act* ................................... 25

    C.    Plaintiffs Plausibly Allege Aylo's Participation in and Coordination with the Challenged Conduct ........................................................................................................ 26

        1)    *Gary Nugent's Alleged Contributions Constitute Actionable Conduct* ................... 29

        2)    *Friedman's Referral Was an Overt Act in Furtherance of the Coordinated Campaign* 32

        3)    *Plaintiffs Plausibly Allege the Aylo Defendants Ratified the Challenged Conduct* ...... 33

    D.    Plaintiffs Have Pled a Valid RICO Claim. ..................................................... 36

        1)    *The FAC Satisfies Rule 9(b) as to Fraud-Based Predicate Allegations and Rule 8 as to the Remaining Predicate Acts* ....................................................................... 36

        2)    *Plaintiffs Have Plausibly Alleged a Common Enterprise* ................................. 38

        3)    *Plaintiffs Have Alleged a Continuous Pattern of Racketeering Activity* ................. 41

            a.    The FAC Pleads Wire Fraud ............................................................... 41

            b.    The FAC Pleads Witness Retaliation ..................................................... 42

            c.    The FAC Pleads Interference with Commerce by Threats or Violence ................... 43

            d.    The FAC Pleads Distribution of Obscene Materials Through Interstate Commerce 44

            e.    The FAC Pleads Obstruction of Justice ................................................... 44

            f.    The FAC Pleads Tampering with a Witness, Victim, or Informant ....................... 45

g.    The FAC Pleads Peonage, Slavery, and Trafficking in Persons ............................... 45

h.    The FAC Pleads Money Laundering ................................................................. 46

i.    The FAC Pleads Child Sexual Exploitation Offenses ............................................ 46

4)    *The FAC Plausibly Alleges Aylo's Participation in Those Predicate Acts* ................. 46

5)    *The FAC Pleads Predicate Acts Directed at Plaintiffs to Protect Aylo's Core Business* 47

6)    *Plaintiffs Have Plausibly Alleged Relatedness and Continuity* ................................. 48

E.    Plaintiffs Adequately Plead Claims Under the Lanham Act ........................................... 51

1)    *Plaintiffs State Valid Claims for Unfair Competition and Trademark Infringement* ... 51

a.    The FAC Plausibly Alleges Actionable Use of the NoFap Mark in Commerce ...... 51

b.    Plaintiffs Plausibly Allege Confusion, Diversion, and Withheld Trade ................... 53

c.    Aylo's Fair-Use and Expressive-Use Arguments Fail at the Pleading Stage Aylo's Fair-Use Argument Does Not Warrant Dismissal ............................................................ 54

2.    *The FAC Plausibly Alleges False Association and False Advertising* ..................... 56

3.    *At Minimum, Dismissal of the Lanham Claims Would Be Improper at Rule 12(b)(6)* 57

F.    Plaintiffs Have Pled Trademark Dilution under § 1125(c) ............................................ 58

1)    *Plaintiffs Have Plausibly Pleaded Fame* ........................................................ 58

2)    *Plaintiffs Have Alleged a Likelihood of Dilution by Blurring or Tarnishment* ............ 59

G.    Plaintiffs Have Pled Trade Disparagement ........................................................ 60

H.    Plaintiffs Adequately Plead Tortious Interference ............................................... 61

I.    Plaintiffs Adequately Plead Defamation Per Se and Per Quod ...................................... 62

J.    Plaintiffs Adequately Plead Invasion-of-Privacy Claims Under Pennsylvania Law. ........ 64

1)    *Count X for False Light Is Adequately Pleaded.* ............................................... 64

2)    *Count XI for Publicity Given to Private Life Is Adequately Pleaded.* ......................... 65

3)    *Count XII for Intrusion into Private Affairs Is Adequately Pleaded.* .......................... 66

K.    Plaintiffs Adequately Plead Intentional Infliction of Emotional Distress**.** ...................... 67

L.    Plaintiffs Adequately Plead Civil Conspiracy in Count XIV. ...................................... 68

M.    Plaintiffs Adequately Plead Negligence and Gross Negligence in Count XV. ............ 69

N**.**    Plaintiffs Adequately Plead a Claim for Declaratory Judgment. ................................ 70

O.    Plaintiffs' Request for Injunctive Relief Should Not Be Dismissed**.** ............................. 71

P.    Leave to Amend ....................................................................................... 72

V.    CONCLUSION ........................................................................................... 72

## Table of Authorities

**Cases**

Acumed LLC v. Advanced Surgical Servs., Inc., 561 F.3d 199 (3d Cir. 2009) ........................... 61

Althaus ex rel. Althaus v. Cohen, 756 A.2d 1166 (Pa. 2000) ................................................ 70

Anderson v. J.P. Morgan Chase Bank, Civ. A. No. 22-cv-5084 (E.D. Pa. Mar. 29, 2024) .......... 60

Arab African Int'l Bank v. Epstein, 10 F.3d 168, (3d Cir. 1993) ............................................. 17

Ashcroft v. Iqbal, 556 U.S. 662 (2009) ................................................................................. 13

Barclift v. Keystone Credit Servs., LLC, 93 F.4th 136 (3d Cir. 2024) ...................................... 66

Bell Atl. Corp. v. Twombly 570 (2007) ................................................................................ 13

Boyle v. United States, 556 U.S. 938 (2009) ................................................................ 29, 38, 40

Bridge v. Phoenix Bond & Indem. Co., 553 U.S. 639 (2008) .............................................. 23, 42

Century 21 Real Estate Corp. v. Lendingtree, Inc., 425 F.3d 211 (3d Cir. 2005) ...................... 55

Cook v. GameStop, Inc., 148 F.4th 153 (3d Cir. 2025) .......................................................... 66

Cornette v. Graver, 473 F. Supp. 3d 437 (W.D. Pa. 2020) ..................................................... 59

De Botton v. Kaplin Stewart Reiter & Stein, P.C., No. 1635 EDA 2012 (Pa. Super. Ct. Sept. 25, 2013) .......................................................................................................................... 60

DeGuelle v. Camilli, 664 F.3d 192 (7th Cir. 2011) ............................................................... 23

Dentsply Sirona Inc. v. Net32, Inc., Civil No. 1:17-CV-01530 (M.D. Pa. Mar. 4, 2020) ............ 59

Dille Family Trust v. Nowlan Family Trust, 207 F. Supp. 3d 535 (E.D. Pa. 2016) ..................... 59

Federal Trade Commission & Utah Division of Consumer Protection v. Aylo Group Ltd., (D. Utah Sept. 3, 2025) ....................................................................................................... 8

Feleccia v. Lackawanna Coll., 215 A.3d 3 (Pa. 2019) ........................................................... 70

Fleites v. MindGeek S.A.R.L., (C.D. Cal. June 17, 2021) ............................... 7, 12, 20, 22, 27, 44

Foman v. Davis, 371 U.S. 178 (1962) .................................................................................. 72

Free Speech Coalition, Inc. v. Paxton, 606 U.S. ___ (June 27, 2025) ...................................... 7

Graboff v. Colleran Firm, 744 F.3d 128 (3d Cir. 2013) ......................................................... 65

Gray v. Allen Huntzinger & Central Parking Sys., Inc., 147 A.3d 924 (Pa. Super. Ct. 2016) ..... 68

H.J. Inc. v. Northwestern Bell Telephone Co., 492 U.S. 229 (1989) ................................... 48, 50

Hindes v. Castle, 937 F.2d 868 (3d Cir. 1991) ............................................................... 48, 50

Hormel Foods Corp. v. Jim Henson Prods., Inc., 73 F.3d 497  (2d Cir. 1996) ........................... 60

In re Rockefeller Center Properties, Inc. Securities Litigation, 311 F.3d 198 (3d Cir. 2002) 37, 38, 42

In re Rotavirus Vaccines Antitrust Litig., 30 F.4th 148 (3d Cir. 2022) ................................ 29, 34

Joseph v. Scranton Times L.P., 129 A.3d 404, 437 (Pa. 2015) ............................................... 64

Kehr Packages, Inc. v. Fidelcor, Inc., 926 F.2d 1406 (3d Cir. 1991) ................................... 49, 50

KP Permanent Make-Up, Inc. v. Lasting Impression I, Inc., 543 U.S. 111 (2004) ................ 54, 55

Lackner v. Glosser, 892 A.2d 21 (Pa. Super. Ct. 2006) ......................................................... 69

Lamp v. Heyman, 366 A.2d 882 (Pa. 1976) ..................................................................... 15, 16

Lewis v. Danos, 83 F.4th 948 (5th Cir. 2023) ...................................................................... 17

Lexmark Int'l, Inc. v. Static Control Components, Inc., 572 U.S. 118 (2014) ....................... 25, 26

Liquidation Commission of Banco Intercontinental, S.A. v. Alvarez Renta, 530 F.3d 1339 (11th Cir. 2008) ................................................................................................................ 28, 35

Lum v. Bank of Am., 361 F.3d 217 (3d Cir. 2004 ................................................................. 37

Maio v. Aetna, Inc., 221 F.3d 472 (3d Cir. 2000) ................................................................. 19

McCafferty v. Newsweek Media Grp., Ltd., 955 F.3d 352 (3d Cir. 2020) ............................ 64, 65

McCreesh v. City of Philadelphia, 888 A.2d 664 (Pa. 2005) ........................................................ 15
Pappan Enters., Inc. v. Hardee's Food Sys., Inc., 143 F.3d 800 (3d Cir. 1998)........................... 71
Parikh Worldwide Media, LLC v. Sheth, Civil No. 20-01185 (RBK/JS) (D.N.J. Mar. 8, 2021). 59
Pelagatti v. Cohen, 536 A.2d 1337 (Pa. Super. Ct. 1987) ............................................................. 69
Pelullo v. United States, 964 F.2d 193 (3d Cir. 1992)................................................................... 50
Pernod Ricard USA, LLC v. Bacardi U.S.A., Inc., 653 F.3d 241 (3d Cir. 2011) .................. 56, 57
Phillips v. County of Allegheny, 515 F.3d 224 (3d Cir. 2008)...................................................... 72
Pro Golf Mfg., Inc. v. Tribune Review Newspaper Co., 761 A.2d 553 (Pa. Super. Ct. 2000) .... 61
Reed v. Brown, 166 A.3d 570 (Pa. Commw. Ct. 2017) ................................................................ 62
Rice v. Diocese of Altoona-Johnstown, 254 A.3d 237 (Pa. 2021) ............................................... 18
Rose v. Dowd, 265 F. Supp. 3d 525 (E.D. Pa. 2017) ................................................................... 62
S&R Corp. v. Jiffy Lube Int'l, Inc., 968 F.2d 371 (3d Cir. 1992).......................................... 71, 72
Sarpolis v. Tereshko, 26 F. Supp. 3d 407 (E.D. Pa. 2014) .......................................................... 19
Seville Indus. Mach. Corp. v. Southmost Mach. Corp., 742 F.2d 786 (3d Cir. 1984) ................. 37
Tabas v. Tabas, 47 F.3d 1280 (3d Cir. 1995) ........................................................................ 48, 50
Taylor v. Meirick, 712 F.2d 1112 (7th Cir. 1983) ........................................................................ 16
Thompson Coal Co. v. Pike Coal Co., 412 A.2d 466 (Pa. 1979) ................................................ 69
U.S. Healthcare, Inc. v. Blue Cross of Greater Philadelphia, 898 F.2d 914 (3d Cir. 1990)......... 57
United States v. Bergrin, 650 F.3d 257 (3d Cir. 2011).................................................................. 49
United States v. Edwards, 291 F. Supp. 3d 828 (S.D. Ohio 2017)............................................... 23
United States v. Eufrasio, 935 F.2d 553 (3d Cir. 1991)................................................................ 49
United States v. Philip Morris USA Inc., 566 F.3d 1095 (D.C. Cir. 2009) ............................ 24, 42
Walters v. UPMC Presbyterian Shadyside, 187 A.3d 214 (Pa. 2018)........................................... 70
Witherspoon v. Philadelphia, 768 A.2d 1079 (Pa. 2001) ............................................................. 16
Zurco Inc. v. Sloan Valve Co., 785 F. Supp. 2d 476 (W.D. Pa. 2011)............................... 53, 54, 55

**Statutes**
15 U.S.C. § 1125(a) ................................................................................................................ 51, 56
18 U.S.C. § 1513(e) ......................................................................................................... 22, 36, 37

**Other Authorities**
Restatement (Second) of Torts § 652B.......................................................................................... 66

**Rules**
F.R.C.P. 15.................................................................................................................................... 72
Pa.R.C.P. 1037(a).......................................................................................................................... 15

## I.   INTRODUCTION

Pornhub's motion to dismiss fails because it depends on reading the First Amended Complaint ("FAC") in fragments rather than as a whole. The FAC does not allege isolated statements or passive association; it alleges that the Pornhub/Aylo Defendants participated in and benefited from a coordinated campaign of retaliation, trademark misuse, disinformation regarding the health effects of pornography, and other tortious conduct directed at Plaintiffs over a period of years and continuing into the present. It further alleges timely post-filing retaliatory conduct, including defamatory acts, ongoing unauthorized commercial use of the NoFap mark, direct and coordinated involvement by Pornhub personnel and surrogates, and concrete business and property injuries directly and proximately caused by Defendants' conduct sufficient to support Plaintiffs' RICO and Lanham Act claims. At the Rule 12 stage, those allegations must be accepted as true and viewed in their full factual context. When the FAC is read that way, Pornhub's piecemeal challenges fail, and their motion to dismiss should be denied in its entirety because it pleads a coherent RICO theory, not a collection of isolated grievances.

## II.   FACTUAL BACKGROUND

Plaintiffs commenced this action in state court against Aylo Holdings S.à r.l., Aylo USA Incorporated, Aylo Global Entertainment Inc., and Aylo Billing Limited (collectively, the "Pornhub/Aylo Defendants" or "Pornhub" or "Aylo"), among other parties. The action was removed to this Court. ECF No. 1. This case arises from a coordinated, multi-year campaign by the Pornhub/Aylo Defendants and their collaborators, acting as part of an alleged RICO enterprise, to protect their business model by discrediting, retaliating against, and economically harming Plaintiffs and others who threatened it.

Pornhub is the world's largest pornography company. FAC ¶ 1. It is highly profitable,

bringing in hundreds of millions of dollars annually. FAC ¶ 82. However, Pornhub's main website, Pornhub.com, is rife with sexually exploitative content. FAC ¶ 18. Pornhub is one of the world's largest distributors of illicit sexually exploitative content, including child sexual abuse material. FAC ¶ 17. This included the intentional storage and distribution of videos featuring children as young as toddlers being raped. Fleites v. MindGeek S.A.R.L., No. 2:21-cv-04920, Compl. ¶ 281 (C.D. Cal. June 17, 2021). The FAC alleges that such CSAM material was distributed at massive scale, with hundreds of millions of instances of dissemination. FAC ¶ 17. Pornhub knowingly partnered with sex traffickers to source content, including a sex trafficking operation whose founder was later placed on the FBI's Ten Most Wanted Fugitives list for sex trafficking offenses. Id. As a result of their illegal conduct, Pornhub has been embroiled in many lawsuits on behalf of "thousands" of survivors, law enforcement investigations, an arraignment by the United States government, a Canadian parliamentary investigation concluding fault, an Office of the Privacy Commissioner of Canada investigation concluding fault, and had their payment processors cut ties. FAC ¶ 19.

As pointed out in the FAC at ¶ 19, in June 2025, the United States Supreme Court issued an opinion against the Pornhub/Aylo Defendants and their trade association Free Speech Coalition, stating: "Many of these readily accessible videos [on Pornhub] portray men raping and physically assaulting women—a far cry from the still images that made up the bulk of online pornography in the 1990s." Free Speech Coalition, Inc. v. Paxton, 606 U.S. ___, No. 23-1122, slip op. at 2 (June 27, 2025). In September 2025, the United States Federal Trade Commission fined the Pornhub/Aylo Defendants 5 million dollars "for deceiving users about efforts to crack down on child sexual abuse material and nonconsensual sexual content." Federal Trade Commission & Utah Division of Consumer Protection v. Aylo Group Ltd., *No. 2:25-cv-00752,*

7

*Doc. 2 (D. Utah Sept. 3, 2025) (Stipulated Order for Permanent Injunction, Monetary Judgment, and Other Relief).* The United States FTC Commissioner Melissa Holyoak stated "Pornhub's operators inflicted grave harm on children and nonconsenting adults by promoting and distributing truly horrific material online." Twenty-six attorneys general admonished Pornhub on September 29, 2023, writing "Aylo and Pornhub are no strangers to controversy. Just last month, after Pornhub's parent company MindGeek was acquired by Ethical Capital Partners, MindGeek's name was changed to Aylo in a rebranding effort after your company was repeatedly sued for allegations of profiting from child pornography and non-consensual sex videos. […] As you are aware, various Federal and state laws forbid the creation and distribution of CSAM. We are concerned that Aylo and its subsidiary Pornhub, and possibly other subsidiaries, may be proliferating the production and dissemination of CSAM through the 'loophole' identified by your employee."

Pornhub's website had no age verification measures to dissuade pornography use by minors and no safeguards to verify the ages or consent of those appearing in its content. According to leadership, it did not implement such measures to save money and prevent losing traffic. FAC at ¶ 128. Pornhub would resist removing illegal content, ignoring takedown demands from law enforcement and survivors. FAC at ¶ 18. Rather than addressing its alleged unlawful conduct, Pornhub sought to whitewash its reputation and target its critics through retaliatory conduct. FAC at ¶¶ 16, 20. Pornhub, in collaboration with Defendants Prause and Ley and others, has sought to prevent age-verification measures and laws across various states and in jurisdictions outside the United States. FAC at ¶¶ 23, 129-130.

Plaintiffs allege that this matter arises from a coordinated campaign to intimidate and suppress them, and damage their reputation, financial sustainability, and contractual rights

through false and defamatory statements, invasion of privacy, and a wide variety of other tortious conduct. Plaintiff Alexander Rhodes is the founder of Plaintiff NoFap LLC, which operates a platform associated with recovery from pornography addiction. FAC at ¶¶ 1–4. NoFap was the largest peer-support website for those seeking to reduce or quit pornography use. FAC at ¶ 14. Plaintiff NoFap has also been an outspoken critic advocating for Pornhub to implement age- and consent-verification measures for both consumers and individuals appearing in content, and Plaintiff Rhodes has served as a witness and trusted advisor in multiple federal lawsuits and investigations concerning the Pornhub/Aylo Defendants and their associates. See FAC, generally.



In retaliation for Plaintiffs operating the largest pornography addiction recovery website, Plaintiff Rhodes participating as a witness in various proceedings and investigations, and the NoFap website advocating for age- and consent-verification measures to be implemented on Pornhub, the FAC alleges that Defendants Prause and Ley, together with others collaborating with the Pornhub/Aylo Defendants, engaged in a longstanding effort to suppress Plaintiffs through a wide variety of tortious conduct, and to portray NoFap and Rhodes as dangerous,

violent, illegitimate, and extremist. FAC at ¶¶ 10–12, 21, 170. The conduct at issue was directed, coordinated, and executed at the highest levels of Pornhub's leadership. FAC at ¶¶ 32, 93, 182, 258, 480. The scheme also involved others, including at the Pornhub/Aylo Defendants' primary lobbying group Free Speech Coalition. FAC ¶¶ 123, 378. The conduct involved the use of publicists, private investigators, surveillance, and disseminating disinformation through closely aligned entities such as AVN and XBIZ. FAC ¶¶ 21, 30, 39, 62, 85, 95, 233, 244, 450, 522(c). NoFap's traffic and operations have greatly reduced in scale after being targeted by the Pornhub/Aylo Defendants and Defendants Prause and Ley. FAC at ¶ 22. Plaintiffs aver that this conduct cost Plaintiffs "millions of dollars" in damages. FAC at ¶ 460.

Further, the Pornhub/Aylo Defendants conspired with Defendants Prause and Ley to influence, mislead, pressure, and intimidate academic journals, publishers, researchers, clinicians, conference organizers, professional organizations, recovery resources, the World Health Organization, and the American Psychiatric Association to suppress information concerning the potential adverse effects of pornography use. FAC at ¶¶ 15, 30-32, 257(dd). For years, Pornhub and Defendants Prause and Ley endeavored to conceal their collaboration, allowing Defendants Prause and Ley to misrepresent themselves as disinterested third-party "scientists" purporting to study and disseminate information concerning the health effects of pornography. FAC at ¶¶ 30-32. Likewise, Pornhub coordinated with Defendants Prause and Ley, and others, to disseminate disinformation concerning the potential health effects of quitting or reducing pornography use. FAC at ¶¶ 25. Plaintiffs allege that this scheme was executed through repeated acts of wire fraud, including the dissemination of false and misleading statements regarding the health effects of pornography use (or non- or reduced-use), coordinated communications with third parties and institutions, and the use of electronic and interstate

channels to advance the scheme. Plaintiffs further allege the filing of false reports against academics with various state agencies and employers and other efforts to intimidate and silence those who speak about unfavorable scientific research on pornography's potential effects. It is also alleged that the Pornhub/Aylo Defendants have collaborators, including Defendants Prause and Ley, who sit on editorial boards, act as peer reviewers, contact editors, and otherwise attempt to block, influence, and suppress third party scientific research on pornography's potential health effects. FAC at ¶ 21.

This includes the targeting of academics who acted as witnesses and otherwise engage in discourse surrounding age-verification legislation, such as Donald Hilton and Darryl Mead, who provided amicus participation in the Supreme Court case concerning Texas age verification and were targeted by the Pornhub/Aylo Defendants' enterprise, namely Defendants Prause and Ley. FAC at ¶¶ 34, 136, 193, 459. Defendant Ley acted as an expert witness for the Pornhub/Aylo Defendants in the same Texas case that went to the Supreme Court for adjudication. FAC at ¶ 257(z). Plaintiffs allege that the Pornhub/Aylo Defendants' enterprise, often in coordination with Defendants Prause and Ley, have targeted over seventy (70) individuals with similar conduct across various states, such as surveillance, opposition research, false police reports, coordinated harassment, false administrative reports, impersonation/forgery, defamatory statements, media hit pieces, Wikipedia astroturfing, threatening and filing strategic lawsuits against public participation, targeting family members, and filing complaints to employers and licensing bodies. FAC at ¶ 21. Plaintiffs further allege that the Pornhub/Aylo Defendants have utilized hacking, data mining, and web scraping to collect private information about industry targets. FAC at ¶ 21.

The Pornhub/Aylo Defendants have targeted "therapists, scientists, journalists, authors, educators, politicians, addicts in recovery, recovery peer support groups, pornography recovery

11

and filtering software providers, academic journals, survivors of sexual exploitation, whistleblowers, critics, and anyone else who interferes with their efforts to make as much money as possible." FAC at ¶ 13. The FAC alleges this pattern of conduct led to the suicide of the author of the best-selling book on pornography addiction, *Your Brain on Porn*, a close friend of Plaintiff Rhodes. FAC at ¶ 6, 141-161. The FAC states that the Pornhub/Aylo Defendants did not only try to undermine Plaintiff NoFap's trademark rights, but coordinated with Defendants Prause and Ley to launch RealYourBrainOnPorn.com, while at the same time Defendant Prause trademarked the name of Gary Wilson's previously existing website, YourBrainOnPorn.com. FAC ¶¶ 146-160, 284(f). The FAC alleges that Defendant Prause, in coordination with the Pornhub/Aylo Defendants and Defendant Ley, filed false police reports against Plaintiff Rhodes, Gary Wilson, and Laila Mickelwait, attempting to frame them with crimes. FAC ¶ 87.

Citing Fleites, the FAC further alleges that the Pornhub/Aylo Defendants have utilized "hundreds" of shell companies located in "dozens" of jurisdictions to circumvent tax, money transfer, and pornography laws; facilitate self-dealing; obscure Pornhub's ownership, business practices, and transfers of money; impede regulatory scrutiny and enforcement; and insulate the owners from liability. FAC ¶ 474.

Based on these allegations, Plaintiffs assert that Pornhub engaged in concerted conduct that caused reputational harm, emotional distress, loss of goodwill, and economic injury to both Rhodes and NoFap. FAC at ¶¶ 500, 513, 521, 529, 544. Plaintiffs further allege that Defendants acted pursuant to an agreement or concerted action intended to harm Plaintiffs through defamatory, fraudulent, and otherwise tortious conduct. FAC at ¶¶ 532–35. These allegations describe not isolated incidents, but a coordinated and ongoing course of conduct directed at Plaintiffs and others, undertaken to suppress criticism and protect Defendants' commercial

12

interests.

### III.    LEGAL STANDARD

A motion to dismiss under Rule 12(b)(6) tests only the legal sufficiency of the complaint; it does not resolve factual disputes or determine whether Plaintiffs will ultimately prevail on the merits. To survive dismissal, a complaint need only contain sufficient factual matter, accepted as true, to state a claim for relief that is plausible on its face.  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009); Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). In applying that standard, the Court must accept all well-pleaded factual allegations as true, construe the complaint in the light most favorable to Plaintiffs, and draw every reasonable inference in Plaintiffs' favor. Connelly v. Lane Constr. Corp., 809 F.3d 780, 786 & n.2 (3d Cir. 2016); Phillips v. County of Allegheny, 515 F.3d 224, 231, 233 (3d Cir. 2008).

The plausibility standard is not a probability requirement. Iqbal, 556 U.S. at 678. Plaintiffs need not prove their claims in the complaint, nor must they plead every fact that may later be developed in discovery. Rather, they need only allege enough factual matter to raise a reasonable expectation that discovery will reveal evidence supporting the necessary elements of their claims. Phillips, 515 F.3d at 234; Connelly, 809 F.3d at 789. So long as the pleaded facts permit the reasonable inference that Defendants may be liable for the misconduct alleged, dismissal is improper. Iqbal, 556 U.S. at 678.

### IV.    ARGUMENT

Aylo's motion should be denied because it is built on an artificially narrow reading of the FAC—isolating certain allegations and characterizing them as conclusory while ignoring the broader factual allegations that give the challenged claims context and plausibility. Read as a whole, the FAC does not allege that the Aylo Defendants were passive outsiders to third-party

conduct; it alleges coordinated tortious conduct that underlies Plaintiffs' claims for defamation, privacy torts, IIED, conspiracy, negligence, and equitable relief. At the Rule 12 stage, the Court must consider the complaint in its entirety, accept its well-pleaded factual allegations as true, and draw reasonable inferences in Plaintiffs' favor—not parse isolated sections in a manner that strips the FAC of the factual context incorporated throughout. When the FAC is read as Rule 12 requires, Plaintiffs have plausibly stated claims, and Aylo's piecemeal approach to the pleading provides no basis for dismissal.

### A.      Plaintiffs' Claims Are Timely Raised

Pornhub's attempt to argue Plaintiffs' claims are untimely are based fundamental misunderstandings of law and blatantly ignoring facts pled in Plaintiffs' FAC. As shown below, all of Plaintiffs' counts are raised timely.

#### 1)      Plaintiffs' Defamation Claims Are Timely

Pornhub argues that the statute of limitations for Plaintiffs' defamation claims expired on November 15, 2024—which is the one-year anniversary of the date Defendant Taylor & Francis published the defamatory article. Pornhub neglects to consider, however, that unlike Taylor & Francis, Pornhub and its co-conspirators, Defendants Prause and Ley, are being sued for myriads of defamatory statements, many of which occurred well after the date the Taylor & Francis article in question was published. Indeed, Plaintiffs aver in the FAC that defamatory and/or contract-breaching disparaging remarks were made well after the commencement of this action:

| Paragraph # of FAC | Date | Description |
| --- | --- | --- |
| 413 | July 25, 2025 | Prause defames Plaintiffs by stating NoFap uses hidden cookies that cannot be erased and that secretly track a user's sexual behaviors, particularly if they are viewing pornography. |

| 414 | March 28, 2025 | Prause defames Plaintiffs by stating that NoFap is "a group of extremist misogyny as defined by the International Centre for Counter Terrorism" |
| 284(g) | May 15, 2024 | Prause emails The Royal College of Surgeons of Edinburgh, writing that "NoFap is a recognized terrorist group" |
| 381(z) | July 01, 2024 | A Pornhub "Sexual Wellness Center" contributor links to the defamatory Taylor & Francis paper in an article posted on *Psychology Today*'s website |

These paragraphs are just a tiny smattering of the defamatory conduct that occurred just prior to and subsequent to the commencement of this action. Given these subsequent defamatory statements were pled, Pornhub's argument as the statute of limitations is undeniably frivolous.

Moreover, Pornhub's attempt to invoke Lamp v. Heyman, 366 A.2d 882 (Pa. 1976), constitutes a fundamental misunderstanding of Pennsylvania law and procedure. Lamp v. Heyman stands for the proposition, that in Pennsylvania, a plaintiff cannot commence a lawsuit and fail to provide a defendant with notice of the same. In McCreesh v. City of Philadelphia, the Supreme Court held where a defendant has actual notice of a suit, the same cannot be dismissed pursuant to Lamp v. Heyman, even when the defendant has not been served unless the defendant can establish actual prejudice due to lack of service. McCreesh, 888 A.2d 664, 674 (Pa. 2005). Here, Pornhub concedes that it was served and had actual knowledge of the suit as of January 2025. (ECF #51 at p. 11). As to any interval of time between service of the writ and the filing of complaint, Pennsylvania Rules of Civil Procedure permit a defendant to praecipe the prothonotary for a rule to file a complaint. Pa.R.C.P. 1037(a). Pornhub elected not to avail itself to this mechanism, even though it was represented by Pennsylvania counsel at the time.[1]

---

[1] While not relevant to the argument, Plaintiffs encountered difficulty in serving Defendant Prause through traditional means, who also did not respond to email. Plaintiffs ultimately sought and received leave to serve Prause by alternative means, only to have her attorneys agree to accept service on her behalf after the relief was granted.

Ultimately, UCLA would file a praecipe to have the complaint filed five days after Plaintiffs had filed a motion for alternative service for its employee, Defendant Prause. Pornhub last argues that even if the writ preserved the statute of limitations for defamation, it did not act to preserve the statutes for the remainder of Plaintiffs' claims. Unsurprisingly, Pornhub lacks legal authority for such a proposition.[2] Indeed, Pornhub neglects to consider that the coversheet in question itself instructs plaintiffs only to mark one cause of action:

> **Nature of the Case**:    Place an "X" to the left of the **ONE** case category that most accurately describes your **PRIMARY CASE.** If you are making more than one type of claim, check the one that you consider most important.

Given all of this, Pornhub's invocation of Lamp v. Heyman, lacks merit and should be disregarded.

### 2)    *Plaintiffs' Lanham Act Claims Are Timely, Pornhub Continues Violating the Act to this Day*.

Pornhub's statute of limitations argument geared toward Plaintiffs' trademark claims fails because it incorrectly characterizes trademark infringement as a discrete, one-time occurrence that began and ended in 2018. Under the *continuing wrong* doctrine, the statute of limitations does not begin to run on a continuing violation until the last infringing act occurs. See Taylor v. Meirick, 712 F.2d 1112, 1118 (7th Cir. 1983). In the context of the Lanham Act, this means the limitations period does not bar claims where the illegal conduct persists into the statutory window.

Here, the alleged misconduct is not a historical artifact of 2018; it is a live and persistent violation. As of March 28, 2026, the Aylo Defendants continue to actively advertise and promote their services using the Plaintiff NoFap's 'NoFap' trademark. Exhibit "A". Because each new

---

[2] Pornhub points to Witherspoon v. Philadelphia, 768 A.2d 1079 (Pa. 2001), however, that case dealt with failure to affect service and provides no support whatsoever for Pornhub's novel argument.

advertisement and each instance of consumer confusion constitutes a fresh and independent 'wrong' under the Lanham Act, the Plaintiffs' claims for unfair competition, dilution, and infringement are timely. To hold otherwise would effectively grant Defendants a perpetual, royalty-free license to infringe based solely on the age of their initial misconduct. Dismissal is therefore inappropriate.

### 3) Plaintiffs' RICO Claims Are Timely under the Separate Accrual Rule.

Defendants' motion to dismiss Count I rests on a fundamental misapplication of the RICO 'injury discovery rule.' While Defendants point to 2015 as the triggering date, they overlook the *'Separate Accrual Rule'* which ensures that a plaintiff is not barred from seeking relief for new and independent injuries simply because an initial injury occurred earlier. See Arab African Int'l Bank v. Epstein, 10 F.3d 168, 174 (3d Cir. 1993) (noting statute of limitations does not begin to run until last injury or last predicate act of the same patterns of racketeering activity). As the court recently clarified in *Lewis v. Danos*:

> Under the "injury discovery" rule, a civil RICO claim accrues when the plaintiff discovers, or should have discovered, the injury [and] [w]hen a pattern of RICO activity causes a continuing series of separate injuries, the "separate accrual" rule allows a civil RICO claim to accrue for each injury when the plaintiff discovers, or should have discovered, that injury.

Lewis v. Danos, 83 F.4th 948, 955 (5th Cir. 2023). See also Al George, Inc. v. Envirotech, 939 F.2d 1271, 1273 (5th Cir. 1991).

Here, the FAC alleges a series of distinct, ongoing racketeering acts and independent injuries that have occurred well within the four-year statutory window. The mere fact that a Defendant 'turned its sight' on a Plaintiff in 2015 does not satisfy the 'pattern' or 'injury' elements required to trigger a permanent bar for all future, separate harms. Because the Plaintiffs continue to suffer new and independent injuries resulting from the Defendants' ongoing racketeering

17

enterprise as recently as 2024, 2025, and 2026, the RICO claim is timely under the separate accrual doctrine. Dismissal is therefore inappropriate.

4)    *Because Plaintiff's Defamation Claim Is Timely, So Are the Related Torts*

Pornhub's statute of limitations argument against Plaintiffs' other tort claims is likewise flawed. It rests on the false premise that the Plaintiffs' claims are tethered solely to a single publication by Defendant Taylor & Francis in November 2023. This is a mischaracterization of the First Amended Complaint (FAC). While the claim against Defendant Taylor & Francis involves a specific date of publication, the Aylo Defendants and their co-conspirators, Defendants Prause and Ley, are being sued for a myriad of other actions and conduct that are undeniably within the one-year statutory window. Because these independent 'wrongs' occurred in 2025, the one-year statute of limitations for defamation, trade disparagement, and invasion of privacy cannot possibly have expired by November 2024. Furthermore, because these acts were committed in furtherance of a civil conspiracy (Count XIV) and caused independent injury, the 'last overt act' of the conspiracy as documented in the FAC occurred in late 2025 (which continues to occur to present day) brings the entire course of conduct within the limitations period. See Rice v. Diocese of Altoona-Johnstown, 254 A.3d 237, 246-47 (Pa. 2021) (holding that a cause of action accrues "when an injury is inflicted"). Here, new injuries were inflicted within the statute of limitations. Thus while some early publications may be outside the one-year statute of limitations for defamation-nature claims, others are squarely within. As such, Pornhub's statute of limitations argument in regard to Plaintiffs' other state tort claims should be dismissed.

**B.    Plaintiffs' Have Standing to Pursue their RICO and Lanham Act Claims**

Pornhub argues that Plaintiffs lack standing to pursue their RICO and Lanham Act

claims. Its arguments are incorrect.

### 1) Plaintiffs have RICO Standing

Aylo's attempt to reframe this case as a routine defamation or contract dispute ignores the predicate-act theory actually pleaded. Plaintiffs do not rely on disparagement alone; they allege coordinated use of interstate fraud, witness retaliation, obstruction-related conduct, and other racketeering acts undertaken to protect Pornhub's business model.

### a)    Plaintiffs Have Pled Concrete Damages

Defendants are wrong to characterize Plaintiffs' alleged injuries as merely reputational or otherwise too abstract to support RICO standing. Under Maio v. Aetna, Inc., 221 F.3d 472 (3d Cir. 2000), a plaintiff must plead an actual injury to "business or property," meaning a concrete, non-speculative financial loss. And under Sarpolis v. Tereshko, 26 F. Supp. 3d 407 (E.D. Pa. 2014), that requirement is satisfied where the complaint alleges a definite monetary shortfall, out-of-pocket expense, or other realized economic harm. The FAC does so here.

First, the FAC alleges actual out-of-pocket expenses incurred in response to Defendants' conduct. It alleges that NoFap "incur[red] substantial administrative and legal expenses in attempting to mitigate ongoing attacks." FAC at ¶ 461. Allegations of incurred legal and administrative costs are precisely the kind of present monetary loss that satisfy Maio's requirement of a concrete financial injury.

Second, the FAC alleges direct personal financial injury to Rhodes in the form of actual debt and actual expenses. It alleges that Defendants' conduct left Rhodes "with six figures of financial debt." FAC at ¶ 54. It further alleges that Rhodes "was in six figures of debt due to legal bills and reduced income caused by the Porn Industry Defendants." FAC at ¶ 469. The FAC also alleges that, as a result, Rhodes didn't have health insurance, had utilities shut off for non-

payment, maxed out credit cards, overdrew bank accounts, and had to take side jobs to meet basic expenses. FAC at ¶ 469. Plaintiff Rhodes has incurred expenses for therapy due to Defendants' conduct. Doe v. Azeff, No. 2:22-cv-00101-WSH, Complaint ¶ 131 (W.D. Pa. Jan. 14, 2022). Plaintiff Rhodes enrolled in a governmental address confidentiality program and incurs considerable costs to maintain "the secrecy and security of his residence" due to the conduct of the Pornhub/Aylo Defendants and their collaborators. FAC at ¶ 472. The FAC references Fleites v. MindGeek S.A.R.L., et al., which alleges that targets of the Pornhub/Aylo Defendants regularly receive threats of physical violence and death, and further alleged that after one sexual exploitation survivor was threatened, she had her tires slashed, received intimidating messages, and vanished until she was found in a coma. Fleites v. MindGeek S.A.R.L., No. 2:21-cv-04920, Compl. ¶¶ 74-77 (C.D. Cal. June 17, 2021). For another example, Laila Mickelwait, a cohort of Plaintiffs and one of the most prominent critics of Pornhub, had the lives of her children threatened and her family member's intimate photos hacked by unknown parties. FAC at ¶¶ 7, 21. Plaintiff Rhodes has incurred costs retaining security personnel to ensure his physical safety from the Pornhub/Aylo Defendants and their collaborators. Rhodes v. Azeff, No. 2:22-cv-00101-WSH, Compl. ¶ 110 (W.D. Pa. Jan. 31, 2022). Those are allegations of present, realized economic injury—not merely reputational harm.

Third, the FAC alleges concrete financial losses to NoFap in the form of declining traffic, declining registrations, and declining user activity. It alleges "enormous financial losses" and "steadily declining web traffic." FAC at ¶ 54. It further alleges that search traffic had dropped to approximately 21.7%–29% of peak levels by March 2025. FAC at ¶ 462. It also alleges substantial declines in forum logins, registrations, and posts per day. FAC at ¶ 464. At the pleading stage, those allegations support a plausible inference of actual business loss to an

20

operating platform whose operations depend on user traffic, engagement, and membership activity.

While Plaintiffs are not required to be more specific at this stage, the FAC plausibly alleges millions of dollars in losses due to declining web traffic, which does not account for additional categories of harm including elevated churn and reduced paid user value, diversion of internal resources to crisis response, corrective advertising and reputational repair costs, increased compliance, moderation, and security costs, and related expenses incurred by Plaintiff Rhodes. These damages are further subject to trebling and recovery of attorneys' fees and costs under RICO. Plaintiffs aver that this pattern of activity by Pornhub and its collaborators cumulatively led to "hundreds of millions of dollars" in damages. FAC at ¶ 460.

To be sure, the FAC also alleges reputational harm. But it does not stop there. It pleads actual legal and administrative expenses, actual debt, reduced income, and measurable declines in traffic and business activity. That is enough at the pleading stage. Plaintiffs need not prove their damages with precision in the complaint; they need only plead a concrete financial loss to business or property. The FAC does that.

b)    <u>Plaintiffs Have Pled Multiple Instances of Harm by Predicate Acts</u>

Pornhub is wrong to characterize Plaintiffs' alleged injuries as conclusory or remote. The FAC alleges multiple predicate acts that were directed at Plaintiffs themselves and that directly caused concrete economic harm to Plaintiffs' business and livelihood. This is not a case involving derivative or downstream injury. The FAC alleges that the predicate acts were directed at Plaintiffs themselves—by name and over a sustained period—for the purpose of damaging their business, suppressing their advocacy, and impairing their livelihood. Where a plaintiff is the intended and immediate target of racketeering conduct, the resulting injury is sufficiently direct

21

to satisfy RICO proximate cause requirements. The FAC thus alleges injury flowing from specific predicate acts—including wire fraud, witness retaliation, obstruction-related conduct, and related racketeering activity—not merely from generalized or non-actionable conduct.

First, the FAC alleges retaliation against a witness in violation of 18 U.S.C. § 1513(e). The FAC alleges that because Plaintiffs cooperated as a witness in federal proceedings[3,4,5,6,7,8,9,10,11,12,13] involving these Defendants, Pornhub and its associates launched a coordinated campaign of professional disparagement to punish that cooperation and interfere

---

[3] The FAC alleges witness retaliation, including conduct directed at Plaintiff Rhodes and at other witnesses who participated in *Rhodes v. Prause* and related proceedings concerning the Pornhub/Aylo Defendants. FAC ¶¶ 421, 425, 479.

[4] Plaintiffs respectfully request that this Court take judicial notice of Plaintiffs' cooperation with and assistance in federal law enforcement investigation concerning the Pornhub/Aylo Defendants' enterprise, including advising individuals involved in such matters. Due to the sensitive nature of these matters, further detail cannot reasonably be disclosed on the docket at this time but may be provided through appropriate procedures as directed by the Court.

[5] Plaintiff Rhodes was also a witness in *Rhodes v. Prause*, No. 2:19-cv-01366 (W.D. Pa. Oct. 23, 2019); the subsequent bankruptcy in re *Prause*, No. 2:20-bk-17525-NB (Bankr. C.D. Cal. Sept. 1, 2020); and in subsequent related bankruptcy adversary proceedings, including *Rhodes v. Prause*, Adv. Proc. No. 2:20-ap-01663, in re Prause, No. 2:20-bk-17525 (Bankr. C.D. Cal.), and *Rhodes v. Liberos LLC*, Adv. Proc. No. 2:20-ap-01664, in re Liberos LLC, No. 2:20-bk-17672 (Bankr. C.D. Cal.).

[6] Plaintiff Rhodes participated as a witness in a federal lawsuit against Defendant Prause. See *Hilton v. Prause*, No. 5:19-cv-00755 (W.D. Tex. Mar. 23, 2021). FAC ¶¶ 193, 257(m).

[7] Plaintiff Rhodes participated as a witness in a state-level legal action concerning Defendant Prause. See *Prause v. Wilson*, No. 20STRO01022 (Cal. Super. Ct., L.A. Cnty. Aug. 6, 2020).

[8] Plaintiff Rhodes participated as a witness in a state-level California Board of Psychology investigation into Defendant Nicole Prause's conduct. FAC ¶ 257(l).

[9] Plaintiff Rhodes participated as a witness in a Canadian federal parliamentary inquiry into pornography's potential public health effects and the ease of access for children. See Report of the Standing Committee on Health, House of Commons (Can.), Report on the Public Health Effects of the Ease of Access and Viewing of Online Violent and Degrading Sexually Explicit Material on Children, Women and Men, 42d Parl., 1st Sess. (June 2017) (Chair: Bill Casey).

[10] Plaintiff Rhodes participated as a witness in a state-level lawsuit against Defendant Prause, which was central to related federal bankruptcy proceedings. See *Minc v. Prause*, Adv. Proc. No. 2:20-ap-01662, in re Prause, No. 2:20-bk-17525 (Bankr. C.D. Cal.) (Chapter 7; § 523(a)(6)); see also *Minc v. Farmer* et al., No. CV-20-937026 (Ohio Ct. Com. Pl., Cuyahoga Cnty.).

[11] Plaintiff Rhodes further acted as an unnamed witness in connection with the *Fleites v. MindGeek S.A.R.L.*, No. 2:21-cv-04920 (C.D. Cal.) federal action, in coordination with counsel at Brown Rudnick LLP, providing important information concerning the Pornhub/Aylo Defendants' enterprise and related matters. The nature and specificity of the information conveyed was such that Pornhub reasonably could have understood it to have originated from Plaintiff Rhodes.

[12] Likewise, Rhodes has provided advisement and information concerning the Pornhub/Aylo Defendants enterprise to individuals involved in various legal actions, including proceedings in United States federal courts. Plaintiffs are not required at this stage to identify each such proceeding with specificity, as many involve sensitive matters and information not subject to disclosure.

[13] Rhodes reported the Pornhub/Aylo Defendants' enterprise to the Federal Bureau of Investigation in connection with conduct the FAC alleges caused his friend Gary Wilson's death by suicide. FAC ¶¶ 6, 257(y).

22

with Plaintiffs' livelihood. FAC at ¶¶ 358, 388, 413. These allegations, together with Rhodes's repeated participation as a witness and provider of important information in judicial, administrative, and governmental proceedings, place him squarely within the class of individuals protected from retaliation and witness intimidation. That is a direct-injury theory, not a speculative one. Where the object of the challenged conduct is to inflict economic harm on a known target, the resulting injury is not derivative or remote. See Bridge v. Phoenix Bond & Indem. Co., 553 U.S. 639 (2008); DeGuelle v. Camilli, 664 F.3d 192 (7th Cir. 2011). And harassing or targeting witnesses through social media falls within § 1513(e)'s prohibition on retaliatory harmful action. See United States v. Edwards, 291 F. Supp. 3d 828 (S.D. Ohio 2017), aff'd, United States v. Edwards, 753 F. App'x 366 (6th Cir. 2018). This case therefore does not involve the sort of indirect or generalized market injury that fails RICO proximate-cause scrutiny. Plaintiffs do not allege merely that Defendants engaged in misconduct somewhere in the marketplace and that Plaintiffs felt downstream effects. They allege that Defendants specifically targeted them, by name, in order to damage their reputation, impair their business, and punish their cooperation with law enforcement and federal proceedings. FAC at ¶¶ 358, 388, 413. At the pleading stage, that is a paradigmatically direct theory of injury.

Second, the FAC pleads a pattern of wire fraud causing concrete injury. Defendants used interstate wires—including online publications, phone calls, meetings, text communications, social media platforms, and other communication mediums—to knowingly disseminate materially false and misleading statements, including numerous defamatory statements, the 2025 "hidden cookies" accusation, false statements concerning the potential health effects of pornography overuse, and other false claims, for the purpose of deceiving the public and third parties and thereby harming Plaintiffs' business and property. FAC ¶¶ 133, 347-348, 351-361,

23

413, 421, 483. It alleges that Defendant Prause, while coordinating with the Pornhub/Aylo Defendants, filed false police and administrative reports about Plaintiffs, committed acts of perjury and forgery to suppress Plaintiffs' messaging, causing harm to Plaintiffs. FAC ¶¶ 14, 21, 26, 168. The FAC further alleges that these acts coincided with and caused actual financial consequences, including "enormous financial losses," "steadily declining web traffic," substantial administrative and legal expenses, reduced income, and six-figure debt. FAC at ¶¶ 54, 461, 469. Those allegations are sufficient at the pleading stage to connect the predicate acts to concrete injury to business or property.

Nor are Defendants insulated from wire-fraud scrutiny merely because some of the alleged misrepresentations were publicly disseminated. Public dissemination of false or misleading information can support a wire-fraud theory where the communications are transmitted through interstate wires in furtherance of a scheme to defraud and with fraudulent intent. See United States v. Philip Morris USA Inc., 566 F.3d 1095 (D.C. Cir. 2009). The analogy is apt here. In both cases, the alleged misconduct is not a stray misstatement or isolated publication, but a coordinated campaign of false or misleading public communications allegedly designed to distort the market, suppress critics, and protect a lucrative business model. The FAC specifically alleges a "disinformation campaign," covert collaboration with public-facing surrogates, industry-aligned academic publications, and repeated dissemination of falsehoods through articles, social media, and other interstate channels to damage Plaintiffs and preserve Defendants' revenue streams. FAC at ¶¶ 14–16, 23, 30–32, 375–380.

At this stage, the Court's role is not to resolve competing factual narratives, but to determine whether the alleged scheme—taken as true—plausibly falls within the scope of RICO. Here, it does.

24

2)      *Plaintiffs Have Standing to Sue under the Lanham Act*

Defendants' remoteness argument fails because the FAC alleges the type of direct commercial injury recognized in Lexmark Int'l, Inc. v. Static Control Components, Inc., 572 U.S. 118, 133 (2014): deception of consumers that causes them to withhold trade from the plaintiff. Plaintiffs do not allege merely abstract reputational harm. They allege that Defendants used the "NoFap" mark and related falsehoods to divert consumers away from Plaintiffs' services and thereby suppress traffic, subscriptions, and business activity. FAC at ¶¶ 54, 452, 460–465.

The FAC alleges a direct causal mechanism. It alleges that Defendants tied false and disparaging statements to Plaintiffs' brand and online presence, and that those acts harmed Plaintiffs' ability to attract and retain users. FAC at ¶¶ 358, 413, 452, 460–465. It further alleges resulting commercial injury, including "enormous financial losses," "steadily declining web traffic," reduced user activity, missed business opportunities, diminished funding opportunities, and substantial legal and administrative expenses. FAC at ¶¶ 54, 460–462, 464. That is not a theory of generalized reputational harm; it is a theory of lost trade.

Exhibit "A", although obtained after filing and not attached to the FAC, is consistent with and illustrates the mechanism of injury already pleaded. It shows that consumers searching for "NoFap" encounter Aylo-linked results using Plaintiffs' mark, which is the same kind of consumer diversion and withheld trade the FAC alleges. Plaintiffs do not rely on Exhibit A to amend the FAC or to supply a missing element. Even without Exhibit A, the FAC itself alleges a sufficiently direct commercial injury under Lexmark Int'l, Inc. v. Static Control Components, Inc., 572 U.S. 118 (2014).

That theory falls comfortably within the Lanham Act's zone of interests. Plaintiffs are

direct market participants alleging lost users, lost traffic, lost subscriptions, and related economic injury resulting from consumer deception. And the causal chain is sufficiently direct under Lexmark, because the FAC alleges that Defendants' use of the NoFap mark and associated falsehoods caused consumers to withhold trade from Plaintiffs. FAC at ¶¶ 452, 460–465. Accordingly, Plaintiffs have adequately alleged standing to pursue their Lanham Act claims.

**C.      Plaintiffs Plausibly Allege Aylo's Participation in and Coordination with the Challenged Conduct**

Defendants argue that the FAC improperly attempts to attribute the conduct of Prause and Ley to the Aylo Defendants. But the FAC alleges more than parallel conduct or incidental association. It alleges that Aylo personnel participated in, coordinated with, and amplified the challenged conduct in ways sufficient to state a plausible claim at the pleading stage.

First, the FAC alleges direct involvement by Aylo personnel in relevant events. It alleges that Aylo referred journalists to Prause and Ley as sources on issues affecting Aylo's business interests. FAC at ¶ 93. It further alleges that the official Pornhub account was the first to amplify the launch of RealYourBrainOnPorn, undermining the trademark rights and credibility of YourBrainOnPorn.com. FAC at ¶¶ 10–12. And it alleges that Gary Nugent, identified as Aylo's Manager of Trust & Safety, was involved in the ideation, opposition research, creation, and dissemination of Prause's Taylor & Francis publication. FAC at ¶ 479. Plaintiffs allege a long-standing collaborative relationship between the Pornhub/Aylo Defendants, Defendant Prause, Defendant Ley, and others. FAC ¶¶ 123, 378. Plaintiffs allege that the underlying matter involves top levels of Pornhub leadership. FAC at ¶¶ 32, 93, 182, 258, 480. Taken together, those allegations permit the inference that Aylo was not merely aware of the challenged conduct, but involved in it.

Second, the FAC alleges ongoing coordination between Aylo and the outside actors. It

alleges that Ley served as a retained expert witness for the Aylo Defendants in litigation. FAC at ¶¶ 32, 105, 130. It alleges coordination among Aylo personnel, Prause, and Ley in connection with the broader campaign directed at Plaintiffs. FAC at ¶¶ 93, 479. It also alleges coordination with Free Speech Coalition personnel, including but not limited to Mike Stabile and Eric Paul Leue. FAC ¶¶ 123, 378. Plaintiffs' FAC references Fleites v. MindGeek S.A.R.L., et al., which alleges the Pornhub/Aylo Defendants utilized "an extensive network of social media agents, influencers, and amplifiers", "smearing, discrediting, and intimidating advocates and victims who dared to speak out." Several of these suspected accounts are specifically referenced in the FAC, including "@JustinCasePnC", "@DaddyWolfBear", "@JizLee", "@HoneyHousePR", and "@sxyalicer0se90", which Plaintiffs intend to further investigate and verify through discovery as the case progresses. FAC ¶¶ 291, 253(e). The FAC alleges collaboration with a Wikipedia power user, "Tgeorgescu", to astroturf pages concerning pornography. FAC ¶ 257(h). The FAC also alleges that the Porn Industry Defendants connected with an estranged biological family member of Plaintiff Rhodes—who had been accused of sexually abusing him as a child—and coordinated with that individual to fabricate and disseminate additional defamatory statements about Plaintiff Rhodes. FAC ¶¶ 39-44, 231-244.

It is further alleged that the Pornhub/Aylo Defendants, along with other pornography industry associates, provide publicity assistance and reputation management support to Defendant Prause to whitewash her misconduct and aid in the dissemination of disinformation about Plaintiffs. FAC ¶¶ 30, 93, 95. At this stage, those allegations plausibly support a theory of concerted action, endorsement, or ratification, even if Defendants dispute whether they amount to formal common-law agency.

A formal employer-employee relationship is not required to plead a principal-agent or

27

vicarious-liability theory. As Corman v. Nationwide Life Ins. Co., 396 F. Supp. 3d 530 (E.D. Pa. 2019) explains, traditional agency principles are not limited to strict employment relationships. Thus, the question is not whether Plaintiffs have alleged that Prause or Ley were Aylo employees, but whether the FAC plausibly alleges that Aylo used, directed, coordinated with, or ratified their conduct in furtherance of a shared objective. The FAC does so. Plaintiffs allege that they have observed Defendants Prause and Ley working in close coordination with the Pornhub/Aylo Defendants on what appears to be a near full-time basis for approximately a decade. FAC ¶¶ 6, 23, 35, 92. As a matter of law, Plaintiffs do not yet have access to financial records and require discovery to fully understand the relationships among the Pornhub/Aylo Defendants, Defendants Prause and Ley, and cooperating entities, nor should Plaintiffs be expected to produce such records at this stage of litigation. Pornhub is alleged to utilize hundreds of shell companies across various jurisdictions to conceal transfers of money. FAC ¶ 474. Further, Defendant Prause is alleged to have failed to comply with an order to compel in the prior Rhodes v Prause et al. lawsuit requiring the production of tax returns and related financial documents. FAC ¶ 33.

Nor do Plaintiffs' allegations resemble the type of adverse-interest or self-dealing scenario in which imputation would fail. Compare Liquidation Commission of Banco Intercontinental, S.A. v. Alvarez Renta, 530 F.3d 1339 (11th Cir. 2008). Plaintiffs do not allege that Prause and Ley were defrauding Aylo, acting against Aylo's interests, or engaging in self-dealing at Aylo's expense. To the contrary, the FAC alleges that their conduct advanced Aylo's interests by discrediting Plaintiffs, suppressing criticism, generating disinformation about pornography's potential effects, intimidating witnesses and whistleblowers, and otherwise protecting Aylo's revenue model. FAC at ¶¶ 93, 170, 371, 479. That makes this case materially

28

different from one in which the supposed agents were acting adversely to the principal.

Third, for RICO purposes, Plaintiffs need not plead a formal agency relationship in order to allege a sufficient enterprise relationship. An association-in-fact enterprise requires only "a group of persons associated together for a common purpose of engaging in a course of conduct." Boyle v. United States, 556 U.S. 938, 946 (2009). The FAC alleges that Aylo, Prause, and Ley acted together for the common purpose of discrediting and retaliating against Plaintiffs through coordinated publications, media referrals, social-media amplification, and related online conduct. FAC at ¶¶ 10–12, 93, 170, 371, 479. That is sufficient to plausibly allege an association-in-fact enterprise at the pleading stage.

Nor does the FAC rely on one label alone. Whether Defendants frame the issue as agency, ratification, coordinated action, or enterprise participation, the question at this stage is whether the complaint plausibly alleges Aylo's involvement in the challenged conduct. The FAC does so. See In re Rotavirus Vaccines Antitrust Litig., 30 F.4th 148, 155 (3d Cir. 2022); Boyle v. United States, 556 U.S. 938, 946 (2009).

Accordingly, this section is more accurately framed not as whether Plaintiffs have conclusively established agency, but whether the FAC plausibly alleges Aylo's participation in and coordination with the challenged conduct. It does.

### 1)    *Gary Nugent's Alleged Contributions Constitute Actionable Conduct*

Aylo's effort to minimize Gary Nugent's alleged role depends on recasting the FAC's allegations as though they described only passive or background involvement. They do not. The FAC alleges that Nugent—Aylo's Manager of Trust & Safety—participated in the creation of the underlying research instrument from which the challenged Taylor & Francis publication was derived. FAC at ¶¶ 258, 261, 268–269, 479. At the pleading stage, that is sufficient to allege

actionable participation.

The point is not merely that Nugent held an Aylo title or had some abstract connection to the events. The FAC alleges that he was listed as a contributor to the underlying Open Science Framework spreadsheet, that the Taylor & Francis Paper was derived from that underlying opposition research, and that the resulting publication was used as part of the broader campaign to discredit Plaintiffs. FAC at ¶¶ 261, 268–269, 479. Those allegations plausibly connect Nugent to the challenged conduct itself, not just to Aylo as an institution.

Nor does Aylo defeat the claim by insisting that Nugent did not write the final article. Plaintiffs do not aver that Gary Nugent did not participate in writing the Taylor & Francis article, but rather allege that he was involved in its creation. The full extent of the Pornhub/Aylo Defendants' participation is a matter to be ascertained through discovery. However, Plaintiffs' theory is not limited to final authorship. It is that Nugent participated in creating the allegedly false source material on which the challenged publication relied. FAC at ¶¶ 261, 268–269, 479. If the pleaded theory is that the publication was built on manipulated or false underlying data, a defendant alleged to have helped create that material cannot avoid responsibility simply by pointing to a later nominal author. At a minimum, the FAC plausibly alleges participation in the preparation and coordination of the publication process.

Aylo's argument also improperly treats factual disputes as pleading defects. Whether Nugent's precise role was substantial or minimal, whether his alleged contribution was neutral or wrongful, and whether the Taylor & Francis Paper in fact relied on the material identified in the FAC are classic merits questions for discovery. On a motion to dismiss, the Court must accept the FAC's allegations as true and draw reasonable inferences in Plaintiffs' favor. The FAC alleges that Nugent's contribution was not incidental, but part of the process by which allegedly

30

false material was assembled and deployed against Plaintiffs. FAC at ¶¶ 261, 268–269, 479. That is enough to survive dismissal.

The FAC also plausibly supports the inference that Nugent's alleged role was knowing, not accidental. It alleges that the underlying "data" was manipulated and that the resulting publication was part of a campaign to damage Plaintiffs and protect Aylo's interests. FAC at ¶¶ 170, 173, 261, 371, 479. At this stage, Plaintiffs need not prove Nugent's knowledge or intent; they need only plausibly allege them. The FAC does so by alleging his role in the underlying dataset and the use of the resulting publication in the broader retaliatory campaign.

In any event, this argument fails for an additional reason: Count I does not depend solely on whether Nugent's conduct independently satisfies every element of publication-based tort liability. The FAC alleges that Nugent's role formed part of a coordinated enterprise effort and part of the conspiracy to create and deploy harmful falsehoods against Plaintiffs. FAC at ¶¶ 10–12, 170, 261, 268–269, 371, 479. Thus, even if Aylo disputes whether Nugent was a final publisher, the FAC still plausibly alleges that he participated in the creation of the false instrumentalities used by the enterprise and the conspiracy. That is actionable conduct.

Finally, Aylo attempts to minimize Gary Nugent's role at Pornhub. However, according to the LinkedIn profile incorporated into the FAC, he oversees many employees, including an internal team and external team of contractors—clearly a managerial role. FAC at ¶¶ 266-267. The FAC makes a clear allegation that other high-level Pornhub team members have cooperated with Defendants Prause and Ley to target Plaintiffs and others perceived as business risks. FAC at ¶¶ 32, 93, 182, 258, 480. Aylo further contends that the alleged conduct would fall outside Nugent's normal work responsibilities, but the FAC specifically alleges that Aylo engages in this type of conduct as part of its operations. FAC at ¶¶ 20-21, 85. Collaborating on the Taylor &

31

Francis article is not an unrelated extracurricular activity such as reading poetry or hot air ballooning; a high-level Pornhub employee targeting a recovery platform is directly related to the conduct of the enterprise as described in the FAC. Moreover, the fact that Nugent is identified as being involved in the Taylor & Francis article does not mean he was the only enterprise associate who assisted Defendants Prause and Ley in its ideation, opposition research, creation, and dissemination. Discovery is required to ascertain the full extent of Pornhub's involvement in the article's ideation, development, publication, and dissemination.

2)    *Friedman's Referral Was an Overt Act in Furtherance of the Coordinated Campaign*

Aylo attempts to trivialize Solomon Friedman's alleged referral of a journalist to Prause and Ley as a stray, innocuous media contact. That is not what the FAC alleges. The FAC alleges that Friedman—identified as Aylo's "Head and Co-Founding Partner"—directed a TIME journalist to Prause and Ley as sources on issues central to Plaintiffs' operations and to Aylo's commercial interests. FAC at ¶ 93. At the pleading stage, that is not meaningless background. It is a concrete act of steering public-facing validation toward the very outside actors whom the FAC alleges were participating in the broader retaliatory and disinformation campaign against Plaintiffs and dozens of other targets of the Pornhub/Aylo Defendants.

Aylo's argument fails because it artificially isolates the referral from the rest of the FAC. Plaintiffs do not allege that Friedman's referral, standing alone, completes every element of every claim. They allege that it was one overt act in a broader pattern of coordination, endorsement, and participation. The FAC alleges that the official Pornhub account was the first to amplify the launch of RealYourBrainOnPorn, which sought to take over the trademark rights to Gary Wilson's YourBrainOnPorn.com website. FAC at ¶¶ 10–12. And it alleges that Prause and Ley functioned as recurring outside voices aligned with Aylo's interests. FAC at ¶¶ 32, 93,

105, 130. Read together, those allegations do not describe a casual referral. They describe senior Aylo leadership directing media attention toward the same outside actors allegedly used to discredit Plaintiffs and protect Aylo's revenue model. Finally, the FAC cites that other members of Pornhub leadership have cooperated with Defendants Prause and Ley to target Plaintiffs and others perceived as business risks. FAC at ¶¶ 32, 93, 182, 258, 480.

That is actionable in context. Friedman's referral is relevant not because every referral is independently tortious, but because this referral is alleged to have been part of the machinery of the campaign itself. When a senior corporate official directs the press to selected outside speakers on a contested issue affecting the company's financial interests, and those same speakers are elsewhere alleged to be engaged in coordinated publications and amplification against a known critic, the referral plausibly functions as endorsement, coordination, and participation in the broader scheme. At a minimum, it is an overt act supporting Plaintiffs' theories of concerted action, ratification, and enterprise participation.

Nor does Aylo help itself by insisting that Plaintiffs are trying to convert a referral into formal common-law agency. Plaintiffs need not do so. For pleading purposes, the referral matters because it plausibly shows that Aylo leadership affirmatively put Prause and Ley forward as its preferred public-facing validators on matters central to Aylo's enterprise and to Plaintiffs' criticism of that enterprise. FAC at ¶ 93. That allegation reinforces the FAC's broader theory that Prause and Ley were not acting in isolation, but in coordination with and to the benefit of Aylo. FAC at ¶¶ 10–12, 93, 170, 371, 479.

        3)     *Plaintiffs Plausibly Allege the Aylo Defendants Ratified the Challenged Conduct*

Aylo argues that Plaintiffs fail to allege ratification because the FAC does not identify a formal corporate statement expressly adopting every challenged act by Prause, Ley, or Nugent.

33

But that is not the pleading standard. Ratification may be plausibly inferred from allegations that a principal knew of the conduct, endorsed it, amplified it, continued to use the same actors, or accepted the benefits of the conduct. See In re Rotavirus Vaccines Antitrust Litig., 30 F.4th 148, 155 (3d Cir. 2022).

The FAC alleges precisely that sort of knowing endorsement. As set out above, it alleges that Solomon Friedman—identified as Aylo's "Head and Co-Founding Partner"—referred journalists to Prause and Ley as public-facing sources on issues central to Aylo's business interests. FAC at ¶ 93. It further alleges that the official Pornhub account was the first to amplify the launch of Defendants Prause and Ley's RealYourBrainOnPorn.com scheme. FAC at ¶¶ 10–12. It alleges that Defendants Ley and Prause are actively propped up by Pornhub, including Pornhub's endorsement of David Ley's book, where he thanked a Pornhub executive in the book's acknowledgements section. FAC at ¶¶ 30, 32. It alleges that Pornhub leadership specifically utilizes surrogates to discredit targets of the enterprise. FAC at ¶¶ 85. And it alleges that Gary Nugent, Aylo's Manager of Trust & Safety, was involved in the creation and coordination of the Taylor & Francis publication used to attack Plaintiffs. FAC at ¶ 479. Read together, those allegations do not describe passive awareness. They plausibly describe endorsement, amplification, and continued use of the same outside actors and materials in furtherance of the same broader campaign.

This section therefore fits directly with Plaintiffs' Friedman and Nugent averments. Friedman's alleged referral is relevant because it plausibly shows senior Aylo leadership steering media attention toward Prause and Ley as preferred validators. FAC at ¶ 93. Nugent's alleged involvement matters because it plausibly links Aylo personnel to the creation and coordination of the underlying publication used against Plaintiffs. FAC at ¶ 479. And Pornhub's alleged

immediate amplification of RealYourBrainOnPorn.com matters because it plausibly shows Aylo's public endorsement of the same outside voices and messaging. FAC at ¶¶ 10–12. Those are classic indicia of ratification at the pleading stage.

The FAC also alleges that the challenged conduct advanced Aylo's interests. Plaintiffs do not allege that Prause and Ley were acting adversely to Aylo, defrauding Aylo, or engaging in self-dealing at Aylo's expense. To the contrary, the FAC alleges that their conduct served Aylo's interests by discrediting Plaintiffs, suppressing criticism, and protecting Aylo's revenue model. FAC at ¶¶ 170, 371, 479. That makes this case materially different from one in which a purported agent acted against the principal's interests. Compare Liquidation Commission of Banco Intercontinental, S.A. v. Alvarez Renta, 530 F.3d 1339 (11th Cir. 2008). Here, the FAC alleges alignment of interests, not adverse self-dealing.

Nor can Aylo avoid that inference by fragmenting the FAC into isolated episodes and then insisting that none, viewed alone, establishes ratification. Plaintiffs do not rely on any single act in isolation. They rely on the combined allegations that Aylo leadership directed journalists to Prause and Ley, Aylo's official account amplified their platform, Aylo's Trust & Safety manager allegedly participated in the underlying publication process, and the resulting campaign allegedly benefitted Aylo commercially. FAC at ¶¶ 10–12, 93, 170, 371, 479. The FAC makes it clear that Pornhub leadership has a modus operandi of targeting business targets, such as sexual exploitation survivors, whistleblowers, scientists, clinicians, critics, witnesses, and addiction recovery resources, claiming that Plaintiffs have identified over seventy victims of such conduct. FAC at ¶¶ 6, 21, 85, 425, 459. Taken together, those allegations plausibly support the inference that Aylo adopted, endorsed, or at minimum knowingly made continued use of the challenged conduct.

35

At this stage, Plaintiffs are not required to produce Aylo's internal authorization logs or identify the precise moment at which Aylo internally "approved" the conduct. Those are matters for discovery. The question on a motion to dismiss is whether the FAC plausibly alleges ratification. Coordinated referral, amplification, employee involvement, and commercial alignment are enough to do so here. Accordingly, Aylo's argument that ratification is absent as a matter of law fails.

D.      **Plaintiffs Have Pled a Valid RICO Claim**.

Plaintiffs have adequately pleaded a civil RICO claim because the FAC alleges a coordinated enterprise acting through a pattern of racketeering activity to harm Plaintiffs' business and property, and it does so with substantially more than labels or conclusory assertions.

1)      *The FAC Satisfies Rule 9(b) as to Fraud-Based Predicate Allegations and Rule 8 as to the Remaining Predicate Acts*

Defendants' Rule 8 and Rule 9(b) attack overstates what Plaintiffs were required to plead. To the extent Count I rests on fraud-based predicates, the FAC pleads those allegations with sufficient particularity. To the extent Count I rests on non-fraud predicates, including witness retaliation under 18 U.S.C. § 1513(e), ordinary Rule 8 plausibility governs.

As to the fraud-based allegations, the FAC identifies the core actors, the fraudulent instrument, the means of communication, the relevant time period, and why the challenged material was false. It identifies Solomon Friedman and Gary Nugent as Aylo-linked participants, and alleges coordination with Prause and Ley. FAC at ¶¶ 93, 137, 264. It identifies the allegedly falsified OSF spreadsheet as the underlying instrument from which the challenged publication was derived, and alleges that the data was manipulated by mislabeling benign material as "violent" and relying on deleted entries. FAC at ¶¶ 170, 173, 261. It alleges a defined time

36

period—a ten-month collaboration culminating in publication and coordinated dissemination. FAC at ¶¶ 11, 268–269. And it alleges why the material was false and why it mattered: the publication was allegedly used to portray Plaintiffs and their community in a false and damaging way as part of a broader decade-long campaign against them. FAC at ¶¶ 170, 173, 413, 474.

Rule 9(b) does not require Plaintiffs, prior to discovery, to plead concealed internal communications or the full mechanics of the enterprise's coordination. It requires sufficient detail to identify the scheme, the actors, the timeframe, and why the statements were false. The FAC meets that standard. Those allegations are sufficient at the pleading stage. Under In re Rockefeller Center Properties, Inc. Securities Litigation, 311 F.3d 198, 216–17 (3d Cir. 2002), Rule 9(b) requires that fraud allegations be pleaded with particularity by supplying the essential factual background of the alleged fraud—commonly framed as the who, what, when, where, and how. The FAC does exactly that here. And In re Rockefeller Center Properties, Inc. Securities Litigation, 311 F.3d 198, 216–17 (3d Cir. 2002) also makes clear that Plaintiffs are not required to plead every internal detail of Defendants' undisclosed coordination so long as the complaint provides sufficient precision and factual substantiation to put Defendants on notice of the misconduct charged. See also Seville Indus. Mach. Corp. v. Southmost Mach. Corp., 742 F.2d 786 (3d Cir. 1984); Lum v. Bank of Am., 361 F.3d 217 (3d Cir. 2004).

Aylo's argument still fails for an independent reason: not all of Count I sounds in fraud. Plaintiffs also allege non-fraud predicate acts, including retaliation against a witness under 18 U.S.C. § 1513(e). Those allegations are not subject to Rule 9(b)'s heightened standard and need only satisfy Rule 8. The FAC does so by alleging who engaged in the retaliatory campaign, when the retaliatory acts occurred, and how those acts were directed at Plaintiffs' livelihood and business. FAC at ¶¶ 358, 388, 413, 474.

Accordingly, Aylo cannot defeat Count I by invoking Rule 9(b) as though it governed the entire RICO claim. The FAC adequately pleads the fraud-based allegations with particularity under In re Rockefeller Center Properties, Inc. Securities Litigation, 311 F.3d 198, 216–17 (3d Cir. 2002) and independently pleads the remaining predicate acts plausibly under Rule 8.

### 2)    *Plaintiffs Have Plausibly Alleged a Common Enterprise*

Aylo argues that Plaintiffs fail to allege a common enterprise because the FAC does not describe a formal organizational chart, contract, or rigid chain of command. That is not the law. An association-in-fact enterprise under RICO requires only "a group of persons associated together for a common purpose of engaging in a course of conduct," along with relationships among those associated with the enterprise and longevity sufficient to permit them to pursue that purpose. Boyle v. United States, 556 U.S. 938, 946 (2009). The FAC plausibly alleges each of those elements.

First, the FAC alleges a common purpose. It alleges that Aylo, Prause, and Ley acted together to discredit Plaintiffs, suppress criticism of the pornography industry, and protect Aylo's revenue model from a competing recovery platform and its founder. FAC at ¶¶ 170, 371, 479. That is a concrete shared objective, not a vague allegation of parallel dislike or incidental overlap.

Second, the FAC alleges relationships among the participants. For one example of many, it alleges that Solomon Friedman referred a journalist to Prause and Ley as outside validators on issues central to Aylo's business interests. FAC at ¶ 93. It alleges that the official Pornhub account was the first to amplify the launch of RealYourBrainOnPorn. FAC at ¶¶ 10–12. It alleges that Gary Nugent, Aylo's Manager of Trust & Safety, was involved in the creation and coordination of the Taylor & Francis publication used against Plaintiffs. FAC at ¶ 479. It further

38

alleges that Ley served as a retained expert witness for Aylo in litigation. FAC at ¶¶ 32, 130. Other involved Pornhub team members, affiliates, and collaborators are detailed by name. FAC at ¶¶ 32, 62, 93, 123, 144, 182, 253, 258, 291, 378, 381(z), 480. Taken together, those allegations plausibly describe an interconnected set of relationships, not isolated strangers acting independently.

Aylo's distinctness argument fails for the same reason the claim survived in Jaguar Cars, Inc. v. Royal Oaks Motor Car Co., Inc., 46 F.3d 258 (3d Cir. 1995). Plaintiffs do not allege that a single Aylo entity is both the RICO "person" and the same undifferentiated "enterprise." Rather, the FAC alleges a set of distinct actors—Aylo personnel, including Friedman and Nugent, together with outside participants Prause and Ley—associated for a common purpose and acting through coordinated referrals, amplification, publications, and related online conduct. FAC at ¶¶ 10–12, 93, 170, 371, 479. Under Jaguar Cars, Inc. v. Royal Oaks Motor Car Co., Inc., 46 F.3d 258 (3d Cir. 1995), the distinctness requirement is satisfied where the liable actors are separate from the enterprise through which the challenged conduct is carried out, even if the enterprise includes a corporation whose affairs those actors helped conduct. That is what Plaintiffs allege here.

This case therefore is not one in which Plaintiffs merely repackage a corporation together with its own routine internal operations and call that a RICO enterprise. The FAC alleges a broader association-in-fact enterprise comprised of Aylo-linked insiders and outside actors working together toward a shared objective: discrediting Plaintiffs, suppressing criticism, and protecting Aylo's sexually exploitative revenue model. FAC at ¶¶ 93, 170, 371, 479. That is materially different from a deficient pleading that alleges only a corporation acting through its ordinary agents in the ordinary course. Under Jaguar Cars, Inc. v. Royal Oaks Motor Car Co.,

39

Inc., 46 F.3d 258 (3d Cir. 1995), Plaintiffs have plausibly alleged the required separation between the enterprise and the actors conducting its affairs. The FAC does not merely allege Aylo associating with itself. It alleges an enterprise composed of Aylo entities together with external actors, including Defendants Prause and Ley, who served distinct roles in executing the scheme, including public-facing disinformation, academic publication, and witness targeting. That is sufficient to plead an association-in-fact enterprise distinct from the RICO person.

Third, the FAC alleges sufficient continuity and duration. It alleges not a single publication or isolated referral, but a broader campaign involving media referrals, coordinated amplification, underlying research collaboration, and repeated use of the same outside actors over time. FAC at ¶¶ 10–12, 93, 170, 268–269, 371, 479. That is sufficient at the pleading stage to allege longevity adequate to pursue the enterprise's purpose.

Aylo's contrary argument fails because it fragments the FAC into isolated episodes and then insists that no single allegation, viewed alone, proves a common enterprise. But the enterprise inference arises from the allegations taken together. Plaintiffs do not allege a random set of disconnected events. They allege a common purpose, recurring participants, coordinated acts, and repeated use of the same outside voices and internal personnel in furtherance of the same objective. That is more than enough under Boyle v. United States, 556 U.S. 938, 946 (2009) .

Nor must Plaintiffs prove at this stage the enterprise's full internal mechanics, undisclosed agreements, or private decision-making structure. Those are matters for discovery. At the pleading stage, the FAC need only plausibly allege that the participants were associated together for a shared objective and acted in relationships sufficient to pursue it. The FAC does so here. Accordingly, Aylo's argument that Plaintiffs fail to allege a common enterprise should be

rejected.

   3)  *Plaintiffs Have Alleged a Continuous Pattern of Racketeering Activity*

  Aylo's argument that the FAC fails to allege any predicate act ignores the structure of the pleading. The FAC does not present the challenged acts as disconnected episodes. It alleges that Aylo's business depends on the storage, distribution, and monetization of obscene and illegal material, and that the later predicates directed at Plaintiffs were undertaken to protect that business model from criticism, exposure, and disruption. FAC at ¶¶ 17–19, 170, 371. On Plaintiffs' theory, the later conduct matters precisely because it was directed at individuals whose advocacy and cooperation threatened Aylo's core revenue streams. FAC at ¶¶ 17–19, 371.

   a.  The FAC Pleads Wire Fraud

  The FAC adequately alleges wire fraud. It alleges a concrete scheme to create and disseminate false material portraying Plaintiffs and their community in damaging and misleading terms through interstate digital channels and coordinated publication activity. FAC at ¶¶ 170, 173, 261, 268–269, 413, 479. It identifies Aylo-linked participants, including Solomon Friedman and Gary Nugent, and alleges coordination with Prause and Ley through the Open Science Framework and related publication efforts. FAC at ¶¶ 93, 137, 264, 479. It identifies the allegedly falsified instrument—the OSF spreadsheet—and explains why it was false: benign material was allegedly mischaracterized as "violent," "data" that could not have been obtained via the purported methodology, and deleted material was nevertheless used to generate a false narrative about Plaintiffs. FAC at ¶¶ 170, 173, 261. The FAC alleges the Pornhub enterprise disseminated false and misleading messaging, including through various interstate channels, regarding the potential health effects of pornography use, particularly excessive or underage use, causing harm to Plaintiffs. FAC at ¶¶ 21, 30, 92. It also alleges a defined period of collaboration

41

culminating in publication and dissemination. FAC at ¶¶ 11, 30, 268–269.

Those allegations satisfy the essential pleading requirements for wire fraud. They plead a scheme to defraud, use of interstate wires in furtherance of that scheme, and facts supporting fraudulent intent. See Bridge v. Phoenix Bond & Indem. Co., 553 U.S. 639 (2008); Hemi Group, LLC v. City of New York, 559 U.S. 1 (2010); In re Rockefeller Center Properties, Inc. Securities Litigation, 311 F.3d 198, 216–17 (3d Cir. 2002). And because the FAC identifies the who, what, when, where, and why of the alleged fraudulent conduct, it satisfies Rule 9(b).

The FAC also plausibly alleges why these communications matter as RICO predicates. The theory is not merely that Defendants published harsh or inaccurate commentary. It is that they used interstate communications to disseminate knowingly false material as part of a coordinated scheme to discredit Plaintiffs and preserve Aylo's business model. In that respect, the allegations are analogous to the coordinated public disinformation campaign discussed in United States v. Philip Morris USA Inc., 566 F.3d 1095 (D.C. Cir. 2009): not every false public statement is wire fraud, but the interstate dissemination of false or misleading factual material can constitute wire fraud where it is used to further a broader fraudulent scheme. That is the theory the FAC pleads here. FAC at ¶¶ 170, 173, 261, 268–269, 371, 413, 479.

b.      The FAC Pleads Witness Retaliation

The FAC also adequately alleges witness retaliation. It alleges that because Plaintiffs cooperated with and participated in federal proceedings involving these Defendants, Aylo and its collaborators launched a coordinated campaign to punish that cooperation and interfere with Plaintiffs' livelihood. FAC at ¶¶ 228, 257(m), 257(y), 421. The FAC thus pleads retaliatory conduct directed at identified witnesses because of their participation in federal proceedings. And on Plaintiffs' theory, that retaliation was not incidental; it was instrumental. The purpose

42

was to discredit, economically injure, and silence individuals whose advocacy and cooperation threatened Aylo's core business. FAC at ¶¶ 17–20. Plaintiff Rhodes is not the only witness who has been retaliated against by this RICO enterprise. The FAC alleges a broad pattern of Pornhub and its enterprise members retaliating against dozens of whistleblowers, lawsuit witnesses, and law enforcement investigation witnesses. FAC at ¶¶ 6, 13, 87, 425. This includes retaliating against witnesses who participated in Plaintiffs' prior litigation with Defendant Prause, one of whom committed suicide out of despair less than three months after the litigation settled. FAC at ¶¶ 161, 425.

Those allegations are sufficient at the pleading stage. Unlike fraud-based predicates, witness retaliation is not governed by Rule 9(b), but by ordinary Rule 8 plausibility. And the retaliatory use of public and online channels to target a witness is consistent with the reasoning of United States v. Edwards, 291 F. Supp. 3d 828 (S.D. Ohio 2017), aff'd, United States v. Edwards, 753 F. App'x 366 (6th Cir. 2018), which recognized that harassing a witness through social media can constitute retaliatory harmful action. The FAC alleges that same kind of targeted retaliatory use of publications and online channels here. FAC at ¶¶ 358, 388, 413, 474.

    c.    The FAC Pleads Interference with Commerce by Threats or Violence

The FAC also plausibly alleges interference with commerce by threats or violence. It alleges that the Pornhub/Aylo Defendants' enterprise engaged in a coordinated campaign of intimidation, harassment, and coercive conduct directed at Plaintiffs and others engaged in commerce related to pornography recovery, scientific research, and anti-sexual exploitation efforts. This conduct included, among other things, false police reports, harassment, doxxing, dissemination of private information, and coordinated efforts to economically harm and silence targets through reputational destruction and interference with business relationships. FAC at ¶¶

21, 87, 408, 509–512, 516–520. Pornhub has regularly utilized threats, hacking, blackmail, and extortion against targets of the enterprise. *Fleites v. MindGeek S.A.R.L.,* No. 2:21-cv-04920, Compl. ¶ 539 (C.D. Cal. June 17, 2021). The FAC further alleges that these actions were not isolated, but part of a broader pattern targeting dozens of individuals, who were perceived as threats to Pornhub's revenue-generating activities. FAC at ¶¶ 13, 21. These acts plausibly constitute the use of threats, intimidation, and coercive conduct to obstruct, delay, or affect commerce and economic activity across state lines.

> d.    The FAC Pleads Distribution of Obscene Materials Through Interstate Commerce

The FAC plausibly alleges distribution of obscene materials through interstate commerce. It alleges that the Pornhub/Aylo Defendants operated one of the largest websites for disseminating pornographic content, including unlawful and exploitative material, to users across state and national boundaries via the internet. FAC at ¶¶ 17–19. It further alleges that Pornhub knowingly hosted and distributed content depicting sexual exploitation, including child sexual abuse material and other non-consensual content, at massive scale, with such material being accessed and disseminated hundreds of millions of times. FAC at ¶¶ 17–18. These allegations describe the use of interstate commerce to distribute obscene and unlawful materials as part of Pornhub's core business operations, and that the resulting illicit financial proceeds were used to target Plaintiffs. These allegations are sufficient at the pleading stage.

> e.    The FAC Pleads Obstruction of Justice

The FAC plausibly alleges obstruction of justice. It alleges that the Pornhub/Aylo Defendants' enterprise engaged in conduct designed to interfere with investigations and litigation, including filing false law enforcement and administrative reports, attempting to frame targets with crimes, disseminating false information to authorities, and intimidating and

discrediting witnesses and participants in legal proceedings. FAC at ¶¶ 21, 36–38, 87. It further alleges discovery-related misconduct, including failure to comply with court-ordered production of financial records and the use of bankruptcy and litigation tactics to impede access to evidence. FAC at ¶ 33. These allegations suffice at the pleading stage. Obstruction includes efforts to impede proceedings, influence participants, and conceal evidence. The FAC alleges such conduct as part of a coordinated effort to evade scrutiny and liability, supporting a plausible inference of obstruction.

f.    The FAC Pleads Tampering with a Witness, Victim, or Informant

The FAC plausibly alleges witness tampering. It alleges that the Pornhub/Aylo Defendants' enterprise engaged in conduct intended to influence, intimidate, and prevent witnesses, victims, and informants from participating in legal proceedings and investigations. This included filing false reports, attempting to frame individuals with crimes, disseminating defamatory accusations, and coordinating harassment campaigns against those who provided testimony, cooperated with law enforcement, or otherwise participated in proceedings adverse to Pornhub's interests. FAC at ¶¶ 21, 34, 36–38, 87. The FAC further alleges that this conduct targeted not only Plaintiffs, but a broader group of witnesses and participants, including scientists, advocates, and others involved in litigation and regulatory efforts. FAC at ¶¶ 13, 21.

g.    The FAC Pleads Peonage, Slavery, and Trafficking in Persons

The FAC plausibly alleges peonage, slavery, and trafficking in persons. It alleges that the Pornhub/Aylo Defendants' enterprise knowingly facilitated and profited from content produced through sex trafficking, coercion, and exploitation, including material involving minors and non-consensual acts. FAC at ¶¶ 17–18, 474. The FAC further alleges that the Pornhub enterprise recruited, obtained, maintained, and distributed such content through their platform, while

45

knowingly permitting and monetizing its dissemination at massive scale. FAC at ¶ 474.

h.    The FAC Pleads Money Laundering

The FAC plausibly alleges money laundering. It alleges that the Pornhub/Aylo Defendants' enterprise engaged in financial transactions designed to conceal the nature, source, and ownership of proceeds derived from unlawful activity, including trafficking and the distribution of illicit content. FAC at ¶ 474. The FAC further alleges the use of a complex network of shell companies across multiple jurisdictions to obscure financial flows, evade regulatory scrutiny, and transfer funds associated with the enterprise's operations. FAC at ¶ 474. The FAC alleges such conduct as part of the enterprise's broader scheme, supporting a plausible inference that Defendants engaged in laundering of illicit proceeds.

i.    The FAC Pleads Child Sexual Exploitation Offenses

The FAC plausibly alleges child sexual exploitation offenses. It alleges that the Pornhub/Aylo Defendants knowingly stored, distributed, and profited from content depicting the sexual abuse of minors, including child sexual abuse material disseminated through their platform at massive scale. FAC at ¶¶ 17–18. The FAC further alleges that Defendants failed to implement meaningful safeguards to verify the age or consent of individuals appearing in content and continued to host and distribute such material despite notice and widespread reporting. FAC at ¶ 18. These allegations describe the knowing exploitation and distribution of material involving minors through interstate digital channels. Further, the FAC alleges that Pornhub directly partnered with sex traffickers, negating any attempt to distance itself from the conduct. FAC ¶ 17.

4)    *The FAC Plausibly Alleges Aylo's Participation in Those Predicate Acts*

Aylo cannot escape the predicate allegations by insisting that the corporation itself did

46

not personally author every statement or send every communication. The FAC alleges corporate participation through identifiable Aylo personnel and official channels. It alleges that Friedman referred journalists to Prause and Ley, that the official Pornhub account amplified RealYourBrainOnPorn at launch, and that Nugent was involved in the creation and coordination of the publication process underlying the Taylor & Francis paper. FAC at ¶¶ 10–12, 93, 479. It further alleges that those acts were part of a coordinated enterprise effort to discredit Plaintiffs and protect Aylo's revenue model. FAC at ¶¶ 170, 371, 479. It only cites these as representative examples, further alleging a broad scheme of disseminating "disinformation" concerning Plaintiffs and the potential health effects of pornography overuse. FAC at ¶¶ 4, 30. At the pleading stage, those allegations are more than sufficient to support the inference that Aylo, through its personnel and channels, committed, participated in, or knowingly furthered the predicate conduct.

    5)  *The FAC Pleads Predicate Acts Directed at Plaintiffs to Protect Aylo's Core Business*

Aylo's position improperly severs the later predicates from the business they were allegedly designed to protect. But the FAC pleads them together. It alleges an obscene-content business model generating racketeering proceeds, and then alleges wire fraud and witness retaliation directed at Plaintiffs to preserve that business from criticism, scrutiny, and disruption. FAC at ¶¶ 17–19, 170, 358, 371, 413, 474. In other words, Pornhub relied on racketeering activity, including predicate acts, to fund and sustain its targeting of Plaintiffs and others. The FAC plausibly alleges that these predicate acts enabled and amplified Defendants' ability to carry out a coordinated campaign to suppress and retaliate against Plaintiffs and disseminate disinformation regarding the health effects of pornography. The FAC thus alleges that Defendants' predicate acts directly and proximately caused Plaintiffs' injuries. That is a coherent

RICO theory, not a collection of unrelated accusations.

Finally, the FAC links those predicates to direct economic injury. It alleges enormous financial losses, steadily declining web traffic, substantial administrative and legal expenses, reduced income, and six-figure debt. FAC at ¶¶ 54, 461, 469. Thus, the FAC does not merely allege predicate acts in the abstract; it alleges predicate acts directed at Plaintiffs for the purpose of protecting Aylo's principal business and causing concrete injury to Plaintiffs' business and livelihood. Accordingly, Aylo's contention that the FAC fails to plead a single predicate act should be rejected. The FAC plausibly alleges that Aylo's underlying business rests on racketeering activity and that Aylo then directed additional predicates of wire fraud and witness retaliation at Plaintiffs in order to protect that business. That is sufficient at this stage.[14]

### 6)       Plaintiffs Have Plausibly Alleged Relatedness and Continuity

Aylo argues that the FAC alleges only a collection of disconnected grievances rather than a pattern of racketeering activity. The FAC alleges otherwise. A RICO pattern requires related predicate acts and continuity. H.J. Inc. v. Northwestern Bell Telephone Co., 492 U.S. 229, 239–43 (1989). The Third Circuit has repeatedly elaborated that relatedness and continuity are distinct inquiries, and that both may be plausibly alleged where the predicates share a common purpose, participants, victims, or methods, and either extend over a substantial period or threaten future repetition. Hindes v. Castle, 937 F.2d 868, 872–75 (3d Cir. 1991); Tabas v. Tabas, 47 F.3d 1280, 1292–96 (3d Cir. 1995).

First, the FAC plausibly alleges relatedness. It alleges that the various predicate acts

---

[14]  Exhibit A was obtained after the filing of the FAC and is not relied upon to amend the pleading by brief. It nonetheless further illustrates the commercial mechanism already alleged: the use of Plaintiffs' protected "NoFap" mark in web-search results and related SEO-driven online promotion to intercept consumers searching for Plaintiff NoFap's services and divert them to the Pornhub/Aylo Defendants' website. To the extent the Court considers Exhibit A for that limited purpose, it also provides further support for Plaintiffs' contention that Defendants' use of the mark constitutes an additional predicate form of unlawful commercial conduct directed at preserving Aylo's business model. See 18 U.S.C. § 1961; 15 U.S.C. §§ 1114, 1125(a).

shared the same purpose: discrediting Plaintiffs, suppressing criticism of Aylo's business, and protecting Aylo's revenue model. FAC at ¶¶ 17–19, 170, 371, 479. It alleges overlapping participants, including Aylo personnel, Prause, and Ley. FAC at ¶¶ 10–12, 93, 137, 170, 268–269, 371, 479. It alleges common victims—Plaintiffs—and common methods, including coordinated publications, media referrals, social-media amplification, and online dissemination of allegedly false and retaliatory material. FAC at ¶¶ 10–12, 93, 170, 261, 268–269, 358, 388, 413, 479. Under Third Circuit law, that is more than sufficient to plead relatedness. Predicate acts need not be identical or even tightly similar in form so long as they further the purposes of a common enterprise. United States v. Eufrasio, 935 F.2d 553, 565–67 (3d Cir. 1991); United States v. Bergrin, 650 F.3d 257, 270–72 (3d Cir. 2011).

Second, the FAC plausibly alleges closed-ended continuity. It does not describe a single isolated publication or one-off dispute. It alleges a broader campaign involving a years-long collaboration, the publication and amplification of defamatory material, and other retaliatory statements and conduct directed at Plaintiffs. FAC at ¶¶ 261, 268–269, 388, 413, 474, 479. The Third Circuit has made clear that courts must look beyond the sheer number of mailings or wires and instead examine the underlying scheme. Kehr Packages, Inc. v. Fidelcor, Inc., 926 F.2d 1406, 1412–14 (3d Cir. 1991). However, the FAC clearly states there are hundreds of instances of alleged wire fraud that have occurred over a long period. FAC at ¶¶ 21, 91, 348, 455, 459. Here, the FAC alleges repeated conduct over time in furtherance of the same scheme, not a handful of isolated communications.

Third, the FAC plausibly alleges open-ended continuity. It alleges that the challenged acts were not aberrational, but part of the way Aylo protected its business from critics and competing recovery-based narratives. FAC at ¶¶ 17–19, 170, 371. It further alleges repeated use

49

of the same outside actors and internal personnel to advance that objective. FAC at ¶¶ 10–12, 93, 170, 371, 479. The Third Circuit has recognized that continuity may be shown where the predicate acts are part of a regular way of doing business or otherwise threaten repetition into the future. Pelullo v. United States, 964 F.2d 193, 208–10 (3d Cir. 1992); Tabas v. Tabas, 47 F.3d 1280, 1295–96 (3d Cir. 1995). That is what the FAC alleges here: not a self-limiting episode, but a mode of protecting Aylo's commercial interests from ongoing threats.

Aylo's contrary argument fails because it isolates each event and insists that none alone establishes a pattern. But the Third Circuit has rejected that kind of atomization. The question is whether the acts, taken together, plausibly describe related and continuous racketeering conduct. Kehr Packages, Inc. v. Fidelcor, Inc., 926 F.2d 1406, 1412–14 (3d Cir. 1991); Tabas v. Tabas, 47 F.3d 1280, 1292–96 (3d Cir. 1995). Here, the FAC alleges a common purpose, recurring participants, repeated methods, and conduct extending over time with an ongoing threat of repetition. That is enough under H.J. Inc. v. Northwestern Bell Telephone Co., 492 U.S. 229 (1989) and the Third Circuit cases applying it. The FAC also plausibly alleges continuity. It describes a long-running and ongoing course of conduct extending over years and continuing into the present, not a single isolated dispute. The alleged conduct is tied to Pornhub's ongoing business interests and therefore inherently threatens repetition, satisfying both closed- and open-ended continuity.

Nor must Plaintiffs prove at this stage the enterprise's full internal mechanics or every future predicate act that might occur. Those are matters for discovery. At the pleading stage, the FAC need only plausibly allege relatedness and continuity. Under Hindes v. Castle, 937 F.2d 868 (3d Cir. 1991), Pelullo v. United States, 964 F.2d 193 (3d Cir. 1992), and Tabas v. Tabas, 47 F.3d 1280 (3d Cir. 1995), the FAC does so here. Accordingly, Aylo's argument that Plaintiffs

50

fail to plead relatedness and continuity should be rejected.

      **E.**      **Plaintiffs Adequately Plead Claims Under the Lanham Act**

          *1)*      *Plaintiffs State Valid Claims for Unfair Competition and Trademark Infringement*

              a.      <u>The FAC Plausibly Alleges Actionable Use of the NoFap Mark in Commerce</u>

Aylo's argument rests on an overly narrow reading of <u>Parks LLC v. Tyson Foods, Inc.</u>, 863 F.3d 220 (3d Cir. 2017). That decision does not hold that every Lanham Act claim requires a defendant to use a mark as a formal "designation of origin" in the strictest sense Aylo suggests. Rather, <u>Parks LLC v. Tyson Foods, Inc.</u>, 863 F.3d 220 (3d Cir. 2017) distinguishes between false-association claims under 15 U.S.C. § 1125(a)(1)(A) and false-advertising claims under 15 U.S.C. § 1125(a)(1)(B), and it prevents defendants from collapsing those distinct theories into one another. Aylo's reading would improperly convert Parks LLC v. Tyson Foods, Inc., 863 F.3d 220 (3d Cir. 2017) into a categorical shield for any commercially valuable use of another's mark so long as the defendant later characterizes the use as "expressive," "descriptive," or not sufficiently source-designating. That is not what the case holds.

The FAC plausibly alleges actionable use in commerce under that framework. Plaintiffs do not allege that Aylo merely referred to NoFap in passing or discussed it as a topic of public debate. They allege that Aylo used the "NoFap" mark in connection with online promotion, search-facing consumer pathways, and related content dissemination in order to capture the attention of users seeking Plaintiffs' services and redirect them to Aylo's own platforms. FAC at ¶¶ 89-90. That is not a purely internal, invisible, or incidental use. It is consumer-facing and commercially consequential.

The FAC further alleges that Defendants tied false and disparaging assertions to

51

Plaintiffs' mark and online presence, including but not limited to the 2025 "hidden cookies" accusation, in a way that interfered with Plaintiffs' ability to attract and retain users. FAC at ¶¶ 358, 413, 452, 460–465. Thus, Plaintiffs' theory is not limited to source confusion in the narrowest trademark sense. It is also that Defendants used the NoFap mark in commerce while deploying false and misleading statements to alter consumer behavior and divert trade. That is precisely why Aylo's reliance on Parks LLC v. Tyson Foods, Inc., is misplaced: the FAC pleads both false-association and false-advertising theories, and Parks LLC v. Tyson Foods, Inc., does not eliminate the latter merely because the challenged conduct also involves a trademark.

To the extent Aylo argues that Plaintiffs must plead classic point-of-sale labeling or packaging-style source designation, that too is too narrow. Under the FAC, Defendants allegedly used the NoFap mark in a way that intercepted consumers at the point of search and online decision-making and redirected them to Aylo's ecosystem. FAC at ¶¶ 452, 460–465. In the modern digital environment, that is commercially significant use. At the pleading stage, Plaintiffs are not required to prove the final contours of consumer perception; they need only plausibly allege that Defendants used the NoFap mark in commerce in a manner likely to confuse, divert, or mislead consumers. The FAC does so.

Exhibit A, although obtained after filing and not attached to the FAC, is consistent with and illustrates the same mechanism already pleaded. It shows that consumers searching for "NoFap" encounter Aylo-linked results using Plaintiffs' mark, which is the same kind of consumer diversion the FAC alleges. Plaintiffs do not rely on Exhibit A to amend the FAC or supply a missing element. Even without it, the FAC plausibly alleges actionable commercial use of the NoFap mark.

Accordingly, Aylo's argument that the FAC fails to allege actionable use of the mark in

commerce should be rejected. The FAC alleges far more than incidental reference. It alleges consumer-facing, commercially valuable use of Plaintiffs' protected mark in a way designed to divert traffic, suppress Plaintiffs' business, and support Aylo's competing commercial objectives. That is sufficient at this stage.

b.      Plaintiffs Plausibly Allege Confusion, Diversion, and Withheld Trade

The FAC also plausibly alleges confusion, diversion, and withheld trade. It alleges that Defendants' use of the NoFap mark, coupled with false and disparaging statements about Plaintiffs, interfered with Plaintiffs' ability to attract and retain consumers seeking NoFap services. FAC at ¶¶ 89-90, 358, 413, 452, 460–465. That is a classic diversion theory: consumers looking for Plaintiffs are intercepted, redirected, and dissuaded from using Plaintiffs' services.

That theory is actionable even if some consumers ultimately realize that Aylo is not NoFap. Diversion at the point of consumer decision making is itself commercially harmful. See Checkpoint Sys., Inc. v. Check Point Software Techs., Inc., 269 F.3d 270 (3d Cir. 2001). Because Plaintiffs allege lost users, lost traffic, lost subscriptions, and related economic harm resulting from that diversion, they have adequately pleaded confusion and commercial injury.

Aylo's contrary argument depends on contesting how consumers would perceive the challenged uses and whether those uses would likely cause confusion in the marketplace. But that is a classic fact-intensive inquiry, not one ordinarily resolved on a motion under Fed. R. Civ. P. 12(b)(6). As Zurco Inc. v. Sloan Valve Co., 785 F. Supp. 2d 476 (W.D. Pa. 2011) explains, likelihood of confusion under the Lanham Act turns on whether consumers are likely to believe that the accused goods or services are connected with, sponsored by, or come from the source associated with the plaintiff's mark. Zurco also makes clear that actual confusion is not required and that the issue is ordinarily resolved by examining the full evidentiary picture rather than by

53

imposing a rigid pleading-stage proof requirement.

That point matters here. Aylo effectively asks the Court to decide, as a matter of law and at the pleadings stage, that no reasonable consumer could be confused, diverted, or induced to withhold trade by Defendants' alleged use of the NoFap mark and related falsehoods. But the FAC alleges the opposite: that Defendants used Plaintiffs' mark in consumer-facing online pathways and paired that use with false and damaging assertions about Plaintiffs and their services. FAC at ¶¶ 89-90, 358, 413, 452, 460–465. Under Zurco, that kind of consumer-confusion dispute is not appropriately resolved by slicing the allegations into isolated fragments and declaring confusion impossible as a matter of law.

At this stage, Plaintiffs need only plausibly allege that Defendants' use of the NoFap mark was likely to confuse or divert consumers and cause withheld trade. The FAC does so by alleging use of the mark in commerce, false and disparaging messaging tied to that use, consumer diversion, and resulting losses in traffic, subscriptions, and business activity. FAC at ¶¶ 54, 358, 413, 452, 460–465. That is enough to defeat dismissal.

        c.        Aylo's Fair-Use Argument Does Not Warrant Dismissal

Aylo's reliance on KP Permanent Make-Up, Inc. v. Lasting Impression I, Inc., 543 U.S. 111 (2004), does not defeat Plaintiffs' Lanham Act claims at the pleading stage. KP Permanent addressed classic descriptive fair use—i.e., use of a term "otherwise than as a mark" and "only to describe" the defendant's own goods or services. Id. at 122-23. That is not what the FAC alleges here.

Here, the FAC alleges that Aylo used the exact NoFap mark commercially, diversionally, and misleadingly to attract users searching for Plaintiffs and route them to Pornhub content, including through search-facing titles, category pages, and promotional language such as "Watch

Nofap porn videos for free, here on Pornhub.com" and "FAILED NO FAP? It's ok, we got you." FAC ¶¶ 89-90, 443; Ex. A. Those allegations plausibly describe use of NoFap as a traffic-generating source signal and competitive lure—not merely descriptive use of ordinary language. KP Permanent therefore does not support dismissal. To the contrary, it confirms that likelihood of confusion remains part of the plaintiff's case and that fair use is a context-specific inquiry. 543 U.S. at 117-23. And in the Third Circuit, whether a use is fair turns on factual issues including whether the mark was used "otherwise than as a mark," whether the use was in good faith, and whether it suggested sponsorship or endorsement. Century 21 Real Estate Corp. v. Lendingtree, Inc., 425 F.3d 211, 222-23 (3d Cir. 2005). The FAC plausibly alleges the opposite: that Aylo used NoFap precisely because of its source-identifying power, and did so to divert consumers seeking Plaintiffs' services.

Nor can Aylo establish nominative fair use on the pleadings. Under Century 21, a defendant must do nothing that would suggest sponsorship or endorsement. Id. at 222. But the FAC plausibly alleges that Aylo's repeated display of NoFap in search-result text and video labeling falsely suggested that NoFap-affiliated or NoFap-approved content existed on Pornhub, or that Plaintiffs were somehow connected to Aylo's website.

In any event, fair use is not a Rule 12(b)(6) issue on these allegations. As Zurco recognized, likelihood of confusion and related trademark questions are highly fact-intensive. Zurco Inc. v. Sloan Valve Co., 785 F. Supp. 2d 476, 492-502 (W.D. Pa. 2011). The same is true of fair use. Whether Aylo used NoFap descriptively or as a mark, whether it acted in good faith, whether its presentation implied affiliation, and whether consumers were diverted or confused all depend on marketplace context and factual development. At this stage, Plaintiffs need only plausibly allege non-fair use, and they have done so. The FAC alleges commercial, diversionary,

55

and misleading use of the NoFap mark—not classic descriptive fair use. Aylo's fair-use defense therefore cannot justify dismissal.

### 2.    *The FAC Plausibly Alleges False Association and False Advertising*

The FAC also supports claims for false association and false advertising. It alleges that Defendants used Plaintiffs' mark while disseminating false and misleading assertions about Plaintiffs and their services, including the 2025 "hidden cookies" accusation and related disparaging statements. FAC at ¶¶ 89-90, 358, 413. The FAC further alleges that those statements were false and were deployed in a manner tied to Defendants' commercial efforts to divert users away from Plaintiffs. FAC at ¶¶ 89-90, 358, 413, 452, 460–465.

That is enough to plead false advertising and false association under 15 U.S.C. § 1125(a). Plaintiffs' theory is not merely that Defendants said bad things about them. It is that Defendants used false and misleading statements in commerce, in connection with Plaintiffs' mark, to alter consumer behavior and redirect trade. That is actionable under the Lanham Act.

Aylo's reliance on Pernod Ricard USA, LLC v. Bacardi U.S.A., Inc., 653 F.3d 241 (3d Cir. 2011) is misplaced because that case involved a very different commercial setting and a very different theory of deception. There, the dispute concerned whether a product-description claim was literally or impliedly false in context. Here, by contrast, the FAC alleges that Defendants used Plaintiffs' protected NoFap mark in consumer-facing online pathways, paired that use with false and disparaging assertions about Plaintiffs and their services, and thereby diverted consumers seeking Plaintiffs to Aylo's platforms. FAC at ¶¶ 358, 413, 452, 460–465. Plaintiffs' theory is thus not merely that Aylo made a debatable product-description statement. It is that Aylo used Plaintiffs' mark in commerce as part of a misleading and diversionary mechanism directed at consumers searching for NoFap, which caused withheld trade, reduced traffic, and

diminished business activity. FAC at ¶¶ 54, 452, 460–465. That is a materially different theory of Lanham Act injury.

The same is true of U.S. Healthcare, Inc. v. Blue Cross of Greater Philadelphia, 898 F.2d 914 (3d Cir. 1990). That case addressed comparative advertising and the scope of actionable commercial representations under the Lanham Act. It did not involve the alleged use of a competitor's protected mark to intercept search traffic, create initial-interest confusion, and redirect consumers at the point of online decision making. Here, Plaintiffs allege not merely comparative speech or criticism, but commercial use of the NoFap mark in a way designed to suppress Plaintiffs' traffic, subscriptions, and business opportunities while steering consumers into Aylo's ecosystem. FAC at ¶¶ 358, 413, 452, 460–465. Neither Pernod Ricard USA, LLC v. Bacardi U.S.A., Inc. nor U.S. Healthcare, Inc. holds that a defendant may engage in that kind of mark-based consumer diversion, pair it with allegedly false statements, and then obtain dismissal by characterizing the conduct as mere description or comparison. At minimum, the FAC pleads a materially different commercial mechanism of deception, making Aylo's reliance on those cases premature at the Rule 12(b)(6) stage.

> 3.  *At Minimum, Dismissal of the Lanham Claims Would Be Improper at Rule 12(b)(6)*

Aylo's arguments largely depend on factual characterizations that cannot be resolved on a motion to dismiss. Whether consumers were likely to be confused, whether the Pornhub/Aylo Defendants' use was commercially significant, whether the challenged statements were materially misleading, and how consumers encountered and responded to the use of Plaintiffs' mark are factual questions. At the pleading stage, Plaintiffs need only plausibly allege those elements. They have done so. The FAC alleges use of Plaintiff NoFap's protected mark in ways directed at consumers, false and misleading statements tied to that use, diversion of traffic and

subscriptions, and resulting commercial injury. FAC at ¶¶ 89-90, 54, 358, 413, 452, 460–465. That is sufficient to state claims under the Lanham Act. Accordingly, Aylo's argument that Plaintiffs fail to assert Lanham Act claims should be rejected.

**F.      Plaintiffs Have Pled Trademark Dilution under § 1125(c)**

*1)      Plaintiffs Have Plausibly Pleaded Fame*

Aylo is not entitled to dismissal of the dilution claim on the theory that NoFap is not sufficiently famous as a matter of law. At the pleading stage, the question is not whether Plaintiffs have already proven fame to the satisfaction of a factfinder, but whether the FAC alleges enough concrete facts to make fame plausible. The FAC does so.

The FAC alleges that NoFap used and promoted the NoFap mark for more than a decade, that the mark has achieved global reach, that NoFap's platform has generated millions of monthly views and users, that NoFap maintains a substantial multi-platform presence including more than 1.19 million Reddit subscribers, and that the mark is federally registered. FAC at ¶¶ 22, 60, 73, 147-148. It further alleges broad media attention, public recognition, and a substantial degree of marketplace association between NoFap and pornography-recovery services. FAC at ¶¶ 60, 76-77. Those are not bare legal conclusions. They are factual allegations directed to duration, reach, recognition, and prominence. Prior to Pornhub's disinformation campaign, which destroyed its reputation and operational sustainability, NoFap was a widely recognized name. FAC ¶ 22, 76, 147. While the enterprise's suppression campaign has substantially reduced NoFap's web traffic—diminishing it to a fraction of its prior levels through dilutive and other tortious conduct—such harm does not preclude, and in fact supports, Plaintiffs' dilution claim. FAC ¶ 22. The Pornhub/Aylo Defendants cannot diminish the fame of Plaintiffs' mark through dilution, defamation, and other tortious conduct, and then invoke that diminished recognition as a

defense to liability.

That is enough to survive Rule 12(b)(6). Courts in this Circuit do not apply a categorical rule that trademark fame for dilution is always beyond the pleadings, but they do deny dismissal where the complaint contains concrete factual allegations supporting fame. See Parikh Worldwide Media, LLC v. Sheth, Civil No. 20-01185 (RBK/JS) (D.N.J. Mar. 8, 2021); Dille Family Trust v. Nowlan Family Trust, 207 F. Supp. 3d 535 (E.D. Pa. 2016). By contrast, dismissal is appropriate only where the complaint offers nothing more than conclusory assertions that a mark is famous. See Dentsply Sirona Inc. v. Net32, Inc., Civil No. 1:17-CV-01530 (M.D. Pa. Mar. 4, 2020). The FAC is far closer to the former line of cases than the latter.

Aylo's reliance on Cornette v. Graver, 473 F. Supp. 3d 437 (W.D. Pa. 2020) is misplaced because Plaintiffs' allegations are materially different in kind. In Cornette, the plaintiff survived the pleading stage based on allegations of recognition tied to his name and likeness, but later failed at the preliminary-injunction stage when the court found the evidentiary record insufficient to show fame among the general consuming public. This case is different. Plaintiffs do not rely on niche celebrity or subcultural recognition. They allege that the NoFap mark has been used and promoted for more than a decade, has reached millions of users, has substantial multi-platform presence, has received broad media attention, and functions as the dominant identifier for a widely recognized recovery-oriented service. FAC at ¶¶ 60, 73. Thus, unlike the proof found lacking in Cornette, the FAC here pleads facts aimed at broad public recognition, not merely fame within a bounded subculture. At minimum, those allegations are sufficient to survive dismissal.

> 2)     *Plaintiffs Have Alleged a Likelihood of Dilution by Blurring or Tarnishment*

Aylo's argument that Plaintiffs fail to allege dilution by blurring or tarnishment ignores

the FAC's express allegations. The FAC specifically alleges that Pornhub "caused dilution of the [NoFap] mark's quality through blurring and/or tarnishment." FAC at ¶ 439. It further alleges that NoFap—not YourBrainOnPorn (which was cited to demonstrate the Pornhub/Aylo Defendants' modus operandi of dilutive and infringing conduct)—is the protected mark at issue, and that Pornhub used the NoFap mark in connection with pornography-related content and online promotion in a way that weakens the mark's distinct association with recovery services. FAC at ¶¶ 14, 73, 437–439, 452, 460–465.

That is sufficient to plead both tarnishment and blurring. The FAC alleges tarnishment because Pornhub associated a mark dedicated to pornography-recovery services with the very pornography that mark exists to help users avoid. FAC at ¶¶ 89-90, 452, 460–465; see Hormel Foods Corp. v. Jim Henson Prods., Inc., 73 F.3d 497, 507 (2d Cir. 1996) . It also alleges blurring because Pornhub repeatedly used the identical NoFap mark in consumer-facing online contexts with the intent and effect of associating Pornhub' websites with Plaintiff NoFap's mark and diverting users seeking Plaintiff NoFap's services. FAC at ¶¶ 89, 371, 437–439, 452, 460–465. Whether Defendants ultimately caused such marketplace harm is a merits issue, not a Rule 12(b)(6) basis for dismissal.

### G.    Plaintiffs Have Pled Trade Disparagement

The FAC pleads all elements of trade disparagement under Pennsylvania law: falsity, intent or foreseeability of pecuniary harm, actual pecuniary loss, and knowledge of falsity or reckless disregard. See De Botton v. Kaplin Stewart Reiter & Stein, P.C., No. 1635 EDA 2012 (Pa. Super. Ct. Sept. 25, 2013); Anderson v. J.P. Morgan Chase Bank, Civ. A. No. 22-cv-5084 (E.D. Pa. Mar. 29, 2024) . The FAC alleges false factual statements directed at the quality, legitimacy, safety, and commercial value of Plaintiff NoFap's services, including statements that

NoFap is harmful, violent, medically unsound, and secretly uses "hidden cookies" to track users' sexual behavior. FAC at ¶¶ 358, 413, 430, 437, 440, 443, 445. Those are actionable under Pennsylvania law because they bear directly on the marketability and trustworthiness of Plaintiffs' services, not merely on generalized reputation. See Pro Golf Mfg., Inc. v. Tribune Review Newspaper Co., 761 A.2d 553 (Pa. Super. Ct. 2000) .

The FAC also alleges the required pecuniary harm. It alleges that, as a direct and proximate result of Defendants' campaign, fewer people are likely to use, recommend, link to, discuss, or otherwise engage with NoFap, and that Plaintiffs suffered declining web traffic, reduced membership, missed partnership and funding opportunities, and substantial economic loss. FAC at ¶¶ 452, 455–460. At the pleading stage, that is more than sufficient to allege commercial disparagement. Whether Aylo can later recharacterize these statements as opinion or otherwise nonactionable is a merits issue, not a basis for dismissal under Fed. R. Civ. P. 12(b)(6).

### H.    Plaintiffs Adequately Plead Tortious Interference

Aylo's motion fails because the FAC plausibly alleges both the existence of contractual and prospective business relations and intentional interference with them. Under Pennsylvania law, a claim for tortious interference requires a contractual or prospective contractual relationship, purposeful action intended to harm that relationship, the absence of privilege or justification, and resulting damages. See Acumed LLC v. Advanced Surgical Servs., Inc., 561 F.3d 199, 212 (3d Cir. 2009). The FAC pleads those elements here.

First, the FAC alleges that Aylo knew of the 2021 Non-Disparagement Agreement and nevertheless continued using Prause as a public-facing surrogate in a continuing campaign against Plaintiffs. FAC at ¶¶ 93, 451. Those allegations plausibly support the inference that Aylo did not merely observe Prause's contract-breaching conduct, but intentionally encouraged,

facilitated, or ratified it. Second, the FAC also alleges interference with Plaintiffs' prospective business relations. It alleges that Defendants' campaign caused fewer people to use, recommend, link to, discuss, or otherwise engage with NoFap; that academics and professionals became less likely to collaborate with Plaintiffs; and that Plaintiffs lost traffic, membership, partnerships, and funding opportunities as a result. FAC at ¶¶ 452, 455–460. That is sufficient to plead interference with both existing and prospective commercial relationships.

Aylo cannot obtain dismissal by reframing the FAC as alleging only criticism or publication. The theory is not that Aylo merely said unfavorable things. It is that Aylo intentionally used Plaintiffs' contractual counterparty and the same recurring outside actors, platforms, and publications to disrupt Plaintiffs' contractual protections for Aylo's own commercial benefit. FAC at ¶¶ 93, 451-452, 455–460. Whether Aylo ultimately had justification or privilege is a merits issue; at the pleading stage, Plaintiffs have plausibly alleged improper interference and resulting harm.

## I.    Plaintiffs Adequately Plead Defamation Per Se and Per Quod

Aylo's argument to dismiss Count IX fails because it improperly equates "publication" with formal authorship. Under Pennsylvania law, defamation requires "publication by the defendant," but publication is not limited to byline authorship. A defendant may be liable where it participated in communicating the defamatory matter, authorized its dissemination, or is responsible for a foreseeable republication. See Rose v. Dowd, 265 F. Supp. 3d 525, 531 (E.D. Pa. 2017); Reed v. Brown, 166 A.3d 570, 576–78 (Pa. Commw. Ct. 2017). Aylo's motion wrongly narrows that element to formal authorship alone.

The FAC plausibly alleges far more than passive association with a third-party publication. It alleges that Gary Nugent, "a high-level employee of the Pornhub/Aylo

62

Defendants," was involved in creating the Taylor & Francis paper. FAC at ¶ 258. It further alleges that Prause and Ley, "in collaboration with the Pornhub/Aylo Defendants," compiled the underlying spreadsheets of purportedly violent NoFap posts, and that after Nugent was added, revised spreadsheet material was published to OSF and then incorporated into the final paper. FAC at ¶¶ 261, 268–69. Taking those allegations as true, the FAC plausibly pleads participation in and responsibility for the publication.

Further, the Pornhub/Aylo Defendants improperly focus on the Taylor & Francis paper. While that paper is a significant event and perhaps one of the most egregious of them all, it represents only one incident among thousands of defamatory statements disseminated about Plaintiffs by Defendant Prause, Defendant Ley, and other alleged enterprise members in alleged coordination with the Pornhub/Aylo Defendants. These statements have included allegations that Plaintiff Rhodes is severely mentally ill, a violent extremist, attempted to murder individuals, issued rape and death threats, forced a person to consume CSAM material, killed a dog, fled from police after crashing a car, engaged in stalking and sexual assault, that Plaintiff Rhodes abuses women, that Plaintiff Rhodes is a fraudster who never had a problem with excessive pornography use, that Plaintiff Rhodes committed insurance fraud and tax evasion and fundraising fraud, that Plaintiff Rhodes harbored and expressed discriminatory beliefs, that Plaintiffs engaged in domestic terrorism, that Plaintiff NoFap is a designated terrorist organization, that Plaintiffs were involved in a purported sexual assault of Defendant Prause, among other false statements imputing violent, criminal, and other unsavory conduct to Rhodes and Plaintiff NoFap. FAC at ¶¶ 4, 37, 40-41, 483(a).

Aylo's actual-malice argument fails as well. Aylo contends Plaintiffs do not allege the Aylo Defendants knew the statements were false or doubted their truth. But the FAC specifically

63

alleges the paper was "extensively data falsified," including through inclusion of non-violent NoFap posts and exclusion of violent posts from the compared "control" subreddits. FAC at ¶ 271. If Aylo, through Nugent, participated in developing the underlying material incorporated into the paper, that plausibly supports knowledge of falsity or reckless disregard at the pleading stage. See McCafferty v. Newsweek Media Grp., Ltd., 955 F.3d 352, 362–65 (3d Cir. 2020); Joseph v. Scranton Times L.P., 129 A.3d 404, 437 (Pa. 2015).

Finally, the FAC pleads defamation *per se*. Pennsylvania recognizes per se defamation where statements impute criminality or business misconduct. Rose, 265 F. Supp. 3d at 531. Here, the FAC alleges statements portraying Plaintiffs as associated with murders, violence, criminality, and a "violent group," and alleges those statements were false and defamatory. FAC at ¶¶ 280, 290.

Count IX is therefore adequately pleaded and should not be dismissed.

## J.    Plaintiffs Adequately Plead Invasion-of-Privacy Claims Under Pennsylvania Law.

Aylo's privacy argument largely repackages its failed publication argument. It contends that Counts X and XI fail because the Aylo Defendants did not "publish" anything about Plaintiffs, and that Count XII fails because there are no allegations that Aylo engaged in intrusion or data collection. But the FAC alleges that Aylo, through Gary Nugent and in collaboration with Prause and Ley, participated in the opposition research and development of the Taylor & Francis paper and the related campaign to publicize it. FAC at ¶¶ 258, 261, 268–69. For the same reasons that Count IX adequately pleads publication, Counts X and XI do as well.

### 1)    Count X for False Light Is Adequately Pleaded.

To plead false light under Pennsylvania law, a plaintiff must allege that: (1) the defendant gave publicity to a matter concerning the plaintiff; (2) the matter placed the plaintiff before the

public in a false light; (3) the false light would be highly offensive to a reasonable person; and (4) the defendant had knowledge of or acted in reckless disregard as to the falsity of the publicized matter and the false light in which the plaintiff would be placed. Graboff v. Colleran Firm, 744 F.3d 128, 136 (3d Cir. 2013); McCafferty v. Newsweek Media Grp., Ltd., 955 F.3d 352, 365–66 (3d Cir. 2020).

The FAC satisfies those elements. It alleges Defendants made and published false statements about Plaintiffs that were widely disseminated and placed Plaintiffs before the public in a false light. FAC at ¶¶ 500–504. More specifically, the FAC alleges that the Taylor & Francis paper was built on falsified data, that its "title and premise" were false and defamatory, and that Prause, Ley, and other collaborators then promoted it publicly with statements portraying NoFap as violent and linked to real murders. FAC at ¶¶ 271, 280, 290. Those allegations are sufficient to plead publicity, falsity, and a highly offensive false impression.

The FAC also adequately pleads the fault element. Pennsylvania false-light claims require allegations that the defendant knew of the falsity or acted with reckless disregard for the truth. Graboff, 744 F.3d at 136; McCafferty, 955 F.3d at 365–66. Here, the FAC alleges data falsification, Aylo-linked participation in the underlying opposition research, and a coordinated effort to publicize the resulting accusations despite the falsified methodology. FAC at ¶¶ 258, 261, 268–71, 290. At the pleading stage, that plausibly alleges at least reckless disregard for falsity.

      2)      *Count XI for Publicity Given to Private Life Is Adequately Pleaded.*

Under Pennsylvania law, publicity given to private life requires allegations that: (1) the defendant publicized a matter concerning the private life of another; (2) the matter publicized would be highly offensive to a reasonable person; and (3) the matter is not of legitimate concern

to the public. Barclift v. Keystone Credit Servs., LLC, 93 F.4th 136, 144 (3d Cir. 2024); Restatement (Second) of Torts § 652D. "Publicity" means disclosure to the public at large, not merely to a single third person. Barclift, 93 F.4th at 144. The FAC adequately pleads those elements. It expressly alleges that Defendants disclosed and published private matters related to Rhodes to the public at large, that the disclosures were highly offensive, and that no legitimate public interest justified them. FAC at ¶¶ 509–11.

### 3) Count XII for Intrusion into Private Affairs Is Adequately Pleaded.

Under Pennsylvania law, intrusion upon seclusion or private affairs requires allegations that: (1) the defendant intentionally intruded, physically or otherwise, upon the solitude or seclusion of another or his private affairs or concerns; and (2) the intrusion would be highly offensive to a reasonable person. Cook v. GameStop, Inc., 148 F.4th 153, 160 (3d Cir. 2025); Restatement (Second) of Torts § 652B. The tort is aimed at the intrusion itself, not merely later publication.

The FAC adequately pleads those elements as well. It alleges that the Pornhub/Aylo Defendants intentionally intruded upon Rhodes's private life without consent; that Rhodes had a reasonable expectation of privacy in his personal life, communications, medical records, family relationships, social media usage, and other confidential details; and that Defendants engaged in a coordinated campaign of monitoring, data mining, and collecting personal information without authorization. FAC at ¶¶ 516–20. It further alleges that Defendants used the information obtained to construct false and humiliating narratives and to track, surveil, or monitor Rhodes's activities and private communications. FAC at ¶ 520.

Aylo says the FAC alleges only public information, but that is not an accurate reading of the pleading. The FAC alleges collection of private addresses, phone numbers, email addresses,

medical records, private communications, private photographs, and other personal materials through data mining and opposition research. FAC at ¶¶ 43, 169, 277, 408, 512, 519. The FAC further alleges that the Pornhub/Aylo Defendants' enterprise members, namely Defendants Prause and Ley, extracted private information from an estranged family member of Plaintiff Rhodes who was accused of abusing him during his childhood. FAC at ¶ 39. It is alleged that Defendants Prause and Ley publicly disseminated information, such as medical records and private photographs of Plaintiff Rhodes, that they obtained from this individual and other opposition research strategies. FAC at ¶¶ 471, 512. Accordingly, Counts X, XI, and XII are adequately pleaded and should not be dismissed.

### K.    Plaintiffs Adequately Plead Intentional Infliction of Emotional Distress.

Aylo's argument again ignores the FAC's actual allegations. Under Pennsylvania law, a plaintiff pleading intentional infliction of emotional distress must allege extreme and outrageous conduct that is intentional or reckless, causes emotional distress, and results in severe distress. Hoy v. Angelone, 720 A.2d 745, 753–54 (Pa. 1998). "Extreme and outrageous" conduct is conduct "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency." Id. at 754. The FAC plausibly alleges exactly that.

The FAC does not rely on a single insult or isolated publication. Rather, it alleges a deliberate, coordinated campaign targeting Rhodes through fabricated accusations, repeated false allegations of serious crimes, false administrative and law-enforcement reports, close surveillance and data-mining, extensive opposition research, repeated disparagement to Rhodes's associates and the public, coordination with third parties to destroy his reputation and professional standing, and even relaying celebratory messages about the death of Rhodes's friend Gary Wilson. FAC at ¶ 526. It further alleges Defendants intentionally conspired to fabricate

67

false and defamatory accusations against Plaintiffs to harm their reputation and standing in the community, and that Defendants' conduct was "extreme and outrageous." FAC at ¶¶ 524–25.

The FAC also pleads intent, causation, and severity. It alleges that Defendants acted "with the intent to cause, or in reckless disregard of a substantial probability of causing severe emotional distress" to Rhodes, that the causal connection between their targeted harassment and Rhodes's distress was highly foreseeable, and that Rhodes in fact suffered severe emotional pain, humiliation, anxiety, depression, and ongoing damage. FAC at ¶¶ 527–29. At the pleading stage, those allegations are enough to state the mental-state and injury elements of the tort. Aylo's argument improperly asks the Court to weigh the facts and decide, as a matter of law, that this alleged campaign was not sufficiently outrageous or severe. That is not the Rule 12(b)(6) standard.

Nor is dismissal warranted because Aylo disputes whether Plaintiffs can ultimately prove the claim with medical evidence or other proof. Any evidentiary requirement goes to proof, not whether the FAC plausibly alleges an IIED claim on its face. See Gray v. Allen Huntzinger & Central Parking Sys., Inc., 147 A.3d 924, 933–34 (Pa. Super. Ct. 2016)(addressing expert medical testimony at the proof stage). Here, the FAC alleges an intentional, malicious, multi-pronged campaign aimed at humiliating and destabilizing Rhodes, and alleges severe resulting distress. FAC at ¶¶ 524–29. That is sufficient at the pleading stage, and Count XIII should not be dismissed.

### L.    Plaintiffs Adequately Plead Civil Conspiracy in Count XIV.

Under Pennsylvania law, civil conspiracy requires "a combination of two or more persons acting with a common purpose to do an unlawful act or to do a lawful act by unlawful means," plus malice, an overt act in furtherance of the conspiracy, and actual legal

68

damage. Thompson Coal Co. v. Pike Coal Co., 412 A.2d 466, 472 (Pa. 1979); Lackner v. Glosser, 892 A.2d 21, 35 (Pa. Super. Ct. 2006). A civil conspiracy becomes actionable when "some overt act is done in pursuance of the common purpose or design, and actual legal damage results." Pelagatti v. Cohen, 536 A.2d 1337, 1342 (Pa. Super. Ct. 1987). The FAC plausibly alleges those elements here. It alleges that Defendants "entered into an agreement, understanding, or concerted action intended to harm Plaintiffs by engaging in defamatory, fraudulent, and otherwise tortious conduct," and that they "conspired to target Plaintiffs with tortious conduct, including to cause reputational and economic harm to Plaintiffs." FAC at ¶¶ 532–33. It further alleges that "[e]ach Defendant" committed overt acts in furtherance of that conspiracy. FAC at ¶ 534. Nor does the FAC merely offer the sort of bare, collective accusation Aylo describes. Count XIV incorporates the FAC's preceding factual allegations, which set out the alleged roles of the conspirators and the acts tying them together.

The FAC also adequately pleads malice and damage. Pennsylvania requires malice in the sense of an intent to injure. Thompson Coal, 412 A.2d at 472. At the pleading stage, Plaintiffs are not required to prove the full details of the conspirators' internal communications; they need only allege enough facts to make the conspiracy plausible. Because the FAC plausibly alleges an agreement, unlawful purpose or means, overt acts, malice, and resulting damage, Count XIV should not be dismissed.

## M.    Plaintiffs Adequately Plead Negligence and Gross Negligence in Count XV.

Aylo's argument fails because it misstates the FAC and oversimplifies Pennsylvania duty law. Under Pennsylvania law, duty is a policy question governed by the *Althaus* factors, including the relationship between the parties, the social utility of the defendant's conduct, the nature and foreseeability of the risk, the consequences of imposing a duty, and the overall public

69

interest. <u>Althaus ex rel. Althaus v. Cohen</u>, 756 A.2d 1166, 1169 (Pa. 2000); <u>Walters v. UPMC Presbyterian Shadyside</u>, 187 A.3d 214, 223–24 (Pa. 2018). The relationship factor is only one part of that analysis. Here, the FAC alleges not mere inaction, but affirmative conduct by Aylo in supporting, funding, coordinating, enabling, financing, and amplifying a campaign of harassment and defamation carried out through agents or collaborators acting on its behalf. FAC at ¶ 539. It also incorporates the preceding factual allegations tying Aylo to the opposition research underlying the Taylor & Francis publication and the broader campaign against Plaintiffs. FAC at ¶¶ 258, 261, 268–69. At the pleading stage, those allegations are sufficient to make duty plausible under Pennsylvania law. The gross-negligence claim is likewise adequately pleaded. Pennsylvania defines gross negligence as conduct that is flagrant and grossly deviates from the ordinary standard of care. <u>Feleccia v. Lackawanna Coll.</u>, 215 A.3d 3, 20 (Pa. 2019); <u>Albright v. Abington Mem'l Hosp.</u>, 696 A.2d 1159, 1164 (Pa. 1997). The FAC alleges that Defendants' conduct constituted gross negligence by evidencing a reckless and conscious disregard for Plaintiffs' rights and well-being. FAC at ¶ 545.

**N.  Plaintiffs Adequately Plead a Claim for Declaratory Judgment.**

Aylo's non-signatory status does not, by itself, defeat Count XVII at the pleading stage. Declaratory relief is available where there is an "actual, substantial, and immediate controversy" between parties with adverse legal interests. <u>Project Vote v. Kelly</u>, 805 F. Supp. 2d 152, 188–89 (W.D. Pa. 2011). The FAC alleges exactly such a controversy here, pleading that an actual, substantial, and immediate dispute exists regarding the parties' "rights, obligations, and liabilities" arising from the Non-Disparagement Agreement and the continuing conduct Plaintiffs contend breaches it. FAC at ¶ 556. But at this stage, Aylo's non-signatory argument does not eliminate the existence of a live controversy as alleged in the FAC. Count XVII is therefore

70

sufficiently pleaded and should not be dismissed.

### O.     Plaintiffs' Request for Injunctive Relief Should Not Be Dismissed.

Aylo's argument against injunctive relief is premature. Injunctive relief is a remedy, not a standalone cause of action, and it should not be dismissed at the pleading stage where the FAC plausibly alleges ongoing misconduct and continuing irreparable harm. Plaintiffs are not required at the Rule 12 stage to prove their ultimate entitlement to an injunction; they need only plausibly allege ongoing harm for which equitable relief may be appropriate. The FAC alleges continuing contract-breaching disparagement, continuing publication and amplification of false statements, and ongoing harm to Plaintiffs' reputation, goodwill, and business. FAC at ¶¶ 290–91, 408, 500, 513, 521, 529, 544. Those allegations are sufficient to preserve Plaintiffs' request for equitable relief.

The FAC also plausibly alleges irreparable harm. The underlying conduct at issue has led Plaintiff Rhodes to experience distress, mental anguish, and consider suicide. Plaintiff NoFap avers it won't be able to continue staying online without relief. FAC at ¶ 22. Under Third Circuit law, loss of control over reputation and loss of goodwill constitute classic forms of irreparable injury that are not easily remedied by money damages alone. Pappan Enters., Inc. v. Hardee's Food Sys., Inc., 143 F.3d 800, 805 (3d Cir. 1998); S&R Corp. v. Jiffy Lube Int'l, Inc., 968 F.2d 371, 378 (3d Cir. 1992). Here, the FAC alleges not a single completed wrong, but an ongoing course of conduct that continues to damage Plaintiffs' reputation and business relationships. FAC at ¶¶ 290–91, 408, 426, 500, 513, 544. At the pleading stage, that is enough to support the continued availability of injunctive relief.

Aylo's assertion that money damages are necessarily adequate is likewise unpersuasive. Even where damages may ultimately be available, injunctive relief remains appropriate where

the alleged harm is continuous, difficult to quantify, or threatens ongoing injury to reputation and goodwill. S&R Corp., 968 F.2d at 378. The FAC alleges precisely that kind of continuing injury here. FAC at ¶¶ 513, 521, 529, 544. Whether Plaintiffs can ultimately satisfy all elements necessary for an injunction is a question for a later stage, on a developed record, not a basis to strike the remedy now.

### P.    Leave to Amend

In accordance with Rule 8's requirement of a short and plain statement, Plaintiffs have substantially streamlined their allegations in the FAC and can further particularize those allegations with amendment if directed by the Court. Plaintiffs respectfully submit that dismissal with prejudice would be improper even if the Court were to find any claim insufficiently pleaded. Under Rule 15, leave to amend should be freely granted absent undue delay, bad faith, prejudice, or futility. Fed. R. Civ. P. 15(a)(2); Foman v. Davis, 371 U.S. 178, 182 (1962). The Third Circuit likewise instructs that plaintiffs should generally be afforded an opportunity to amend unless amendment would be inequitable or futile. Phillips v. County of Allegheny, 515 F.3d 224, 245–46 (3d Cir. 2008).

Here, Pornhub's futility argument simply repackages its merits arguments against the FAC. But disagreement over the sufficiency of current allegations does not establish that amendment would be futile. If the Court believes any claim requires additional factual detail or clarification, Plaintiffs respectfully request leave to amend rather than dismissal with prejudice.

### V.    CONCLUSION

For the foregoing reasons, the Pornhub/Aylo Defendants' motion to dismiss should be denied in its entirety. In the alternative, if the Court concludes that any claim is insufficiently pleaded, Plaintiffs respectfully request leave to amend rather than dismissal with prejudice.

72

Respectfully submitted,


_____/s/___David M. Kobylinski_____
David M. Kobylinski, Esquire
PA ID No.: 92233
304 Ross Street, Suite 510
Pittsburgh, PA 15219
dave@koby.law
412-281-6600
412-281-6610 (fax)

*Counsel for Plaintiffs*

Dated: April 13, 2026