# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **ALEXANDER RHODES** and **NOFAP, LLC** | ) | Case No.: 2::25-cv-01956-MJH |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| **AYLO HOLDINGS, S.A.R.L. (d/b/a PORNHUB), et al**, | ) | |
| | ) | |
| Defendants. | ) | |

## PLAINTIFFS' MEMORANDUM IN OPPOSITION TO DEFENDANT UCLA'S MOTION TO DISMISS

**KOBYLINSKI + KOBYLINSKI**
David M. Kobylinski, Esquire
Pa. ID No.: 92233
Peter T. Kobylinski, Esquire
Pa. ID No.: 309832
304 Ross Street, Suite 510
Pittsburgh, PA 15219
(412) 281-6600
dave@koby.law
pete@koby.law

*Counsel for Plaintiffs*

Dated: April 13, 2026

1

**Table of Contents**

Table of Authorities.................................................................................................................... 4

1.   Introduction................................................................................................................... 6

2.   Factual Background ....................................................................................................... 6

3.   Legal Standard .............................................................................................................. 7

   A.   Rule 12(b)(1)............................................................................................................ 8

   B.   Rule 12(b)(2)............................................................................................................ 8

   C.   Rule 12(b)(6)............................................................................................................ 9

   D.  Leave to Amend ........................................................................................................ 9

4.   Argument against UCLA's Motion to Dismiss .............................................................. 9

   A.   Sovereign Immunity Does Not Warrant Dismissal of the Claims Against UCLA ................. 10

     1.   UCLA cannot invoke this Court's jurisdiction through removal and then assert a blanket objection to the federal forum................................................................................................ 10

     2.   UCLA conflates immunity from suit in federal court with immunity from liability on particular claims......................................................................................................................11

     3.   UCLA's arm-of-the-state authorities do not establish that all claims against it must be dismissed in this posture. ........................................................................................................ 12

     4.   UCLA has not shown that sovereign immunity defeats every claim and every form of relief asserted here........................................................................................................................... 12

     5.   To the extent the Court concludes that prospective relief must be pursued against a state official rather than UCLA directly, the proper remedy is leave to amend................................... 13

     6.   Dismissal with prejudice is unwarranted in all events.......................................................... 13

   B.   The Court Has Personal Jurisdiction Over The Regents........................................................... 14

     1.   The FAC alleges purposeful, suit-related Pennsylvania contacts attributable to UCLA itself. 14

     2.   Plaintiffs' claims arise out of or relate to UCLA's Pennsylvania-linked conduct............... 16

     3.   The intentional-tort allegations also support jurisdiction under the Calder effects framework. 16

     4.   Exercising jurisdiction is fair and reasonable. ................................................................... 17

     5.   At minimum, Plaintiffs are entitled to jurisdictional discovery. ............................................ 18

   C.   Plaintiffs did not Improperly Plead the Allegations of Their Complaint ................................... 18

   D.   Plaintiffs Pled Sufficient Facts to Support their RICO Claim ...................................................... 19

   E.   Plaintiffs Pled Sufficient Facts to Support their Claim of Unfair Competition Claim Pursuant to the Lanham Act 1125(a)(1)(A) & 1125(a)(1)(B) ......................................................................... 20

   F.   Plaintiffs Pled Sufficient Facts to Support their Claim of Trademark Dilution......................... 24

     1.   Plaintiffs Pled the Mark was Famous and Distinctive ......................................................... 25

     2.   Plaintiff Pled Actionable Use and Facilitation by UCLA ...................................................... 26

3.    UCLA's "Noncommercial Commentary" is Not Apt to be Resolved by way of a Motion to Dismiss................................................................................................................................ 27

4.    Plaintiffs Pled Dilution by Blurring and Tarnishment ............................................ 27

G.    Plaintiffs Pled Sufficient Facts to Support their Claim of Trademark Infringement ................. 28

H.    Plaintiffs Pled Adequate Facts to Support a Claim of Trade Disparagement as to UCLA ......... 31

I.    Plaintiffs Pled Adequate Facts to Support a Claim of Tortious Interference as to UCLA.......... 33

J.    Plaintiffs Pled Sufficient Facts to Support Defamation Per Se and Per Quod........................... 34

K.    Plaintiffs Pled Sufficient Facts to Support their Claim of Publicity Placing Person In False Light 35

L.    Plaintiffs Pled Sufficient Facts to Support their Claim of Publicity Given to Private Life ........ 36

M.    Plaintiffs Pled Sufficient Facts to Support their Claim of Intrusion into Private Affairs........ 37

N.    Plaintiffs Pled Sufficient Facts to Support their Claim of Intentional Infliction of Emotional Distress.................................................................................................................................... 38

O.    Plaintiffs Pled Sufficient Facts to Support their Claim of Civil Conspiracy ............................ 39

P.    Plaintiffs Pled Sufficient Facts to Support their Claim of Gross Negligence and Negligence ... 40

Q.    Plaintiffs Pled Sufficient Facts to Support their Claim of Negligent Hiring ............................ 41

R.    Plaintiffs Sufficient Facts to Support their Claim of Declaratory Judgment ............................ 42

5.    In the Alternative, Plaintiffs Request Leave to Amend.................................................................... 43

6.    Conclusion ..................................................................................................................................... 44

**Table of Authorities**

**Cases**

Aliota v. Graham, 984 F.2d 1350 (3d Cir. 1993).............................................................. 34

American Tel. & Tel. Co. v. Winback & Conserve Program, Inc., 42 (3d Cir. 1994),...................... 21, 22

Ashcroft v. Iqbal, 556 (2009) ........................................................................... 9, 18, 20

Bayada Nurses, Inc. v. Commonwealth, Dep't of Labor & Indus., 8 A.3d 866 (2010)........................ 43

Bell Atl. Corp. v. Twombly, 550 (2007); ............................................................... 9, 18, 20

Boyle v. United States, 556 U.S. 938 (2009) ............................................................. 20

Brezenski v. World Truck Transfer, Inc., 755 A.2d 36 (Pa. Super. Ct. 2000) ............................. 39

Burger King Corp. v. Rudzewicz, (1985) ................................................................. 17

Burtch v. Milberg Factors, Inc., 662 (3d Cir. 2011). .................................................... 9

Butler v. Flo-Ron Vending Co., 557 A.2d 730 (Pa. Super. Ct. 1989) ................................... 38, 39

BV Engineering v. University of California, 858 (9th Cir. 1988)......................................... 12

Calder v. Jones, 465 (1984).......................................................................... 2, 16, 17

Com. v. TAP Pharm. Prods., Inc., 885 A.2d 1127 (Pa. Commw. Ct. 2005)................................ 34

Connelly v. Lane Constr. Corp., (3d Cir. 2016) ......................................................... 9

Constitution Party of Pa. v. Aichele, 757 (3d Cir. 2014).............................................. 8

Costa v. Roxborough Memorial Hosp., 708 A.2d 490 (Pa. Super. Ct. 1998) ............................... 37

Davis v. Wells Fargo, 824 (3d Cir. 2016). ............................................................ 8

Dempsey v. Walso Bureau, Inc., 431 Pa. 562 (1968)................................................... 42

Dentsply Sirona Inc. v. Net32, Inc., No. 1:17-CV-1530, 2018 WL 3413922 (M.D. Pa. July 13, 2018) 29, 30

Ex parte Young, 209 (1908) ........................................................................... 13

Fitzgerald v. McCutcheon, 410 A.2d 1270 (Pa. Super. Ct. 1979)......................................... 39

Ford Motor Co. v. Mont. Eighth Judicial Dist. Court, 141 (2021). ................................. 14, 15, 16

Fowler v. UPMC Shadyside, 578 (3d Cir. 2009). ...................................................... 9

Garrett v. Wexford Health, 938( 3d Cir. 2019)...................................................... 18, 19

Graboff v. Colleran Firm, 744 F.3d 128 (3d Cir. 2013) .............................................. 35

Grayson v. Mayview State Hosp., 293 (3d Cir. 2002). ......................................... 9, 19, 20, 44

H.J. Inc. v. Nw. Bell Tel. Co., 492 (1989)............................................................ 20

Heller v. Patwil Homes, Inc., 713 A.2d 105 (Pa. Super. Ct. 1998) ................................... 42

Hutchison ex rel. Hutchison v. Luddy, 560 Pa. 51 (1999).............................................. 42

IMO Indus., Inc. v. Kiekert AG, 155 (3d Cir. 1998) ................................................. 17

In re Schering Plough Corp. Intron/Temodar Consumer Class Action, 678 (3d Cir. 2012); ................. 8

Jackson v. Hayakawa, 682 (9th Cir. 1982)............................................................ 12

Jacobs v. Pennsylvania Dep't of Corr., No. 04-1366, 2011 WL 2132986 (W.D. Pa. June 7, 2011)....... 35

Jews for Jesus v. Brodsky, 993 F. Supp. 282 (D.N.J. 1998) .......................................... 27

Jordan v. Pa. State Univ., 276 A.3d 751 (Pa. Super. Ct. 2022)....................................... 38

Lapides v. Board of Regents of University System of Georgia, 535 (2002) .......................... 10, 14

Liberty Mut. Ins. Co. v. S.G.S. Co., 456 Pa. 94 (1974) ............................................. 43

Lombardo v. Pennsylvania Department of Public Welfare, 540 (3d Cir. 2008) ........................ 11, 39

Marten v. Godwin, 499 (3d Cir. 2007)................................................................ 17

Metcalfe v. Renaissance Marine, Inc., 566 (3d Cir. 2009) ........................................ 8, 14, 18

Miller Yacht Sales, Inc. v. Smith, 384 (3d Cir. 2004) ............................................. 8, 14

Neurotron, Inc. v. Med. Serv. Assoc. of Pa., 254 F.3d 444 (3d Cir. 2001)........................... 31, 32

O'Connor v. Sandy Lane Hotel Co., 496 (3d Cir. 2007)............................................... 8

O'Connor v. Sandy Lane Hotel Co., Ltd., 496 (3d Cir. 2007)...................................... 14, 16, 17

Parikh Worldwide Media, LLC v. Sheth, Civ. No. 20-01185 (D.N.J. Mar. 8, 2021). ...................... 25, 26
Phillips v. County of Allegheny, 515 (3d Cir. 2008)................................................................ 9, 19, 20, 44
Pro Golf Mfg. v. Tribune Review Newspaper, 809 A.2d 243 (Pa. 2002 .......................................... 31, 32
R.A. v. First Church of Christ, 748 A.2d 692 (Pa. Super. Ct. 2000)........................................... 36, 38, 42
Regents of the University of California v. Doe, 519 (1997) ...................................................... 10, 12, 20
Scampone v. Highland Park Care Ctr., LLC, 57 A.3d 582 (Pa. 2012) ........................................... 40, 41
See Wisconsin Department of Corrections v. Schacht, 524 (1998) ...................................................... 11
Stackhouse v. Commonwealth, State Police, 892 A.2d 54 (Pa. Commw. Ct. 2006) .............................. 43
Sutherland v. Monongahela Valley Hosp., 856 A.2d 55 (Pa. Super. Ct. 2004)..................................... 41
Therabody, Inc. v. Dialectic Distribution LLC, No. 23-cv-21995 (D.N.J. July 10, 2024); .............. 25, 26
Times Mirror Magazines v. Las Vegas Sports News, 212 (3d Cir. 2000)........................................ 25, 28
Tonsic v. Wagner, 329 A.2d 497 (Pa 1974)......................................................................................... 41
Toys "R" Us, Inc. v. Step Two, S.A., 318 (3d Cir. 2003)......................................................................... 9, 18
Trade Media Holdings Ltd. v. Huang & Associates, 123 D.N.J. 2000) ........................................... 26, 27
Transdermal Prods., Inc. v. Performance Contract Packaging, Inc., 943 (E.D. Pa. 1996)................ 21, 28
Valley Forge Military Academy Foundation v. Valley Forge Old Guard, Inc., 24 F. Supp. 3d 451 (E.D. Pa. 2014) .......................................................................................................................... 26, 27
Verizon Maryland Inc. v. Public Service Commission of Maryland, 535 (2002).................................. 13
Virginia Office for Protection & Advocacy v. Stewart, 563 (2011)...................................................... 13
Wagner v. Apollo Gas Co., 399 Pa. Super. 323 (1990).......................................................................... 43
Walden v. Fiore, 571 (2014)....................................................................................................... 15, 17
Weaver v. Franklin County, 918 A.2d 194 (Pa. Commw. Ct. 2007)...................................................... 40

**Statutes**

18 U.S.C. § 1964(c) ............................................................................................................................ 20
42 Pa. Cons. Stat. § 7541 .................................................................................................................... 42
42 Pa.C.S. § 5523................................................................................................................................ 32

## 1.   Introduction

Plaintiffs respectfully submit this memorandum in opposition to Defendant UCLA's Motion to Dismiss. UCLA seeks dismissal on sweeping sovereign-immunity, jurisdictional, and pleading grounds, but its motion does not justify that extraordinary relief at this stage. Accepting the allegations of the First Amended Complaint as true, as the Court must on a motion to dismiss, Plaintiffs have plausibly alleged claims against UCLA and, at minimum, have shown that dismissal with prejudice would be improper.

## 2.   Factual Background

The First Amended Complaint alleges that this action arises from a campaign to retaliate against Alexander Rhodes and NoFap, LLC, including conduct allegedly intended to suppress NoFap as a pornography-recovery platform and to harm Plaintiffs' reputation and business interests. (FAC ¶ 14.) As to UCLA, the FAC alleges that Nicole Prause previously worked as a contractor for UCLA from approximately 2012 to 2015. (FAC ¶ 105.) The FAC further alleges that UCLA did not renew Prause's contract around 2015. (FAC ¶ 107.)

The FAC alleges that Gary Wilson and Marnia Robinson reported Prause's conduct to UCLA on multiple occasions, including through written letters, phone conversations, and communications with university officials. (FAC ¶ 111.) It further alleges that UCLA received notice of Prause's alleged misconduct, including alleged defamation, harassment, DMCA abuse, and use of UCLA resources to target critics. (FAC ¶ 112.) Gary Wilson and Marnia Robinson were not Prause's only targets. The FAC also describes Prause targeting a UCLA colleague, Rory Reid, Ph.D., who has authored papers concerning pornography use, which UCLA was aware of. (FAC ¶ 108.)

The FAC also alleges that Prause has again been employed by UCLA since November 2021 as a statistician. (FAC ¶ 113.) According to the FAC, Prause is listed on UCLA Health's website as a "senior

statistician" in Arpan A. Patel's digestive diseases laboratory. (FAC ¶ 113.) The FAC further alleges that, after Prause was rehired, at least two journalists contacted UCLA to inquire about her. (FAC ¶ 114.) It also alleges that, after one individual contacted UCLA about being targeted by Prause, a university employee stated that UCLA maintained a "large file" concerning her behavior. (FAC ¶ 115.)

The FAC alleges that, as of November 3, 2025, Prause's ResearchGate profile described her as a "Bioinformatics Programmer at UCLA" and stated that she was running a UCLA lab study with collaborators. (FAC ¶ 116.) The FAC further alleges that Prause publicly used her UCLA employment and affiliation in emails, social-media posts, conference appearances, podcasts, interviews, and publications to advance the Pornhub/Aylo Defendants' interests. (FAC ¶ 117.)

In its UCLA-specific negligence allegations, the FAC alleges that UCLA owed duties relating to the hiring, retention, and supervision of its employees and contractors and to the prevention of misuse of its institutional resources and credibility. (FAC ¶¶ 541, 547.) The FAC alleges that UCLA retained and failed to supervise Prause despite prior criminal conduct, documented harassment, and other alleged red flags. (FAC ¶¶ 542, 548.) It also alleges that UCLA received multiple complaints and warnings from colleagues, journalists, and members of the public concerning Prause's alleged misconduct and misuse of university resources. (FAC ¶ 549.) The FAC further alleges that UCLA allowed Prause to continue using university facilities, digital infrastructure, and institutional credibility while engaging in harassment, defamation, and publication-related misconduct. (FAC ¶ 550.)

Finally, the FAC alleges that Plaintiffs suffered reputational, emotional, and economic harm as a result of the conduct alleged against UCLA. (FAC ¶¶ 544, 552.)

3.    **Legal Standard**

A motion to dismiss under Federal Rule of Civil Procedure 12 may present distinct questions of subject-matter jurisdiction, personal jurisdiction, and pleading sufficiency, each governed by its own standard.

A.    Rule 12(b)(1)

A motion under Rule 12(b)(1) challenges the Court's subject-matter jurisdiction. Such a motion may present either a facial attack or a factual attack. In a facial attack, the Court considers the allegations of the complaint and documents referenced therein, accepts well-pleaded factual allegations as true, and draws reasonable inferences in the plaintiff's favor. In a factual attack, by contrast, the Court may consider evidence outside the pleadings and need not presume the truth of the complaint's allegations. Constitution Party of Pa. v. Aichele, 757 F.3d 347, 357–58 (3d Cir. 2014); Davis v. Wells Fargo, 824 F.3d 333, 346–47 (3d Cir. 2016).

Because sovereign immunity is jurisdictional in nature, it may be raised under Rule 12(b)(1). Where the motion turns on the sufficiency of the pleadings, the Court should accept well-pleaded factual allegations as true and construe them in the light most favorable to Plaintiffs. In re Schering Plough Corp. Intron/Temodar Consumer Class Action, 678 F.3d 235, 243 (3d Cir. 2012); Constitution Party of Pa. v. Aichele, 757 F.3d 347, 358 (3d Cir. 2014) .

B.    Rule 12(b)(2)

On a motion to dismiss for lack of personal jurisdiction under Rule 12(b)(2), the plaintiff bears the burden of establishing a prima facie case of jurisdiction. At this stage, the plaintiff need only allege sufficient facts to support a reasonable inference that the defendant is subject to jurisdiction, and the Court must accept the plaintiff's allegations as true and construe disputed facts in the plaintiff's favor. O'Connor v. Sandy Lane Hotel Co., 496 F.3d 312, 316 (3d Cir. 2007); Miller Yacht Sales, Inc. v. Smith, 384 F.3d 93, 97 (3d Cir. 2004) ; Metcalfe v. Renaissance Marine, Inc., 566 F.3d 324, 330–31 (3d Cir. 2009) .

Where the existing record is incomplete, but the plaintiff advances non-frivolous allegations supporting jurisdiction, limited jurisdictional discovery is appropriate rather than dismissal at the pleading stage. Metcalfe, 566 F.3d at 336 (3d Cir. 2009); Toys "R" Us, Inc. v. Step Two, S.A., 318 F.3d

446, 456 (3d Cir. 2003).

### C.    Rule 12(b)(6)

To survive a motion to dismiss under Rule 12(b)(6), a complaint must contain sufficient factual matter, accepted as true, to state a claim for relief that is plausible on its face. Although the Court must accept well-pleaded factual allegations as true and draw reasonable inferences in the plaintiff's favor, it need not accept legal conclusions couched as factual allegations. Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555–57 (2007); Ashcroft v. Iqbal, 556 U.S. 662, 678–79 (2009); Fowler v. UPMC Shadyside, 578 F.3d 203, 210–11 (3d Cir. 2009).

In applying that standard, the Third Circuit directs courts to identify the elements of the claim, disregard conclusory allegations, and then determine whether the remaining well-pleaded factual allegations plausibly give rise to an entitlement to relief. Connelly v. Lane Constr. Corp., 809 F.3d 780, 787 (3d Cir. 2016); Burtch v. Milberg Factors, Inc., 662 F.3d 212, 221 (3d Cir. 2011).

### D.    Leave to Amend

If the Court concludes that any claim or jurisdictional allegation has not been pleaded with sufficient specificity, leave to amend should be freely granted when justice so requires. Fed. R. Civ. P. 15(a)(2). Dismissal with prejudice is not warranted unless amendment would be inequitable or futile. Phillips v. County of Allegheny, 515 F.3d 224, 245–46 (3d Cir. 2008); Grayson v. Mayview State Hosp., 293 F.3d 103, 108 (3d Cir. 2002).

### 4.    Argument against UCLA's Motion to Dismiss

UCLA's motion should be denied because it asserts overbroad immunity, jurisdictional, and pleading arguments that do not warrant dismissal at this stage. UCLA's removal defeats any blanket objection to this federal forum, Plaintiffs have plausibly alleged UCLA's suit-related role in the challenged conduct, and any remaining jurisdictional or pleading issues would at most justify limited discovery or leave to amend—not dismissal with prejudice.

9

### A.    Sovereign Immunity Does Not Warrant Dismissal of the Claims Against UCLA

UCLA's sovereign-immunity argument is too broad to support dismissal of all claims against it, much less dismissal with prejudice. Even assuming The Regents of the University of California is ordinarily treated as an arm of the State of California, that does not end the analysis here. UCLA removed this case to federal court, and its motion does not meaningfully address the effect of removal, the distinction between immunity from suit and immunity from liability, or the need to analyze the claims and remedies separately.

UCLA's argument improperly conflates multiple distinct doctrines—Eleventh Amendment immunity, interstate sovereign immunity, and immunity from liability—and treats them as a single, categorical bar. That is incorrect. Even where some form of sovereign immunity may ultimately limit certain claims or remedies, it does not justify blanket dismissal of all claims at the pleading stage without a claim-by-claim and remedy-by-remedy analysis.

At a minimum, UCLA has not shown that sovereign immunity requires dismissal of this action in its entirety or that dismissal with prejudice would be appropriate.

### 1.    UCLA cannot invoke this Court's jurisdiction through removal and then assert a blanket objection to the federal forum.

The Supreme Court has recognized that sovereign immunity may be waived and that a State waives its Eleventh Amendment objection to the federal forum when it voluntarily removes an action to federal court. Lapides v. Board of Regents of University System of Georgia, 535 U.S. 613, 619–24 (2002). UCLA's own motion acknowledges that The Regents, with the consent of all defendants, removed this action to this Court. Having done so, UCLA cannot now rely on a categorical argument that it is immune from suit in this Court simply because it is an alleged arm of the State.

UCLA's reliance on interstate sovereign immunity principles does not alter this result at this procedural stage. Whatever the ultimate scope of such immunity, UCLA voluntarily invoked this Court's jurisdiction through removal and now seeks dismissal based on an undifferentiated immunity

theory without parsing the specific claims or remedies at issue. That is insufficient to support dismissal of all claims, particularly where Plaintiffs seek prospective and declaratory relief and where amendment may cure any defect as to the proper defendant.

That principle is especially clear in the Third Circuit. In <u>Lombardo v. Pennsylvania Department of Public Welfare</u>, 540 F.3d 190, 197–98 (3d Cir. 2008), the court held that removal waived the State's Eleventh Amendment immunity from suit in federal court. Thus, even if UCLA could ordinarily invoke Eleventh Amendment protection as an arm of the State, its voluntary removal forecloses any blanket objection to litigating in this federal forum.

At minimum, UCLA's motion fails because it treats sovereign immunity as an absolute jurisdictional bar without confronting the effect of its own removal.

> **2.      UCLA conflates immunity from suit in federal court with immunity from liability on particular claims.**

Even where removal waives an Eleventh Amendment objection to the federal forum, courts distinguish between immunity from suit and immunity from liability. Immunity from suit concerns whether the State may be haled into federal court at all. Immunity from liability concerns whether, notwithstanding the availability of the federal forum, a particular claim or form of relief may be maintained against the State. <u>See</u> <u>Wisconsin Department of Corrections v. Schacht</u>, 524 U.S. 381, 389 (1998); <u>Lombardo</u>, 540 F.3d at 198.

That distinction matters here. UCLA seeks dismissal "in its entirety" based on an undifferentiated sovereign-immunity theory, but it does not separately analyze whether removal waives its objection to the federal forum, whether any distinct immunity from liability remains as to any particular claim, or whether some forms of relief may proceed even if others do not. That omission is fatal to the sweeping relief UCLA seeks. At most, sovereign-immunity analysis must proceed claim by claim and remedy by remedy; it does not justify blanket dismissal of the entire action against UCLA on the present briefing.

11

**3.      UCLA's arm-of-the-state authorities do not establish that all claims against it must be dismissed in this posture.**

UCLA relies on cases holding that The Regents is generally treated as an arm of the State of California. But arm-of-the-state status is only the beginning of the inquiry. It does not itself resolve waiver, removal, the distinction between immunity from suit and immunity from liability, or the availability of prospective relief.

For example, Regents of the University of California v. Doe, 519 U.S. 425 (1997) addresses arm-of-the-state status and the effect of indemnification, not the distinct question whether a state entity waives a federal-forum immunity by removing a case. Likewise, Jackson v. Hayakawa, 682 F.2d 1344 (9th Cir. 1982) and BV Engineering v. University of California, 858 F.2d 1394 (9th Cir. 1988) stand for the unremarkable proposition that the University of California is ordinarily treated as a state instrumentality. They do not hold that, after removal, every claim against UCLA must be dismissed in federal court regardless of waiver, the form of relief sought, or the posture of the pleadings.

Accordingly, even if UCLA is ordinarily considered an arm of the State, that premise does not entitle it to the across-the-board dismissal it requests.

**4.      UCLA has not shown that sovereign immunity defeats every claim and every form of relief asserted here.**

UCLA's motion is also overbroad because it does not distinguish among the different categories of claims and remedies Plaintiffs assert. Even where sovereign immunity may limit certain damages claims against a state entity, that does not mean every federal claim, every state-law claim, and every request for declaratory or prospective relief must be dismissed together.

As to the federal forum, removal defeats UCLA's threshold objection to being in this Court. As to the merits of particular claims, UCLA bears the burden of showing why sovereign immunity bars each claim and each remedy it seeks to dismiss. Yet UCLA's motion does not provide a claim-by-claim sovereign-immunity analysis addressing, for example, the difference between damages and declaratory or prospective relief, or the extent to which any asserted immunity is one from suit rather than from

12

liability. That alone precludes the blanket dismissal UCLA requests.

To be clear, Plaintiffs do not contend that every claim automatically survives merely because UCLA removed the case. The point is narrower and sufficient for present purposes: UCLA has not shown that sovereign immunity requires dismissal of all claims against it in all respects, particularly where its own removal waived any blanket objection to the federal forum and where its motion does not analyze the claims and remedies with the required specificity.

> **5.      To the extent the Court concludes that prospective relief must be pursued against a state official rather than UCLA directly, the proper remedy is leave to amend.**

Even where sovereign immunity may bar certain claims for retrospective relief against a state entity, federal law permits suits against appropriate state officials for prospective relief to end ongoing violations of federal law. Ex parte Young, 209 U.S. 123, 155–56 (1908); Verizon Maryland Inc. v. Public Service Commission of Maryland, 535 U.S. 635, 645 (2002). The relevant inquiry is whether the complaint alleges an ongoing violation of federal law and seeks relief properly characterized as prospective. Verizon Maryland, 535 U.S. at 645.

Here, Plaintiffs seek declaratory relief and other forward-looking relief in addition to damages. If the Court concludes that any such relief must be pleaded against a particular UCLA or Regents official in an official capacity rather than against UCLA directly, the appropriate course would be to permit amendment—not to dismiss with prejudice. See Virginia Office for Protection & Advocacy v. Stewart, 563 U.S. 247, 254–55 (2011). At a minimum, UCLA has not shown that any arguable defect in the identification of the proper defendant for prospective relief warrants termination of the claims with prejudice at the pleading stage.

> **6.      Dismissal with prejudice is unwarranted in all events.**

Even if the Court were to conclude that certain claims or forms of relief cannot proceed against UCLA in their current form, UCLA's request for dismissal with prejudice remains improper. Where

issues turn on waiver by removal, the distinction between immunity from suit and immunity from liability, or the identity of the proper defendant for prospective relief, courts routinely permit amendment rather than entering a prejudicial dismissal at the pleading stage. See Lapides, 535 U.S. at 619–24 ; Verizon Maryland, 535 U.S. at 645.

Accordingly, UCLA's sovereign-immunity argument should be denied. At minimum, even if the Court determines that certain claims cannot proceed against UCLA in their present form, dismissal with prejudice would be improper. The issues raised—removal-based waiver, the scope of sovereign immunity, and the identity of the proper defendant for prospective relief—are precisely the types of issues for which amendment is routinely permitted.

**B.     The Court Has Personal Jurisdiction Over The Regents**

Plaintiffs have adequately alleged specific personal jurisdiction over The Regents based on UCLA's own suit-related conduct directed at Pennsylvania and causing injury here. At this stage, Plaintiffs need only make a prima facie showing of jurisdiction, and the Court must accept Plaintiffs' allegations as true and construe factual disputes in Plaintiffs' favor. Miller Yacht Sales, Inc. v. Smith, 384 F.3d 93, 97 (3d Cir. 2004); Metcalfe v. Renaissance Marine, Inc., 566 F.3d 324, 330–31 (3d Cir. 2009).

Under Third Circuit law, specific jurisdiction exists where (1) the defendant purposefully directed its activities at the forum, (2) the litigation arises out of or relates to at least one of those activities, and (3) the exercise of jurisdiction otherwise comports with fair play and substantial justice. O'Connor v. Sandy Lane Hotel Co., Ltd., 496 F.3d 312, 317 (3d Cir. 2007). The second requirement is not limited to strict causation; it is enough that the claims sufficiently relate to the defendant's forum conduct. Ford Motor Co. v. Mont. Eighth Judicial Dist. Court, 141 S. Ct. 1017, 1026–30 (2021).

**1.     The FAC alleges purposeful, suit-related Pennsylvania contacts attributable to UCLA itself.**

UCLA's argument fails because the FAC does not rely on Plaintiffs' residence alone or on

Prause's unilateral conduct in the abstract. Rather, the FAC alleges affirmative conduct by UCLA itself: UCLA rehired Prause in November 2021; held her out publicly through UCLA Health as a "senior statistician"; allowed her to use UCLA affiliation in emails, publications, media appearances, and online statements; and continued that relationship after repeated complaints and notice concerning the very conduct at issue. The FAC further alleges that UCLA received direct reports from Gary Wilson, Marnia Robinson, journalists, and others concerning Prause's conduct, and that a UCLA employee acknowledged UCLA maintained a "large file" regarding her behavior.

Those allegations matter because due process turns on the defendant's own contacts with the forum. Walden v. Fiore, 571 U.S. 277, 284–85 (2014). Plaintiffs' theory is not that Pennsylvania jurisdiction exists merely because Pennsylvania plaintiffs were injured. It is that UCLA knowingly continued to provide employment, institutional legitimacy, and university resources to Prause after receiving notice that the challenged conduct was being directed at Plaintiffs and causing harm in Pennsylvania. At the pleading stage, that is enough to allege purposeful, forum-linked conduct by UCLA itself.

Plaintiffs also briefly note an additional Pennsylvania contact. UCLA voluntarily joined the Big Ten Conference effective August 2024, a move UCLA itself described as a coast-to-coast expansion undertaken in part for the conference's lucrative annual payouts. *A Big Ten Bruinprint: UCLA's bold new era* (Aug. 28, 2025). And the submitted revenue-sharing material reflects that Big Ten members are entitled to share in gate receipts, including from football games played in Pennsylvania. *Big Ten Ticket Revenue* (Apr. 20, 2011). Thus, when UCLA participates in Big Ten competition in Pennsylvania, it is not merely traveling fortuitously into the Commonwealth; it is participating in a revenue-generating conference structure under which it expects to derive financial benefit from Pennsylvania events. See Ford Motor Co., 141 S. Ct. at 1026–30.

That conclusion is reinforced by the FAC's allegations that UCLA operates in an avowedly

national, coast-to-coast posture rather than as a purely local California institution. UCLA's publicly promoted integration into the Big Ten Conference, including its emphasis on East Coast and Midwest engagement, underscores that suit in Pennsylvania is not some unforeseeable outlier for a major public university that intentionally projects its institutional presence nationwide. Those facts do not alone create jurisdiction, but they do further undercut any suggestion that defending a Pennsylvania suit is constitutionally unexpected or unfair.

### 2. Plaintiffs' claims arise out of or relate to UCLA's Pennsylvania-linked conduct.

The relatedness prong is also satisfied. Plaintiffs' claims against UCLA do not arise from an unrelated employment dispute in California. They arise from UCLA's alleged hiring, retention, supervision, and continued endorsement of Prause despite repeated notice of the challenged conduct and its effects on Pennsylvania plaintiffs. In other words, the alleged forum-linked contacts are not collateral to the claims; they are part of the alleged mechanism by which the injury occurred. That is enough under both Third Circuit and Supreme Court law. In O'Connor, the Third Circuit explained that relatedness asks whether the connection is close enough to make jurisdiction reasonably foreseeable. 496 F.3d at 323. And in Ford Motor Co., the Supreme Court confirmed that claims may arise out of or relate to forum contacts even absent strict but-for causation. 141 S. Ct. at 1026. Here, Plaintiffs allege that UCLA's own conduct helped enable Prause to act with UCLA's credibility, title, and institutional backing while targeting Plaintiffs in Pennsylvania. That is more than sufficient at this stage.

### 3. The intentional-tort allegations also support jurisdiction under the Calder effects framework.

The FAC's intentional-tort allegations provide an independent basis for specific jurisdiction. Under Calder v. Jones, 465 U.S. 783, 789–90 (1984), jurisdiction may exist where the defendant commits intentional torts expressly aimed at the forum and knows the brunt of the harm will be felt

there. In the Third Circuit, the plaintiff must show an intentional tort, forum-centered harm, and conduct expressly aimed at the forum. IMO Indus., Inc. v. Kiekert AG, 155 F.3d 254, 265–66 (3d Cir. 1998); Marten v. Godwin, 499 F.3d 290, 297–98 (3d Cir. 2007).

Plaintiffs allege intentional torts including defamation-related and conspiracy-based misconduct, and they further allege that UCLA knowingly allowed Prause to continue using UCLA's institutional imprimatur despite repeated warnings about that conduct and its consequences. To be sure, Walden makes clear that the plaintiff's forum connections alone are not enough. 571 U.S. at 289–90. But Plaintiffs allege more than foreseeability of in-forum injury: they allege affirmative conduct by UCLA that was tied to and supportive of ongoing conduct aimed at Pennsylvania plaintiffs. Those allegations are sufficient, at minimum, to support jurisdictional discovery under Calder and its Third Circuit progeny.

Critically, Plaintiffs do not rely on foreseeability alone. They allege that UCLA had actual notice of the conduct at issue and nonetheless continued to provide institutional backing that enabled that conduct to continue. That is affirmative conduct, not passive awareness, and is sufficient at minimum to warrant jurisdictional discovery.

### 4.    Exercising jurisdiction is fair and reasonable.

Once minimum contacts are shown, jurisdiction is presumptively constitutional, and the burden shifts to the defendant to present a compelling case that jurisdiction would be unreasonable. Burger King Corp. v. Rudzewicz, 471 U.S. 462, 476–78 (1985); O'Connor, 496 F.3d at 324. UCLA has not made that showing.

Pennsylvania has a substantial interest in adjudicating claims involving alleged injury to Pennsylvania plaintiffs. Plaintiffs likewise have a strong interest in obtaining convenient and effective relief in their home forum. And UCLA is not a small local entity haled into a remote jurisdiction based on isolated happenstance; it is a major public university alleged to have knowingly enabled conduct

causing injury here. On these allegations, exercising jurisdiction does not offend traditional notions of fair play and substantial justice.

### 5. At minimum, Plaintiffs are entitled to jurisdictional discovery.

Even if the Court concludes that the present record should be developed further, dismissal would still be premature. Where a plaintiff presents factual allegations that suggest with reasonable particularity the possible existence of the requisite contacts, jurisdictional discovery should be allowed. Metcalfe, 566 F.3d at 336; Toys "R" Us, Inc. v. Step Two, S.A., 318 F.3d 446, 455–56 (3d Cir. 2003). At minimum, Plaintiffs should be permitted discovery into UCLA's communications regarding Rhodes and NoFap, the complaints UCLA received about Prause, UCLA's decisions to retain or rehire her after receiving those complaints, UCLA's authorization or allowance of her use of UCLA title and affiliation in the challenged conduct, and any Pennsylvania-directed communications or activities bearing on jurisdiction. If the Court concludes the current pleading does not yet establish personal jurisdiction conclusively, the proper remedy is targeted jurisdictional discovery—not dismissal with prejudice.

For those reasons, UCLA's Rule 12(b)(2) motion should be denied. At a minimum, Plaintiffs have plausibly alleged suit-related forum contacts sufficient to warrant jurisdictional discovery before any dismissal is considered.

### C. Plaintiffs did not Improperly Plead the Allegations of Their Complaint

UCLA's "shotgun pleading" objection should be rejected because the First Amended Complaint satisfies the federal notice-pleading standards of Rules 8 and 10. The relevant question is whether the FAC gives UCLA fair notice of the claims, the grounds on which they rest, and enough factual content to permit a meaningful response. See Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007); Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009); Garrett v. Wexford Health, 938 F.3d 69, 92–94 (3d Cir. 2019) . It does. The FAC identifies UCLA as a distinct defendant and alleges UCLA-specific facts, including its relationship with Prause, its alleged receipt of complaints and warnings, its alleged rehiring and

18

retention of her, and its alleged role in enabling the conduct at issue. Those allegations are sufficient to place UCLA on notice of the claims against it and permit a response.

Nor does the FAC become an improper "shotgun pleading" merely because it asserts multiple claims arising from overlapping facts or incorporates prior allegations into later counts. That is common federal pleading practice in a multi-defendant case so long as the complaint remains intelligible and gives fair notice. See Fed. R. Civ. P. 8(d)(2)–(3); Garrett v. Wexford Health, 938 F.3d 69, 93–94 (3d Cir. 2019). UCLA's motion itself shows it understands the claims and the factual allegations directed at it. To the extent UCLA seeks greater specificity, the proper remedy would be a more definite statement or leave to amend, not dismissal with prejudice. See Phillips v. County of Allegheny, 515 F.3d 224, 245–46 (3d Cir. 2008); Grayson v. Mayview State Hosp., 293 F.3d 103, 108 (3d Cir. 2002).

To the extent UCLA contends that particular counts lack specificity as to its role, Plaintiffs expressly rely on the FAC's allegations that UCLA knowingly retained, endorsed, and enabled Prause despite repeated notice of the challenged conduct, and permitted the use of UCLA's institutional affiliation in furtherance of that conduct. FAC at ¶ 553. Those allegations apply to each claim asserted against UCLA.  UCLA's "shotgun pleading" argument ignores that the FAC contains detailed factual allegations and incorporates those allegations into each count, as expressly permitted under Rule 10(c). At this stage, the question is plausibility—not whether Plaintiffs have presented their claims in the format UCLA would prefer. To the extent the Court seeks greater specificity as to UCLA's role in particular counts, the appropriate remedy is a more definite statement or leave to amend, not dismissal.

**D.    Plaintiffs Pled Sufficient Facts to Support their RICO Claim**

UCLA's motion to dismiss the RICO claim should be denied at the pleading stage because the First Amended Complaint plausibly alleges an enterprise, a pattern of related conduct, UCLA's alleged role in supporting or enabling that conduct, and resulting injury to Plaintiffs' business or property. At this stage, Plaintiffs need only plead enough facts to make the claim plausible, not prove the full RICO

19

case. See Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555–56 (2007); Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).

Plaintiffs' RICO claim as to UCLA is not premised on UCLA acting as a primary enterprise actor, but on its knowing facilitation and support of conduct carried out through its employee or affiliate, despite repeated notice of that conduct. At the pleading stage, such allegations are sufficient to support liability under established RICO principles.

The FAC alleges an association-in-fact enterprise among Prause and others acting for a common purpose, which is sufficient at this stage. See Boyle v. United States, 556 U.S. 938, 946 (2009). As to UCLA, Plaintiffs do not rely solely on an employment relationship; rather, they allege that UCLA rehired Prause, retained her despite prior complaints and warnings, and allowed her to continue invoking UCLA's name and institutional affiliation while the challenged conduct allegedly continued. Those allegations, if accepted as true, are enough to support a plausible theory that UCLA played a knowing supporting role in the broader scheme alleged in the FAC.

The FAC also plausibly alleges a pattern of conduct extending over time rather than an isolated event, as well as reputational and economic injury to Rhodes and NoFap. See H.J. Inc. v. Nw. Bell Tel. Co., 492 U.S. 229, 239–43 (1989); 18 U.S.C. § 1964(c). Whether Plaintiffs can ultimately prove the elements of a civil RICO claim against UCLA is a later question. For present purposes, the allegations are sufficient to survive dismissal, and if the Court concludes that further specificity is needed, leave to amend would be the more appropriate remedy than dismissal with prejudice. See Phillips v. County of Allegheny, 515 F.3d 224, 245–46 (3d Cir. 2008); Grayson v. Mayview State Hosp., 293 F.3d 103, 108 (3d Cir. 2002).

   E.   **Plaintiffs Pled Sufficient Facts to Support their Claim of Unfair Competition Claim Pursuant to the Lanham Act 1125(a)(1)(A) & 1125(a)(1)(B)**

Defendant The Regents of the University of California ("UCLA") argues that Count II fails because UCLA did not itself directly use Plaintiffs' mark or directly make the challenged false statements. That

is too narrow a view of Lanham Act liability and ignores both the allegations of the First Amended Complaint ("FAC") and controlling Third Circuit law. At the pleading stage, Plaintiffs need only plausibly allege that UCLA directly participated in, authorized, facilitated, or knowingly enabled conduct creating likely confusion under § 1125(a)(1)(A) and false or misleading commercial representations under § 1125(a)(1)(B), and that Plaintiffs suffered resulting commercial injury. The FAC does exactly that.

Under American Tel. & Tel. Co. v. Winback & Conserve Program, Inc., 42 F.3d 1421, 1433 (3d Cir. 1994), Lanham Act § 43(a) is not so cramped. For false designation claims under § 1125(a)(1)(A), the operative question is likelihood of confusion, not whether the moving defendant was the only entity that directly used the mark or made the representation. Winback holds that actual confusion is unnecessary; likely confusion is enough. And courts applying Winback have recognized that § 43(a) also reaches contributory or secondary conduct where a defendant knowingly enables or facilitates the underlying violation. See Transdermal Prods., Inc. v. Performance Contract Packaging, Inc., 943 F. Supp. 551 (E.D. Pa. 1996).

That rule defeats UCLA's threshold argument. Plaintiffs are not required to allege that UCLA personally wrote every disparaging sentence or itself published every challenged statement. It is enough that the FAC alleges UCLA knowingly aided and abetted the scheme by providing substantial assistance, permitting Dr. Prause to use UCLA's institutional resources and affiliation, allowing her to present herself publicly as a UCLA-affiliated scientist while engaging in the challenged conduct, and thereby lending credibility and institutional force to the false and misleading messaging directed at Plaintiffs.

The FAC specifically alleges that UCLA "knowingly aided and abetted the scheme, providing substantial assistance with actual knowledge of the wrongful activities," that UCLA re-hired Prause despite prior complaints and notice of her conduct, and that UCLA permitted Prause to continue using

21

university resources and institutional affiliation while she engaged in tortious and contract-breaching conduct. Those are not bare legal conclusions; they are factual allegations that, if true, plausibly support direct participation and, at minimum, contributory liability under the Lanham Act. FAC at ¶¶ 14, 53, 113–117.

Count II alleges that Defendants "repeatedly used Plaintiffs' protected marks in a manner likely to cause confusion," and that Defendants engaged in a "systematic disinformation campaign," including "falsely representing Plaintiffs' marks and services, discrediting its website, and misleading the public regarding its mission and operations." It further alleges anti-competitive conduct "by intentionally targeting those seeking Plaintiffs by diverting web traffic, spreading disinformation, and otherwise suppressing competition," and alleges damage to Plaintiffs' trademark rights "through dilution and diminishing its distinctiveness and market recognition." FAC at ¶¶ 428–433.

Those allegations are supported by detailed factual averments throughout the FAC. Plaintiffs allege, among other things, that Defendants sought to undermine NoFap's trademark rights and falsify its history through papers, social media, and blog posts; that Prause and collaborators repeatedly manipulated public narratives regarding NoFap and used the NoFap name in a disparaging and confusing manner; and that UCLA allowed Prause to cloak this conduct with UCLA's imprimatur by holding herself out in emails, social media, conference appearances, publications, and interviews as affiliated with UCLA while engaging in that conduct. FAC at ¶¶ 46, 53, 117, 148–149, 284(f), 332, 335–336.

At the pleading stage, that is enough. Under American Tel. & Tel. Co. v. Winback & Conserve Program, Inc., 42 F.3d 1421, 1433 (3d Cir. 1994), the question is whether likely confusion is plausibly alleged. It plainly is. Plaintiffs allege confusion as to Plaintiffs' mission, operations, identity, affiliations, and services, and allege that Defendants' campaign harmed the distinctiveness and market recognition of the NoFap mark. UCLA's argument improperly asks the Court to ignore the FAC's theory that

22

UCLA participated in and lent authority to that confusing use. FAC at ¶¶ 148–149, 427–433, 437–440, 444–446.

The FAC also satisfies the false advertising branch of § 1125(a)(1)(B). Under American Tel. & Tel. Co. v. Winback & Conserve Program, Inc., 42 F.3d 1421, 1428 (3d Cir. 1994), a plaintiff must allege false or misleading statements, deception or tendency to deceive, materiality, interstate commerce, and likely injury. Count II does so. It alleges that Defendants "deliberately engaged in acts of deception," including "disseminating defamatory statements designed to harm Plaintiffs' credibility and economic viability," and that these acts caused "significant financial losses, reputational damage, lost business opportunities, and ongoing harm to their business and professional interests." FAC at ¶¶ 430–434.

Again, the FAC supplies extensive factual support. It alleges that UCLA knowingly allowed Prause to use its institutional affiliation and credibility to advance the Pornhub/Aylo Defendants' interests; that Prause repeatedly held herself out as UCLA-affiliated in "emails, social-media posts, conference appearances, podcasts, interviews with journalists, publications she has authored, and other contexts while engaging in tortious and contract-breaching conduct"; and that UCLA's affiliation "added credibility to her tortious behavior and helped to advance the pornography industry's interests." Plaintiffs further allege that UCLA and Taylor & Francis "knowingly aided and abetted the scheme" to suppress NoFap and damage its reputation. FAC at ¶¶ 14, 53, 117.

Those allegations plausibly support a claim that UCLA contributed to or facilitated false and misleading commercial representations about Plaintiffs' services, mission, and legitimacy, and that those representations caused commercial injury. Plaintiffs allege reputational damage, loss of goodwill, lost partnerships, reduced traffic, and economic harm flowing from the campaign. That is sufficient under Rule 12. FAC at ¶¶ 54, 375–380, 447–468.

Even if UCLA were correct that it did not itself directly "use" the mark or directly author every

false statement—which Plaintiffs dispute—the FAC still states a claim under contributory principles recognized under American Tel. & Tel. Co. v. Winback & Conserve Program, Inc., 42 F.3d 1421 (3d Cir. 1994) and applied in this Circuit. A defendant cannot escape Lanham Act liability simply by operating through an affiliated speaker or by lending institutional resources, credibility, and support to the actor committing the violation.

The FAC alleges exactly that kind of knowing facilitation: UCLA re-hired Prause despite prior complaints and known concerns; UCLA allowed her to use university position and identity in publications, interviews, social media, and presentations while engaging in the challenged conduct; and UCLA thereby enabled, legitimized, and amplified the false and misleading campaign against Plaintiffs. That is enough to plausibly allege that UCLA supplied the means and imprimatur for the violation and knew or had reason to know of the underlying misconduct. FAC at ¶¶ 109–117, 541–554.

UCLA's motion asks the Court to impose a rule that Lanham Act liability exists only for the final speaker or literal user of the mark. That is not the law in the Third Circuit. Under American Tel. & Tel. Co. v. Winback & Conserve Program, Inc., 42 F.3d 1421 (3d Cir. 1994), and consistent authority applying it, Plaintiffs have plausibly alleged claims under both § 1125(a)(1)(A) and § 1125(a)(1)(B), including direct and contributory liability. Because the FAC alleges that UCLA knowingly facilitated and amplified confusing and false commercial representations that injured Plaintiffs, Count II should not be dismissed. FAC at ¶¶ 428–435.

**F.      Plaintiffs Pled Sufficient Facts to Support their Claim of Trademark Dilution**

UCLA argues that Count III fails because Plaintiffs have not alleged a sufficiently famous mark, have not alleged actionable use by UCLA, and have alleged only noncommercial or protected commentary. At the pleading stage, none of those arguments warrants dismissal.

The First Amended Complaint ("FAC") alleges that NoFap is a distinctive, well-known mark tied to one of the largest and most recognized pornography-recovery platforms in the world, that Defendants

engaged in a prolonged campaign to undermine Plaintiffs' trademark rights and tarnish the NoFap mark, and that UCLA knowingly enabled and amplified that conduct by permitting Prause to use UCLA's institutional affiliation and credibility while engaging in the challenged acts. FAC at ¶¶ 22, 46, 53, 60, 73–74, 117, 149, 438–440.

### 1.     Plaintiffs Pled the Mark was Famous and Distinctive

The Third Circuit in Times Mirror Magazines v. Las Vegas Sports News, 212 F.3d 157, 163–64 (3d Cir. 2000) explained that dilution doctrine protects marks whose strength and distinctiveness risk impairment through blurring or tarnishment. Although later cases construing the amended statute require fame among the general consuming public, courts continue to treat fame as a fact-intensive issue that ordinarily should not be resolved on the pleadings where the complaint alleges substantial duration, recognition, market penetration, and distinctiveness. See Therabody, Inc. v. Dialectic Distribution LLC, No. 23-cv-21995, slip op. at 16–19 (D.N.J. July 10, 2024); Parikh Worldwide Media, LLC v. Sheth, Civ. No. 20-01185, slip op. at 14–16 (D.N.J. Mar. 8, 2021).

Here, the FAC alleges more than a conclusory assertion of limited recognition. Plaintiffs allege that NoFap "was the largest platform for recovering porn addicts," that it grew to "over 365,000 forum members and 1,190,000 Reddit subscribers," that it "receives millions of visits per month," and that it "remains one of the most visited websites for recovering porn addicts." FAC at ¶¶ 22, 60. The FAC further alleges that Plaintiffs registered trademarks to protect the NoFap brand, that the mark is central to Plaintiffs' ability to remain online and communicate their message, and that Defendants specifically targeted those trademark rights through dilution and related conduct. FAC at ¶¶ 73–74, 148–149, 437–440.

To be sure, UCLA argues that fame limited to a specialized market is insufficient. But dismissal still is unwarranted. Times Mirror Magazines v. Las Vegas Sports News, 212 F.3d 157, 164-65 (3d Cir. 2000) remains relevant in recognizing that the scope and strength of recognition are factual matters tied

25

to the actual marketplace in which the mark operates. And even under more recent authority, the issue at Rule 12 is plausibility, not proof. The FAC alleges a mark with long-standing, wide exposure, substantial user base, high traffic, and strong source-identifying significance in a market where Defendants allegedly sought to blur and tarnish it. That is enough to proceed. See Therabody, Inc. v. Dialectic Distribution LLC, No. 23-cv-21995, slip op. at 16–19 (D.N.J. July 10, 2024); Parikh Worldwide Media, LLC v. Sheth, Civ. No. 20-01185, slip op. at 14–16 (D.N.J. Mar. 8, 2021).

### 2. Plaintiff Pled Actionable Use and Facilitation by UCLA

UCLA next argues there is no actionable use by The Regents themselves. But the FAC does not rely on a theory of passive association. It alleges that UCLA knowingly re-hired Prause, knew or should have known of her longstanding pattern of misconduct, and allowed her to continue using UCLA's name, status, and institutional credibility "in emails, social-media posts, conference appearances, podcasts, interviews with journalists, publications she has authored, and other contexts while engaging in tortious and contract-breaching conduct." FAC at ¶¶ 53, 113–117, 541–554.

That matters. Courts within this Circuit have recognized that trademark-based claims are not defeated where the defendant actively facilitates commercially operative use rather than merely standing by. In Trade Media Holdings Ltd. v. Huang & Associates, 123 F. Supp. 2d 233, 242–44 (D.N.J. 2000), the court held that assisting in the maintenance of a website offering goods and services could constitute actionable commercial use. Likewise, Valley Forge Military Academy Foundation v. Valley Forge Old Guard, Inc., 24 F. Supp. 3d 451, 458–60 (E.D. Pa. 2014) declined to dismiss trademark claims where the alleged conduct was tied to competing services and source-identifying use.

The FAC alleges that UCLA's role was not incidental. Plaintiffs allege UCLA "knowingly aided and abetted the scheme," permitted Prause to wield UCLA affiliation while targeting Plaintiffs, and thereby "added credibility to her tortious behavior and helped to advance the pornography industry's interests." FAC at ¶¶ 14, 53, 117. At minimum, those allegations plausibly state that UCLA facilitated

and amplified the challenged use of the NoFap mark in a manner that impaired its distinctiveness.

### 3.    UCLA's "Noncommercial Commentary" is Not Apt to be Resolved by way of a Motion to Dismiss

UCLA's final argument—that the use was merely noncommercial or protected commentary—also fails at this stage. Jews for Jesus v. Brodsky, 993 F. Supp. 282, 307–09 (D.N.J. 1998) is directly instructive. There, the court recognized that mere passive registration might not suffice, but held that the statutory exclusions for noncommercial use and commentary do not shield conduct that functionally interferes with the mark holder's commercial exploitation of its mark or impedes its access to consumers. See also Trade Media Holdings Ltd. v. Huang & Associates, 123 F. Supp. 2d 233, 242–44 (D.N.J. 2000).

That is the FAC's theory here. Plaintiffs do not allege isolated criticism. They allege a coordinated campaign to "undermine Plaintiff NoFap's trademark rights," "falsify its history," and disseminate confusing and disparaging uses of the NoFap mark through papers, social media, blog posts, podcasts, Wikipedia edits, and other public channels. FAC at ¶¶ 46, 50, 74, 149, 284(d), 284(f), 332, 335–336, 390–405. They further allege resulting commercial harm, including lost traffic, lost goodwill, reduced opportunities, and diminished brand value. FAC at ¶¶ 449–468.

On those allegations, UCLA cannot obtain dismissal simply by relabeling the conduct "commentary." Whether the challenged use was truly noncommercial, or instead functioned to impair the source-identifying value of Plaintiffs' mark and interfere with Plaintiffs' marketplace position, is a factual question. Valley Forge Military Academy Foundation v. Valley Forge Old Guard, Inc., 24 F. Supp. 3d 451, 458–60 (E.D. Pa. 2014).

### 4.    Plaintiffs Pled Dilution by Blurring and Tarnishment

The FAC also adequately alleges the substance of dilution. It alleges that Defendants' conduct damaged the NoFap mark "through dilution and diminishing its distinctiveness and market recognition." FAC at ¶ 439. It further alleges that Defendants sought to associate the NoFap brand with disparaging

and false narratives, undermine the mark's legitimacy, and erode its ability to identify Plaintiffs as the singular source of NoFap services and messaging. FAC at ¶¶ 148–149, 437–440.

That is sufficient under Times Mirror Magazines v. Las Vegas Sports News, 212 F.3d 157, 163–65 (3d Cir. 2000), which describes dilution as the whittling away of a mark's distinctiveness through blurring or tarnishment. Plaintiffs have alleged exactly that: a campaign to weaken the public's singular association between NoFap and Plaintiffs, and to substitute confusion, disparagement, and reputational degradation in its place. FAC at ¶¶ 148–149, 437–440, 449–468.

Count III is adequately pled. The FAC alleges a distinctive and widely recognized NoFap mark, deliberate efforts to blur and tarnish that mark, knowing facilitation and amplification by UCLA, and resulting injury to the mark's distinctiveness and Plaintiffs' goodwill. FAC at ¶¶ 73–74, 148–149, 437–440, 449–468. UCLA's arguments go to factual disputes inappropriate for resolution on a Rule 12(b)(6) motion.

For those reasons, UCLA's motion to dismiss Count III should be denied.

**G.      Plaintiffs Pled Sufficient Facts to Support their Claim of Trademark Infringement**

UCLA argues Count IV fails because UCLA did not itself directly use the NoFap mark and because the First Amended Complaint ("FAC") supposedly alleges only noncommercial speech by others. That is not the governing standard in the Third Circuit, and it is not what the FAC alleges.

Under American Tel. & Tel. Co. v. Winback & Conserve Program, Inc., 42 F.3d 1421, 1433–35 (3d Cir. 1994), Lanham Act liability is not limited to the entity that is the final or literal user of the mark. The Third Circuit recognizes secondary liability where a defendant intentionally induces infringement or continues to supply a product or service to one it knows or has reason to know is infringing. Courts in this Circuit have repeatedly applied that principle to claims involving confusion, unfair competition, and source-identifying misuse of marks. See Transdermal Prods., Inc. v. Performance Contract Packaging, Inc., 943 F. Supp. 551, 553–54 (E.D. Pa. 1996); Dentsply Sirona Inc.

v. Net32, Inc., No. 1:17-CV-1530, 2018 WL 3413922, at *6–7 (M.D. Pa. July 13, 2018).

That rule defeats UCLA's threshold argument. Plaintiffs do not need to allege that UCLA personally typed every challenged use of "NoFap" or itself operated every publication or account at issue. The FAC alleges that UCLA knowingly re-hired Prause, allowed her to use UCLA's institutional affiliation, and permitted her to continue representing herself as UCLA-affiliated "in emails, social-media posts, conference appearances, podcasts, interviews with journalists, publications she has authored, and other contexts while engaging in tortious and contract-breaching conduct." FAC at ¶¶ 53, 113–117. The FAC further alleges that UCLA "knowingly aided and abetted the scheme" and "permitted Defendant Prause to continue utilizing university resources to advance the interests of the pornography industry, lending the veneer of institutional credibility to her actions." FAC at ¶¶ 14, 117. Those allegations plausibly state facilitation, contribution, and knowing enablement.

The FAC also pleads the substantive elements of infringement. Plaintiffs allege ownership of valid protectable marks, including the NoFap trademark. FAC at ¶¶ 73–74. Plaintiffs further allege that Defendants used Plaintiffs' trademark without consent "to identify goods and/or services that caused a likelihood of confusion to Plaintiffs' commercial interests" and that Defendants' use "caused confusion to Plaintiffs' commercial interests." FAC at ¶¶ 442–446. More broadly, the FAC alleges a sustained effort to undermine Plaintiffs' trademark rights, falsify the history of the NoFap mark, and use the NoFap name in a way that confuses the public about Plaintiffs' mission, identity, and services. FAC at ¶¶ 46, 74, 148–149, 427–446. Plaintiffs also allege that trademark protection is critical because others have repeatedly tried to misattribute statements and positions to NoFap, creating precisely the sort of public confusion trademark law is designed to prevent. FAC at ¶¶ 148–149.

UCLA's contention that the FAC relies only on allegations concerning Gary Wilson or "RealYourBrainOnPorn" is incorrect, which was included to illustrate the Porn Industry Defendants' *modus operandi* of undermining trademark rights of enterprise targets. The FAC separately alleges that

"the porn industry has waged an aggressive campaign to undermine Plaintiffs' trademark rights through dilution," that "the Porn Industry Defendants are attempting to undermine Plaintiff NoFap's right to use and operate under its own name," and that Defendants spread disinformation about NoFap in papers, social media, and blog posts in a manner that harms Plaintiffs' brand identity and goodwill. FAC at ¶¶ 74, 149. UCLA's motion improperly isolates one subset of allegations while ignoring the FAC's direct allegations concerning the NoFap mark itself.

Nor can UCLA obtain dismissal by recharacterizing the challenged conduct as merely noncommercial commentary. At the pleading stage, that argument fails where the complaint alleges a coordinated, market-harming misuse of the mark that caused confusion and injury to goodwill. In Winback, the Third Circuit made clear that the Lanham Act is concerned with misleading uses that cause confusion in the marketplace. Winback, 42 F.3d at 1433. And in Dentsply Sirona, the court explained that trademark infringement, unfair competition, false description, and false designation claims all share consumer confusion as a common core. Dentsply Sirona, 2018 WL 3413922, at *6.

That is what the FAC alleges here. Plaintiffs allege not isolated criticism, but a coordinated campaign that used UCLA-backed credibility to disseminate confusing and damaging uses of Plaintiffs' mark across publications, social media, podcasts, Wikipedia, and other public channels, all while harming Plaintiffs' goodwill, web traffic, partnerships, and market value. FAC at ¶¶ 46, 50, 53, 117, 149, 284(d), 284(f), 332, 335–336, 375–380, 449–468. At minimum, whether UCLA's conduct is ultimately characterized as commercial, contributory, or otherwise actionable cannot be resolved on a Rule 12(b)(6) motion by simply labeling it "commentary."

Finally, the FAC plainly alleges injury. Plaintiffs allege significant financial losses, reputational damage, lost business opportunities, diminished goodwill, reduced web traffic, and ongoing harm to their business and professional interests as a direct result of Defendants' conduct. FAC at ¶¶ 430–435, 447–468. Those are classic trademark injuries and are more than sufficient under Rule 12. See Winback,

30

42 F.3d at 1433; <u>Transdermal</u>, 943 F. Supp. At 553–54.

In short, UCLA's motion rests on an artificially narrow theory that only the direct user of a mark may be liable, which is not the law. Because the FAC alleges valid marks, confusing unauthorized use, UCLA's knowing facilitation of that use, and resulting confusion and loss of goodwill, Count IV is plausibly pled and should not be dismissed.

### H.    Plaintiffs Pled Adequate Facts to Support a Claim of Trade Disparagement as to UCLA

Plaintiffs respectfully submit that UCLA's request to dismiss the trade disparagement claim should be denied. At the pleading stage, Plaintiffs need only allege a plausible claim, not prove it. They have done so. The First Amended Complaint identifies multiple false and disparaging publications concerning NoFap's business, services, and market legitimacy, including statements that NoFap is a "violent group," "extremist misogyny," a source of public-health harm, associated with mass murders, and a business that harms vulnerable users. FAC ¶¶ 426, 430, 440, 443, 445. Those are not vague accusations untethered to Plaintiffs' commercial interests; they are direct attacks on the quality, safety, and legitimacy of the very services NoFap offers to users, clinicians, researchers, and referral sources.

Under Pennsylvania law, commercial disparagement, or injurious falsehood, is actionable where the publication concerns the business of another, is false, is made with knowledge of falsity or reckless disregard, and causes pecuniary loss. <u>Neurotron, Inc. v. Med. Serv. Assoc. of Pa.</u>, 254 F.3d 444, 449-51 (3d Cir. 2001); <u>Pro Golf Mfg. v. Tribune Review Newspaper</u>, 809 A.2d 243, 246-47 (Pa. 2002). The Third Circuit in <u>Neurotron</u> expressly recognized Pennsylvania's adoption of Restatement (Second) of Torts §§ 623A and 626 for injurious falsehood claims. That is exactly what Plaintiffs plead here. The FAC alleges repeated false publications portraying NoFap as dangerous, fraudulent, misogynistic, violence-promoting, and unsuitable for referral or participation. FAC ¶¶ 414, 426, 430, 440, 443, 445. These statements were made in academic, social-media, and email channels to audiences whose willingness to engage with NoFap bears directly on Plaintiffs' economic interests.

31

UCLA's argument that no disparaging statement by The Regents is identified ignores the FAC's agency and participation allegations. Plaintiffs allege UCLA, through its Institutional Review Board and institutional approval of Prause's work, knowingly enabled and lent credibility to the Taylor & Francis publication and related dissemination campaign. FAC ¶¶ 14, 225, 254-255, 541. At minimum, Plaintiffs allege UCLA's involvement in the publication of the paper and related statements that NoFap was a violent or extremist group. FAC ¶¶ 426, 440, 443. On a Rule 12(b)(6) motion, those allegations must be accepted as true, and the Court may reasonably infer publication or participation in publication by UCLA through its employee acting under institutional auspices.

Nor does the statute of limitations warrant dismissal. Pennsylvania applies a one-year limitations period to commercial disparagement claims. 42 Pa.C.S. § 5523(1); Pro Golf Mfg., 809 A.2d at 246-48. But the FAC pleads publications and republications within that period, including November 16, 2023 dissemination of the Taylor & Francis paper with a photograph of Rhodes and warnings that men and youth should not be referred to NoFap, March 28, 2025 statements that NoFap is a group of "extremist misogyny," and May 15, 2024 email statements that NoFap is a "recognized terrorist group" with "extensive violence" in its support groups. FAC ¶¶ 414(b), 426(a), 443. Where the complaint identifies timely publications of the same business-disparaging theme, dismissal on limitations grounds is improper.

Finally, Plaintiffs have adequately pleaded special damages. Pennsylvania requires pecuniary loss, but at the pleading stage Plaintiffs need not prove a sum certain so long as they plausibly allege concrete economic harm flowing from the disparagement. See Neurotron, 254 F.3d at 449-51. The FAC does precisely that: it alleges reduced web traffic, diminished referrals, lost collaborations, reduced membership, lost partnership and funding opportunities, decreased market value and brand equity, and interference with monetizable products and services. FAC ¶¶ 452-467. Plaintiffs further allege that Prause's communications caused NoFap to be removed from a university research survey and deterred

third parties from recommending or linking to NoFap. FAC ¶¶ 432, 463. Those are classic allegations of special damages tied to disparagement of business services.

Because the FAC identifies actionable disparaging statements, timely publications, UCLA's plausible role in publication, and resulting pecuniary harm, Count V is more than sufficiently pleaded. UCLA's motion to dismiss the trade disparagement claim should therefore be denied. To the extent UCLA invokes state-law immunity doctrines, those arguments do not support dismissal with prejudice at this stage. At most, they raise questions as to the proper defendant, forum, or form of relief—issues that can be addressed through amendment or limited narrowing, rather than wholesale dismissal.

## I.      Plaintiffs Pled Adequate Facts to Support a Claim of Tortious Interference as to UCLA

Plaintiffs' tortious interference claim should not be dismissed. UCLA argues the FAC fails because it alleges only that defendants "had knowledge and/or should have known" of the Non-Disparagement Agreement, but at the pleading stage knowledge and intent may be alleged generally and inferred from surrounding facts. The FAC alleges that "All Defendants had knowledge and/or should have known" of the agreement, that "[d]efendants intentionally interfered with the contractual agreement between Plaintiffs and Defendant Prause," and that Prause and Rhodes executed the Non-Disparagement Agreement on February 26, 2021. FAC ¶¶ 475-477, 454.

The FAC also pleads facts from which UCLA's knowledge may plausibly be inferred. It alleges UCLA re-hired Prause "since November 2021 as a statistician," that Prause publicly used her UCLA employment while engaging in the challenged conduct, and that UCLA received notice and complaints concerning her behavior, including that after one person contacted UCLA regarding being targeted by Prause, "a university employee apologized for Defendant Prause's conduct and stated that Defendant UCLA maintained a 'large file' concerning her behavior." FAC ¶¶ 113, 115, 117.  The FAC further alleges Prause "was well aware of her contractual obligation not to disparage the Plaintiffs" and "cited the Non-Disparagement Agreement during a deposition conducted on August 12, 2022." FAC ¶ 213.

33

Those allegations permit the reasonable inference that UCLA knew of the agreement while continuing to provide Prause institutional affiliation and support.

That is sufficient under Rule 8. Pennsylvania permits a plaintiff to pled states of mind generally and that knowledge and intent may be inferred from surrounding circumstances. Com. v. TAP Pharm. Prods., Inc., 885 A.2d 1127. 1158 (Pa. Commw. Ct. 2005).

Accepting the FAC's well-pleaded allegations as true and drawing all reasonable inferences in Plaintiffs' favor, Plaintiffs have plausibly pleaded that UCLA knew of the Non-Disparagement Agreement and intentionally facilitated Prause's breaches. The motion to dismiss Count VIII should therefore be denied.

### J.    Plaintiffs Pled Sufficient Facts to Support Defamation Per Se and Per Quod

UCLA's motion to dismiss Count IX should be denied because Plaintiffs plausibly allege vicarious liability for defamatory statements made by Prause while acting within the scope of her UCLA employment. The FAC alleges UCLA employed Prause "since November 2021 as a statistician," that Prause repeatedly invoked her UCLA affiliation in making the challenged statements, and that UCLA knew of and maintained a "large file" concerning her conduct but continued to permit her to trade on UCLA's institutional authority. FAC ¶¶ 113, 115, 117, 478-486.

That is enough at the pleading stage. Under Aliota v. Graham, 984 F.2d 1350, 1358-60 (3d Cir. 1993) , an employer may be held liable for an employee's defamatory statements under ordinary respondeat superior principles; defamation is not categorically outside the scope of employment. The relevant question is whether the conduct was of the kind the employee was engaged to perform, occurred within authorized time and space limits, and was actuated at least in part by a purpose to serve the employer. Id. at 1358. Aliota further recognizes that even unauthorized or wrongful statements may still fall within scope where the employee was placed in a position to speak with the employer's authority. Id. at 1360.

Plaintiffs have plausibly pleaded just that here. The FAC alleges Prause used her UCLA position and credibility as part of the publication of the defamatory accusations at issue, and UCLA continued to employ and support her despite notice of her conduct. FAC ¶¶ 113, 115, 117, 478-486. At minimum, those allegations support a reasonable inference that Prause's conduct was not a purely personal frolic and that scope-of-employment cannot be resolved against Plaintiffs on a Rule 12(b)(6) motion. See Jacobs v. Pennsylvania Dep't of Corr., No. 04-1366, 2011 WL 2132986, at *17 (W.D. Pa. June 7, 2011) (unauthorized acts may still fall within scope if incidental to the employer's business).

UCLA's argument improperly asks the Court to draw inferences against Plaintiffs. Accepting the FAC's allegations as true, Plaintiffs have plausibly alleged that UCLA is liable for Prause's defamatory statements under respondeat superior. The motion to dismiss Count IX should therefore be denied.

### K.    Plaintiffs Pled Sufficient Facts to Support their Claim of Publicity Placing Person In False Light

UCLA's motion to dismiss Count X should be denied. Plaintiffs plausibly allege that UCLA may be held liable for publicity placing Rhodes in a false light because the FAC alleges Prause acted while employed by UCLA, invoked her UCLA affiliation in making the challenged statements, and UCLA continued to permit and support that conduct despite notice of it. FAC ¶¶ 113, 115, 117, 487-492.

Those allegations are sufficient at the pleading stage. Graboff v. Colleran Firm, 744 F.3d 128, 136-38 (3d Cir. 2013) confirms that an institutional defendant may be liable for false light where a publication creates a misleading and highly offensive impression about the plaintiff, even if the theory is based on false implication rather than a single facially false statement. UCLA's argument that the FAC fails because it does not identify a false-light publication by UCLA itself is too narrow. Under Graboff , the relevant question is whether the challenged publicity is plausibly attributable to the institution and casts Plaintiff in a false and highly offensive light.

That is what Plaintiffs allege here. The FAC pleads that Prause used UCLA's name and institutional affiliation while publishing the statements at issue, and that UCLA had notice of her

35

conduct yet continued to employ and support her. FAC ¶¶ 113, 115, 117. At minimum, those facts support a reasonable inference that the false-light publicity was attributable to UCLA and cannot be dismissed on the pleadings.

UCLA's statute-of-limitations and actual-knowledge arguments also do not warrant dismissal at this stage. The FAC alleges a course of false-light publicity extending into the limitations period. FAC ¶¶ 487-492. And Plaintiffs plausibly allege at least reckless disregard by UCLA because UCLA allegedly had notice of Prause's conduct, maintained a "large file" regarding it, and nevertheless continued to permit her to invoke UCLA's authority in connection with the challenged statements. FAC ¶¶ 115, 117.

Taking the FAC's allegations as true and drawing all reasonable inferences in Plaintiffs' favor, Count X states a plausible false light claim against UCLA. The motion should be denied.

### L.      Plaintiffs Pled Sufficient Facts to Support their Claim of Publicity Given to Private Life

UCLA's motion to dismiss Count XI should be denied. Plaintiffs plausibly allege that UCLA may be held liable for publicity given to private life based on Prause's conduct while employed by UCLA and UCLA's own notice of, and failure to stop, that conduct. The FAC alleges UCLA employed Prause beginning in November 2021, that she invoked her UCLA affiliation while engaging in the challenged conduct, and that UCLA was informed of her behavior and maintained a "large file" concerning it. FAC ¶¶ 113, 115, 117. The FAC further pleads the public-disclosure claim in Count XI. FAC ¶¶ 493-498.

At a minimum, those allegations are sufficient to proceed under Pennsylvania institutional-liability principles. R.A. v. First Church of Christ, 748 A.2d 692, 699-700 (Pa. Super. Ct. 2000) recognizes that an employer may be vicariously liable for an employee's torts committed within the scope of employment and may also be directly liable for negligent supervision or control where it knew or should have known intervention was necessary. Under that framework, dismissal is improper where

36

the complaint plausibly alleges both employee misconduct tied to the institutional role and institutional notice of the need to control the employee. Id.

That is exactly what Plaintiffs allege here. UCLA's argument that the FAC does not identify publicity by UCLA "itself" ignores that institutional liability may rest on employee conduct attributable to the employer and on UCLA's own failure to supervise after notice. FAC ¶¶ 113, 115, 117, 493-498. And UCLA's scope-of-employment argument is premature: whether Prause's conduct was sufficiently connected to her UCLA role, the involvement of UCLA's Institutional Review Board in publishing the Taylor & Francis paper, and whether UCLA's notice and inaction support direct liability, are fact-bound issues not suitable for resolution on a Rule 12(b)(6) motion.

Accepting the FAC's allegations as true and drawing all reasonable inferences in Plaintiffs' favor, Count XI plausibly states a claim against UCLA. The motion to dismiss should therefore be denied.

### M.    Plaintiffs Pled Sufficient Facts to Support their Claim of Intrusion into Private Affairs

UCLA's motion to dismiss Count XII should be denied. Plaintiffs plausibly allege that UCLA may be held liable for intrusion into private affairs based on Prause's conduct while employed by UCLA and UCLA's continued support of that conduct despite notice of it. The FAC alleges UCLA employed Prause beginning in November 2021, that she used her UCLA affiliation while engaging in the challenged conduct, and that UCLA was informed of her behavior and maintained a "large file" concerning it. FAC ¶¶ 113, 115, 117. The FAC further pleads the intrusion claim in Count XII. FAC ¶¶ 499-504.

Those allegations are sufficient at the pleading stage under Pennsylvania respondeat superior principles. Costa v. Roxborough Memorial Hosp., 708 A.2d 490, 493-94 (Pa. Super. Ct. 1998) holds that an employer may be vicariously liable for intentional torts committed by an employee when the conduct is of the kind the employee was engaged to perform, occurs within authorized time and space

37

limits, and is motivated at least in part by a purpose to serve the employer. <u>Butler v. Flo-Ron Vending Co.</u>, 557 A.2d 730, 736 (Pa. Super. Ct. 1989) likewise recognizes that respondeat superior is not limited to negligence claims, and that scope of employment is ordinarily a jury question. And <u>R.A. v. First Church of Christ</u>, 748 A.2d 692, 699-700 (Pa. Super. Ct. 2000) confirms that institutional liability may also rest on negligent supervision or control where the employer knew or should have known intervention was necessary.

Here, UCLA's argument that the FAC identifies no intrusion by UCLA "itself" is too narrow. Plaintiffs allege employee conduct attributable to UCLA and, separately, UCLA's own notice and failure to control that conduct. FAC ¶¶ 113, 115, 117, 499-504. At minimum, those allegations plausibly support both vicarious liability and direct institutional liability. Whether Prause acted within the scope of her UCLA role, or instead for purely personal reasons, is a fact-bound question that cannot be resolved on a Rule 12(b)(6) motion. <u>Costa</u>, 708 A.2d at 493-94 .

Accepting the FAC's allegations as true and drawing all reasonable inferences in Plaintiffs' favor, Count XII states a plausible claim against UCLA. The motion should be denied.

N. **Plaintiffs Pled Sufficient Facts to Support their Claim of Intentional Infliction of Emotional Distress**

UCLA's motion to dismiss Count XIII should be denied. Plaintiffs plausibly allege that UCLA may be held liable for IIED based on Prause's conduct while employed by UCLA and UCLA's own notice of, and failure to stop, that conduct. The FAC alleges UCLA employed Prause beginning in November 2021, that she invoked her UCLA affiliation while engaging in the challenged conduct, and that UCLA was informed of her behavior and maintained a "large file" concerning it. FAC ¶¶ 113, 115, 117. The FAC further pleads the IIED claim in Count XIII. FAC ¶¶ 505-510.

Those allegations are sufficient at the pleading stage. Under <u>Jordan v. Pa. State Univ.</u>, 276 A.3d 751, 775-76 (Pa. Super. Ct. 2022) , IIED requires extreme and outrageous intentional or reckless conduct causing severe emotional distress, and the court's role on a motion to dismiss is only to

determine whether the allegations are sufficient to permit the claim to proceed. Pennsylvania law also permits respondeat superior liability for intentional torts, including where the employee's conduct is within the scope of employment. Butler v. Flo-Ron Vending Co., 557 A.2d 730, 736 (Pa. Super. Ct. 1989) ; Fitzgerald v. McCutcheon, 410 A.2d 1270, 1271-72 (Pa. Super. Ct. 1979) . And whether conduct falls within the scope of employment is ordinarily a jury question. Justice v. Lombardo, 208 A.3d 1057, 1068 (Pa. 2019)

Here, UCLA's argument that the FAC identifies no extreme and outrageous conduct by UCLA "itself" is too narrow. Plaintiffs allege both employee conduct attributable to UCLA and UCLA's own notice and failure to intervene. FAC ¶¶ 113, 115, 117, 505-510. At minimum, those allegations plausibly support vicarious liability and direct institutional liability. See Brezenski v. World Truck Transfer, Inc., 755 A.2d 36, 40-41 (Pa. Super. Ct. 2000) (distinguishing direct employer liability from respondeat superior liability); Justice v. Lombardo, 208 A.3d 1057, 1068 (Pa. 2019) (scope of employment governs employer liability for employee torts).

Accepting the FAC's allegations as true and drawing all reasonable inferences in Plaintiffs' favor, Count XIII states a plausible IIED claim against UCLA. The motion should be denied.

### O.    Plaintiffs Pled Sufficient Facts to Support their Claim of Civil Conspiracy

UCLA's motion to dismiss Count XIV should be denied. Plaintiffs plausibly allege that UCLA may be held liable for civil conspiracy based on Prause's conduct while employed by UCLA and UCLA's own knowing failure to stop that conduct despite notice of it. The FAC alleges UCLA employed Prause beginning in November 2021, that she invoked her UCLA affiliation while engaging in the challenged conduct, and that UCLA was informed of her behavior and maintained a "large file" concerning it. FAC ¶¶ 113, 115, 117. The FAC further pleads the conspiracy claim in Count XIV. FAC ¶¶ 511-517.

At the pleading stage, that is sufficient. Under Scampone v. Highland Park Care Ctr., LLC, 57

A.3d 582, 597-98 (Pa. 2012), Pennsylvania law permits plaintiffs to pursue both direct and vicarious theories against an institutional defendant based on employee conduct, and vicarious liability turns on the legal relationship between the entity and the employee. UCLA's argument that the FAC fails because it does not allege UCLA itself entered the conspiracy ignores that Pennsylvania law does not require the institution to have personally carried out each tortious act where the complaint plausibly alleges employee conduct attributable to the institution.

UCLA is also wrong to demand dismissal based on supposed lack of a "meeting of the minds" by UCLA itself. At this stage, Plaintiffs need only plausibly allege UCLA's participation through the conduct of its employee and UCLA's own knowing inaction after notice. FAC ¶¶ 113, 115, 117, 511-517. And to the extent UCLA argues the conspiracy claim fails because the underlying tort claims fail, that argument also fails because Plaintiffs have plausibly pleaded underlying torts against Prause and derivative and direct theories against UCLA. Although Weaver v. Franklin County, 918 A.2d 194, 202-03 (Pa. Commw. Ct. 2007) recognizes that conspiracy requires a viable underlying tort, Plaintiffs have alleged exactly that here.

At minimum, whether UCLA's liability is derivative of Prause's conduct, or also rests on UCLA's own direct participation and knowing failure to intervene, cannot be resolved on a Rule 12(b)(6) motion. Accepting the FAC's allegations as true and drawing all reasonable inferences in Plaintiffs' favor, Count XIV states a plausible civil conspiracy claim against UCLA. The motion should be denied.

### P. Plaintiffs Pled Sufficient Facts to Support their Claim of Gross Negligence and Negligence

UCLA's motion to dismiss Count XV should be denied because the FAC plausibly alleges both vicarious and direct liability. The FAC alleges UCLA employed Prause beginning in November 2021, that she invoked her UCLA affiliation while engaging in the challenged conduct, and that UCLA was informed of her behavior and maintained a "large file" concerning it. FAC ¶¶ 113, 115, 117. The FAC

further pleads negligence and gross negligence in Count XV. FAC ¶¶ 518-524.

Those allegations are sufficient under Pennsylvania law. An institutional defendant may be held vicariously liable for negligent acts of its employee committed in the course and scope of employment. Tonsic v. Wagner, 329 A.2d 497, 252-53 (Pa 1974) ; Sutherland v. Monongahela Valley Hosp., 856 A.2d 55, 62-63 (Pa. Super. Ct. 2004) . And scope of employment is ordinarily a jury question, making dismissal inappropriate where, as here, the FAC plausibly alleges UCLA employed Prause and she used her UCLA affiliation in carrying out the challenged conduct. Costa v. Roxborough Mem'l Hosp., 708 A.2d 490, 493-94 (Pa. Super. Ct. 1998) .

Pennsylvania law also permits direct negligence claims against institutional defendants based on their own failures in supervision, training, oversight, and policy enforcement. Thompson v. Nason Hosp., 591 A.2d 703, 707-08 (Pa 1991) ; Scampone v. Highland Park Care Ctr., LLC, 57 A.3d 582, 596-600 (Pa. 2012) . Plaintiffs allege exactly that kind of direct institutional fault here: UCLA had notice of Prause's conduct, maintained records concerning it, and failed to stop or prevent further harm. FAC ¶¶ 115, 117, 518-524.

UCLA's argument that the FAC alleges only intentional misconduct does not defeat Count XV at the pleading stage. Pennsylvania permits plaintiffs to pursue direct and vicarious negligence theories together, even where the same course of conduct may also support intentional tort claims. Scampone v. Highland Park Care Ctr., LLC, 57 A.3d 582, 597-98 (Pa. 2012). Accepting the FAC's allegations as true and drawing all reasonable inferences in Plaintiffs' favor, Count XV plausibly states claims for negligence and gross negligence against UCLA. The motion should be denied.

### Q.    Plaintiffs Pled Sufficient Facts to Support their Claim of Negligent Hiring

UCLA's motion to dismiss Count XVI should be denied. Plaintiffs plausibly allege a direct negligent hiring claim based on UCLA's decision to employ or re-hire Prause despite facts from which UCLA knew or should have known she posed the very risk that injured Plaintiffs. The FAC alleges

41

UCLA employed Prause beginning in November 2021, that UCLA was informed of her conduct, and that UCLA maintained a "large file" concerning her behavior. FAC ¶¶ 113, 115, 117. The FAC further pleads negligent hiring in Count XVI. FAC ¶¶ 525-529.

Those allegations are sufficient under Pennsylvania law. Negligent hiring is a direct negligence claim against the employer, not merely a derivative respondeat superior theory. Dempsey v. Walso Bureau, Inc., 431 Pa. 562 (1968) ; Hutchison ex rel. Hutchison v. Luddy, 560 Pa. 51 (1999) . An employer may be liable where it knew or should have known the employee was dangerous, careless, or otherwise unfit, and the employment created a foreseeable risk of the type of harm suffered. Heller v. Patwil Homes, Inc., 713 A.2d 105, 107-10 (Pa. Super. Ct. 1998) ; R.A. v. First Church of Christ, 748 A.2d 692, 699-700 (Pa. Super. Ct. 2000) .

UCLA's argument improperly demands proof rather than plausible allegations. At the pleading stage, Plaintiffs need not prove what UCLA knew at the precise moment of hiring; they need only allege facts supporting a reasonable inference that UCLA knew or should have known of Prause's unfitness and nevertheless employed her in a position that enabled further harm. FAC ¶¶ 113, 115, 117, 525-529. The FAC does that. And because negligent hiring is a direct claim focused on UCLA's own conduct, UCLA's attempt to reframe Count XVI as dependent solely on Prause's later acts misses the point. Heller, 713 A.2d at 107-10 .

Accepting the FAC's allegations as true and drawing all reasonable inferences in Plaintiffs' favor, Count XVI plausibly states a negligent hiring claim against UCLA. The motion should be denied.

R.      Plaintiffs Sufficient Facts to Support their Claim of Declaratory Judgment

UCLA's motion to dismiss Count XVII should be denied. Pennsylvania law expressly permits declaratory relief alongside substantive claims. The Declaratory Judgments Act provides that declaratory relief is "additional and cumulative" and is not barred merely because another remedy exists. 42 Pa. Cons. Stat. § 7541. Consistent with that statute, Liberty Mut. Ins. Co. v. S.G.S. Co., 456

42

Pa. 94, (1974) hold that the availability of other nonexclusive remedies does not preclude declaratory relief, and Wagner v. Apollo Gas Co., 399 Pa. Super. 323, 326 (1990) recognizes that a party may seek declaratory relief whether or not further relief also is sought.

That defeats UCLA's argument that Count XVII is improper merely because Plaintiffs also plead tort and contract claims. The question is not whether the declaratory claim overlaps factually with other counts, but whether it addresses a real and present controversy and would clarify the parties' legal relations. Bayada Nurses, Inc. v. Commonwealth, Dep't of Labor & Indus., 8 A.3d 866, 874 (2010) . The FAC does so here. Plaintiffs seek declarations concerning ongoing legal rights and obligations arising from the same controversy alleged throughout the FAC, not merely a retrospective damages award. FAC ¶¶ 530-535.

Nor is Count XVII improperly duplicative at the pleading stage. Under Stackhouse v. Commonwealth, State Police, 892 A.2d 54, 61-62 (Pa. Commw. Ct. 2006), declaratory relief may be declined when it would have no independent practical significance and would merely serve as a predicate for damages. But that is not this case. Plaintiffs seek a declaration that would resolve uncertainty concerning the parties' present legal relations and provide practical relief beyond damages alone. FAC ¶¶ 530-535. At minimum, whether declaratory relief will ultimately serve a useful purpose is a discretionary merits question, not a basis to dismiss the claim now.

Accepting the FAC's allegations as true and drawing all reasonable inferences in Plaintiffs' favor, Count XVII states a proper claim for declaratory relief. UCLA's motion should be denied.

**5.      In the Alternative, Plaintiffs Request Leave to Amend**

At bottom, UCLA seeks an extraordinary result: dismissal of all claims against it, with prejudice, at the pleading stage, based on sweeping and undifferentiated immunity and jurisdictional theories. The law does not support that outcome. At minimum, Plaintiffs have plausibly alleged claims, are entitled to jurisdictional discovery, and must be afforded leave to amend to address any perceived deficiencies.

43

If the Court concludes that any claim, jurisdictional allegation, or request for relief has not been pleaded with sufficient specificity, Plaintiffs respectfully request leave to amend. Under Federal Rule of Civil Procedure 15(a)(2), leave to amend should be freely given when justice so requires, and dismissal with prejudice is inappropriate unless amendment would be inequitable or futile. See Phillips v. County of Allegheny, 515 F.3d 224, 245–46 (3d Cir. 2008); Grayson v. Mayview State Hosp., 293 F.3d 103, 108 (3d Cir. 2002) . That is especially true where the issues raised concern pleading specificity, personal jurisdiction, sovereign immunity, the identity of the proper defendant for prospective relief, or the need to clarify claim-specific allegations. Accordingly, if the Court finds any deficiency in the First Amended Complaint, Plaintiffs respectfully request an opportunity to amend rather than dismissal with prejudice.

## 6.    Conclusion

For the foregoing reasons, Plaintiffs respectfully request that the Court deny UCLA's Motion to Dismiss in its entirety. In the alternative, if the Court concludes that any claim, jurisdictional allegation, or request for relief has not been pleaded with sufficient specificity, Plaintiffs respectfully request limited jurisdictional discovery and leave to amend. In no event should any claim be dismissed with prejudice at this stage.

Respectfully submitted,

_____/s/ David M. Kobylinski_____
David M. Kobylinski, Esquire
PA ID No.: 92233
304 Ross Street, Suite 510
Pittsburgh, PA 15219
dave@koby.law
412-281-6600
412-281-6610 (fax)

*Counsel for Plaintiffs*

Dated: April 13, 2026