# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

ALEXANDER RHODES and NOFAP LLC,

    Plaintiffs,

v.

AYLO HOLDINGS, S.A.R.L (d/b/a
PornHub, AYLO USA, INC. (d/b/a
PornHub), AYLO GLOBAL
ENTERTAINMENT, INC. (d/b/a Porn Hub),
AYLO BILLING LIMITED (d/b/a PornHub),
NICOLE PRAUSE, Ph.D., THE REGENTS
OF THE UNIVERSITY OF CALIFORNIA
(d/b/a UCLA), DAVID LEY, Ph.D., and
TAYLOR & FRANCIS GROUP, LLC.,

    Defendants.

Case No. 2:25-cv-01956-MJH

## <u>REPLY BRIEF IN SUPPORT OF DEFENDANT, THE REGENTS OF THE UNIVERSITY OF CALIFORNIA'S, MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINT</u>

**GORDON REES SCULLY MANSUKHANI LLP**
Three Logan Square
1717 Arch Street, Suite 610
Philadelphia, Pennsylvania 19103
T: +267.602.2040
F: +215.693.6650
anemiroff@grsm.com

*On the brief:*
Alexander Nemiroff, Esq.

## TABLE OF CONTENTS

**Page**

I.     PRELIMINARY STATEMENT ................................................................................. 1

II.    THE REGENTS RETAINS SOVEREIGN IMMUNITY ..................................... 1

III.   THIS COURT LACKS PERSONAL JURISDICTION OVER THE REGENTS ............. 5

IV.    PLAINTIFFS FAIL TO STATE A CLAIM UPON WHICH RELIEF MAY BE
       GRANTED ...................................................................................................... 7

       A.    The First Amended Complaint is an Impermissible "Shotgun" Pleading .............. 7

       B.    Plaintiffs' RICO Claim (Count I) Must be Dismissed............................................ 8

       C.    Plaintiffs' Unfair Competition Claim Under the Lanham Act (Count II)
             Must be Dismissed.................................................................................................. 9

       D.    Plaintiffs' Trademark Dilution Claim Under the Lanham Act (Count III)
             Must be Dismissed.................................................................................................. 10

       E.    Plaintiffs' Trademark Infringement Claim Under the Lanham Act (Count
             IV) Must be Dismissed ........................................................................................... 12

       F.    Plaintiffs' Trade Disparagement Claim (Count V) Must be Dismissed ............... 13

       G.    Plaintiffs' Tortious Interference Claim (Count VIII) Must be Dismissed............ 14

       H.    Plaintiffs' Defamation per se and per quod Claim (Count IX) Must be
             Dismissed................................................................................................................ 15

       I.    Plaintiffs' Publicity Placing Person in False Light Claim (Count X) Must
             be Dismissed ........................................................................................................... 16

       J.    Plaintiffs' Publicity Given to Private Life Claim (Count XI) Must be
             Dismissed................................................................................................................ 16

       K.    Plaintiffs' Intrusion Into Private Affairs Claim (Count XII) Must be
             Dismissed................................................................................................................ 17

       L.    Plaintiffs' Intentional Infliction of Emotional Distress Claim (Count XIII)
             Must be Dismissed.................................................................................................. 19

       M.    Plaintiffs' Civil Conspiracy Claim (Count XIV) Must be Dismissed .................. 20

       N.    Plaintiffs' Gross Negligence and Negligence Claim (Count XV) Must be
             Dismissed................................................................................................................ 20

O.      Plaintiffs' Negligent Hiring Claim (Count XVI) Must be Dismissed ................... 21

P.      Plaintiffs' Declaratory Relief Claim (Count XVII) Must be Dismissed............... 22

Q.      Plaintiffs Should Not be Granted Leave to Amend the First Amended
Complaint, As Any Amendment Would be Futile................................................. 23

V.      CONCLUSION........................................................................................................ 23

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*4431, Inc. v. Cincinnati Ins. Companies,*
504 F. Supp.3d 368 (E.D. Pa. 2020), *aff'd sub nom. Wilson v. USI Ins. Ser.
LLC*, 57 F.4th 131 (3d Cir. 2023) ................................................................................22

*Acclaim Sys., Inc. v. Infosys Ltd.,*
679 F. App'x 207 (3d Cir. 2017) .................................................................................14

*Alden v. Maine,*
527 U.S. 706 (1999).......................................................................................................2

*Althaus ex re. Althaus v. Cohen,*
562 Pa. 547, 756 A.2d 1166, (2000)...........................................................................21

*American Tel. and Tel. Co. v. Winback and Conserve Program, Inc.,*
42 F.3d 1421 (3d Cir. 1994).........................................................................................10

*Bair v. Purcell,*
500 F. Supp.2d 468 (M.D. Pa. 2007) ..........................................................................20

*Bartol v. Barraclough,*
251 F. Supp.3d 855 (E.D. Pa. 2017) .............................................................................7

*Beaulieu v. Vermont,*
807 F.3d 478 (2d Cir. 2015)..........................................................................................2

*Brezenski v. World Truck Transfer, Inc.,*
755 A.2d 36 (Pa. Super. Ct. 2000)..............................................................................22

*Burger King Corp. v. Rudzewicz,*
471 U.S. 462 (1985)........................................................................................................5

*In re Burlington Coat Factory Sec. Litig.,*
114 F.3d 1410 (3d Cir.1997).........................................................................................4

*Calder v. Jones,*
465 U.S. 783, 104 S. Ct. 1482, 79 L. Ed. 2d 804 (1984).............................................6

*Church v. Missouri,*
913 F.3d 736 (8th Cir. 2019) ........................................................................................2

*Clegg v. Falcon Plastics, Inc.,*
174 F. App'x 18 (3d Cir. 2006).....................................................................................18

*Dentsply Sirona Inc. v. Net32, Inc.*,
  Civ. Act. No. 1:17-CV-1530, 2018 WL 3473973 (M.D. Pa. Jul. 19, 2018)............................12

*Doe v. Div. of Youth & Fam. Servs.*,
  148 F. Supp. 2d 462 (D.N.J. 2001) ...................................................................................4

*Fletcher-Harlee Corp. v. Pote Concrete Contractors, Inc.*,
  482 F.3d 247 (3d Cir. 2007)............................................................................................4

*Franchise Tax Bd. of California v. Hyatt*,
  587 U.S. 230, 139 S. Ct. 1485, 203 L. Ed. 2d 768 (2019).......................................1, 2

*Galette v. New Jersey Transit Corp.*,
  146 S. Ct. 854 (2026)........................................................................................................2

*Graboff v. Colleran Firm*,
  744 F.3d 128 (3d Cir. 2014)............................................................................................16

*M.S. ex rel. Hall v. Susquehanna Twp. Sch. Dist.*,
  43 F. Supp. 3d 412 (M.D. Pa. 2014)................................................................................22

*Hart v. O'Malley*,
  436 Pa. Super. 151, 647 A.2d 542 (1994), *aff'd,* 544 Pa. 315, 676 A.2d 222
  (1996)................................................................................................................................19

*I.M. Wilson, Inc. v. Otvetstvennostyou "Grichko"*,
  500 F. Supp.3d 380 (E.D. Pa. 2020) ...............................................................................11

*IMO Industries, Inc. v. Kiekert AG*,
  155 F.3d 254 (3d Cir. 1998).......................................................................................6, 7

*Jews for Jesus v. Brodsky*,
  993 F. Supp. 282 (D.N.J. 1998)......................................................................................12

*Keffer v. Bob Nolan's Auto Serv., Inc.*,
  59 A.3d 621 (Pa. Super. Ct. 2012)..................................................................................21

*Lombardo v. Pennsylvania, Dep't of Public Welfare*,
  540 F.3d 190 (3d Cir. 2008).............................................................................................2

*Ludwig v. McDonald*,
  204 A.3d 935 (Pa. Super. Ct. 2019).................................................................................15

*Mallison v. Connecticut Off. of Early Childhood*,
  657 F. Supp. 3d 221 (D. Conn. 2023)................................................................................3

*Mason v. Campbell*,
  No. CV 16-1675, 2016 WL 8716458 (E.D. Pa. July 29, 2016)........................................2

iv

*R.A. ex rel. N.A. v. First Church of Christ,*
  748 A.2d 692 (Pa. Super. Ct. 2000) ...........................................................................................17

*Phillips v. County of Allegheny,*
  515 F.3d 224 (3d Cir. 2008)..........................................................................................................23

*Pinkney v. Meadville, Pennsylvania,*
  No. 24-2873, 2025 WL 2694099 (3d Cir. Sep. 22, 2025) ..........................................................18

*Pro Golf Mfg., Inc. v. Trib. Rev. Newspaper Co.,*
  570 Pa. 242, 809 A.2d 243 (2002) ..............................................................................................13

*Regents of the Univ. of California v. Doe,*
  519 U.S. 425, 117 S. Ct. 900, 137 L. Ed. 2d 55 (1997)................................................................3

*St. Luke's Health Network, Inc. v. Lancaster Gen. Hosp.,*
  967 F.3d 295 (3d Cir. 2020)............................................................................................................9

*Toys "R" Us, Inc. v. Step Two, S.A.,*
  318 F.3d 446 (3d Cir. 2003)............................................................................................................7

*Trade Media Holdings Ltd. v. Huang & Associates,*
  123 F. Supp.2d 233 (D.N.J. 2000) ...............................................................................................11

*Transdermal Products, Inc. v. Performance Contract Packaging, Inc.,*
  943 F. Supp. 551 (E.D. Pa. 1996) ................................................................................................10

*Universal Elec. Corp. v. Baldwin,*
  No. 2:17-CV-00842, 2018 WL 3707423 (W.D. Pa. Aug. 3, 2018).........................................14

*Urella v. Pennsylvania State Troopers Ass'n,*
  628 F. Supp.2d 600 (E.D. Pa. 2008) ..............................................................................................3

*Valley Forge Military Academy Foundation v. Valley Forge Old Guard Inc.,*
  24 F. Supp.3d 451 (E.D. Pa. 2014) ..............................................................................................11

*Walden v. Fiore,*
  571 U.S. 277 (2014)..........................................................................................................................5

*WhiteSand Rsch., LLC v. Sehn,*
  No. 1123 WDA 2017, 2018 WL 2728847 (Pa. Super. Ct. June 7, 2018)................................20

*Woods v. Morris,*
  No. 2:20-CV-001376, 2022 WL 11962108 (W.D. Pa. Oct. 20, 2022) ...................................19

*Wright v. New Jersey/Dep't of Educ.,*
  115 F. Supp. 3d 490 (D.N.J. 2015) ................................................................................................3

**Constitutions**

U.S. Const. amend. I ...................................................................................................10, 13

U.S. Const. amend. XI ...................................................................................................1, 2

**Statutes**

15 U.S.C. § 1125(c)(2)(A) ...............................................................................................10

28 U.S.C. § 1125(c)(4)......................................................................................................12

**Rules**

Fed. R. Civ. P. 12(b)(1)....................................................................................................1, 3

Fed. R. Civ. P. 12(b)(2)....................................................................................................1, 3

Fed. R. Civ. P. 12(b)(6)....................................................................................................1, 3

## I.    PRELIMINARY STATEMENT

Defendant, The Regents of the University of California ("The Regents"), respectfully submits this Reply Brief in Support of its Motion to Dismiss Plaintiffs' First Amended Complaint pursuant to Federal Rules of Civil Procedure 12(b)(1), 12(b)(2), and 12(b)(6).

This action should be dismissed as to The Regents for three independent and dispositive reasons.  First, The Regents is an arm of the State of California and retains constitutional state sovereign immunity from private suit in the courts of another state.[1] Second, this Court lacks personal jurisdiction over The Regents because Plaintiffs allege no facts establishing that The Regents is "at home" in Pennsylvania or that The Regents purposefully directed any relevant conduct towards Pennsylvania.  Third, Plaintiffs fail to state plausible claims for relief against The Regents. Their allegations are conclusory, speculative, and unsupported by factual averments or legal authority linking The Regents to the alleged wrongdoing.

For all of the above reasons, The Regents' request for dismissal should be granted in its entirety.

## II.    THE REGENTS RETAINS SOVEREIGN IMMUNITY

Plaintiffs contend The Regents waived its sovereign immunity defense by removing this matter to federal court.  *See* ECF No. 68 at 10-13. Relying upon *Lapides v. Board of Regents of University System of Georgia*, Plaintiffs argue The Regents waived its Eleventh Amendment objection to a federal forum when it removed this action to federal court. *Id.* at 10.  That argument misstates the law.

---

[1] *Franchise Tax Bd. of California v. Hyatt*, 587 U.S. 230, 236, 139 S. Ct. 1485, 1492, 203 L. Ed. 2d 768 (2019).

The United States Court of Appeals for the Third Circuit has squarely held that "while voluntary removal waives a State's immunity from suit in a federal forum" under the Eleventh Amendment, "the removing State retains all defenses it would have enjoyed had the matter been litigated in state court, including immunity from liability." *Lombardo v. Pennsylvania, Dep't of Public Welfare*, 540 F.3d 190, 198 (3d Cir. 2008). "Therefore, while *Lapides* established that a state waives its Eleventh Amendment sovereign immunity through removal to federal court, removal does not waive the state's general immunity from liability in any court. Rather, a state may continue to invoke its state sovereign immunity as a defense to a plaintiff's claims." *Mason v. Campbell*, No. CV 16-1675, 2016 WL 8716458, at *4 (E.D. Pa. July 29, 2016) (internal citations omitted); *Church v. Missouri*, 913 F.3d 736, 742–43 (8th Cir. 2019) ("[N]either logic nor precedent supports the proposition that a state waives its general state sovereign immunity by removing an action from state court to federal court"); *Beaulieu v. Vermont*, 807 F.3d 478, 486 (2d Cir. 2015) ("A state's sovereign immunity from private suit is a common law doctrine historically recognized by both state and federal courts, though most clearly explicated in federal judicial precedents").

As set forth in The Regents' Memorandum of Law in Support of its Motion to Dismiss, the United States Supreme Court has recognized that immunity extends beyond the Eleventh Amendment and bars private suits against nonconsenting states and their arms in any forum. *See Alden v. Maine*, 527 U.S. 706, 713 (1999). This immunity, which is enjoyed by The Regents, is "structural" and applies unless the State has clearly and unequivocally consented to suit. *Alden*, 527 U.S. at 755-757. Consistent with this principle, Pennsylvania state and federal courts lack authority to entertain private suits against a California arm of the state (such as The Regents) unless California has expressly consented to such suits in Pennsylvania. *See Franchise Tax Bd. of California v. Hyatt*, 587 U.S. 230, 236 (2019); *Galette v. New Jersey Transit Corp.*, 146 S. Ct. 854

2

(2026) (citing *Regents of the Univ. of California v. Doe*, 519 U.S. 425, 430, 117 S. Ct. 900, 904, 137 L. Ed. 2d 55 (1997)) (leaving *Doe* undisturbed, and affirmatively citing it as settled authority for the proposition that the arm-of-the-state inquiry is governed by federal law informed by the state law provisions defining the entity's character).

Plaintiffs' assertion that it is somehow inappropriate for The Regents to seek dismissal of the claims against it in their entirety on the basis of sovereign immunity, but instead must present its sovereign immunity argument "claim by claim and remedy by remedy" is incorrect. *See* ECF No. 68 at 11. There is no controlling authority (and none cited) requiring a "claim by claim and remedy by remedy" showing by the immune entity as a threshold matter.

Once an entity establishes it is an arm of the State, the burden shifts to the plaintiff to demonstrate an applicable waiver or exception to immunity as part of establishing subject matter jurisdiction. *Mallison v. Connecticut Off. of Early Childhood*, 657 F. Supp. 3d 221, 227 (D. Conn. 2023) ("[C]onsistent with a plaintiff's ultimate burden of establishing subject matter jurisdiction, once an entity has shown that it is an arm of the state, the plaintiff bears the burden of establishing that an exception to sovereign immunity applies"); *Wright v. New Jersey/Dep't of Educ.*, 115 F. Supp. 3d 490, 496 (D.N.J. 2015) (noting that the plaintiff "bears the burden of showing Congress's unequivocal waiver of sovereign immunity" and holding that "[b]ecause Plaintiff has not met his burden of establishing waiver of sovereign immunity, the Court will grant Defendants' motion under Rule 12(b)(1) for lack of subject matter jurisdiction"). "A state's waiver of its sovereign immunity must be unequivocally expressed." *Urella v. Pennsylvania State Troopers Ass'n*, 628 F. Supp.2d 600, 605 (E.D. Pa. 2008) (internal citations omitted). The Regents has demonstrated that sovereign immunity applies to the claims against it. *See* ECF No. 41 at 6-8. Plaintiffs have failed

3

to identify any exception to sovereign immunity that would allow any of their claims against The Regents to proceed.

Plaintiffs also argue that if sovereign immunity is found to apply, they should be allowed leave to file another amended complaint against "state officials for prospective relief to end ongoing violations of federal law," as such claims are not protected by sovereign immunity. *See* ECF No. 68 at 13. Plaintiffs fail to identify any of the aforementioned state officials.  Plaintiffs had ample opportunity to name individual officials from the outset of this action, and seeking amendment only after facing a sovereign immunity challenge suggests tactical maneuvering rather than good faith oversight. *Doe v. Div. of Youth & Fam. Servs.*, 148 F. Supp. 2d 462, 477 (D.N.J. 2001) ("Leave should be granted absent a showing of 'undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of the allowance of the amendment, futility of amendment, etc.'").

Perhaps even more importantly, any proposed amendment would be futile because the Plaintiffs have failed to establish an ongoing violation of federal law, as explained previously by The Regents. "Futility of amendment means that the complaint as amended does not state a claim upon which relief can be granted." *Doe v. Div. of Youth & Fam. Servs.*, 148 F. Supp. 2d 462, 477 (D.N.J. 2001) (citing *In re Burlington Coat Factory Sec. Litig.,* 114 F.3d 1410, 1434 (3d Cir.1997)). "If the amendment would not withstand a motion to dismiss, leave must be denied." *Doe*, 148 F. Supp. 2d at 477.

Further, a party seeking leave to amend a pleading must file a motion with the proposed amended pleading attached.  *See Fletcher-Harlee Corp. v. Pote Concrete Contractors, Inc.*, 482

4

F.3d 247, 252 (3d Cir. 2007).  As Plaintiffs have not filed a motion for leave to amend with a proposed amended pleading, their request for leave to amend in their Opposition is improper.

For the reasons set forth in the Motion to Dismiss, supporting Memorandum of Law, and above, Plaintiffs' claims against The Regents in the First Amended Complaint are barred by the doctrine of sovereign immunity and must be dismissed.

## III.    THIS COURT LACKS PERSONAL JURISDICTION OVER THE REGENTS

Plaintiffs contend that courts within Pennsylvania have specific personal jurisdiction over The Regents regarding this litigation because The Regents "knowingly continued to provide employment, institutional legitimacy, and university resources to Prause after receiving notice that the challenged conduct was being directed at Pennsylvania and causing harm in Pennsylvania." *See* No. ECF 68 at 15. Such allegations clearly fail to establish specific jurisdiction under the standard three-part inquiry, which requires as a threshold matter that a plaintiff "purposefully directed" its activities at the forum. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 (1985) (citations and internal quotation marks omitted).  Under this test, "the plaintiff cannot be the only link between the defendant and the forum. Rather, it is the defendant's conduct that must form the necessary connection with the forum State that is the basis for its jurisdiction over him." *Walden v. Fiore*, 571 U.S. 277, 285 (2014).  It follows that under this inquiry, conduct allegedly directed at a plaintiff is not alone sufficient to establish specific jurisdiction over a defendant in the plaintiff's state of residence.

Plaintiffs also raise The Regents' membership in the Big Ten Conference and sharing of revenue from sports events to support specific jurisdiction.  Even if such conduct could be found to purposefully direct The Regents' activities at Pennsylvania, specific jurisdiction also requires that "the litigation results from alleged injuries that arise out of or relate to those activities" *Burger*

5

*King*, 471 U.S. at 472 (citations and internal quotation marks omitted).  As this matter has nothing to do with The Regents' membership in the Big Ten Conference, The Regents' activities in the conference do not form a basis for specific jurisdiction in this case.

Contrary to Plaintiffs' assertions, this Court does not have specific jurisdiction for the claims against The Regents under the *Calder* "effects test." *See generally*, *Calder v. Jones*, 465 U.S. 783, 104 S. Ct. 1482, 79 L. Ed. 2d 804 (1984). Under this test, specific jurisdiction is established if: (1) "the defendant committed an intentional tort"; (2) "the plaintiff felt the brunt of the harm in the forum, such that the forum can be said to be the focal point of the harm suffered by the plaintiff as a result of that tort"; and (3) "the defendant expressly aimed his tortious conduct at the forum, such that the forum can be said to be the focal point of the tortious activity."  *IMO Industries, Inc. v. Kiekert AG*, 155 F.3d 254, 265-66 (3d Cir. 1998) (citing *Calder v. Jones*, 465 U.S. 783 (1984)).  To satisfy the third prong, "the plaintiff must show that the defendant knew that the plaintiff would suffer the brunt of the harm caused by the tortious conduct in the forum, and point to specific activity indicating that the defendant expressly aimed its tortious conduct at the forum." *IMO Industries*, 155 F.3d at 266.  Plaintiffs' allegations that The Regents continued its relationship with Dr. Prause while purportedly aware that her conduct was causing harm in Pennsylvania is not sufficient to satisfy the requirement of alleging "specific activity" expressly aimed at the forum. "[T]he *Calder* 'effects test' can only be satisfied if the plaintiff can point to contacts which demonstrate that the defendant *expressly aimed* its tortious conduct at the forum, and thereby made the forum the focal point of the tortious activity. Simply asserting that the defendant knew that the plaintiff's principal place of business was located in the forum would be insufficient in itself to meet this requirement. The defendant must manifest behavior intentionally

6

targeted at and focused on the forum for *Calder* to be satisfied." *Id.* at 265 (internal citations and quotations omitted) (emphasis in original).

Plaintiffs further request the opportunity to conduct jurisdictional discovery. Such discovery is authorized only if "a plaintiff presents factual allegations that suggest with reasonable particularity the possible existence of the requisite contacts between [the party] and the forum state." *Toys "R" Us, Inc. v. Step Two, S.A.*, 318 F.3d 446, 456 (3d Cir. 2003) (internal citations and quotations omitted). As set forth above, no such allegations have been made here.

For the reasons set forth in The Regents' Motion to Dismiss, supporting Memorandum of Law, and above, Plaintiffs' claims against The Regents in the First Amended Complaint must be dismissed for lack of personal jurisdiction.

### IV.    PLAINTIFFS FAIL TO STATE A CLAIM UPON WHICH RELIEF MAY BE GRANTED

#### A.    The First Amended Complaint is an Impermissible "Shotgun" Pleading

Plaintiffs contest The Regents' assertion that the First Amended Complaint constitutes an impermissible "shotgun" pleading. As set forth in The Regents' Memorandum of Law in Support of its Motion to Dismiss, "shotgun" pleadings include complaints that assert "multiple claims against multiple defendants without specifying which of the defendants are responsible for which acts or omissions, or which of the defendants the claim is brought against." *Bartol v. Barraclough*, 251 F. Supp.3d 855, 859 (E.D. Pa. 2017). Such complaints are defective because they fail to provide the defendants "adequate notice of the claims against them and the grounds on which each claim rests." *Bartol*, 251 F. Supp. 3d at 859.

As noted in The Regents' Memorandum of Law, many of the causes of action in the First Amended Complaint are asserted against "all defendants," but most of these causes of action do not raise specific allegations against The Regents and do not provide a timeframe for when the

7

allegations occurred. *See* ECF 9 at ¶¶ 419-452, 474-536.  Plaintiffs allege that the First Amended Complaint nevertheless provides The Regents with fair notice of the claims against it, contending that each cause of action concerns its allegations that The Regents retained, endorsed, and enabled Co-Defendant, Nicole Prause, Ph.D. ("Dr. Prause"), notwithstanding notice of the challenged conduct, and allowed the use of The Regents' institutional affiliation in furtherance of such conduct. *See* ECF No. 68 at 19.  These allegations are set forth in support of The Regents' cause of action for negligent hiring, which appears near the end of the First Amended Complaint.  (*See* ECF 9 at ¶¶ 546-553.)  For the vast majority of claims asserted against UCLA, the First Amended Complaint provides no indication that these allegations support each cause of action or explain how these allegations, if proven, would establish liability for each claim.

Plaintiffs' attempt to rehabilitate the First Amended Complaint in their Opposition does not alter the fact that the First Amended Complaint fails to provide The Regents with fair notice for most of the claims against it. The claims against The Regents in Plaintiffs' First Amended Complaint are therefore improperly pled and must be dismissed.

### B.      Plaintiffs' RICO Claim (Count I) Must be Dismissed

With respect to Plaintiffs' RICO claim in Count I of the First Amended Complaint, Plaintiffs' Opposition does not address The Regents' discussion of cases holding that the RICO statute was not intended to create an exception to the sovereign immunity of states or their arms. Nor do Plaintiffs respond to The Regents' contention that the RICO claim fails to allege how The Regents itself participated in an enterprise of racketeering activity that caused injury to Plaintiffs. Plaintiffs instead contend that their RICO claim is supported by their allegations that The Regents facilitated and supported Dr. Prause's allegedly wrongful conduct.  Such allegations not only fail to allege that The Regents participated in a wrongful enterprise through racketeering activity, but

8

fail to allege how The Regents' conduct was the direct cause of Plaintiffs' alleged harm. As set forth in The Regents' Memorandum, these are necessary elements of Plaintiffs' RICO claim.

"[A] plaintiff bringing a civil RICO claim must additionally state an injury to business or property and that a RICO predicate offense not only was a but for cause of injury, but was the proximate cause as well." *St. Luke's Health Network, Inc. v. Lancaster Gen. Hosp.*, 967 F.3d 295, 300 (3d Cir. 2020). Plaintiffs fail to allege direct causation between The Regents providing "substantial assistance" to Dr. Prause's academic activities and the aforementioned injuries, including reduced web traffic. *See* ECF 9 at ¶¶ 14; 451-452.

For the reasons set forth in The Regents' Motion to Dismiss, supporting Memorandum of Law, and above, Count I of Plaintiffs' First Amended Complaint against The Regents fails to state a claim upon which relief may be granted and must therefore be dismissed.

### C.    Plaintiffs' Unfair Competition Claim Under the Lanham Act (Count II) Must be Dismissed

Plaintiffs' cause of action against The Regents for unfair competition under the Lanham Act (Count II of Plaintiffs' First Amended Complaint) is deficient because it fails to allege that The Regents specifically used Plaintiffs' marks in a manner that would create a likelihood of confusion, or that The Regents specifically made false or misleading statements about Plaintiffs' product.

Plaintiffs contend that The Regents may be held liable for unfair competition under the Lanham Act by "knowingly aid[ing] and abet[ting] the scheme by providing substantial assistance, permitting Dr. Prause to use [The Regents'] institutional resources and affiliation, [and] allowing her to present publicly as a [The Regents]-affiliated scientist[.]" *See* ECF No. 68 at 20. First, the First Amended Complaint does not raise such allegations regarding the unfair competition claim. In any event, the cases cited by Plaintiffs do not support extending unfair competition liability to

9

such alleged conduct. In *American Tel. and Tel. Co. v. Winback and Conserve Program, Inc.*, 42 F.3d 1421, 1439-40 (3d Cir. 1994), the Third Circuit held that a corporation could be held liable for violations of the Lanham Act by agents acting under the apparent authority of the corporation. In *Transdermal Products, Inc. v. Performance Contract Packaging, Inc.*, 943 F. Supp. 551, 553 (E.D. Pa. 1996), the court examined "contributory infringement" claims under the Lanham Act, in which manufacturers encourage retailers (or vice versa) to infringe upon a trademark. Neither of these examples would support imposing liability under the Lanham Act upon an educational institution for an employee's work. This is particularly true where (as here) the work at issue has nothing to do with the employee's position as a statistician.

The Regents has previously noted that Plaintiffs fail to raise allegations that UCLA's purported unfair competition was the proximate cause of Plaintiffs' alleged damages. In response, Plaintiffs merely state that their conclusory allegations of damages in their unfair competition claim are sufficient, ignoring The Regents' demonstration in the Memorandum that this is not the case. Plaintiffs also fail to respond to The Regents' contention that the speech at issue is non-commercial and therefore protected by the First Amendment.

For the reasons set forth in The Regents' Motion to Dismiss, supporting Memorandum of Law, and above, Count II of Plaintiffs' First Amended Complaint against The Regents fails to state a claim upon which relief may be granted and must therefore be dismissed.

> ### D.    Plaintiffs' Trademark Dilution Claim Under the Lanham Act (Count III) Must be Dismissed

Count III of Plaintiffs' First Amended Complaint consists of a cause of action under the Lanham Act for trademark dilution. The Regents asserts that trademark dilution claims under the Lanham Act apply only to marks that are "widely recognized by the general consuming public of the United States." 15 U.S.C. § 1125(c)(2)(A). It follows that dilution of a trademark with only

"niche fame" is insufficient to support a trademark dilution claim.  *See I.M. Wilson, Inc. v. Otvetstvennostyou "Grichko"*, 500 F. Supp.3d 380, 415 (E.D. Pa. 2020).

In response, Plaintiffs suggest that this is a factual issue inappropriate for a motion to dismiss.  However, the First Amended Complaint does not allege that the trademark at issue is "widely recognized by the general consuming public of the United States." To the contrary, Plaintiffs allege that the trademark was used for "the largest platform for recovering porn addicts." *See* ECF 9 at ¶ 22.  Plaintiffs have therefore acknowledged that the subject trademark falls within the type of "niche fame" that cannot support a federal trademark dilution claim.  In the absence of allegations that the subject trademark is "widely recognized by the general consuming public," Plaintiffs' trademark dilution claim should be dismissed.

Plaintiffs' trademark dilution claim is also without merit because Plaintiffs fail to allege that The Regents engaged in the alleged dilution.  In support of this argument, Plaintiffs rely upon cases that concern far more involvement in purported dilution than is alleged in the Amended Complaint.  In *Trade Media Holdings Ltd. v. Huang & Associates*, 123 F. Supp.2d 233, 242-43 (D.N.J. 2000), a federal district court authorized a trademark dilution claim against a defendant that registered a domain name and maintained a website containing an infringing mark.  In *Valley Forge Military Academy Foundation v. Valley Forge Old Guard Inc.*, 24 F. Supp.3d 451, 453-54, 458 (E.D. Pa. 2014), the court allowed trademark dilution claims to proceed against a Pennsylvania non-profit corporation that had been critical of the plaintiffs over the prior several years.  Neither of these cases establish that trademark dilution cases are appropriate against a university for the alleged conduct of an employee, especially when the alleged conduct is not tied to the employee's course and scope of employment.

Furthermore, a statutory exception precludes federal trademark dilution claims for non-commercial speech. *See* 28 U.S.C. § 1125(c)(4). In an effort to rebut this point, Plaintiffs cite *Jews for Jesus v. Brodsky*, 993 F. Supp. 282 (D.N.J. 1998). However, in that case, the Court noted that the purportedly infringing website was a conduit to a website that sold merchandise and was therefore engaged in commercial speech. *See Brodsky*, 993 F. Supp. at 307. In the present case, there are no allegations regarding The Regents that concern any commercial work. The federal trademark dilution claim against The Regents is therefore precluded by the statutory exception for non-commercial speech.

For the reasons set forth in The Regents' Motion to Dismiss, supporting Memorandum of Law, and above, Count III of Plaintiffs' First Amended Complaint against The Regents fails to state a claim upon which relief may be granted and must therefore be dismissed.

### E. Plaintiffs' Trademark Infringement Claim Under the Lanham Act (Count IV) Must be Dismissed

Plaintiffs have also brought a trademark infringement claim under the Lanham Act based upon conclusory assertions that The Regents and the other defendants utilized Plaintiffs' trademarks to cause confusion. In their Opposition, Plaintiffs do not attempt to refute that The Regents did not personally utilize Plaintiffs' trademarks, but instead again argue that The Regents violated the Lanham Act by allowing Dr. Prause to utilize The Regents' institutional affiliation and institutional resources while engaging in tortious conduct. In making this argument, Plaintiffs again rely upon *Winback* and *Transdermal Products, Inc.*, which (as noted above) do not support imposing liability upon The Regents here. Plaintiffs also cite *Dentsply Sirona Inc. v. Net32, Inc.*, Civ. Act. No. 1:17-CV-1530, 2018 WL 3473973 (M.D. Pa. Jul. 19, 2018). This case involves the same "contributory infringement" theory at issue in *Transdermal Products, Inc.*, which (as

12

discussed above) concerns the inducement of infringing conduct by manufacturers or retailers, and has no relevance to the present case.

As with other claims, The Regents has previously noted that the alleged infringement consists of non-commercial commentary protected by the First Amendment. Plaintiffs respond by suggesting that the non-commercial nature of the purported infringement is immaterial. In support, Plaintiffs rely upon *Winback* and *Dentsply Sirona*, neither of which address whether non-commercial commentary may be found to violate the Lanham Act.

For the reasons set forth in The Regents' Motion to Dismiss, supporting Memorandum of Law, and above, Count IV of Plaintiffs' First Amended Complaint against The Regents fails to state a claim upon which relief may be granted and must therefore be dismissed.

### F.  Plaintiffs' Trade Disparagement Claim (Count V) Must be Dismissed

Similar to the other claims against The Regents in the First Amended Complaint, Plaintiffs' trade disparagement claim (Count V of the First Amended Complaint) contains no allegations that The Regents itself made disparaging statements regarding Plaintiffs' business. Plaintiffs instead contend that by purportedly approving and lending credibility to Dr. Prause's work, The Regents should be held liable for trade disparagement based upon Dr. Prause's statements. Plaintiffs offer no legal support for this argument and do not explain how this is consistent with the elements of a trade disparagement claim, which is based upon "the publication of a disparaging statement concerning the business of another" and not conduct tangentially related to such a publication. *See Pro Golf Mfg., Inc. v. Trib. Rev. Newspaper Co.*, 570 Pa. 242, 246, 809 A.2d 243, 246 (2002) (setting forth elements of trade disparagement claim).

Plaintiffs' trade disparagement claim is not adequately supported by allegations of special damages. Plaintiffs contend that they have adequately alleged special damages by identifying types of economic harm resulting from the alleged disparagement. This fails to satisfy the

13

standards for pleading special damages arising from trade disparagement, which requires details such as the identification of specific customers lost due to the disparagement, or (if a plaintiff alleges a general loss of business) facts demonstrating the existence of an established business, the amount of sales prior to the disparagement, and the amount of sales following the disparagement. *See Universal Elec. Corp. v. Baldwin*, No. 2:17-CV-00842, 2018 WL 3707423, at \*15 (W.D. Pa. Aug. 3, 2018).  Plaintiffs' First Amended Complaint fails to approach the level of detail required to allege damages resulting from trade disparagement.

For the reasons set forth in The Regents' Motion to Dismiss, supporting Memorandum of Law, and above, Count V of Plaintiffs' First Amended Complaint against The Regents fails to state a claim upon which relief may be granted and must therefore be dismissed.

### G.    Plaintiffs' Tortious Interference Claim (Count VIII) Must be Dismissed

Count VIII of the First Amended Complaint alleges tortious interference despite the fact The Regents had no actual knowledge of the contract at issue. The allegation that the The Regents knew or should have known of a non-disparagement agreement executed by Dr. Prause fails to satisfy the requirement that a defendant have "[a]ctual knowledge of the contract with which the defendant supposedly interfered," which "must be specific to the particular contractual right upon which the defendant infringes." *Acclaim Sys., Inc. v. Infosys Ltd.*, 679 F. App'x 207, 211 (3d Cir. 2017).  As support, Plaintiffs allege merely that Dr. Prause testified regarding this agreement in a deposition. *See* ECF No. 9 at ¶ 213; *see also* ECF No. 9 at ¶¶ 113, 115, 117 (allegations cited by Plaintiffs that do not reference the agreement).  Notably, The Regents was not a party to the lawsuit for which that deposition occurred, nor has it been alleged it was a party to that lawsuit.  Plaintiffs' allegations clearly do not support an inference that The Regents should have known about the non-disparagement agreement, much less an inference that The Regents did know about the agreement.

Absent allegations that The Regents actually knew about the non-disparagement agreement, Plaintiffs' tortious interference claim cannot proceed.

For the reasons set forth in The Regents' Motion to Dismiss, supporting Memorandum of Law, and above, Count VIII of Plaintiffs' First Amended Complaint against The Regents fails to state a claim upon which relief may be granted and must therefore be dismissed.

### H.    Plaintiffs' Defamation *per se* and *per quod* Claim (Count IX) Must be Dismissed

Plaintiffs have not alleged that The Regents made any defamatory statements to support their defamation *per se* and defamation *per quod* claim (Count IX of the First Amended Complaint).  To the extent that Plaintiffs attempt to base their claims upon a theory of *respondeat superior* based upon statements of Dr. Prause, Plaintiffs must allege that the statements were made in the scope of Dr. Prause's employment.  *See Ludwig v. McDonald*, 204 A.3d 935, 943 (Pa. Super. Ct. 2019).  The First Amended Complaint contains no allegations that any statements made by Dr. Prause were made in the scope of her employment.

Plaintiffs have responded by noting that under Pennsylvania law, "[t]he relevant question is whether the conduct was of the kind the employee is engaged to perform, occurred within authorized time and space limits, and was actuated at least in part by a purpose to serve the employer." *See* ECF No. 68 at 34. However, the First Amended Complaint fails to allege sufficient facts that would satisfy this standard.  Plaintiffs claim Dr. Prause is employed by The Regents as a statistician in a digestive disease laboratory.  *See* ECF No. 9 at ¶ 113.  The publications and statements made by Dr. Prause that are at issue in this case concern pornography and have no relationship to the work she is engaged to perform for The Regents. Moreover, Plaintiffs have not alleged and cannot allege that these statements were motivated in whole or in part by a purpose to serve Dr. Prause's employer.

For the reasons set forth in The Regents' Motion to Dismiss, supporting Memorandum of Law, and above, Count IX of Plaintiffs' First Amended Complaint against The Regents fails to state a claim upon which relief may be granted and must therefore be dismissed.

### I. Plaintiffs' Publicity Placing Person in False Light Claim (Count X) Must be Dismissed

As with many of the causes of action against The Regents, The Regents has challenged Plaintiffs' publicity placing person in false light claim (Count X of Plaintiffs' First Amended Complaint) on the grounds that Plaintiffs have not alleged and cannot allege that The Regents made any publications about Plaintiffs, much less publications that would support a false light claim. As with other claims, Plaintiffs have argued that The Regents must be held liable because Dr. Prause made the alleged statements at issue while employed by The Regents, invoked The Regents' affiliation while making the statements, and that the Regents continues to permit Dr. Prause to make these statements.

Plaintiffs cite *Graboff v. Colleran Firm*, 744 F.3d 128 (3d Cir. 2014) in support of their argument that institutional parties may be held liable for false light claims. However, that case concerns an article *written* by an institutional defendant. *Id.* at 132. Plaintiffs have not cited any legal authority authorizing false light claims against an institutional client for statements *made by others*.

For the reasons set forth in The Regents' Motion to Dismiss, supporting Memorandum of Law, and above, Count X of Plaintiffs' First Amended Complaint against UCLA fails to state a claim upon which relief may be granted and must therefore be dismissed.

### J. Plaintiffs' Publicity Given to Private Life Claim (Count XI) Must be Dismissed

As with other causes of action, The Regents has challenged Plaintiffs' cause of action for publicity given to private life (Count XI of Plaintiffs' First Amended Complaint) on the grounds

16

that Plaintiffs cannot and have not alleged that The Regents itself made any of the disclosures at issue regarding Plaintiff Rhodes.  Plaintiffs contend that The Regents should be held responsible for statements made by Dr. Prause in the scope of her employment.

As referenced earlier in this Reply, Pennsylvania law with regard to *respondeat superior* liability provides that an employee's actions are within the "scope of employment" if: (1) "it is of a kind and nature that the employee is employed to perform"; (2) "it occurs substantially within the authorized time and space limits"; and (3) "it is actuated, at least in part, by a purpose to serve the employer[.]" *R.A. ex rel. N.A. v. First Church of Christ*, 748 A.2d 692, 699 (Pa. Super. Ct. 2000) (citations and internal quotation marks omitted).

As alleged in the First Amended Complaint, Dr. Prause is employed by The Regents as a statistician in a digestive disease laboratory.  *See* ECF No. 9 at ¶ 113. Plaintiffs have not alleged and cannot allege that the purported unauthorized disclosure of personal information by Dr. Prause was the kind of work that Dr. Prause was employed to perform and was motivated in whole or in part by a purpose to serve the employer.  Plaintiffs therefore cannot pursue a cause of action against The Regents for publicity given to private life under a theory of *respondeat superior*.

For the reasons set forth in The Regents' Motion to Dismiss, supporting Memorandum of Law, and above, Count XI of Plaintiffs' First Amended Complaint against UCLA is without merit and should be dismissed.

### K.    Plaintiffs' Intrusion Into Private Affairs Claim (Count XII) Must be Dismissed

Plaintiffs have brought a cause of action for intrusion into private affairs (Count XII of Plaintiffs' First Amended Complaint) based upon Dr. Prause and Dr. Ley's alleged discovery and disclosure of private information regarding Plaintiff Rhodes.  Plaintiffs again contend that The Regents should be held liable for Dr. Prause's conduct on the basis of *respondeat superior* and

17

direct liability for The Regents' failure to control this conduct, notwithstanding the fact that these theories are nowhere to be found in Count XII or in the vast majority of the counts set forth in the First Amended Complaint.

As with Plaintiffs' publicity given to private life claim, Plaintiffs have not alleged and cannot allege that the discovery and disclosure of private information is the kind of work that Dr. Prause was employed to perform and was motivated in whole or in part by a purpose to serve Dr. Prause's employer, The Regents. As alleged in the First Amended Complaint, Dr. Prause is employed by The Regents as a statistician in a digestive disease laboratory. *See* ECF No. 9 at ¶ 113. While Plaintiffs contend in their Memorandum in Opposition to the Motion to Dismiss that the question of whether Dr. Prause acted within the scope of employment is a fact-dependent inquiry, no discovery is necessary to conclude that a statistician's work does not include the unauthorized disclosure of an individual's private information. *Clegg v. Falcon Plastics, Inc.*, 174 F. App'x 18, 28 (3d Cir. 2006) (vicarious liability may not be imposed for employee's secret tape recording, as such conduct "was certainly not the kind of act that [the employee] was employed to perform, nor can it realistically be argued that [the employee] was motivated by a desire to serve [his employer]"). Moreover, Plaintiffs' Opposition fails to address the fact that all of the alleged disclosures concern public information such as addresses, phone numbers, court documents, and a photograph of a public performance. *See* ECF No. 9 at ¶ 408. *See, e.g., Pinkney v. Meadville, Pennsylvania*, No. 24-2873, 2025 WL 2694099, at *4 (3d Cir. Sep. 22, 2025). For the reasons set forth in The Regents' Motion to Dismiss, supporting Memorandum of Law, and above, Count XII of Plaintiffs' First Amended Complaint against UCLA is without merit and should be dismissed.

18

### L. Plaintiffs' Intentional Infliction of Emotional Distress Claim (Count XIII) Must be Dismissed

Plaintiffs' cause of action for intentional infliction of emotional distress (Count XIII of Plaintiffs' First Amended Complaint) is based upon alleged defamatory or offensive statements made regarding Plaintiff Rhodes by unspecified defendants, as well as "opposition research" performed on Plaintiff Rhodes. In their Opposition, Plaintiffs contend that this cause of action is based upon Dr. Prause's conduct while employed by The Regents and utilizing her affiliation with The Regents, thereby subjecting The Regents to vicarious liability as well as direct liability for its failure to intervene.

As set forth above, vicarious liability requires a demonstration that the challenged activities are within the "scope of employment," in that they are of the kind and nature that the employee is employed to perform and that they are motivated by a purpose to serve the employer. The activities alleged in support of the intentional infliction of emotional distress claim have no relationship to Dr. Prause's work for The Regents as a statistician and are in no way motivated to serve The Regents. With regard to Plaintiffs' claims of direct liability, the cause of action for intentional infliction of emotional distress in the Amended Complaint makes no reference to The Regents' alleged failure to intervene, and Plaintiffs offer nothing to establish that a failure to intervene can support an intentional infliction of emotional distress claim against The Regents.

As noted previously, a cause of action for intentional infliction of emotional distress requires allegations of physical injury, which are not present here. *See Hart v. O'Malley*, 436 Pa. Super. 151, 175, 647 A.2d 542, 554 (1994), *aff'd,* 544 Pa. 315, 676 A.2d 222 (1996); *Woods v. Morris*, No. 2:20-CV-001376, 2022 WL 11962108, at *5 (W.D. Pa. Oct. 20, 2022).

19

For the reasons set forth in The Regents' Motion to Dismiss, supporting Memorandum of Law, and above, Count XIII of Plaintiffs' First Amended Complaint against The Regents is without merit and should be dismissed.

### M.     Plaintiffs' Civil Conspiracy Claim (Count XIV) Must be Dismissed

Count XIV of Plaintiffs' First Amended Complaint alleges a claim for civil conspiracy, but fails to identify when the alleged conspiracy was formed, when The Regents joined the alleged conspiracy, and how long it continued.   Plaintiffs' civil conspiracy claim must allege "particularized facts, such as those addressing the period of the conspiracy, the object of the conspiracy, and certain actions of the alleged conspirators taken to achieve that purpose." *Bair v. Purcell*, 500 F. Supp.2d 468, 500 (M.D. Pa. 2007).  The cause of action also requires "[p]roof of malice, *i.e.*, an intent to injure[.]" *WhiteSand Rsch., LLC v. Sehn*, No. 1123 WDA 2017, 2018 WL 2728847, at *3 (Pa. Super. Ct. June 7, 2018) (internal citations and quotation marks omitted).

As with many other claims, Plaintiffs contend that the civil conspiracy claim against The Regents is established by its employment of Dr. Prause, Dr. Prause's use of The Regents' affiliations, and The Regents' failure to stop Dr. Prause.  This argument fails to address the pleading deficiencies identified above. Moreover, these allegations, even if proven, are insufficient to establish that The Regents' participation in the alleged conspiracy was motivated by malice.

For the reasons set forth in The Regents' Motion to Dismiss, supporting Memorandum of Law, and above, Count XIV of Plaintiffs' First Amended Complaint against The Regents is without merit and should be dismissed.

### N.     Plaintiffs' Gross Negligence and Negligence Claim (Count XV) Must be Dismissed

In their Opposition, Plaintiffs allege that their cause of action against The Regents for negligence and gross negligence (Count XV of Plaintiffs' First Amended Complaint) is based both

upon *respondeat superior* and direct negligence concerning The Regents' alleged failures in hiring, training, and oversight. Neither theory has merit here. Plaintiffs' claim of negligence regarding Dr. Prause is based upon the alleged breach of Dr. Prause's "professional duty of care" as a psychologist. Such a duty is not owed to non-patients, such as Plaintiffs. *See Althaus ex re. Althaus v. Cohen*, 562 Pa. 547, 549, 756 A.2d 1166, 1167 (2000). As Dr. Prause therefore cannot be found negligent to Plaintiffs, it follows that The Regents cannot be found negligent under a theory of *respondeat superior*. *See, e.g., Keffer v. Bob Nolan's Auto Serv., Inc.*, 59 A.3d 621, 638 (Pa. Super. Ct. 2012). Furthermore, as with other claims, the alleged "harassment, defamation, and coordinated attacks against [pornography] industry targets" at issue in the negligence claim does not fall within the scope of Dr. Prause's employment with The Regents as a statistician and therefore cannot support liability under the theory of *respondeat superior*. *See* ECF No. 9 at ¶ 542.

To the extent that Plaintiffs' negligence and gross negligence claims against The Regents concern claims of direct negligence, such claims are essentially duplicative of Plaintiffs' cause of action for negligent hiring, which is without merit for the reasons discussed below. For the reasons set forth in The Regents' Motion to Dismiss, supporting Memorandum of Law, and above, Count XV of Plaintiffs' First Amended Complaint against The Regents is without merit and should be dismissed.

### O.    Plaintiffs' Negligent Hiring Claim (Count XVI) Must be Dismissed

Plaintiffs' cause of action against The Regents for negligent hiring is based upon allegations that The Regents was negligent in hiring, retaining, and failing to supervise Dr. Prause despite her prior criminal conviction, harassment of individuals, and "longstanding pattern of instability and unethical conduct that were either known or readily discoverable through ordinary diligence." *See* ECF No. 9 at ¶ 548. In their Opposition, Plaintiffs contend that The Regents' argument for dismissing the negligent hiring claim concerns factual rather than legal issues.

21

However, even if the allegations set forth in support of this claim were proven true, Plaintiffs' negligent hiring claim is without merit.

Under Pennsylvania law, a plaintiff bringing a claim for negligent hiring must show that (1) the "employer defendant knew or should have known of the propensity of the employee" and (2) "such employment creates a situation in which the third party may be harmed." *M.S. ex rel. Hall v. Susquehanna Twp. Sch. Dist.*, 43 F. Supp. 3d 412, 432 (M.D. Pa. 2014). This is consistent with the principle that the duty owed by a defendant to plaintiffs was "a general duty not to place them in risk of harm, limited to those risks which were reasonably foreseeable." *Brezenski v. World Truck Transfer, Inc.*, 755 A.2d 36, 42 (Pa. Super. Ct. 2000). As noted above, Dr. Prause was employed by The Regents as a statistician. This role did not provide Dr. Prause with an opportunity to make the statements and engage in the other conduct that is at issue in this case. Plaintiffs cannot allege and have not alleged facts that, if proven, would establish that Dr. Prause's employment as a statistician created a situation where a third party might be harmed.

For the reasons set forth in The Regents' Motion to Dismiss, supporting Memorandum of Law, and above, Count XVI of Plaintiffs' First Amended Complaint against The Regents is without merit and should be dismissed.

### P.    Plaintiffs' Declaratory Relief Claim (Count XVII) Must be Dismissed

Plaintiffs' First Amended Complaint concludes by asserting a cause of action for declaratory relief (Count XVII). In their Opposition, Plaintiffs contend that they are entitled to seek declaratory relief in addition to damages. The Regents did not seek dismissal of the declaratory relief claim on this basis, but rather because a demand for declaratory relief must be presented as a form of relief rather than an independent legal claim. *See 4431, Inc. v. Cincinnati Ins. Companies*, 504 F. Supp.3d 368, 374 (E.D. Pa. 2020), *aff'd sub nom. Wilson v. USI Ins. Ser. LLC*, 57 F.4th 131 (3d Cir. 2023). Regardless of whether Plaintiffs are entitled to seek declaratory

relief in this litigation, Count XVII of Plaintiffs' First Amended Complaint against The Regents is without merit and should be dismissed.

**Q. Plaintiffs Should Not be Granted Leave to Amend the First Amended Complaint, As Any Amendment Would be Futile**

Plaintiffs conclude their Opposition by requesting leave to amend to address any deficiencies in the Amended Complaint. As Plaintiffs acknowledge, a court need not authorize amendment if "such an amendment would be inequitable or futile." *Phillips v. County of Allegheny*, 515 F.3d 224, 245 (3d Cir. 2008). As set forth in The Regents' Motion to Dismiss, supporting Memorandum of Law, and above, Plaintiffs' claims against The Regents are barred pursuant to sovereign immunity, and The Regents is not subject to the personal jurisdiction of this Court with regard to these claims. Furthermore, each cause of action brought by Plaintiffs against The Regents represents an improper attempt to hold The Regents responsible for the actions of its employee that are clearly outside the scope of her employment. As further amendment of the first Amended Complaint would therefore be futile, Plaintiffs should not be granted leave to amend.

**V. CONCLUSION**

For the reasons set forth above and in the Motion to Dismiss and supporting Memorandum of Law, Defendant, The Regents of the University of California, respectfully requests that this Court dismiss Plaintiffs' First Amended Complaint as to The Regents in its entirety and with prejudice.

23

Respectfully submitted,

**GORDON REES SCULLY MANSUKHANI, LLP**

 */s/ Alexander Nemiroff*
Alexander Nemiroff [92250]
Three Logan Square
1717 Arch Street, Suite 610
Philadelphia, PA 19103
Telephone: (267) 602-2040
Fax: (215) 693-6650
Email: anemiroff@grsm.com
*Counsel for Defendant, The Regents of the University of California*

Dated:  May 13, 2026

24

## CERTIFICATE OF SERVICE

I certify that on the thirteenth day of May, 2026, Defendant The Regents of the University of California's Reply Brief in Support of its Motion to Dismiss was served electronically via CM/ECF system to all counsel of record.

 */s/ Alexander Nemiroff*
Alexander Nemiroff, Esq.
*Counsel for Defendant, The Regents of the*
*University of California*